**EXHIBIT B**

**REDLINED Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (——KBO) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Re: Docket No. —14__ |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
### ASSUME THE CONSULTING AGREEMENT, (II) AUTHORIZING
### AND APPROVING THE CONDUCT OF STORE CLOSING SALES,
### WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS,
### AND ENCUMBRANCES, (III) AUTHORIZING CUSTOMARY BONUSES TO
### EMPLOYEES OF CLOSING STORES, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (a) authorizing the Debtors to assume the Consulting Agreement, (b) authorizing and approving the initiation of the Store Closings in accordance with the terms of the Consulting Agreement and the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, (c) authorizing the Debtors to conduct Store Closings with respect to the Additional Closing Stores at a later date or dates, (d) authorizing customary bonuses to non-insider Closing Store employees who remain employed for the duration of the store closing process, (e) approving modifications to the Gift Card Program solely with respect to the Closing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Stores, and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor it is HEREBY FOUND AND DETERMINED THAT:[3]

A.      The Debtors have advanced sound business reasons for assuming the Consulting Agreement and adopting the Sale Guidelines, as set forth in the Motion and at the Hearing, and assuming the Consulting Agreement is a reasonable exercise of the Debtors' business judgement and in the best interest of the Debtors and their estates.

---

[3]     [Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.]

B.      The Consulting Agreement, a copy of which is attached to this Final Order as **Exhibit 1**, was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

C.      The assumption of the Consulting Agreement is a sound exercise of the Debtors' business judgment.

D.      The Sale Guidelines, which are attached hereto as **Exhibit 2**, are reasonable and appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets, and are in the best interest of the Debtors' estates.

E.      The Store Closings and Sales are in the best interest of the Debtors' estates.

F.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.      The Debtors have represented that they intend to neither sell nor lease personally identifiable information pursuant to the relief requested in the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

H.      The Store Closing Bonus Plan is justified by the facts and circumstances of these chapter 11 cases, is a sound exercise of the Debtors' business judgment, and is necessary to maximize value to the Debtors' estates.

I.      The entry of this Final Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Final Order.

3.      The Debtors are authorized, but not directed, to make payments under the Store Closing Bonus Plan, as may be amended and modified from time to time.

4.      To the extent any conflict between this Final Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Final Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreement.

**I.      Authority to Assume the Consulting Agreement.**

5.      The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including: (a) making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court, (b) allowing the sale of Additional Agent Goods, and (c) participating in an augmentation program, all as permitted under the Consulting Agreement.  Consultant's fees and expenses shall be paid from the gross proceeds of the Sale, without adherence to any weekly, monthly or aggregate limitation in a debtor-in-possession financing or cash collateral budget entered in connection with these chapter 11 cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

6.      Subject to the restrictions set forth in this Final Order and the Sale Guidelines and any Side Letters (as defined below), the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sales, and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the

Consulting Agreement and/or the Sales ~~prior to~~beginning as of the date of ~~this Final~~the Interim Order, are hereby approved and ratified.

7.      The Consulting Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.  The Debtors are hereby authorized to enter into additional agreements in connection with any Closing Stores, or Sales related thereto, on terms materially consistent with the Debtors' historic practices.

8.      Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising out of the Consultant's fraud, willful misconduct, or gross negligence.

9.      To the extent the Consultant seeks to contract with Additional Consultants, the Consultant is authorized to enter into an agreement with Additional Consultants.

10.     The failure to include any provisions of the Consulting Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that such provisions of the Consulting Agreement be, and hereby are, authorized and approved.

**II.      ~~I.~~Authority to Engage in Sales and Conduct Store Closings.**

11.     The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sales at the Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Consulting Agreement, as may be modified by any Side Letters (as defined below) between the Debtors or the Consultant and the landlords at the Closing Stores.

12.     The Sale Guidelines are approved in their entirety on a final basis.

13.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

14.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

15.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

**III.     II. Conduct of the Sales.**

16.     All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and Store Closings pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Consulting Agreement.

17.     The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Sales and Store Closings without necessity of further order of this Court as provided in the Consulting Agreement and the Sale Guidelines (subject to any Side Letters, as defined below), including, but not limited to, advertising the sale as a "store closing sale", "sale on everything", "everything must go", or similar-themed sales as contemplated in the Sale Guidelines through the posting of

signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage, as contemplated in the Sale Guidelines.

18.     Except as expressly provided in the Consulting Agreement and the Sale Guidelines (subject to any Side Letter (as defined herein), the sale of the Merchandise and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise and FF&E), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closings or the Sales. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Final Order, any Side Letter (as defined below) and the Sale Guidelines. The Debtors, the Consultant, and the landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Consultant and any such landlords, provided that nothing in such Side Letters affects the provisions of this Final Order. In the event of any conflict between the Sale Guidelines, the Consulting Agreement, any Side Letter, and this Final Order, the terms of such Side Letter shall control.

19.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or

creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings, or (b) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Merchandise or FF&E or other liquidation sales at the closing locations or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

20.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines (as modified by any Side Letters) and this Final Order.

21.     All in-store sale of Store Closure Assets and the Additional Agent Goods shall be "as is" and final as of the Sale Commencement Date.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the point-of-sale areas at all Closing Stores.  As to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be

complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

22.    The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, provided that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state, provincial or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

23.    Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets and all sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets,

subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

24.    The Debtors or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among, and into, the Closing Stores in accordance with the Sale Guidelines, as applicable.  The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement and the Sale Guidelines (as may be modified by any Side Letter).

25.    The Consultant is authorized to supplement the Merchandise in the Sales with Additional Agent Goods of like kind and no lesser quality to the Merchandise in the Sale at the Closing Stores or through the e-commerce platform; provided, that the Debtors may reasonably object to the inclusion of Additional Agent Goods that are not of like kind and are of lesser quality to the Merchandise in the Sale at the Closing Stores or through the e-commerce platform, in which case the Debtors and the Consultant shall work in good faith to resolve such objection, which resolution may require the exclusion of such Additional Agent Goods subject to the objection; provided, further, that the cost of Additional Agent Goods shall not exceed fifteen percent (15%) of the aggregate Cost Value (as defined in the Consulting Agreement) of the Merchandise in the Sale.  The Additional Agent Goods shall be purchased by the Consultant as part of the Sales and delivered to the Closing Stores at the Consultant's sole expense (including as to labor, freight, and insurance relative to shipping such Additional Agent Goods to the Closing Stores).  Sales of Additional Agent Goods shall be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise.  The Consultant and Debtors

shall cooperate to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods from the Merchandise. The Consultant shall provide signage in the Stores notifying customers that the Additional Agent Goods have been included in the Sale.

26.     The Consultant shall pay the Debtors an amount equal to seven and one-half percent (7.5%) of the gross proceeds (excluding Sale Taxes) from the Sale of the Additional Agent Goods (the "Additional Agent Goods Fee"). The Consultant shall retain all remaining amounts from the sale of the Additional Agent Goods. The Consultant shall pay the Debtors the Additional Agent Goods Fee in connection with each weekly reconciliation with respect to the sales of Additional Agent Goods sold by the Consultant during each then prior week (or at such other mutually agreed upon time).

27.     All transactions relating to the Additional Agent Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Consultant to the Debtors under Article 9 of the Uniform Commercial Code (the "UCC") and not a consignment for security purposes. Subject solely to Consultant's obligations to pay to the Debtors the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Agent Goods or the proceeds thereof. The Additional Agent Goods shall at all times remain subject to the exclusive control of the Consultant. The Debtors shall, at Consultant's sole cost and expense, insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard thereto. The Consultant shall be responsible for

payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

28.     The Consultant is hereby granted a first-priority security interest in and lien upon (a) the Additional Agent Goods and (b) the Additional Agent Goods proceeds, which security interest shall be deemed perfected without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that the Consultant is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Consultant's interest in the Additional Agent Goods as consigned goods thereunder and the Debtors as the consignee therefor, and the Consultant's security interest in and lien upon such Additional Agent Goods and the Additional Agent Goods proceeds).

29.     Neither the Sale Guidelines, Consulting Agreement, nor this Final Order authorize the Debtors to transfer or sell to Consultant or any other party the personal identifying information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number) ("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Sales.

30.     The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.  At the conclusion of the Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer PII and that any records containing PII were shredded, erased, or otherwise modified to render the PII unreadable or undecipherable.

31.     Nothing herein shall limit the Debtors' right to pause or discontinue a Sale at a Closing Store on notice to affected parties.

32.     Nothing herein is intended to affect any rights of any applicable government unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

**IV.      III. Procedures Relating to Additional Closing Stores.**

33.     To the extent that the Debtors seek to conduct Sales at any Additional Closing Store, the Sale Guidelines and this Final Order shall apply to the Additional Closing Stores.

34.     Prior to conducting the Sales at any Additional Closing Store, the Debtors will file a list including such Additional Closing Store with this Court (each, an "Additional Closing Store List"), and serve a notice of their intent to conduct the Sales at the Additional Closing Store on the applicable landlords (collectively, the "Additional Closing Store Landlords"), the Additional Closing Store Landlord's counsel of record (if known), and other interested parties by email (to the extent available to the Debtors) or overnight mail.  With respect to Additional Closing Store Landlords, the Debtors will mail, if applicable, such notice to the notice address

set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

35.     The Additional Closing Store Landlords and any interested parties shall have seven (7) days after service of the applicable Additional Closing Store List to object to the application of this Final Order, object to the Sale Guidelines, or otherwise enter into a Side Letter with the applicable landlord of the Additional Closing Store as permitted by paragraph 18 herein.  If no timely objections are filed with respect to the application of this Final Order to an Additional Closing Store, the Debtors are authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to proceed with conducting the Sales at the Additional Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Consulting Agreement. If any objections are filed with respect to the application of this Final Order, to an Additional Closing Store, and such objections are not resolved, the objections and the application of this Final Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary.  Any objections as to particular Additional Closing Stores will not affect the Debtors' and Consultant's right to begin Closing Sales at non-objected Additional Closing Stores.

**V.** ~~IV.~~ **Gift Card Program.**

36.     ~~The Debtors~~Gift cards shall no longer be accept~~ed~~ ~~gift cards~~ on the e-commerce platform or in the Closing Stores~~,~~ and ~~all such gift cards will~~shall be deemed to have no remaining value.  Notwithstanding any policy or state law to the contrary, the gift cards are not redeemable for cash at any time.

37.    1. Nothing in this Final Order authorizes the Debtors to cease acceptance of gift cards in the ordinary course of business in stores other than the Closing Stores or online.

**VI.    V. Dispute Resolution Procedures with Governmental Units.**

38.    37. Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and Safety, criminal, tax (including, but not limited to, the collection of Sales Taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").   Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal Safety Laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject

to the Debtors' rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

39. 38. To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state or Local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the sale of the Store Closing Assets, including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply and the Dispute Resolution Procedures shall control over any Side Letters:

(A)     Provided that the Sales are conducted in accordance with this Order, any Final Order, and the Sale Guidelines, the Debtors, the Consultant, and the Debtors' landlords, shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the Sales of the Store Closure Assets, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sales and sales of the Store Closure Assets (collectively, the "Liquidation Sale Laws") of any state or Local Governmental Unit (as defined in Bankruptcy Code section 101(27)); *provided*, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable

provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

(B)     Within ~~five~~three (~~5~~3) business days after entry of this Final Order, the Debtors will serve by first-class mail, copies of this Final Order, the Consulting Agreement, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; and (d) the landlords for the Closing Stores (collectively, the "Dispute Notice Parties").

(C)     With respect to any Additional Closing Stores, within ~~five~~three (~~5~~3) business days after filing any Additional Closing Store List with the Court, the Debtors will serve by first-class mail, copies of this Final Order, the Consulting Agreement, and the Sale Guidelines on the Dispute Notice Parties.

(D)     To the extent that there is a dispute arising from or relating to the Sales, this Final Order, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten (10) days following entry of this Final Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Nicholas M. Adzima and Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Charles B. Sterrett; (b) Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn.: Domenic E. Pacitti, Michael W. Yurkewicz, and Alyssa M. Radovanovich and Klehr Harrison Harvey Branzburg LLP, 1835 Market Street, Suite 1400, Philadelphia, Pennsylvania 19103, Attn: Morton R. Branzburg; (c) counsel to Hilco Merchant Resources, LLC, Chipman, Brown, Cicero & Cole, LLP, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn: Mark L. Desgrosseilliers; and (d) the affected landlord. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

(E)     In the event that a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to this Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to

affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to this Final Order, absent further order of the Court.  Upon the entry of this Final Order, the Court grants authority for the Debtors and the Consultant to conduct the Sales pursuant to the terms of this Final Order, the Consulting Agreement, and the Sale Guidelines (as may be modified by the Side Letters) and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(F)    If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (D) and (E) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

40.    ~~39.~~ Subject to paragraphs ~~37 and~~ 38 and 39 above, each and every federal, state, or Local agency, departmental, or Governmental Unit with regulatory authority over the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

41.    ~~40.~~ Provided that the Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Sale Guidelines (as may be modified by Side Letters), and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of

this Final Order and the Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

42. 41. Nothing in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

**VII. VI. Other Provisions.**

43. 42. To the extent the Debtors are subject to any state Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

44. 43. The Debtors shall have the authority, but not the obligation, to make payments under the Store Closing Bonus Plan, as may be amended from time to time.

45. 44. Neither the Consultant nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing

additional services to the Debtors or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores.

46.    45. Not later than seven (7) days prior to the objection deadline related to entry of an order approving the Motion on a final basis, the Consultant shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these chapter 11 cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.

47.    46. Consultant shall act solely as consultant to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Consulting Agreement (including the Consultant's indemnity obligations thereunder) or the Sale Guidelines, with the exception of acts of gross negligence or willful misconduct and, for greater certainty, the Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any legislation governing employment or labor standards or pension benefits or health and Safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

48.    47. The Subject to paragraphs 29 and 30 above, the Debtors are authorized and permitted to transfer to the Consultant personal information in the Debtors' custody and control solely for the purposes of assisting with and conducting the Sales and only to the extent necessary for such purposes, provided that Consultant removes such personal information from the FF&E prior to the abandonment of the same.

49.    Comenity Bank is authorized, and the Debtors consent to, the institution of a temporary reserve (the "Temporary Reserve") in favor of Comenity Bank in an amount no greater than $250,000; *provided that* Comenity Bank shall return all unused funds in the

Temporary Reserve to the Debtors no later than three (3) months following the completion of all Sales at the Closing Stores.  Additionally, all parties reserve their rights with respect to the limited objections and responses discussed by Comenity Bank and the Debtors on the record at the hearing held on April 23, 2024.

50.    Nothing in this Final Order shall amend, alter, or otherwise modify the terms of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Final DIP Order") as it relates to the Tax Reserve (as defined therein) established as adequate protection for the claims of the Texas Taxing Authorities (as defined therein).

51.    48. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity amount of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not

be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to payments made to the Consultant, which are governed by the reconciliation procedures in the Consulting Agreement.

52.    49. No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Final Order without further court approval on notice to parties in interest.

53.    50. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

54.    51. Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as

to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.*; provided, however, that this Final Order does and shall provide that the Consulting Agreement is assumed by the Debtors; provided, further, that any claims of the Consultant under the terms of the Consulting Agreement shall be and hereby are allowed as post-petition claims, entitled to priority as administrative expense claims under section 503(b)(1).*

55. ~~52.~~ The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

56. ~~53.~~ Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving the debtor-in-possession financing in these chapter 11 cases.

57. ~~54.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

58. ~~55.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

59. ~~56.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

60.    57. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

61.    58. This Court shall retain jurisdiction with regard to all issues or disputes relating to this Final Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## Exhibit 1

**Consulting Agreement**

**Exhibit 2**

**Sale Guidelines**

## Sale Guidelines[1]

1.   The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2.   The Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3.   On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Consultant may solicit customers in the Closing Stores themselves.  On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.   The Debtors and the Consultant shall have the right to use and sell the Store Closure Assets and the Additional Agent Goods.  The Debtors and the Consultant may advertise the sale of the Store Closure Assets and the Additional Agent Goods in a manner consistent with these Sale Guidelines.  The purchasers of any of the Store Closure Assets and the Additional Agent Goods sold during the Sales shall be permitted to remove the Store Closure Assets and the Additional Agent Goods either through the back or alternative shipping areas at any time, or through other areas after store business hours; provided, however, that the foregoing shall not apply to the sale of de minimis Store Closure Assets and Additional Agent Goods, whereby the item(s) can be carried out of the store in a shopping bag.

5.   At the conclusion of the Sale, the Consultant shall vacate the Closing Stores; *provided* that Consultant may abandon any furniture, fixtures, and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking) ("FF&E") not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Consultant. The Consultant shall notify the Merchant of its intention to abandon any FF&E at least two (2) days prior to the Termination Date.  The Merchant will have the option to remove the FF&E, at its own cost prior to the Termination Date.  ~~Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the~~

---

[1]   Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the Debtors' *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief.*

~~Merchant.~~ For the avoidance of doubt, as of the Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

6.    The Consultant may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", or similar-themed sales. The Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with the Consulting Agreement.

7.    The Consultant shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store. In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Consultant any additional restrictions not contained in the applicable lease agreement.

8.    Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

9.    Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

10.   The Consultant shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Closing Store shall be removed or sold during the Sales. The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

11.   The Consultant shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

12. The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

13. Subject to the provisions of the Consulting Agreement, the Consultant shall have the right to use and sell all FF&E owned by the Merchant (the "Owned FF&E"), approved by the Merchant. The Consultant may advertise the sale of the Owned FF&E in a manner consistent with these guidelines and the Consulting Agreement. The purchasers of any Owned FF&E sold during the sale shall be permitted to remove the Owned FF&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Closing Store in a shopping bag. For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility, any FF&E.

14. At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Merchant, Consultant and their agents and representatives shall continue to have access to the Closing Stores as provided for in the Consulting Agreement.

15. The rights of landlords against Merchant for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease; *provided* that to the extent certain leases of Closing Stores require written confirmation of receipt of a key to effectuate surrender, this requirement is waived.

16. If and to the extent that the landlord of any Closing Store affected hereby contends that the Merchant or Consultant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant and Consultant as follows:

        If to Consultant:

        Hilco Merchant Resources, LLC
        One Northbrook Place
        5 Revere Drive, Suite 206
        Northbrook, IL 60062
        Facsimile: 847-849-0859
        Attention: T. Kellan Grant, Esq.

        with copies (which shall not constitute notice) to:

        Chipman, Brown, Cicero & Cole, LLP
        1313 North Market Street
        Suite 5400
        Wilmington, Delaware 19801
        Attention: Mark L. Desgrosseilliers

Email: desgross@chipmanbrown.com

If to Merchant:

Express, Inc.
One Express Drive
Columbus, OH 43230
Attention:  Laurel Krueger

with copies (which shall not constitute notice) to:

Klehr Harrison Harvey Branzburg LLP
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Attention: Domenic E. Pacitti, Michael W. Yurkewicz, and Alyssa M. Radovanovich
Email:  dpacitti@klehr.com
         myurkewicz@klehr.com
         aradvanovich@klehr.com

- and -

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Attention: Morton R. Branzburg
Email:  mbranzburg@klehr.com

- and -

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Nicholas M. Adzima
Email:  joshua.sussberg@kirkland.com
         emily.geier@kirkland.com
         nicholas.adzima@kirkland.com

- and -

Kirkland & Ellis LLP
300 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:  Charles B. Sterrett
Email:  charles.sterrett@kirkland.com

32

17.     If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than three (3) business days' written notice to the other party, served by email or overnight delivery.