IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| EXPRESS, INC., *et al.*,[1] | ) Case No. 24-10831 (KBO) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Related to Docket No. 6** |

**NOTICE OF REVISED TRADE AGREEMENT REGARDING
MOTION OF DEBTORS SEEKING ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY PREPETITION
CLAIMS OF (A) CERTAIN CRITICAL VENDORS, (B) CERTAIN FOREIGN
VENDORS, (C) CERTAIN LIEN CLAIMANTS, (D) 503(B)(9) CLAIMANTS, AND
(E) PACA CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY
OF CRITICAL OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE that the above captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit the following:

1. On April 22, 2024 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), with the Clerk of the United States Bankruptcy Court for the District of Delaware.

2. On April 22, 2024, the Debtors filed the *Motion of Debtors Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Certain Foreign Vendors, (C) Certain Lien Claimants, (D) 503(b)(9) Claimants, and (E) PACA*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

10974585.v2

*Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related* [Docket No. 6] (the "Motion").

3. Attached as Exhibit C to the Motion was a form of vendor agreement that the Debtors intend to utilize with respect to the Motion (the "Form Vendor Agreement").

4. The Debtors have revised the Form Vendor Agreement to incorporate comments from the Official Committee of Unsecured Creditors.

5. A copy of the revised Form Vendor Agreement is attached hereto as **Exhibit A**. A copy of the revised Form Vendor Agreement marked to show changes to the version filed with the Motion is attached hereto as **Exhibit B**.

Dated: May 14, 2024
Wilmington, Delaware

*/s/ Michael W. Yurkewicz*
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:   (302) 426-1189
Facsimile:   (302) 426-9193
Email:          dpacitti@klehr.com
                   myurkewicz@klehr.com
                   aradvanovich@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:   (215) 569-3007
Facsimile:   (215) 568-6603
Email:          mbranzburg@klehr.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                   emily.geier@kirkland.com
                   nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:          charles.sterrett@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

2

10974585.v2

# **EXHIBIT A**

## **Revised Form Vendor Agreement**

> **THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

AGREEMENT

Express, Inc. and its affiliates (collectively, the "Company"), on the one hand, and the supplier identified in the signature block below ("Supplier," and together with the Company, the "Parties," each, a "Party"), on the other hand, hereby enter into the following Agreement (this "Agreement") dated as of the date in the Supplier's signature block below.

## Recitals

WHEREAS on April 22, 2024 (the "Petition Date"), Express, Inc. and its indirect and direct subsidiaries and related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

WHEREAS on April 24, 2024, the Court entered its *Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Certain Foreign Vendors, (C) Certain Lien Claimants, and (D) PACA Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* (the "Interim Order") [Docket No. 82] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.

WHEREAS on [●], the Court entered its *Final Order (I) Authorizing Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Certain Foreign Vendors, (C) Certain Lien Claimants, (D) 503(b)(9) Claimants, and (E) PACA Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* (the "Final Order") [Docket No. [●]] authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Supplier delivered goods to the Company, and the Company paid Supplier for such goods, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims Supplier may hold against the Company.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Order or Final Order.

**Agreement**

1.      <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      <u>Supplier Payment</u>.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[●] (the "<u>Agreed Supplier Claim</u>").  Following execution of this Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[●] on account of its prepetition claim (the "<u>Supplier Payment</u>") (without interest, penalties, or other charges), as such invoices become due and payable.

3.      <u>Agreement to Supply</u>.

      a.      Supplier shall supply goods and/or perform services to the Company, and the Company shall accept and pay for goods and/or services from Supplier, for the Duration of the Debtors' Chapter 11 Cases[2] based on the following "<u>Customary Trade Terms</u>":  the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 180 days prior to the Petition Date except for any partial payments or other payments (or assurances) Company made with respect to any unfinished product.  The Parties agree and acknowledge that Supplier's continued production, delivery, and/or shipment of postpetition goods and services is an actual and necessary benefit conferred on the Debtors' estates, and shall be paid for in full in the ordinary course of business consistent with the Customary Trade Terms as administrative expense claims under the Bankruptcy Code without the need for Supplier to file any formal request for payment or proof of claim in the amount of the goods accepted by the Company that remain unpaid when due pursuant to this Agreement.

      b.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

      c.      Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

---

[2] "<u>Duration of the Debtors' Chapter 11 Cases</u>" means the earliest of:  (a) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (b) the conversion of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) the closing of a sale of all or a material portion of the Debtors' assets pursuant to section 363 of the Bankruptcy Code resulting in a cessation of the Debtors' business operations; (d) the completion of a liquidation of the Debtors or a cessation of the Debtors' business operations; or (e) a default under any of the Debtors' debtor-in-possession financing facilities that results in the Debtors losing access to funds available under any such facility; *provided* that the Parties' and the Official Committee of Unsecured Creditors rights are reserved with respect to the continuing supply of goods and services in the event that of an (x) announcement that the Debtors are no longer pursuing the sale of the business as a going concern or pursuing a plan of reorganization; or (y) the announcement of a liquidation of the Debtors or cessation of the Debtors' business operations.

4. <u>Other Matters</u>.

a. Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Agreement or a plan confirmed in the Company's chapter 11 case; *provided*, that nothing in this Agreement shall prohibit Supplier from (a) filing a proof of claim with the Court or the Court-appointed claims agent; or (b) filing with the Court, or otherwise seeking, a request for payment of an administrative expense claim.

b. During the Duration of the Debtors' Chapter 11 Cases, Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising solely from prepetition agreements or transactions; *provided*, that no such prohibition shall apply upon Company's default under the terms of this Agreement. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Agreement, upon Supplier's receipt of the Supplier Payment, Supplier will promptly take all necessary actions to remove such liens.

5. <u>Breach</u>.

a. In the event that the Company pays Supplier its Supplier Payment and Supplier is determined by the Court to have breached this Agreement (a "<u>Supplier Breach</u>"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b. In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made, and Supplier may file a proof of claim with the Court or the Court-appointed claims agent for all amounts and claims that may be due and owing to Supplier (and the Debtors agree that they shall not object that such proof of claim is untimely).

c. Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Agreement. Supplier hereby waives any defense that a remedy at law is adequate. Notwithstanding the foregoing, in any event of a specific performance action by the Company, the Supplier retains its right to seek adequate assurance of payment and other similar relief pursuant to applicable law.

3

        d.    In the event the Debtors fail to pay for goods or services produced, shipped, or delivered postpetition in accordance with this Agreement, and the Debtors fail to cure such default within ten days after receiving written notice of such default, the Supplier shall have the right to terminate this Agreement, in which event the Supplier (a) shall have no obligation to continue to provide goods or services to the Debtors; and (b) reserves its rights to file a proof of claim, or administrative expense claim, for all amounts due and owing to Supplier (and the Debtors agree that they will not object that such proof of claim or administrative expense claim is untimely).

6.    Notice.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Express, Inc.
One Express Drive, Columbus, Ohio 43230
Attn: Laurel Krueger

and

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York 10022
Attn: Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Nicholas M. Adzima
E-mail: joshua.sussberg@kirkland.com
        emily.geier@kirkland.com
        nicholas.adzima@kirkland.com
Facsimile: (212) 446-4800and

Kirkland & Ellis LLP
333 West Wolf Point Plaza, Chicago, Illinois 60654
Attn: Charles B. Sterrett and Max M. Freedman
E-mail: charles.sterrett@kirkland.com
        max.freedman@kirkland.com
Facsimile: (312) 862-2200

and

Klehr Harrison Harvey Branzburg LLP
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Attention: Domenic E. Pacitti, Michael W. Yurkewicz, and Alyssa M. Radovanovich
Email: dpacitti@klehr.com
        myurkewicz@klehr.com
        aradvanovich@klehr.com
Facsimile:   (302) 426-9193

and

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Attention: Morton R. Branzburg
Email:  mbranzburg@klehr.com
Facsimile:  (215) 568-6603

7.    Representations and Acknowledgements.  The Parties agree, acknowledge, and represent that:

a.    the Parties have reviewed the terms and provisions of the [Interim Order/Final Order] and this Agreement and consent to be bound by such terms and that this Agreement is expressly subject to the procedures approved pursuant to the [Interim Order/Final Order];

b.    any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the [Interim Order/Final Order];

c.    if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under this Agreement, [the Interim Order, the Final Order,] the Bankruptcy Code, or applicable law; and

d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8.    Confidentiality.  In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Agreement; (b) any and all payments made by the Company pursuant to this Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided, further, that* if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.  Nothing in this section shall prohibit Supplier from disclosing and/or disseminating this Agreement to its retained advisors, governing tax authorities, or governing regulators or agencies, and supplier may make such limited disclosures with no advance notice to the Company.

9.    Miscellaneous.

a.    The Parties hereby represent and warrant that:  (a) they have full authority to execute this Agreement on behalf of the respective Parties; (b) the respective Parties have full

5

knowledge of, and have consented to, this Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Agreement.

      b.    This Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties.

      c.    On the effective date of a chapter 11 plan, if the Supplier is not in breach of this Agreement as of such date, as additional consideration for the promises and the mutual covenants set forth herein, then the Company hereby waives, discharges, and forever releases Supplier from any claims arising under section 547 of the Bankruptcy Code, and all analogous claims arising under applicable state and non-bankruptcy law that the Company may hold for all purposes whatsoever and such claims shall not be asserted against the Supplier by the Company or its eligible assignees, successors, purchasers, or transferees, including a post-confirmation trustee, chapter 11 trustee, or chapter 7 trustee.

      d.    Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

      e.    This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

      f.    The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Agreement.  As appropriate, the terms of this Agreement shall be governed by the Bankruptcy Code and Delaware law, each as may be applicable.

      f.    This Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[Signature Page Follows]

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[COMPANY]**                                              **[SUPPLIER]**

By:                                                                     By:
Title:                                                                    Title:
                                                               Address:

                                                               Date:

## EXHIBIT B

**REDLINED Revised Form Vendor Agreement**

> **THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

AGREEMENT

Express, Inc. and its affiliates (collectively, the "Company"), on the one hand, and the supplier identified in the signature block below ("Supplier," and together with the Company, the "Parties," each, a "Party"), on the other hand, hereby enter into the following Agreement (this "Agreement") dated as of the date in the Supplier's signature block below.

### Recitals

WHEREAS on April 22, 2024 (the "Petition Date"), Express, Inc. and its indirect and direct subsidiaries and related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

WHEREAS on [●]April 24, 2024, the Court entered its *Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Certain Foreign Vendors, (C) Certain Lien Claimants, and (D) PACA Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* (the "Interim Order") [Docket No. [●]82] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.

WHEREAS on [●], the Court entered its *Final Order (I) Authorizing Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Certain Foreign Vendors, (C) Certain Lien Claimants, (D) 503(b)(9) Claimants, and (E) PACA Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* (the "Final Order") [Docket No. [●]] authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Supplier delivered goods to the Company, and the Company paid Supplier for such goods, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "Party," and collectively,

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Order or Final Order.

the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims Supplier may hold against the Company.

2

**Agreement**

1. <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. <u>Supplier Payment</u>.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[●] (the "<u>Agreed Supplier Claim</u>").  Following execution of this Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[●] on account of its prepetition claim (the "<u>Supplier Payment</u>") (without interest, penalties, or other charges), as such invoices become due and payable.

3. <u>Agreement to Supply</u>.

    a. Supplier shall supply goods and/or perform services to the Company, and the Company shall accept and pay for goods and/or services from Supplier, for the dDuration of the Debtors' cChapter 11 cCases[2] based on the following "<u>Customary Trade Terms</u>":  the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 180 days prior to the Petition Date except for any partial payments or other payments (or assurances) Company made with respect to any unfinished product.  The Parties agree and acknowledge that Supplier's continued production, delivery, and/or shipment of postpetition goods and services is an actual and necessary benefit conferred on the Debtors' estates, and shall be paid for in full in the ordinary course of business consistent with the Customary Trade Terms as administrative expense claims under the Bankruptcy Code without the need for Supplier to file any formal request for payment or proof of claim in the amount of the goods accepted by the Company that remain unpaid when due pursuant to this Agreement.

    b. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

    c. Supplier shall continue to honor any existing allowances, credits,

---

[2] "Duration of the Debtors' Chapter 11 Cases" means the earliest of:  (a) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (b) the conversion of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) the closing of a sale of all or a material portion of the Debtors' assets pursuant to section 363 of the Bankruptcy Code resulting in a cessation of the Debtors' business operations; (d) the completion of a liquidation of the Debtors or a cessation of the Debtors' business operations; or (e) a default under any of the Debtors' debtor-in-possession financing facilities that results in the Debtors losing access to funds available under any such facility; *provided* that the Parties' and the Official Committee of Unsecured Creditors rights are reserved with respect to the continuing supply of goods and services in the event that of an (x) announcement that the Debtors are no longer pursuing the sale of the business as a going concern or pursuing a plan of reorganization; or (y) the announcement of a liquidation of the Debtors or cessation of the Debtors' business operations.

3

contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4. Other Matters.

~~a. Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect. The Supplier Payment will be made concurrently with payment of other outstanding administrative clams as provided in a confirmed plan.~~

a. ~~b.~~ Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Agreement or a plan confirmed in the Company's chapter 11 case~~.~~; *provided*, that nothing in this Agreement shall prohibit Supplier from (a) filing a proof of claim with the Court or the Court-appointed claims agent; or (b) filing with the Court, or otherwise seeking, a request for payment of an administrative expense claim.

b. ~~c.~~ During the Duration of the Debtors' Chapter 11 Cases, Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising solely from prepetition agreements or transactions; *provided*, that no such prohibition shall apply upon Company's default under the terms of this Agreement. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Agreement, upon Supplier's receipt of the Supplier Payment, Supplier will promptly take all necessary actions to remove such liens.

5. ~~Supplier~~ Breach.

a. In the event that the Company pays Supplier its Supplier Payment and Supplier is determined by the Court to have breached this Agreement (a "Supplier Breach"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b. In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made~~.~~, and Supplier may file a proof of claim with the Court or the Court-appointed claims agent for all amounts and claims that may be due and owing to Supplier (and the Debtors agree that they shall not object that such proof of claim is untimely).

c. Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the

4

Company.  Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Agreement.  Supplier hereby waives any defense that a remedy at law is adequate ~~and any requirement to post bond or other security in connection with actions instituted for injunctive relief,~~.  Notwithstanding the foregoing, in any event of a specific performance~~, or other equitable remedies~~ action by the Company, the Supplier retains its right to seek adequate assurance of payment and other similar relief pursuant to applicable law.

        d.    In the event the Debtors fail to pay for goods or services produced, shipped, or delivered postpetition in accordance with this Agreement, and the Debtors fail to cure such default within ten days after receiving written notice of such default, the Supplier shall have the right to terminate this Agreement, in which event the Supplier (a) shall have no obligation to continue to provide goods or services to the Debtors; and (b) reserves its rights to file a proof of claim, or administrative expense claim, for all amounts due and owing to Supplier (and the Debtors agree that they will not object that such proof of claim or administrative expense claim is untimely).

6.    Notice.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Express, Inc.
One Express Drive, Columbus, Ohio 43230
Attn:  Laurel Krueger

and

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York 10022
Attn:  Joshua A. Sussberg, P.C., Emily E. Geier, P.C., and Nicholas M. Adzima
E-mail:  joshua.sussberg@kirkland.com
        emily.geier@kirkland.com
        nicholas.adzima@kirkland.com
Facsimile:  (212) 446-4800and

Kirkland & Ellis LLP
333 West Wolf Point Plaza, Chicago, Illinois 60654
Attn:  Charles B. Sterrett and Max M. Freedman
E-mail:  charles.sterrett@kirkland.com

5

        max.freedman@kirkland.com
Facsimile: (312) 862-2200

and

Klehr Harrison Harvey Branzburg LLP
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Attention: Domenic E. Pacitti, Michael W. Yurkewicz, and Alyssa M. Radovanovich
Email: dpacitti@klehr.com
      myurkewicz@klehr.com
      aradvanovich@klehr.com
Facsimile: (302) 426-9193

and

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Attention: Morton R. Branzburg
Email: mbranzburg@klehr.com
Facsimile: (215) 568-6603

    7.    <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge, and represent that:

    a.    the Parties have reviewed the terms and provisions of the [Interim Order/Final Order] and this Agreement and consent to be bound by such terms and that this Agreement is expressly subject to the procedures approved pursuant to the [Interim Order/Final Order];

    b.    any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the [Interim Order/Final Order];

    c.    if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under this Agreement, [the Interim Order, the Final Order,] the Bankruptcy Code, or applicable law; and

    d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

    8.    <u>Confidentiality</u>. In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party:

6

(a) this Agreement; (b) any and all payments made by the Company pursuant to this Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided, further, that* if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide. Nothing in this section shall prohibit Supplier from disclosing and/or disseminating this Agreement to its retained advisors, governing tax authorities, or governing regulators or agencies, and supplier may make such limited disclosures with no advance notice to the Company.

9. Miscellaneous.

a. The Parties hereby represent and warrant that: (a) they have full authority to execute this Agreement on behalf of the respective Parties; (b) the respective Parties have full knowledge of, and have consented to, this Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Agreement.

b. This Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties. ~~Moreover, Supplier agrees to vote all claims now or hereafter beneficially owned by Supplier in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Supplier Claim that is materially consistent with this Agreement.~~

c. On the effective date of a chapter 11 plan, if the Supplier is not in breach of this Agreement as of such date, as additional consideration for the promises and the mutual covenants set forth herein, then the Company hereby waives, discharges, and forever releases Supplier from any claims arising under section 547 of the Bankruptcy Code, and all analogous claims arising under applicable state and non-bankruptcy law that the Company may hold for all purposes whatsoever and such claims shall not be asserted against the Supplier by the Company or its eligible assignees, successors, purchasers, or transferees, including a post-confirmation trustee, chapter 11 trustee, or chapter 7 trustee.

d. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

e. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

7

    f. ~~e.~~ The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Agreement.  As appropriate, the terms of this Agreement shall be governed by the Bankruptcy Code and Delaware law, each as may be applicable.

    f. This Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

    [Signature Page Follows]

8

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

| **[COMPANY]** | **[SUPPLIER]** |
|---|---|
| By: <br> Title: | By: <br> Title: <br> Address: <br><br> Date: |