IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | ) Case No. 24-10831 (KBO) |
| Debtors. | ) (Jointly Administered) |
| | ) **Hearing Date:** |
| | ) **June 6, 2024 at 9:30 a.m. (ET)** |
| | ) **Objection Deadline:** |
| | ) **May 30, 2024 at 4:00 p.m. (ET)** |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE EFFECTIVE AS OF APRIL 22, 2024**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit C** (the "Order"), authorizing the employment and retention of M3 Advisory Partners, LP ("M3"), as financial advisors to the Debtors effective as of April 22, 2024.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2

**Background**

4.      On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 67]. On May 3, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an

official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 154] (the "Committee").

## Retention of M3

5.  In consideration of the size and complexity of their businesses, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. M3 is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

6.  M3 is a leading, independent corporate advisory firm that provides operational, strategic, and financial solutions to a broad range of clients across a wide range of industries. M3 employs more than 70 professionals and its senior professionals have led hundreds of engagements, including some of the most significant restructurings in the market, while working alongside or across from the largest lenders, private equity sponsors, hedge funds, investment bankers, and legal advisors in the industry. M3's professionals have experience providing these services in many large and mid-size bankruptcy cases in this and other districts nationwide. *See, e.g.*, *Prime Core Technologies Inc.*, No 23-11161 (JKS) (Bankr. D. Del. Oct. 4, 2024); *In re Celsius Network LLC, et al.*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Oct. 18, 2022); *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (DRJ) (Bankr. S.D. Tex. Apr. 13, 2023); *In re PWMProperty Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. 2021); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. 2021); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. 2019); *In re Barneys New York, Inc.*, No. 19-36300 (CMG) (Bankr, S.D.N.Y. 2019); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018); *In re Real Industry, Inc.*, No. 17-12464 (KJC) (Bankr. D. Del. 2018).

7.  The Debtors submit this Application because of their need to retain a qualified and experienced financial advisor with the resources, capabilities, and experience of M3 to effectively manage their transition into, and continuation of operations in, these chapter 11 cases. As described in the declaration of Kunal S. Kamlani, a managing Partner at M3 (the "Kamlani Declaration"), attached hereto as **Exhibit B**, M3 has a wealth of experience providing financial advisory services to distressed companies in complex restructurings. M3 has an excellent reputation for providing high-quality services in large and complex chapter 11 cases on behalf of debtors and creditors in a range of unique circumstances. M3's expertise includes significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, and implementation of liquidity-enhancing and cost-saving strategies.

8.  Furthermore, since its engagement on August 18, 2023, M3 professionals have worked closely with the Debtors' management team, and other professionals, and have become well-acquainted with the Debtors' business and related matters.

9.  Accordingly, the Debtors believe that M3 is well qualified to advise the Debtors in an efficient and timely manner in the chapter 11 cases.

## Services to be Provided

10. The Debtors propose to retain and employ M3 on the terms and conditions set forth in the engagement letter, dated August 18, 2023 (as amended, supplemented or otherwise modified prior to the date hereof, the "Engagement Letter"), attached hereto as **Exhibit A**, except as otherwise explicitly set forth herein or in any order granting this Application.

11. As set forth in detail in the Engagement Letter, M3 has agreed to provide certain advisory services (the "Services") to the Debtors in connection with these chapter 11 cases, a summary of which is set forth below and fully described in the Engagement Letter:[3]

- Support the Debtor's management team in evaluating the business operations and financial prospects of the Client and preparing cash flow forecasts;

- Advise and assist the Debtor and its counsel with their on-going assessment of the Debtors' financial performance and its ability to repay its outstanding obligations;

- Provide such services as outlined in the August 2023 M3 Scope & Fee Estimate attached to the Kamlani Declaration;

- Support the Client's management team in developing and implementing initiatives too optimize cash flow;

- Support the Client's executive team in developing and implementing initiatives to enhance the enterprise value of Express; and

- Provide such other services as M3 and the Debtor shall otherwise agree in writing.

12. The Debtors do not believe that the services to be rendered by M3 will be duplicative of the services performed by any other professional, and M3 will work with the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

13. M3's performance of the Services is critical to the Debtors' ongoing efforts to successfully achieve their chapter 11 objectives and preserve and maximize the value of their estates. As a result, the Debtors submit that M3 is well-qualified and best suited to perform the Services.

---

[3] The summaries of certain terms of the Engagement Letter herein are qualified in their entirety by reference to the provisions of such Engagement Letter. To the extent there is any discrepancy between the summaries contained in this application and the terms of the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined, capitalized terms used in these summaries shall have the meanings ascribed to them in the Engagement Letter.

**Professional Compensation**

14. Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and such other procedures as may be fixed by order of the Court, the Debtors will compensate M3 in accordance with the terms and conditions of the Engagement Letter.

15. As set forth more fully in the Engagement Letter, M3 and the Debtors have agreed on the terms of compensation and expense reimbursement (the "Service Fees and Expenses") to (a) compensate M3 for the services set forth in the Engagement Letter on an hourly basis in accordance with M3's ordinary and customary rates in effect on the date such services are rendered, and (b) reimburse reasonable allocated and direct expenses incurred by M3 in connection with all services performed on behalf of the Debtors.

16. The current standard U.S. hourly rates (expressed in USD), subject to periodic adjustments, that M3 professionals will charge for the work of professionals and staff members pursuant to the Engagement Letter as follows:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,415 |
| Senior Managing Director | $1,305 |
| Managing Director | $1,075 - $1,205 |
| Senior Director | $1,050 |
| Director | $880 - $990 |
| Vice President | $786 |
| Senior Associate | $680 |
| Associate | $575 |
| Analyst | $470 |

17. These hourly rates reflect M3's normal and customary billing practices for engagements of this complexity and magnitude. M3 revises its hourly rates periodically and M3

will provide ten (10) business days' advance notice of any rate increases to the Debtors, the U.S. Trustee, and the Committee.

18. In addition to compensation for professional services, M3 will seek reimbursement for reasonable and documented out-of-pocket expenses incurred in connection with these chapter 11 cases, including, without limitation, travel costs. All fees and expenses due to M3 will be billed in accordance with any interim compensation orders entered by this Court and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

19. The Debtors believe that the Service Fees and Expenses are reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to M3 for comparable engagements, both in and out of chapter 11. The Service Fees and Expenses summarized above and described more fully in the Engagement Letter are consistent with M3's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with chapter 11 cases. In addition, the Service Fees and Expenses are comparable to the terms and conditions M3 offers to similar clients for similar services. The Debtors therefore submit that the Service Fees and Expenses are fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

20. To the best of the Debtors' knowledge, information, and belief, and as set forth in the Kamlani Declaration, M3 has not shared or agreed to share any of its compensation from the Debtors or any other person, other than as permitted by Bankruptcy Code section 504. Further, M3 has not received any promises as to compensation in connection with these chapter 11 cases, other than as outlined in the Engagement Letter.

21. M3 will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. M3's applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by this Court.

## Indemnification

22. The Engagement Letter contains standard indemnification language, described in Annex I of the Engagement Letter, with respect to M3's services including, without limitation, an agreement by the Debtors to indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each, against all costs, fees, expenses, damages, and liabilities relating to or arising out of the Engagement Letter or M3's services, except to the extent caused by bad faith, gross negligence, or willful misconduct.

23. The indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") are customary and reasonable for M3 and comparable firms providing financial advisory services. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and M3 at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of M3's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require M3's services to successfully reorganize.

**Compensation Received by M3**

24.     Prior to the Petition Date and upon execution of the Engagement Letter, M3 received an initial retainer of $150,000 from the Debtors, which was subsequently was increased to $750,000 (the "Retainer").  Pursuant to the Engagement Letter, invoiced amounts have been offset against the Retainer and payments on the invoices have been used to replenish the Retainer.  As set forth in the Kamlani Declaration, according to M3's books and records for the ninety days prior to the Petition Date, M3 received cash payments from the Debtors of $4,605,762.11 on account of retainers, invoices for financial advisory services performed and expenses incurred in contemplation of, or in connection with, the Debtors' restructuring efforts.  M3's current estimate is that it received unapplied advance payments from the Debtors in excess of prepetition billings of approximately $887,111, which is subject to final determination after all prepetition billings, expenses and collections are reconciled.  The unapplied residual Retainer will be held until the end of these chapter 11 cases and applied to M3's fees.

25.     The terms of the Engagement Letter, including the indemnification provisions, were fully negotiated between the Debtors and M3 at arm's length and in good faith.  The Debtors respectfully submit that the indemnification provisions, as modified by the Order, are customary, reasonable, and in the best interests of the Debtors, their estates, and creditors.  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions.  Such terms of indemnification reflect the qualifications and limits on such terms that are customary for financial advisors such as M3 in chapter 11 cases.

**M3's Disinterestedness**

26.     To the best of the Debtors' knowledge, except as otherwise disclosed in the Kamlani Declaration, (a) M3 is a "disinterested person" within the meaning of Bankruptcy Code

section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates, and (b) M3 has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Kamlani Declaration.

27. As disclosed in the Kamlani Declaration, M3 has in the past represented, currently represents, and likely in the future will represent, certain parties in interest in the chapter 11 cases. All such representations (other than its prepetition services to the Debtors described herein) are or were in connection with matters wholly unrelated to the Debtors and the chapter 11 cases. Pursuant to Bankruptcy Code section 327(c), M3 is not disqualified from acting as the Debtors' financial advisor merely because it has represented or currently represents certain parties in interest in matters unrelated to the chapter 11 cases.

28. Accordingly, the Debtors believe that M3 is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

29. M3 will review its files periodically during the pendency of the chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, M3 will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Basis for Relief

30. The Debtors respectfully request retention of M3 as their financial advisor pursuant to Bankruptcy Code section 327(a), which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

31. The Debtors respectfully request retention of M3 under a general retainer pursuant to Bankruptcy Code section 328(a), which provides that a debtor, subject to court approval:

> [M]ay employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a)

32. Bankruptcy Rule 2014(a) requires that an application for retention include: [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *See* Fed. R. Bankr. P. 2014(a)

33. Pursuant to Bankruptcy Rule 2016(b), M3 has neither shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person, other than with the employees and professionals associated with M3 as permitted under Bankruptcy Code section 504(b)(1), or (b) any compensation another person or party has received or may receive from the Debtors. Other than as set forth above, there is no proposed arrangement between the Debtors and M3 with respect to compensation to be paid in these cases. M3 will

comply with the requirements of Local Rule 2016-2 when requesting compensation or reimbursement for expenses during these cases.

34. M3 has significant relevant experience, including with the Debtors, to deal effectively and efficiently with the primary legal issues and problems likely to arise in the context of these cases. The Debtors believe that M3 is both well-qualified and uniquely able to represent them in the chapter 11 cases in an efficient and effective manner. If the Debtors were required to retain a financial advisor other than M3 in connection with their chapter 11 cases, the Debtors, their estates, and all parties in interest would be unduly and materially prejudiced, including by the time and substantial expense necessary to enable other counsel to become familiar with the Debtors' businesses and restructuring goals.

35. The Debtors submit that for all the reasons stated above and in the Kamlani Declaration, the retention and employment of M3 as its financial advisor is warranted. Further, as stated in the Kamlani Declaration, M3 is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Kamlani Declaration. Accordingly, the retention of M3 as financial advisor to the Debtors should be approved.

36. Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). For the reasons discussed above and in the Kamlani Declaration, M3 satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.

37. Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional

person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions.

38. The Debtors respectfully submit that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code given the numerous issues that M3 may be required to address in the performance of the Services and the market prices for M3's services for engagements of this nature.

39. As set forth above, M3 intends to apply for compensation for professional services rendered, and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

### Notice

40. Debtors will provide notice of this application to (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the official committee of unsecured creditors; (c) the DIP Agents and counsel thereto; (d) the ABL Lenders and counsel thereto; (e) the FILO Agent and counsel thereto; and (f) any party that request service pursuant to Bankruptcy Rule 2002. A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://cases.stretto.com/Express. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

**No Prior Request**

41. No prior request for the relief sought in this application has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit C** granting the relief requested herein and granting such other relief as is just and proper.

Dated: May 16, 2024  
Columbus, Ohio

*/s/ Stewart Glendinning*  
Name:  Stewart Glendinning  
Title:  Chief Executive Officer