**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | Case No. 24-10831 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** |
| | **June 6, 2024 at 9:30 a.m. (ET)** |
| | **Objection Deadline:** |
| | **May 30, 2024 at 4:00 p.m. (ET)** |

**APPLICATION OF THE DEBTORS' FOR**
**ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF RCS REAL ESTATE**
**ADVISORS AS REAL ESTATE ADVISOR TO THE DEBTORS**
**AND DEBTORS IN POSSESSION, EFFECTIVE AS OF APRIL 26, 2024**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

respectfully state as follows in support of this application (this "Application"):

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):  (a) authorizing the Debtors to employ and retain Retail Consulting

Services, Inc. d/b/a RCS Real Estate Advisors ("RCS"), as their exclusive real estate advisor,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]  A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

effective as of April 26, 2024, pursuant to that certain engagement letter dated April 26, 2024, which is attached to the Order as <u>Annex 1</u>(the "<u>Engagement Letter</u>"), by and between RCS and Express, Inc; (b) approving the terms of the Engagement Letter; (c) waiving certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (d) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Ivan L. Friedman, in Support of Debtors' Application for Entry of an Order Authorizing the Employment and Retention of RCS Real Estate Advisors as Real Estate Advisor to the Debtors and Debtors In Possession, Effective as of April 26, 2024*, a copy of which is attached hereto as **Exhibit B** (the "<u>Friedman Declaration</u>").

## **Jurisdiction**

2.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rule 2014-1.

## **Background**

5.      The Debtors are an omnichannel fashion retail company whose business operates under a multi-banner portfolio comprised of Express, UpWest, and Bonobos.  Grounded in a belief

that style, quality, and value should all be found in one place, Express is a brand with a purpose. The Debtors offer their merchandise through approximately 600 stores throughout the United States and Puerto Rico—located primarily in high-traffic shopping malls, lifestyle centers, and outlets—as well as online through their U.S. e-commerce websites.  Headquartered in Columbus, Ohio, Express, Inc. is a publicly traded company that currently employs approximately 9,300 employees, of whom approximately 2,800 are full time.

6.      The Debtors commenced these chapter 11 cases to facilitate a timely and efficient process that will maximize the value of the Debtors' estates for the benefit of all stakeholders.  The Debtors anticipate right-sizing their retail footprint, winding down brick-and-mortar locations that are not part of their go-forward business plan.  The Debtors are seeking to implement a value-maximizing going-concern transaction for their remaining operations.

7.      On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On May 3, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 154] (the "Committee").

**Retention of RCS**

8.      The Debtors require a qualified and experienced real estate advisor with the resources, capabilities, and experience of RCS to assist them in the analysis, negotiation, termination, and disposition of certain of the Debtors' retail real estate assets.  A real estate advisor,

such as RCS, fulfills a critical service that complements the services provided by the Debtors' other professionals.

9.      RCS is a preeminent real estate consulting firm with its principal office located at 470 Seventh Avenue, New York, New York 10018.  Since its founding in 1981, RCS has been advising clients throughout the United States and Canada.  RCS has dedicated professionals who provide real estate advisory services to its clients and who have extensive experience optimizing retail real estate portfolios, reducing occupancy costs, and assisting in lease restructurings, services that are crucial to the success of the Debtors' cases.

10.     RCS has considerable experience providing real estate consulting services to financially troubled companies and has been retained in numerous large and complex chapter 11 cases, including, among others:  *In re Pack Liquidating, LLC*, No. 22-10797 (CTG) (Bankr. D. Del Oct. 24, 2022); *In re Solstice Marketing Concepts LLC*, No. 21-10306 (MG) (Bankr. S.D.N.Y. Apr. 13, 2021); *In re True Religion Apparel, Inc.*, No. 20-10941 (CTG) (Bankr. D. Del June 11, 2020); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del Nov. 4, 2019); *In re Payless Holdings LLC*, No. 17-42267-659 (KAS) (Bankr. E.D. Mo. May 9, 2017); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del Mar. 9, 2017); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016).

11.     RCS is familiar with the Debtors and their operations and has been engaged by the Debtors since April 26, 2024.  RCS has worked closely with the Debtors, their management, and their other advisors and has become well acquainted with, among other things, the Debtors' lease portfolio, real estate assets, and business needs.  Thus, RCS is particularly well suited to provide the real estate consulting services to the Debtors that are contemplated by the Engagement Letter and described herein.

## Services to Be Provided

12.     Pursuant to the Engagement Letter, RCS will advise and assist the Debtors in

connection with the following tasks:[3]

- providing real estate restructuring services to the Debtors, including but not limited to:

  o   preparing a Lease Portfolio Book, organized by landlord and by store, showing: (a) current and future lease terms; (b) current and Historical Sales; (c) current and Historical Profitability; (d) occupancy costs; (e) landlord; (f) square footage; (g) location; (h) rental costs relative to location profitability; (i) sales relative to square footage; (j) termination date; (k) option information; and (l) kickout information;

  o   undertaking an in-depth analysis of all the Debtors' leased retail real estate assets, including a review of each asset's occupancy costs relative to sales volume and store profit contribution;

  o   assisting the Debtors in developing the Real Estate Action Plan to determine the most suitable course of action for each store;

  o   contacting and negotiating with designated landlords as deemed necessary by the Debtors; and

  o   working with landlords and the Debtors to document all lease modification proposals;

- providing real estate restructuring services to the Debtors, including but not limited to:

  o   creating a marketing program and budget which may include newspaper, magazine or journal advertising, letter and/or flyer solicitation, placement of signs, direct telemarketing, email, fax blasts, and such other marketing methods as may be necessary;

  o   marketing the Disposition Properties;

  o   preparing and disseminating marketing materials;

  o   communicating with parties who express an interest in a Disposition Property;

---

[3]     The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Engagement Letter, the Engagement Letter will control. In the event of any inconsistency between the Engagement Letter and the Order, the Order will control. Capitalized terms used but not defined in such summary shall have the meaning ascribed to them in the Engagement Letter.

o   locating additional parties who may have an interest in the purchase of a Disposition Property;

o   providing the Debtors with an updated and current list of all parties that expressed interest in a Disposition Property, which list shall include the name and address of each such party as well as the date of initial contact with each such party;

o   responding to and providing the information necessary to negotiate with and solicit offers from prospective purchasers and/or settlements from landlords;

o   making recommendations to the Debtors as to the advisability of accepting particular offers or settlements; and

o   offering for disposition, on terms and conditions established by the Debtors, all properties designated in writing by the Debtors for sale or other disposition on an "exclusive right to sell" basis.

13.    The Debtors believe that RCS is well qualified and able to provide the foregoing services to the Debtors.  RCS has indicated a willingness to act on behalf of the Debtors, on the terms described herein and in the Order.

**Professional Compensation**

14.    RCS's decision to advise and assist the Debtors is conditioned upon its ability to be retained, compensated, and reimbursed (for the expenses it incurs) in accordance with its customary terms and conditions and billing practices, the terms set forth in the Engagement Letter, and to the extent of any modifications to the terms of the Engagement Letter as may, subject to RCS's consent,  be provided in the Order (collectively, the "Fee Structure").

15.    The proposed compensation arrangements are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for RCS to act expeditiously and prudently with respect to the matters for which it will be employed.  Accordingly, because the Debtors are seeking to retain RCS under section 328(a) of the Bankruptcy Code, the Debtors believe that RCS's compensation should not be subject to any additional standard of review under section 330

of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

16.     In summary, the Fee Structure provides that the Debtors shall pay RCS fees in relation to the following services:[4]

(i)     **Monetary Lease Modifications:** For each Monetary Lease Modification ("Monetary Lease Modification") obtained by RCS on behalf of the Company and agreed to by the Company in its sole and absolute discretion, RCS shall earn and be paid a fee in the amount of four percent (4%) of the occupancy cost savings per lease during the lease term and 2% of the occupancy cost savings per lease during the option term of such lease.

(ii)    **Non-Monetary Lease Modifications**: For each lease that becomes subject to one or more Non-Monetary Lease Modifications ("Non-Monetary Lease Modification") obtained by RCS on behalf of the Company and agreed to by the Company in its sole and absolute discretion, RCS shall earn and be paid a fee of $2,500.00 per lease.

(iii)   **Early Termination Rights**:   For each Early Termination Right ("Early Termination Rights") obtained by RCS on behalf of the Company and agreed to by the Company in its sole and absolute discretion, RCS shall earn and be paid a flat fee $2,000 per lease.

(iv)    **Lease Sales**:  For each Lease Sale ("Lease Sales") obtained by RCS on behalf of the Company and agreed to by the Company in its sole and absolute discretion, RCS shall earn and be paid a fee of four percent (4%) of the Gross Proceeds.

(v)     **Landlord Consents**:  If requested by the Company, for each consent obtained by RCS to extend the Company's time to assume or reject a lease ("Landlord Consents"), or pay rent on a per diem basis, as a part of any applicable Chapter 11 case, RCS shall earn and be paid a fee in the amount of five hundred dollars ($500) per lease.

---

[4]   The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects.  In the event of any inconsistency between the Fee Structure as set forth herein and the Engagement Letter, the Engagement Letter, as may be modified by the Oder (with any modifications being subject to RCS's consent) will control.  Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

17.     More than one fee may be payable pursuant to the Fee Structure set forth above. Notwithstanding anything to the contrary set forth above, the aggregate amount of all fees, collectively, shall under no circumstances exceed $1,000,000.

18.     RCS may apply to the Court for reimbursement for all reasonable expenses incurred after the Petition Date (including travel, lodging, express mail, and postage) and RCS will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any orders entered in these chapter 11 cases regarding the reimbursement of expenses.

19.     As it is not the general practice of real estate advisors, including RCS, to keep detailed time records, and because RCS's compensation will be calculated and paid based on certain commission based fees, RCS requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, the fee guidelines established by the Office of the United States Trustee for the District of Delaware (the "United States Trustee Fee Guidelines"), and any otherwise applicable orders or procedures of the Court.

20.     The Debtors believe the Fee Structure is consistent with and typical of compensation arrangements entered into by RCS and other comparable firms in connection with the rendering of similar services under similar circumstances.  The Debtors believe that the ultimate benefit of RCS's services cannot be measured by reference to the number of hours to be expended by RCS's professionals in the performance of such services.  Indeed, the Debtors and RCS have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of RCS and its professionals in connection with these cases and in light of the fact that (a) such commitment may foreclose other opportunities for RCS and (b) the actual time and commitment required of RCS and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month.

21.     Notwithstanding anything to the contrary set forth in the Engagement Letter, or in any other order entered by the Bankruptcy Court setting procedures for the allowance and payment of professional fees, the payment of all fees to RCS under the Engagement Letter is as follows. The payment to RCS of fees on account of Lease Sales ("Lease Sales") shall be due and payable upon the closing of the applicable sale.  Except for payments on account of Lease Sales as provided for above, the Company shall pay all fees to RCS within ten (10) business days of the Company's receipt of an invoice.  In the event of any dispute of an invoice or any portion of an invoice, the parties shall work in good faith to resolve the dispute, and in the event the parties are not able to resolve such dispute, such dispute may be submitted to the Bankruptcy Court for resolution.  RCS may, but shall not be required to, file interim fee applications; *provided, however*, RCS shall file a final fee application with all payments made to RCS by the Debtors in these chapter 11 cases to remain subject to the filing of a final fee application and the entry of an order thereon.

22.     In light of the foregoing and given the numerous issues that RCS may be required to address in the performance of its services hereunder, RCS's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for RCS's services for engagements of this nature both in- and out-of-court and in the chapter 11 context, the Debtors believe that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

### **Indemnification**

23.     The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse RCS, its affiliates and their respective partners, officers, directors, agents and employees (the "Indemnified Persons"), in accordance with the provisions set forth in the Engagement Letter. The Engagement Letter provides, among other things, that the Debtors will indemnify RCS and other Indemnified Persons except to the extent that any loss, claim, damage, liability, or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no

longer subject to appeal or review to have resulted from such Indemnified Person's bad faith, gross negligence or willful misconduct.

24.     The indemnification, contribution, and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for real estate advisors such as RCS for proceedings both out of court and in chapter 11.   The terms of the Engagement Letter were fully negotiated between the Debtors and RCS at arm's-length and the Debtors respectfully submit that the Engagement Letter is reasonable and in the best interests of the Debtors, their estates, and stakeholders.   Accordingly, the Debtors request that the Court approve the Engagement Letter, subject to the modifications set forth in the Order, including that the indemnification provisions will survive termination or expiration of the RCS engagement.

## No Duplication of Services

25.     The Debtors intend that the services of RCS will not duplicate the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases.   The Engagement Letter reflects RCS's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that at their request RCS will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## RCS's Disinterestedness

26.     RCS has informed the Debtors that, except as set forth in the Friedman Declaration, RCS:  (a) has no connection with the Debtors, their creditors, prepetition and postpetition lenders, equity security holders, current and former directors or officers, non-debtor affiliates, major litigation parties, or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed by the Office of the U.S. Trustee in any matter related to the Debtors and their estates, or Judges of the Court; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code.  If any new material facts or relationships are discovered or arise, RCS will promptly inform the Court as required by Bankruptcy Rule 2014(a).

27.     Accordingly, to the best of the Debtors' knowledge, information, and belief that is based entirely in reliance on the representations made to the Debtors by RCS, which are reflected in the Friedman Declaration, none of RCS's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors or equity security holders in these chapter 11 cases.  As such, the Debtors believe that RCS is disinterested and holds no materially adverse interest as to the matters upon which it is to be retained in these chapter 11 cases.

### Basis for Relief

28.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).   As discussed above, RCS satisfies the disinterestedness standard of section 327(a).

29.     In addition, the Debtors seek approval of the Engagement Letter, including the Fee Structure set forth therein, pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

30.     Section 328 of the Bankruptcy Code permits the compensation of professionals on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations omitted).

31.     As set forth above, notwithstanding the employment of RCS under section 328(a) of the Bankruptcy Code, RCS may, but shall not be required to, file interim fee applications; *provided*, *however*, RCS shall file a final fee application with all payments made to RCS by the Debtors in these chapter 11 cases to remain subject to the filing of a final fee application and the entry of an order thereon, and the U.S. Trustee shall retain the sole right to object to RCS's fees based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

32.     The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by RCS in these chapter 11 cases, RCS's substantial experience in providing real estate consulting services, and the fee structures typically utilized by RCS and other leading real estate consulting firms that do not bill their client on an hourly basis. In agreeing to seek RCS's retention under section 328(a) of the Bankruptcy Code, the Debtors acknowledge that: (a) they believe that RCS's general restructuring experience and its knowledge of the retail real estate markets will inure to the benefit of the Debtors; (b) that the value to the Debtors of RCS's services under the Engagement Letter derives in substantial part from that expertise and experience; (c) that, accordingly, the Fee Structure is reasonable regardless of the number of hours to be expended by RCS's professionals in the performance of the services to be provided under the Engagement Letter; and (d) that any deferred fees earned by RCS pursuant to the Engagement Letter should not be considered to be "bonuses" or fee enhancements under applicable law.

33.     Indeed, RCS's retention and employment in other large chapter 11 cases under similar fixed and contingency fee arrangements has been routinely approved by courts in this circuit and elsewhere. *See, e.g.*, *In re Pack Liquidating, LLC*, No. 22-10797 (CTG) (Bankr. D. Del Oct. 24, 2022); *In re Solstice Marketing Concepts LLC*, No. 21-10306 (MG) (Bankr. S.D.N.Y. Apr. 13, 2021); *In re True Religion Apparel, Inc.*, No. 20-10941 (CTG) (Bankr. D. Del June 11, 2020); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del Nov. 4, 2019); *In re Payless Holdings LLC*, No. 17-42267-659 (KAS) (Bankr. E.D. Mo. May 9, 2017); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del Mar. 9, 2017); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016).

34.     Moreover, the Debtors and RCS believe that the indemnification provisions set forth in the Engagement Letter are customary and reasonable for real estate advisory engagements, both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions in this district, and others. *See, e.g.*, *In re Pack Liquidating, LLC*, No. 22-10797 (CTG) (Bankr. D. Del Oct. 24, 2022); *In re Solstice Marketing Concepts LLC*, No. 21-10306 (MG) (Bankr. S.D.N.Y. Apr. 13, 2021); *In re True Religion Apparel, Inc.*, No. 20-10941 (CTG) (Bankr. D. Del June 11, 2020); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del Nov. 4, 2019); *In re Payless Holdings LLC*, No. 17-42267-659 (KAS) (Bankr. E.D. Mo. May 9, 2017); *In re Eastern Outfitters, LLC*, No. 17-10243 (LSS) (Bankr. D. Del Mar. 9, 2017); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016).

## Notice

35.     The Debtors will provide notice of this motion to:  (a) the United States Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice;

(h) the DIP Agents and counsel thereto; (i) the ABL Lenders and counsel thereto;  (j) the FILO Agent and counsel thereto; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "<u>Notice Parties</u>").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## <u>No Prior Request</u>

36.    No prior application for the relief requested herein has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: May 16, 2024
Columbus, Ohio

/s/ *Stewart Glendinning*

Stewart Glendinning
Express, Inc.
Chief Executive Officer