**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EXPRESS, INC., *et al.*,[1] | ) Case No. 24-10831 (KBO) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date**: |
| | ) **June 6, 2024 at 9:30 a.m. (ET)** |
| | ) **Objection Deadline**: |
| | ) **May 30, 2024 at 4:00 p.m. (ET)** |
| | ) |

**APPLICATION OF THE DEBTORS**
**FOR ENTRY OF AN ORDER AUTHORIZING**
**AND APPROVING THE EMPLOYMENT AND RETENTION**
**OF MOELIS & COMPANY LLC AS INVESTMENT BANKER,**
**FINANCIAL ADVISOR, AND PLACEMENT AGENT FOR THE**
**DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE**
**APRIL 22, 2024, AND MODIFYING CERTAIN TIMEKEEPING REQUIREMENTS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Relief Requested**

1.      By this Application, the Debtors hereby seek the entry of an order

(the "Order"), substantially in the form attached hereto as **Exhibit B**, pursuant to sections 327(a)

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration or in the Engagement Letter.

and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1

and Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"):  (a) authorizing the

employment and retention of Moelis & Company LLC ("Moelis") to serve as the Debtors'

investment banker, financial advisor, and placement agent, effective as of the Petition Date (as

defined herein), in accordance with the terms and conditions set forth in the engagement letter

between Moelis and the Debtors, dated as of March 11, 2024 (the "Engagement Letter"), a copy

of which is attached as **Exhibit 1** to the Order; (b) approving the provisions of the Engagement

Letter, including the proposed compensation arrangements and the indemnification, exculpation,

contribution, and reimbursement provisions set forth in the Engagement Letter, pursuant to section

328(a) of the Bankruptcy Code; (c) modifying certain timekeeping requirements of Local Rules

2016(a) and 2016-2, the guidelines (the "Trustee Guidelines") of the Office of the United States

Trustee for the District of Delaware (the "U.S. Trustee"), and any other applicable procedures and

orders of the Court in connection with Moelis' proposed engagement; and (d) granting such other

relief as may be just and proper.  In support of this Application, the Debtors submit the declaration

of Adam Keil (the "Keil Declaration"), a copy of which is attached hereto as **Exhibit A** and

incorporated herein by reference.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of Delaware

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order of Reference from the United States District Court for the District of

Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013 1(f) of the Local Rules to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, rules 2014(a) and 2016 of the Bankruptcy Rules, and rules 2014-1 and 2016- 1 of the Local Rules.

**<u>Background</u>**

5.      The Debtors are an omnichannel fashion retail company whose business operates under a multi banner portfolio comprised of Express, UpWest, and Bonobos.  Grounded in a belief that style, quality and value should all be found in one place, Express is a brand with a purpose.  The Debtors offer their merchandise through approximately 600 stores throughout the United States and Puerto Rico—located primarily in high traffic shopping malls, lifestyle centers, and outlets—as well as online through their U.S. e-commerce websites.  Headquartered in Columbus, Ohio, Express, Inc. is a publicly traded company that currently employs approximately 9,300 employees, of whom approximately 2,800 are full time.

6.      The Debtors commenced these chapter 11 cases to facilitate a timely and efficient process that will maximize the value of the Debtors' estates for the benefit of all stakeholders.  The Debtors anticipate right sizing their retail footprint, winding down brick-and-mortar locations that are not part of their go-forward business plan.  The Debtors are seeking to implement a value maximizing going concern transaction for their remaining operations.

7.     On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 67]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On May 3, 2024, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") [Docket No. 154].

### Moelis' Qualifications

8.     Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 4th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,200 employees with geographic locations in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

9.     Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Proterra*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 25, 2023);

*In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Party City Holdco Inc., et al.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings*, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. May 1, 2019); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re MACH Gen, LLC*, No. 14 10461 (MFW) (Bankr.

D. Del. Apr. 11, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14 10454 (BLS) (Bankr. D. Del. Mar. 25, 2014).[3]

10. The Debtors have selected Moelis as their investment banker, financial advisor, and placement agent based upon, among other things: (a) the Debtors' need to retain a skilled investment banker, financial advisor, and placement agent to provide advice with respect to the Debtors' restructuring activities; (b) Moelis' extensive experience and excellent reputation in providing similar services in complex chapter 11 cases such as these; and (c) Moelis' extensive knowledge of the Debtors, as described below. In light of the size and complexity of these chapter 11 cases, Moelis' resources, capabilities and experience are crucial to the resolution of these cases. An experienced investment banker and financial advisor, such as Moelis, fulfills a critical service that complements the services provided by the Debtors' other professionals.

11. Moelis began advising the Debtors on strategic and restructuring initiatives prior to the commencement of these chapter 11 cases. Moelis was initially engaged as the Debtors' exclusive investment banker, financial advisor, and placement agent in March 2024 and has provided extensive prepetition and postpetition services in connection with the Debtors' restructuring efforts since then.

12. As a result of its prepetition work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, operations, capital structure and other material information and has become well-acquainted with the Debtors' business operations and capital structure.

---

[3]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

13.     Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors and all parties in interest.

## **Services to Be Provided**

14.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached as **Exhibit 1** to the Order, in consideration for the compensation contemplated therein, Moelis has and will perform the following services (the "Services"), as requested, for the Debtors:[4]

a.      assist the Debtors in conducting a business and financial analysis of the Debtors;

b.      assist the Debtors in identifying and evaluating potential counterparties for a Sale Transaction (each, a "Counterparty");

c.      assist the Debtors in identifying and contacting prospective purchasers of the Capital Transaction (each, a "Purchaser");

d.      assist the Debtors in preparing a marketing plan and information materials describing the Debtors (each, an "Information Presentation"), which Moelis may distribute to potential Counterparties and/or Purchasers on a confidential basis;

e.      assist the Debtors in contacting potential Counterparties, arranging meetings with such Counterparties and coordinating the due diligence investigation of the Debtors by such Counterparties, in each case as appropriate and acceptable to the Debtors;

f.      assist the Debtors in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

g.      assist the Debtors in structuring and negotiating any Restructuring, Sale Transaction or Capital Transaction;

h.      advise the Debtors as to the strategy and tactics of negotiations with such prospective Purchasers and participate in such negotiations;

---

[4]   The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

    i.      advise the Debtors as to the timing, structure and pricing of the Capital Transaction

    j.      meet with the Debtors' Board of Directors to discuss the proposed Transaction(s) and their financial implications; and

    k.      provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and the Debtors may mutually agree upon in writing.

15.     Such professional services are necessary to the Debtors' chapter 11 efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

## Professional Compensation

16.     Moelis' decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

17.     Moelis does not typically charge for its services on an hourly basis. Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the financial advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

18.     As set forth more fully in the Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure") pursuant to section 328(a), and not section 330, of the Bankruptcy Code. The Debtors have agreed to pay Moelis the following nonrefundable cash fees:

i. **Monthly Fee.** During the term of the Engagement Letter, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month. The Debtors will pay the first Monthly Fee immediately upon the execution of this Agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this Agreement. Whether or not a Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this Agreement. After three Monthly Fees have been earned and paid, 50% of the following Monthly Fees thereafter shall be offset, to the extent previously paid, against any Transaction Fees (as defined below).

ii. **Restructuring Fee.** A transaction fee (the "Restructuring Fee") of $3,250,000, payable promptly at the closing of a Restructuring.

iii. **Sale Transaction Fee.** A transaction fee (the "Sale Transaction Fee"), payable promptly at the initial closing of a Sale Transaction, equal to 2.0% of the Transaction Value (as defined in the Engagement Letter):

In the event of (i) a Transaction which constitutes both a Sale Transaction and a Restructuring, or (ii) a Sale Transaction resulting in the sale, transfer or disposition of all or substantially all the Debtors' assets, then, in each case, the Debtors will pay to Moelis only the greater of either (a) the Restructuring Fee and (b) the applicable Sale Transaction Fee.

iv. **Capital Transaction Fee.** A transaction fee (the "**Capital Transaction Fee**"), calculated separately with respect to each Capital Transaction, payable at the initial closing of any Capital Transaction, of:

a. 3.0% of the aggregate gross amount or face value of capital Raised[5] in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests, plus

b. 2.0% of the aggregate gross amount of unsecured debt obligations and other interests Raised in the Capital Transaction, plus

c. 1.0% of the aggregate gross amount of secured debt obligations and other interests Raised in the Capital Transaction.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.

---

[5] Amount of capital "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of the Debtors' obligations.

Any Transaction Fee(s)[6] earned and payable to Moelis shall not exceed $6,000,000 in the aggregate.

19.     If, at any time prior to the end of the Tail Period,[7] the Debtors consummate any Transaction[8] or enter into an agreement or a Plan is filed regarding any Transaction, and a Transaction is subsequently consummated, then the Debtors (or their bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) as specified above immediately upon the closing of any such Transaction(s).

20.     In addition to any fees payable to Moelis, the Debtors will reimburse Moelis, whether or not the Debtors consummate a Transaction, for all of its expenses as they are incurred in performing services pursuant to the Engagement Letter.  Such expenses include, without limitation, insourced document production costs, travel costs, and the costs of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).[9]

21.     The Debtors believe that the Fee Structure is reasonable, consistent with, and typical of compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Debtors also believe that the Fee Structure reflects a proper balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and

---

[6]   A "Transaction Fee" means a Restructuring Fee, a Sale Transaction Fee and/or a Capital Transaction Fee, as the context may require, as defined in the Engagement Letter.

[7]   The "Tail Period" shall end 18 months following the expiration or termination of the Engagement Letter.

[8]   A "Transaction" means a Restructuring, a Sale Transaction and/or a Capital Transaction, as the context may require, as defined in the Engagement Letter.

[9]   Upon execution of the Engagement Letter, and pursuant to the terms thereof, the Debtors paid Moelis a $25,000 expense advance, to be applied to Moelis' expenses prior to and during the Debtors' chapter 11 cases.

closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter. The Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. After discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

22.     Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which has and will be required by the Debtors during the term of Moelis' engagement, were all important factors to the Debtors in agreeing to the Fee Structure. The Debtors believe that the ultimate benefit of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. The Debtors and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis, and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

23.     During the 90-day period prior to the Petition Date, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter. Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) Monthly Fees in the amount of $300,000.00 on account of Moelis' Monthly Fee for March and April;

(b) reimbursement of expenses in the amount of $3,045.48; and (c) an expense advance retainer in the amount of $25,000.00 during the 90-day period prior to the Petition Date.

**Modification of Compliance with Time-Detail Requirements**

24.     The Debtors understand that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the Engagement Letter.

25.     Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours -based, (a) Moelis does not keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees.  Given the foregoing, the Debtors respectfully request that Moelis' restructuring professionals who advise or provide professional services to or on behalf of the Debtors only be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services, consistent with its ordinary practice.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide

or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

26.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own applications, both interim and final. Such invoices and time records will be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

## **Indemnification, Exculpation, Contribution and Reimbursement of Moelis**

27.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and exculpate any and all Moelis Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including the annexes thereto (such provisions, collectively, the "Indemnification Provisions"). As set forth more fully therein, under the Indemnification Provisions, if any Moelis Person becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Moelis Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing the Engagement Letter, as they are incurred. The Debtors will also indemnify and hold harmless any

Moelis Person from and against, and the Debtors each agree that no Moelis Person shall have any liability to the Debtors or their affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Debtors' actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein), or (ii) related to or arising out of oral or written statements of omissions made or information provided by the Debtors or its agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, all information in the Information Presentation and any other information provided by or on behalf of the Debtors to any Purchasers by or on behalf of the Debtors (which shall be deemed to include the Debtors public filings), or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any other services or advice the Debtors request any Moelis Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Moelis Person.[10]

28.    These Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Moelis.  The Debtors believe that the Indemnification Provisions reflect the customary qualifications and limits on such terms for financial advisory engagements both out of court and in chapter 11 cases and respectfully submit that the Indemnification Provisions are reasonable and appropriate, subject to the modifications set forth

---

[10] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

in the Order.   The Debtors believe that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

### No Duplication of Services

29.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals in these chapter 11 cases.  The Debtors do not believe that the services to be performed by Moelis on behalf of the Debtors will be duplicative of services provided by any other professionals in these chapter 11 cases, including the services of M3 Advisory Partners, LP ("M3").  M3, although also a proposed financial advisor, is not being retained to perform the same services as Moelis, as set forth in both parties' retention applications and engagement letters.  The Debtors and Moelis are mindful of the need to avoid duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker, financial advisor, and placement agent in these cases.  The Debtors understand that Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

### Moelis' Disinterestedness

30.     Moelis has reviewed the list of parties in interest provided by the Debtors. To the best of Moelis' knowledge, information and belief as of the date hereof, and except to the extent disclosed herein or in the Keil Declaration, Moelis:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or related parties except as disclosed in the Keil Declaration.

31.     Given the large number of parties in interest in these chapter 11 cases, and despite the efforts to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Keil Declaration.  Moelis has informed the Debtors that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

32.     The Debtors are informed that Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

**<u>Basis For Relief</u>**

**A.      The Debtors Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

33.     The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).

34.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of

professionals, including investment bankers, on more flexible terms that reflect the nature of their

services and market conditions.   As the United States Court of Appeals for the Fifth Circuit

recognized in <u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)</u>:

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc.  Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

35. As discussed above and in the Keil Declaration, Moelis satisfies the

disinterestedness standard in section 327(a) of the Bankruptcy Code.  Engaged prepetition, Moelis

had been advising the Debtors prior to the commencement of these chapter 11 cases and has

already committed a significant amount of time and effort assisting the Debtors with their

restructuring efforts.  Additionally, given the numerous issues that Moelis may be required to

address in the performance of its services for the Debtors pursuant to the Engagement Letter,

Moelis' commitment to the variable level of time and effort necessary to address all such issues as

they arise, and the market prices for Moelis' services for engagements of this nature, the Debtors

believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-

based under the standards set forth in section 328(a) of the Bankruptcy Code.

36. Indeed, the Debtors believe that the Fee Structure appropriately reflects:

(a) the nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience

with respect to investment banking and financial advisory services; and (c) the fee structures

typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

37.     As set forth above, and notwithstanding approval of Moelis' Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein.  Furthermore, the Debtors propose that their obligation to pay any fee, expense or indemnity to Moelis or any Moelis Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

38.     The Debtors request that the requirements of Local Rule 2016-2, the Amended Guidelines, the Trustee Guidelines and any other applicable procedures and orders of the Court be tailored to the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Moelis' restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these chapter 11 cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks.  As such, the Debtors request modification of the requirements under Local Rule 2016-2, the Trustee Guidelines and any other applicable procedures and orders of the Court.

39.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Proterra*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 25, 2023); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Party City Holdco Inc., et al.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022);  *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020);  *In re Rentpath Holdings*, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. May 1, 2019); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015);  *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re MACH Gen, LLC*, No. 14 10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr.

S.D.N.Y. Apr. 7, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14 10454 (BLS) (Bankr. D. Del. Mar. 25, 2014).

      40.    The Debtors also believe that employment of Moelis effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases. Moelis has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated transactions. *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

**B.**    **The Indemnification, Exculpation, Contribution and Reimbursement Terms of the Engagement Letter Are Appropriate.**

      41.    The indemnification, exculpation, contribution and reimbursement provisions in the Engagement Letter (the "Indemnification Provisions"), as modified by the Order annexed hereto, were negotiated at arms-length and in good faith between the Debtors and Moelis. The Debtors and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases. *See, e.g.*, *In re Proterra*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 25, 2023); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Party City Holdco Inc., et al.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings*, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ)

(Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. May 1, 2019); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re Breitburn Energy Partners LP*, No. 16-11390 (Bankr. S.D.N.Y. July 20, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 11, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re MACH Gen, LLC*, No. 14 10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14 10454 (BLS) (Bankr. D. Del. Mar. 25, 2014).

42.     Accordingly, the Debtors respectfully submit that the terms of the modified Indemnification Provisions are reasonable and customary and should be approved in these chapter 11 cases.

**C.     The Retention of Moelis is Critical to the Debtors' Chapter 11 Efforts.**

43.     The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these chapter 11 cases. As set forth above, Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. Moelis is a preeminent investment banking and financial advisory firm that is intimately familiar with the Debtors' businesses. Denial of the relief requested herein will deprive

the Debtors of the assistance of Moelis' uniquely qualified professionals who have served them prior to the Petition Date and have continued to assist them following the Petition Date.  Indeed, if the Debtors were forced to engage a new investment banker and financial advisor who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Moelis' engagement, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost.  Based on services performed to date, Moelis has been integral to preparing the Debtors for these chapter 11 cases.

44.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Engagement Letter.

### Notice

45.    The Debtors will provide notice of this Application to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the official committee of unsecured creditors; (c) the DIP Agents and counsel thereto; (d) the ABL Lenders and counsel thereto; (e) the FILO Agent and counsel thereto; and (f) any party that request service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.  A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://cases.stretto.com/Express.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

### No Prior Request

46.    No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  May 16, 2024
Columbus, Ohio

*/s/ Stewart Glendinning*

Stewart Glendinning

Express, Inc.
Chief Executive Officer