## **EXHIBIT B**

**Doland Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*, [8] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF**
**NICHOLAS DOLAND IN SUPPORT**
**OF THE APPLICATION OF THE DEBTORS**
**FOR ENTRY OF AN ORDER AUTHORIZING**
**AND APPROVING THE EMPLOYMENT AND RETENTION OF**
**PRICEWATERHOUSECOOPERS LLP AS AUDIT SERVICES PROVIDER TO THE**
**DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 22, 2024**

I, Nicholas Doland, pursuant to 28 U.S.C. § 1746 under penalty of perjury, declare as follows, to the best of my knowledge, information, and belief:

1.  I am a partner of PricewaterhouseCoopers LLP ("PwC LLP").  I am authorized to make this declaration (this "Declaration") on behalf of PwC LLP in support of the *Application of the Debtors for Entry of an Order Authorizing and Approving the Employment and Retention of PricewaterhouseCoopers LLP as Audit Services Provider to the Debtors and Debtors in Possession Effective as of April 22, 2024*, filed contemporaneously herewith (the "Application").[9]

---

[8]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[9]  Capitalized terms used in this Declaration but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.  The summary of terms or conditions of the Engagement Letter provided in this Declaration is for the Court's convenience and to the extent that any such summary conflicts with the actual terms or conditions of the Engagement Letter, the actual terms and conditions of the Engagement Letter shall control, as the same may be limited or modified by an order of the Court.

2.      Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge or derived from business records that have been reviewed by me and prepared/reviewed by others under my supervision and direction.  To the extent any information disclosed herein requires amendment, modification or supplementation as additional information becomes available, a supplemental declaration will be submitted to this Court.

## PwC LLP's Qualifications

3.      PwC LLP is a professional services firm with offices across the United States with experience in providing assurance services to businesses in bankruptcy and has been employed in numerous complex cases under the Bankruptcy Code.  PwC LLP is well qualified to provide the contracted-for services in a cost-effective, efficient, and timely manner.

## PwC LLP's Disinterestedness

**A.      Background**

4.      PwC LLP is a United States-based member firm of a global network of separate and independent firms that operate locally in countries throughout the world.  Such firms ("Member Firms") are each members of PricewaterhouseCoopers International Limited ("PwCIL"), a UK-membership-based private company limited by guarantee, with no shareholders and no capital, and which does not provide services to clients.

5.      Member Firms are organized on an individual country basis and operate within the legal and regulatory framework of each particular jurisdiction or region.  Other than certain country or regional groupings, Member Firms are generally not affiliates or subsidiaries of each other or of any global parent.  Rather, they are separate and independent firms that practice under a common brand and shared methodologies, client service standards and certain other

professional protocols and guidelines.  Member Firm partners and/or principals[10] are generally the sole owners of a respective Member Firm, with no overlap with respect to partner/principal ownership of their Member Firm and other Member Firms.

6.     In the United States, pursuant to a legal restructuring effectuated on July 1, 2023, professional services are now provided to clients by subsidiaries of Member Firm PwC US Group LLP ("PwC US Group"), which entity does not provide services to clients.  The PwC US Group subsidiaries that provide services to clients include PwC LLP, PwC US Tax LLP ("PwC US Tax"), PwC US Business Advisory LLP ("PwC US Business Advisory"), and PwC US Consulting LLP ("PwC US Consulting," and, together with PwC LLP, PwC US Tax, and PwC US Business Advisory, are "Primary Subsidiaries" and, together with PwC US Group and each of their respective direct and indirect subsidiaries, "PwC US Entities," and separately, each a "PwC US Entity").  The partners and/or principals of Primary Subsidiaries are owners of their respective subsidiaries, and certain of the partners and/or principals are also owners of PwC US Group.  PwC US Group does not share profits with any other Member Firms.

**B.     Search Process**

7.     When a PwC US Entity is the subject of an application to be retained in a chapter 11 case, a process commences to check connections, such as current or former client, vendor, or financial relationship, to the debtors, their identified affiliates and the debtors' other parties in interest (as provided by the debtors) by a search team (the "US Search Team").

8.     In connection with its proposed retention by the Debtors, PwC LLP undertook searches to determine, and to disclose, whether any PwC US Entity is or has been engaged by or has other relationships with the Debtors or the other individuals or entities that the Debtors

---

[10]   For this purpose, "principals" could include shareholders of a corporation if a foreign member firm is organized as a corporation in its local jurisdiction.

identified as being potential parties in interest in these chapter 11 cases (the "<u>Potential Parties in Interest</u>"), whose specific names were provided to PwC LLP by the Debtors, set forth on **Schedule 1**. A listing of the Potential Parties in Interest with such connections to PwC LLP and/or other PwC US Entities is attached to this Declaration as **Schedule 2**.

9.      As described herein, the searches conducted involve checking client and other databases of the PwC US Entities. Given the separateness of the Member Firms, the PwC US Entities are unable to directly check client or other local databases maintained by Member Firms, outside of the PwC US Entities. Notwithstanding this separateness, the following additional steps are undertaken when any PwC US Entity is the subject of a retention application:

      a.      With respect to the debtor and debtor affiliates, the US Search Team:

          i.      Initiates cross border check request(s) to the other Member Firm(s) located where the debtors' parent company's primary place of business or registered office is outside of the U.S., based upon information provided by the debtors. The applicable Member Firm(s) are asked to search relevant local databases to identify client or relevant non-client relationships in their jurisdiction. Except as may otherwise be disclosed herein, no other Member Firm(s) was identified through this process as providing services in the Debtors' bankruptcy cases;

          ii.      Performs a search of cross border requests previously received from other Member Firms to determine if any involved the debtors or their affiliates;

          iii.      Performs a search using a database system associated with audit and other related independence requirements (the "<u>Independence Database</u>") to identify possible connections with debtor and debtor affiliates to which independence requirements may apply. Each Member Firm is required to input its respective audit clients into the Independence Database, and all Member Firms have access to the Independence Database.[11] Each restricted entity in the Independence Database has a designated individual(s) responsible for approving and monitoring services for entities included in its

---

[11]    Inputting audit and attest client information into the Independence Database is pursuant to a policy adopted by Member Firms so that such relationships are tracked in connection with such Member Firm's independence requirements.

corporate tree.  The Independence Database includes audit clients of the various Member Firms, as well as certain other clients and non-clients thereof.  In addition, once a PwC US Entity is engaged to provide services for debtors during their bankruptcy cases, an indicator is placed in the Independence Database that is available to other Member Firms to indicate bankruptcy-related restrictions may exist; and

iv.  Once a PwC US Entity is engaged to provide services for debtors during their bankruptcy cases, an indicator is placed in a PwC US Entities system attached to the debtors to indicate bankruptcy-related restrictions may exist.  The indicator remains through emergence from bankruptcy (or dismissal).  Such bankruptcy-related restrictions are identified to other Member Firms if they request a search of those entities.

b.  With respect to the other parties in interest, the US Search Team also:

i.  Performs a search of cross border requests received from other Member Firms (described above) in connection with potential engagements to perform services for other U.S.-domiciled parties in interest;

ii.  Reviews the parties in interest to determine if other Member Firms are identified therein; and

iii.  Performs a search of the Independence Database to determine whether an other party in interest is identified as restricted therein.

10.  PwC US Entities have relationships with thousands of clients and other parties, some of which may be creditors of the Debtors or other Potential Parties in Interest.  One or more of the PwC US Entities may:

a.  have provided, currently provide, and/or may provide in the future professional services to certain of the Potential Parties in Interest in matters unrelated to the chapter 11 cases; and

b.  have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors, in matters unrelated to the chapter 11 cases, except as may be otherwise set forth herein.

11.  One or more of the PwC US Entities and/or the partners/principals/other professionals of such PwC US Entities may:

a.  have had, currently have and/or may have in the future ordinary course banking or other relationships with certain of the Potential Parties in Interest; and

b.  have obtained, currently obtain or will in the future obtain goods or services from one or more of the Potential Parties in Interest in matters unrelated to these chapter 11 cases.

12.  To the best of my knowledge, based on the above search process, PwC LLP has determined that certain relationships, identified on **Schedule 2**, should be disclosed as follows:

a.  One or more of the PwC US Entities provide services in matters unrelated to the chapter 11 cases to certain of the Debtors' creditors and other Potential Parties in Interest or their affiliates listed on **Schedule 2**.

b.  As part of its diverse practice, the PwC US Entities appear in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants who may represent the Debtors, creditors, and/or Potential Parties in Interest in these chapter 11 cases.

c.  One or more of the PwC US Entities have in the past performed, and may in the future perform, in matters unrelated to these chapter 11 cases, assurance, tax, consulting, and/or financial advisory services for other professionals, including attorneys, accountants, and financial consultants who may represent the Debtors, creditors, and Potential Parties in Interest in these chapter 11 cases.

d.  One or more of the PwC US Entities may in the past, may currently, or may in the future be represented, in matters unrelated to these chapter 11 cases, by various attorneys, and law firms, some of whom may be involved in these chapter 11 cases.

e.  One or more of the PwC US Entities may perform services for clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status. The disclosures set forth herein do not include specific identification of such services.

f.  Certain Potential Parties in Interest may be adverse to and/or involved in litigation matters with one or more of the PwC US Entities in connection with matters unrelated to these chapter 11 cases.

13.  I do not believe that the ordinary course relationships identified herein impair PwC LLP's ability to objectively perform the contracted-for professional services during these

chapter 11 cases, consistent with the professional standards applicable to such services and as required by the Bankruptcy Code.

14.     Furthermore, through reasonable inquiry, I do not believe that the partners/principals/other professionals of PwC and/or the other entities in PwC US Group that are expected to provide services to Debtors pursuant to the Engagement Letter have any known relation to the United States Bankruptcy Court Judges for the District of Delaware, or the U.S. Trustee for Region 3 or those employed by the Office of the U.S. Trustee for Region 3 for the District of Delaware.

15.     From time to time, a PwC US Entity partners/principals/other professionals may personally, directly or indirectly, acquire debt or equity securities of a company, which may be one of the Debtors, their creditors, or other Potential Parties in Interest.  A policy of the PwC US Entities prohibits partners/principals/other professionals from using material non-public information that may come to their attention in the course of their work and all PwC US Entity partners/principals/other professionals are barred from trading in securities with respect to which they possess material non-public information.   To the best of my knowledge, no partner/principal/other professional who is expected to provide the Professional Services to the Debtors in this engagement has any direct investment in debt or equity securities of the Debtors.

16.     The above searches resulted in the disclosures set forth herein and on **Schedule 2**, including the disclosure of certain connections with Potential Parties in Interest that do not relate to the Debtors' chapter 11 cases.   Accordingly, subject to the statements made in this Declaration, to the best of my knowledge, information, and belief, based on the searches and queries described above, I believe that PwC LLP is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

Bankruptcy Code, in that neither PwC LLP nor any partner/principal/other professional expected to provide the Professional Services to the Debtors pursuant to the Engagement Letter: (a) is a creditor, an equity security holder, or an insider of the Debtors; (b) is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; and (c) has an interest materially adverse to an interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of a direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason. Accordingly, I believe that PwC LLP is eligible for retention by the Debtors.

17.     Despite the efforts described above to identify and disclose connections with Potential Parties in Interest in these cases, because of its size and numerous employees, PwC LLP is unable to state with certainty that every client representation or other connection has been identified and disclosed. If PwC LLP discovers additional material information that it determines requires disclosure, a supplemental disclosure will be promptly filed with the Court. Except as otherwise set forth herein, to the best of my knowledge, neither PwC LLP nor any of the PwC US Entities currently perform, nor during the period of PwC LLP's retention in these cases, will perform, services for any entity listed on **Schedule 2** in matters related to the Debtors or their chapter 11 cases.

**Prepetition Services**

18.     On July 1, 2023, PwC LLP effected a legal entity restructuring whereby its tax, business advisory, and consulting businesses are now performed by entities affiliated with PwC LLP. As part of this restructuring, certain of the Professional Services previously performed by PwC LLP prior to July 1, 2023, may be performed by personnel employed by or associated with a PwC US Entity other than PwC LLP through a subcontractor relationship.

19.     In the 90 days prior to the Petition Date, the Debtors paid PwC LLP approximately $1,031,875,000, of which $200,000 was on account of prepetition retainers.

20.     As of the Petition Date, PwC LLP was not owed any money by the Debtors on account of prepetition services that PwC LLP performed.

### Scope of Services

21.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter outlined herein, in consideration for the compensation contemplated therein, PwC LLP will render the following services, (the "Professional Services"), which are performed at the Debtors' request, as agreed to by PwC LLP and consistent with and pursuant to the terms and conditions of the Engagement Letter:

   a.     **2023 Audit Engagement Letter**:

      i.     PwC LLP will perform an integrated audit of the consolidated financial statements of Express, Inc. ("Express") at February 3, 2024 and for the year then ending and of the effectiveness of Express's internal control over financial reporting as of February 3, 2024. PwC LLP will provide Express, upon completion of its work, with a report on the audit work referred to above. The integrated audit will be conducted in accordance with the standards of the Public Company Accounting Oversight Board (the "PCAOB").

      ii.    In conjunction with the annual financial statement audit, PwC LLP will perform reviews of Express's unaudited consolidated quarterly financial information for each of the first three quarters in the year ending February 3, 2024, before the Form 10-Q is filed. These reviews will be conducted in accordance with the standards established by the PCAOB.

      iii.   As is customary, as part of its engagement, PwC LLP may provide various types of insights whether oral, written, or visual.

   b.     **2023 Audit Amendment No. 1**: The 2023 Audit Amendment No. 1 amends the 2023 Audit Engagement Letter to provide for the payment by Express of a retainer to PwC LLP. Such retainer was to pay for incremental audit services not originally anticipated under the original 2023 Audit Engagement Letter.

      c.      **2023 Audit Amendment No. 2**:  PwC LLP will perform the following incremental audit services that are necessary for the audit but not originally anticipated.  Such incremental audit services might include incremental audit procedures related to adopting ASC 852, Reorganizations as a result of Express's bankruptcy proceedings, providing general accounting advice around accounting while in bankruptcy and the adoption of fresh start accounting, if applicable, capital markets transactions, liquidity assessments, or other technical accounting matters involving consultations, and trigger based impairment assessments.

22.     Should the Debtors request PwC LLP perform additional services not contemplated by the Engagement Letter, the Debtors and PwC LLP will mutually agree upon such services and fees in writing in advance of the provision of such services.  In the event the additional services require an amendment to or statement of work with respect to the Engagement Letter, or entry into a separate engagement letter, I understand that the Debtors shall file notice of such documents with the Court, together with a supplemental declaration if appropriate, in accordance with the Court's approval procedures and the terms of the Order.  Provided no objection is timely filed to the proposed services and agreements, PwC LLP will continue to provide the requested services subject to any prior order entered by the Court on PwC LLP's retention.

23.     Subject to PwC LLP's compliance with applicable professional standards in performing the contracted-for services, PwC LLP shall cooperate with the Debtors to avoid unnecessary duplication of services provided by PwC LLP and any of the Debtors' other retained professionals in these chapter 11 cases.

**Professional Compensation**

24.     Pursuant to the terms and conditions of the Engagement Letter, and subject to the Court's approval, PwC LLP is providing Professional Services under a fixed and hourly fee

arrangement.  The following outlines the proposed compensation structure that is set forth in the

Engagement Letter (the "Fee and Expense Structure"):[12]

    a.    2023 Audit Engagement Letter.  The 2023 Audit Engagement Letter is a fixed fee arrangement whereby PwC LLP agreed to be paid $1,368,000, exclusive of expenses, to provide the agreed-upon services.  Prepetition, PwC LLP was paid $1,368,000 of such fixed fee amount, of which $0.00 remains to be applied against approved postpetition fees for such postpetition audit services.

    b.    2023 Audit Amendment No. 1:  The 2023 Audit Amendment No. 1 is an amendment which provides that Express will pay PwC LLP a retainer.  Prior to the Petition Date, Express paid PwC LLP a retainer of $200,000, of which $0.00 remains to be applied against approved postpetition fees.

    c.    2023 Audit Amendment No. 2:  The 2023 Audit Amendment No. 2 is an hourly fee arrangement.  The hourly rates are set forth below, exclusive of expenses.

| Specialists (CMAAS, Valuation and National Office) | | |
|---|---|---|
| Staff Class | Rate per hour (CMAAS and National Office) | Rate per hour (Valuation) |
| Partner | $1,270 | $1,270 |
| Managing Director | $1,202 | $1,142 |
| Director | $1,086 | $1,039 |
| Senior Manager | $ 961 | $917 |
| Manager | $ 842 | $796 |
| Senior Associate | $ 693 | $663 |
| Associate | $ 603 | $559 |

| Core Audit Team | | |
|---|---|---|
| Staff Class | Rate per hour (Assurance) | Rate per hour (Tax) |
| Partner | $1,070 | $773 |
| Managing Director | $804 | $659 |
| Director | $563 | $587 |
| Senior Manager | $466 | $548 |
| Manager | $461 | $477 |

---

[12]    In connection with the Debtors' use of certain PwC proprietary licensed products, the Debtors pay a small amount to PwC Product Sales LLC for annual licensing fees.

| Senior Associate | $425 | $433 |
|---|---|---|
| Associate | $275 | $336 |

25.     PwC LLP will invoice the Debtors for actual, reasonable, and necessary expenses during these chapter 11 cases, including travel (and internal per-ticket charges), delivery services, applicable sales, use, excise or value-added tax, the fees and expenses of outside counsel to the extent applicable, and other expenses incurred in providing the Professional Services.

26.     PwC LLP's retention by the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of engagement, including the proposed compensation arrangements set forth in the Engagement Letter.  PwC LLP believes that the Fee and Expense Structure in the Engagement Letter is consistent with, and typical of, compensation arrangements charged by professional services firms of similar caliber and experience for engagements of similar size and complexity, both in and out of bankruptcy.  PwC LLP further believes that the Fee and Expense Structure is market-based and reasonable considering PwC LLP's knowledge and experience.

27.     Any hourly rates are subject to periodic increase, and PwC LLP shall inform the Debtors and the U.S. Trustee if a periodic rate increase occurs during the course of the Engagement Letter.  To the extent such an increase occurs, and advance notice of same is provided, PwC LLP requests that it be deemed effective with respect to services performed thereafter.

28.     In addition to the fees set forth above, actual, reasonable and necessary expenses, including travel (and internal per-ticket charges), delivery services, applicable sales, use, excise or value-added tax, the reasonable and documented fees and expenses of outside counsel to the

extent applicable, and other expenses incurred in providing PwC LLP's services, will be included in the total amount billed.

29.     PwC LLP will apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, any applicable orders of the Court, and in accordance with the terms and conditions of the Engagement Letter.

30.     It is not the practice of PwC LLP's professionals to keep detailed time records in one-tenth-of-an-hour (0.10) increments as customarily kept by attorneys who are compensated subject to approval of the Court.  Instead, PwC LLP's customary practice is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.50) increments.  PwC LLP will provide the following in its monthly, interim and/or final fee applications:  (a) a narrative summarizing each project category and the services rendered under each project category; (b) a project-category based summary of services rendered to the Debtors, identifying each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered; and (c) reasonably detailed records of time, in half-hour (0.50) increments for fixed fee engagements and in tenth of an hour (0.10) increments for hourly fee arrangements, describing the services rendered by each professional and the amount of time spent on each date.  Given the nature of the Professional Services, PwC LLP believes that such billing format and associated time details will be sufficient for the Debtors and other parties in interest to make informed judgments regarding the nature and appropriateness of PwC LLP's services and fees.

31.     The professionals providing services to the Debtors will consult with and utilize internal professionals responsible for preparing bankruptcy retention and compensation related

materials, to facilitate compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any other applicable procedures and orders of the Court. The services provided by such professionals shall include but are not limited to: (a) preparation of bankruptcy retention documents and related disclosures and (b) preparation of fee statements and interim and/or final fee applications. Given the specialized nature of these services, specific billing rates exist for these professionals.[13]

32.     The terms and conditions of the Engagement Letter, including the Fee and Expense Structure, were negotiated at arm's length and reflect the parties' mutual agreement as to the substantial efforts that will be required by these engagements.

33.     PwC LLP may be assisted by professionals from other Member Firms, including one or more of the PwC US Entities, to provide services under the Engagement Letter as subcontractors to PwC LLP. Notwithstanding anything to the contrary in the Engagement Letter, during PwC LLP's retention in these chapter 11 cases, PwC LLP will not use the services of such other Member Firms to perform the contracted-for services unless a search of such Member Firm's connections is performed and applicable disclosures, if any, are made, either as part of **<u>Schedule 2</u>** or such Member Firm's own declaration of disinterestedness.

34.     PwC LLP has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. PwC LLP has no agreement with any non-affiliated or unrelated entity to share any compensation earned in the chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

---

[13]   The rate per hour for these professionals by level of experience are as follows: Managing Director: $700; Director: $550; Manager: $400; Senior Associate: $290; Associate: $225; and Paraprofessional: $150.

Dated:  May 16, 2024                           Respectfully submitted,

                                               */s/ Nicholas Doland*
                                               _____
                                               Nicholas Doland
                                               Partner
                                               PricewaterhouseCoopers LLP