**Exhibit B**

**First Amendment to the First Lien DIP ABL Credit Agreement**

**FIRST AMENDMENT TO**
**SENIOR SECURED SUPER-PRIORITY PRIMING DEBTOR-IN-POSSESSION**
**ASSET-BASED LOAN CREDIT AGREEMENT**

This FIRST AMENDMENT TO SENIOR SECURED SUPER-PRIORITY PRIMING DEBTOR-IN-POSSESSION ASSET-BASED LOAN CREDIT AGREEMENT (this "Amendment") is entered into as of May 22, 2024, by and among EXPRESS, LLC, a Delaware limited liability company (the "Borrower"), each undersigned lender party hereto (which for the purposes of this Amendment constitute the Required Lenders) and WELLS FARGO BANK, NATIONAL ASSOCIATION, as collateral agent (the "Collateral Agent") for the Secured Parties and as administrative agent (the "Administrative Agent" and, together with the Collateral Agent, the "Agents").

## R E C I T A L S

WHEREAS, the Parent, Holdings, Intermediate Holdings, the Borrower, the guarantors from time to time party thereto, the Lenders from time to time party thereto, and the Agents, among others, have entered into a Senior Secured Super-Priority Priming Debtor-In-Possession Asset-Based Loan Credit Agreement, dated as of April 24, 2024 (as amended, restated, supplemented or otherwise modified and in effect immediately prior to the date hereof, the "Existing Credit Agreement"; the Existing Credit Agreement, as amended hereby, is hereinafter referred to as the "Credit Agreement"); and

WHEREAS, in connection with the foregoing, the Loan Parties, the Agents and the Lenders constituting the Required Lenders have agreed to amend certain terms and conditions of the Credit Agreement and certain other Loan Documents as set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Definitions.  All capitalized terms used in this Amendment and not otherwise defined shall have the same meanings herein as in the Credit Agreement.

2.      Amendments to Existing Credit Agreement.  The Borrower, the Required Lenders and the Agents agree that on the First Amendment Effective Date (as defined below), Schedule 5.01(r) of the Credit Agreement shall be amended and restated in its entirety into the form set forth in Annex A hereto.

3.      Conditions to Effectiveness.  This Amendment shall become effective as of the first date when each of the following conditions precedent has been fulfilled (or concurrently fulfilled with the effectiveness of this Amendment) or waived by the Administrative Agent (the "First Amendment Effective Date"):

(a)      Amendment Deliverables.  The Administrative Agent shall have received executed counterparts of this Amendment from the Agents, the Lenders constituting the Required Lenders, and the Borrower; and

(b)    <u>Term Loans</u>.   The Administrative Agent shall have received a fully executed amendment to the Junior DIP Credit Agreement, in form and substance reasonably acceptable to Administrative Agent

4.    <u>No Further Amendments</u>.  Except as modified hereby, the Credit Agreement shall remain unchanged and all provisions shall remain fully effective between the parties.

5.    <u>Limitation on Agreements</u>.   The modifications set forth herein are limited precisely as written and shall not be deemed (a) to be a consent under or a waiver of or an amendment to any other term or condition in the Credit Agreement or any of the other Loan Documents, or (b) to prejudice any other right or rights that any Agent or any other Lender now has or may have in the future under or in connection with the Credit Agreement and the other Loan Documents or any of the other documents referred to herein or therein.   Neither the Lenders nor any Agent shall be obligated to grant any other future waivers, consents or amendments with respect to any provision of the Credit Agreement or of any other Loan Document.   The Borrower hereby agree and acknowledge that other than the amendments described in this Amendment, no course of dealing and no delay in exercising any right, power or remedy conferred on any Agent or any Lender in the Credit Agreement or in any other Loan Document or now or hereafter existing at law, in equity, by statute or otherwise shall operate as a waiver of or otherwise prejudice any such right, power or remedy.   This Amendment shall constitute a Loan Document for all purposes.

6.    <u>Miscellaneous</u>.

(a)    <u>Section Headings</u>.  Section headings herein are included for convenience of reference only and shall not affect the interpretation of this Amendment.

(b)    <u>Execution in Counterparts; Integration</u>.   This Amendment may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  This Amendment and the other Loan Documents constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Amendment shall become effective when it shall have been executed by the Administrative Agent and when the Administrative Agent shall have received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto.   Execution of any such counterpart may be executed by means of (a) an electronic signature that complies with the federal Electronic Signatures in Global and National Commerce Act, as in effect from time to time, state enactments of the Uniform Electronic Transactions Act, as in effect from time to time, or any other relevant and applicable electronic signatures law; (b) an original manual signature; or (c) a faxed, scanned, or photocopied manual signature.  Each electronic signature or faxed, scanned, or photocopied manual signature shall for all purposes have the same validity, legal effect, and admissibility in evidence as an original manual signature.  The Administrative Agent reserves the right, in its sole discretion, to accept, deny, or condition acceptance of any electronic signature on this Amendment or on any notice delivered to the Administrative Agent under this Amendment.   Any party delivering an executed counterpart of this Amendment by faxed, scanned or photocopied manual signature shall, upon the request of the Administrative Agent,

also deliver an original manually executed counterpart, but the failure to deliver an original manually executed counterpart shall not affect the validity, enforceability and binding effect of this Amendment.

(c)     Severability.  Any provision of this Amendment held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof, and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

(d)     GOVERNING LAW.  THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.

(e)     Jurisdiction; Waiver of Jury Trial.  Sections 9.14 (Jurisdiction, Etc.) and 9.16 (Waiver of Jury Trial) of the Credit Agreement are hereby incorporated by reference herein, *mutatis mutandis*.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

**EXPRESS, LLC**, as Borrower

By: _____

Name:  Mark Still

Title:    Senior Vice President and Chief Financial Officer

**EXPRESS, INC.**, as Holdings and a Guarantor

By: _____

Name:  Mark Still

Title:    Senior Vice President and Chief Financial Officer

**EXPRESS TOPCO LLC**, as Intermediate Holdings and a Guarantor

By: _____

Name:  Mark Still

Title:    Senior Vice President and Chief Financial Officer

**EXPRESS HOLDING, LLC**, as Parent and a Guarantor

By: _____

Name:  Mark Still

Title:    Senior Vice President and Chief Financial Officer

Signature Page to Senior Secured Super-Priority Priming Debtor-In-Possession Asset-Based Loan Credit Agreement

**EXPRESS FASHION LOGISTICS, LLC**,
**EXPRESS FASHION OPERATIONS, LLC**,
**EXPRESS FINANCE CORP.**,
**EXPRESS GC, LLC**,
**UW, LLC**,
**EXPRESS FASHION INVESTMENTS, LLC**,
**EXPRESS BNBS FASHION, LLC**,
Each as a Subsidiary Guarantor

By: _____

Name:  Mark Still
Title:   Senior Vice President and Chief
         Financial Officer

Signature Page to Senior Secured Super-Priority Priming Debtor-In-Possession Asset-Based Loan Credit Agreement

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Administrative Agent,
Collateral Agent, Issuing Bank, Swing Line
Bank, and a Lender


By: _____
Name:   Emily Abrahamson
Title:   Director

BANK OF AMERICA, N.A., as a Lender

By: _Bryn Lynch_____
Name: Bryn Lynch
Title: VP

U.S. BANK NATIONAL ASSOCIATION, as an Initial Lender

By: *James P. Cecil*
Name:  James P. Cecil
Title:    Senior Vice President

Signature Page to Senior Secured Super-Priority Priming Debtor-In-Possession Asset-Based Loan Credit Agreement

FIFTH THIRD BANK, NATIONAL ASSOCIATION
(f/k/a Fifth Third Bank), as an Initial Lender

By: _____

Name:   Jason Rockwell
Title:    Vice President

Signature Page to Senior Secured Super-Priority Priming Debtor-In-Possession Asset-Based Loan Credit Agreement

**ANNEX A**

**SCHEDULE 5.01(R)
MILESTONES**

| Event | Date |
|---|---|
| File motion to approve Specified Liquidation Agreement with respect to 95 Stores of the Debtors (such motion, the "Store Closing Sales Motion") acceptable to the Lenders. | Petition Date + 1 day |
| File Bidding Procedures Motion acceptable to the Lenders, which shall contemplate a going concern sale of all or substantially all of the remaining Stores (the "Going Concern Sale") and, in the alternative, (ii) orderly liquidation of all of the Company's assets, including (without limitation) an entire chain liquidation of all stores and all the assets relating thereto (the "Liquidation"). | Petition Date + 1 day |
| Entry of Store Closing Interim Order acceptable to the Lenders, which shall include approval for the Specified Liquidation Agents to act as the liquidation agents pursuant to the Specified Liquidation Agreement for any stores not included in the Going Concern Sale on the terms and conditions contained in the Specified Liquidation Agreement. | Petition Date + 3 days |
| Entry of Interim Order acceptable to the Lenders | Petition Date + 3 days |
| Either:<br><br>(i) Entry into a "stalking horse" purchase agreement for a Going Concern Sale that has no financing or due diligence outs and is otherwise in accordance with these milestones (a "GC Purchase Agreement"); or<br><br>(ii) Entry into a "stalking horse" agreement in the form of an agreement (the "Liquidation Agreement") for a Liquidation (either pursuant to a fee deal or equity deal). | May 24, 2024 |
| Entry of Final Order acceptable to the Lenders | June 3, 2024 |
| Entry of order approving Bidding Procedures Motion acceptable to the Lenders | June 3, 2024 |
| If GC Purchase Agreement is entered into by May 22, 2024, then the following additional milestones shall apply: | |
| File GC Purchase Agreement with the Bankruptcy Court | May 24, 2024 |
| Bid Deadline for Going Concern Sale | June 3, 2024 |
| Final Store List delivered to Lenders and Debtors for Going Concern Sale | June 3, 2024 |
| Auction Date for Going Concern Sale | June 5, 2024 |

| | |
|---|---|
| Entry of Sale Order approving the Going Concern Sale | June 14, 2024 |
| Closing of Going Concern Sale | June 18, 2024 |
| If Liquidation Agreement is entered into by May 22, 2024, then the following additional milestones shall apply: | |
| Bid Deadline for Liquidation | June 3, 2024 |
| Auction Date for Liquidation | June 5, 2024 |
| Entry of Order approving Liquidation Bid | June 6, 2024 |
| Commencement of Liquidation | June 7, 2024 |