## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Express, Inc., *et al.*,[1] | ) Case No. 24-10831 (KBO) |
| | ) |
| Debtors | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 41** |
| | ) |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS
### OF RESTORE CAPITAL, LLC, THE SECOND LIEN PREPETITION TERM AGENT
### AND SECOND LIEN DIP TERM AGENT, TO MOTION OF DEBTORS FOR ENTRY
### OF AN ORDER (I) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS,
### (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO,
### (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV)
### ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND
### ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE
### ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI)
### AUTHORIZING THE SALE OF ASSETS; AND (VII) GRANTING RELATED RELIEF

ReStore Capital, LLC ("ReStore"), as the Second Lien Prepetition Term Agent and the

Second Lien DIP Term Agent (the "2L Agent"), by and through their undersigned counsel, hereby

files this limited objection and reservation of rights (the "Limited Objection and Reservation of

Rights") to the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and*

*Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III)*

*Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for*

*the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and*

*Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

*Relief* [Docket No. 41] (the "Motion").[2]   In support hereof, ReStore respectfully represents as follows:

## BACKGROUND

1.        At the outset of the chapter 11 cases, the Debtors advised this Court that they were hopeful to continue operating as a going concern and to avoid liquidation.  First Day Declaration ¶ 2 ("Express commences these chapter 11 cases with a line of sight to successfully reorganize, preserve jobs, and rationalize its store footprint through strategic store closures. . . .  [A]chieving a going-concern transaction will be contingent on speed.  The Debtors must move quickly . . . to finalize a transaction in the next 30 days to ensure the viability of the organization for years to come.").

2.        In pursuit of that goal, on April 21, 2024, one-day prior to the Petition Date, a prospective joint venture comprised of WHP Global, the Debtors' "most significant stakeholder," and Simon Property Group, L.P., LLC ("Simon") and BPR Acquisitions LLC ("BPR"), two of the Debtors' largest landlords (the prospective joint venture entity, "Phoenix JV"), delivered a letter of intent to the Debtors (the "Phoenix LOI").  Motion ¶ 2.  The Phoenix LOI was a non-binding proposal for the Phoenix JV to consummate a going concern Sale Transaction with the Debtors. Motion ¶ 17.  The purchase price proposed in the Phoenix LOI consisted of $10 million in cash plus 100% of the net orderly liquidation value of the "Acquired Merchandise" which, according to the LOI, included all of the Debtors' merchandise and tangible personal property.  Motion ¶ 2. The Phoenix LOI also contemplated a 5% breakup fee and an expense reimbursement of up to $5 million as reimbursement of the Phoenix JV's out-of-pocket costs and expenses in the event of execution of a Stalking Horse APA.  Motion ¶ 7.  In addition, the Phoenix LOI contemplated

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures, or the Stalking Horse APA, as applicable.

Phoenix JV's acquisition of certain leasehold, e-commerce, intellectual property, employee-related obligations, and other "designation rights" with respect to certain store leases and other contracts on terms to be set forth in a Stalking Horse APA.  Motion ¶ 2.

3.    On April 22, 2024, the Debtors filed the Motion.  In the Motion, the Debtors ask the Court to authorize the Debtors to grant a Break-Up Fee that will not exceed 3% of the Purchase Price, and a total Expense Reimbursement (together with the Break-Up Fee, the "Bid Protections") that will not exceed 3% of the Purchase Price, to a Stalking Horse Bidder.  Motion Ex. 1 IV.v.

4.    On May 22, 2024, Hilco Merchant Resources, LLC (together with its affiliates, "HMR") and Gordon Brothers Retail Partners, LLC (together with its affiliates, "GBRP" and together with HMR, the "Liquidation Bidders") submitted a bid for substantially all of the assets of the Debtors in the amount of $261.3 million, which allocated $25 million for the Debtors' 40% equity interest in EXP Topco LLC, and the balance for the Debtors' other assets, including inventory, furniture, and fixtures and designation rights with respect to the Debtors leases and executory contracts (the "Liquidation Bid").  The Liquidation Bid did not request either an expense reimbursement or a break-up fee.

5.    On May 24, 2024, the Debtors filed the *Notice of Stalking Horse Bidder* [Docket No. 305] (the "Stalking Horse Notice").  The Stalking Horse Notice states that on May 22, 2024, the Debtors executed a Stalking Horse APA with Phoenix Retail, LLC (the "JV Purchaser"), a consortium consisting of PHXWHP, LLC, an affiliate of EXPWHP, LLC ("WHP Global Purchaser"), and affiliates of certain of the Debtors' landlords, specifically, Simon and BPR, and have selected the JV Purchaser to act as the Stalking Horse Bidder for the Debtors' business operations.  Stalking Horse Notice at 3.

6.     The Stalking Horse Notice also details that the Stalking Horse APA provides for (a) a Break-Up Fee equal to 3% of the Acquired Merchandise Amount (as defined in the Stalking Horse APA) and (b) an Expense Reimbursement for up to 3% of the Acquired Merchandise Amount.  The Stalking Horse APA defines the Acquired Merchandise Amount to mean the sum of (x) 90% multiplied by the COGS of the Category A Merchandise, plus (y) 50% multiplied by the COGS of the Category B Merchandise, plus (z) 50% multiplied by the COGS of the Bonobos Merchandise.

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

7.     The 2L Agent is fully supportive of the Debtors' efforts to remain a going concern and to obtain the highest or otherwise best offer for all its assets and businesses.  Because, however, the 2L Agent has not yet been able to determine the cash consideration that the Debtors will receive from the Stalking Horse Bid, and because of issues raised by the Official Committee of Unsecured Creditors (the "Committee") regarding the proposed final debtor in possession financing, the 2L Agent has filed this Limited Objection and Reservation of Rights to the Bid Protections and the Stalking Horse Bid.

## LIMITED OBJECTION TO BID PROTECTIONS

8.     The Debtors seek approval of the Bid Protections pursuant to section 503 of the Bankruptcy Code.  In the Third Circuit, the approval of bidding protections is subject to the standard used for administrative expenses under section 503 of the Bankruptcy Code.  *See Calpine Corporation v. O'Brien Environmental Energy, Inc.* (*In re O'Brien Environmental Energy, Inc.*), 181 F.3d 527, 535 (3d Cir. 1999).  Under this statutory standard, the business judgment rule is not applicable, and bidding protections are not approved only because of a debtor's good faith belief that such bidding protections would benefit the estate.  *See In re Energy Future Holdings Corp.*,

904 F.3d 298, 313 (3d Cir. 2018) (citing *O'Brien*, 181 F.3d at 535)).  Instead, approval of bidding protections "depends upon the requesting party's ability to show that the fees [a]re actually necessary to preserve the value of the estate." *Id.*

9.      As in *O'Brien*, the Debtors seek to approve the Bid Protections notwithstanding that there has been no showing that the Bid Protections are actually necessary under the circumstances.  The Third Circuit has posited that bid protections could provide a benefit to a debtor's estate if they induced a bid that "otherwise would not have been made," and "it is ultimately within a bankruptcy court's discretion to approve or deny [bidding protections] based on the totality of the circumstances of the particular case." *Energy Future Holdings Corp.*, 904 F.3d at 313–14 (quoting *O'Brien*, 181 F.3d at 537).  Exercising that discretion and taking into account all of the relevant circumstances, a "bankruptcy court must make what is ultimately a judgment call about whether the proposed [bidding protections'] potential benefits to the estate outweigh any potential harms, such that the fee[s] [are] 'actually necessary to preserve the value of the estate.'" *Id.* (quoting *O'Brien*, 181 F.3d at 535).  The Motion and Stalking Horse Notice do not set forth facts upon which this Court may conclude that there is a demonstrable benefit to the Debtors' estates, and under the particular facts there are good grounds for denying, or at least modifying, the proposed Bid Protections.

10.      *First,* the Liquidation Bidders submitted an all cash bid of $261.3 million, which allocated $25 million for the Debtors' equity interests in EXP Topco LLC, and have not sought to receive any break-up fee or expense reimbursement.  Therefore, there is presently a competing bid that preserves the value of the Debtors' estates and demonstrates that a break-up fee was not required to induce a bid for substantially all of the Debtors' assets.  *See in re Reliant Energy Channelview LP*, 594 F.3d 200, 207 (3d Cir. 2010) (citing *O'Brien*, 181 F.3d at 535) ("[A] break-

up fee is not 'necessary to preserve the value of the estate' when the bidder would have bid even without the break-up fee.").  In addition, the Liquidation Bid did not contain any financing contingencies or conditions to closing.

11.     *Second*, while the Debtors may contend that the proposed Break-Up Fee and Expense Reimbursement was necessary to induce a "going concern" bid and preserve "going concern value," nothing in *O'Brien* or any other Third Circuit case law support that distinction. More importantly, PHXWHP, LLC, as an affiliate of WHP Global Purchaser and in turn WHP Global, the most significant stakeholder of the Debtors and the majority owner of its intellectual property, is an "insider" of the Debtors as that term is defined in the Bankruptcy Code.  There is simply no basis for this Court to conclude that the Break-Up Fee and Expense Reimbursement was necessary to induce the Stalking Horse bid, and even if they were, the combination of the requested Break-Up Fee and Expense Reimbursement is excessive, especially considering the Stalking Horse Bidder's insider status.

12.     *Third*, the  combined Break-Up Fee and Expense Reimbursement would give the insider Stalking Horse Bid an unfair advantage in any Auction.  Specifically, although the Purchase Price of the Stalking Horse Bid has not yet been disclosed, the Bid Protections for which the Debtors seek approval would grant the Stalking Horse Bid a 3% Break-Up Fee and a 3% Expense Reimbursement, for aggregate Bid Protections of 6%.  As evidenced by the Liquidation Bid, not only are such protections unnecessary, but they are also greater than combined break-up fees and expense reimbursement given in the jurisdiction.  Moreover, the Bid Protections are especially problematic because the Debtors have an all cash Liquidation Bid, and are likely intended to slant the playing field to deter, rather than induce other bidders, including the Liquidation Bidder, from submitting higher or otherwise better bids in any Auction.  Therefore, as the Third Circuit has

determined, it may be "permissible to offer a break-up fee and reimbursement of expenses to induce an initial bid, provided the allowance of the fee does not give an advantage to a favored purchaser over other bidders by increasing the cost of the acquisition." *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010).

13.     Therefore, if the Court determines to allow the insider Stalking Horse Bidder to receive a Break-Up Fee or Expense Reimbursement, the Court should limit the aggregate amount of such Bid Protections to no more than 3% of the aggregate cash Purchase Price for the assets sought to be acquired, and grant the insider Stalking Horse Bid such Bid Protections only if the cash Purchase Price of the Stalking Horse Bid is greater than the $261.3 million cash purchase price offered by the Liquidation Bidders.

14.     Finally, while the 2L Agent believes that the Debtors have not requested that the Bid Protections be entitled to superpriority administrative claim status or carved out from the DIP Liens or DIP Superiority Claims, or the Adequate Protection Liens or Adequate Protection Superpriority Claims, or be ranked *pari passu* with the Adequate Protections Liens or Adequate Protection Superpriority Claims (each as defined in the DIP Documents), the 2L Agent objects to the actual payment of any Break-Up Fee or Expense Reimbursement from the proceeds of any consummated Sale Transaction prior to the DIP Lenders and the Prepetition Secured Lenders receiving indefeasible payment in full on their allowed secured claims.  Under *O'Brien*, any Bid Protections are merely an administrative expense priority claim under Bankruptcy Code section 503(b), and as such stand behind, and thus may only be paid, after the payment in full of allowed secured claims and allowed superpriority administrative claims absent a showing that the senior claims are adequately protected.  No such showing has been made, and the 2L Agent contends no such showing can be made at the hearing on the Motion, especially in light of the Committee's

objection and reservation of rights to the proposed final debtor in possession financing order. Accordingly, the 2L Agent requests that any order granting the Stalking Horse Bidder the requested Bid Protections expressly provide that no payment of the Bid Protections be made until such time as the Prepetition Secured Lenders have been indefeasibly paid in full.

## **<u>RESERVATION OF RIGHTS</u>**

15.    The 2L Agent expressly reserves it rights to raise any other objections at the hearing on the Motion and subsequent proceedings in connection with any Auction or the proposed sale to the Stalking Horse Bidder or any successful bidder and to amend, modify, or supplement this Limited Objection and Reservation of Rights upon its further review of the Stalking Horse APA and all schedules and exhibits thereto which it has yet to receive.  In that regard, the 2L Agent expressly reserves their rights to contend that the sale of the Debtors' assets to the Stalking Horse Bidder or any other successful bidder fails to meet the requirements of, among other sections, Bankruptcy Code section 363(f), and that the liens of the DIP Secured Parties and Prepetition Secured Parties may not be released until the allowed secured claims of the DIP Secured Parties and Prepetition Secured Parties are indefeasibly paid in full regardless of whether this Court orders that such liens attach to the cash proceeds of any Sale Transaction.

**CONCLUSION**

Accordingly, for these reasons, the 2L Agent respectfully requests that the Court deny the Debtors' request to authorize the Debtors to grant the Stalking Horse Bidder the Bid Protections or to condition such relief as it deems appropriate and consistent with the Limited Objection and Reservation of Rights as set forth herein.

Dated:  May 26, 2024
           Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: desgross@chipmanbrown.com

-and-

**ROPES & GRAY LLP**

Gregg M. Galardi (No. 2991)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Email: gregg.galardi@ropesgray.com596-9139

Stephen L. Iacovo (admitted *pro hac vice*)
Eric P. Schriesheim (admitted *pro hac vice*)
191 North Wacker Drive
Chicago, Illinois 60606-4302
Telephone: (212) 596-9000
Email: stephen.iacovo@ropesgray.com
            eric.schriesheim@ropesgray.com

*Counsel to ReStore Capital, LLC*