**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 24 & 304** |
| | ) | |

**RESPONSE OF WELLS FARGO BANK, NATIONAL ASSOCIATION, AS FIRST LIEN PREPETITION ABL AGENT AND FIRST LIEN DIP ABL AGENT, (I) TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND (II) IN SUPPORT OF DEBTORS' MOTION SEEKING FINAL APPROVAL OF DEBTOR-IN-POSSESSION FINANCING**

Wells Fargo Bank, National Association ("Wells Fargo"), as First Lien Prepetition ABL Agent and First Lien DIP ABL Agent[2], responds to the objection of the Official Committee of Unsecured Creditors (the "Committee") to the DIP Financing Motion (the "Objection") and states as follows:

**PRELIMINARY STATEMENT**

1.      The Debtors' independent board and financial advisor determined that the Debtors could not commence these Cases and remain administratively solvent pending a sale of their assets unless the First Lien Prepetition ABL Secured Parties and the First Lien DIP ABL Parties

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]  Capitalized terms used but not defined herein shall have the meanings given in the *Motion of Debtors for Entry of Interim and Final Orders (i) Authorizing the Debtors to (a) Obtain Postpetition Financing and (b) utilize cash collateral, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [D.I. 24] (the "DIP Financing Motion").

(collectively, the "First Lien ABL Secured Parties") and the Second Lien Prepetition Term Secured Parties and the Second Lien DIP Term Secured Parties (collectively, the "Second Lien Term Parties") provided consent to the use of cash collateral, provided postpetition financing, and agreed to the Carve Out for the benefit of estate professionals. In that regard, the Debtors conducted extensive arms'-length and good faith negotiations with the First Lien ABL Secured Parties, as a result of which the First Lien ABL Secured Parties agreed to consent to the use of their Cash Collateral, to provide the Carve Out, and to provide postpetition financing up to approximately $136 million, subject to the terms set forth in the proposed Final Order.

2.     The DIP Financing Motion and the negotiated terms of the proposed Final Order reflect two separate but related DIP facilities resulting from good faith negotiations among the Debtors, the First Lien ABL Secured Parties and the Second Lien Term Secured Parties.  These related DIP facilities enable the Debtors to maximize the value of the estates and protect not only the senior secured parties' interests, but also the interests of the Debtors' other administrative creditors who are getting paid through the use of cash collateral and the proceeds of postpetition financing.

3.     The Committee complains about the Debtors' use of the CARES Act refund to repay First Lien Prepetition ABL Obligations, in accordance with the First Lien Prepetition ABL Credit Agreement, instead of using such refund to fund operations. Objection, ¶¶ 3, 11, and 16. This objection is indicative of the Committee's failure to view the First Lien Prepetition ABL Facility as generally oversecured as of the Petition Date.  The First Lien collateral included the CARES Act right of payment. Wells Fargo, as Prepetition First Lien ABL Agent, applied the prepetition proceeds of such right of payment to the First Lien Prepetition ABL Obligations, in accordance with the First Lien Prepetition ABL Credit Agreement, creating dollar-for-dollar additional borrowing capacity under the First Lien Prepetition ABL Facility. Instead of misappropriating the

2

funds and causing a potential cash collateral fight, which would have undermined the Debtors' restructuring efforts, the Debtors made the prudent business decision to repay the First Lien Prepetition ABL Obligations and continue to negotiate an overall comprehensive, value-maximizing financing package with the secured lenders.

4.     The package of terms (tied to a borrowing base with reserves that reflect the ultimate terms of the Final Order including requested terms) would need to be substantially modified if the requested terms are not granted.  For example, the consensual "Carve Out" is in exchange for the various Bankruptcy Code §§ 506(c) and 552(b) waivers.  Without the waivers, the Committee professionals will be like any other provider of administrative services entitled to seek payment from the estate subject to the 364 priorities and prepetition lien priorities in favor of the secured parties.  If the waivers are not maintained, then the secured parties will need to evaluate additional reserves to reflect the risk that this Court may order payments to be made to third parties from the DIP Collateral and Prepetition Collateral.

5.     Further, the Committee incorrectly groups together the unquestionably oversecured claims of the First Lien ABL Secured Parties with the claims of the Second Lien Term Secured Parties.  The Objection confusingly asserts various arguments that do not apply to the fully rolled-up First Lien ABL Secured Parties and fails to differentiate between the "Prepetition Secured Parties."

**RESPONSE**

**I.     The terms of the DIP Financing Motion have been negotiated at arms' length and in good faith, and the Court should defer to the Debtors' business judgment.**

6.     Although the Committee complains about the terms of the DIP Financing, including the Initial DIP Budget and scope of the protections granted to the First Lien ABL Secured Parties as consented to by the Debtors, it has offered no evidence to suggest that such terms and protections

have been proposed in bad faith or that such protections materially differ from those typically included in postpetition financing orders.  Although some provisions might not be the most favorable for the Debtors and the Committee, the Debtors made a business decision to make certain concessions in view of the overall benefits to the Debtors' estates and creditors.  The determination for the Court is whether the terms in the aggregate are fair and reasonable. *See In re Ellingsen MacLean Oil Co., Inc.*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986), *aff'd*, 834 F.2d 599 (6th Cir. 1987) (holding that although the postpetition financing terms "may reach beyond the usual terms of a loan agreement . . . the bankruptcy court would rightfully be more interested by the requirements and provisions of section 364 of the Code, than it would be by a picayune examination of every legal argument that could be brought against separate provisions of the proposed agreement."). Additionally, "Courts have generally deferred to a debtor's business judgment in granting section 364 financing." *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010); *see also In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2004 WL 1634538, at *2 (Bankr. S.D.N.Y. June 22, 2004) ("Determining whether proceeding with a financing which is subject to conditions makes sense is likewise a classic business decision. No one could, or does, argue otherwise."). In contexts where deference to a debtor's business judgment is appropriate, courts consistently refuse "to substitute the judgment of the objecting creditors over the business judgment of [a] [d]ebtor[]." *See*, *e.g.*, *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 140 (Bankr. D. Del. 2010)). Instead, the Court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *appeal denied, judgment aff'd*, No. 06-cv-302 (SLR), 2008 WL 522516 (D. Del. Feb. 27, 2008), *vacated and remanded*, 607 F.3d 957 (3d Cir. 2010).  Generally, courts will uphold a debtor's business decision unless that decision "is the product of bad faith or a gross abuse of

discretion." *See*, *e.g.*, *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003). To induce

the First Lien ABL Secured Parties to support the Debtors' restructuring process, the parties

conducted extensive, vigorous negotiations over the terms of the proposed DIP Financing and use

of Cash Collateral, including the Initial DIP Budget and the Carve Out for professionals, on the

one hand, and protections for the First Lien ABL Secured Parties provided in exchange thereof,

on the other hand. Accordingly, absent evidence of bad faith or gross abuse of discretion, the

Committee's preferred business terms cannot override the Debtors' business judgment.

**II.     The Bankruptcy Code §§ 506(c) and 552(b) provisions are irrelevant because all First Lien Prepetition ABL Obligations have been rolled up, subject to the Challenge Period, and the Debtors have the right to waive the Bankruptcy Code §§ 506(c) and 552(b) and marshaling provisions as a material inducement to obtain the Carve Out for professional fees, avoid cash collateral disputes, and incur additional commitments for DIP financing.**

7.     The Committee objects to the waiver of rights under Bankruptcy Code §§ 506(c)

and 552(b). However, such waiver no longer has any application to the First Lien DIP ABL

Secured Parties. As of the Petition Date, the value of the Collateral unquestionably exceeded the

First Lien Prepetition ABL Obligations. As a result, subject to the Challenge Period, the First Lien

Prepetition ABL Obligations have been paid in full from proceeds of Collateral. Sections 506(c)

and 552(b) of the Bankruptcy Code do not, by their terms, apply to superpriority claims granted

under Section 364 of the Bankruptcy Code in respect of the First Lien DIP ABL Loans. Instead,

Sections 506(c) and 552(b) of the Bankruptcy Code deal with the determination of secured status

and postpetition effect of security interest. As such, the requested Bankruptcy Code §§ 506(c) and

552(b) waivers in favor of the First Lien DIP ABL Secured Parties adheres to the priorities of the

Bankruptcy Code.

8.     The Committee also takes issue with the marshaling waiver in the proposed Final

Order.  *See* Objection, ¶¶ 31-34.  The Committee has no legal basis to request that the First Lien

DIP ABL Secured Parties look first to any specific DIP Collateral before being paid from any other

DIP Collateral. The remedy of marshaling is equitable and available only to secured creditors, not the unsecured creditors represented by the Committee. *In re Advanced Mktg. Servs., Inc.*, 360 B.R. 421, 427 (Bankr. D. Del. 2007) (recognizing that "unsecured creditors cannot invoke the equitable doctrine of marshaling"); *see also In re Arico, Inc.*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999); *see, e.g.*, *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. July 25, 2013); *In re Xerium Techs., Inc.*, No. 10-11031 (KJC) (Bankr. D. Del. Apr. 28, 2010); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. Nov. 12, 2009); *In re Linens Holding Co.*, No. 08-10832 (CSS) (Bankr. D. Del. May 28, 2008). In other words, the Committee and its constituents cannot require the First Lien ABL Secured Parties to equitably marshal their assets. Even if the Court finds that the Committee is permitted to invoke the doctrine of marshaling, marshalling may be invoked "only when it will benefit the claimant without injuring others." *In re Hale*, 141 B.R. 225, 227 (Bankr. N.D. Fla. 1992) (internal citation omitted). Here, marshalling is improper because it would result in prejudice and injury to the First Lien ABL Secured Parties. The Committee suggests that marshalling is appropriate because it will require the First Lien ABL Secured Parties to realize on their Prepetition Collateral first. *See* Objection, ¶ 34. However, forcing the First Lien ABL Secured Parties seek recovery solely from the Prepetition Collateral before realizing on any other DIP Collateral ignores the fact that some of the Prepetition Collateral may be difficult to realize upon expeditiously and, as a result, the repayment of the First Lien DIP ABL Obligations may be delayed, resulting in, among other things, increased expense to the Debtors' estate. Thus, evoking the doctrine of marshaling would injure the First Lien ABL Secured Parties and a waiver is appropriate.

9.      To the extent that the Committee opposes the First Lien ABL Secured Parties' right to be granted a lien on, and to be repaid from, proceeds of avoidance actions (or other assets of the Debtors that were unencumbered as of the Petition Date), the Committee overlooks the fact that

nothing in the Bankruptcy Code suggests that the proceeds of avoidance actions or other unencumbered assets must be reserved for the unsecured creditors. *See, e.g.*, *In re Tonopah Solar Energy, LLC*, Case No. 20-11884 (KBO) (Bankr. D. Del. Aug. 24, 2020) [D.I. 130, Hr'g Tr. at pp. 20-21] ("So I also agree with the debtors that, you know, adequate protection liens and superpriority claims in this case are limited to diminution of property and that replacement liens on unencumbered property, including avoidance action proceeds, is expressly contemplated by the Code.  And I would go as far as to say that I do not believe that those proceeds are necessarily limited to the unsecured creditor body.  I think there's significant case law that suggests otherwise."); *see also In re AppliedTheory Corp.*, Nos. 02-11868-11874, 2008 WL 1869770, at *1 (Bankr. S.D.N.Y. Apr. 24, 2008) ("Of course those assets started out unencumbered.  But those assets can thereafter be encumbered (or made available to satisfy superpriority claims), if necessary to provide adequate protection.  That's expressly authorized under section 361(2)."); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("[t]he whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value of which he bargained prebankruptcy") (internal citations omitted).  Furthermore, courts have found that avoidance actions are no different than any other property of the estate, can be sold to third parties for value and the proceeds thereof applied in accordance with the priorities of the Bankruptcy Code. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 972 (Bankr. D. Del. 1994) ("Pursuant to § 541(a) an estate is created by the petition filing, and under § 541(a)(3) property of the estate includes property recovered in avoidance actions. Pursuant to § 363, the DIP may use property of the estate either in the ordinary course of business, or, with the court's approval, outside the ordinary course of business."); *In re DirectBuy Holdings, Inc.*, No. 16-12435 (CSS), 2017 WL 5496219, at *6 (Bankr. D. Del. Feb. 14, 2017) (approving a sale of the Debtors' assets, including certain avoidance actions that are being waived and released pursuant to the asset purchase agreement); *see also In re Wilton*

*Armetale, Inc.*, 968 F.3d 273, 285, 69 Bankr. Ct. Dec. (CRR) 38 (3d Cir. 2020) (making it clear that the Third Circuit's prior holding "does not . . . [mean] that trustees cannot transfer causes of action" and allowing an effective transfer by upholding the trustee's abandonment of claim that reverted to a creditor.); *In re Portland Inj. Inst., LLC*, No. 3:21-BK-30158-DWH, 2022 WL 263490, at \*5 (B.A.P. 9th Cir. Jan. 27, 2022) (finding that "[t]he bankruptcy court did not abuse its discretion by authorizing the sale of avoidance actions [to a creditor of the debtor]."); *In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("Because debtors have the right to file for bankruptcy and the debtor in possession or the Trustee may file avoidance actions to recover property, the debtor has an inchoate interest in the avoidance actions prior to the commencement of the bankruptcy proceedings. Therefore, avoidance actions are property of the estate under § 541(a)(1)."); *Matter of S. Coast Supply Co*., 91 F.4th 376, 385 (5th Cir. 2024) (holding that preference claims arising under the Bankruptcy Code are property of the estate that may be sold.).

10.     In this case, the First Lien DIP ABL Secured Parties are consenting to the use of their Cash Collateral and providing the Debtors access to approximately $136 million of postpetition financing pending the sale of a business enterprise (or a liquidation of the Debtors' assets) that is at risk of declining in value. The Debtors made a calculated business decision to incur the First Lien DIP ABL Obligations and use Cash Collateral and, consistent with other postpetition financing arrangements in the marketplace, grant liens on the proceeds of avoidance actions to secure repayment of such debt and any diminution in value of the Collateral.

**III.    The Committee is not entitled to accept the benefits of the Carve Out without the limitations both as to amount and scope, and the current Challenge Period gives the Committee enough time to investigate the over-secured claims of the First Lien ABL Secured Parties.**

11.    The Committee also suggests that the Challenge Period (which currently expires 66 days from the date the Committee was appointed) should be extended to July 31, 2024 and that the budget of $50,000 to investigate potential claims against the Prepetition Secured Parties is inadequate. Objection, ¶¶ 37-39. The Committee has not established cause for more time to investigate claims against the First Lien Prepetition ABL Secured Parties. The First Lien Prepetition ABL Obligations have been paid in full with proceeds of Collateral constituting accounts receivables and inventory that have been collected by the Debtors after the Petition Date and applied to such obligations in accordance with the First Lien Prepetition ABL Credit Agreement. All the Committee has to confirm is that the First Lien Prepetition ABL Secured Parties' Lien on such Collateral was valid and perfected, which should take hours rather than weeks or months.

## **CONCLUSION**

12.    The Objection fails to identify anything improper or atypical about the terms of the proposed Final Order.  Indeed, the proposed use of cash collateral and postpetition financing represent an agreement, negotiated at arms' length, among the Debtors and the First Lien ABL Secured Parties, as contemplated by the Bankruptcy Code and Bankruptcy Rule 4001.  Although the Committee may wish for terms that are more favorable for a small subset of the Debtors' unsecured creditors, including a Challenge Period longer than what is required under the Local Rules or is appropriate under the facts and circumstances of these Cases or the preservation of future litigation opportunities under Bankruptcy Code §§ 506(c) and 552(b) or to seek to impose the doctrine of marshaling, ultimately, the Debtors have determined that the agreement to use cash collateral and the postpetition financing offered by the First Lien ABL Secured Parties provides the Debtors with best opportunity to successfully pursue a going-concern sale or a liquidation of their assets in a manner designed to maximize the value of the Debtors' estates for the benefit of

all stakeholders.  The proposed terms of the Final Order, which have been negotiated at arms'-length and in good faith, should therefore be approved as an exercise of the Debtors' reasonable business judgment.

13.    In addition to the specific issues discussed herein, the First Lien ABL Secured Parties reserves the right to make additional or different arguments and to address any of the Committee's remaining objections at the Final Hearing scheduled for May 31, 2024, to the extent that such objections are not resolved prior to such date.

For these reasons, the First Lien ABL Secured Parties respectfully requests that this Court enter the proposed Final Order without modification as to the First Lien ABL Secured Parties and overrule the Objection as it related to the First Lien ABL Secured Parties.

Dated: May 28, 2024

By:   /s/ *John H. Knight*

**RICHARDS, LAYTON & FINGER, P.A.**
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Alexander R. Steiger (No. 7139)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel:   302.651.7700
Fax:  302.651.7701
Email: knight@rlf.com
         heath@rlf.com
         steiger@rlf.com

-and-

**GOLDBERG KOHN LTD**
Randall L. Klein
Dimitri G. Karcazes
Eva D. Gadzheva
55 East Monroe, Suite 3300
Chicago, Illinois 60603
Tel:   312.201.3974
Fax:  312.863.7474
randall.klein@goldbergkohn.com
dimitri.karcazes@goldbergkohn.com
eva.gadzheva@goldbergkohn.com