**EXHIBIT 1**

**Revised Proposed Order**

4

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 41** |

**ORDER (I) APPROVING
BIDDING PROCEDURES AND
BID PROTECTIONS, (II) SCHEDULING
CERTAIN DATES AND DEADLINES WITH RESPECT
THERETO, (III) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES
FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES,
(V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS,
(VI) AUTHORIZING THE SALE OF ASSETS; AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) approving the Bidding

Procedures, by which the Debtors will solicit and select the highest or otherwise best offer(s) for

the sale or sales of all, substantially all, or any portion of the Assets; (b) approving the Bid

Protections relating to the Stalking Horse Bidder; (c) scheduling certain dates with respect thereto;

(d) approving the manner of notice of the Auction and Sale Hearing; (e) approving procedures for

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 24].

the assumption and assignment of certain Executory Contracts and Unexpired Leases in connection with the sales of all or substantially all of the Debtors' assets (each a "Sale Transaction"), if any; (f) providing that, in light of the fact that the Debtors' privacy policy does not prohibit the transfer of personal identifiable information, the appointment of a consumer privacy ombudsman is not required; and (g) authorizing the assumption and assignment of assumed contracts; and upon the First Day Declaration, the Keil Declaration, and the Frejka Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact

constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      The Bidding Procedures are fair, reasonable, and appropriate and are designed to promote participation and active bidding and ensure that the highest or otherwise best value is generated for the Assets.

3.      The Bidding Procedures were negotiated at arm's length, in good faith, and without collusion.  The Bidding Procedures balance the Debtors' interests in emerging expeditiously from the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estate, their creditors, and other parties in interest.

4.      The Debtors, with the assistance of their advisors, engaged in a robust and extensive marketing and sale process prior to the Petition Date to solicit and develop the highest or otherwise best offer for the Debtors' Assets.  The Bidding Procedures are designed to continue that robust and extensive marketing and sale process.

5.      The Debtors have articulated good and sufficient business reasons for this Court to grant the relief requested in the Motion, including, without limitation, to approve the Bidding Procedures.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Hearing, are incorporated herein by reference and, *inter alia*, form the basis for the Court's findings of fact and conclusions of law herein.

6.      The Debtors have selected a Stalking Horse Bidder with respect to the Assets (as applicable), and the Bid Protections (as defined in the Bidding Procedures) to the extent payable under the Stalking Horse APA (as defined below) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed administrative expense claim against the Debtors'

estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code; *provided that* any DIP Obligations shall be senior in priority to such Bid Protections; *provided further* that the Bid Protections shall not be considered in evaluating the purchase price or Overbid increment associated with any Qualified Bid submitted by any DIP Lender or DIP Agent, but the administrative expense claim status afforded to such Bid Protections pursuant to this Order shall remain in effect.

7.      The Debtors have filed a Stalking Horse Notice (as defined herein) that is reasonably calculated to provide interested parties with timely and proper notice of the designation of the Stalking Horse, including, without limitation: (a) the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor), (b) the amount of the Stalking Horse Bid and what portion (if any) is cash, (c) whether the Stalking Horse Bidder (as defined herein) has any connection to the Debtors other than those that arise from the Stalking Horse Bid, (d) any proposed Bid Protections (including the amount and calculation thereof), (e) the Stalking Horse APA (as defined herein), including all exhibits, schedules and attachments thereto, and (f) the Assets to which the Stalking Horse Bid relates.

8.      The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, and incorporated herein by reference, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction.

**IT IS HEREBY ORDERED THAT**:

1.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights and/or statements included in such objections, are overruled and denied on the merits with prejudice, and the Bidding Procedures are approved as set forth herein.

## I.    Important Dates and Deadlines.

2.    **Final Bid Deadline**.  In the event of a Going-Out-Of-Business Sale Transaction, June 3, 2024, at 4:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures.  In the event of a Going-Concern Sale Transaction, June 3, 2024, at 4:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures. In the event there is no Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction,[3] June 8, 2024, at 4:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids for all other assets must be **actually received** by the parties specified in the Bidding Procedures.

3.    **Stalking Horse Bidders and Bid Protections**.  The Debtors have, in an exercise of their business judgment, and in consultation with the Consultation Parties, selected a Qualified Bidder to act as a stalking horse bidder in connection with a Sale Transaction (the "Stalking Horse Bidder") with respect to some or all of the Debtors' Assets and have entered into a purchase agreement with respect to such Sale Transaction with the Stalking Horse Bidder (the agreement, the "Stalking Horse APA") on May 22, 2024.

4.    The Debtors filed a notice and proposed form of order with the Court at Docket No. 305 (the "Stalking Horse Notice") on May 24, 2024 and served the Stalking Horse Notice on the Stalking Horse Bidder, the U.S. Trustee, and the Consultation Parties, and other parties in interest.[4]

---

[3]    For the avoidance of doubt, in the event there is no Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction, no non-residential real property leases will be included as Assets to be sold pursuant to the Bidding Procedures.

[4]    "Consultation Parties" (and each, a "Consultation Party") means the DIP Lenders, the DIP Agents, and the official committee of unsecured creditors (the "Committee"); *provided, however*, that to the extent any DIP Lender or DIP Agent submits any Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, such DIP Lender or DIP Agent shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in the DIP Lender or DIP Agent's Bid, or with respect to

The Stalking Horse Notice:  (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) stated whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specified the proposed Bid Protections (including the amount and calculation thereof); (v) attached the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (vi) specified the Assets to which the Stalking Horse Bid relates.  If a party files an objection to the Stalking Horse Notice, the Court shall hold a hearing as soon thereafter as the Court is available.

5.      Upon entry into the Stalking Horse APA, the Debtors, in consultation with the Consultation Parties, provided the Bid Protections to the Stalking Horse Bidder in accordance with the Bidding Procedures.

6.      No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

7.      __Notice of Successful Bidder__.  As soon as reasonably practicable, but no later than twelve hours after the conclusion of the Auction, the Debtors shall file a Notice of Successful Bidder.

---

seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures and the Bidding Procedures Order.  Notwithstanding the forgoing, to the extent any DIP Lender or DIP Agent submits a Credit Bid that is both (i) irrevocable and (ii) not subject to amendment after the Bid Deadline or during the Auction, the DIP Lender or DIP Agent will remain Consultation Parties with respect to the evaluation and qualification of competing Bids for such Assets included in the DIP Lender or DIP Agent's Credit Bid.

8.      **Sale Objection Deadline**.   Objections to the Sale Transaction, the Notice of Successful Bidder, and the Stalking Horse Bidder's ability to provide adequate assurance of future performance (the "Sale Objection Deadline"), if any, must be made on or before (i) June 6, 2024, at 4:00 p.m., prevailing Eastern Time in the event of a Going-Out-Of-Business Sale Transaction, (ii) June 7, 2024, at 4:00 p.m., prevailing Eastern Time in the event of a Going-Concern Sale Transaction, or (ii) June 18, 2024 at 4:00 p.m., prevailing Eastern Time in the event there is no Going-Out-Of-Business or Going-Concern Sale Transaction.   Objections of Contract Counterparties to a Proposed Assignee's ability to comply with the requirements of adequate assurance of future performance whose Contracts are subject to a Successful Bid (other than the Stalking Horse Bid) may be raised at the Sale Hearing.

9.      **Failure to Object**.   If any party fails to timely file with the Court and serve an objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to the Sale Transaction(s), such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction(s), including the transfer of the Assets to the Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code subject only to the Assumed Liabilities and permitted encumbrances, as defined in any asset purchase agreement executed by the Debtors and the Successful Bidder, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

10.     **Sale Hearing.**   **June 6, 2024**, in the event of a Going-Out-Of-Business Sale Transaction, **June 14, 2024**, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard, in the event of a Going-Concern Sale Transaction, or, **June**

**25, 2024**, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard, in the event there is no Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids, if needed (the "<u>Sale Hearing</u>").  The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.  In the event counterparties to Executory Contracts or Unexpired Leases raise objections to a Sale Transaction or Successful Bid that are not resolved on or prior to the Sale Hearing, the Sale Hearing shall serve only as a status conference for purposes of scheduling a later hearing on such objections on no less than ten (10) days' notice.

**II.     Auction, Bidding Procedures, and Related Relief.**

11.     The Bidding Procedures, including the Auction Notices, attached hereto as **Exhibit 2**, substantially in the form attached hereto as **Exhibit 1**, are fully incorporated herein and approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Transaction.  Any party desiring to bid on the Debtors' Assets shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take all actions as are necessary or appropriate to implement the Bidding Procedures.

12.     Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction(s), as set forth in the Bidding Procedures; (b) the Auction, if any, shall be conducted openly; and (c) the Auction, if any, shall be transcribed or videotaped.

13.     Pursuant to the Bidding Procedures, the Debtors, in their business judgment, in consultation with the Consultation Parties, may (a) determine which Qualified Bid is the highest or otherwise best offer, (b) reject, at any time before entry of an order of the Court approving a

Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction(s), or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

14.     If the Debtors determine not to conduct an Auction, then the Debtors shall file a notice with the Court of such determination within one (1) business day of the making of such determination by the Debtors.

15.     Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or an order of this Court, as applicable.

16.     The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within two (2) business days following the entry of this Order, the Debtors will cause the Auction Notice to be served upon (a) the office of the United States Trustee for the District of Delaware; (b) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (c) counsel to the Committee; (d) counsel to the DIP Agents; (e) the U.S. Securities and Exchange Commission; (f) the United States Attorney's Office for the District of Delaware; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) the Internal Revenue Service; (i) all parties who have expressed a written interest in the Assets; (j) all known holders of liens, encumbrances, and other claims secured by the Assets; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Within three (3) business days after

entry of this Order, the Debtors shall place a publication version of the Auction Notice in *The New York Times* (National Edition) and post it on to the Debtors' restructuring website at https://cases.stretto.com/express.  Such notice shall be deemed sufficient and proper notice of the Sale Transaction(s) with respect to known interested parties.

**III.    Assumption and Assignment Procedures.**

17.    The procedures set forth below regarding the assumption and assignment of any Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale Transaction(s) are hereby approved to the extent set forth herein.

18.    These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with the Sale Transaction(s) under the Stalking Horse APA or the Form APA, and any marked versions thereof, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the counterparty resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to a Contract (the foregoing amounts as stated in the Contract Assumption Notice, the "Cure Payments"):

(a)    **Notice of Contract Assumption.**  No later than three (3) business days after entry of this Order, the Debtors shall file on the docket and serve a notice of contracts assumed and assigned to any Successful Bidder (the "Contract Assumption Notice"), in substantially the form attached hereto as

**Exhibit 3**, via first-class mail on the counterparties to the Executory Contracts or Unexpired Leases to be assumed and assigned in connection with the Sale Transaction(s) (the "Contract Counterparties"); *provided that* if the Contract Counterparty is a landlord, the Debtors shall serve the Contract Assumption Notice via overnight mail to the applicable landlord at the notice address set forth in the applicable Lease and via e-mail, if known, to the applicable landlord and their counsel. The Contract Assumption Notice, shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the counterparty to the Executory Contract or Unexpired Lease, (iii) Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, and (iv) the Sale Objection Deadline; *provided*, *however*, that service of a Contract Assumption Notice does not constitute an admission that any Executory Contracts and Unexpired Leases listed thereon is an executory contract or that such stated Cure Payment constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Contract Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

(b)     **Cure Payments.**  The payment of the applicable Cure Payments by the Debtors and/or the Successful Bidder, as applicable shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Executory Contract or Unexpired Lease by the Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder, constitute adequate assurance of future performance thereof.

(c)     **Supplemental Contract Assumption Notice.**  To the extent the Debtors, at any time after the Auction (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Contract Assumption Notice, (iii) and/or modify the previously stated Cure Payment associated with any Executory Contract or Unexpired Lease, the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the Contract Counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Contract Assumption Notice. Except as otherwise provided in any purchase agreement, a Successful Bidder may designate additional Executory Contracts and Unexpired Leases to be assumed and assigned up to two (2) business days prior to the Closing and may remove Executory

Contracts or Unexpired Leases from the list of Executory Contracts and Unexpired Leases up to two (2) business days prior to the Closing.

(d) **Objections.**  Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Stalking Horse Bidder and (c) the Bid Notice Parties (as defined in the Bidding Procedures), so as to be **actually received no later than seven (7) business days after service of the Contract Assumption Notice (the "Cure Objection Deadline") or seven (7) business days after service of any Supplemental Assumption Notice, as applicable**.  The Debtors may modify the Cure Objection Deadline and the deadline set forth in a Supplemental Assumption Notice by filing a notice of such modification on the Court's docket.

(e) **Dispute Resolution.**  In the event that the Debtors and a Contract Counterparty cannot resolve an objection to a Cure Payment, the Executory Contract or Unexpired Lease at issue may be assumed by the Debtors and assigned to the Successful Bidder, *provided* that the Debtors shall segregate the Cure Payment that the Contract Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties.  The Debtors shall file and serve a notice for a hearing for the Court to consider the unresolved objection(s) to Cure Payments at the next scheduled omnibus hearing after the applicable Sale Hearing, unless the Debtors and the objecting parties agree to a different time and subject to the Court's schedule.

(f) **Contract Assumption.**  No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale Transaction(s) has closed.

19.    Any party failing to timely file an objection to the Cure Payments or the proposed assumption and assignment of an Executory Contract or Unexpired Lease listed on the Contract Assumption Notice or a Supplemental Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, and (c) the related relief requested in the Motion.  Such party shall be forever barred and estopped

from objecting to the Cure Payments, the assumption and assignment of the Executory Contract or Unexpired Lease, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Executory Contract or Unexpired Lease.

20.     The Debtors shall, within 24 hours of the applicable Bid Deadline and the deadline to file the Stalking Horse Notice, provide evidence to each Executory Contract or Unexpired Lease counterparty and its counsel, if known, via e-mail that a Proposed Assignee (or the Stalking Horse Bidder) of a Bid has the ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis.  All Bidders (including the Stalking Horse Bidder) are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to counsel for the applicable Executory Contract or Unexpired Lease counterparties via email with such information to be used only for purpose of assessing the applicable Bidder; *provided, however*, landlords who received adequate assurance information may use such information in any objection to the assumption and assignment of an Unexpired Lease.

21.     The inclusion of an Executory Contract or Unexpired Lease in the Contract Assumption Notice or a Supplemental Assumption Notice will not obligate any Debtor to assume any Executory Contract or Unexpired Lease listed thereon or a Successful Bidder to take assignment of such assumed Contract.  Only those Executory Contracts and Unexpired Leases that are included on a schedule of assumed and assigned contracts attached to the executed definitive

asset purchase agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Successful Bidder.  No Executory Contract or Unexpired Lease in the Contract Assumption Notice or a Supplemental Assumption Notice shall be assumed other than in connection with (and concurrently with the effectiveness of) the assignment of such Executory Contract or Unexpired Lease to the applicable Successful Bidder.

**IV.    Miscellaneous**.

22.    Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the Debtors, the Debtors' lenders, and the agents under their respective credit agreements, the Stalking Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction(s), and any related items (including, if necessary, to seek an extension of the Bid Deadline).

23.    All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

24.     The Debtors are authorized, in consultation with the Consultation Parties, to revise the Sale Schedule.  The Debtors are further authorized to conduct multiple Sale Transaction(s) and/or Auctions (as necessary) in substantial conformity with the Sale Schedule and Bidding Procedures established through this Order.

25.     The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

26.     The Court, at the request of the Debtors, and in consultation with the Consultation Parties, and subject to its availability, may modify the dates of and adjourn any hearing set by this Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

27.     The Debtors may, in consultation with the Consultation Parties, modify any of the deadlines set forth herein or provide for additional deadlines within a Sale Schedule without further order of the Court, *provided* that the Debtors will disclose all applicable deadlines in a notice filed with the Court, including, as applicable, the Auction Notice.

28.     The Debtors may, in consultation with the Consultation Parties, modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold.

29.     All parties in interest shall receive or be deemed to have received good and sufficient notice of the Motion and of the Auction, and no further notice of the foregoing shall be required except as expressly set forth herein.

30.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon entry hereof.

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## __Exhibit 1__

## Bidding Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## BIDDING PROCEDURES FOR THE
## SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS
## IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS

On April 22, 2024 (the "Petition Date"), Express, Inc., and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On [●] [●], 2024, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures") setting forth the process by which the Debtors are authorized to solicit bids for and conduct an auction (the "Auction"), if any, and ultimately select a purchaser for the Sale of all or substantially all of the Debtors' Assets or any portion thereof.

Any Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bidding Procedures Order.

are available upon request to Stretto, Inc. by calling (855) 337-3537 (toll free) or +1 (949) 617-1363 (international) or visiting the Debtors' restructuring website at https://cases.stretto.com/Express/.

## I.        Assets to be Auctioned.

The Debtors are seeking to sell all of their assets, or any portion thereof to the person or entity making the most value maximizing bid through the process outlined in these Bidding Procedures.  These assets include, but are not limited to, the Debtors' going-concern business, unexpired leases, executory contracts, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "Assets"), subject only to the Assumed Liabilities and permitted encumbrances, as defined in any asset purchase agreement executed by the Debtors and the Successful Bidder.

## II.       Public Announcement of Auction.

Within two (2) business days after entry of the Bidding Procedures Order, the Debtors shall serve on the parties that receive notice of the Motion (i) the Bidding Procedures Order and the Bidding Procedures and (ii) a notice setting forth (A) the date, time, and place of the Auction and the hearing to consider the approval of the Sale Transaction(s) and (B) the deadlines and procedures for objecting to the proposed Sale Transaction(s) in the form attached hereto as **Schedule 1** (the "Auction Notice").  Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall also publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) to provide notice to any other potential interested parties, and post the Auction Notice on their case website, https://cases.stretto.com/Express/.  The Auction Notice shall include a complete list and general description of the Assets for sale.

## III.      Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

A.       an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

B.       a statement of what portion of the Assets that the Potential Bidder intends to acquire;

3

C.      sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties;[3] and

D.      a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

Promptly following receipt thereof, the Debtors shall provide copies of the Preliminary Bid Documents to the Consultation Parties. The Debtors, in consultation with their advisors and the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a bid (such Potential Bidder, an "Acceptable Bidder"); *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved.

## IV.    Qualified Bid Requirements.

To participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer for the purchase of some or all of the Assets (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below):

a.      **Purchased Assets and Assumed Liabilities**:  Each Bid must clearly state the following:  (a) the particular Assets, or the portion thereof identified, with reasonable specificity to be purchased and/or liquidated or otherwise disposed of; (b) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; (c) any executory contracts (the "Executory Contracts") and any unexpired leases (the "Unexpired Leases") to be received by assignment, and (d) as applicable, whether the Acceptable Bidder intends to operate the Debtors' business as a going concern;

b.      **Good Faith Deposit**:  The Bid must be accompanied by a cash deposit in the amount equal to ten (10) percent of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the

---

[3]  "Consultation Parties" (each a "Consultation Party") means the DIP Lenders, the DIP Agents, and the official committee of unsecured creditors (the "Committee"); *provided, however*, that to the extent any DIP Lender or DIP Agent submits any Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, such DIP Lender or DIP Agent shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in the DIP Lender or DIP Agent's Bid, or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures and the Bidding Procedures Order.  Notwithstanding the forgoing, to the extent any DIP Lender or DIP Agent submits a Credit Bid that is both (i) irrevocable and (ii) not subject to amendment after the Bid Deadline or during the Auction, the DIP Lender or DIP Agent will remain Consultation Parties with respect to the evaluation and qualification of competing Bids for such Assets included in the DIP Lender or DIP Agent's Credit Bid.

Debtors (the "Good Faith Deposit").  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals ten (10) percent of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction;

c.   **Purchase Price**:  Each Bid must (a) clearly set forth the purchase price to be paid, assuming a purchase of the applicable Assets and any assumption of liabilities (the "Purchase Price"), (b) identify separately the cash and non-cash components of the Purchase Price, and (c) indicate the allocation of the Purchase Price among the applicable Assets.  The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis.  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Qualified Bid should be viewed as a separate Bid for one or more sets of Assets.  The Debtors reserve the right to ask any Acceptable Bidder to allocate the value ascribed to a Bid for any particular Asset and to inquire about any significant assumptions on which such valuations are based;

d.   **Sources of Financing**:  To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction(s) set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' and the Committee's satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction(s) and other obligations under its Bid; *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

e.   **Same or Better Terms; Bid Documents**:  Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents").  The Bid Documents shall include:  (a) a purchase agreement, based on a form that the Debtors shall make available to Acceptable Bidders via the Debtors' electronic data room pursuant to the due diligence process (the "Form APA"), duly executed by such bidder, containing only changes to the Form APA that are reasonably necessary to effectuate the Bid, (b) a schedule of Executory Contracts and Unexpired Leases to be assumed or rejected to the extent applicable to the Bid, (c) with respect to the purchase agreement, a redline of such agreement marked to reflect the amendments and modifications made to the Form APA, (d) any other material documents integral to such Bid, and (e) a statement from the Acceptable Bidder that (i) it is prepared to enter into and consummate the transactions

5

contemplated in the Form APA, no later than ten (10) business days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, the deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures (the "<u>Bid Deadline</u>")) and (ii) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the highest or otherwise best bid to purchase the applicable Assets (each, a "<u>Successful Bid</u>") or next highest or otherwise best bid (the "<u>Back-Up Bid</u>") until the consummation of the Sale Transaction(s));

f.   **No Qualified Bidder Bid Protections**: Unless such Qualified Bid is selected as a stalking horse bid (a "<u>Stalking Horse Bid</u>"), a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

g.   **Employee Obligations**: Each Bid must indicate whether the Acceptable Bidder intends to hire all employees of the Debtors. If the Acceptable Bidder does not intend to hire all employees of the Debtors, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees who are employed primarily in connection with the applicable Assets, and a description of any contemplated incentive plan, to the extent applicable;

h.   **Authorization**: Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

i.   **Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline;

j.   **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, including each equity holder or other financial backer of the bidder (including if such bidder is an entity formed for the purpose of consummating the transactions contemplated by such Bid), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific

person(s) whom Moelis & Company LLC ("Moelis") and Kirkland & Ellis LLP should contact regarding such Bid;

k. **As-Is, Where-Is**:  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Sale Transaction(s) prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; (iii) did not rely on or receive from any person or entity (including any of the Debtors or their advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith or the Auction (if any), except as expressly stated in the Acceptable Bidder's purchase agreement; and (iv) did not engage in collusive conduct and acted in good faith in submitting its Bid;

l. **Joint Bids and Merger Proposals**: The Debtors will be authorized to approve joint bids in their business judgment, in consultation with the Committee, including, but not limited to, any bids that contemplate acquiring equity or assets through a merger or similar transaction, including if a proposed bid contemplates additional financing from one or several participating parties, on a case by case basis, so long as such bid meets the Qualified Bid Requirements and the applicable bidders otherwise comply with these Bidding Procedures; *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved;

m. **Adequate Assurance of Future Performance**:  Each Bid (which, for the avoidance of doubt, shall include any Stalking Horse Bid) must (i) identify the Executory Contracts and Unexpired Leases  to be assumed or assumed and assigned in connection with the proposed Sale Transaction(s), (ii) provide for the payment of all cure amounts (the "Cure Amounts") related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder, (iii) demonstrate, in the Debtors' business judgment, in consultation with the Consultation Parties, that the Acceptable Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (iv) provide the following documentation:

    (i)    The proposed assignee (the "Proposed Assignee") and any guarantors, as applicable;

    (ii)    Financial statements for the calendar or fiscal years ended 2022 and 2023 for the Proposed Assignee and any guarantors, as applicable, and other financial information about the Proposed Assignee to demonstrate its ability to provide adequate assurance of future performance;

(iii)   Summary documentation regarding the Proposed Assignee's and any guarantor's, as applicable, retail experience and present retail operations; and

(iv)   Summary of the Proposed Assignee's proposed use of the premises;

n.   **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law:**  Each Bid must acknowledge that is has complied, and will continue to comply, in all respects with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, and any applicable non-bankruptcy law;

o.   **Privacy Policies.**  The Acceptable Bidder must comply in all respects with the Debtors' consumer privacy policy, which does not restrict the transfer of the personally identifiable information of its customers, and each Bid must contain a statement acknowledging such compliance;

p.   **No Collusion**:  The Acceptable Bidder must (a) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the Sale Transaction(s), specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price or otherwise with respect to any of the Assets or the Sale Transaction(s) and processes contemplated by the Bidding Procedures; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction(s).  For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email shall suffice);

q.   **Good Faith Offer:**  The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction(s);

r.   **Irrevocable**:  Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction(s);

s.   **Back-Up Bid**:  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if the Acceptable Bidder's Bid is the next highest or otherwise best bid with respect to the applicable Assets;

t.   **Regulatory and Third-Party Approvals and Covenants**:  A Bid must set forth each regulatory and third-party approval, if any, required for the Acceptable Bidder to consummate the applicable Sale Transaction(s), the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals, and those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible;

u.   **Expected Closing Date and Time Frame for Closing**:  Each Bid must state the Acceptable Bidder's expected date of closing of the Sale Transaction(s)

8

(the "<u>Closing</u>") and must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors in consultation with the Consultation Parties;

v.      **No Fees**:  Except to the extent the Acceptable Bidder is approved, prior to the Bid Deadline and in accordance with Bidding Procedures Order, to be eligible to receive (x) a break-up fee (the "<u>Break-Up Fee</u>") in an amount not to exceed three (3) percent of the Acquired Merchandise Amount as a stalking horse bidder (a "<u>Stalking Horse Bidder</u>") and/or (y) reimbursement of reasonable and documented out of pocket fees and expenses (the "<u>Expense Reimbursement</u>" and together with the Break-Up Fee, the "<u>Bid Protections</u>") in an amount not to exceed three (3) percent of the Acquired Merchandise Amount as a Stalking Horse Bidder, each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive any payments or amounts analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation;

For the avoidance of doubt, each Acceptable Bidder by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their business judgment, in consultation with the Consultation Parties, to provide the Bid Protections to the Stalking Horse Bidder in connection with any stalking horse agreement (a "<u>Stalking Horse APA</u>") in accordance with these Bidding Procedures; *provided further* that to the extent any Stalking Horse Bidder has submitted a credit bid (a "<u>Credit Bid</u>"), the Bid Protections shall not be permitted;

w.      **Adherence to Bidding Procedures**:  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

x.      **Consent to Jurisdiction**:  The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, preliminary bid documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction(s), the Closing, and any other related matter; and

y.      **Conditions to Closing:** Each Bid must identify with particularity each and every condition to closing, including the Executory Contract and Unexpired Leases for which assumption and assignment is required.

Only Bids fulfilling all of the preceding requirements contained in this section as

9

determined or otherwise waived in the Debtors' business judgment, in consultation with the Consultation Parties, may be deemed to be qualified bids (the "Qualified Bids"), and only those parties submitting Qualified Bids, in the Debtors' business judgment, in consultation with the Consultation Parties, may be deemed to be qualified bidder (the "Qualified Bidders"). For the avoidance of doubt, if any bidder is approved as a Stalking Horse Bidder, such bidder shall be deemed an Acceptable Bidder and Qualified Bidder and its bid shall be deemed a Qualified Bid.

Neither the Debtors nor any of their advisors are making or have at any time made, and no bidder, Potential Bidder, or Acceptable Bidder has relied, is relying, or shall rely on any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets, except as expressly stated in the Acceptable Bidder's purchase agreement. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction(s). Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction(s).

There shall be no communications between or among Potential Bidders and/or Acceptable Bidders unless the Debtors' advisors have authorized such communication in writing. The Debtors reserve the right, in their business judgment, to disqualify any Potential Bidders or Acceptable Bidders that have communications between or amongst themselves without the prior authorization of the Debtors' advisors; *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved. For the avoidance of doubt, the joining of Bids between Potential Bidders or Acceptable Bidders may be permitted by the Debtors in their business judgement.

As soon as practicable after the Bid Deadline and in any event prior to the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which Acceptable Bidders, including Acceptable Bidders submitting Credits Bids pursuant to these Bidding Procedures, are Qualified Bidders and will notify the Acceptable Bidders whether the Bids, including any Credit Bids, submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Acceptable Bidder with the opportunity and work with the Acceptable Bidder to remedy any deficiencies prior to the Auction.

## V.    **Right to Credit Bid**

Any Qualified Bidder that has a valid and perfected lien on any of the Assets (a "<u>Secured Creditor</u>") shall have the right to submit Credit Bids consisting of all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code by no later than the Bid Deadline; *provided* that a Secured Creditor shall have the right to Credit Bid its claim only with respect to the collateral by which such Secured Creditor claim is secured; *provided further* that if a Credit Bid is irrevocable and not subject to amendment after the Bid Deadline or during the Auction, such Secured Creditor will remain a Consultation Party, as applicable, with respect to the evaluation and qualification of competing Bids for such Assets included in such Secured Creditor's Credit Bid, or with respect to seeking and/or obtaining information about other Bids.

If a Credit Bid is revocable or subject to further amendment, the submitting Secured Creditor shall not be a Consultation Party, as applicable, with respect to the evaluation and qualification of competing Bids for such Assets included in the Secured Creditor's Credit Bid, or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures and the Bidding Procedures Order.

Any Credit Bid made by a Secured Creditor will be deemed to be a cash Bid solely for purposes of the Debtors' evaluation of Bids (including the Debtors' evaluation of Qualified Bids and Subsequent Bids).  Any Secured Creditor shall be deemed to be an Acceptable Bidder, shall be deemed to have submitted a Qualified Bid, and may participate in any Auction with respect to any assets constituting collateral of such Secured Creditor without the requirement to submit a Good Faith Deposit or any Bid Documents other than a marked form of the Form APA; *provided* that any such Credit Bid must be submitted no later than the Bid Deadline; *provided further* that no other party other than the Prepetition Secured Parties (as defined in the Cash Collateral Order) may Credit Bid on the Collateral (as defined in the Cash Collateral Order) unless the entire amount of the Prepetition Secured Indebtedness (as defined in the Cash Collateral Order) will be paid in full in cash on the closing of such credit bid transaction.  No Secured Creditor submitting a Credit Bid shall be required to submit a Good Faith Deposit or any Bid Documents other than a marked form of the Form APA.

The rights of any party-in-interest, including the Committee, to seek standing or authority to pursue a Challenge (as defined in the DIP Financing Order) and to object to any Secured Creditor's rights to Credit Bid are hereby reserved and preserved, in each case as set forth in the DIP Financing Order.

## VI.    **Obtaining Due Diligence Access.**

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors. ***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***.  Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence

information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.

Acceptable Bidders will not, directly, or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' business judgment, in consultation with the Committee, have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction(s); *provided further* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, or otherwise presents a *bona fide* competitive or strategic concern, the Debtors reserve the right, in consultation with the Consultation Parties, to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A.    Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through Moelis.

### B.    Due Diligence from Acceptable Bidders (including Qualified Bidders).

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors and their respective advisors, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated transaction. Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, to determine that such bidder is no longer an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder) or that a bid made by such bidder is not a Qualified Bid.

**Adam Keil, Perry Hall, Cullen Murphy, Andrew Carlson and Michael Morris at Moelis shall coordinate all requests for additional information and due diligence access on behalf of the Debtors. They can be reached at Adam Keil (Adam.Keil@moelis.com); Perry Hall (Perry.Hall@moelis.com); Cullen Murphy (Cullen.Murphy@moelis.com); Andrew Carlson (Andrew.Carlson@moelis.com); Michael Morris (Michael.Morris@moelis.com).**

## VII.    Bid Deadline.

Binding Bids must be submitted in writing to the following parties (the "Bid Notice Parties") so as to be **actually received** no later than (i) 4:00 p.m., prevailing Eastern Time, on May 24, 2024, in the event there is a Going-Out-Of-Business Sale Transaction, (ii) 4:00 p.m., prevailing Eastern Time, on June 3, 2024, in the event there is a Going-Concern Sale Transaction, or (iii) 4:00 p.m., prevailing Eastern Time, on June 4, 2024, in the event there is no Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction (the "Bid Deadline").

    (i)    proposed co- counsel to the Debtors, (A) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg (joshua.sussberg@kirkland.com), Emily E. Geier, P.C. (emily.geier@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Charles B. Sterrett (charles.sterrett@kirkland.com), and (B) Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801, Attn.: Domenic E. Pacitti (dpacitti@klehr.com), and Michael W. Yurkewicz (myurkewicz@klehr.com) and Klehr Harrison Harvey Branzburg LLP, 1835 Market Street, Suite 1400, Philadelphia, Pennsylvania 19103, Attn.: Morton R. Branzburg (mbranzburg@klehr.com);

    (ii)    the Debtors' proposed investment banker, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, NY 10022, Attn: Adam Keil (Adam.Keil@moelis.com); Perry Hall (Perry.Hall@moelis.com); Cullen Murphy (Cullen.Murphy@moelis.com); Andrew Carlson (Andrew.Carlson@moelis.com); Michael Morris (Michael.Morris@moelis.com); and

    (iii)    proposed co-counsel to the Committee, (A) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Adam Rogoff (arogoff@kramerlevin.com), and Nathaniel Allard (nallard@kramerlevin.com), and (B) Saul Ewing LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19801, Attn: Luke Murley (luke.murley@saul.com).

The Debtors may extend the Bid Deadline for any reason whatsoever, in their business judgment, for all or certain Acceptable Bidders.

## VIII.    Evaluation of Qualified Bids.

The Debtors shall, in consultation with the Consultation Parties, evaluate Qualified Bids

and identify the Qualified Bid that is, in the Debtors' business judgment, the highest or otherwise best Qualified Bid or combination of Qualified Bids for any Assets (the "Starting Bid"). The Debtors shall reasonably promptly provide to the Consultation Parties copies of all Bids received by the Debtors, including the Starting Bid; *provided* that the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors deem appropriate:  (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; (e) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code; (f) the certainty of a Qualified Bid leading to a confirmed Plan; (g) whether the Acceptable Bidder intends to operate the Debtors' business as a going concern, or to liquidate the business; (h) the impact of the proposed Sale Transaction contemplated by the Qualified Bid on the Debtors' employees; and (i) any other consideration that may impact the Debtors' stakeholders; *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved.  Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Assets.  At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder and each Qualified Bidder.

## IX.    **Bid Protections.**

Pursuant to the Bidding Procedures Order, a Stalking Horse Bidder that has not submitted a Credit Bid, is entitled to the Bid Protections in the amounts set forth herein, and in accordance with the terms of the Bidding Procedures Order.

On May 22, 2024, the Debtors, in an exercise of their business judgment, in consultation with the Consultation Parties, have (a) selected an Acceptable Bidder to act as the Stalking Horse Bidder in connection with the Auction for such assets, and (b) in connection with any Stalking Horse APA with a Stalking Horse Bidder, (x) have provided a break-up fee of three (3) percent of the Acquired Merchandise Amount (as defined in the Stalking Horse APA) as a Stalking Horse Bidder and (y) have agreed to reimburse the reasonable and documented out of pocket fees and expenses not to exceed three (3) percent of the Acquired Merchandise Amount as a Stalking Horse Bidder.  Any such Bid Protections are authorized pursuant to the Bidding Procedures Order.

Since the Debtors, in consultation with the Consultation Parties, entered into a Stalking Horse APA with a Stalking Horse Bidder, the Debtors filed a notice and proposed form of order with the Court (the "Stalking Horse Notice") on May 24, 2024, and served the Stalking Horse Notice on the Stalking Horse Bidder, the U.S. Trustee, and the Consultation Parties.  The Stalking Horse Notice:  (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse

Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) stated whether the Stalking Horse Bidder had any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specified the proposed Bid Protections (including the amount and calculation thereof); (v) attached the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (vi) specified the Assets to which the Stalking Horse Bid relates.  If a party files an objection to the Stalking Horse Notice, the Court shall hold a hearing as soon thereafter as the Court is available.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder that has not submitted a Credit Bid, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

## X.    No Qualified Bids.

If no Qualified Bids other than the Stalking Horse Bid are received for the Assets included in such Stalking Horse Bid by the applicable Bid Deadline, then the Debtors may cancel the Auction with respect to such Assets, in consultation with the Committee; *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved.  If the Stalking Horse Bid is the only Qualified Bid received by the applicable Bid Deadline, the Debtors may decide, in their business judgment, and in consultation with the Consultation Parties, to designate such Stalking Horse Bid as the Successful Bid as to the applicable Assets and pursue entry of an order approving a Sale Transaction(s) with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.  The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court.

## XI.    Auction.

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Assets by the Bid Deadline, the Debtors shall conduct an Auction to determine the Successful Bidder (or Back-Up Bidder, as applicable) in their business judgment with respect to such Assets or portion of Assets in accordance with the Auction Procedures in consultation with the Consultation Parties.  If the Debtors do not receive a Qualified Bid for any particular Asset by the applicable Bid Deadline, the Debtors will not conduct an Auction with respect to such Asset.

If the Debtors determine, in consultation with the Consultation Parties, that they have received no Qualified Bids other than any Stalking Horse Bid or they have received only a single Qualified Bid, then the Auction will not occur, and the Stalking Horse Bid or the Qualified Bid will be deemed to be the Successful Bid(s) for the Assets to which such Stalking Horse Bid relate. The Debtors shall file a notice with the Court within one (1) business day of making such a

determination.

The Auction, if necessary, shall commence on (i) May 28, 2024, a time to be announced, in the event of a Going-Out-Of-Business Sale Transaction, (ii) June 5, 2024, at a time to be announced, in the event of a Going-Concern Sale Transaction, or (iii) June 11, 2024, at 4:00 p.m., prevailing Eastern time, if there is no Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction, or (iv) such other time or other place as the Debtors determine in consultation with the Consultation Parties.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"); *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved:

a.    only Qualified Bidders may participate in or make subsequent Bids at the Auction;

b.    the Debtors shall provide notice to the Consultation Parties of all parties wishing to attend the Auction, to the extent known;

c.    only the Debtors, Qualified Bidders, the Consultation Parties, the U.S. Trustee, and such parties' representatives and advisors may attend the Auction; *provided* that Qualified Bidders may appear through a duly authorized representative (other than their counsel) bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the Debtors prior to the commencement of the Auction; *provided, further* that any landlord that is deemed a Qualified Bidder or is part of a consortium of Qualified Bidders, may attend the Auction; *provided, further*, any Contract Counterparties for which such underlying Executory Contracts and Unexpired Leases are included in any Qualified Bid and subject to the Auction, and any other party the Debtors deem appropriate, may attend and observe the Auction so long as such party provides notice to the Debtors at least five (5) days prior to the Auction by sending any email to emily.geier@kirkland.com, nicholas.adzima@kirkland.com, and charles.sterrett@kirkland.com, counsel to the Debtors;

d.    the Debtors, with the assistance of their advisors, shall direct and preside over any Auction;

e.    at the commencement of the Auction, the Debtors may announce modified or additional procedures for conducting the Auction and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s), or otherwise modify the Bidding Procedures, in each case in consultation with the Consultation Parties;

f.    bidding shall begin with the Starting Bid;

g.      subsequent bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) a two (2) percent increase in cash, cash equivalents, or other such consideration that the Debtors, in their business judgment, in consultation with the Consultation Parties, deem equivalent over the previous bid *plus* (ii) since the Debtors have entered into a Stalking Horse APA, solely with respect to the first Overbid made by a party, except with respect to any Overbid made by the Stalking Horse Bidder with respect to the Assets to which the Overbid relates, the aggregate amount of Bid Protections under the Stalking Horse APA (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid.  The Debtors may, in their business judgment and in consultation with the Consultation Parties announce increases or reductions to the Minimum Overbid at any time during any Auction.  For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at any Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their business judgment, and in consultation with the Consultation Parties, deem equivalent that exceeds the then-existing highest Bid by at least the amount of the Minimum Overbid;

h.      each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors;

i.      during the course of the Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of such Overbid and inform each Qualified Bidder whether such Overbid reflects, in the Debtors' view, in consultation with the Consultation Parties, the then highest or otherwise best bid(s) for the applicable Assets;

j.      to remain eligible to participate in the Auction, in each round of bidding, each Qualified Bidder must submit an Overbid with respect to such round of bidding and to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction; *provided* that the Debtors may waive such requirement in their business judgment in consultation with the Consultation Parties;

k.      the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

l.      each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction(s).  For the avoidance of doubt, this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent;

m.      each Qualified Bidder will be required to confirm on the record that its bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction(s) if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

17

n.      subject to each Debtor's fiduciary obligations, including as set forth herein, the Court and the Debtors will not consider bids made after the Auction has been closed;

o.      the Debtors, in their business judgment, in consultation the Consultation Parties, may (a) determine which Qualified Bid is the highest or otherwise best offer, (b) reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction(s), or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases;

p.      the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction; *provided* that the rights of any statutory committees appointed in these cases to seek modification of the Bidding Procedures Order in accordance with Local Rule 9013-5(e) are hereby reserved;

q.      the Debtors reserve the right, in their business judgment in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

r.      notwithstanding anything herein to the contrary, the Debtors may, in consultation with the Consultation Parties, at any time choose to adjourn the Auction by announcement at the Auction. The Debtors shall promptly file notice of such adjournment with the Court; and

s.      the Debtors, in consultation with the Consultation Parties, reserve the right to further amend, waive, or otherwise modify the Auction Procedures at any time.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, in consultation with counsel).

**XII.    Acceptance of the Successful Bid.**

The Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the Debtors determine, in their business judgment, in consultation with the Consultation Parties, and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, is the highest or otherwise best Bid to purchase the applicable Assets (each, a "Successful Bid"), and (ii) the Debtors determine, in their business judgment in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of Executory Contracts and Unexpired Leases; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; (e) whether the Qualified Bid contemplates a Sale Transaction(s) that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code; (f) the certainty of a Qualified Bid leading to a confirmed Plan; and (g) any other consideration that may impact the Debtors' stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a successful bidder (the "Successful Bidder") with respect to the Assets contemplated for the purchase pursuant to such Successful Bid.  The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable, but no later than twenty-four hours after the conclusion of the Auction.  Following conclusion of the Auction (if any) and selection of a Successful Bidder, the Debtors shall present the results of the Auction (if any) at the Sale Hearing and shall seek Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "Definitive Purchase Agreement Order").  For the avoidance of doubt, the Definitive Purchase Agreement Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, the Debtors shall not solicit and /or accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder (excluding the Stalking Horse Bidder but including any Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a

customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.   Designation of Back-Up Bidder.

The Back-Up Bid to purchase any applicable Assets (the "Back-Up Bidder") will be determined by the Debtors in consultation with the Consultation Parties at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtors' selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further bids or offers to submit a bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law. The Debtors will be authorized, but not required, to consummate the Sale Transaction(s) with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such assets, and the Back-Up Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale Transaction(s) with the Debtors as soon as is reasonably practicable without further order of the Court, upon twenty-four (24) hours advance notice filed with the Court. To the extent any objections are raised and remain unresolved, the Court may schedule a hearing on an expedited basis to adjudicate such objection.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) forty-five (45) days following the hearing to consider the applicable order approving the Sale Transaction(s) (the "Sale Order"), (ii) consummation of a Sale Transaction(s) with one or more Successful Bidders at an Auction, and (iii) the release of such Back-Up Bid by the Debtors in writing (the "Back-Up Termination Date"); *provided* that the Back-Up Termination Date shall be subject to the terms and conditions set forth in the Stalking Horse APA. The Debtors shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date. For the avoidance of doubt, the Back-up Bidder, as identified in the Notice of Successful Bidder, shall not be considered or approved at the Sale Hearing nor shall affected landlords be required to object to the Back-up Bidder prior to the filing and service of a notice of intent to proceed with a Back-up Bid, and be given an opportunity to object on no less than five (5) business days' notice.

## XIV.   Approval of the Sale Transaction(s).

A hearing to consider approval of each Sale Transaction(s) (the "Sale Hearing"), is currently scheduled to take place on (i) a date and time to be announced, subject to Court availability, in the event of a Going-Out-Of-Business Sale Transaction, (ii) June 7, 2024, or as

soon thereafter as the Debtors may be heard, at a time to be announced, subject to Court availability, if there is a Going-Concern Sale Transaction, or (iii) [June 25, 2024,] or as soon thereafter as the Debtors may be heard, at a time to be announced, if there is not a Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction, before the Honorable Karen B. Owns, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street North, 3rd Floor, Wilmington, Delaware 19801, or conducted consistent with the procedures established pursuant to the Court's standing orders.

At the Sale Hearing, certain findings will be sought from the Court regarding the Auction, including, among other things, that: (i) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (ii) the Auction was fair in substance and procedure; (iii) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (iv) consummation of any Sale Transaction(s) as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the applicable Assets and is in the best interests of the Debtors and their estates. **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice to creditors or other parties in interest prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder). The Sale Hearing may be the confirmation hearing with respect to the Debtors' Plan.**

Objections to the Sale Transaction(s) and the Sale Order must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to be actually received by the Debtors, the Bid Notice Parties, and the foregoing parties' respective counsel by (i) May 29, 2024, at 4:00 p.m., prevailing Eastern Time if there is a Going-Out-Of-Business Sale Transaction, (ii) June 6, 2024, at 4:00 p.m., prevailing Eastern Time if there is a Going-Concern Sale Transaction, or (iii) [June 4, 2024, at 4:00 p.m., prevailing Eastern Time] if there is no Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction.

## XV.    Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and the Stalking Horse Bidder) will be returned within

five (5) business days after consummation of the applicable Auction or upon the permanent withdrawal of the applicable proposed Sale Transaction(s).

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of the Stalking Horse Bidder will be subject to the terms of the Stalking Horse APA. All such Good Faith Deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

## XVI.  Reservation of Rights.

The Debtors shall be entitled to modify these Bidding Procedures in their business judgment and in a manner consistent with the exercise of their fiduciary duties, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process or the Bidding Procedures, or impose, at or before the Auction (if held), additional customary terms and conditions on the sale of the applicable Assets, including, without limitation: (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if held); (iv) canceling the Auction; (v) rejecting any or all Bids or Qualified Bids; and (vi) adjusting the applicable minimum Overbid increment.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction(s), and any related items (including, if necessary, to seek an extension of the Bid Deadline).

Each reference in these Bidding Procedures and the Bidding Procedures Order to the Debtors' "consultation" (or similar phrase) with the Consultation Parties in connection with making a determination or taking an action shall mean consultation in good faith and in a reasonably timely manner under the circumstances prior to making such determination or taking such action. All Consultation Parties will be permitted to seek relief from the Bankruptcy Court, on an expedited basis, if they disagree with any actions or decisions made by the Debtors as part of these Bidding Procedures.

## XVII.  Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction(s), as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale any Sale Transaction(s) if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVIII. <u>Fiduciary Out.</u>

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body of a Debtor, or special committee of any board of any Debtor, to take any action or to refrain from taking any action related to any sale transaction(s) or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, the Bidding Procedures Order, or any document filed with or entered by the Court, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, managers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each an "<u>Alternate Proposal</u>"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity with respect to Alternative Proposals; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

**<u>Exhibit 2</u>**

**Auction Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

### NOTICE OF AUCTION

PLEASE TAKE NOTICE that on [●], the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order")[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction") regarding the sale or alternate value maximizing transaction with respect to certain of the Debtors' assets. The Auction will be governed by the bidding procedures attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures").

---

**Copies of the Bidding Procedures Order, the Bidding Procedures, or other documents related thereto are available upon request to Stretto, Inc. by calling the restructuring hotline at (855) 337-3537 (toll free) and +1 (949) 617-1363 (international) or by visiting the Debtors' restructuring website at https:// cases.stretto.com/Express/.**

---

PLEASE TAKE FURTHER NOTICE that this Auction Notice will be publicized in the *Opelika-Auburn News* and the *New York Times International Edition*.

PLEASE TAKE FURTHER NOTICE that the Bid Deadline is (i) **June 3, 2024, at 4:00 p.m. (prevailing Eastern Time) in the event of a Going-Out-Of-Business Sale Transaction,** (ii) **June 3, 2024, at 4:00 p.m. (prevailing Eastern Time) in the event of a Going-Concern Sale**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holdings, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures (as defined herein), as applicable.

**Transaction**, or (iii) **June 8, 2024, at 4:00 p.m. (prevailing Eastern Time) in the event that there is not a Going-Concern Sale Transaction or a Going-Out-Of-Business Sale Transaction**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

        **PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on (i) **June 5, 2024, at a time to be announced in the event of a Going-Out-Of-Business Sale Transaction**, (ii) **June 5, 2024, at a time to be announced in the event of a Going-Concern Sale Transaction**, or (iii) **June 11, 2024, at 4:00 p.m. (prevailing Eastern Time) in the event there is not a Going-Concern Sale Transaction or Going-Out-Of-Business Sale Transaction** via remote video or in-person at the Debtors' election.

        **PLEASE TAKE FURTHER NOTICE** that the Debtors reserve their rights to modify the Bidding Procedures in their business judgment, in any manner that will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including:  (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction at the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids or Qualified Bids.

Dated:  June [●], 2024
Wilmington, Delaware

*/s/Draft*

| | |
|---|---|
| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP** |
| Domenic E. Pacitti (DE Bar No. 3989) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Michael W. Yurkewicz (DE Bar No. 4165) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Alyssa M. Radovanovich (DE Bar No. 7101) | Emily E. Geier, P.C. (*pro hac vice* pending) |
| 919 North Market Street, Suite 1000 | Nicholas M. Adzima (*pro hac vice* pending) |
| Wilmington, Delaware 19801 | 601 Lexington Avenue |
| Telephone:  (302) 426-1189 | New York, New York 10022 |
| Facsimile:  (302) 426-9193 | Telephone:  (212) 446-4800 |
| Email:  dpacitti@klehr.com | Facsimile:  (212) 446-4900 |
|      myurkewicz@klehr.com | Email:  joshua.sussberg@kirkland.com |
|      aradvanovich@klehr.com |      emily.geier@kirkland.com |
| |      nicholas.adzima@kirkland.com |
| -and- | -and- |
| Morton R. Branzburg (*pro hac vice* pending) | Charles B. Sterrett (*pro hac vice* pending) |

1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com

*Proposed Co-Counsel for the Debtors and Debtors in
Possession*

333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        charles.sterrett@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in
Possession*

**<u>Exhibit 3</u>**

**Contract Assumption Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[3] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

### NOTICE TO CONTRACT PARTIES TO POTENTIALLY
### ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
> OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN
> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order")[4] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases listed on **Exhibit A** to which you are a counterparty, upon approval of the Sale Transaction(s). The Debtors have conducted a review of their books and records and have determined that the Cure Payments for unpaid monetary obligations under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holdings, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures (as defined herein), as applicable.

Cure Payments, object to a proposed assignment to the Successful Bidder of any Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments; (iv) state the correct Cure Payments alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (v) be filed with the Court and served and **actually received no later than seven (7) business days following service of this notice (the "Cure Objection Deadline")** by the Court and the following parties: (i) the Debtors, Express, Inc., One Express Drive, Columbus, Ohio 43230, Attn: Laurel Krueger (lakrueger@express.com); (ii) proposed co-counsel to the Debtors (A) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com), Emily E. Geier, P.C. (emily.geier@kirkland.com), and Nicholas M. Adzima (nicholas.adzima@kirkland.com), and Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Charles B. Sterrett (charles.sterrett@kirkland.com) and (B) Klehr Harrison Harvey Branzburg LLP, 919 North Market Street, Suite 1000, Wilmington, Delaware 19801 Attn.: Domenic E. Pacitti (dpacitti@klehr.com), Michael W. Yurkewicz (myurkewicz@klehr.com), and Alyssa M. Radovanovich (aradvanovich@klehr.com), and Klehr Harrison Harvey Branzburg LLP, 1835 Market Street, Suite 1400, Philadelphia, Pennsylvania 19103, Attn.: Morton R. Branzburg (mbranzburg@klehr.com); (iii) the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: John Schanne (john.schanne@usdoj.gov); (iv) counsel to Wells Fargo Bank, National Association, as administrative agent for certain prepetition and postpetition lenders of the Debtors, Goldberg Kohn Ltd., 55 E. Monroe St., Suite 3300, Chicago, Illinois 60603, Attn.: Randall Klein (Randall.Klein@goldbergkohn.com), Dimitri G. Karcazes (Dimitri.Karcazes@goldbergkohn.com), Keith G. Radner (Keith.Radner@goldbergkohn.com), and Eva D. Gadzheva (Eva.Gadzheva@goldbergkohn.com); and Richards Layton & Finger, 920 N. King Street, Wilmington, Delaware 19801, Attn.: John H. Knight (Knight@RLF.com), Paul N. Heath (heath@RLF.com), and Alexander R. Steiger (Steiger@RLF.com); (v) counsel to ReStore Capital, LLC, as administrative agent for certain prepetition and postpetition lenders of the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, Illinois 60606, Attn.: Stephen L. Iacovo (steven.iacovo@ropesgray.com); and Chipman, Brown, Cicero & Cole, LLP, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn.: Mark L. Desgrosseilliers (desgross@chipmanbrown.com); (vi) proposed co-counsel to the Committee, (A) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Adam Rogoff (arogoff@kramerlevin.com), and Nathaniel Allard (nallard@kramerlevin.com), and (B) Saul Ewing LLP, 1201 North Market Street, Suite 2300, Wilmington, DE 19801, Attn: Luke Murley (luke.murley@saul.com); and (vii) counsel to the Stalking Horse Bidder; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Payments, or (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct and (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on the Contract Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved.  Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

Dated:  June [●], 2024
Wilmington, Delaware

*/s/Draft*
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              aradvanovich@klehr.com


-and-

Morton R. Branzburg (*pro hac vice* pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Emily E. Geier, P.C. (*pro hac vice* pending)
Nicholas M. Adzima (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              emily.geier@kirkland.com
              nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        charles.sterrett@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **Exhibit A**

**Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases**