**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>EXPRESS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10831 (KBO)<br><br>(Jointly Administered)<br><br>Hearing Date: [TBD], 2024 at [TBD] (ET)<br>Objection Deadline: [TBD], 2024 at [TBD] (ET)<br><br>Re: Docket No. 41 |

**LIMITED OBJECTION OF THE CHUBB COMPANIES TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING THE SALE OF ASSETS, AND <u>(VII) GRANTING RELATED RELIEF</u>**

ACE American Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, Great Northern Insurance Company, and each of their respective U.S.-based affiliates, predecessors, and successors (collectively, and solely in their capacities as insurers and/or third party administrators of one or more of the above-captioned debtors, the "<u>Chubb Companies</u>"), by and through their undersigned counsel, hereby file this limited objection (the "<u>Limited Objection</u>") to the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

*Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Docket No. 41] (the "Sale Motion"),[2] and in support of the Limited Objection, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case

1. On April 22, 2024 (the "Petition Date"), Express, Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. On the Petition Date, the Debtors filed the Sale Motion.

3. Pursuant to the Sale Motion, the Debtors seek, among other things, authority to enter into the sale of all or substantially all of their Assets to one or more Successful Bidders.

4. Approval of the bidding procedures has been set for hearing on May 31, 2024 at 1:00 p.m. ET, and to date no order approving the bidding procedures has been entered.

5. On May 24, 2024 the Debtors filed their *Notice of Selection of Stalking Horse Bidder* [Doc. No. 305], which included the Stalking Horse APA as Exhibit A and the Form of Sale Order as Exhibit B.

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Sale Motion or the Stalking Horse APA, as applicable.

6. With respect to insurance, the Stalking Horse APA provides, among other things, that the Acquired Business Assets include certain Insurance Rights, which are defined as follows: "all rights and benefits of Sellers with respect to all insurance recoveries under any insurance policies of Sellers that relate to the Acquired Business Assets or Assumed Business Liabilities, including any and all claims, rights to assert claims and rights to proceeds on any such insurance policies, binders and interests for all periods before, through and after the Closing (collectively, "Insurance Rights")." Stalking Horse APA at § 1.1(m). Also purported to be transferred to the Purchaser are "all Insurance Rights with respect to any Acquired IP Asset." *Id.* at § 1.2(j)

7. The Acquired Business Assets exclude, on the other hand, the following: (1) "any of the foregoing [Insurance Rights] with respect to any Excluded Insurance Policies or Acquired IP Assets and any rights to insurance recovery required to be paid to Persons other than a Purchaser under the Financing Order," and (2) "(i) all director and officer, fiduciary, employment practices and similar insurance policies (the "Excluded Insurance Policies"), and all rights and benefits of any nature of Sellers with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries and (ii) all other current and prior insurance policies of any Seller that are not Assumed Benefit Plans." Stalking Horse APA at §§ 1.1(m), 1.3(h).

8. Accordingly, pursuant to the Stalking Horse APA, the Debtors are purporting to transfer to the Purchaser certain rights under their insurance policies (including the right to pursue proceeds and coverage thereunder), but are not transferring any of the insurance policies themselves, or any obligations related thereto.

**B.     The Insurance Program**

9.      Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

10.     Pursuant to the Policies and any agreements related thereto (collectively, the "Insurance Program"),[3] the Chubb Companies provide, *inter alia*, cyber, workers' compensation, international casualty, excess general liability, umbrella, automobile liability, marine cargo, directors' and officers' liability, general liability, business travel accident, accident & health, excess, fiduciary liability, hull, export package, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "Obligations").[4]

11.     The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

**LIMITED OBJECTION**

12.     The Chubb Companies file this Limited Objection to the Sale Motion and the potential assumption and assignment or other transfer of the Insurance Program (and/or the rights,

---

[3] The description of the Insurance Program set forth herein is not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Program. Reference is made to the Insurance Program for a complete description of its terms and conditions.

[4] The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

benefits, interests and proceeds thereunder) on the bases that (i) the Insurance Program must be assumed and assigned, if at all, as a whole, and in order to be entitled to any of the rights, benefits, interests and/or proceeds of the Insurance Program, any Purchaser must remain liable for the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, the Insurance Program cannot be assigned or otherwise transferred without the consent of the Chubb Companies, and such consent has not been sought or given; (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and any Purchaser, is entitled to coverage and/or the rights, benefits, interests and/or proceeds under the Insurance Program; (iv) any proposed Cure Payments must be evaluated at the time of assumption; and (v) because the auction has not yet occurred and the ultimate Purchaser has not yet been identified, the Chubb Companies lack adequate assurance of future performance under the Insurance Program by any Successful Bidder(s).

**I.      The Insurance Program and the Obligations Thereunder Are Indivisible.**

13.     It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Am. S. Ins. Co. v. DLM, LLC*, No. GLR-16-3628, 2017 U.S. Dist. LEXIS 105716, at *14 (D. Md. July 10, 2017) ("If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."); *Tavenner v. United States (In re Vance)*, 298 B.R. 262, 268 (Bankr. E.D. Va. 2003) ("'[A] debtor may not assume the favorable aspects of a contract [ ] and reject the unfavorable aspects of the same contract. . . [.]'") (citation omitted); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. App'x. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc.,*

5

*Inc.*, 148 Fed. App'x. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.") (citations and quotations omitted) (alterations in original); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens.  He cannot accept one and reject the other.") (internal citations and quotations omitted) (alterations in original); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

  14. It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written.  *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th

6

Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (stating a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

15. Accordingly, in order to be entitled to any of the rights, benefits, interests, and/or proceeds under the Insurance Program, any Purchaser must also remain liable for the Obligations thereunder.

16. Moreover, the Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or

rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

17.     Accordingly, any sale or other transfer of only a portion of the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder) is improper, and any purported transfer of the Insurance Program to any Purchaser must be in its entirety.

18.     The Stalking Horse APA purports to separate certain rights under the Insurance Program from the Policies by providing that the Purchaser can assert rights to coverage and proceeds under the Debtors' insurance policies while the insurance policies themselves remain with the Debtors. Stalking Horse APA at §§ 1.1(m), 1.2(j). Moreover, the Debtors themselves appear to intend to retain certain rights under their insurance policies, further muddying the waters as to the treatment of the Insurance Program. *Id.* at §§ 1.1(m), 1.3(h).

19.     The Chubb Companies therefore object to the Sale Motion and the assumption and assignment or other transfer of the Insurance Program (and/or any portion of the rights, benefits, interests and proceeds thereunder) to the extent that (i) any Purchaser is permitted to pick and choose certain Policies and/or related agreements for assignment, (ii) the Sale Motion contemplates the assignment or other transfer of any portion of the Insurance Program, including just a portion of the Debtors' rights, benefits, interests and proceeds thereunder, and/or (iii) any Sale Transaction otherwise contemplates an improper split of the Insurance Program.

**II. The Insurance Program Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Consent Has Not Been Sought or Given.**

20. To the extent that the Debtors seek to assign or otherwise transfer the Insurance Program in connection with the Sale Motion or any Sale Transaction, such assignment cannot occur without the express written consent of the Chubb Companies.

21. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

22. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

23. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

24. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal

prohibition against assignment' to a third party and the non-debtor party to the contract does not consent to assignment.").

25. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet.*) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

---

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The

26. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Program cannot be assigned without the prior written consent of the Chubb Companies.

27. Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Program, the Debtors and the assignee will be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies. This agreement has not yet been negotiated, let alone executed.

28. Accordingly, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program, the Chubb Companies object to any and all such assignments or transfers.

---

present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

11

**III.     The Chubb Companies Are Not Required To Make Coverage Determinations Between The Debtors And Any Purchaser.**

29.     While it is improper, as discussed above, to split the Insurance Program itself, or to split the rights, benefits, interests and/or proceeds under the Insurance Program from the Obligations thereunder, any transfer of only a certain portion of the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder) in connection with any Sale Transaction is likely to result in coverage disputes between the Purchaser and the Debtors.

30.     To the extent any portion of the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder) is assigned in connection with any Sale Transaction, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Purchaser, which entity is entitled to coverage under the Insurance Program in connection with a particular claim.  Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Purchaser, which entity is entitled to any of rights, benefits, interests and/or proceeds under the Insurance Program.

**IV.     Cure Amounts Must Be Evaluated At The Time Of Assumption.**

31.     To the extent the Debtors seek to assume and assign all or a portion of the Insurance Program pursuant to any Sale Transaction, the Debtors must assume and assign the Insurance Program in its entirety.  Further, as more particularly described in the Insurance Program, the Debtors are required to pay the Obligations, and, therefore, amounts may become due and owing under the Insurance Program either prior to or after the assumption thereof.

32.     Such Obligations include, but are not limited to, certain premium installments payments in varying amounts that become due in September 2024 and September 2025.

33.     The Chubb Companies also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Program and the Obligations.  By

12

way of example and not limitation, premiums may be payable at audit under the terms of the Insurance Program, based upon factors as they exist throughout the coverage period. Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional premium that may become due upon completion of audit(s). By way of further example, as insured claims develop, amounts payable in relation thereto arise at various points in time; so it is common for amounts to arise in the future with respect to insured claims where the date of loss was prior to the Petition Date.

34. The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

35. Accordingly, any Cure Payments must be determined at the time of assumption and, further, as a condition for the assignment of the Insurance Program, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Program including, without limitation, paying the Obligations as they become due.

**V.    Any Successful Bidder(s) Must Provide Adequate Assurance of Future Performance.**

36. Pursuant to § 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance.

37. The Chubb Companies do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if any Successful Bidder(s), including but not limited to the Stalking Horse Bidder, would be capable of providing adequate assurance of future performance and whether any Successful Bidder(s) would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb

Companies are unable, at this time, to assess whether any Successful Bidder(s), including but not limited to the Stalking Horse Bidder, would satisfy those criteria.

38. Accordingly, the Chubb Companies further object on the basis that the Chubb Companies do not have adequate assurance as required by § 365(f)(2) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

39. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their right to assert additional objections to the Sale Motion, the Stalking Horse APA, any Contract Assumption Notice(s) and/or Supplemental Assumption Notice(s), any proposed Cure Payments and/or any documents relating to any of the foregoing.

WHEREFORE, the Chubb Companies object to the Sale Motion on the bases set forth herein, and reserve their rights to assert any additional objections to the Sale Motion, any Stalking Horse APA, any Contract Assumption Notice(s) and/or Supplemental Assumption Notice(s), any proposed Cure Payments and/or any documents relating to any of the foregoing, and to the assignment of the Insurance Program.

Dated: May 31, 2024

**DUANE MORRIS LLP**

/s/ Drew S. McGehrin
Drew S. McGehrin (DE Bar No. 6508)
1201 North Market Street, Suite 501
Wilmington, DE 19801
Phone: (302) 657-4900
Fax: (302) 657-4901
Email: DSMcGehrin@duanemorris.com

and

Wendy M. Simkulak, Esq.
Catherine B. Heitzenrater, Esq.
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000

Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com
Email: CHeitzenrater@duanemorris.com

*Counsel for the Chubb Companies*