**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | ) ) ) | Case No. 24 10831 (KBO) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) ) ) ) ) ) | **Hearing Date:** July 16, 2024 at 10:30 a.m. (ET) **Objection Deadline:** June 17, 2024 at 4:00 p.m. (ET) |

**APPLICATION OF THE DEBTORS FOR
ENTRY OF AN ORDER (I)AUTHORIZING THE DEBTORS TO
RETAIN AND EMPLOY KPMG LLP TO PROVIDE TAX COMPLIANCE AND TAX
CONSULTING SERVICES EFFECTIVE AS OF APRIL 22, 2024, and (II) WAIVING
THE INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2(d)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit C** (the "Order"), authorizing the Debtors to (a) retain and employ KPMG LLP ("KPMG")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

to provide tax compliance and tax consulting services to the Debtors effective as of April 22, 2024, and (b) waive the information requirements of Local Rule 2016-2(d).

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

### Background

4. On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 67]. On May 3, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an

official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 154] (the "Committee").

5.    KPMG was originally proposed as an ordinary course professional pursuant to the *Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 156] (the "OCP Motion"), however, the scope of KPMG's services has expanded, and, in consultation with the U.S. Trustee, the Debtors have determined it is appropriate to seek Court approval of KPMG's retention pursuant to section 327(a) of the Bankruptcy Code.

**Retention of KPMG**

6.    The Debtors have selected KPMG to provide tax compliance and tax consulting services because of KPMG's diverse experience, history with the Debtors, extensive knowledge, and widely recognized reputation for excellence in the fields of accounting, taxation, and operational controls for large, sophisticated companies both in and out of chapter 11.

7.    The Debtors have employed KPMG since 2008 to provide certain tax consulting and compliance services and, in this capacity, KPMG has become generally familiar with the Debtors' businesses. As such, KPMG is both prepared and qualified to continue to provide such services to the Debtors during these chapter 11 cases, thereby avoiding the additional time and expense that otherwise would be incurred by retaining another professional that would need to familiarize itself with the Debtors' businesses.

8.    KPMG has extensive experience in delivering tax compliance and tax consulting services in chapter 11 cases, including *In re Thrasio Holdings, Inc., No 11840 (CMG) (Bankr. D.N.J. May 13, 2024); In re Careismatic Brands, LLC*, No. 24 10561 (VFP) (Bankr. D.N.J. Feb. 26, 2024); *In re MVK FarmCo LLC*, Case No. 23-11721 (LSS) (Bankr. D. Del. Nov. 1, 2023); *In re MediaMath Holdings, Inc.*, Case No. 23-10882 (LSS) (Bankr. D. Del. Sept.

3

8, 2023); *In re Envision Healthcare Corp.*, Case No. 23-90342 (CML) (Bankr. S.D. Tex. July 12, 2023); *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. May 24, 2023); *In re Avaya Inc.*, Case No. 23-90088 (DRJ) (Bankr. S.D. Tex. Mar. 22, 2023); *In re PhaseBio Pharmaceuticals, Inc.*, Case No. 22-10995 (LSS) (Bankr. D. Del. Dec. 16, 2022); and many others. The Debtors understand that KPMG enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

9.  The Debtors believe that the services of KPMG are necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully. KPMG is well qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner.

### Services

10. Subject to the Court's approval, KPMG will provide services to the Debtors pursuant to (A) an engagement letter dated as of October 19, 2023, covering Research Credit Services for the FY 2023 tax year (the "Research Credit and IRC Letter"); and (B) five separate statements of work ("SOW") entered in accordance with a Master Services Agreement dated April 30, 2014 (the "MSA"), covering (i) tax consulting services under a statement of work dated September 8, 2023 (the "Tax Compliance and Tax Consulting SOW"), (ii) sales and use tax consulting services under a statement of work dated January 16, 2024 (the "Tax Matrix Automation SOW"), (iii) general tax consulting pursuant to the statement of work dated February 13, 2024 (the "Tax Consulting SOW"), (iv) IRS examination services under a statement of work dated November 2, 2021 (the "Tax Examination SOW"), and (v) the Tax Examination SOW Addendum, dated May 15, 2024 (the "Tax Examination Addendum"). The Research Credit and IRC Letter, the MSA, the Tax Compliance and Tax Consulting SOW, the Tax Matrix Automation SOW, the Tax Consulting SOW, the Tax Examination SOW, and the Tax Examination Addendum

4

are collectively referred to as (the "Agreements"), each of which are attached hereto as **Exhibit A-1**, **Exhibit A-2**, **Exhibit A-3**, **Exhibit A-4**, **Exhibit A-5**, **Exhibit A-6**, and **Exhibit A-7** respectively, and in consideration for the compensation contemplated therein.

11. KPMG and the Debtors have agreed to a fixed fee per tax return for services relating to transaction tax compliance services (the "Tax Compliance Services"). Furthermore, KPMG has and will continue rendering a broad range of tax consulting services (the "Tax Consulting Services") in connection with these chapter 11 cases on behalf of the Debtors. Specifically, KPMG will continue to perform, to the extent the Debtors request, services including (but not limited to):[3]

A. **Tax Compliance Services**

   i. Prepare transaction tax returns and supporting schedules for the entities and jurisdictions identified in Appendix II of the Tax Compliance and Tax Consulting SOW;[4]

   ii. KPMG will respond to routine correspondence received from tax authorities associated with the tax returns prepared by KPMG; and

   iii. KPMG will provide additional tax services, as needed, to assist the Debtors in determining the proper tax treatment of certain matters to be reported on the tax returns that KPMG has been engaged to prepare, including but not limited to:

   (1)   material one-off transactions undertaken by the Debtors;

   (2)   complex tax issues or changes in tax law and/or regulations;

   (3)   specialized tax elections and accounting method changes; and

   (4)   significant changes to the Debtors organizational or legal structure.[5]

---

[3] To the extent that this application is inconsistent with the terms of the Agreements, the terms of the Agreements shall control.

[4] The specific returns to be prepared by KPMG are subject to periodic modification upon the prior written agreement of both parties; electronic mail will be acceptable to confirm written agreement.

[5] When such tax services are identified, KPMG will notify the Debtors of the proposed scope and associated estimated fees and will seek the Debtors approval prior to proceeding. Any such services will be billed to the Debtors at applicable tax consulting hourly rates and are not subject to hourly rates applicable to tax compliance services unless otherwise agreed.

B. **Tax Consulting Services**

   i. <u>Research Credit Services</u>

      (1) KPMG will provide Research Credit Services with regard to the FY23 tax year ("<u>Credit Year</u>") including but not limited to the following:

         a. Identify and document qualified research activities and related expenditures;

         b. Calculate and document the base amount, including required adjustments for acquisitions, dispositions, and the consistency rule; and

         c. Calculate the federal and state (*i.e.*, Ohio, Texas) credits for the Credit Year.

   ii. <u>IRC § 174 Expense Identification and Capitalization Services</u>

      (1) KPMG will assist the Debtors with identifying expenditures qualifying as Research & Development ("<u>R&D</u>") expenditures under Internal Revenue Code ("<u>IRC</u>") § 174 encompassing the tax year ended January 2024 (the "<u>Review Period</u>") including but not limited to the following:

         a. Based on discussions with Debtors' subject matter experts, convert IRC § 41 cost elements to IRC § 174 quantities;

         b. Identify and quantify activities and relevant cost elements excluded under other definitions of R&D that meet criteria under IRC § 174 (*e.g.*, foreign expenses, non-IRC § 41 qualifying projects that possess some level of technical uncertainty, etc.);

         c. Identify and analyze activities and relevant costs related to intercompany agreements;

         d. Evaluate book to tax differences and allocation methods of each such difference (*e.g.*, personnel related versus property related versus overheads, etc.);

         e. Assist with the analysis of the impacts of the mandatory capitalization on Debtors U.S. Federal income tax profile (*e.g.*, the implications on FDII, GILTI, BEAT, IRC § 163(j), etc.); and

    f. Evaluate state tax conformity.

 iii. <u>Sales/Use Tax Matrix</u>

  (1) KPMG will work with the Debtors' management to identify categories of purchases made for their Bonobos subsidiary in New York. KPMG will prepare, and present to management for approval, a list of categories and corresponding definition to be included in a taxability matrix;

  (2) KPMG will prepare a New York state level taxability matrix which will list the category of purchases made for the Bonobos subsidiary, the Debtors' approved definition, KPMG's advice on the taxability of the category of purchases, narrative comments relevant to applying the taxability advice, and citations to authorities relied upon by KPMG in rendering its advice; and

  (3) KPMG will provide support to the Debtors during the first 90 days following delivery of a Purchases Sales and Use Tax Matrix and Automation of Tax Processes which may include tax technical review of the taxability output from the process and adjustments to the automation to achieve more accurate tax results.

 iv. <u>Automation of Tax Processes</u>[6]

  (1) KPMG will assist the Debtors with the automation of tax processes, leveraging software capabilities to facilitate the process automation;

  (2) KPMG will analyze the processes presented by the Debtors to detail out the requirements for the Debtors' specific processes;

  (3) KPMG will design workflows to be used by the Debtors in the processes;

  (4) KPMG will assist the Debtors in the testing of the completed workflows for proper manipulation of the Debtors' reports for their specific processes; and

  (5) KPMG will aid the Debtors with the necessary knowledge transfer of core practices and processes that are developed during the development of the Alteryx workflows.

---

[6] As further detailed in the Tax Matrix Automation SOW, the automation project will consist of four (4) phases that include requirements analysis, design confirmation, testing, training and post-production support.

      v. <u>Tax Examination Assistance Services</u>

          (1)    KPMG will assist the Debtors in the final resolution of the IRS tax examination(s) of Express, Inc.'s Form 1120 for the taxable years ended January 31, 2015, January 30, 2016, January 28, 2017, February 3, 2018, February 2, 2019, February 1, 2020, and January 30, 2021 (collectively "FY 2015-2012") on an ad hoc basis as requested by the Debtors;

                a. KPMG will work to resolve the examination in the most efficient and timely manner possible and will work with the Debtors to develop and appropriate approach for best handling the examination;

                b. KPMG will assist the Debtors in their dealings with the IRS examination team and will meet with Debtors' team members as appropriate and necessary;

                c. At the Debtors request, KPMG will assist the Debtors in preparing submissions in response to IRS inquiries; and

                d. If a case is not resolved at the examination level, and at the request of the Debtors, KPMG will assist in the Debtors' dealings with IRS appeals (or the equivalent reviewing body) or participate in an alternative dispute resolution program.

      vi. <u>Other Tax Assistance Services</u>

          (1)    KPMG will assist the Debtors in the resolution of IRS routine account management issues and penalty correspondence on an ad hoc basis as requested by the Debtors.

12.    In addition to the foregoing, KPMG will provide routine general tax consulting on matters that may arise for which the Debtors seek our advice, both written and oral, that are not the subject of a separate statement of work or engagement contract as may be necessary, desirable, or requested from time to time. Should KPMG and the Debtors enter into any additional engagement letters and/or statement(s) of work regarding additional services to be provided to the Debtors during these chapter 11 cases, KPMG and the Debtors will follow the procedure for authorization to provide such additional services as set forth in the Court's order approving the application.

**No Duplication of Services**

13.     The Debtors have applied to the Court to retain additional professionals in these chapter 11 cases.  The Debtors do not believe that the services to be performed by KPMG on behalf of the Debtors will be duplicative of services provided by any other professionals in these chapter 11 cases, including the services of PricewaterhouseCoopers LLP ("PWC").  PWC, although a proposed audit services provider, is not being retained to perform the same services as KPMG, as set forth in both parties' retention applications and engagement letters.  The Debtors and KPMG are mindful of the need to avoid duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of KPMG's retention as tax consultants in these cases.  The Debtors understand that KPMG will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

**Professional Compensation**

14.     Subject to approval by the Court, the Debtors propose to employ and retain KPMG to provide tax consulting and tax compliance services to the Debtors on the terms and conditions set forth in the Agreements and this application.

15.     In accordance with the Agreements, KPMG and the Debtors have agreed to a fixed fee per tax return for services relating to transaction tax compliance services (the "Tax Compliance Fixed Fees Services") as detailed in the chart below:

| TRANSACTION TAX COMPLIANCE SERVICE AND EXPENSE FEE SCHEDULE | | |
|---|---|---|
| **Standard Compliance** | **Rate** | **Frequency** |
| Australia GST Return | $1,000 | Per Return |
| Expenses | | Per year to be billed during first month of the engagement year |
| Technology Fee | $120 | |

16. Additionally, KPMG will be paid by the Company for the Tax Consulting Services at their customary hourly billing rates which shall be subject to the following ranges:

| Professional Level | Discounted Rate (Range) |
|---|---|
| Washington National Tax Partner /Managing Director | $635 - $1,041 |
| Partner/Managing Directors | $624 - $966 |
| Washington National Tax Senior Manager | $477 - $831 |
| Directors/Senior Manager | $567 - $831 |
| Washington National Tax Manager | $387 - $696 |
| Manager | $443 - $756 |
| Senior Tax Associate | $320 - $576 |
| Associate | $239 - $ 348 |

17. Pursuant to Local Rule 2016-2(h), KPMG requests that the Court waive the information requirements of Local Rule 2016-2(d) for all services rendered on a fixed fee basis, and permit KPMG to file time records in half-hour increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  For all services rendered on an hourly basis, KPMG will maintain detailed records in one-tenth (1/10) hour increments.

18. The fees to be charged for tax consulting services reflect a reduction of up to 55% from KPMG's normal and customary rates.  KPMG has further agreed that its (i) fees for research credit services will be no more than $55,000, (ii) fees for IRC § 174 expense identification and capitalization services will be no more than $10,000, (iii) fees for purchases sales/use tax matrix

will not exceed $15,000, (iv) fees for automation of tax processes will not exceed $10,000, and (v) fees for post-delivery support, related to purchases sales and use tax matrix and automation of tax processes, will not exceed $10,000 without the Debtors' approval.

19. In the normal course of KPMG's business, its hourly rates are subject to periodic increases. Prior to any increases in KPMG's rates for any individual retained by KPMG and providing services in these cases, KPMG shall file a supplemental declaration with this Court and provide ten (10) business days' notice to the Debtors, the U.S. Trustee, the Committee, and other parties required to be served under the applicable rules.

20. KPMG intends to, and shall, make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013.

21. In addition, KPMG will be reimbursed for the reasonable out-of-pocket expenses of the KPMG's professionals incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger, and telephone charges. All fees and expenses due to KPMG will be billed in accordance with any interim compensation orders entered by this Court and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, and Local Rules and any other applicable procedures and orders of this Court and consistent with the proposed compensation set forth in the Agreements.

22. According to KPMG's books and records, during the 90-day period prior to the Petition Date, KPMG received $292,858.01 from the Debtors for professional services performed and expenses incurred. Furthermore, pursuant to the *Final Order Authorizing the Payment of Certain Taxes and Fees* [Docket No. 231], the Debtors expect to make postpetition payments to

KPMG for certain professional services performed, and expenses incurred, on a prepetition basis. To the extent the Application is granted, KPMG has agreed to waive amounts owed for professional services rendered prior to the Petition Date.

23. Except as set forth in the Declaration (as defined herein), (a) no commitments have been made or received by KPMG with respect to compensation or payment in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code; and (b) there is no agreement or understanding between KPMG and any other entity, other than a member, partner or regular associate of KPMG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

## KPMG's Disinterestedness

24. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Declaration of Brian C. Campbell (the "Declaration"), attached hereto as **Exhibit B**, KPMG: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

25. Accordingly, the Debtors believe that KPMG is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code.

26. In addition, as set forth in the Declaration, if any new material facts or relationships are discovered or arise, KPMG will provide the Court with a supplemental declaration.

**Basis for Relief**

27. The Debtors submit that the retention of KPMG under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person who:

   (a)   is not a creditor, an equity security holder, or an insider;

   (b)   is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

   (c)   does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

28. Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). KPMG's prepetition relationship with the Debtors is therefore not an impediment to KPMG's retention as the Debtors' postpetition tax consulting service provider.

29. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of KPMG's retention as described herein, including the proposed compensation, are reasonable and in line with the terms and conditions typical for engagements of this size and character. Since the Debtors will require substantial assistance with their chapter 11 process, it is reasonable for the Debtors to seek to

employ and retain KPMG to provide tax compliance and tax consulting services on the terms and conditions set forth herein.

30. Based upon the foregoing, the Debtors submit that the retention of KPMG, on the terms set forth herein and, in the Agreements, is necessary, reasonable, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted.

## Notice

31. The Debtors will provide notice of this application to (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the official committee of unsecured creditors; (c) the DIP Agents and counsel thereto; (d) the ABL Lenders and counsel thereto; (e) the FILO Agent and counsel thereto; and (f) any party that request service pursuant to Bankruptcy Rule 2002.  A copy of this application is also available on the website of the Debtors' notice and claims agent at https://cases.stretto.com/Express.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

## No Prior Request

32. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit C**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: May 31, 2024                                Respectfully submitted,


                                                   */s/ Stewart Glendinning*
                                                   Name:   Stewart Glendinning
                                                   Title:    Chief Executive Officer