## Exhibit A

**Agreements**

**Exhibit A-1**



KPMG LLP
BNY Mellon Center
Suite 3400, 500 Grant Street
Pittsburgh, PA 15219-2598

Telephone  +1 412 391 9710
Fax        +1 412 291 1926
kpmg.com

This Engagement Letter, including the Standard Terms and Conditions and any exhibits, attachments, addenda or appendices attached hereto (collectively, the "Agreement"), dated as of October 19, 2023 (the "Effective Date"), is between Express Inc. ("Client") and KPMG LLP ("KPMG"), whereby Client is engaging KPMG to provide the professional services described herein (the "Services").

**1.  Scope of Services**

*1.1.    Research Credit Services*

KPMG will provide Research Credit Services with regard to the FY23 tax year ("Credit Year").

KPMG will:

– Identify and document qualified research activities and related expenditures;

– Calculate and document the base amount, including required adjustments for acquisitions, dispositions and the consistency rule; and

– Calculate the federal and state (i.e., Ohio, Texas) credits for the Credit Year.

**1.1.1.    Deliverables**

KPMG shall provide the following Deliverables, in electronic format unless otherwise requested:

– Overview of Client's qualifying development activities;

– Summary of results;

– Methodology/procedures performed;

– Documentation of the current and/or historical (if applicable) product development process;

– Overview of current R&D credit law;

– Calculations of QRE and R&D credits;

– Base period calculations and supporting work papers;

– QRE summaries and supporting work papers;

■ Project/department questionnaires

■ Activity and project based matrices

■ Supplies/contract research analysis

– Contemporaneous documentation; and,

– Recommendations of suggested methodologies for future R&D credit claims.

KPMG LLP, a Delaware limited liability partnership and a member firm of the KPMG global organization of independent member firms affiliated with KPMG International Limited, a private English company limited by guarantee.



*1.2.   IRC § 174 Expense Identification and Capitalization Services*

KPMG will assist Client with identifying expenditures qualifying as R&D expenditures under Internal Revenue Code ("IRC") § 174 encompassing the tax year ended January 2024 (the "Review Period").

Specifically, KPMG will:

- Through discussions with Client subject matter experts, convert IRC § 41 cost elements to IRC § 174 quantities.

- Identify and quantify activities and relevant cost elements excluded under other definitions of R&D that meet criteria under IRC § 174 (e.g., foreign expenses, non-IRC § 41 qualifying projects that possess some level of technical uncertainty, etc.).

- Identify and analyze activities and relevant costs related to intercompany agreements.

- Evaluate book to tax differences and allocation methods of each such difference (e.g., personnel related vs. property related vs overheads, etc.).

- Assist with the analysis of the impacts of the mandatory capitalization on Client's over U.S. Federal income tax profile (e.g., the implications on FDII, GILTI, BEAT, IRC § 163(j), etc.).

- Evaluate state tax conformity.

### 1.2.1.    Deliverables

KPMG shall provide the following Deliverables (in electronic format):

- Computed IRC § 174 expenses for the Review Period, with supporting workpapers, where applicable.

- Proposed expense capitalization and amortization schedule depicting whether the costs are U.S. or foreign based.

- Memorandum outlining technical positions and methodologies utilized to compute the total IRC § 174 eligible expenses.

*1.3.   Corporate Alternative Minimum Tax Scope Clarification*

The Services will not include addressing the impact of the Corporate Alternative Minimum Tax.

*1.4.   Term of the Contract*

The term hereof shall begin on the Effective Date and, unless terminated as contemplated herein, shall continue until the Services are complete.

## 2.  Fees

*2.1.   Research Credit Services and IRC § 174 Expense Identification and Capitalization Services*

The fee for services will be based on the actual time incurred to complete the work at 60 percent of our standard hourly rates for the individuals involved in providing the services.

As a result of our discussions with you, we estimate that our fees will be $55,000 for R&D services and $10,000 for Section 174 services.



### 2.2. Other Fees & Expenses

These fees and expenses are in addition to the fees for the Services.

In addition, KPMG will bill Client for out-of-pocket expenses (e.g., travel, lodging, meals, etc.).

## 3. Payment Schedule

KPMG shall bill Client $5,000 upon execution of the Agreement. Additional billings will be rendered as work is performed. Client agrees to pay properly submitted invoices within 60 days of receipt.

## 4. Assumptions

The Services and fees are subject to the following assumptions:

None.

## 5. Client Access to Tools

N/A

## 6. Other Matters

### 6.1. Applicable Standards

When providing tax services, KPMG applies standards that may be higher than those required by law, regulation, or other professional requirements. KPMG will promptly inform Client if, during this engagement, KPMG concludes that a tax return position cannot meet these higher standards.

### 6.2. Consents to Disclose and Use Tax Return Information

In connection with the Services, KPMG may be subject to certain federal and state laws that prohibit KPMG from disclosing Client's tax return information to third parties, or KPMG's use of that information for purposes other than the provision of tax services to Client, unless such disclosure or use is otherwise authorized by law or Client consents to such disclosure or use. Likewise, federal law generally precludes KPMG from disclosing Client's tax return information to service providers outside the United States without Client's consent. Accordingly, KPMG requests Client's consent for the disclosures and uses described with more specificity below.

#### 6.2.1. Consent for Disclosure of Tax Return Information to Third Parties Within and Outside the United States

To complete the Services, which may include tax return preparation services, as well as preliminary engagement preparation and tax return preparation activities for the immediately succeeding tax year, KPMG may disclose some or all of Client's tax return information from prior tax years, the current tax year and the immediately succeeding tax year to certain third-party contractors, other entities or service providers within or outside the United States. The entities that may receive such disclosures include: KPMG Global Services Private Limited ("KGS"), an entity that is located in India and controlled by KPMG and certain other members of the KPMG network; any successor entity to KGS; and certain other members of the KPMG network and other third-party subcontractors that may otherwise assist in the completion of the Services.

To complete the Services, KPMG may also disclose some or all of Client's tax return information to certain third-party contractors located within the United States who are under KPMG's oversight and assist in the delivery of the Services.

Client hereby consents to the disclosure of Client's tax return information to the third parties who are located within and outside the United States, as described above.



### 6.2.2. Consent to Use and Disclose Client's Tax Return Information Within or Outside the United States to Develop Analytics that May Enhance the Services KPMG Offers to Client and other clients and to Develop New Services and Technologies

Supplementary to the terms of the Agreement, KPMG requests Client's specific consent to use Client's tax return information for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects and to allow Client and other clients to evaluate various business transactions and opportunities. More particularly, KPMG requests Client's consent to allow KPMG to produce anonymized statistical compilations, to analyze tax return information, to develop benchmarks as well as new services and technology, and to allow KPMG to evaluate KPMG's performance on Client's behalf and on behalf of KPMG's other clients ("Data Analytics Services"). KPMG also requests Client's specific consent to disclose Client's tax return information to members of the KPMG network and other onshore and/or offshore third party service providers such as KGS and the other parties described above to assist KPMG in performing the type of Data Analytics Services described above.

In addition, Client hereby acknowledges that KPMG and such third-party service providers may also prepare reports, studies and presentation decks reflecting statistics and reasoned conclusions regarding tax metrics, economic benchmarks, and tax and general business compliance risks and opportunities (the "Output"); and Client consents to KPMG's disclosure of the Output to other clients since these materials will be intended to help Client and KPMG's other KPMG network clients understand where each of KPMG's clients stands relative to peers, to identify transactions that may be beneficial for Client's businesses, and to suggest areas in which KPMG or other members of the KPMG network might work with Client or our other clients to achieve Client's or such clients' objectives, both with respect to accurate and compliant tax reporting and tax efficient planning. Any such disclosures of the Output will be anonymous as to taxpayer identity as required by law.

Client hereby consents to: (i) the use by KPMG and the third parties identified herein of any and all tax return information including any such information contained in Client's federal, state and foreign income tax returns set forth in this engagement contract and supporting schedules for the development and provision of the Data Analytics Services; (ii) the disclosure of such information to the members of the KPMG network and other third-party service providers assisting KPMG with the development and delivery of Data Analytics Services; and (iii) the disclosure to KPMG's and other KPMG network members' clients and potential clients of the Output from the Data Analytics Services.

### 6.2.3. Representation Regarding Protection of Tax Return Information from Unauthorized Disclosure or Use

Consistent with the terms of the Agreement, KPMG represents that with respect to each member of the KPMG network and third party referred to in the consents set forth above, KPMG and the third parties each have technical, legal and/or other safeguards, measures and controls in place to protect Client's tax return information from unauthorized disclosure or use.

### 6.2.4. Duration of the Consent

If Client agrees to the disclosure and use of Client's tax return information for the purposes set forth above and in the terms of the Agreement, Client's consent is valid for ten (10) years in order for KPMG to complete the Services, including, but not limited to administrative support activities such as data storage, or for such longer periods as required in order for KPMG to assist Client with future tax-related needs and/or to comply with legal, regulatory, and professional standards.

### 6.2.5. Right to Refuse to Provide Consent

Client has the right to decline to provide any or all of the consents requested herein or to request a more limited disclosure of Client's tax return information than that provided in any such consent. However, KPMG reserves the right to decline to provide any tax return preparation services described in the Agreement to which this



consent relates in the absence of consent or if KPMG concludes that the more limited disclosure Client authorizes will interfere with the efficient and effective performance of such tax return preparation services.

### 6.3.    *Engagement Enabler*

In providing its services under this engagement contract, KPMG may use a model or models created by KPMG (the "Model").  In the event Express requests a locked version of the Model, KPMG may make the Model available to you for your use.  Unless KPMG in the exercise of its reasonable discretion determines that a more formal license agreement should be entered into in order to make the Model available to Express, the Model will be provided to you as a "Deliverable" as defined in the Standard Terms and Conditions for Advisory and Tax Services, subject to the following:

- Express is solely responsible for the completeness and accuracy of input and resulting calculations and for the use of those calculations in any form or format and any judgments and business decisions based on its use of the Model. KPMG has no obligation to update the Model, regardless of any changes to relevant facts or tax or accounting laws, rules or regulations in the future.  Express is responsible for obtaining the right to use any third party products necessary to use the Model. Any change in the Model made by Express or on its behalf shall relieve KPMG of any liability or responsibility under any circumstance relating to Express's use of the modified Model.


\* \* \* \* \* \* \*


**IN WITNESS HEREOF,** the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.


**Express Inc.**                                                      **KPMG LLP**

*Greg Hollern*                                               *Jessica Slean*

Greg Hollern                                                     Jessica Slean
VP Controller - Finance                                   Managing Director

 **Standard Terms and Conditions for Advisory and Tax Services**

## 1.  Definitions.

(a)  "Advice" means any advice, recommendations, work product, Deliverables or other information provided by KPMG in connection with the Services.

(b)  "Agreement" means the Engagement Letter and these Standard Terms and Conditions for Advisory and Tax Services and any exhibits, attachments, addenda or appendices attached thereto.

(c)  "AICPA" means the American Institute of Certified Public Accountants.

(d)  "Client" or "you" (or derivatives thereof) means the engaging entity or entities, meaning the addressee(s) of the Engagement Letter.

(e)  "Client Materials" means any and all materials, facilities, network, hardware, systems, software, data and other equipment and information, that in each case is owned by or licensed or leased to you including any third-party materials, to which we are provided access in connection with the Services.

(f)  "Client Parties" means Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents.

(g)  "Condition" means any acts of God, wars, revolution, civil commotion, pandemic, epidemic, terrorism, acts of public enemy, embargo, acts of government in its sovereign capacity, labor difficulties, including without limitation, strikes, slowdowns, picketing or boycotts, or any other circumstances beyond the reasonable control of the non-performing party.

(h)  "Confidential Information" means all documents, reports, data, records, forms and other materials that due to their character and nature, a reasonable person under like circumstances would treat as confidential received by one party (the "Receiving Party") relating to the provision or receipt of Services or otherwise in connection with the Agreement from, or on behalf of, the other party (the "Disclosing Party"); except to the extent such confidential information : (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party without an obligation of confidentiality; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) is information provided by KPMG, as the Disclosing Party, to Client with respect to the tax treatment or tax structure of a transaction; or (5) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(i)  "Delayed Party" means the party delayed or unable to perform its obligations under this Agreement.

(j)  "Deliverables" means the items created or configured for delivery to Client that are specified as deliverables in the Engagement Letter.

(k)  "Engagement Letter" means the engagement letter to which these Standard Terms and Conditions for Advisory and Tax Services are attached.

(l)  "Enabling Tools" means KPMG proprietary and third-party software tools that KPMG makes available to facilitate KPMG's Services to you, such as project management or communications tools.

(m)  "Indemnified Party" means the party entitled to indemnification.

(n)  "Indemnifying Party" means the party obligated to indemnify.

(o)  "Intellectual Property Rights" means patents, copyrights, trademarks, trade secrets, and similar proprietary rights.

(p)  "KPMG" or "we" (or derivatives thereof) means KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the international KPMG network of independent firms.

(q)  "KPMG Parties" means KPMG, Member Firms and the legal entities comprising KPMG International and their respective partners, principals, employees, and agents.

(r)  "KPMG Property" means KPMG's, or its licensors', inventions, technology, know-how, methodologies, works of authorship and other materials created prior to, independently of, or in the course of providing the Services, and all improvements, enhancements and modifications thereto and derivative works thereof, including all Intellectual Property Rights appurtenant thereto, except that KPMG Property shall not include Client Confidential Information.

(s)  "KPMG Resources" means KPMG, Member Firms and third-party providers engaged by KPMG or a Member Firm, which may be located in or outside of the United States.

(t)  "Liabilities" means liabilities, losses, expenses (including reasonable attorneys' fees and expenses), fines, penalties, taxes and other direct damages.

(u)  "Legal Demand" means a validly issued legal or regulatory demand or request, subpoena or other legal process.

(v)  "Member Firms" means the members of the international KPMG network of independent firms and entities controlled by, or under



# Standard Terms and Conditions for Advisory and Tax Services

common control with, one or more KPMG network member firms.

(w) "Residual Knowledge" means any generalized knowledge, experience, know-how, or any of the ideas, concepts, methodologies, tools or techniques derived from or discovered during the provision of the Services performed under the Engagement Letter that does not contain Client's Confidential Information.

(x) "Services" means the services KPMG shall perform as set forth in the Engagement Letter.

## 2. Our services and personnel.

(a) Our Services will be performed in accordance with AICPA and other applicable professional standards.

(b) Any work performed in connection with the engagement described in the Agreement before its execution shall be governed by the Agreement.

## 3. Our fees.

(a) We will bill you for fees and reasonable expenses as agreed to in the Engagement Letter. You agree to pay our invoices within thirty (30) days after receipt. If Client does not pay any properly submitted invoice amount within thirty (30) days after receipt of such invoice, then KPMG may suspend or terminate the Services. Notwithstanding the preceding sentence, any invoiced amounts not paid by their applicable due date shall accrue a late fee of the lesser of (i) 1.5% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law.

(b) Where we are reimbursed for expenses, we will bill you for the amount we paid and we will not add any markup to the expense. After such expenses are incurred, we may receive rebates or incentive payments based on our aggregate purchases, which may include expenses reimbursed by you in addition to other clients. Such rebates are not credited back to you but are used to reduce our overhead.

(c) The fees, expenses and timelines set forth in the Engagement Letter may vary due to failure by a Client to meet its obligations under the Engagement Letter or a change in assumptions, such as failure of third parties to cooperate. Our fees do not include any sales, use, excise, value added, income or other taxes, tariffs or duties applicable to your receipt of our Services, payment of which shall be your sole responsibility. KPMG shall be responsible for its net income or applicable employment taxes.

## 4. Use of our advice.

(a) We may provide our Advice to you in draft form, but the final written Deliverable if provided supersedes any drafts provided earlier. Client agrees to review any draft Deliverables prepared by KPMG promptly and to advise KPMG on a timely basis of any comments Client may have. KPMG shall reasonably incorporate Client's comments into such Deliverable, however the content of the final Deliverable shall be determined by KPMG in the exercise of its professional judgment.

(b) Deliverables bearing the "KPMG" name or logo may only be disclosed to a third party in its entirety and unmodified.

(c) Advice is provided for your sole benefit and internal business use and not for the benefit of, or to be relied upon by any other party.

## 5. Termination.

Either party may terminate this Agreement at any time (i) by giving at least thirty (30) days' prior written notice to the other party, (ii) upon thirty (30) days written notice to the other party, in the event such other party breaches a term of this Agreement and such breach remains uncured at the end of such thirty (30) day period or (iii) upon written notice to the other party if laws, rules, regulations or professional standards applicable to a party preclude it from continuing to perform or receive the Services thereunder. Upon termination of this Agreement, Client shall pay all fees and expenses that have been incurred in connection with the performance of the Services through the effective date of such termination. Any provisions of the Agreement that by their nature are intended to survive termination or expiration will survive and continue to bind the parties.

## 6. Limitation on damages.

The total liability of the Client Parties and the KPMG Parties to one another for any Liabilities relating to the Services provided under the Engagement Letter shall be limited to the amount of fees paid to KPMG under the Engagement Letter. The Client Parties or KPMG Parties will not be liable to one another for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The preceding limitations do not apply to Liabilities arising from the parties' respective indemnification obligations or to the extent resulting from the gross negligence or willful misconduct of the parties. The provisions of this Paragraph 6 shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, rule, regulation or tort (including but not limited to negligence) or otherwise.

## 7. Ownership.

(a) Subject to full payment to KPMG of fees owed for the applicable Services, KPMG (i) assigns to Client, all right, title and interest in and to the Deliverables except to the extent any KPMG Property is contained therein, and (ii) grants Client a royalty-free, non-exclusive,

 **Standard Terms and Conditions for Advisory and Tax Services**

non-transferable, non-sublicensable perpetual license, to use such KPMG Property solely in connection with Client's internal use of the Deliverables.

(b) Notwithstanding anything herein that may be construed to the contrary, Client agrees that nothing in this Agreement prevents KPMG from using Residual Knowledge.

## 8.  Indemnification

(a) KPMG shall indemnify, hold harmless and defend the Client Parties from and against any claims or Liabilities asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's Intellectual Property Rights  except to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any modification of the Deliverables; (iii) the combination or operation of the Deliverables with materials, networks, systems or data not supplied or authorized in writing by KPMG in the Engagement Letter; or (iv) KPMG's compliance with any designs, specifications or instructions provided by, or on behalf of, any of the Client Parties. In case all or part of any Deliverable (including any KPMG Property contained therein) is held, or we believe is likely to be held, to constitute infringement, in addition to our obligations set forth in this Paragraph, we may at our option and expense either: (1) secure for you  the right to continue to use such infringing item; or (2) replace such item with a substantially equivalent non- infringing item or modify such item so that it becomes non-infringing. If we believe we are unable to perform any of these options, we shall refund you the amount paid to us for such item as long as you return such item to us and cease all use of the same. This Paragraph states our entire liability and the sole and exclusive remedy with respect to any infringement or claim of infringement covered by this Paragraph 8(a).

(b) Client shall indemnify, hold harmless and defend the KPMG Parties from and against any Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third-party claim arising from (i) Advice or (ii) the Client Materials or KPMG's use thereof. The foregoing obligations shall apply regardless of whether the third-party claim alleges a breach of contract, violation of statute, rule, regulation or tort (including without limitation negligence) by any of the KPMG Parties.

(c) KPMG shall indemnify, hold harmless and defend the Client Parties from and against any Liabilities for physical injury to, or death of, any person, and damage to or destruction of any tangible property, to the extent resulting from the negligence or willful misconduct of any of the KPMG Parties. Client shall indemnify, hold harmless and defend the KPMG Parties from and against any Liabilities for physical injury to, or death of, any person, and damage to or destruction of any tangible property, to the extent such Liabilities result from the negligence or willful misconduct of any of the Client Parties.

(d) The Indemnified Party shall promptly notify the Indemnifying Party of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall  have the right to participate in such defense or settlement at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

## 9.  Client's responsibilities.

(a) You shall reasonably cooperate with us in the performance of the Services and provide us with, or procure for us, the personnel, facilities, systems, software, equipment, and information reasonably necessary for us to perform the Services, as well as fulfill any obligations set forth in the Engagement Letter. If you do not provide us with the foregoing, you acknowledge that our ability to provide the Services may be adversely affected.  Client represents that it has all rights, licenses, consents and permissions necessary for KPMG to receive and use the Client Materials to perform the Services and provide the Deliverables.

(b) We rely on the materials, information and assumptions you provide to us to render our Advice. We will not independently investigate or verify the accuracy or completeness of the same. If such materials, information or assumptions are inaccurate or incomplete, our Services or Advice could be materially affected.

(c) Client agrees that, while the Services may include advice and recommendations, all decisions in connection with the implementation of such advice and recommendations or to proceed with a proposed transaction are the sole responsibility of, and made by, Client.  In particular, you shall be responsible for (i) assuming all management responsibilities and performing all management functions; (ii) overseeing the Services, by designating an individual, preferably within senior management, who possesses suitable skill, knowledge and/or experience; (iii) evaluating the adequacy and results of the Services; (iv) accepting responsibility for the results of the Services; and (v) establishing and maintaining internal controls over the processes with which the Services are concerned, including performing ongoing evaluations of your internal control as part of your monitoring activities.

## 10.  Use of KPMG Resources and Enabling Tools.

(a) KPMG may engage KPMG Resources to assist in the performance of the Services, for example via subcontracting or contingent workforce personnel.  KPMG remains responsible to Client for the performance of such Services, and adherence to obligations of confidentiality, by any KPMG Resources to the same extent KPMG is obligated under the terms of this Agreement.  Client agrees it shall not bring any claim relating to the Agreement against any KPMG Resource, other than KPMG.

 **Standard Terms and Conditions for Advisory and Tax Services**

(b) KPMG may, with the assistance of KPMG Resources, use information obtained during engagements (i) to analyze trends, perform comparative analysis, and develop and improve benchmarks; (ii) to develop and improve technology and services; and (iii) to improve other services to Client and to provide insights to Client about its business. Such information will not be disclosed to third parties other than KPMG Resources assisting KPMG with these uses unless such information is in an aggregated or anonymized format that does not identify Client.

(c) KPMG may license certain Enabling Tools for use by Client to facilitate the Services. All other use is prohibited. Client may not redistribute, reproduce (except as necessary to run), modify, commercialize, allow third parties to access (unless authorized by KPMG in writing), or reverse engineer or decompile (except where such rights cannot be limited by applicable law) Enabling Tools. KPMG shall indemnify, hold harmless, and defend Client from and against third-party claims that authorized use of Enabling Tools infringes the Intellectual Property Rights of a third party, subject to any limits or requirements imposed by KPMG's licensors; and Client shall indemnify, hold harmless, and defend KPMG Parties from and against third-party claims arising from Client's or its authorized users unauthorized use of Enabling Tools. Enabling Tools are not intended to be used as a system of record, repository, or hosting service, and Client access to the Deliverables and other documents will be removed from the Enabling Tools within a reasonable period of time (no less frequently than annually for audit clients and their affiliates) following the conclusion of the engagement to which they relate. Client shall download such Deliverables and documents for its records. Client acknowledges that use of Enabling Tools may be subject to additional terms specified in the Engagement Letter or other agreement. Enabling Tools are provided on an "as is" "as available" basis.

## 11. Confidentiality.

(a) The Receiving Party shall hold the Disclosing Party's Confidential Information in confidence and not disclose the Disclosing Party's Confidential Information to any other party without the Disclosing Party's prior written permission. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is (i) required or necessary to be disclosed pursuant to law, rule or regulation or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process insurance claims; (ii) to KPMG Resources performing the applicable Services, or (iii) in the case of the KPMG Parties, to the KPMG Resources providing internal, administrative, clerical, analytical and/or regulatory compliance operations and functions, and information technology support. The Receiving Party shall protect the Disclosing Party's Confidential Information as it protects its own confidential information but in no event shall use less than reasonable care.

(b) Upon request after completion of the Services, the Receiving Party will deliver to the Disclosing Party or destroy all of the Disclosing Party's Confidential Information and all copies thereof, except for copies retained in work paper files or records (i.e., engagement documentation), anything that may be stored in back up media or other electronic data storage systems, latent data and metadata.

(c) If the Receiving Party receives a Legal Demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law or such Legal Demand, provide prompt written notice to the Disclosing Party of such Legal Demand in order to permit it to seek a protective order. The Receiving Party shall be entitled to comply with such Legal Demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter.

(d) In a proceeding or investigation to which we are not a named party or respondent, if you request or we are required or authorized to produce documents or personnel as witnesses or for interviews, or otherwise to make information or materials relating to the Services available to you or a third party, you shall reimburse us for our time, at our standard hourly rates, and expenses, including reasonable attorneys' fees, incurred in responding to such request or requirement.

## 12. Third-party relationships.

KPMG is a large firm and part of a network of independent Member Firms that provide services to and have business relationships with many different entities, including entities who may have business interests that differ from Client's business interests. In accordance with applicable professional standards, prior to agreeing to provide Services requested by Client based upon the information provided by Client, KPMG will perform an internal search for any potential or actual conflicts of interest with the Services contemplated herein. Where such a potential conflict of interest is identified, KPMG would, subject to confidentiality, disclose the nature of such relationship to Client, including any planned safeguards, and seek Client's consent at such time.

## 13. Assignment, waiver and severability.

(a) Subject to Paragraph 10, neither party may assign, transfer or delegate any of its rights, obligations, claims or proceeds from claims arising under or relating to this Agreement (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld, conditioned or delayed. Any assignment, transfer or delegation in violation hereof shall be null and void.

(b) Failure of a party to exercise or enforce any of its rights hereunder is not a waiver of such rights.

(c) In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of that provision is modified to the extent reasonably necessary to reflect the intent of the parties and this Agreement shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

 **Standard Terms and Conditions for Advisory and Tax Services**

**14.  Governing law.**

The Agreement and all disputes and claims between the parties (whether based in contract, tort, statute, rule, regulation or otherwise and whether pending in court or in an arbitral forum) shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York, including without limitation its statutes of limitations, without regard to the conflict of laws provisions of New York or any other state or jurisdiction.

**15.  Alternative dispute resolution.**

(a)  Any dispute or claim between the parties shall be submitted first to non-binding mediation. Mediation shall take place at a location to be designated by the parties using the Mediation Procedures of the Rules for Non- Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"), with the exception of paragraph 2 (Selecting the Mediator).

(b)  If mediation is not successful within 90 days after the initial request for mediation, then such dispute shall be submitted to binding arbitration in accordance with the IICPR. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, validity or enforceability of these dispute resolution procedures shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(c)  Arbitration shall take place in New York, New York and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Party-selected arbitrators shall be selected from the lists of neutrals maintained by either the IICPR or by JAMS, Inc., but the chair of the arbitration panel does not have to be selected from those specific lists. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with Paragraph 6 above shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d)  Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm, enforce or vacate any final award entered in arbitration, in any court of competent jurisdiction, provided that such party will file such motion under seal unless prohibited under applicable court rules.

(e)  Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**16.  Miscellaneous.**

(a)  Independent Contractor. KPMG's relationship with Client is that of an independent contractor and neither party is an agent, distributor or representative of the other. Unless otherwise agreed to by the parties in writing, neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

(b)  Use of Names and Logos. We may reference you as a customer in our marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Client is an Audit, Advisory and/or Tax client of KPMG LLP."). In addition, you give us the right to use your logo for internal KPMG presentations and intranet sites.  Except as permitted herein, neither party shall acquire any right to use the name or logo of the other party or any part thereof unless required by law.

(c)  Export Control. Each party acknowledges and agrees that it shall comply with all applicable United States export control laws and regulations in the performance of each party's respective activities under the Engagement Letter. Client shall not provide KPMG, or grant KPMG access to, (i) information (including technical data or technology), verbally, electronically, or in hardcopy, (ii) software or (iii) hardware, that is controlled for export by the United States government under the Arms Export Control Act of 1976, Export Control Reform Act of 2018, the International Traffic in Arms Regulations, Export Administration Regulations, Department of Energy Part 810 Regulations or Nuclear Regulatory Commission Part 110 Regulations, except information, software or hardware that is classified as EAR99 under the Export Administration Regulations.

(d)  Non-Solicitation. During the term of the Agreement and for one year thereafter, neither party shall solicit or hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the Services, without such other party's express written consent. This prohibition shall not apply to any offers of employment that result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

(e)  Force Majeure. Except for the obligation of a party to make payments required hereunder, neither party shall be responsible for any delay or failure in performance of any part of this Agreement or the Services to the extent that such delay or failure is caused by reason of a Condition.  The Delayed Party , shall be excused from such performance on a day-to-day basis during the continuance of such Condition (and the other party shall likewise be excused from performance of its obligations on a day-to-day basis during the same period);  provided, however, that the Delayed Party shall use commercially reasonable efforts to avoid or remove such Condition, and both parties shall proceed promptly with the performance of their obligations under this Agreement whenever such Condition is removed or ceases.  If the Condition continues for more than ninety (90) days, then the party affected may terminate this Agreement upon written notice to the Delayed Party.

 Standard Terms and Conditions for Advisory and Tax Services

(f)   Personnel.  KPMG is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the Services KPMG is providing, non-CPA holders may provide the Services under the Agreement.

(g)   Disclaimer.  Except as expressly stated in this Agreement, KPMG expressly disclaims and makes no warranties of any kind or nature with respect to the Services or Deliverables, express or implied, including warranties of merchantability, fitness for a particular purpose or use, or non-infringement.

(h)   Order of Precedence.  In the event of a conflict between the provisions of these Standard Terms and Conditions for Advisory and Tax Services and the specific provisions in the Engagement Letter, the terms of these Standard Terms and Conditions for Advisory and Tax Services shall control except to the extent the Engagement Letter expressly references the provisions of these Standard Terms and Conditions for Advisory and Tax Services which they modify.

**17.   Additional terms for engagements involving tax services.**

This Section 17 shall apply only to KPMG's performance of tax Services.

(a)   Notwithstanding anything to the contrary set forth herein, no provision in this Agreement is or is intended to be construed as a condition of confidentiality within the scope of the Internal Revenue Code of 1986 (the "IRC") section 6011 as implemented through Treasury Regulation 1.6011-4(b)(3)(i) (without regard to references to payment or receipt of a minimum fee) or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client, its directors, officers, employees and agents may disclose to any and all persons, without limitation of any kind, tax information KPMG provides to Client, including all materials such as tax opinions, memoranda, or other written tax advice that describes or otherwise relates to, either or both of the tax treatment and tax structure of any transaction on which KPMG's services are provided. Client will use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG's services are requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b)   Client expressly permits KPMG and any relevant KPMG Resource involved in provision of Services hereunder to make disclosures required pursuant to IRC sections 6011,6111 and 6112 and/or similar or analogous requirements of any state or other jurisdiction (domestic or foreign).  Client will use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the Internal Revenue Service ("IRS") or to any state or other jurisdiction (domestic or foreign) adopting similar or analogous provisions to IRC section 6011. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state tax authority or other jurisdiction (domestic or foreign) adopting similar or analogous provisions thereto.

(c)   Unless expressly provided for in the Engagement Letter, KPMG's Services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(d)   In rendering tax advice, KPMG may consider, for example, the applicable provisions of the IRC, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

**18.   Additional terms for systems implementation Services.**

This Section 18 shall apply only to KPMG's performance of Services related to the implementation of third-party systems or software.

(a)   Client shall accept or reject the Deliverable within ten (10) business days (or such other time period set forth in the Engagement Letter) after delivery (the "Acceptance Period") in accordance with this Section 18(a).  If Client determines that the Deliverable does not materially conform to the specifications set forth in the Engagement Letter or agreed to in writing (the "Specifications"), then Client shall provide KPMG with a written notice of rejection specifying the material non-conformities between the Deliverable and the applicable Specifications ("Defects").  KPMG shall, at no additional cost to Client, correct the Defects after which Client shall be entitled to repeat the acceptance process set forth herein (each a "Work-out Period").  If after three Work-Out Periods the Deliverable does not conform in all material respects with the applicable Specifications, then at KPMG's option, KPMG may terminate the Engagement Letter and promptly provide Client with a refund of any amounts paid by Client for the defective Deliverable(s) and Client will promptly return such Deliverable(s) to KPMG.  The Deliverables will be deemed accepted if the Client either fails to reject the Deliverables before the end of an Acceptance Period or uses the Deliverables in a production environment.  To the extent any accepted Deliverable differs from the applicable Specifications, then such Specifications are hereby deemed modified to conform to the accepted Deliverable.

(b)   KPMG warrants to Client that for a period of ninety (90) days after the final Deliverable has been accepted pursuant to Section 18(a) ("Warranty Period") that Deliverable will conform to its Specifications in all material respects; provided that the foregoing warranty shall not apply to the extent the non-conformity arises out of (i) use of the Deliverable other than in accordance with applicable documentation or instructions, (ii) any modification of the Deliverable not expressly authorized in writing by KPMG, or (iii) the Client Materials.  Any claim for breach of warranty arising out of or related to a Deliverable, including under this Agreement, must be made in writing to KPMG within the Warranty Period with respect to that Deliverable. Client's exclusive remedies, and KPMG's entire liability,

 **Standard Terms and Conditions for Advisory and Tax Services**

for any breach of warranty arising out of or related to the Deliverables shall be, at KPMG's option, (A) the repair and replacement of the Deliverable or (B) the refund to Client of the amount paid to KPMG for the Deliverable (in which case Client shall promptly return the Deliverable to KPMG and shall have no further right to use the Deliverable).

**19.  Entire agreement; Amendment.**

This Agreement constitutes the final, complete and exclusive agreement between the parties with respect to the subject matter of the foregoing, and supersedes all other previous and contemporaneous oral and written agreements relating to that subject matter. Any amendments to the Agreement must be made in writing.

**Exhibit A-2**

# MASTER PROFESSIONAL SERVICES AGREEMENT
### Multiple Engagement

THIS MASTER PROFESSIONAL SERVICES AGREEMENT ("Agreement"), dated as of April 30, 2014 (the "Effective Date"), is between EXPRESS LLC, a Delaware corporation having its principal place of business at 1 Express Drive Columbus, Ohio ("Client"), and KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"), with an office at 191 West Nationwide Blvd, Columbus, Ohio ("Contractor"). For purposes of this Agreement, Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." Contractor, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents are collectively referred to herein as the "KPMG Parties."

WHEREAS, Client desires from time to time to engage Contractor to perform certain professional non-attestation services for Client; and

WHEREAS, Contractor desires to perform such professional services for Client.

NOW THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements set forth herein, the parties hereto agree as follows:

## 1.    SCOPE AND PERFORMANCE OF SERVICES.

(a)    Client agrees to retain Contractor to perform professional services for Client on a task-by-task basis (the "Services") and Contractor agrees to furnish the Services on the terms and subject to the conditions set forth in this Agreement. During the term of this Agreement, Client and Contractor will develop and agree upon statements of work defining the Services and work product to be provided by Contractor, Contractor's compensation, deadlines, if any, additional terms and conditions applicable to specific engagements, if any, and such other details as the parties deem appropriate (each a "Statement of Work"). A sample Statement of Work form is set forth as Exhibit A hereto. Statements of Work shall reference this Agreement, shall be executed by the parties and shall form a part of this Agreement. In the event of a conflict between the provisions of this Agreement and the specific provisions in a Statement of Work, the provisions in the Statement of Work shall control if they expressly reference the provisions of this Agreement with which they are inconsistent. Notwithstanding anything herein to the contrary, the Services shall not include (i) the provision of expert testimony on behalf of Client or (ii) any service that would require Contractor to maintain independence from Client in accordance with then current applicable law, rule or regulation of any governmental entity or professional organization. Unless expressly set forth in a Statement of Work with respect to tax services, the Services do not include representing Client in the event of a challenge by the United States Internal Revenue Service (the "IRS") or other tax or revenue authorities.

(b)    Contractor shall provide sufficient qualified personnel to perform the Services required by each Statement of Work and shall perform such Services in accordance with

American Institute of Certified Public Accountants ("AICPA") and other professional standards applicable to Contractor's performance of the Services and in accordance with the terms of the applicable Statement of Work and this Agreement. Contractor's personnel performing the Services on Client's premises shall comply with Client's rules and regulations pertaining to security of and access to Client's premises and facilities of which Contractor has been informed in writing.

(c)      Client agrees to cooperate with Contractor in the performance of the Services and shall provide or arrange to provide Contractor with timely access to and use of the personnel, facilities, equipment, data and information necessary for Contractor to perform the Services. Statements of Work may set forth additional details regarding Contractor's access to and use of personnel, facilities, equipment, data and information. A Statement of Work may set forth additional obligations of Client in connection with such Services necessary for KPMG to perform its obligations under the Statement of Work. Client acknowledges that its failure to satisfy such obligations could adversely affect Contractor's ability to provide the Services in accordance with the terms of this Agreement and the applicable Statement of Work.

(d)      Client may request changes that affect the scope or duration of the Services relating to any Statement of Work and Contractor may notify Client that it has encountered issues or circumstances related to the Services that are beyond the scope of Services under a Statement of Work. If Client requests such a change or if Contractor notifies Client of issues or circumstances beyond the applicable scope of Services, then Contractor promptly shall notify Client if Contractor believes that an adjustment in the scope of Services, fees to be paid to Contractor with respect to the applicable Statement of Work or applicable deadlines is required and the parties shall negotiate in good faith a reasonable and equitable adjustment in the applicable scope, fees or deadlines. Unless Client directs Contractor to stop work pending acceptance of such change, Contractor shall continue work pursuant to the existing Statement of Work, and shall not be bound by any change requested by Client, until Contractor has accepted such change in writing.

(e)      Client acknowledges and agrees that Contractor will, in performing the Services, base its conclusions on the facts and assumptions that Client furnishes and that Contractor may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that Contractor shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to Contractor could have a material adverse effect on Contractor's conclusions.

(f)      It is understood and agreed that Contractor's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. Contractor will not perform management functions or make management decisions for Client.

(g)      If Contractor audits the financial statements of Client or provides any other attestation services to Client, the rules of the AICPA require Client to agree to the following provisions of this Paragraph 1(g). In connection with Contractor's provision of Services under a Statement of Work, Client agrees that Client, and not Contractor, shall perform

the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(h)    Subsequent to the completion of the Services under a Statement of Work, Contractor will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages Contractor to do so in writing after such changes or modifications, interpretations, events or transactions.

(i)    Client's parent company and its direct and indirect subsidiaries domiciled in the United States may retain Contractor to provide Services under the terms of this Agreement by executing a Statement of Work.  By executing a Statement of Work, any such subsidiary shall be bound by the terms and conditions of this Agreement and the applicable Statement of Work with respect to the Services to be provided by Contractor under such Statement of Work and references in this Agreement to "Client" shall be deemed references solely to the subsidiary of Client executing such Statement of Work with respect to such Services and Contractor's rights and obligations in connection therewith shall pertain only to such subsidiary.

2.    **TERM.**  The term of this Agreement shall begin on the date hereof and shall continue until terminated by either party pursuant to Paragraph 6 hereof.

3.    **CONTRACTOR'S COMPENSATION.**

(a)    During the term of this Agreement, Client agrees to compensate Contractor only for those reimbursable time and expenses that are supported by documentation and approved in advance, including as documented in a Statement of Work.

(b)    Contractor shall bill Client at agreed intervals as set forth in the applicable Statement of Work.  Contractor shall mail invoices to Client at the address set forth in the applicable Statement of Work.  Client shall pay properly submitted invoices within forty-five (45) days of receipt.

(c)    All fees, charges and other amounts payable to Contractor hereunder do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be the sole responsibility of Client (excluding any applicable taxes based on Contractor's net income or taxes arising from the employment or independent contractor relationship between Contractor and its personnel).  In the event that such taxes, tariffs or duties are assessed against Contractor, Client shall reimburse Contractor for any such amounts paid by Contractor or provide Contractor with valid tax exemption certificates with respect thereto.

(d)    Contractor shall maintain written records of the fees and expenses charged to Client with respect to the Services under each Statement of Work.  Contractor shall retain such records for two years after the completion or termination of the Services to which they pertain

and shall make such records available to Client during normal business hours upon reasonable advance written notice. Contractor shall cooperate in any audit of such records that Client may undertake; provided, however, that: (i) any such audit shall be at Client's sole expense; (ii) no such audit may occur more than once in any twelve (12) month period; and (iii) Contractor shall have the right to approve the auditor used for any such audit, with such approval not to be unreasonably withheld.

4.    OWNERSHIP AND USE OF MATERIALS RELATED TO SERVICES.

(a)    Contractor has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of the Services, use, provide, modify, create, acquire or otherwise obtain rights in, (i) concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software and (ii) the general elements of style, design, art work and graphics and content of general applicability included in Contractor's Deliverables (as defined below) or work product not specific to Client or the Services (collectively, the "Contractor Property"). Contractor retains all ownership and use rights in the Contractor Property. Client shall acquire no rights or interest in the Contractor Property, except as expressly provided in the next paragraph. Contractor acknowledges that Contractor Property shall not include any of Client's confidential information or tangible or intangible property, and Contractor shall have no ownership rights in such property.

(b)    Except for Contractor Property, and upon full and final payment to Contractor under the applicable Statement of Work, the tangible items specified as deliverables or work product in the Statement of Work including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any Contractor Property is contained in any of the Deliverables, Contractor hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such Contractor Property in connection with Client's use of the Deliverables. Client acknowledges and agrees that Contractor shall have the right to retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 9 below.

(c)    Client acknowledges and agrees that any advice, recommendations, information, Deliverables or other work product provided to Client by Contractor in connection with the Services is intended for Client's sole benefit and Contractor does not authorize any other party to rely upon such advice, recommendations, information, Deliverable or other work product and any such reliance shall be at such party's sole risk.. Client agrees that if it makes such advice, recommendations, information, Deliverable or other work product available to any third party other than as expressly permitted by the applicable Statement of Work the provisions of Paragraph 8(c) shall apply unless Client provides the written notice to the third party in substantially the form of Exhibit B hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide Contractor with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Client may only make a Deliverable bearing the "KPMG" name or logo available to a third party in its entirety. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 17(a) below, no acknowledgement of the Notice shall be required and (ii)

no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the terms of the applicable Statement of Work.

## 5.    CONTRACTOR'S LIMITED WARRANTIES AND WARRANTY DISCLAIMER.

     **(a)**    Contractor warrants to Client that Contractor's performance of the Services called for by this Agreement, to its knowledge, does not violate any applicable law, rule, or regulation.

     **(b)**    Contractor warrants to Client that Contractor has full authority and sufficient rights, except for rights respecting programs, data and materials provided by Client or identified by Contractor as furnished to Client by third-party vendors, to grant and convey the rights granted to Client under Paragraph 4 hereof.

     **(c)**    Contractor disclaims all other warranties, either express or implied.

## 6.    TERMINATION.

     **(a)**    At any time that there is no uncompleted Statement of Work outstanding, either party may terminate this Agreement for any or no reason upon thirty (30) days advance written notice to the other.

     **(b)**    In addition, (i) either party may terminate this Agreement or any outstanding Statement of Work upon thirty (30) days written notice to the other party, in the event such other party breaches a material term of this Agreement or any Statement of Work and such breach remains uncured at the end of such thirty (30) day period and (ii) either party may terminate any outstanding Statement of Work for any or no reason upon thirty (30) days advance written notice to the other.  Upon any such termination, Contractor will be paid all fees and expenses that have been incurred or earned in connection with the performance of the Services through the effective date of such termination.

## 7.    LIABILITIES AND REMEDIES FOR INFRINGEMENT.

     **(a)**    Contractor hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by any third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables  (including any Contractor Property contained therein) of any third party's patents issued as of the date of the applicable Statement of Work, trade secrets, trademarks or copyrights.  The foregoing provisions shall not apply to any infringement to the extent arising out of: (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by Contractor or for other than Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly authorized in writing by Contractor; or (iii) the combination of the Deliverables with materials not supplied by Contractor.

**(b)**    In case any of the Deliverables (including any Contractor Property contained therein) or any portion thereof is held, or in Contractor's reasonable opinion is likely to be held, in any such suit to constitute infringement, Contractor may within a reasonable time, at its option, either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at Contractor's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing.    In the event Contractor is, in Contractor's reasonable discretion, unable to perform either of the options described in clauses (i) and (ii) above, Client shall return the allegedly infringing item to Contractor, and Contractor's sole liability shall be to refund to Client the amount paid to Contractor for such item; provided that the foregoing shall not be construed to limit Contractor's indemnification obligation set forth in Paragraph 7(a) above.

**(c)**    The provisions of this Paragraph 7 state Contractor's entire liability and Client's sole and exclusive remedies with respect to any infringement or claim of infringement.

8.    **LIMITATIONS OF LIABILITY; INDEMNIFICATION.**

**(a)**    Except for the respective indemnification obligations of Client and Contractor set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the Services performed under a Statement of Work shall be limited to the amount of fees paid or owing to Contractor under such Statement of Work.    In no event shall any of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).    For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence.    The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, tort (including but not limited to negligence) or otherwise.

**(b)**    Contractor agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, illness or death of, any person or persons regardless of status, and damage to or destruction of any tangible property which any of the Client Parties may sustain or incur to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties.    Client agrees to indemnify, hold harmless and defend the Contractor Parties from and against any and all Liabilities for physical injury to, illness or death of, any person or persons regardless of status, and damage to or destruction of any tangible property which any of the KPMG Parties may sustain or incur to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

**(c)**    In accordance with Paragraph 4(c), Client will indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim to the extent resulting from such party's reliance upon Contractor's advice, recommendations, information or work product as a result of Client's disclosure of such advice, recommendations, information or work product  without adhering to the notice requirements of Paragraph 4(c) above.    The

October 1, 2011 Release2

foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute or tort (including without limitation negligence) by Contractor.

(d)     The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification hereunder and the Indemnifying Party shall have the exclusive right and authority to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense and the Indemnified Party shall cooperate with the Indemnifying Party in connection therewith. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9.    CONFIDENTIAL INFORMATION.

(a)     "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the Services: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential.    Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) relates to information provided by Contractor relating to the tax treatment or tax structure of any transaction; (5) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 and 6112 of the Internal Revenue Code ("IRC") and the regulations thereunder or similar or analogous provisions of a state or other jurisdiction or (6) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(b)     The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata.    Except as otherwise set forth in this Paragraph 9 or Paragraph 12 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

(c)    The KPMG Parties may aggregate Client information with information from other sources in connection with thought leadership projects, to improve the delivery of services to clients and to allow clients to evaluate various business transactions and opportunities. The KPMG Parties will only use this information without attribution to Client and under circumstances where Client will not be identified as the source of the information.

(d)    Contractor may also use Client information and information relating to the Services rendered under a Statement of Work for the purpose of permitting the KPMG Parties to access and share knowledge and information solely among the KPMG Parties. The KPMG Parties receiving this information will be obligated to comply with confidentiality obligations with respect to such information in accordance with this Paragraph 9.

(e)    Each party shall exercise the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(f)    If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law, provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event the Receiving Party is requested to testify or produce its documents relating to the Services hereunder pursuant to subpoena or other legal process in judicial or administrative proceedings to which it is not a party, or in connection with an informal inquiry or investigation with the consent of the Disclosing Party, the Disclosing Party shall reimburse the Receiving Party for its time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

10.    **INDEPENDENT CONTRACTOR.**  Contractor is performing the Services as an independent contractor and not as an employee of Client and none of Contractor's personnel shall be entitled to receive any compensation, benefits or other incidents of employment from Client. Subject to Paragraph 3(c), Contractor shall be responsible for all taxes and other expenses arising from the employment or independent contractor relationship between Contractor and its personnel and the rendition of Services hereunder by such personnel to Client. Nothing in this Agreement shall be deemed to constitute a partnership or joint venture between Client and Contractor, nor shall anything in this Agreement be deemed to constitute Contractor or Client the agent of the other. Neither Contractor nor Client shall be or become liable or bound by any representation, act or omission whatsoever of the other.

11.    **ASSIGNMENT.** Subject to Paragraph 12 below, neither party shall assign, transfer, delegate or subcontract this Agreement or any of its obligations hereunder or under a Statement of Work without the other party's prior written consent, such consent not to be unreasonably withheld.

12.    **USE OF MEMBER FIRMS AND THIRD PARTY SERVICE PROVIDERS.**

(a)    Client acknowledges and agrees that the Services under a Statement of Work, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of Contractor and Contractor is not a partner, principal, agent or affiliate of any other Member Firm.

(b)    Client further acknowledges that in connection with the performance of the Services, Contractor and Member Firms, in their discretion or at Client's direction, may utilize the services of affiliates and third party service providers within and without the United States to complete the Services under a Statement of Work.

(c)    Contractor uses third party service providers within and without the United States to provide at Contractor's direction administrative and clerical services to Contractor. These third party service providers may in the performance of such services have limited access to information, including but not limited to Confidential Information, received by Contractor from or at the request or direction of Client. Contractor represents to Client that each such third party service provider has agreed to conditions of confidentiality with respect to Client's information to the same or similar extent as Contractor has agreed to pursuant to Paragraph 9 above. Contractor has full responsibility to cause these third party service providers to comply with such conditions of confidentiality and Contractor shall be responsible for any consequences of their failure to comply.

(d)    Accordingly, Client consents to Contractor's disclosure to a Member Firm or third party service provider and the use by such Member Firm and third party service provider of data and information received from or at the request or direction of Client for the purposes set forth in Paragraph 9 above and this Paragraph 12.

(e)    Any Services performed by a Member Firm or third party service provider shall be performed in accordance with the terms of this Agreement, including Paragraph 9 (Confidentiality), and the applicable Statement of Work but Contractor shall remain responsible to Client for the performance of such Services. Client agrees that any claim relating to the Services may only be made against Contractor and not any other Member Firm or third party service provider referred to above.

13.    **NOTICES.** All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given upon personal delivery, five (5) days after being mailed by registered or certified mail, return receipt requested, or one (1) business day after being sent by nationally recognized overnight courier. Notices shall be addressed as follows:

If to Client:

**EXPRESS, LLC**

1 Express Drive
Columbus, Ohio
Attention: Mike Robey

with a copy to:

**EXPRESS, LLC**
1 Express Drive
Columbus, Ohio
Attention:  General Counsel

If to Contractor:

**KPMG LLP**
191 West Nationwide Blvd
Columbus, Ohio
Attention:  Matthew Kramer

with a copy to:

**KPMG LLP**
Office of General Counsel
345 Park Avenue
New York, New York 10154
Attention:  General Counsel

Fax Number: 212-751-2109

**14.    SEVERABILITY; GOVERNING LAW.**  In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, impaired or invalidated, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  This Agreement and the Statements of Work entered into hereunder shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of laws provisions thereof.

**15.    INTEGRATION.**  This Agreement, including any Statements of Work entered into pursuant hereto, constitutes the entire agreement of the parties hereto with respect to its subject matter and supersedes all prior and contemporaneous representations, proposals, discussions, and communications, whether oral or in writing.  This Agreement may be modified only in writing and shall be enforceable in accordance with its terms when signed by each of the parties hereto.

**16.    INSURANCE.**  Throughout the term of this Agreement, Contractor shall maintain workers compensation insurance in the amount required by statute, comprehensive general liability insurance with coverage of at least one million dollars ($1,000,000) and professional

errors and omissions insurance with coverage of at least one million dollars ($1,000,000), in connection with the provision of Services by Contractor pursuant to the terms of this Agreement. At Client's request, Contractor shall provide Client with certificates or other acceptable evidence of insurance or self-insurance evidencing the above coverage.

17.   ADDITIONAL TERMS FOR ENGAGEMENTS INVOLVING TAX SERVICES.

(a)   Notwithstanding anything to the contrary set forth herein, no provision in this Agreement or a Statement of Work is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of the Services under a Statement of Work and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform Contractor of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which Contractor advice is requested. Such notification must occur prior to Contractor providing any advice with respect to the transaction.

(b)   Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform Contractor if Client is required to disclose any transaction covered by the Services provided under a Statement of Work as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. Contractor will use commercially reasonable efforts to inform Client if Contractor provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c)   In rendering tax advice, Contractor may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of Contractor's advice.

18.   ALTERNATIVE DISPUTE RESOLUTION.

(a)   Any dispute or claim arising out of or relating to the this Agreement or the services under a Statement of Work shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered

Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

      **(b)**    Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

      **(c)**    Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

      **(d)**    Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

      **(e)**    Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

19. **ADDITIONAL TERMS FOR DUE DILIGENCE ASSISTANCE ENGAGEMENTS.**

      **(a)**    The procedures Contractor will perform are limited to those referred to in the applicable Statement of Work and are limited in nature and extent to those that Client has determined meets its needs and, as such, will not necessarily disclose all significant matters about Target (as such term is defined below) or reveal errors in the underlying information, instances of fraud, or illegal acts, if any. Contractor provides no assurance and makes no representation regarding the sufficiency of the procedures either for the purpose for which Contractor has been engaged or for any other purpose. Contractor will express no opinion and will provide no other form of assurance on Target's historical or prospective financial information or Target's internal controls over financial reporting under any audit or other attestation standards such as those issued by the Public Company Accounting Oversight Board and the AICPA. The term "Target" as used herein refers to the entities or divisions representing the subject of the due diligence assistance procedures described in the Statement of Work.

      **(b)**    Contractor's estimates of fees and expenses and schedule for completion of the services under the Services depends upon a variety of factors outside Contractor's control, including but not limited to, the availability of information, the degree of cooperation Contractor receives from Client's and Target's personnel and advisors, and the timeliness and completeness

of the responses by Client's and Target's personnel and advisors to Contractor's requests for information.

(c)    Contractor may potentially be engaged by other parties in connection with a transaction involving Target that is the same as or similar to the transaction that is the subject of the Services under a Statement of Work. If the Contractor engagement team providing the Services to Client becomes aware that a separate Contractor team has been so engaged by another party, Contractor will notify Client that Contractor has been so engaged without disclosing the identity of the other party and will take all reasonable steps to prevent the disclosure, without appropriate prior approvals, of information between the Contractor team serving Client and the engagement team serving any other party. Unless Client elects to exercise Client's right to terminate the applicable Statement of Work, Client agrees that Contractor may be so engaged by other parties, waives any potential conflict, and further agrees to take such action as Contractor may reasonably request to effect such waiver.

(d)    If Client is a potential purchaser of or investor in Target and Contractor serves as independent auditors of Target, or provides any other services to Target, Contractor will take all reasonable steps to prevent the disclosure, without appropriate prior approvals, of confidential information between the Contractor engagement team serving Client and the Contractor engagement team serving Target. However, Client hereby acknowledges and agrees that Contractor may be in possession of confidential information concerning Target that may be relevant to Client's due diligence procedures and that such information will not be disclosed to Client unless Target provides such information directly to Client or to the Contractor engagement team providing services to Client for purposes of the services under the applicable Statement of Work or otherwise provides written consent to such disclosure in advance. Contractor's professional responsibilities may require that the engagement team serving Client inform the engagement team serving Target about information coming to Contractor's attention during the performance of the Services under the applicable Statement of Work that could affect Contractor's engagements with Target. Client acknowledges that Contractor's relationship with Target may represent an actual or potential conflict of interest for Contractor in light of the services Contractor has agreed to provide to Client hereunder. Client hereby agrees that Contractor's relationship shall not constitute a conflict of interest for purposes of Contractor's performance of the Services under the applicable Statement of Work and Client expressly waives its right to assert any such conflict against Contractor. Client hereby acknowledges that Contractor's agreement to provide the Services under the applicable Statement of Work is based upon and subject to the foregoing waiver and, in the event that Client revokes such waiver, Contractor's Services under the applicable Statement of Work will automatically terminate.

(e)    Client agrees to review reports prepared by Contractor ("Reports") promptly and to advise Contractor on a timely basis of any additional or supplemental procedures Client would like Contractor to perform or areas to address. Unless specifically requested by Client, Contractor is not obligated to provide copies of Reports to Target for the purpose of having Target confirm the accuracy of the factual information presented in Reports. Contractor's findings will not constitute recommendations to Client as to whether or not Client should proceed with any proposed transaction.

(f)    Because of the special nature of the Services under the applicable Statement of Work, Contractor's Reports are not suited for any purpose other than to assist Client in Client's evaluation of the potential transaction with Target, and Client agrees Reports will be used for that purpose only.  Distribution of Contractor's Reports to third parties shall be subject to Paragraph 4(c).  For purposes of Paragraph 4(c), the Client's board of directors, management and other employees, Client's independent audit firm, and attorneys acting as Client's counsel in the contemplated transaction are not considered to be third parties, provided that each of the foregoing is subject to a binding obligation (through a written agreement or professional obligation) to maintain the confidentiality of the Reports.

(g)    The provisions of Paragraphs 1(c) and 9 shall apply to information about Target provided to Contractor in the course of performing the Services under the applicable Statement of Work.  Client agrees to use all reasonable efforts to arrange for Contractor's access to Target's personnel and advisors, business offices and financial information as required for Contractor to perform the Services contemplated by the applicable Statement of Work.

## 20.    MISCELLANEOUS.

(a)    **Sarbanes-Oxley**.  Except as otherwise set forth in the applicable Statement of Work, Client acknowledges that completion of the Services under a Statement of Work or acceptance of the Deliverables thereunder will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act").  The Services under a Statement of Work shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b)    **Electronic Communications**.  Contractor and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of providing Services under this Agreement.  Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices).  Client agrees that the final hardcopy version of a document, including a Deliverable, or other written communication that Contractor transmits to Client shall supersede any previous versions transmitted electronically by Contractor to Client unless no such hardcopy is transmitted.

(c)    **California Accountancy Act.**    Client acknowledges that certain of Contractor's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide Services under a Statement of Work may not be licensed as certified public accountants under the laws of any of the various states.

(d)    **Volume Rebates.**  Where Contractor is reimbursed for expenses, it is Contractor's policy to bill clients the amount incurred at the time the good or service is purchased.  If Contractor subsequently receives a volume rebate or other incentive payment from

a vendor relating to such expenses, Contractor does not credit such payment to Client. Instead, Contractor applies such payments to reduce its overhead costs, which costs are taken into account in determining Contractor's standard billing rates and certain transaction charges that may be charged to clients.

      **(e)**     **Use of Names and Logos.** Except as permitted by law or the terms of a Statement of Work, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

      **(f)**     **Privileged Communications.** Information relating to advice Contractor provides to Client, including communications between Contractor and Client and material Contractor creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As Contractor is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to promptly notify Contractor of any such waivers, whether resulting from communications with Contractor or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that Contractor personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that Contractor will not assert on Client's behalf any claim of privilege unless Client specifically instructs Contractor in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will Contractor assert any claim of privilege that Contractor concludes, after exercising reasonable judgment, is not valid.

      **(g)**     **Active Spreadsheets and Electronic Files.** Contractor may use models, electronic files and spreadsheets with embedded macros created by Contractor to assist Contractor in providing the services under a Statement of Work. If Client requests a working copy of any such model, electronic file or spreadsheet, Contractor may, at its discretion, make such item available to Client for its internal use only and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

    **21.**    **SURVIVAL.** Paragraphs 1(h), 3(d), 4, 5, 7, 8, 9, 12(d), 13, 14, 17(a), 17(c), 18 and 20 shall survive any expiration or termination of this Agreement.

October 1, 2011 Release2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

EXPRESS, LLC

By: _D. Paul Dascoli_

Name: _D. Paul Dascoli_

Title: _CFO_

KPMG LLP

By: _Matt Kramer_

Name: Matt Kramer

Title: Partner

# Exhibit A

# STATEMENT OF WORK
### Number – _____

THIS STATEMENT OF WORK, DATED AS OF _____, 201_, IS ENTERED INTO PURSUANT TO AND IN ACCORDANCE WITH THE TERMS OF THE MASTER PROFESSIONAL SERVICES AGREEMENT ("Agreement"), dated as of _____, 201_ (the "Effective Date"), between _____ ("Client"), and KPMG LLP ("KPMG"). This Statement of Work is subject to the terms of the Agreement. Capitalized terms used herein without definition shall have the meaning ascribed to them in the Agreement.

Description of Services/Deliverables and Schedules:

Obligations of Client:

Fees and Payment Schedule; Address for Invoices:

Additional Terms and Conditions:

IN WITNESS WHEREOF, the parties hereto have caused this Statement of Work to be executed by their duly authorized representatives as of the date first written above.

[NAME OF CLIENT]                          KPMG LLP

By:_____        By:_____

Name:_____        Name: [Name of Partner/Principal]

Title:_____        Title: [Partner/Principal]

## Exhibit B

### [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address
Attention:

The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and you are not authorized by KPMG to rely upon it and any such reliance by you or any one else shall be at your or their own risk. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours,

[Name of Client]

By: _____
    Name:
    Title:

**Accepted and Agreed to on this ___ day of ____, 20__ by:***

[Name of Third Party]

By: _____
    Name:
    Title:

*Remove in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 17(a) of the Agreement in which case an acknowledgement is not required by the terms of Paragraph 4(c).

**Exhibit A-3**



# STATEMENT OF WORK

This Statement of Work, dated as of September 8, 2023 (the "Effective Date"), is entered into by and between Express LLC ("Client" or "Client"), and KPMG LLP ("KPMG") pursuant to and in accordance with the terms of the Master Services Agreement ("Agreement"), dated as of April 30, 2014 by and between Client and KPMG, and is subject to the terms of the Agreement. Capitalized terms used herein without definition shall have the meaning ascribed to them in the Agreement.

## Scope of Services

We will provide the tax compliance and tax consulting services listed in Appendix I. In performing these services, the following considerations will apply to this engagement.

## Client Responsibilities

- Client is responsible for providing to KPMG accurate information.

- Client will provide to KPMG consistently formatted data using an agreed upon format. The data will include the previous period's transaction tax information and all supporting documentation necessary for KPMG to complete the specified transaction tax returns.

- Client shall advise KPMG of the jurisdictions with which KPMG shall prepare tax returns on your behalf.

- Client will review the completed returns and schedules and provide written approval of the returns or any requested changes to the returns within two days following receipt of the completed returns from KPMG.

- Client shall provide a correspondence address for all tax returns and receive all correspondence directly from the jurisdictions.

- If requested, Client will review with KPMG and approve on an annual or other periodic basis the data mapping and rules, and reporting methodologies that have been established during the initial client set up, or during any subsequent changes to the client set up. KPMG may request that you approve the mapping and rules for at least two previously filed monthly sets of returns. Alternatively, at your request at any time, KPMG shall review with Client such data mapping and rules, and reporting methodologies. Changes to the established data mapping and rules and/or reporting methodologies that develop as a result of such reviews or that are implemented at the request of Client will be billed under the general consulting rates provided below.

In the course of our engagement, we may determine that further research is required in order to ascertain whether there is adequate support for a given tax determination or position taken on a return. Our fees for such additional research services are not included in our fee for the tax compliance services. We will endeavor to notify you of any such circumstances as they are identified.

We will use the information you submit to prepare tax returns. Although we may request clarifications, we will not audit or independently verify such information. Our engagement cannot be relied on to uncover errors, omissions, or irregularities, should any exist in the underlying information incorporated in the tax return(s). However, we will inform you of any such matters that come to our attention. Because you or your authorized representative has ultimate responsibility for the tax return(s), you or your authorized representative should review the return(s) before you or your authorized representative signs and files the return(s).



Page 2 of 3

All returns are subject to examination by the taxing authorities. In the event of an examination, you may be requested to produce documents, records, or other evidence to substantiate the items of income and deduction shown on the tax return(s). In preparing your return(s), we rely on your representations that you understand and have complied with applicable documentation requirements for your income, expenses, deductions, and credits. If an examination occurs, and if you and we agree to have KPMG assist or represent you in the examination, any such additional services and the fee therefore would be set forth in a separate engagement contract.

Please note that if Client had a taxable presence (e.g., transactions in a jurisdiction in which Client is not currently filing returns) in a jurisdiction not listed in Appendix II, it may be subject to transaction tax in that jurisdiction, depending upon the particular facts. It is Client's obligation to notify KPMG if assistance is needed to determine whether Client is liable for a transaction tax or has a filing requirement in any jurisdictions not listed in Appendix II. KPMG may assist with additional registrations in the various taxing jurisdictions as requested.

KPMG relies on third party service providers to provide the proper rates and taxing logic for each jurisdiction. KPMG will apply these rates and taxing logic to the data provided by Client to facilitate the services set forth herein. KPMG cannot verify the accuracy of these rates or the taxing logic provided by third party service providers and KPMG is not liable for errors resulting from these third party data bases.

**Applicable Standards**

When providing tax services, KPMG applies standards that may be higher than those required by law, regulation, or other professional requirements. KPMG will promptly inform Client if, during this engagement, KPMG concludes that a tax return position cannot meet these higher standards.

**Additional Services**

If matters exceed the scope of this engagement contract, we will either issue (a) a clarifying addendum to confirm the scope and related terms of any additional services to be provided or (b) a separate engagement contract (for more complex projects). To be of greatest assistance to you, we should be advised in advance of proposed transactions to which such services will relate.

**Fees**

Changes to any material facts or above-stated assumptions may give rise to additional fees.

*Tax Compliance Services*

The fee for tax compliance services will be based on the fee schedule in Appendix III.

*Tax Consulting Services*

The fee for services provided by KPMG will be based on the actual time incurred to complete the work at 60 percent of our standard hourly rates for the individuals involved in providing the services. The fee for the services provided by the other KPMG International member firm(s) will be based on the actual time incurred to render their services at 60 percent of their standard hourly rates converted to US dollars.

*Other Fees & Expenses*

We will notify you if we encounter circumstances that warrant additional time or expense likely to change previously provided quotes or estimates. If such matters exceed the scope of this engagement contract, we will issue an addendum or separate engagement contract.

In addition, Client shall pay a technology recovery fee equal to 3 percent of total engagement fees.



Page 3 of 3

We will also bill you an annual technology fee representing KPMG's software related costs that we will be incurring in connection with providing these services. This charge will be added to the first billing, and our initial annual charge is set forth in Appendix III. However, our technology fee is subject to change for subsequent years.

*Payment Schedule*

The fees for tax compliance services will be progress billed quarterly in advance. To the extent that progress billings paid by Client exceed the total fees due in accordance with the fee arrangement, the excess amount will be refunded to Client.

The fee for tax consulting services will be billed as incurred.

**Consents to Disclose and Use Tax Return Information**

To enable the completion of the services under this engagement contract and related activities, the attached **Consents to Disclose and Use Tax Return Information** are hereby agreed to and made part of this letter.

**Other Matters**

* * * * * * *

This engagement contract shall become effective the later of September 1, 2023 or upon both parties signing of this engagement contract. The term of this engagement shall be for 3 years.  In addition, effective as of the date of signing, this engagement contract supersedes any and all previously issued engagement contracts pertaining to the services described above.

Please contact me at +1 312 665 2627 or jfreed@kpmg.com if you have any questions or need clarification of the services KPMG will provide. If you agree with the terms set forth herein, please sign where indicated below (or otherwise provide your digital or facsimile signature) and return the signed copy to my attention at your earliest convenience so that we may begin work on this engagement.

Your digital or facsimile signature (if used) on this engagement contract on behalf of Client shall be deemed to be your legally valid and binding signature of such contract to the same extent as if you had hand-signed it.

**IN WITNESS HEREOF,** the parties hereto have caused this Statement of Work to be executed by their duly authorized representatives as of the Effective Date.

| Express LLC | KPMG LLP |
|---|---|
| *Greg Hollern* | *James Freed* |
| Greg Hollern, VP, Controller | James Freed |
| ~~Michael Gillespie~~ | Principal |
| ~~Tax Director~~ | |

**Appendix I**

**Scope of Services**

*Tax Compliance Services*

Preparation of transaction tax returns and supporting schedules for the entities and jurisdictions identified in Appendix II. The specific returns to be prepared by KPMG are subject to periodic modification upon the prior written agreement of both parties. In these cases, electronic mail will be acceptable to confirm written agreement.

This engagement contract is also intended to apply to preliminary engagement planning activities related to the tax returns specified above for the immediately succeeding tax year.

As requested by Client, KPMG will respond to routine correspondence received from tax authorities associated with the tax returns prepared by KPMG. Routine notices include general questions from the taxing authority with respect to the returns prepared by KPMG, such as providing copies of returns, information on payments or mailing, and filing frequency changes.

In no event will KPMG be responsible for timely preparing tax returns in the event that Client fails to meet all of the responsibilities outlined in this letter.

We will provide additional tax services as needed to assist you in determining the proper tax treatment of certain matters to be reported on the tax returns we have been engaged to prepare under this engagement, including but not limited to: (i) material one-off transactions undertaken by you, (ii) complex tax issues or changes in tax law and/or regulations, (iii) specialized tax elections and accounting method changes, or (iv) significant changes to your organizational or legal structure. When such tax services are identified, we will notify you of the proposed scope and associated estimated fees and seek your approval prior to proceeding. Any such services will be billed to you at applicable tax consulting hourly rates and are not subject to hourly rates applicable to tax compliance services unless otherwise agreed.

*Tax Consulting Services*

We will provide general tax consulting on matters that may arise for which you seek our advice, both written and oral, and that are not the subject of a separate engagement contract. We will apply the elevated standards described in the "Tax Return Standards" section of this letter with respect to any such advice which would cause KPMG to be considered a tax return preparer under Treasury Regulation §301.7701-15.

When, in the course of providing general tax consulting services, it is determined that the service would exceed the scope of general tax consulting, preliminary engagement planning activities undertaken prior to the issuance of a separate engagement contract for the discrete tax consulting project are intended to be covered by this engagement contract.

**Appendix II**

**List of Returns**

| Standard Compliance | Entity | Country | Frequency |
|---|---|---|---|
| GST Return | Express BNBS Fashion LLC | Australia | Quarterly |

**Appendix III**

**Express LLC**
**Fee Schedule for Transaction Tax Compliance Services**

| TRANSACTION TAX COMPLIANCE SERVICE AND EXPENSE FEE SCHEDULE | | |
|---|---|---|
| **Standard Compliance** | **Rate** | **Frequency** |
| Australia GST Return | $1,000 | Per return |
| **Expenses**<br>Technology Fee | $120 | Per year to be billed during first month of each engagement year |

1

**Consents to Disclose and Use Tax Return Information**

In connection with the tax services provided to Client under this engagement, KPMG may be subject to certain federal and state laws that prohibit KPMG from disclosing Client's tax return information to third parties, or KPMG's use of that information for purposes other than the provision of tax services to Client, unless such disclosure or use is otherwise authorized by law or Client consents to such disclosure or use. Likewise, federal law generally precludes KPMG from disclosing Client's tax return information to service providers outside the United States without Client's consent. Accordingly, KPMG requests Client's consent for the disclosures and uses described with more specificity below.

*Consent for Disclosure of Tax Return Information to Third Parties Within and Outside the United States*

To complete the Services, which may include tax return preparation services, as well as preliminary engagement preparation and tax return preparation activities for the immediately succeeding tax year, KPMG may disclose some or all of Client's tax return information from prior tax years, the current tax year and the immediately succeeding tax year to certain third party contractors, other entities or service providers within or outside the United States. The entities that may receive such disclosures include: KPMG Global Services Private Limited ("KGS"), an entity that is located in India and controlled by KPMG and certain other members of the KPMG network; any successor entity to KGS; and certain other members of the KPMG network including but not limited to, KPMG Australia and other third-party subcontractors that may otherwise assist in the completion of the Services.

To complete the Services, KPMG may also disclose some or all of Client's tax return information to certain third-party contractors located within the United States who are under KPMG's oversight and assist in the delivery of the Services.

Client hereby consents to the disclosure of Client's tax return information to the third parties who are located within and outside the United States, as described above.

*Consent to Use and Disclose Client's Tax Return Information Within or Outside the United States to Develop Analytics that May Enhance the Services KPMG Offers to Client and Other Clients and to Develop New Services and Technologies*

Supplementary to the terms of this engagement contract, KPMG requests Client's specific consent to use Client's tax return information for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects and to allow Client and other clients to evaluate various business transactions and opportunities. More particularly, KPMG requests Client's consent to allow KPMG to produce anonymized statistical compilations, to analyze tax return information, to develop benchmarks as well as new services and technology, and to allow KPMG to evaluate KPMG's performance on Client's behalf and on behalf of KPMG's other clients ("Data Analytics Services"). KPMG also requests Client's specific consent to disclose Client's tax return information to members of the KPMG network and other onshore and/or offshore third party service providers such as KGS and the other parties described above to assist KPMG in performing the type of Data Analytics Services described above.

In addition, Client hereby acknowledges that KPMG and such third-party service providers may also prepare reports, studies and presentation decks reflecting statistics and reasoned conclusions regarding tax metrics, economic benchmarks, and tax and general business compliance risks and opportunities (the "Output"); and Client consents to KPMG's disclosure of the Output to other clients since these materials will be intended to help Client and KPMG's other KPMG network clients understand where each of KPMG's clients stands relative to peers, to identify transactions that may be beneficial for Client's businesses, and to suggest areas in which KPMG or other members of the KPMG network might work with Client or our other clients to achieve Client's or such clients' objectives, both with respect to accurate

and compliant tax reporting and tax efficient planning. Any such disclosures of the Output will be anonymous as to taxpayer identity as required by law.

Client hereby consents to: (i) the use by KPMG and the third parties identified herein of any and all tax return information including any such information contained in Client's federal, state and foreign income tax returns set forth in this engagement contract and supporting schedules for the development and provision of the Data Analytics Services; (ii) the disclosure of such information to the members of the KPMG network and other third-party service providers assisting KPMG with the development and delivery of Data Analytics Services; and (iii) the disclosure to KPMG's and other KPMG network members' clients and potential clients of the Output from the Data Analytics Services.

*Representation Regarding Protection of Tax Return Information from Unauthorized Disclosure or Use*

Consistent with the terms of this engagement contract, KPMG represents that with respect to each member of the KPMG network and third party referred to in the consents set forth above, KPMG and the third parties each have technical, legal and/or other safeguards, measures and controls in place to protect Client's tax return information from unauthorized disclosure or use.

*Duration of the Consent*

If Client agrees to the disclosure and use of Client's tax return information for the purposes set forth above and in the terms of this engagement contract, Client's consent is valid for seven (7) years in order for KPMG to complete the Services, including, but not limited to administrative support activities such as data storage, or for such longer periods as required in order for KPMG to assist Client with future tax-related needs and/or to comply with legal, regulatory, and professional standards.

*Right to Refuse to Provide Consent*

Client has the right to decline to provide any or all of the consents requested herein or to request a more limited disclosure of Client's tax return information than that provided in any such consent. However, KPMG reserves the right to decline to provide any tax return preparation services described in this engagement contract to which this consent relates in the absence of consent or if KPMG concludes that the more limited disclosure Client authorizes will interfere with the efficient and effective performance of such tax return preparation services.

**Exhibit A-4**

**STATEMENT OF WORK**

THIS STATEMENT OF WORK, DATED AS OF JANUARY 16, 2024, IS ENTERED INTO PURSUANT TO AND IN ACCORDING WITH THE TERMS OF THE MASTER PROFESSIONAL SERVICES AGREEMENT ("Agreement"), dated as of April 30, 2014 (the "Effective Date"), between EXPRESS LLC ("Client" or "Express"), and KPMG LLP ("KPMG").  This Statement of Work is subject to the terms of the Agreement.  Capitalized terms used herein without definition shall have the meaning ascribed to them in the Agreement.

**Description of Services**

***Purchases Sales/Use Tax Matrix***

- KPMG will work with Client management to identify categories of purchases made for its Bonobos subsidiary in New York.  KPMG will prepare, and present to management for approval, a list of categories and corresponding definition to be included in a taxability matrix;

- KPMG will prepare a New York state level taxability matrix which will list the category, the Client approved definition, KPMG's advice on the taxability of the category, narrative comments relevant to applying the taxability advice, and citations to authorities relied upon by KPMG in rendering its advice.  In addition, the matrix will include assigning a category to each tax relevant general ledger account, as recommended by KPMG and approved by Client;

- The deliverable will be a PDF document containing the matrix as described above.

***Automation of Tax Processes***

KPMG will assist Client with the automation of tax processes, leveraging a software named Alteryx to facilitate the process automation.  Initially, KPMG will analyze the processes presented by Client to detail out the requirements for Client's specific processes. KPMG will then design Alteryx workflows to be used by Client in the processes. Client will review workflows to ensure they encapsulate all requirements set forth in the beginning of the engagement. Additionally, KPMG will assist in the testing of the completed workflows for proper manipulation of Client's reports for its specific processes. Finally, KPMG will aid Client with the necessary knowledge transfer of core practices and processes that are developed during the development of the Alteryx workflows.

The objectives for this project that have been established by Client and considered by KPMG when developing the scope of services, as further described below, include the following:

- Create Alteryx workflows to automate the use tax process for Bonobos.

- Document the processes for future maintenance.

To assist with meeting these objectives and Client's related business and tax requirements, KPMG will work with appropriate Client personnel, including information technology (IT) personnel, tax department personnel, financial organization personnel and relevant business operations personnel (collectively, the "Project Team"). This team approach, consisting of Client's Project Team and KPMG professionals with tax technical skills and experience in automating various indirect tax processes, will help enable Client to implement an automated process for its indirect tax compliance needs.

The automation project will consist of phases that include requirements analysis, design confirmation, testing, training and post-production support. The services and deliverables that will be provided by KPMG under each phase are described below.

*Phase I – Requirements Analysis and Design*

KPMG will perform requirements gathering services in order to fully understand Client's specific indirect tax processes targeted for this automation project. KPMG will then design Alteryx workflows in order to transform the processes into automated functions that will be used on a frequency basis consistent with the previous manual process.

KPMG will meet with representatives from Client's internal Project Team to assist with determining the full requirements of each tax process to be automated.  During this phase, KPMG will determine critical configuration factors such as data flow, reporting entities, jurisdictions involved, products and service involved, and vendor/customer exceptions.

Important milestones in the requirements analysis and design phase will include:

- Meet with Client representatives to understand and document the processes.

- Build a taxability by GL account matrix, as described above in the Purchases Sales and Use Tax Matrix.

- Design Alteryx workflows that encapsulate all requirements for the processes completed by Client's internal Project Team.

- Document the design of the Alteryx flows and how they relate to the current processes.

- Meet with Client Project Team members to obtain user acceptance related to the Alteryx workflows and the outputs for the design.

*Phase II – Build*

KPMG will build the Alteryx workflows based on the requirements gathered in phase I of the project with Client personnel. This build will include organizing the workflow to enable Phase IV documentation.

*Phase III – Testing*

KPMG will assist Client with developing a testing methodology to confirm the validity of the Alteryx workflows, to ensure the outputs are complete in meeting Client's requirements. During the testing, we will complete a parallel test with 2 months prior data and validate the results are accurate per the taxability research conducted above.

Testing will focus on whether the Alteryx workflows and its associated outputs meet Client's business and functionality requirements. However, these tests will not necessarily constitute a full review or validation. Accordingly, it is Client's responsibility to satisfy itself that the Alteryx workflows and their associated outputs have been constructed in such a way as to materially meet their objectives.

KPMG will assist with testing by performing multiple tests of the process flows across several months/periods of the indirect tax processes. KPMG will review the results of testing with Client's tax department to determine if there are any discrepancies from the expected results of the Alteryx workflows. The review will include tax report generation and validation of non-standard transactions. Client will be responsible for confirming that testing is carried out to its satisfaction. Client's approval of the testing results will constitute completion of the testing phase of the project and movement into the production phase.

*Phase IV – User Training and Post-Production Support*

To assist with knowledge transfer to Client, KPMG will develop custom training guides for the use and maintenance of the Alteryx workflows by Client's employees. KPMG will also provide remote training to specific end users in the tax department on all functions within the Alteryx workflows. Specific IT technical

training on matters outside of Alteryx's functionality shall be the responsibility of Client, and Client shall contract directly with Alteryx or a third-party for such training.

KPMG's project resources will be available as needed during the first three process filing cycles using Alteryx workflows to assist Client in finding the source of issues that may occur immediately after production use and in determining the resources required to resolve these issues (e.g., Client, KPMG, Alteryx).

*Alteryx Workflow File Acceptance Procedures*

On completion of the Alteryx Workflow File, Client shall have a period of 30 days following the Alteryx Workflow File being made available to Client (the "Approval Period") to confirm that the Alteryx Workflow File meets the criteria set forth herein. Client shall either provide its written acceptance of the Alteryx Workflow File to KPMG during the Approval Period, or written notice to KPMG specifying in reasonable detail any nonconformity. Any nonconformity reported by Client during the Approval Period will be fixed by KPMG, and Client will have an additional 30 day Approval Period for acceptance. If Client does not report any nonconformity during an Approval Period, the Alteryx Workflow File as made available will be deemed to be accepted by Client.

KPMG provides the Alteryx Workflow File to Client for its internal use only. Client is solely responsible for the completeness and accuracy of input and resulting calculations and for the use of those calculations in any form or format and any judgments and business decisions based on its use of the Alteryx Workflow File. KPMG has no obligation to update the Alteryx Workflow File, regardless of any changes to relevant facts or tax or accounting laws, rules or regulations in the future. Client is responsible for obtaining the right to use any third party products necessary to use the Alteryx Workflow File. Any change in the Alteryx Workflow File made by Client or on its behalf shall relieve KPMG of any liability or responsibility under any circumstance relating to Client's use of the Alteryx Workflow File.

KPMG will provide our services in accordance with the terms and conditions of this SOW. Our services as outlined in this SOW constitute an Advisory Engagement conducted under the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services. Such services are not intended to be an audit, examination, attestation, special report or agreed upon procedures engagement as those services are defined in AICPA literature applicable to such engagements conducted by independent auditors. Accordingly, these services will not result in the issuance of a written communication to third parties by KPMG directly reporting on financial data or internal control or expressing a conclusion or any other form of assurance.

KPMG's services do not include accounting policy review or advice; engagement activities do not constitute acceptance, endorsement or approval of any accounting application or compliance with any accounting standard or requirement.

In rendering the services described in this SOW, we may be addressing areas of Client's activities that are subject to regulatory oversight. The scope of our assistance does not constitute an audit of compliance with any regulation or regulatory requirement nor does it constitute an audit of regulatory matters. Accordingly, we will not express an opinion or conclusion or provide any form of assurance on any regulatory matters related to the areas covered in this engagement. We cannot guarantee that our services would foreclose or limit any potential regulatory action or criticism.

Additionally, Client is responsible for providing and determining the data and/or assumptions (inputs) specific to Client that are required for the above discussed Alteryx Workflow File. KPMG can help Client define the inputs required, and if necessary send Client data and assumption templates to complete and return to us. A responsible person from Client should have overall responsibility for ensuring that the inputs are provided on a timely and consistent basis.

We require Client agreement that the test plans related to the Alteryx Workflow File are sufficient to meet its needs; it is Client' responsibility to satisfy itself that the Alteryx Workflow File and its assumptions have been constructed in such a way as to materially meet Client's objectives. It is important that Client do this

before making use of the outputs of the Alteryx Workflow File in any way. Client will also be responsible for ensuring that all agreed upon testing is carried out to its satisfaction.

The tests conducted on the Alteryx Workflow File may not constitute a full review or validation of the Alteryx Workflow File developed. No computer Alteryx Workflow File testing method can guarantee that all potential errors have been detected. Accordingly we provide no assurance that the Alteryx Workflow File will not contain any errors.

**Project Deliverables**

The project deliverables will be as follows:

> *Phase I – Requirements Analysis and Design*

- Taxability Matrix by GL Account

> *Phase II – Build*

- Alteryx Script

> *Phase III – Testing*

- Alteryx workflow reports demonstrating the results of the workflows for test scenarios.

> *Phase IV – User Training and Post Production Support*

- Customized Alteryx user documentation and training for Client's functional users and identified personnel who will maintain the Alteryx workflows.

**Post Delivery Support**

It is contemplated that KPMG will provide support to Client during the first 90 days following delivery of the Purchases Sales and Use Tax Matrix and Automation of Tax Processes.  Such support may include tax technical review of the taxability output from the process and adjustments to the automation to achieve more accurate tax results.

**Obligations of Client**

It is the responsibility of Client to:

- Designate management level personnel to coordinate with KPMG and make management decisions relative to the automation project, including accepting overall responsibility for overseeing the results of the services performed.

- Acquire and keep current all licenses associated with Alteryx.

- Complete the installation of all components of Alteryx onto Client's computer systems, or engage Alteryx to install the software.

- Assist with defining the set of transactions and reports that will be processed and upon which KPMG will conduct testing.

*Additional Services*

If matters exceed the scope of this statement of work, we will either issue (a) a clarifying addendum to confirm the scope and related terms of any additional services to be provided or (b) a separate statement of work (for more complex projects). To be of greatest assistance to you, we should be advised in advance of proposed transactions to which such services will relate.

**Tax Advice Standards**

When providing tax services, KPMG applies standards that may be higher than those required by law, regulation, or other professional requirements. KPMG will promptly inform Client if, during this engagement, KPMG concludes that a tax return position cannot meet these higher standards.

**Fees**

The fee for this statement of work will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below.

| Professional | Hourly Rate |
|---|---|
| WNT Partner/Director | $850 |
| Partner/Director | $690 |
| WNT Senior Manager | $640 |
| Senior Manager | $580 |
| WNT Manager | $535 |
| Manager | $480 |
| Senior Tax Associate | $355 |
| Tax Associate | $270 |

As a result of our discussions with you, we estimate that our fees for our services in connection with the Purchases Sales and Use Tax Matrix will range from approximately $10,000 to $15,000 (assuming up to 15 categories in the matrix) and that our fees for our services in connection with the Automation of Tax Processes will be $10,000. Post Delivery Support will be billed as incurred but will not exceed $10,000 without Client approval (email acceptable).

*Other Fees & Expenses*

We will endeavor to notify you if we encounter any circumstances that warrant additional time or expense. If such matters exceed the scope of this statement of work, we will issue an addendum or separate statement of work to confirm the scope and related terms of any additional engagements.

Client shall pay a technology fee equal to 3% of total engagement fees.

In addition, we will bill you for our out-of-pocket expenses (e.g., travel, lodging, meals, etc.).

These fees are not dependent on tax or other savings achieved or otherwise based in any way on results obtained.

*Payment Schedule*

We will render progress billings as work is performed.

Express agrees to pay properly submitted invoices upon receipt, no later than forty-five (45) days from the invoice date.

**Additional Terms and Conditions:**

**Consents to Disclose and Use Tax Return Information**

In connection with the tax services provided to Client under this engagement, KPMG may be subject to certain federal and state laws that prohibit KPMG from disclosing Client's tax return information to third parties, or KPMG's use of that information for purposes other than the provision of tax services to Client, unless such disclosure or use is otherwise authorized by law or Client consents to such disclosure or use. Likewise, federal law generally precludes KPMG from disclosing Client's tax return information to service

providers outside the United States without Client's consent. Accordingly, KPMG requests Client's consent for the disclosures and uses described with more specificity below.

*Consent for Disclosure of Tax Return Information to Third Parties Within and Outside the United States*

To complete the Services, which may include tax return preparation services, as well as preliminary engagement preparation and tax return preparation activities for the immediately succeeding tax year, KPMG may disclose some or all of Client's tax return information from prior tax years, the current tax year and the immediately succeeding tax year to certain third party contractors, other entities or service providers within or outside the United States. The entities that may receive such disclosures include: KPMG Global Services Private Limited ("KGS"), an entity that is located in India and controlled by KPMG and certain other members of the KPMG network; any successor entity to KGS; and certain other members of the KPMG network and other third-party subcontractors that may otherwise assist in the completion of the Services.

To complete the Services, KPMG may also disclose some or all of Client's tax return information to certain third-party contractors located within the United States who are under KPMG's oversight and assist in the delivery of the Services.

Client hereby consents to the disclosure of Client's tax return information to the third parties who are located within and outside the United States, as described above.

*Consent to Use and Disclose Client's Tax Return Information Within or Outside the United States to Develop Analytics that May Enhance the Services KPMG Offers to Client and Other Clients and to Develop New Services and Technologies*

Supplementary to the terms of this engagement contract, KPMG requests Client's specific consent to use Client's tax return information for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects and to allow Client and other clients to evaluate various business transactions and opportunities. More particularly, KPMG requests Client's consent to allow KPMG to produce anonymized statistical compilations, to analyze tax return information, to develop benchmarks as well as new services and technology, and to allow KPMG to evaluate KPMG's performance on Client's behalf and on behalf of KPMG's other clients ("Data Analytics Services"). KPMG also requests Client's specific consent to disclose Client's tax return information to members of the KPMG network and other onshore and/or offshore third party service providers such as KGS and the other parties described above to assist KPMG in performing the type of Data Analytics Services described above.

In addition, Client hereby acknowledges that KPMG and such third-party service providers may also prepare reports, studies and presentation decks reflecting statistics and reasoned conclusions regarding tax metrics, economic benchmarks, and tax and general business compliance risks and opportunities (the "Output"); and Client consents to KPMG's disclosure of the Output to other clients since these materials will be intended to help Client and KPMG's other KPMG network clients understand where each of KPMG's clients stands relative to peers, to identify transactions that may be beneficial for Client's businesses, and to suggest areas in which KPMG or other members of the KPMG network might work with Client or our other clients to achieve Client's or such clients' objectives, both with respect to accurate and compliant tax reporting and tax efficient planning. Any such disclosures of the Output will be anonymous as to taxpayer identity as required by law.

Client hereby consents to: (i) the use by KPMG and the third parties identified herein of any and all tax return information including any such information contained in Client's federal, state and foreign income tax returns set forth in this engagement contract and supporting schedules for the development and provision of the Data Analytics Services; (ii) the disclosure of such information to the members of the KPMG network and other third-party service providers assisting KPMG with the development and delivery

of Data Analytics Services; and (iii) the disclosure to KPMG's and other KPMG network members' clients and potential clients of the Output from the Data Analytics Services.

*Representation Regarding Protection of Tax Return Information from Unauthorized Disclosure or Use*

Consistent with the terms of this engagement contract, KPMG represents that with respect to each member of the KPMG network and third party referred to in the consents set forth above, KPMG and the third parties each have technical, legal and/or other safeguards, measures and controls in place to protect Client's tax return information from unauthorized disclosure or use.

*Duration of the Consent*

If Client agrees to the disclosure and use of Client's tax return information for the purposes set forth above and in the terms of this engagement contract, Client's consent is valid for ten (10) years in order for KPMG to complete the Services, including, but not limited to administrative support activities such as data storage, or for such longer periods as required in order for KPMG to assist Client with future tax-related needs and/or to comply with legal, regulatory, and professional standards.

*Right to Refuse to Provide Consent*

Client has the right to decline to provide any or all of the consents requested herein or to request a more limited disclosure of Client's tax return information than that provided in any such consent. However, KPMG reserves the right to decline to provide any tax return preparation services described in this engagement contract to which this consent relates in the absence of consent or if KPMG concludes that the more limited disclosure Client authorizes will interfere with the efficient and effective performance of such tax return preparation services.

**IN WITNESS WHEREOF,** the parties hereto have caused this Statement of Work to be executed by their duly authorized representatives as of the date first written above.

Express LLC                                             KPMG LLP

By: _Greg Hollern_____          By: _____

Name: Gregory Hollern                              Name: Gregory J. Ruud

Title: VP/Controller                                   Title: Managing Director

**Exhibit A-5**

**STATEMENT OF WORK**

**2023 General Consulting**

This Statement of Work, dated as of February 13, 2024 (the "Effective Date"), including any exhibits, attachments, addenda or appendices and/or other terms attached hereto (collectively, the "Statement of Work"), is entered into by and between Express, LLC ("Express") and KPMG LLP ("KPMG") pursuant to and in accordance with the terms of the Master Services Agreement ("Agreement"), dated as of April 30, 2014, by and between Express and KPMG. Capitalized terms used herein without definition shall have the meaning ascribed to them in the Agreement.

**Scope of Services**

*General Tax Consulting Services*

KPMG will provide routine general tax consulting on matters that may arise for which Express seeks advice, written and oral, and that are not the subject of a separate Statement of Work.

The Services will not include addressing the impact of the Corporate Alternative Minimum Tax.

When, in the course of providing general tax consulting services, it is determined that the service would exceed the scope of general tax consulting, preliminary engagement planning activities undertaken prior to the issuance of a separate engagement contract for the discrete tax consulting project are intended to be covered by this engagement contract.

*Term of the Statement of Work*

The term hereof shall begin on the Effective Date and, unless terminated as contemplated herein, shall continue for 15 months from the Effective Date.

**Fees**

*General Tax Consulting Services*

The fee for services will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below.

| Professional | Hourly Rate |
|---|---|
| WNT Partner/Director | $825 |
| Partner | $685 |
| WNT Senior Manager | $630 |
| Senior Manager | $575 |
| WNT Manager | $525 |
| Manager | $475 |
| Senior Tax Associate | $350 |
| Tax Associate | $255 |

*Other Fees & Expenses*

These fees and expenses are in addition to the fees for the Services.

Express shall pay a technology fee equal to 3% of total engagement fees.

Solely with respect to this engagement, KPMG agrees to waive the technology fee due for general consulting services.

In addition, KPMG will bill Express for out-of-pocket expenses (e.g., travel, lodging, meals, etc.).



**Payment Schedule**

We will render progress billings as work is performed.

Express agrees to pay properly submitted invoices upon receipt, no later than forty-five (45) days from the invoice date.

Any invoice postmarked on or before September 1st shall be paid prior to September 28th of that same calendar year.

Other Matters

*Applicable Standards*

When providing tax services, KPMG applies standards that may be higher than those required by law, regulation, or other professional requirements. KPMG will promptly inform Express if, during this engagement, KPMG concludes that a tax return position cannot meet these higher standards.

*Consents to Disclose and Use Tax Return Information*

In connection with the Services, KPMG may be subject to certain federal and state laws that prohibit KPMG from disclosing Express's tax return information to third parties, or KPMG's use of that information for purposes other than the provision of tax services to Express, unless such disclosure or use is otherwise authorized by law or Express consents to such disclosure or use. Likewise, federal law generally precludes KPMG from disclosing Express's tax return information to service providers outside the United States without Express's consent. Accordingly, KPMG requests Client's consent for the disclosures and uses described with more specificity below.

**Consent for Disclosure of Tax Return Information to Third Parties Within and Outside the United States**

To complete the Services, which may include tax return preparation services, as well as preliminary engagement preparation and tax return preparation activities for the immediately succeeding tax year, KPMG may disclose some or all of Express's tax return information from prior tax years, the current tax year and the immediately succeeding tax year to certain third-party contractors, other entities or service providers within or outside the United States. The entities that may receive such disclosures include: KPMG Global Services Private Limited ("KGS"), an entity that is located in India and controlled by KPMG and certain other members of the KPMG network; any successor entity to KGS; and certain other members of the KPMG network and other third-party subcontractors that may otherwise assist in the completion of the Services.

To complete the Services, KPMG may also disclose some or all of Express's tax return information to certain third-party contractors located within the United States who are under KPMG's oversight and assist in the delivery of the Services.

Express hereby consents to the disclosure of Express's tax return information to the third parties who are located within and outside the United States, as described above.

**Consent to Use and Disclose Express's Tax Return Information Within or Outside the United States to Develop Analytics that May Enhance the Services KPMG Offers to Express and other clients and to Develop New Services and Technologies**

Supplementary to the terms of the Statement of Work, KPMG requests Express's specific consent to use Express's tax return information for other purposes, such as improving the delivery or quality of services or technology to Express and other clients, thought leadership projects and to allow Express and other clients to evaluate various business transactions and opportunities. More particularly, KPMG requests Express's consent to allow KPMG to produce anonymized statistical compilations, to analyze tax return



information, to develop benchmarks as well as new services and technology, and to allow KPMG to evaluate KPMG's performance on Express's behalf and on behalf of KPMG's other clients ("Data Analytics Services"). KPMG also requests Express's specific consent to disclose Express's tax return information to members of the KPMG network and other onshore and/or offshore third party service providers such as KGS and the other parties described above to assist KPMG in performing the type of Data Analytics Services described above.

In addition, Express hereby acknowledges that KPMG and such third-party service providers may also prepare reports, studies and presentation decks reflecting statistics and reasoned conclusions regarding tax metrics, economic benchmarks, and tax and general business compliance risks and opportunities (the "Output"); and Express consents to KPMG's disclosure of the Output to other clients since these materials will be intended to help Express and KPMG's other KPMG network clients understand where each of KPMG's clients stands relative to peers, to identify transactions that may be beneficial for Express's businesses, and to suggest areas in which KPMG or other members of the KPMG network might work with Express or our other clients to achieve Express's or such clients' objectives, both with respect to accurate and compliant tax reporting and tax efficient planning. Any such disclosures of the Output will be anonymous as to taxpayer identity as required by law.

Express hereby consents to: (i) the use by KPMG and the third parties identified herein of any and all tax return information including any such information contained in Express's federal, state and foreign income tax returns set forth in this engagement contract and supporting schedules for the development and provision of the Data Analytics Services; (ii) the disclosure of such information to the members of the KPMG network and other third-party service providers assisting KPMG with the development and delivery of Data Analytics Services; and (iii) the disclosure to KPMG's and other KPMG network members' clients and potential clients of the Output from the Data Analytics Services.

**Representation Regarding Protection of Tax Return Information from Unauthorized Disclosure or Use**

Consistent with the terms of the Statement of Work, KPMG represents that with respect to each member of the KPMG network and third party referred to in the consents set forth above, KPMG and the third parties each have technical, legal and/or other safeguards, measures and controls in place to protect Express's tax return information from unauthorized disclosure or use.

**Duration of the Consent**

If Express agrees to the disclosure and use of Express's tax return information for the purposes set forth above and in the terms of the Statement of Work, Express's consent is valid for ten (10) years in order for KPMG to complete the Services, including, but not limited to administrative support activities such as data storage, or for such longer periods as required in order for KPMG to assist Express with future tax-related needs and/or to comply with legal, regulatory, and professional standards.

**Right to Refuse to Provide Consent**

Express has the right to decline to provide any or all of the consents requested herein or to request a more limited disclosure of Express's tax return information than that provided in any such consent. However, KPMG reserves the right to decline to provide any tax return preparation services described in the Statement of Work to which this consent relates in the absence of consent or if KPMG concludes that the more limited disclosure Express authorizes will interfere with the efficient and effective performance of such tax return preparation services.

* * * * * * *



**IN WITNESS HEREOF,** the parties hereto have caused this Statement of Work to be executed by their duly authorized representatives as of the Effective Date.

**Express, LLC**

*Greg Hollern*

Greg Hollern

~~Michael A. Gillespie~~

~~Tax Direct~~or   VP / Controller

Mar 18, 2024

Date

**KPMG LLP**

B. C. Jull

Brian Campbell
Partner

_____

Date

Page **4** of **4**

**Exhibit A-6**

**STATEMENT OF WORK**
**2021 General Consulting**

THIS STATEMENT OF WORK, DATED AS OF NOVEMBER 2, 2021, IS ENTERED INTO PURSUANT TO AND IN ACCORDANCE WITH THE TERMS OF THE MASTER PROFESSIONAL SERVICES AGREEMENT ("Agreement"), dated as of APRIL 30, 2014 (the "Effective Date"), between EXPRESS LLC ("Client" or "Express"), and KPMG LLP ("KPMG"). This Statement of Work is subject to the terms of the Agreement. Capitalized terms used herein without definition shall have the meaning ascribed to them in the Agreement.

## Description of Services

### Tax Examination Assistance Services

KPMG will assist Express in the upcoming IRS income tax examination(s) of Express, Inc.'s Form 1120 for the taxable years ended January 31, 2015, January 30, 2016, January 28, 2017, February 3, 2018, February 2, 2019, February 1, 2020 and January 30, 2021 (collectively "FY2015-2021") on an *ad hoc* basis as requested by Express. As part of this representation assistance, KPMG will work to resolve the examination in the most efficient and timely manner possible and will work with Express and Express, Inc. to develop an appropriate approach for best handling the examination. KPMG will assist Express and Express, Inc. in their dealings with the IRS examination team and will meet with team members as appropriate and necessary. KPMG will assist Express and Express, Inc., at their request, in preparing submissions in response to IRS inquiries. If the case is not resolved at the examination level, KPMG, at Express and and Express, Inc.'s request, will assist Express and Express, Inc. in their dealings with IRS Appeals (or an equivalent reviewing body), or participate in an alternative dispute resolution program.

### Additional Services

If matters exceed the scope of this statement of work, we will either issue (a) a clarifying addendum to confirm the scope and related terms of any additional services to be provided or (b) a separate statement of work (for more complex projects). To be of greatest assistance to you, we should be advised in advance of proposed transactions to which such services will relate.

## Tax Advice Standards

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. These standards are dependent on certain characteristics of the entity to which our services will be directed.

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more): We must be able to determine that (1) there is "substantial authority" for an undisclosed return position and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits. The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For positions pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, the return positions must be at least "more likely than not" to be sustained on the merits; if the taxpayer is advised regarding potential taxpayer penalties, there must be "substantial authority" for our advice.

2. For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity): The return position must be at least "more likely than not" to be sustained on the merits.

3. If a return position relates to a transaction that is a "principal purpose transaction," we must arrive at a "should" confidence level with respect to the position.

4. We will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during this engagement, we determine circumstances exist that prevent us from providing you services under these standards.

**Fees**

*Tax Consulting Services*

The fee for this statement of work will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below.

| Professional | Hourly Rate |
|---|---|
| WNT Partner/Director | $785 |
| Partner/Director | $650 |
| WNT Senior Manager | $600 |
| Senior Manager | $550 |
| WNT Manager | $500 |
| Manager | $450 |
| Senior Tax Associate | $335 |
| Tax Associate | $255 |

*Other Fees & Expenses*

We will endeavor to notify you if we encounter any circumstances that warrant additional time or expense. If such matters exceed the scope of this statement of work, we will issue an addendum or separate statement of work to confirm the scope and related terms of any additional engagements.

In addition, we will bill you for our out-of-pocket expenses (e.g., travel, lodging, meals, etc.).  Any expenses to be billed will be pre-approved by Express.

**Payment Schedule**

We will render progress billings as work is performed.

Express agrees to pay properly submitted invoices upon receipt, no later than forty-five (45) days from the invoice date.

Any invoice postmarked on or before September 1st shall be paid prior to September 28th of that same calendar year.

**Consents to Disclose and Use Tax Return Information**

To enable the completion of the services under this statement of work and related activities, the attached Consents to Disclose and Use Tax Return Information is hereby agreed to and made part of this letter.

**Potential Mandatory Disclosure Reporting**

A growing number of countries are enacting Mandatory Disclosure Regimes (MDRs), which require advisors, like KPMG and non-U.S. firms within the KPMG network of independent member firms ("Member Firms"), to disclose qualifying arrangements to the relevant local taxing authorities. Non-compliance with MDRs may result in significant penalties.

Accordingly, Express hereby acknowledges that KPMG, Member Firms and/or Express may be required to disclose qualifying arrangements to the relevant taxing authorities. KPMG will use good faith efforts to inform

Express if KPMG is required to provide, or KPMG becomes aware that a Member Firm is required to provide, Express 's information to relevant taxing authorities with respect to a qualifying arrangement covered by this statement of work.  Furthermore, when feasible, KPMG will consider reasonable input from Express in connection with a KPMG disclosure. Express will use good faith efforts to inform KPMG if Express is required to disclose a qualifying arrangement to relevant taxing authorities with respect to a qualifying arrangement covered by this statement of work.

**Additional Terms and Conditions:**

None

IN WITNESS WHEREOF, the parties hereto have caused this Statement of Work to be executed by their duly authorized representatives as of the date first written above.


EXPRESS, LLC                                               KPMG LLP

By: *Gregory Hollern*                          By: _____
Gregory Hollern (Nov 15, 2021 11:15 EST)

Name: Gregory Hollern                          Name: Brian Campbell

Title: VP/Controller                           Title:  Partner

**Consents to Disclose and Use Tax Return Information**

Federal law prohibits our disclosing your tax return information to third parties, or our use of that information for purposes other than the preparation of your tax returns, unless such disclosure or use is otherwise authorized by law or you consent to such disclosure or use.  Likewise, federal law precludes our disclosing your tax return information to service providers outside the United States without your consent.  We request your consent for the disclosures and uses described with specificity below.

*Request for Consent for Disclosure of Tax Return Information outside the United States*

To complete the preparation of your tax returns in accordance with this statement of work, as well as to obtain certain tax return preparation and auxiliary services necessary to allow KPMG to perform the services described in this statement of work, we may disclose some or all of your tax return information to certain other entities or service providers outside the United States. Auxiliary services include, but are not limited to, clerical and administrative services such as billing, time sheet processing, and data storage. The entities that may receive such disclosures include KPMG Global Services Private Limited (KGS), an entity that is located in India and controlled by KPMG LLP (the United States member firm of KPMG International), or any successor entity to KGS, certain other KPMG International Member Firms, and third party subcontractors that provide similar auxiliary services, or that may otherwise assist in the completion of the services set forth in the statement of work.

To complete any tax return preparation or review services set forth in this statement of work, we may disclose some or all of your tax return information to third-party contractors located within the United States.

KPMG represents that with respect to each Member Firm, KPMG has technical, legal and/or other safeguards, measures and controls in place to protect your return information from unauthorized disclosure or use.  KPMG also represents that it will not disclose your return information to any third party service provider of the types described above unless such entity has technical, legal and/or other safeguards, measures and controls in place to protect your return information from unauthorized disclosure or use.

You hereby consent to the disclosure of your tax return information to tax return preparers located within and outside the United States, as described above.

*Duration of the Consent*

If you agree to the use of your tax return information for the purposes set forth above, your consent is valid for seven (7) years in order for KPMG to complete all services set forth herein, including, but not limited to, data storage, or for such longer periods as required in order for KPMG to assist you with future tax-related needs or to comply with legal, regulatory, and professional standards.

*Right to Refuse to Provide Consent*

You have the right to decline to provide any or all of the consents requested herein or to request a more limited disclosure of your return information than that provided in any such consent.  However, we reserve the right to decline to provide the tax return preparation services described in this statement of work in the absence of consent or if we conclude that the more limited disclosure you authorize will interfere with the efficient and effective performance of such tax return preparation services.

**Exhibit A-7**



**ADDENDUM**

This Addendum dated as of May 15, 2024, (the "Addendum Effective Date") is entered into pursuant to and in accordance with the terms of the Statement of Work dated as of November 2, 2021 ("SOW") between Express LLC ("Client"), and KPMG LLP ("KPMG"), and the Master Services Agreement, as amended, ("Agreement") dated as of April 30, 2014, by and between Express LLC and KPMG, and shall become a part of the SOW between the parties. Should a conflict arise between the terms of this Addendum and the terms of the SOW, this Addendum shall control. Capitalized terms used herein without definition shall have the meaning ascribed to them in the SOW or Agreement.

This addendum has been prepared to confirm that Client would like KPMG to continue to deliver the following services.

*Tax Examination Assistance Services*

KPMG will assist Express in the final resolution of the IRS income tax examination(s) of Express, Inc.'s Form 1120 for the taxable years ended January 31, 2015, January 30, 2016, January 28, 2017, February 3, 2018, February 2, 2019, February 1, 2020 and January 30, 2021 (collectively "FY2015-2021") on an *ad hoc* basis as requested by Express. As part of this representation assistance, KPMG will work to resolve the examination in the most efficient and timely manner possible and will work with Express and Express, Inc. to develop an appropriate approach for best handling the examination. KPMG will assist Express and Express, Inc. in their dealings with the IRS examination team and will meet with team members as appropriate and necessary. KPMG will assist Express and Express, Inc., at their request, in preparing submissions in response to IRS inquiries. If the case is not resolved at the examination level, KPMG, at Express and Express, Inc.'s request, will assist Express and Express, Inc. in their dealings with IRS Appeals (or an equivalent reviewing body), or participate in an alternative dispute resolution program.

*Other IRS Assistance Services*

KPMG will assist Express in the resolution of IRS routine  account management issues and penalty correspondence on an *ad hoc* basis as requested by Express. This service was previously included as part of the examination referenced above as part of the IRS's "Customer Service (One Stop Shop Concept)"[1] -.

**Fees**

Our fees under this addendum will be billed based on our standard billing rates discounted by 40%.

**Other Matters**

 KPMG understands that the Bankruptcy Court must approve its engagement and its fees in order to be compensated.  In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. The Client acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differ from KPMG's normal engagement and billing procedures and, as a result, will require significant effort by

---

[1] See *e.g.* Internal Revenue Manual section 4.46.3.1 (01-19-2022) Exhibit 4.46.3-3



Page 2 of 2

KPMG to comply therewith.  The Client agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

* * * * * * *

Except as expressly amended hereby, the Statement of Work shall remain in full force and effect in accordance with all of the terms and conditions set forth therein.

**IN WITNESS HEREOF,** the parties hereto have caused this Addendum to be executed by their duly authorized representatives as of the Addendum Effective Date.

**Express LLC**                                          **KPMG LLP**

*Gregory Hollern*
—76F6E60AF7FF420...
Gregory Hollern                                          Brian Campbell
VP/Controller                                            Partner

5/29/2024                                                05/15/2024
_____                                     _____
Date                                                     Date