**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | ) ) | Case No. 24-10831 (KBO) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**DECLARATION OF KUNAL S. KAMLANI
IN SUPPORT OF OMNIBUS REPLY OF DEBTORS
(I) IN SUPPORT OF FIRST DAY MOTIONS AND (II) IN
OPPOSITION TO (A) MOTION OF MR. KURZON FOR APPOINTMENT
OF A SHAREHOLDERS' COMMITTEE AND (B) GRANTING RELATED RELIEF**

I, Kunal S. Kamlani, make this First Supplemental Declaration pursuant to 28 U.S.C. § 1746:

1. I am a Senior Managing Director at M3 Advisory Partners LP ("M3"), the proposed financial advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. A description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 20], and a description of the facts and circumstances of the Debtors' need for postpetition financing is set forth in my previous *Declaration of Kunal S. Kamlani In Support Of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

*Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 42] (the "Previous Declaration").

3. The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge, (b) information regarding the Debtors' operations and finances that I obtained from the Debtors' advisors or employees, (c) the Debtors' books, records, and relevant documents, (d) information provided to me by employees of M3 working under my supervision, and/or (e) my opinions, experience, and knowledge as a restructuring professional. I have overseen the M3 team serving as one of the principal advisors to the Debtors since November 2023. In that capacity, I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and postpetition financing efforts. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## The Debtors are Hopelessly Insolvent

4. I understand that claims in bankruptcy must be paid according to the absolute priority rule. I further understand that, in order to comply with the absolute priority rule, claims senior in priority must recover in full before claims lower in priority can receive any recovery. Additionally, the absolute priority rule generally requires that all claims of any priority must be repaid in full before any remaining value may be distributed on account of equity.

5. The Debtors estimate that, to repay the claims against the Debtors' estates in full, any transaction (either going concern or liquidating) would need to clear in excess of at least $419 million, because any subsequent bid will need to clear the full amount of the bid contemplated by the Stalking Horse APA (approximately $198 million, which provides for repayment of all of the Debtors' prepetition secured debt and obtains certain concessions from other creditors in excess

of the cash consideration provided) plus pay all other remaining amounts in the total claims pool (which totals approximately $221 million)[2] in full. However, the $419 million represents a discounted price because it contemplates any transaction counterparty stepping into the shoes of the JV Purchaser as-is. The Stalking Horse APA contemplates significant concessions made by contract counterparties (which includes forgiveness of certain cure costs) and spares the estate substantial rejection damages claims. Further, any other purchaser would have to settle all contingent and unliquidated liabilities at $0, in addition to providing additional consideration as the JV Purchaser is doing through the Stalking Horse APA in order to keep the threshold for equity recovery at $419 million. In all likelihood, the threshold will be materially higher.

6. The Debtors continue to accrue postpetition rent, vendor claims, and chapter 11 operating expenses, including professional fees. As mentioned, the claims amounts stated herein are exclusive of the contingent and unliquidated prepetition claims against the Debtors, and also do not include any rejection damages claims that would arise from a rejected lease of non-residential real property or executory contracts that the JV Purchaser is assuming. I understand that all of those claims would likewise need to be satisfied in full before equity may receive any recovery.

7. Moreover, the Debtors' best chance at maximizing the value of their estates is through the marketing process currently under way. While the Debtors are seeking approval of postpetition financing on a final basis, such financing will provide the Debtors only with sufficient liquidity to operate and meet obligations in the near term to allow for a successful, expedited sale and auction process. The Debtors need for incremental liquidity and to effectuate a going concern

---

[2] The approximately $221 million claims pool consists of remaining prepetition trade claims, rent and landlord related claims, and other operational claims.

transaction is urgent. Even with approved postpetition financing, the Debtors can only operate through a near-term sale transaction. Otherwise, the Debtors will be forced to liquidate.

## **Conclusion**

8. Given the substantial quantum of claims facing the Debtors when weighed against the aggregate consideration provided for in the bids the Debtors have received to date, it is extraordinarily unlikely that any value will remain for distributions on account of equity.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 3, 2024

/s/ *Kunal S. Kamlani*
Kunal S. Kamlani
Senior Managing Director
M3 Advisory Partners LP