IIN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | ) ) | Case No. 24-10831 (KBO) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF MARK STILL
IN SUPPORT OF THE DEBTORS'
MOTION FOR ENTRY OF AN ORDER
(I) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS, (II) SCHEDULING
CERTAIN DATES AND DEADLINES WITH RESPECT
THERETO, (III) APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT
OF ASSUMED CONTRACTS AND LEASES, (V) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI)
AUTHORIZING THE SALE OF ASSETS; AND (VII) GRANTING RELATED RELIEF**

I, Mark Still, hereby declare under penalty of perjury:

1.     I am the Senior Vice President and Chief Financial Officer at Express, Inc. I have provided financial and managerial services for the Debtors since I joined their team in June 2005. I was promoted to Vice President of Finance in January 2016. I have served as the Chief Financial Officer since April 21, 2024. I have more than 18 years of experience in providing financial modeling services in the retail industry with the Debtors. I graduated from the Ross School of Business at University of Michigan in 2005 with a Master of Business Administration degree in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

finance.  I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, and (VI) Authorizing the Sale of Assets* (the "Motion"), in particular as it relates to the Debtors' exercise of their reasonable business judgment in executing the Stalking Horse APA.

3. The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge, (b) information regarding the Debtors' operations and finances that I obtained from the Debtors' advisors or employees, (c) the Debtors' books, records, and relevant documents, and/or (d) my opinions, experience, and knowledge as the Debtors' Senior Vice President and Chief Financial Officer.  In that capacity, I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and postpetition operations.  I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.

### There is a Sound Business Purpose for Granting the Bid Protections

4. The Debtors evaluated the Stalking Horse APA in the context of these Chapter 11 Cases and determined to execute the agreement, subject to court approval, in accordance with the timeline prescribed by the proposed Bidding Procedures and as required under the DIP Facility.  I believe the Stalking Horse APA is the highest and best bid available to the Debtors at the time of signing and at the time of filing this Declaration.  Moreover, preservation of a going concern for

the Debtors is of paramount importance given the thousands of jobs that will be saved and the value that will be realized by counterparties long after these chapter 11 cases are closed as a result of the Debtors' go-forward relationships with vendors, landlords, employees, and other stakeholders.

5. Given the case timelines and the Debtors' financial position, a transaction of some kind must be effectuated in the near immediate term. There is no value-maximizing "wait and see" approach available to the Debtors. When faced with the prospect of a liquidation or a path to a going concern transaction, the Debtors elected to pursue the going concern while dual tracking both processes to ensure precious resources would not be wasted and to ensure that value is maximized. The Stalking Horse APA provides that path and ensures that the Debtors do not have to immediately pivot to an enterprise-wide liquidation.

6. The Stalking Horse APA was conditioned upon the granting of Bid Protections. The Debtors were agreeable to the Bid Protections contained in the Stalking Horse APA following arm's-length negotiations as to the amounts at issue, particularly given the alternative was and is to commence an orderly liquidation that shutters hundreds of stores in malls across the country and would leave thousands of employees without work, destroying value.

7. The Debtors thoughtfully considered entry into the Stalking Horse APA and granting the bidding protections contained therein and, in close consultation with their advisors, determined in a sound exercise of their business judgment it was the correct step to take in these Chapter 11 Cases given the imminent risk to the going concern option that would accompany even slight delay.

8. Further, I have been personally involved in the Marketing Process, spending countless hours with the JV Purchaser, advisors, and potential go-forward vendors, landlords, and

other key contract counterparties to ensure that the JV Purchaser is in position to stand up the company's business operations and hit the ground running. This process has been critical because it has also helped identify and address certain existing claims that these parties have against the Debtors in these chapter 11 cases, which will be satisfied under the Stalking Horse APA. This exercise has been fruitful and is a key step to analyze and examine any competing Qualified Bids that the Debtors receive in advance of the Bid Deadline with the underlying support done.

9. Based on my and my team's involvement in the Marketing Process and the negotiations surrounding the Stalking Horse APA with the JV Purchaser, I am confident that the facts support the Debtors' decision to provide Bid Protections pursuant to the Stalking Horse APA. Those protections were necessary to consummate the deal, and the deal is in the best interests of the Debtors and their stakeholders.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 4, 2024

/s/ Mark Still
Mark Still
Senior Vice President and Chief Financial Officer
Express, Inc.