# EXHIBIT A

## Revised Proposed Order

10995521.v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 263** |

**ORDER AUTHORIZING AND
APPROVING THE EMPLOYMENT AND RETENTION
OF MOELIS & COMPANY LLC AS INVESTMENT BANKER,
FINANCIAL ADVISOR, AND PLACEMENT AGENT FOR THE
DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE
APRIL 22, 2024, AND MODIFYING CERTAIN TIMEKEEPING REQUIREMENTS**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases for the entry of an order (the "Order"): (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Debtors' investment banker, financial advisor and placement agent effective as of the Petition Date pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); (b) approving the provisions of the engagement letter between Moelis and the Debtors, dated as of March 11, 2024 (the "Engagement Letter"), attached hereto as Exhibit 1, including the compensation arrangements and indemnification, contribution and reimbursement provisions set forth therein; (c) modifying

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Application.

certain timekeeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-2, and the guidelines of the United States Trustee for the District of Delaware (the "Trustee Guidelines"), and any other applicable procedures and orders of the Court in connection with Moelis' engagement; and (d) granting such other relief as is just and proper; and this Court finding that it has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application being adequate and appropriate under the particular circumstances; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and upon consideration of the Application, the Keil Declaration and the First Day Declaration; and upon the record of all proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Application and the Keil Declaration establish just cause for the relief granted herein; and the Court being satisfied, based on the representations made in the Application and the Keil Declaration, that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      Pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Debtors, as debtors in possession, are authorized to

employ and retain Moelis as their investment banker, financial advisor, and placement agent, effective as of the Petition Date, on the terms set forth in the Engagement Letter (and all attachments thereto).

3.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, the Debtors are authorized to employ and retain Moelis as their exclusive investment banker, financial advisor and placement agent in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

4.      Moelis shall be compensated for fees and reimbursed for out-of-pocket expenses by the Debtors in accordance with the terms of the Application and/or Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee and the Restructuring Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

5.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of out-of-pocket expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of the Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee and the

Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee pursuant to section 330 of the Bankruptcy Code; and *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.    Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of the Court are hereby modified such that Moelis restructuring professionals shall be required only to keep summary time records in half-hour (0.5) increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.    In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and these invoices and time records shall be subject to the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those

expended in representing Moelis in retention and fee application matters. For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorney's fees and/or expenses set forth in Annex A to the Engagement Letter with respect to indemnification. Notwithstanding anything contained or set forth in the Application or the Engagement Letter, Moelis shall not seek reimbursement of any fees or costs incurred defending any of Moelis' fee applications in these cases.

8.     The indemnification, exculpation, contribution, and reimbursement provisions included in Annex A to the Engagement Letter are approved, subject during the pendency of these cases to the following modifications:

a.    No Moelis Person (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than services set forth in the Engagement Letter, unless such additional services and the indemnification, contribution or reimbursement are approved by this Court;

b.    The Debtors shall have no obligation to indemnify any Moelis Person, or provide contribution or reimbursement to any Moelis Person, for any claim or expense to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Moelis Person's gross negligence, willful misconduct or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of Moelis' contractual obligations, unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003) ; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof, to be a claim or expense for which the Moelis Person should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order; and

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 cases, a Moelis Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement

Letter (as modified by this Order), including without limitation, the advancement of defense costs, the Moelis Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Moelis Person before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by any Moelis Person for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, any Moelis Person. All parties in interest shall retain the right to object to any demand for indemnification, contribution and/or reimbursement.

9.      Any limitation on amounts to be contributed by the parties to the Engagement Letter shall be eliminated.  The Moelis Persons shall retain any rights they may have to contribution at common law.

10.      Notwithstanding anything in the Application or the Engagement Letter to the contrary, Moelis shall, (i) to the extent that Moelis uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, pass through the cost of such Contractors to the Debtors at the same rate that Moelis pays the Contractors; and (ii) seek reimbursement for actual costs only.  The Debtors shall ensure that any such Contractors are subject to the same conflict checks as required for Moelis and that they shall file with this Court such disclosures as required by Bankruptcy Rule 2014.

11.      Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

12.      Moelis shall not unilaterally terminate its engagement under the Engagement Letter absent prior approval of the Court.

13.      Notwithstanding anything to the contrary in the Application or the Engagement Letter, during the course of these chapter 11 cases, Moelis shall have the fiduciary duties (if any) imposed upon it by applicable law.

14. Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

15. The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order in accordance with the Application.

16. Notice of the Application as provided is deemed to be good and sufficient notice of such Application and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

17. To the extent that there may be any inconsistency between the terms of the Application, the Keil Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

18. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## EXHIBIT 1

**Engagement Letter**

March 11, 2024

CONFIDENTIAL

Express, Inc.
1 Express Drive
Columbus, OH, 43230

Attention: Stewart Glendinning, Chief Executive Officer

Dear Mr. Glendinning:

This letter agreement (the "Agreement") confirms that, since March 11, 2024, Express, Inc. and each of its direct and indirect subsidiaries (collectively, the "Company") has engaged Moelis & Company LLC ("Moelis") to act as the Company's (i) exclusive financial advisor and investment banker in connection with a Restructuring (as defined below), (ii) exclusive financial advisor in connection with a Sale Transaction (as defined below) and (iii) exclusive placement agent in connection with a Capital Transaction (as defined below).

For purposes of this Agreement:

"Restructuring" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the  liabilities of the Company (or its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "Plan") confirmed in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments.

"Sale Transaction" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company or any of its subsidiaries to one or more Counterparties (as defined below) (including creditors), (b) the merger or combination of the Company or any of its subsidiaries with a Counterparty or (c) a Counterparty's acquisition of all or a significant portion of the assets, properties or business of the Company or any of its subsidiaries, including any credit bids or (d) a Counterparty's acquisition of any business unit, division or specified discrete assets that Moelis may be asked to sell.

"Capital Transaction" means a transaction in which the Company (or any of its subsidiaries or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

A Capital Transaction may be undertaken by the Company or any such entity to be formed to carry out a Capital Transaction on behalf of the Company (including, without any limitation, any existing or newly formed general partner, manager, joint venture, partnership, subsidiary or affiliate).  The Company shall cause any entity used to effectuate a Capital Transaction (a "Transaction Co") to execute a joinder to this Agreement in a form reasonably acceptable to Moelis within 5 business days of identifying such entity as a Transaction Co.  All references in this Agreement to the "Company" shall include each Transaction Co who executes such a joinder. The obligations under this Agreement of the entities comprising the Company shall be several and joint.

- 1 -

A "Transaction" means a Restructuring, a Sale Transaction and/or a Capital Transaction, as the context may require.

1.     Services

As part of its engagement, Moelis will, if appropriate and requested by the Company:

(a)     assist the Company in conducting a business and financial analysis of the Company;

(b)     assist the Company in identifying and evaluating potential counterparties for a Sale Transaction (each, a "Counterparty");

(c)     assist the Company in identifying and contacting prospective purchasers of the Capital Transaction (each, a "Purchaser");

(d)     assist the Company in preparing a marketing plan and information materials describing the Company (each, an "Information Presentation"), which Moelis may distribute to potential Counterparties and/or Purchasers on a confidential basis;

(e)     assist the Company in contacting potential Counterparties, arranging meetings with such Counterparties and coordinating the due diligence investigation of the Company by such Counterparties, in each case as appropriate and acceptable to the Company;

(f)     assist the Company in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

(g)     assist the Company in structuring and negotiating any Restructuring, Sale Transaction or Capital Transaction;

(h)     advise the Company as to the strategy and tactics of negotiations with such prospective Purchasers and participate in such negotiations;

(i)     advise the Company as to the timing, structure and pricing of the Capital Transaction;

(j)     meet with the Company's Board of Directors to discuss the proposed Transaction(s) and their financial implications; and

(k)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and the Company may mutually agree upon in writing.

This Agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis.  Moelis' obligations under this Agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.     Compensation; Expenses

As compensation for Moelis' services hereunder, the Company agrees to pay Moelis the following nonrefundable cash fees:

(a)     A monthly fee of $150,000 (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this Agreement, and all subsequent Monthly

Fees prior to each monthly anniversary of the date of this Agreement. Whether or not a Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this Agreement. After three Monthly Fees have been earned and paid, 50% of the following Monthly Fees thereafter shall be offset, to the extent previously paid, against any Transaction Fees (as defined below).

(b)     A transaction fee (the "Restructuring Fee") of $3,250,000, payable promptly at the closing of a Restructuring.

(c)     A transaction fee (the "Sale Transaction Fee"), payable promptly at the initial closing of a Sale Transaction, equal to 2.0% of Transaction Value (as defined below).

"Transaction Value" means the fully diluted enterprise value of the Company implied by the Sale Transaction and includes sum of: (A)(i) in a Sale Transaction covered by (a) or (b) of the definition of Transaction above, the gross consideration paid or received or to be paid or received with respect to each share of common stock of the Company (or the exchange ratio with respect to each share of common stock of the Company) in connection with the Sale Transaction multiplied by the Shares Outstanding (as defined below), or (ii) in a Sale Transaction covered by (c) or (d) of the definition of Sale Transaction above, the total gross consideration paid or received or to be paid or received to the Company or its stockholders (as if 100% of the assets were sold or transferred) in connection with the Sale Transaction; plus, (B) the amount of all net indebtedness for borrowed money, capital leases and other long-term liabilities, in each case that remain on the balance sheet of the Company at the closing, or that are assumed, acquired, retired or transferred in connection with the Sale Transaction. "Shares Outstanding" means the aggregate number of shares of common stock of the Company that are outstanding at the closing, plus the aggregate number of shares of common stock of the Company issuable upon exercise, conversion or exchange of any outstanding securities exercisable, convertible or exchangeable into or for shares of common stock of the Company including, without limitation, all outstanding stock options of the Company (in each case, calculated net of exercise, conversion and exchange prices). "Transaction Value" will also include any dividends or distribution payable to stockholders of the Company after the date of this Agreement (other than normal, ordinary course, recurring dividends) and any amounts the Company pays to repurchase any of its securities (excluding repurchases pursuant to and consistent with any current stock repurchase program of the Company) after the date of this Agreement. Consideration consisting of securities that are publicly traded (or any securities convertible or exchangeable into such securities or any securities of the same class as such securities) will be valued at the trading price thereof (or the trading price of any such securities of a predecessor entity) on the day immediately prior to the closing of the Sale Transaction. If the Company or its stockholders receive newly-issued publicly traded securities in the Sale Transaction (or any securities convertible or exchangeable into such securities or any securities of the same class as such securities), such securities will be valued at the trading price of the Company or the Counterparty, as applicable, on the day immediately prior to the closing of the Sale Transaction. Any non-marketable securities or other non-cash consideration will be valued as the Company and Moelis may mutually agree in good faith. For purposes of this paragraph, consideration includes cash, securities, property or rights, or any other consideration.

In the event of (i) a Transaction which constitutes both a Sale Transaction and a Restructuring, or (ii) a Sale Transaction resulting in the sale, transfer or disposition of all or substantially all the Company's assets, then, in each case, the Company will pay to Moelis only the greater of either (a) the Restructuring Fee and (b) the applicable Sale Transaction Fee.

(d)     A transaction fee (the "Capital Transaction Fee"), calculated separately with respect to each Capital Transaction, payable at the initial closing of any Capital Transaction, of:

　　　(i)     3.0% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests, plus

DocuSign Envelope ID: 915FE144-5BDA-40AA-AF39-CB9D792C0479

(ii)     2.0% of the aggregate gross amount of unsecured debt obligations and other interests Raised in the Capital Transaction, plus

(iii)    1.0% of the aggregate gross amount of secured debt obligations and other interests Raised in the Capital Transaction.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the Company applies such amounts to refinance any of its obligations.

The fees set forth in Section 2(b) through (d) shall be referred to herein as the "Transaction Fees". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged Plan, the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Moelis shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction. Any Transaction Fee(s) earned and payable to Moelis shall not exceed $6,000,000 in the aggregate.

Whether or not any Transaction is consummated, the Company will reimburse Moelis upon request for all of its reasonable expenses incurred (including related expenses incurred prior to the date of this Agreement) in entering into and performing services pursuant to this Agreement, including the reasonable costs of Moelis' legal counsel. In connection therewith, the Company shall pay Moelis upon execution of this Agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this Agreement.  Moelis agrees to provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account designated in writing by Moelis. The Company agrees that any Transaction Fees payable hereunder will be paid out of the funds flow in connection with the applicable Transaction (to the extent applicable).  The Company will provide Moelis with a draft copy of any funds flow memorandum or similar document (if any) in advance of any closing of any Transaction.

If Moelis is required to render services not set forth in this Agreement, including, without limitation, producing documents, being deposed, providing testimony, relating to this Agreement or the transactions contemplated by this Agreement, the Company will pay Moelis additional reasonable and documented fees to be mutually agreed for such services, plus reasonable costs and expenses related thereto.

Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.    <u>Bankruptcy Proceedings</u>

If a Bankruptcy Case is commenced:

(a)  The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's (i) exclusive financial advisor and investment banker in connection with a Restructuring, (ii) exclusive financial advisor in connection with a Sale Transaction and (iii) exclusive placement agent in connection with a Capital Transaction under this Agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), <u>effective as of</u> the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all reasonable and documented expenses that Moelis incurred prior to commencement in accordance with this Agreement.

(b)  Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case.  If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this Agreement, and the Company shall reimburse Moelis for all fees owing and reasonable and documented expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the second paragraph of Section 7.

(c)  Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of **Annex A** shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and the Company shall use reasonable best efforts to ensure the post-petition compensation, expense reimbursements and payment received are entitled to the benefits of any "carve outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Company will support Moelis' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and reasonable and documented expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d)  The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this Agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.    <u>Information</u>

(a)    During the term of this engagement, the Company (i) will furnish Moelis with such information concerning the Company and, to the extent available to the Company, the Counterparty as Moelis reasonably deems appropriate (collectively, the "<u>Information</u>"), (ii) will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives and, as

practicable, those of the Counterparty and (iii) will advise Moelis promptly of any material event or material change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, the Counterparty.

(b)     To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  In performing its services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis will be entitled to assume that financial forecasts and projections the Company or any Counterparty makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Counterparty, as the case may be, as to the matters covered thereby.  The Company will be solely responsible for the contents of the Information Presentation or any other information provided by or on behalf of the Company.

(c)     The Company represents and warrants that the information (including the Information Presentation) provided to any prospective Purchaser by or on behalf of the Company, at the closing of each Capital Transaction, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. The Information Presentation shall be subject to Moelis' review and approval prior to distribution. The Company will provide Moelis for review with a copy of any other information the Company proposes to deliver to prospective Purchasers and will coordinate with Moelis prior to delivering any such information to prospective Purchasers.  The Company shall not transmit the Information Presentation to prospective Purchasers without first consulting Moelis.

(d)     The Company has not taken, and will not take, any action, directly or indirectly, so as to cause the Capital Transaction to fail to be entitled to exemption under Section 4(a)(2) of the Securities Act of 1933 (the "Securities Act").  The Company will promptly from time to time take such action as Moelis may reasonably request to qualify the Capital Transaction as a private placement under the securities laws of such jurisdictions as Moelis may reasonably request.

(e)     At the closing of a Capital Transaction, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to Purchasers,  (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act and which shall also include all opinions delivered to the Purchasers, (iii) the Company shall deliver to Moelis from each Purchaser for Moelis' express benefit a non-reliance representation in the form of **Annex B** and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request. In addition, the Company hereby makes the representation, warranty and covenant with respect to bad actor disqualifications set forth in **Annex B**.

(f)     Moelis will keep Information concerning the Company provided to Moelis in connection with this Agreement confidential pursuant to the Confidentiality and Non-Disclosure Agreement, dated February 13, 2024, between Express, LLC and Moelis, for the term thereof; provided, that Moelis may provide such Information to prospective Transaction parties as contemplated by this Agreement.

5.     Advice; Publicity

The Company will not disclose, summarize or refer to any of Moelis, , the terms of this Agreement or any of Moelis' advice or our valuation publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by law or by judicial or regulatory process, the Company may disclose any of the foregoing to the extent required; provided that, to the extent legally permissible, the Company will provide Moelis with prompt advance notice of any such disclosure and cooperate with Moelis in (i) limiting the scope of any such disclosure and/or (ii) obtaining confidential treatment for any such information required to be disclosed. Moelis consents to the inclusion of a summary of its valuation in the disclosure

DocuSign Envelope ID: 915FE144-5BDA-40AA-AF39-CB9D792C0179

statement for a Plan, if required to be included in such disclosure statement; provided that Moelis and its counsel have approved any reference to or summary or description of the valuation in advance.

Moelis may, at its option and expense and after announcement of any Transaction, publicize such Transaction and Moelis' role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on Moelis' website and in Moelis' marketing materials stating that Moelis has acted as (i) exclusive financial advisor and investment banker to the Company in connection with a Restructuring, and/or (ii) exclusive financial advisor to the Company in connection with a Sale Transaction and/or (iii) exclusive placement agent to the Company in connection with a Capital Transaction, as applicable.  If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of any Transaction. Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Moelis may also announce or disclose publicly its role in the potential Transaction.

6.     Disclaimer; Annex A

Moelis is acting hereunder as an independent contractor with the contractual obligations expressly described herein owing only to the Company. Moelis expressly disclaims any agency or fiduciary or other similar duties (regardless of whether Moelis has assisted or is assisting the Company on other matters). Moelis will not be responsible for advice or services of the Company's other advisors or contractors.  Moelis is not providing legal, tax, accounting or actuarial advice.  Moelis is not authorized to enter into any binding agreement on behalf of the Company or any of its subsidiaries. The Company will solely be responsible for any decision to enter into any transaction, and for the commercial assumptions on which any advice provided by Moelis is based.

Since Moelis will be acting on the Company's behalf, the Company and Moelis agree to the provisions set forth in **Annex A**, which are an integral part of this Agreement. Other than the Moelis Persons (as defined in **Annex A**), there are no third-party beneficiaries of this Agreement.

7.     Termination; Tail

This Agreement may be terminated at any time by the Company or Moelis only upon five business days' written notice.  In the event of any termination, Moelis will continue to be entitled to the fees payable hereunder prior to such termination and the reimbursement of reasonable and documented expenses incurred prior to such termination. **Annex A**, and Sections 3 through 9 shall remain in full force and effect after the termination of this Agreement in accordance with their terms.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates any Transaction or enters into an agreement or a Plan is filed regarding any Transaction and a Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) specified above immediately upon the closing of any such Transaction(s).  The "Tail Period" shall end 18 months following the termination of this Agreement.

Notwithstanding anything to the contrary contained herein:

(i)     Moelis will not be entitled to Transaction Fee(s) during the Tail Period (and there shall be no Tail Period) if Moelis unilaterally terminates its engagement hereunder in writing.

(ii)    (a) if, prior to the signing of a definitive agreement for a Transaction, the Company provides written notice to Moelis that it is terminating Moelis' engagement due to the gross negligence, bad faith or willful misconduct of Moelis in performing the services that are the subject of this Agreement and (b) such gross negligence, bad faith or willful misconduct is not promptly cured (if such cure is possible) by Moelis in a manner reasonably acceptable to the Company, then no Transaction Fee(s) shall be paid or payable hereunder (and there shall be no Tail Period); provided, however, that if Moelis obtains a judicial determination that it did not act with gross

negligence, bad faith or willful misconduct in the performance of its services hereunder, Moelis will remain entitled to its Transaction Fee(s) hereunder.

8.    <u>Acknowledgments</u>

Moelis and its affiliates are engaged globally in a wide range of merchant banking, asset management, investment and investment banking activities for their own account and otherwise.  Moelis and its affiliates may have interests that differ from the Company's interests.  Moelis and its affiliates have no duty to disclose to the Company, or use for the Company's benefit, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis and its affiliates (and any of Moelis' or Moelis' affiliates' respective employees, officers and partners) may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this Agreement, as well as provide investment banking and financial advisory services to any such entity.  Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.  Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.  Pursuant to FINRA Rule 2111, the Company acknowledges that (i) the Company is capable of evaluating investment risks independently, both in general and with regard to transactions and investment strategies involving a security or securities and will exercise independent judgment in evaluating recommendations (if any) of Moelis and its associated persons, and (ii) the Company is an Institutional Account as defined in FINRA Rule 4512(c).

9.    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>

This Agreement and any claims, counterclaims or disputes of any kind or nature (whether in contract, tort or otherwise) that may arise out of or relate to this Agreement shall be governed by and construed in accordance with the laws of the State of New York. This Agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Moelis. If any part of this Agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this Agreement shall continue in full force and effect. Any proceeding arising out of this Agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement shall be binding upon the Company and Moelis and the respective successors and permitted assigns of the Company and Moelis. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

Moelis is delighted to accept this engagement and looks forward to working with the Company.  Please sign and return the enclosed duplicate of this Agreement.   The obligations of the Company under this Agreement, including the obligations under **Annex A** to this Agreement, will be the joint and several obligations of each of the entities comprising the Company. The individuals signing this Agreement each represent that he or she is authorized to execute and deliver it on behalf of the entities whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name:  Perry Hall
Title:    Managing Director

Accepted and agreed to as of the date first written above
on behalf of Express, Inc. and each of its direct and indirect subsidiaries:

EXPRESS, INC.

By: _____

Name: Stewart Glendinning
Title:    Chief Executive Officer

## ANNEX A

The Company will indemnify and hold harmless Moelis, its affiliates and any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Moelis Persons") from and against any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to or arising out of the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the Agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the matters contemplated in the Agreement, including, without limitation, all information in the Information Presentation or otherwise provided to Purchasers by or on behalf of the Company (which shall be deemed to include the Company's public filings) or (B) otherwise arising out of, related to or in connection with the Agreement, the matters contemplated in the Agreement, or Moelis' performance of the Agreement (or any other services or advice the Company requests Moelis to provide) in each case, including prior to the date of the Agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of a Moelis Person.

The Company agrees that no Moelis Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for any Losses (A)(i) related to or arising out of the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the Agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the matters contemplated in the Agreement, including, without limitation, all information in the Information Presentation or otherwise provided to Purchasers by or on behalf of the Company (which shall be deemed to include the Company's public filings) or (B) otherwise arising out of, related to or in connection with the Agreement, the matters contemplated in the Agreement or Moelis' performance of the Agreement (or any other services or advice the Company requests Moelis to provide) in each case, including prior to the date of the Agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of such Moelis Person.

If such indemnification or limitation on liability is for any reason not available or is insufficient to hold a Moelis Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Moelis, on the other hand, with respect to the Agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; provided, however, that, to the extent permitted by applicable law, in no event shall the Moelis Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with the Agreement. Relative benefits to the Company, on the one hand, and Moelis, on the other hand, with respect to the Agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s) contemplated by the Agreement, whether or not consummated, bears to (ii) the fees actually received by Moelis in connection with the Agreement.

The Company will not, without Moelis' prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any actual or threatened action, claim, suit, investigation or proceeding (an "Action") (or participate in or facilitate a Settlement of any Action) in respect of which indemnification or contribution is or may be sought hereunder (whether or not a Moelis Person is a party thereto) unless such Settlement includes a release of each Moelis Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of a Moelis Person without such Moelis Person's prior written consent. No Moelis Person seeking indemnification or

DocuSign Envelope ID: 915FE144-5BDA-40AA-AF39-CB0D792C0479

contribution under the Agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action. The Company's obligations set forth in this *Annex A* shall be in addition to any rights that any Moelis Person may have at common law or otherwise.

In the event that any Moelis Person becomes involved in any capacity in any Action arising out of, related to or in connection with the Agreement or any matter referred to in the Agreement (including, without limitation, related matters prior to the date of the Agreement), the Company will reimburse such Moelis Person for the reasonable and documented out-of-pocket costs and expenses (including reasonable counsel fees) of investigating, preparing for and responding to such Action or enforcing the Agreement (including, without limitation, each of the provisions of this *Annex A*), as they are incurred.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

## ANNEX B

### Non-Reliance Representation

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any  investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

### Bad Actor Representation and Covenant

The Company represents and warrants to Moelis that, as of the date of this engagement letter, neither the Company nor any of its respective managing members, general partners, directors and executive officers, any other officers participating in the Capital Transaction, any 20% beneficial owners of the Company, calculated on the basis of total voting power, promoters connected to the Company, nor any persons compensated for soliciting investors, including their directors, general partners and managing members (each, a "Covered Person"), have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act and as of the closing date of any Capital Transaction, neither the Company nor any Covered Person will have been convicted of or otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act. Furthermore, the Company agrees to notify Moelis immediately if at any time it becomes aware that it or any of its Covered Persons have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act.