## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) GRANT SENIOR SECURED LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of Express, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced on April 22, 2024 (the "Petition Date") for entry of an interim order (the "Interim Order") and a final order (this "Final Order") under sections 105, 361, 362, 363, 364, 503, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holdings, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration, the Motion, or the DIP Credit Agreements, each as defined herein, as applicable.

(a)       authorization for Express, LLC, in its capacity as borrower (the "Borrower"), to obtain postpetition financing, and for each of the other Debtors (other than Express Fashion Digital Services Costa Rica S.R.L.) to guarantee (collectively, the "Guarantors"), on a joint and several basis, the Borrower's obligations under a superpriority, secured on a first-lien basis, debtor-in-possession revolving credit facility (the "First Lien DIP ABL Facility") to be funded by the First Lien DIP ABL Lenders (as defined herein), in an initial aggregate principal amount of up to $160,852,550.35, consisting entirely of revolving loans and letter of credit commitments (the "First Lien DIP ABL Commitments" and, the loans and letters of credit obligations outstanding thereunder from time to time, in a maximum amount of $135,852,550.35 outstanding at any time, the "First Lien DIP ABL Loans"), which shall roll-up the First Lien Prepetition ABL Obligations (as defined herein) under the Prepetition First Lien ABL Credit Agreement, as further described in the First Lien DIP ABL Facility, held by the Prepetition First Lien ABL Lenders (as defined herein) into the First Lien DIP ABL Facility so as to be deemed issued under the First Lien DIP ABL Credit Agreement (as defined herein) as First Lien DIP ABL Loans (the "First Lien DIP ABL Roll-Up Loans") pursuant to the terms and conditions of the Interim Order, this Final Order, and the First Lien DIP ABL Documents (as defined herein); *provided that* in the event of a Successful Challenge, in accordance with and subject to paragraph 24, to the validity, enforceability, or perfection of the First Lien Prepetition ABL Obligations or the First Lien Prepetition ABL Liens (a "Successful ABL Roll-Up Challenge") that are the subject of the First Lien DIP ABL Roll-Up Loans, the Court shall fashion a remedy that the Court deems appropriate to give effect to such Successful ABL Roll-Up Challenge, following notice and a hearing (which remedy may include, but not be limited to, unwinding or otherwise modifying the First Lien DIP ABL Roll-Up Loans) in the event the First Lien Prepetition ABL Facility is rendered under-secured as a result of such Successful ABL Roll-Up Challenge, and all rights and remedies of the Debtors, the Committee, the First Lien DIP ABL Secured Parties and the First Lien Prepetition ABL Secured Parties with respect to any such remedy and this Final Order are hereby expressly preserved;

(b)       authorization for the Debtors to (x) enter into that certain *Senior Secured Super-Priority Priming Debtor-In-Possession Asset-Based Loan Credit Agreement* among the Borrower, the Guarantors, (i) Wells Fargo Bank, National Association and its affiliates, (ii) Bank of America, National Association and its affiliates, (iii) Fifth Third Bank, National Association and its affiliates, and (iv) U.S. Bank National Association ((i)-(iv) together, with their successors and assigns, collectively, the "First Lien DIP ABL Lenders"), and Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities, the "First Lien DIP ABL Agent" and, the First Lien DIP ABL Agent, together with the First Lien DIP ABL Lenders, the "First Lien DIP ABL Secured Parties") (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "First Lien DIP ABL Credit Agreement," together with all agreements, documents and instruments delivered or executed in connection therewith, the "First Lien DIP ABL Documents"), which First Lien DIP ABL Credit Agreement is attached hereto as **Exhibit 2**, and to perform their respective

2

obligations thereunder and all such other and further acts as may be necessary, appropriate or desirable in connection with the First Lien DIP ABL Documents, each of which was authorized upon entry of the Interim Order, and (y) use the proceeds of the First Lien DIP ABL Facility to pay in full all First Lien Prepetition ABL Obligations, including interest and fees through the date of repayment, which will roll-up the First Lien Prepetition ABL Obligations into First Lien DIP ABL Obligations (as defined below) on a dollar for dollar basis upon entry of the Interim Order, and in full upon entry of this Final Order, which shall be implemented, in each case, through the automatic substitution and exchange of all First Lien Prepetition ABL Obligations for First Lien DIP ABL Obligations on a cashless basis (the "First Lien DIP ABL Debt Roll-Up");

(c)     authorization for the Borrower to obtain, and for the Guarantors to guarantee, on a joint and several basis, the Borrower's obligations under a superpriority, secured on a second lien basis, debtor-in-possession single-draw term facility (the "Second Lien DIP Term Facility" and, together with the First Lien DIP ABL Facility, the "DIP Facilities") to the Borrower to be funded by the Second Lien DIP Term Lenders (as defined herein) consisting of (i) a single-draw new money term loan in the aggregate principal amount of up to $25,000,000.00 (the "Second Lien New Money DIP Term Loans" and, such commitment, the "Second Lien DIP Term Commitments" and, together with the First Lien DIP ABL Commitments, the "DIP Commitments") and (ii) (A) upon entry of the Interim Order, $25,261,220.50, constituting rolled-up Second Lien Prepetition Term Obligations (as defined herein) under the Prepetition Second Lien Term Credit Agreement (as defined herein), as further described in the Second Lien DIP Term Facility, held by the Second Lien Prepetition Term Lenders, into the Second Lien DIP Term Facility so as to be deemed issued under the Second Lien DIP Term Credit Agreement and (B) subject to and upon entry of this Final Order, an amount equal to the outstanding Second Lien Prepetition Term Obligations, constituting rolled-up Second Lien Prepetition Term Obligations (as defined herein) under the Prepetition Second Lien Term Credit Agreement (as defined herein), as further described in the Second Lien DIP Term Facility, held by the Second Lien Prepetition Term Lenders, into the Second Lien DIP Term Facility so as to be deemed issued under the Second Lien DIP Term Credit Agreement (such rolled-up loans described in clauses (ii)(A) and (B), the "Second Lien DIP Roll-Up Term Loans," together with the Second Lien New Money DIP Term Loans, the "Second Lien DIP Term Loans," and the Second Lien DIP Term Loans, together with the First Lien DIP ABL Loans, the "DIP Loans") pursuant to the terms and conditions of the Interim Order, this Final Order, and the Second Lien DIP Term Documents (as defined below); *provided that* in the event of a Successful Challenge, in accordance with and subject to paragraph 24, to the validity, enforceability, or perfection of the Second Lien Prepetition Term Obligations or the Second Lien Prepetition Term Liens (a "Successful Term Roll-Up Challenge") that are the subject of the Second Lien DIP Roll-Up Term Loans, the Court shall fashion a remedy that the Court deems appropriate to give effect to such Successful Term Roll-Up Challenge, following notice and a hearing (which remedy may include, but not be limited to, unwinding or otherwise modifying the Second Lien DIP Roll-Up Term Loans) in the event the Second Lien Prepetition

Term Facility is rendered under-secured as a result of such Successful Term Roll-Up Challenge, and all rights and remedies of the Debtors, the Committee, the Second Lien DIP Term Secured Parties and the Second Lien Prepetition Term Secured Parties with respect to any such remedy and this Final Order are hereby expressly preserved;

(d)    authorization for the Debtors to (x) enter into that certain *Senior Secured Superpriority Debtor-In-Possession Term Credit Agreement* among the Borrower, the Guarantors, (i) ReStore Capital (EXPRS-II), LLC and its affiliates, (ii) 1903 Partners, LLC and its affiliates, and (iii) First Eagle Alternative Credit, LLC and its affiliates ((i)-(iii) together, with their successors and assigns, collectively, the "Second Lien DIP Term Lenders" and, together with the First Lien DIP ABL Lenders, the "DIP Lenders"), and ReStore Capital, LLC, as administrative agent and collateral agent (in such capacities, the "Second Lien DIP Term Agent,"[3] together with the Second Lien DIP Term Lenders, the "Second Lien DIP Term Secured Parties," and the Second Lien DIP Term Secured Parties, together with the First Lien DIP ABL Secured Parties, the "DIP Secured Parties") (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "Second Lien DIP Term Credit Agreement,"[4] together with all agreements, documents and instruments delivered or executed in connection therewith, the "Second Lien DIP Term Documents," and the Second Lien DIP Term Documents, together with the First Lien DIP ABL Documents, the "DIP Documents"), which Second Lien DIP Term Credit Agreement is attached hereto as **Exhibit 3**, and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate or desirable in connection with the DIP Term Documents, each of which was authorized upon entry of the Interim Order, and (y) roll-up (a) $25,261,220.50 of Second Lien Prepetition Term Obligations (as defined herein), including interest and fees through the date of repayment, into Second Lien DIP Term Obligations (as defined below), which was authorized and effective upon entry of the Interim Order, and (b) the remainder of Second Lien Prepetition Term Obligations in full upon entry of this Final Order, which shall be implemented, in each case, through the automatic substitution and exchange of all Second Lien Prepetition Term Obligations for Second Lien DIP Term Obligations on a cashless, dollar for dollar basis (the "Second Lien DIP Term Debt Roll-Up");

(e)    authorization for the Debtors to use the proceeds of the First Lien DIP ABL Facility solely, and in each case in a manner consistent with the terms and conditions of the Interim Order, this Final Order, and consistent with the Initial DIP Budget or the Approved DIP Budget then in effect (each, as defined herein), subject to any Permitted Variances (as defined herein) therefrom: (i) to refinance the First Lien Prepetition ABL Obligations, (ii) to fund certain fees and expenses associated with

---

[3]   The Second Lien DIP Term Agent, together with the First Lien DIP ABL Agent, shall be collectively referred to herein as the "DIP Agents."

[4]   The DIP Term Loan Credit Agreement, together with the DIP ABL Credit Agreement, shall be collectively referred to herein as the "DIP Credit Agreements."

4

the First Lien DIP ABL Facility and Second Lien DIP Term Facility, including without limitation, the professional fees and expenses of counsel to the DIP Lenders and the DIP Agents, (iii) to pay for disbursements set forth in the Initial DIP Budget or the Approved DIP Budget then in effect, and in each case, subject to any Permitted Variances therefrom, (iv) for payment of Court approved prepetition obligations of the Debtors consistent with the Initial DIP Budget or Approved DIP Budget then in effect, and in each case, subject to any Permitted Variances therefrom, or otherwise approved by the DIP Lenders, and (v) to provide for adequate protection in favor of First Lien Prepetition ABL Lenders and Second Lien Prepetition Term Lenders;

(f)     authorization for the Debtors to use the proceeds of the Second Lien DIP Term Facility solely, and in each case in a manner consistent with the terms and conditions of the Interim Order, this Final Order, and consistent with the Initial DIP Budget or the Approved DIP Budget then in effect, subject to any Permitted Variances therefrom: (i) to repay the First Lien Prepetition ABL Obligations and (ii) for payment of professional fees and other costs of administering the Chapter 11 Cases;

(g)     the granting of adequate protection to the first lien prepetition revolving lenders (the "First Lien Prepetition ABL Lenders") that provided credit to the Debtors under the first lien revolving prepetition revolving credit facility (the "First Lien Prepetition ABL Facility"), respectively, pursuant to that certain Second Amended and Restated Asset-Based Loan Credit Agreement, dated as of May 20, 2015 (as amended, restated, amended and restated, waived, supplemented or otherwise modified, the "First Lien Prepetition ABL Credit Agreement" and, all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "First Lien Prepetition ABL Credit Documents"), by and among Borrower, the guarantors party thereto (collectively with Borrower, the "First Lien Prepetition ABL Obligors"), Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities, the "First Lien Prepetition ABL Agent" and, together with the First Lien Prepetition ABL Lenders, the "First Lien Prepetition ABL Secured Parties"), which was authorized and effective upon entry of the Interim Order;

(h)     the granting of adequate protection to the second lien prepetition term loan lenders (the "Second Lien Prepetition Term Lenders" and, collectively with the First Lien Prepetition ABL Lenders, the "Prepetition Secured Lenders") that provided credit to the Debtors under the second lien prepetition term credit facility (the "Second Lien Prepetition Term Facility" and, together with the First Lien Prepetition ABL Facility, the "Prepetition Credit Facilities"), respectively, pursuant to that certain Asset-Based Term Loan Credit Agreement, dated as of September 5, 2023 (as amended, restated, amended and restated, waived, supplemented or otherwise

modified, the "Second Lien Prepetition Term Credit Agreement,"[5] and all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "Second Lien Prepetition Term Credit Documents"),[6] by and among Borrower, the guarantors party thereto (collectively with the Borrower, the "Second Lien Prepetition Term Obligors" and, together with the First Lien Prepetition ABL Obligors, the "Prepetition Obligors"), ReStore Capital, LLC, as administrative agent and collateral agent (in such capacities, the "Second Lien Prepetition Term Agent,"[7] and together with the Second Lien Prepetition Term Lenders, the "Second Lien Prepetition Term Secured Parties"), which was authorized and effective upon entry of the Interim Order;[8]

(i)     authorization for the Debtors to pay, on a final and irrevocable basis, the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, without limitation, letter of credit fees, agency fees, audit fees, appraisal fees, valuation fees, administrative and collateral agents' fees, and the reasonable fees and disbursements of the DIP Agents' and DIP Lenders' attorneys, advisors, accountants, appraisers, bankers and other consultants, all to the extent provided in, and in accordance with, the DIP Documents, the incurrence of each of which was authorized upon entry of the Interim Order;

(j)     authorization to grant to the DIP Agents, for the benefit of the DIP Secured Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral (as defined herein), which liens shall be subject to the priorities set forth herein, each of which was authorized and granted automatically and fully perfected upon entry of the Interim Order;

(k)     approval of certain stipulations by the Debtors with respect to the Prepetition Credit Agreements and the Prepetition Collateral (as defined herein) as set forth herein, which were authorized and effective upon entry of the Interim Order;

(l)     upon entry of this Final Order, the waiver of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

---

[5]   The Second Lien Prepetition Term Credit Agreement, together with the First Lien Prepetition ABL Credit Agreement, shall be collectively referred to herein as the "Prepetition Credit Agreements."

[6]   The Second Lien Prepetition Term Credit Documents, together with the First Lien Prepetition ABL Credit Documents, shall be collectively referred to herein as the "Prepetition Credit Documents."

[7]   The Second Lien Prepetition Term Agent, together with the First Lien Prepetition ABL Agent, shall be collectively referred to herein as the "Prepetition Agents."

[8]   The Second Lien Prepetition Term Secured Parties, together with the First Lien Prepetition ABL Secured Parties, shall be collectively referred to herein as the "Prepetition Secured Parties."

(m)     upon entry of this Final Order, finding that neither the DIP Lenders nor the
        Prepetition Secured Lenders, in their respective capacities as such, shall be subject
        to the equitable doctrine of "marshaling" or any similar doctrine with respect to the
        DIP Collateral or the Prepetition Collateral, as applicable, except as set forth herein;

(n)     the modification of the automatic stay imposed pursuant to section 362 of the
        Bankruptcy Code to the extent necessary to implement and effectuate the terms of
        the Interim Order and this Final Order;

(o)     authorizing and approving, on a final basis, among other things, the Debtors' entry
        into the DIP Facilities, the borrowings under the DIP Facilities, the continued use
        of Cash Collateral and granting adequate protection, in each case, as described in
        the Motion and as set forth in the DIP Documents, each of which was authorized
        upon entry of the Interim Order;

(p)     providing for the immediate effectiveness of this Final Order and waiving any
        applicable stay (including under Bankruptcy Rule 6004) to permit such immediate
        effectiveness; and

(q)     granting the Debtors such other and further relief as is just and proper.

    The Court having considered the Motion and the exhibits thereto, the First Day

Declaration,[9] the Still Declaration,[10] and the DIP Declarations,[11] the evidence submitted or

proffered and the arguments of counsel made at the interim hearing held by this Court on April 23,

---

[9]     The *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of the Debtors'
        Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

[10]    The *Declaration of Mark Still in Support of Omnibus Reply of Debtors (I) in Support of First Day Motions and
        (II) In Opposition to (A) Motion of Mr. Kurzon for Appointment of a Shareholders' Committee and (B) Granting
        Related Relief* (the "Still Declaration").

[11]    The *Declaration of Adam Keil in Support of the Debtors' Motion Seeking Entry of Interim and Final Orders
        (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and
        Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection
        to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and
        (V) Granting Related Relief* (the "Keil DIP Declaration"), the *Declaration of Kunal Kamlani in Support of the
        Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition
        Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize
        Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the
        Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Kamlani DIP
        Declaration"), and the *First Supplemental Declaration of Kunal S. Kamlani in Support of the Motion of Debtors
        for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and
        (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying
        the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "First Supplemental
        Kamlani DIP Declaration," and together with the Kamlani DIP Declaration and the Keil DIP Declaration,
        the "DIP Declarations").

2024 (the "Interim Hearing"); and the Court having entered the Interim Order on April 24, 2024 [Docket No. 85]; and the final hearing on the Motion having been held by this Court on May 31, 2024 (the "Final Hearing"); and proper and sufficient notice of the Motion and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion and to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates (collectively, the "Estates") is fair and reasonable and in the best interests of the Debtors, their Estates, creditors and parties in interest; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[12]

A.     ***Petition Date***.  On April 22, 2024, each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

B.     ***Jurisdiction***.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and

---

[12]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Court may enter a final order consistent with Article III of the United States Constitution.

C.     ***Committee Formation***.  On May 3, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

D.     ***Notice***.  Proper, timely, adequate and sufficient notice under the circumstances of the Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing shall be required.  The interim relief granted by the Interim Order was necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, for purposes of Bankruptcy Rule 6003.

E.     ***Debtors' Stipulations***.  Without prejudice to the rights of any other party, but subject to the limitations in this Final Order, including paragraph 24 of this Final Order, the Debtors represent, admit, stipulate and agree as follows (the "Stipulations"):

(1)     First Lien Prepetition ABL Obligations.  As of the Petition Date, the First Lien Prepetition ABL Obligors, without defense, counterclaim or offset of any kind, were jointly and severally indebted and liable to the First Lien Prepetition ABL Secured Parties under the First Lien Prepetition ABL Credit Documents in the aggregate amount of not less than $125,852,550.35, which consists of approximately (i) $105,770,465,41 in aggregate principal amount of revolving loans and (ii) $20,082,084.94 in issued and undrawn letters of credit on account of the First Lien Prepetition ABL Facility, *plus* accrued and unpaid interest thereon as of the Petition Date (the "First Lien Prepetition ABL Obligations Amount"), *plus* all other fees, costs, expenses, treasury, cash management, bank product and derivative obligations, indemnification obligations,

reimbursement obligations (including on account of issued and undrawn letters of credit), charges, premiums, if any, additional interest, any other "Obligations" (as defined in the First Lien Prepetition ABL Credit Agreement) and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the First Lien Prepetition ABL Credit Documents (collectively, including the First Lien Prepetition ABL Obligations Amount, the "First Lien Prepetition ABL Obligations").  The First Lien Prepetition ABL Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the First Lien Prepetition ABL Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the First Lien Prepetition ABL Credit Documents are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(2)    First Lien Prepetition ABL Liens.  Pursuant to the Prepetition ABL Credit Documents, the First Lien Prepetition ABL Obligations are secured by valid, binding, perfected and enforceable first priority liens on and security interests in (the "First Lien Prepetition ABL Liens") the "Collateral" (as defined in the First Lien Prepetition ABL Credit Documents) (the "Prepetition Collateral"), subject only to certain permitted liens as permitted under the First Lien Prepetition ABL Credit Documents.  The First Lien Prepetition ABL Liens (i) are valid, binding, perfected and enforceable first priority liens and security interests in the First Lien

Prepetition ABL Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) as of the Petition Date are subject and/or subordinate only to certain permitted liens (if any) as permitted by the terms of the First Lien Prepetition ABL Credit Documents, and (iv) constitute the legal, valid and binding obligation of the "Loan Parties" (as defined in the First Lien Prepetition ABL Credit Documents), enforceable in accordance with the terms of the applicable First Lien Prepetition ABL Credit Documents.

(3)     _Second Lien Prepetition Term Obligations_.  As of the Petition Date, the Second Lien Term Obligors, without defense, counterclaim or offset of any kind, were jointly and severally indebted and liable to the Second Lien Prepetition Term Secured Parties under the Second Lien Prepetition Term Credit Documents in the aggregate amount of not less than $65,596,180.00, _plus_ accrued and unpaid interest thereon as of the Petition Date (the "Second Lien Prepetition Term Obligations Amount"), plus all other fees, costs, expenses, indemnification obligations, reimbursement obligations (including on account of issued and undrawn letters of credit), charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Second Lien Prepetition Term Credit Agreement) and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Second Lien Prepetition Term Credit Documents (collectively, including the Second Lien Prepetition Term Obligations Amount, the "Second Lien Prepetition Term Obligations" and, together with the First Lien Prepetition ABL Obligations, the "Prepetition Secured Obligations"). The Second Lien Prepetition Term Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization,

effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Second Lien Prepetition Term Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Second Lien Prepetition Term Credit Documents are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(4)     _Second Lien Prepetition Term Liens_.  Pursuant to the Second Lien Prepetition Term Loan Credit Documents, the Prepetition Term Loan Obligations are secured by valid, binding, perfected and enforceable second priority liens on and security interests in (the "Second Lien Prepetition Term Liens" and, together with the First Lien Prepetition ABL Liens, the "Prepetition Liens") the "Prepetition Collateral," which Second Lien Prepetition Term Liens are subject and subordinate only to the First Lien Prepetition ABL Liens and certain permitted liens as permitted by the terms of the Second Lien Prepetition Term Credit Documents. The Second Lien Prepetition Term Liens (i) are valid, binding, perfected, and enforceable second priority liens and security interests in the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) as of the Petition Date are subject and/or subordinate only to the First Lien Prepetition ABL Liens and certain permitted liens as permitted by the terms of the Second Lien Prepetition Term Credit Documents and (iv) constitute the legal, valid and binding obligation of the "Loan Parties" (as defined in the Second Lien Prepetition Term Credit Documents),

enforceable in accordance with the terms of the applicable Second Lien Prepetition Term Credit Documents.

(5)    <u>Intercreditor Agreement</u>.  As of the Petition Date, the First Lien Prepetition ABL Agent and the Second Lien Prepetition Term Agent were party to that certain Intercreditor Agreement, dated as of September 5, 2023 (as amended, supplemented, amended and restated or otherwise modified from time to time prior to the date of this Final Order, the "<u>Intercreditor Agreement</u>").  The Intercreditor Agreement governs the respective rights, interests, obligations, priority and positions of (i) the Prepetition Secured Parties with respect to the Prepetition Collateral and the Prepetition Secured Obligations, and (ii) the DIP Secured Parties with respect to the DIP Collateral (as defined herein) and the DIP Obligations (as defined herein), which shall constitute a refinancing of such Prepetition Secured Obligations for purposes of the Intercreditor Agreement. The Debtors have acknowledged and agreed to recognize all rights granted to the parties to the Intercreditor Agreement.

(6)    As of the Petition Date, (i) Express was party to that certain License Agreement, dated January 25, 2023 (as amended, restated, supplemented or modified from time to time, the "<u>Express IP License Agreement</u>"), between Express and EXP Topco LLC (the "<u>Express IP Licensor</u>") and (ii) Bonobos, Inc. ("<u>Bonobos</u>") was party to that certain License Agreement, dated May 23, 2023 (as amended, restated, supplemented or modified from time to time, the "<u>Bonobos IP License Agreement</u>", and, together with the Express IP License Agreement, the "<u>License Agreements</u>"), between Express and Bonobos (the "<u>Bonobos IP Licensor</u>", and, together with the Express IP Licensor, the "<u>IP Licensors</u>").  In connection with and as a condition to the Debtors being able to obtain postpetition financing on the terms described herein, the IP Licensors agreed to defer payment of any obligations of the applicable Debtors under the License

Agreements (the "<u>Royalty Obligations</u>") after the Petition Date until after the DIP Obligations are paid in full in cash, except as consented to by the DIP Budget Consenting Parties (the "<u>Royalty Subordination</u>").

(7)     <u>Bonobos IP Rights Agreement</u>.   As of the Petition Date, the First Lien Prepetition ABL Agent and the Second Lien Prepetition Term Agent were party to that certain Bonobos IP Rights Agreement, dated as of September 5, 2023 (as amended, supplemented, amended and restated or otherwise modified from time to time prior to the date of this Final Order, the "<u>Bonobos IP Rights Agreement</u>").  The Bonobos IP Rights Agreement governs the respective rights, interests, obligations, priority and positions of the Prepetition Secured Parties with respect to the "Collateral" (as defined in the Bonobos IP Rights Agreement).  The Debtors and BNWHP, LLC have acknowledged and agreed to recognize all rights granted to the parties to the Bonobos IP Rights Agreement and the Bonobos IP Rights Agreement and the covenants therein shall apply in kind to the DIP Documents.

(8)     <u>Amended and Restated IP Rights Agreement</u>.  As of the Petition Date, the First Lien Prepetition ABL Agent and the Second Lien Prepetition Term Agent were party to that certain Amended and Restated IP Rights Agreement, dated as of September 5, 2023 (as amended, supplemented, amended and restated or otherwise modified from time to time prior to the date of this Final Order, the "<u>Amended and Restated IP Rights Agreement</u>").  The Amended and Restated IP Rights Agreement governs the respective rights, interests, obligations, priority and positions of the Prepetition Secured Parties with respect to the "Collateral" (as defined in the Amended and Restated IP Rights Agreement).  The Debtors and EXP Topco, LLC have acknowledged and agreed to recognize all rights granted to the parties to the Amended and Restated IP Rights

Agreement and the Amended and Restated IP Rights Agreement and the covenants therein shall apply in kind to the DIP Documents.

(9) <u>Cash Collateral</u>.  Any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, or other disposition of the Prepetition Collateral existing as of the Petition Date or from time to time, and the proceeds of any of the foregoing, is the Prepetition Secured Parties' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "<u>Cash Collateral</u>").

F.   ***Findings Regarding the DIP Facilities and Use of Cash Collateral***.  Based on the record established and evidence presented at the Final Hearing, including the First Day Declaration, the Still Declaration, and the DIP Declarations, the proffers presented at the Final Hearing, and the representations of the parties, the Court makes the following findings:

(1)   Good cause has been shown for the entry of this Final Order.

(2)   As set forth in the First Day Declaration, the Still Declaration, and the DIP Declarations, the Debtors have an immediate need to obtain the DIP Facilities and to use the Cash Collateral in each case on a final basis, in order to, among other things, (i) fund their efforts and activities essential to the viability of these Chapter 11 Cases, (ii) maintain business relationships with their vendors, suppliers, customers and other parties, (iii) make payroll, (iv) subject to this Final Order, including paragraph 24 hereof, to repay amounts outstanding under the First Lien Prepetition ABL Facility in accordance with the terms of this Final Order, (v) make adequate protection payments, (vi) pay the costs of the administration of the Chapter 11 Cases (including professional fees and expenses), and (vii) satisfy other working capital and general corporate purposes of the Debtors.  The ability of the Debtors to obtain sufficient working capital and

15

liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties and the use of Cash Collateral as set forth in this Final Order, the DIP Credit Agreements and the other DIP Documents, as applicable, is vital to the preservation and maintenance and maximization of the value of each Debtor, its estate and assets.  The Debtors' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the period of effectiveness of this Final Order.  The Debtors and their Estates will suffer immediate and irreparable harm if immediate financing is not obtained and permission to use Cash Collateral is not granted.  The terms of the DIP Facilities are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  The adequate protection provided in this Final Order and the other benefits and privileges contained herein are consistent with, and authorized by, the Bankruptcy Code.

(3)    As set forth in the First Day Declaration, the Still Declaration, and the DIP Declarations, the Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors are unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2), and 364(c)(3) for the purposes set forth in the DIP Documents without the Debtors granting to the DIP Agents, for the benefit of itself and the DIP Lenders, the DIP Liens (as defined herein), in each case, under the terms and conditions set forth in the Interim Order, this Final Order, and the DIP Documents.

(4)    The Debtors have prepared and delivered to the DIP Agents a cash flow forecast depicting on a weekly basis cash revenues, receipts, expenses, professional fees and other disbursements (including, without limitation, any payments with respect to real property leases),

net cash flows, inventory receipts and levels, First Lien DIP ABL Borrowing Base, First Lien DIP ABL Availability, Second Lien DIP Term Borrowing Base, and Second Lien DIP Term Excess Availability amounts (each as defined in the DIP Credit Agreements), total available liquidity, and other items on a line item basis (including all necessary and required expenses that the Debtors expect to incur and anticipated uses of proceeds of draws under the First Lien DIP ABL Facility) for the period beginning as of the week of the Petition Date through and including the projected week of emergence from Chapter 11 (the "Initial DIP Budget"), a copy of which was attached to the Interim Order as Exhibit 1 and which was in form and substance acceptable to the First Lien DIP ABL Agent, the "Required Lenders" under and as defined in the First Lien DIP Credit Agreement (collectively, the "First Lien DIP Required Lenders"), the Second Lien DIP Term Agent, and the Second Lien DIP Lenders (collectively, the "DIP Budget Consenting Parties"); *provided* that the DIP Budget Consenting Parties have not consented to the Debtors making any payments on account of "Merchandise" identified in the Initial DIP Budget, and the Debtors may not make any such payments without either (a) the written consent (which may be through counsel) of the DIP Budget Consenting Parties or (b) pursuant to any separate order of the Court, which does not include the Debtors' first day motions, with proper notice and opportunity to object given to the DIP Budget Consenting Parties.  The Initial DIP Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the Debtors' projected emergence from chapter 11.  The Debtors believe that the Initial DIP Budget is reasonable under the facts and circumstances.  In entering into the postpetition financing arrangements provided for herein and to consent to the Debtors' use of Cash Collateral as set forth herein, the DIP Secured Parties and the Prepetition Secured Parties are relying upon the Debtors' agreement to comply with the terms set forth in the

DIP Documents and this Final Order, and to comply, subject to permitted variances in such budget(s), with the Final DIP Budget and any subsequent Approved DIP Budget (as defined herein).

(5)     The DIP Lenders' willingness to make the DIP Loans and the Prepetition Secured Parties' willingness to consent to the use of Cash Collateral (each on the terms and subject to the conditions set forth in the DIP Documents and this Final Order) is predicated upon progress in the Debtors' process to consummate a sale of all or substantially all of their assets, or, in the alternative, to provide for an orderly liquidation of their inventory and exit from their retail store locations, as set forth in the DIP Milestones (as defined herein).  Absent the transactions and other activities contemplated with respect to the foregoing (including, without limitation, the authorization of store closing sales), the DIP Lenders and the Prepetition Secured Parties would not have agreed to make the DIP Loans or consent to the use of Cash Collateral as provided in the DIP Documents and this Final Order.

(6)     The terms of the DIP Facilities, the DIP Documents and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(7)     The DIP Facilities have been negotiated in good faith and at arm's length among the Debtors, the DIP Agents and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facilities and the DIP Documents including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the First Lien DIP ABL Documents (the "First Lien DIP ABL Obligations"), Second Lien DIP Term Documents (the "Second Lien DIP Term Obligations") and all other Obligations

(as defined in the DIP Credit Agreements) (together with the First Lien DIP ABL Obligations and the Second Lien DIP Term Obligations, the "<u>DIP Obligations</u>") shall be deemed to have been extended by the DIP Agents and the DIP Lenders in good faith as that term is used in Bankruptcy Code section 364(e) and in express reliance upon the protections offered by Bankruptcy Code section 364(e).  The DIP Obligations and the DIP Liens shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise, and any liens or claims granted to the DIP Agents or the DIP Lenders hereunder arising prior to the effective date of any such vacatur, reversal or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

(8)     The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b).  For the reasons set forth in the Motion, the First Day Declaration, the Still Declaration, the DIP Declarations, and the record presented to the Court at the Final Hearing, absent granting the relief granted by this Final Order, the Debtors' Estates will be immediately and irreparably harmed.  Consummation of the DIP Facilities and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order and the DIP Documents are, therefore, in the best interests of the Debtors' Estates and are consistent with the Debtors' fiduciary duties.

Based upon the foregoing, and upon the record made before the Court at the Final Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      *Motion Granted*.  The Motion is GRANTED on a final basis in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby denied and overruled.

2.      ***Authorization of the DIP Facilities and the DIP Documents***.

(a)      The Debtors are hereby authorized without the need for any further corporate action to execute, enter into, and perform all obligations under the DIP Documents, to borrow (as applicable), incur, guarantee, perform and pay the DIP Obligations, to grant security for the payment and performance of the DIP Obligations, and to take any other and further acts related to the performance of the DIP Documents.  The DIP Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders in connection with the DIP Facilities.  The Borrower is hereby authorized to borrow money and incur other liabilities and obligations pursuant to the DIP Documents, and the Debtors are hereby authorized to guarantee the Debtors' obligations with respect to such borrowings and other liabilities and obligations, in each case together with applicable interest, expenses, fees, including any prepetition and postpetition fees and expenses, and other charges payable in connection with the DIP Facilities, which shall be used for all purposes permitted under the DIP Documents and this Final Order.

(b)      Upon entry of the Interim Order, without any further action by the Debtors, the Court or any other party, all cash, collections, and proceeds of the Prepetition Collateral and the DIP Collateral ("Proceeds") were to immediately be applied in reduction of and payment in full of the First Lien Prepetition ABL Obligations and the First Lien DIP ABL Obligations outstanding in accordance with the terms of the DIP Documents, the Interim Order, and this Final

Order, in such order and manner determined by the First Lien DIP ABL Agent in its sole and absolute discretion (to the extent applicable, in accordance with the Intercreditor Agreement). The First Lien DIP ABL Secured Parties were authorized to make First Lien DIP ABL Loans in amounts sufficient to satisfy the Debtors' payment obligations as to each such matched dollars of such Proceeds. The First Lien Prepetition ABL Agent was authorized to continue to so apply such Proceeds upon receipt until such time as the First Lien Prepetition ABL Obligations were repaid in full in cash. From and after the repayment in full in cash of the First Lien Prepetition ABL Obligations, the Debtors shall remit such Proceeds to the First Lien ABL DIP Agent for application of such proceeds to the outstanding balance of the First Lien DIP ABL Loans and the First Lien DIP ABL Obligations in accordance with this Final Order and the terms and conditions of the DIP Documents.

(c)     Subject to and upon entry of this Final Order, the remaining First Lien Prepetition ABL Obligations, if any, shall be automatically substituted and exchanged for (and repaid by) the First Lien DIP ABL Loans under the First Lien DIP ABL Facility pursuant to the First Lien DIP ABL Debt Roll-Up, and the First Lien DIP ABL Debt Roll-Up shall be deemed funded on the entry of this Final Order without any further action by the Debtors, the Court or any other party, and shall constitute and be deemed to be First Lien DIP ABL Loans under the First Lien DIP ABL Facility as of such date.

(d)     For purposes of the Intercreditor Agreement, after giving effect to the First Lien DIP ABL Loans, the First Lien DIP ABL Roll-Up Loans, the First Lien DIP ABL Obligations, and the First Lien Prepetition ABL Obligations, no "Excess ABL Obligations" under and as defined in the Intercreditor Agreement shall be deemed to exist or to have resulted therefrom.

21

(e)     Upon entry of the Interim Order, all (i) Bank Products, (ii) Cash Management Services, and (iii) Letters of Credit (each as defined in the First Lien Prepetition ABL Credit Agreement) continued in place and all obligations under or in connection therewith were deemed to be subject to the First Lien DIP ABL Credit Agreement and to constitute First Lien DIP ABL Obligations.  All prepetition practices and procedures for the payment and collection of proceeds of Prepetition Collateral and DIP Collateral, as applicable, the turnover of cash, the delivery of property to the First Lien Prepetition ABL Secured Parties, and the funding pursuant to the First Lien Prepetition ABL Credit Agreement, including, without limitation, the use of any lockbox or blocked depository bank account arrangements, were deemed to remain in place under the DIP Documents for the benefit of the First Lien DIP ABL Agent and the First Lien DIP ABL Lenders, after taking into account any changes to such prepetition practices and procedures as described in the DIP Documents, as applicable, and were approved to continue without interruption after the commencement of the Chapter 11 Cases.  Until the indefeasible payment in full of all DIP Obligations (including "payment in full" of the First Lien DIP ABL Obligations as provided under the First Lien DIP ABL Credit Agreement), all Prepetition Secured Obligations, and the termination of the DIP Agents and the DIP Lenders' obligation to extend credit under the DIP Facilities, the Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any Cash Management Order (as defined herein) which has been entered by the Court.

(f)     Upon entry of the Interim Order, the Borrower was authorized to borrow, and the Guarantors were authorized to guaranty, borrowings up to an aggregate principal amount of $25,261,220.50 of Second Lien New Money DIP Term Loans, which were made available to the Borrower on or as soon as reasonably practicable after the date of the Interim Order, subject

to, and in accordance with, this Final Order. Further, upon entry of the Interim Order, concurrently with the initial borrowing of Second Lien New Money DIP Term Loans, the Second Lien DIP Roll-Up Term Loans up to an aggregate principal amount of $25,000,000.00[13] were automatically deemed funded pursuant to the Second Lien DIP Term Credit Agreement (on a cashless, dollar-for-dollar basis) and to constitute Second Lien DIP Term Obligations on the day the roll-up became effective, without constituting a novation, and to satisfy and discharge an equal principal amount of Second Lien Prepetition Term Obligations as if a payment in such amount had been made under the Second Lien Prepetition Term Facility on such date. The Second Lien DIP Roll-Up Term Loans were deemed made by each Second Lien DIP Term Lender in an amount equal to such Second Lien DIP Term Lender's (or affiliate's) pro rata share of the aggregate principal amount of the Second Lien Prepetition Term Obligations owing to all Second Lien DIP Term Lenders on the Petition Date and the outstanding aggregate principal amount of the Second Lien Prepetition Term Obligations held by any such Second Lien DIP Term Lender were automatically and irrevocably deemed reduced by the amount of the Second Lien DIP Roll-Up Term Loans. Upon entry of this Final Order, the remaining Second Lien Prepetition Term Obligations shall be automatically substituted and exchanged for (and repaid by) the Second Lien DIP Term Loans under the Second Lien DIP Term Facility pursuant to the Second Lien DIP Term Debt Roll-Up, and the Second Lien DIP Term Debt Roll-Up shall be deemed funded on the entry of this Final Order without any further action by the Debtors, the Court, or any other party, and shall constitute and be deemed to be Second Lien DIP Term Loans under the Second Lien DIP Term Facility as of such date.

---

[13] Actual amount shall be increased by accrued and unpaid interest thereon as of the effective date of the Second Lien DIP Term Facility.

(g)     Proceeds of the DIP Loans and Cash Collateral shall be used solely for the purposes permitted under the DIP Credit Agreements, this Final Order and in accordance with the Initial DIP Budget or the Approved DIP Budget then in effect, subject to any Permitted Variances, the DIP Documents and this Final Order.

(h)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted to the extent necessary and applicable, to perform all acts and to make, execute and deliver all instruments and documents (including, without limitation, the DIP Credit Agreements and any collateral documents contemplated thereby), and to pay all fees, expenses, indemnities and other amounts contemplated thereby or that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facilities including, without limitation:

(i)     The execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Credit Agreements and any collateral documents contemplated thereby;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents or the Initial DIP Budget or Approved DIP Budget, as then in effect (in each case in accordance with the terms of the DIP Documents and in such form as the Debtors, the DIP Agents and the Required Lenders (as defined in the DIP Credit Agreements, as applicable) may agree in accordance with the DIP Documents) (an "Amendment"), it being understood that (i) no further approval of the Court shall be required for any Amendment that is not materially adverse to the interests of the Debtors or their Estates; *provided* that such Amendment shall be filed on the docket of the Chapter 11 Cases, and (ii) any Amendment that is materially adverse to the interests of the Debtors or their Estates shall be filed on the docket of the Chapter 11 Cases and served on counsel to the Committee, the U.S. Trustee, and all parties in the Chapter 11 Cases that, as of the date thereof, are entitled to notice pursuant to Bankruptcy Rule 2002, and the Debtors shall only be permitted to enter into such an Amendment pursuant to an order of this Court entered after at least five (5) days' notice to such parties; *provided*

*further that* the Committee shall be entitled to advance notice of all Amendments;

(iii)     the non-refundable and irrevocable payment to each of the DIP Lenders or the DIP Agents, as applicable, of any amounts due (or that may become due) in respect of any indemnification obligations under the DIP Documents or any other amounts payable in connection with the DIP Facilities, including without limitation the payment of all reasonable and documented fees, out of pocket expenses, and disbursements of counsel incurred by the DIP Agents arising prior to, on, or after the Petition Date, subject to and in accordance with the terms hereof, with the payment of any amounts due in respect of any indemnification obligations subject to the procedures set forth in paragraph 14(d);

(iv)     Making any payments on account of the Adequate Protection Obligations (as defined herein) provided for in this Final Order, subject to paragraph 14(d) of this Final Order; and

(v)     the performance of all other acts required under or in connection with the DIP Documents.

(i)     Upon execution and delivery of the DIP Credit Agreements and the other DIP Documents, such DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted Chapter 11 Case of any Debtor to a case under chapter 7 of the Bankruptcy Code (the "Successor Cases") or after the dismissal of any Chapter 11 Case.  Except as provided otherwise in this Final Order (including paragraph 24), no obligation, payment, transfer or grant of security under the DIP Credit Agreements, the other DIP Documents, or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Bankruptcy Code sections 502(d), 548 or 549 or under any applicable state Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act, Uniform Voidable Transaction Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(j)     The Guarantors hereby are authorized and directed to jointly, severally and unconditionally guarantee in full all of the DIP Obligations of the Borrower and to incur any DIP Obligations and DIP Liens in connection therewith.

3.     ***Cash Management***. The Debtors shall maintain cash management in accordance with the DIP Documents.  Unless otherwise agreed to in writing by the DIP Agents and Prepetition Agents, the Debtors shall maintain no accounts except those identified in any interim and/or final order granting the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions, and (II) Granting Related Relief* (the "Cash Management Order"), or any other order of the Court.

4.     ***Budget***.

(a)     The use of borrowings under the First Lien DIP ABL Facility and Second Lien DIP Term Facility and the use of Cash Collateral or cash DIP Collateral (as defined herein) shall be consistent with the Initial DIP Budget or Approved DIP Budget (as defined below), as then in effect, in each case, subject to any Permitted Variances therefrom.  On or before 5:00 p.m. New York City time on Thursday of the fourth (4th) calendar week following the Petition Date and thereafter on the Thursday (or the next succeeding business day) of each fourth (4th) week thereafter, the Debtors shall deliver to the DIP Agents a supplement to the Initial DIP Budget or Approved DIP Budget, as then in effect, covering the subsequent period that commences with the week immediately following the date of delivery of the supplemental budget to the week of the

projected emergence from the Chapter 11 Cases, consistent with the form and level of detail set forth in the Initial DIP Budget (each such supplemental budget, an "Updated DIP Budget").  Upon (and subject to) the approval in writing of any such Updated DIP Budget by the First Lien DIP Agents, the First Lien DIP Required Lenders, the Second Lien DIP Term Agent, and the Second Lien DIP Term Lenders, such Updated DIP Budget shall constitute the budget for all purposes under the Second Lien DIP Term Facility (such budget, the "Approved DIP Budget") until superseded, if at all, by any subsequent Approved DIP Budget.  The Approved DIP Budget is attached hereto as **Exhibit 1**.  Copies of any Approved DIP Budget shall be provided to the Committee.

(b)    Commencing with the first (1st) full calendar week following the Petition Date and for each calendar week thereafter, by no later than 5:00 p.m. New York City time on the Thursday of such calendar week, (each such Thursday, a "Variance Report Date"), the Debtors shall deliver to the DIP Agents, a variance report (each, a "Senior DIP Variance Report") for the applicable Testing Period (as defined below) setting forth, in reasonable detail, (i) the actual cash receipts on a line-item basis for such Testing Period compared to the projected cash receipts on a line-item basis set forth in the Initial DIP Budget or Approved DIP Budget, as then in effect, for such Testing Period (any such difference, the "Receipts Variance") and (ii) the actual cash disbursements on a line-item basis for such Testing Period compared to the projected cash disbursements on a line-item basis set forth in the Initial DIP Budget or Approved DIP Budget, as then in effect, for such Testing Period (any such difference, a "Disbursements Variance"), together with a statement from the Borrower's chief financial officer or similar financial officer certifying the information contained in such Senior DIP Variance Report.  The Senior DIP Variance Report shall also provide a reasonably detailed explanation for any variance.  The term "Testing Period"

means, with respect to each Senior DIP Variance Report required to be delivered, on a Variance Report Date, the consecutive four-week period ending immediately prior to such Variance Report Date; *provided* that (i) the Testing Period for the first Variance Report Date shall be the week ended immediately prior to such Variance Report Date (i.e., the week in which the Petition Date occurs), (ii) the Testing Period for the second Variance Report Date shall be the two-week period ended immediately prior to such Variance Report Date (i.e., the week in which the Petition Date occurs and the week following the week in which the Petition Date occurs), (iii) the Testing Period for the third Variance Report Date shall be the three-week period ended immediately prior to such Variance Report Date (i.e., the week in which the Petition Date occurs and the two weeks following the week in which the Petition Date occurs), and (iv) the Testing Period for the fourth Variance Report Date shall be the four-week period ended immediately prior to such Variance Report Date (i.e., the week in which the Petition Date occurs and the three weeks following the week in which the Petition Date occurs).  In addition, there shall be a weekly teleconference between the Debtors (and their advisors) and the DIP Lenders (and their advisors) to discuss the Chapter 11 Cases, the Senior DIP Variance Report, the financial and operational performance of the Debtors, and such other related matters as may be reasonably requested by the DIP Agents.

(c)      The Debtors shall not permit (i) the Receipts Variance (on an aggregate basis) (w) for the second Testing Period to have a negative variance in excess of 30% (with negative variance meaning, for the avoidance of doubt, that actual receipts are less than projected receipts), (x) for the third Testing Period to have a negative variance in excess of 20%, (y) for the fourth and fifth Testing Periods to have a negative variance, in each case, in excess of 15% and (z) thereafter, to have a negative variance in excess of 10%; and (ii) the Disbursements Variance (on an aggregate basis) for the second Testing Period and thereafter to have a negative variance in

excess of 10% (with negative variance meaning, for the avoidance of doubt, that actual disbursements are greater than projected disbursements); *provided* that the Disbursements Variance for the (x) second Testing Period shall be 20% and (y) third Testing Period shall be 15% (the permitted variances in this paragraph, the "Permitted Variances"); *provided further*, that for purposes of compliance with the Budget Covenants the Disbursement Variance shall exclude (x) all unpaid fees and expenses incurred by Professional Persons (as defined herein) ("Professional Fees") and (y) restructuring charges arising on account of the Chapter 11 Cases (which restructuring charges shall solely consist of (A) U.S. Trustee fees, (B) professional fees and expenses incurred by or for the benefit of (1) the DIP Agents and/or (2) DIP Lenders, (C) amounts paid by the Debtors as adequate protection and (D) interest payable under the First Lien ABL DIP Credit Agreement and Second Lien DIP Term Credit Agreement.

(d)     The Debtors shall incur DIP Obligations and expend Cash Collateral and other DIP Collateral (as defined herein) proceeds to make payments benefitted by the Carve Out only in accordance with and for the specific purposes set forth in the Initial DIP Budget or Approved DIP Budget, subject to the any Permitted Variances as set forth in the DIP Documents (collectively referred to herein as the "Budget Covenants").

(e)     ***Reserves***.  Upon entry of the Interim Order, the Debtors established (i) a reserve in a segregated account (the "Administrative Claims Reserve"), which reserve shall be funded in accordance with the applicable Initial DIP Budget or Approved DIP Budget from the proceeds of the DIP Facilities, proceeds of the DIP Collateral, and/or the Prepetition Collateral (including Cash Collateral) to fund allowed, undisputed and unpaid chapter 11 administrative expense claims, and (ii) a reserve in a segregated account, which may be the same account as the Administrative Claims Reserve (the "WARN Reserve" and, together with the Administrative

Claims Reserve, the "Reserves"), which reserve shall be funded in accordance with the applicable Initial DIP Budget or Approved DIP Budget from the proceeds of the DIP Facilities, proceeds of the DIP Collateral, and/or the Prepetition Collateral (including Cash Collateral), to fund costs associated with the federal Worker Adjustment and Retraining Notification Act and state law equivalents.  Notwithstanding the foregoing and for the avoidance of doubt, other than funding the Reserves, unless the Court has entered an order authorizing allowance and payment of any such administrative expense claim for whose benefit the Reserves have been established, the Debtors may not pay any administrative expense claims for whose benefit the Reserves have been established without the written consent (which may be through counsel) of the DIP Agents and the Prepetition Agents, as applicable, and payment of any such administrative expense claims without such written consent of the DIP Agents and the Prepetition Agents shall be an immediate Event of Default.  The DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in the Reserves (which liens shall be deemed automatically perfected senior liens).

(f)    *Additional Reserves*.  In accordance with the Approved DIP Budgets, the Debtors shall establish (i) a reserve in a segregated account (the "Collateral Reserve"), which reserve shall be funded in accordance with the applicable Approved DIP Budget from the proceeds of the DIP Facilities, proceeds of the DIP Collateral, and/or Prepetition Collateral (including Cash Collateral), and (ii) a reserve in a segregated account, which may be the same account (the "Indemnity Reserve" and, together with the Collateral Reserve, the "Additional Reserves"), which shall be funded in accordance with the applicable Approved DIP Budget from the proceeds of the DIP Facilities, proceeds of the DIP Collateral, and/or Prepetition Collateral (including Cash Collateral); *provided* that the Additional Reserves shall be released upon the earlier of (x) the expiration of the Challenge Period or (y) consent from the DIP Lenders and DIP Agents.

Notwithstanding the foregoing and for the avoidance of doubt, other than funding the Additional Reserves, unless the Court has entered an order authorizing the allowance and payment of any claims from the cash held in the Additional Reserves, the Debtors may not pay any claims from the cash held in the Additional Reserves without the written consent (which may be through counsel) of the DIP Agents and the Prepetition Agents, as applicable, and payment of any such claims without such written consent of the DIP Agents and the Prepetition Agents shall be an immediate Event of Default until such time that the Additional Reserves are no longer in place pursuant to this paragraph 4(f).   The DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in the Additional Reserves (which liens shall be deemed automatically perfected senior liens) for as long as the Additional Reserves are in place subject to this paragraph 4(f).

5.    ***Reporting Requirements/Access to Records***.    The Debtors shall provide (a) Goldberg Kohn Ltd. and Richards Layton & Finger, as counsel to the First Lien Prepetition ABL Agent and the First Lien DIP ABL Agent, (b) Ropes & Gray LLP and Chipman Brown Cicero & Cole, LLC, as counsel, and AlixPartners LLP, as financial advisor, to the Second Lien Prepetition Term Agent and the Second Lien DIP Term Agent (the professionals in the foregoing clauses (a) and (b), collectively, the "DIP Professionals"), (c) advisors to the Committee, and (d) the U.S. Trustee, upon reasonable request, with all reporting and other information reasonably required to be provided to the DIP Agents under the DIP Documents.   In addition to, and without limitation, whatever rights to access the DIP Agents and the DIP Lenders have under the DIP Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Agents and the DIP Lenders to (i) have access to and inspect the Debtors' assets, (ii) examine the Debtors' books and records, and

(iii) discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors.

6.      ***DIP Liens***.

(a)      Effective immediately upon the entry of the Interim Order and this Final Order, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, the Debtors are authorized to grant and do hereby grant to each DIP Agent (for the benefit of itself and the other DIP Secured Parties under the DIP Documents) continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (such liens granted to secure the First Lien DIP ABL Obligations, the "First Lien DIP ABL Liens," the liens granted to secure the Second Lien DIP Term Obligations, the "Second Lien DIP Term Liens," and, collectively, the "DIP Liens") the DIP Collateral.[14]

(b)      Effective upon the entry of the Interim Order and this Final Order, all existing blocked account agreements, deposit account control agreements, securities account

---

[14]   "DIP Collateral" means all property of the estate under Section 541 of the Bankruptcy Code including all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including: (A) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, real estate, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims (subject to the marshalling provisions set forth in this Final Order), causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (B) all proceeds of leased real property; (C) the proceeds of any avoidance actions, subject to the marshalling provisions set forth in this Final Order; (D) proceeds of the Debtors' rights under Sections 506(c) (solely to the extent such rights result from the use of Collateral, and are, therefore, enforceable against parties other than the Prepetition Secured Parties) and 550 of the Bankruptcy Code; (E) all Prepetition Collateral; and (F) all Prepetition Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. For the avoidance of doubt, DIP Collateral shall not include the Debtors' nonresidential real property leases (but shall include all value arising from or related to such leases and all proceeds of such leases) solely to the extent that the grant of a DIP Lien (or Adequate Protection Lien) is prohibited or restricted by the terms of such real property lease or applicable nonbankruptcy law to attach to any such real property lease.

control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including, without limitation, any intercompany subordination agreements), freight forwarder agreements, and intellectual property agreements (including the Bonobos IP Rights Agreement and the Amended and Restated IP Rights Agreement) entered into or in connection with Prepetition Credit Documents shall in each case be deemed to be delivered in connection with the DIP Facilities, shall constitute DIP Documents and shall remain in full force and effect without any further action by the Debtors, the DIP Agents, or any other person (except to the extent that (i) the DIP Agents, the Debtors, and the DIP Lenders agree in writing that such documents shall be modified or terminated, or (ii) such documents are modified herein, in the DIP Documents, or by another order of the Court), and in each case the DIP Agents shall be deemed to be a party thereto, any and all references in any such agreements or documents referred to above to the "Credit Agreements" shall hereafter be deemed to mean and refer, as applicable, to the First Lien DIP ABL Credit Agreement, First Lien Prepetition ABL Credit Agreement, Second Lien DIP Term Credit Agreement, and Second Lien Prepetition Term Credit Agreement, any and all references in any such agreements or documents referred to above to the "Loan Documents" shall hereafter be deemed to mean and refer to, as applicable, the First Lien DIP ABL Documents, First Lien Prepetition ABL Credit Documents, Second Lien DIP Term Documents, and Second Lien Prepetition Term Credit Documents, as amended, modified, supplemented or restated and in effect from time to time, any and all references in any such agreements or documents referred to above to the "Agents" shall hereafter be deemed to mean and refer to, as applicable, the First Lien DIP Agent, First Lien Prepetition ABL Agent, Second Lien DIP Term Agent, and Second Lien

Prepetition Term Agent, any and all references in any such agreements or documents referred to above to "Lenders" shall hereafter be deemed to mean and refer to, as applicable, the First Lien DIP ABL Lenders, First Lien Prepetition ABL Lenders, Second Lien DIP Term Lenders, and Second Lien Prepetition Term Lenders, and any and all references in any such agreements or documents referred to above to the "Obligations" shall hereafter be deemed to mean and refer to, as applicable, the First Lien DIP ABL Obligations, First Lien Prepetition ABL Obligations, Second Lien DIP Term Obligations, and Second Lien Prepetition Term Obligations.

7.      ***DIP Lien Priority in DIP Collateral***.

(a)      Subject to the Carve Out, the DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interest and liens of every kind, nature, and description, whether created consensually or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or applicable law; *provided*, *however*, that the DIP Liens on the DIP Collateral (in each case, whether in existence on the Petition Date or hereafter arising) shall be subject to the Intercreditor Agreement and treated in accordance with the relative priorities set forth on **Exhibit 4** hereto.

(b)      Other than as set forth herein, the DIP Liens, the DIP Superpriority Claims (as defined herein), the Carve Out, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases or any claim for reclamation or return (whether asserted pursuant to section 546(c) of the Bankruptcy Code or otherwise), and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in the Chapter 11 Cases

or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to challenge under sections 510, 549, 550, or 551 of the Bankruptcy Code.

(c)     <u>Continuing Effect of Intercreditor Agreement</u>.  Except as modified herein, pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Credit Documents, (i) is a valid and enforceable "subordination agreement" binding on all parties thereto, (ii) shall remain in full force and effect, (iii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the Adequate Protection Claims and the Adequate Protection Liens granted by the Debtors under this Final Order or otherwise), (iv)  shall continue to govern the relative priorities, rights, and remedies of the DIP Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the DIP Liens, the DIP Superpriority Claims, and the DIP Collateral granted by the Debtors under this Final Order or otherwise) as a "refinancing" of the Prepetition Secured Obligations of such DIP Secured Parties contemplated by the Intercreditor Agreement, and (v) shall not be deemed to be amended, altered, or modified by the terms of this Final Order or the DIP Documents, unless expressly set forth herein or therein.  The Debtors, the First Lien Prepetition ABL Agent, the Second Lien Prepetition Term Agent, the First Lien DIP ABL Agent and the Second Lien DIP Term Agent each agree that:

(i)     (x) the First Lien DIP ABL Credit Agreement and the First Lien Prepetition ABL Credit Agreement shall each and collectively constitute the "ABL Credit Agreement" for the purposes of the Intercreditor Agreement, (x) First Lien DIP ABL Documents and the First Lien Prepetition ABL Credit

Documents shall each and collectively constitute the "ABL Documents" for purposes of the Intercreditor Agreement, (y) the Second Lien DIP Term Credit Agreement and the Second Lien Prepetition Term Credit Agreement shall each and collectively constitute the "Term Loan Agreement" for purposes of the Intercreditor Agreement, and (z) the Second Lien DIP Term Documents and the Second Lien Prepetition Term Credit Documents shall each and collectively constitute "Term Documents" for purposes of the Intercreditor Agreement;

(ii)     (x) the "First Lien DIP ABL Obligations" and the "First Lien Prepetition ABL Obligations" and the "Obligations" under and as defined in the First Lien Prepetition ABL Credit Agreement shall each and collectively constitute "ABL Obligations" for purposes of the Intercreditor Agreement and no Discharge of ABL Obligations shall be deemed to have occurred under and as defined in the Intercreditor Agreement as a result of entry into the First Lien DIP ABL Credit Agreement and the other First Lien DIP ABL Documents or any refinancing of the First Lien Prepetition ABL Obligations hereunder, and (y) the Second Lien DIP Term Obligations and the Second Lien Prepetition Term Obligations and the "Obligations" under and as defined in the Prepetition Second Lien Term Agreement shall each and collectively constitute "Term Obligations" for purposes of the Intercreditor Agreement and no Discharge of Term Obligations shall be deemed to have occurred under and as defined in the Intercreditor Agreement as a result of the entry into the Second Lien DIP Term Credit Agreement and the other Second Lien DIP Term Documents or any refinancing of the Second Lien Prepetition Term Obligations hereunder. Notwithstanding anything to the contrary contained in the Intercreditor Agreement, the First Lien Prepetition ABL Credit Documents or the Second Lien Prepetition Term Credit Documents, the Second Lien Prepetition Term Agent hereby consents to the First Lien ABL DIP Facility on the terms and conditions set forth in this Final Order and the First Lien DIP ABL Credit Agreement, and the First Lien Prepetition ABL Agent hereby consents to the Second Lien DIP Term Facility on the terms and conditions set forth in this Final Order and the Second Lien DIP Term Credit Agreement;

(iii)    (x) they will not do any act or perform any obligation which is not in accordance with the agreements set forth in the Intercreditor Agreement, including as modified hereby, (y) the Intercreditor Agreement and each of their respective obligations thereunder (as modified under this Final Order) is ratified and confirmed in all respects, and (z) except as otherwise provided herein, all of the terms and conditions of the Intercreditor Agreement shall remain in full force and effect.

8.      ***Superpriority Claims.***

(a)      <u>DIP Superpriority Claim</u>.  Subject to the Carve Out, immediately upon, and effective as of, entry of the Interim Order, on account of all DIP Obligations now existing or hereafter arising pursuant to this Final Order, the DIP Documents, or otherwise, each DIP Agent (each for the benefit of itself and the other DIP Secured Parties under the applicable DIP Documents) was granted, pursuant to sections 364(c)(1), 503 and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations.  Subject to paragraph 8(b) of this Final Order, the DIP Superpriority Claims shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor, whether now in existence or hereafter incurred by such Debtor including without limitation administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), and 726 of the Bankruptcy Code, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof in accordance with the relative priorities set forth on **<u>Exhibit 4</u>** hereto.

(b)      <u>Priority of DIP Superpriority Claims</u>.  Subject only to the Intercreditor Agreement and the relative priorities set forth on **<u>Exhibit 4</u>** hereto, the DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, all proceeds of claims or causes of action that the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the Estates of the Debtors under chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof; *provided*, however, that effective as of entry of the Interim Order, the DIP Superpriority Claims shall be payable from and have recourse to all

proceeds of claims or causes of action that the Debtors may be entitled to assert under section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof, subject to the Intercreditor Agreement (including the priorities set forth therein), with relative priorities set forth on **Exhibit 4** hereto.

        (c)      <u>Royalty Obligations</u>. Subject to the Carve Out, immediately upon, and effective as of, entry of the Interim Order, on account of and in consideration for the IP Licensors agreeing to the Royalty Subordination, each IP Licensor is hereby granted, subject to the last sentence of this paragraph, pursuant to sections 503(b) and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (collectively, the "<u>Royalty Superpriority Claims</u>") for all Royalty Obligations now existing or hereafter arising pursuant to the License Agreements or otherwise. The Royalty Superpriority Claims shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor, whether now in existence or hereafter incurred by such Debtor including without limitation administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), and 726 of the Bankruptcy Code, which allowed Royalty Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof; *provided*, the Royalty Superpriority Claims shall be junior in right of payment to the Carve Out, the First Lien DIP ABL Superpriority Claims, the First Lien Prepetition ABL Adequate Protection Claims, the Second Lien DIP Term Loan Superpriority Claims and the Second Lien Prepetition Term Loan Adequate Protection Claims (and, for the avoidance of doubt, no Royalty Superpriority Claim or Royalty Obligation shall be paid until the DIP Obligations are paid in full in cash and shall be paid from available funds following satisfaction in full of all DIP Obligations in priority to other

administrative claims but subject to the Carveout).  To the extent that the License Agreements are recharacterized or avoided, the Court shall fashion a remedy that the Court deems appropriate to give effect to such recharacterization or avoidance, following notice and a hearing (which remedy may include, but not be limited to, disallowance or reprioritization of any Royalty Superpriority Claim or Royalty Obligation under the License Agreements), and all rights and remedies of the Debtors, the Committee, and the Express IP Licensor with respect to any such remedy and this Final Order are hereby expressly preserved.

       9.     ***Carve Out.***

       (a)     <u>Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (excluding any restructuring, sale, success, or other transaction fees of any investment bankers or financial advisors of the Debtors or the Committee, which, for the avoidance of doubt shall include (x) Hilco Merchant Resources, LLC, as the Debtors' store closing agent under the terms of the Letter Agreement Governing Inventory Disposition as approved by the Court on an interim or final basis and (y) Moelis & Company LLC pursuant to that certain engagement dated March 11, 2024; *provided* that any such fees shall be funded to the Carve Out Reserves solely from the proceeds received by the Debtors from the transaction giving rise to such fee (at which time, upon being funded into the Carve Out Reserves, such fees shall be included in the Carve Out), unless paid immediately to such investment banker or financial advisors pursuant to a separate order) (the "<u>Allowed Professional</u>

Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by any DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice and, with respect to Committee Professionals not to exceed the aggregate amounts set forth for Committee Professionals in the Initial DIP Budget or the Approved DIP Budget then in effect; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by any DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post Carve Out Trigger Notice Cap"); *provided, however*, that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described in clauses (i) through (iv) of this paragraph 9(a) on any grounds.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by any DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement, respectively, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Fee Estimates.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the entry of the Interim Order,

each Professional Person shall deliver to the Debtors and the DIP Agents (which, with respect to the DIP Agents, shall be through delivery to the lead restructuring counsel for each of the DIP Agents and to AlixPartners LLP) a statement setting forth (i) a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), (ii) a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors, and (iii) an updated good faith non-binding estimate of the amount of fees and expenses to be incurred in the upcoming two (2) week period immediately following the Calculation Date (each such statement, a "Weekly Statement"); *provided*, that within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period (the "Unreported Period") shall be limited to the aggregate unpaid amount of Allowed Professional Fees estimated for such Unreported Period in the most recently delivered Weekly Statement by such Professional Person pursuant to clause (b)(iii) in this paragraph (or, solely to the extent an estimate for the Unreported Period is not included in a previously delivered

Weekly Statement, the amount for such Unreported Period included in the Initial DIP Budget or the Approved DIP Budget then in effect for such period for such Professional Person).

        (c)      <u>Carve Out Reserves</u>.  Upon entry of the Interim Order, the Debtors utilized all cash on hand to fund a reserve in an amount equal to the aggregate amount of Allowed Professional Fees contemplated to be incurred in the Initial DIP Budget during the first week of the Chapter 11 Cases (the "<u>Initial Amount</u>") and commencing  on May 3, 2024, and on or before the Friday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund such reserve (i) in an amount equal to the greater of (x) the aggregate amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on Wednesday of such week to the Debtors, the DIP Agents, and the Prepetition Agents, and (y) the aggregate amount of Allowed Professional Fees contemplated to be incurred in the Initial DIP Budget or the Approved DIP Budget then in effect during such week (the "<u>True Up Reserve Amount</u>") and (ii) in an amount equal to the greater of (x) the aggregate amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on Wednesday of such week pursuant to paragraph 9(b)(iii) to the Debtors, the DIP Agents, and the Prepetition Agents, for the immediately following week and (y) the aggregate amount of Allowed Professional Fees contemplated to be incurred in the Initial DIP Budget or the Approved DIP Budget then in effect, for the immediately following week; *provided* that the True Up Reserve Amount shall replace, as applicable, the first week's Initial Amount or, in subsequent weeks, the amount funded into such reserve based on clause (c)(2) above for the prior week.  The Debtors shall deposit and hold such amounts in a segregated account in trust (the "<u>Pre-Carve Out Trigger Notice Reserve Account</u>") to pay such Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims, and all payments of Allowed Professional fees

incurred prior to the Termination Declaration Date shall be paid first from such Pre-Carve Out Trigger Notice Reserve Account.  For the avoidance of doubt, and in addition to the funding of the Pre-Carve Out Trigger Notice Reserve Account, the First Lien DIP ABL Agent shall be entitled to maintain at all times a reserve against the amount of First Lien DIP ABL Loans available under the First Lien DIP ABL Facility (the "Specified ABL Reserve") as set forth in this paragraph 9(c) hereof (the "Specified ABL Reserve Amount").[15]  The "Specified ABL Reserve Amount" shall mean (i) each Professional Person's fees and expenses estimated in the Initial DIP Budget or the Approved DIP Budget then in effect to be incurred during the second and third week of the Chapter 11 Cases, (ii) plus the amounts contemplated under paragraphs 9(a)(i) and 9(a)(ii) of this Final Order, plus (iii) the Post-Carve Out Trigger Notice Cap.  On May 2, 2024, and each Thursday after such date, the Specified ABL Reserve Amount shall be increased by the amount of each Professional Person's fees and expenses estimated to be incurred in the Weekly Report most recently delivered by such Professional Person for the succeeding two weeks (or, to the extent an estimate for such period is not included in the most recently delivered Weekly Statement, the estimated amount for such period set forth in the Initial DIP Budget or the Approved DIP Budget then in effect) (the amount of such increase, the "Added Weekly Estimate"), and the amount of the Added Weekly Estimate plus the then existing Specified ABL Reserve Amount shall become the new Specified ABL Reserve Amount.  Upon actual funding of amounts reserved for in the Specified ABL Reserve into the Pre-Carve Out Trigger Notice Reserve Account, the Specified ABL Reserve Amount shall be reduced dollar-for-dollar by the amount of such funding. The First Lien ABL DIP Agent shall be permitted to increase the amount of the Specified ABL Reserve to

---

[15]     The Specified ABL Reserve shall constitute the "Carve Out Reserve" for purposes of the ABL DIP Loan Agreement.

the extent of any discrepancy between the information provided to the First Lien ABL DIP Agent pursuant to this paragraph 9 and any information otherwise available to the First Lien ABL DIP Agent including, without limitation, any fee applications filed by any Professional Persons.  For the avoidance of doubt, the Committee shall be entitled to contemporaneous notice of any increase in the amount of the Specified ABL Reserve with the Debtor Professionals.

(d)     <u>Carve Out Trigger Notice</u>.  On the day on which a Carve Out Trigger Notice is given by one of the DIP Agents to the Debtors with a copy to counsel to the Committee and counsel to the other DIP Agent (the "<u>Termination Declaration Date</u>"), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund, to the extent not already funded, (A) the Pre-Carve Out Trigger Notice Reserve Account in an amount equal to the aggregate amount of all Estimated Fees and Expenses reflected in the Final Statements delivered to Debtors, the DIP Agents, and the Prepetition Agents, and (B) after funding the Pre-Carve Out Trigger Notice Reserve Account, a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims. For the avoidance of doubt, if a Carve Out Trigger Notice is delivered, the ABL Secured Parties shall not sweep funds in the Debtors' cash management system unless and until the Carve Out Reserves have been funded in full.  The DIP Agents and the Prepetition Agents reserve their respective rights (subject to the Intercreditor Agreement) as to the allocation of proceeds used to fund the Carve Out as among the DIP Collateral and the Prepetition Collateral.  For purposes of the Intercreditor Agreement and the calculation of  "Excess ABL Obligations" (as such term is used in the Intercreditor Agreement), the "Carve Out" (as such term is defined in the Intercreditor Agreement) will be deemed to exclude any amounts funded into the Carve Out Reserves.

(e)     <u>Application of Carve Out Reserves</u>.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserve Account shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full.  If the Pre Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii) below, all remaining funds shall be distributed first to the DIP Agents to be applied, in accordance with the Intercreditor Agreement, on account of the applicable DIP Obligations until indefeasibly paid in full, in cash, all DIP Commitments have been terminated, and all Letters of Credit (as defined in the First Lien Prepetition ABL Credit Agreement) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable issuer of such Letters of Credit), and thereafter to the Prepetition Secured Parties to be applied, in accordance with the Intercreditor Agreement and their rights and priorities as of the Petition Date.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve Account shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "<u>Post-Carve Out Amounts</u>").  If the Post Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii) below, all remaining funds shall be distributed first to the DIP Agents to be applied, in accordance with the Intercreditor Agreement, on account of the applicable DIP Obligations until indefeasibly paid in full, in cash, all DIP Commitments have been terminated, and all Letters of Credit (as defined in the First Lien Prepetition ABL Credit Agreement) have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable issuer of such Letters

of Credit), and thereafter to the Prepetition Secured Parties to be applied, in accordance with the Intercreditor Agreement and their rights and priorities as of the Petition Date.

(iii)     Notwithstanding anything to the contrary in the Financing Agreements or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in paragraph 9(d), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP ABL Agents or the Prepetition Agents, as applicable.

(iv)     Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agents and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but the DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in  the Carve Out Reserves (which liens shall be deemed automatically perfected senior liens), with any excess paid as provided in paragraphs (i), (ii). and (iii) above.

(v)     Notwithstanding anything to the contrary in this Final Order, (A) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (B) subject to the limitations with respect to the DIP ABL Agents, DIP ABL Lenders, Prepetition ABL Agent, and Prepetition ABL Lenders set forth in paragraph (b), above, in no way shall any Initial DIP Budget or any Approved DIP Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order,  the Carve Out shall be

senior to all liens, security interests and superpriority claims hereunder, under the DIP Documents or the Prepetition Credit Documents, including the DIP Liens, the Adequate Protection Liens, the Adequate Protection Super-Priority Claims, the Royalty Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(f)     No Direct Obligation To Pay Allowed Professional Fees.  None of the DIP Agents, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)     Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be entitled to the protections granted under this Final Order, the Financing Agreements, the Bankruptcy Code, and applicable law.

10.     ***Limitation on Charging Expenses Against Collateral***.  Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, the DIP Agents, the DIP Lenders or the Prepetition Secured Parties pursuant to Bankruptcy Code sections 506(c) or 105(a), or any similar principle of law or equity, without the

prior written consent of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agents, the DIP Lenders or the Prepetition Secured Parties.

11.      ***No Marshaling/Application of Proceeds***.   The DIP Agents and the Prepetition Agents shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition Collateral, as applicable, in accordance with the provisions of the DIP Orders, the DIP Documents, the Intercreditor Agreement and the Prepetition Credit Documents, as applicable, and in no event shall the DIP Agents, the DIP Lenders or any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral; *provided*, *however*, in the event that either (x) the DIP Lenders and the Prepetition Secured Creditors are not indefeasibly paid in full in connection with one or more going concern sales that include Prepetition Collateral and DIP Collateral, or (y) the DIP Lenders and the Prepetition Secured Parties are not indefeasibly paid in full as a result of the liquidation of their Prepetition Collateral and DIP Collateral (other than commercial tort claims (and the proceeds thereof, if any), the proceeds of Avoidance Actions, or claims or causes of action against officers and directors of the Debtors (and the proceeds thereof, if any)), the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders, as applicable, solely during the Specified Marshaling Period (as defined below), in seeking to satisfy the balance of their claims (whether prepetition or postpetition, secured or unsecured, including postpetition administrative expense claims and Adequate Protection Superpriority Claims) shall only seek to sell, liquidate or otherwise monetize Prepetition Collateral and DIP Collateral that are not (a) proceeds of Avoidance Actions, (b) commercial tort claims and the proceeds, if any, thereof, and (c) claims and causes of action against officers and directors of the Debtors, and the proceeds, if

48

any, thereof.  "Specified Marshaling Period" means the period ending on the date that is 120 days after the sale, liquidation or disposition of substantially all of the other Collateral (other than commercial tort claims and claims or causes of action against officers and directors of the Debtors, and the proceeds, if any, thereof, and the proceeds of Avoidance Actions), unless the Committee consents in writing to an earlier termination of the Specified Marshalling Period or the Court orders otherwise with the consent of the Committee.

12.     ***Equities of the Case***.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the Debtors and the Committee shall not seek to invoke or invoke the "equities of the case" exception under Bankruptcy Code section 552(b) or support any motion by any party in interest seeking to invoke or invoking the "equities of the case" exception under Bankruptcy Code section 552(b) with respect to the proceeds, products, offspring or profits of any of the Prepetition Collateral.

13.     ***Use of Cash Collateral***.  The Debtors are hereby authorized to use all Cash Collateral solely in accordance with this Final Order, the DIP Documents, and the Initial DIP Budget or the Approved DIP Budget then in effect, including, without limitation, to make payments on account of the Adequate Protection Obligations provided for in this Final Order. Except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

14.     ***Adequate Protection***.  As adequate protection for the interest of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) on account of any decrease in the value of the interests of the Prepetition Secured Parties in the Chapter 11 Cases (collectively, the "Diminution in Value"), the Prepetition Secured Parties shall receive the following adequate protection obligations as follows (the "Adequate Protection Obligations"):

(a)     <u>First Lien Prepetition ABL Adequate Protection Liens</u>.  Subject to the Carve Out, as adequate protection and solely to the extent of the Diminution in Value in the value of the interests of the First Lien Prepetition ABL Secured Parties in their Prepetition Collateral resulting from the use of collateral or otherwise, and until such time as all First Lien Prepetition ABL Obligations are rolled-up into First Lien DIP ABL Obligations, the First Lien Prepetition ABL Secured Parties are hereby granted replacement liens on the collateral securing the First Lien DIP ABL Obligations that shall be junior to the liens on the collateral securing the First Lien DIP ABL Obligations and any Permitted Liens (as defined in the DIP ABL Credit Agreement) but senior to all other liens on the collateral securing the First Lien DIP ABL Obligations, in each case according to the relative priorities set forth on **Exhibit 4** (the "<u>First Lien Prepetition ABL Adequate Protection Liens</u>").

(b)     <u>Second Lien Prepetition Term Adequate Protection Liens</u>.  Subject to the Carve Out, as adequate protection and solely to the extent of the Diminution in Value in the value of the interests of the Second Lien Prepetition Term Secured Parties in their Prepetition Collateral resulting from the use of collateral or otherwise, the Second Lien Prepetition Term Secured Parties are hereby granted replacement liens on the collateral securing the Second Lien DIP Term Obligations that shall be junior to the liens on the collateral securing the Second Lien DIP Term Obligations and any Permitted Liens (as defined in the DIP Term Loan Credit Agreement) but senior to all other liens in the collateral securing the Second Lien DIP Term Obligations, in each case according to the relative priorities set forth on **Exhibit 4** (the "<u>Second Lien Prepetition Term Adequate Protection Liens</u>" and, together with the First Lien Prepetition ABL Adequate Protection Liens, the "<u>Adequate Protection Liens</u>").

(i)        The Adequate Protection Liens shall be (A) deemed to be valid, binding, non-avoidable, enforceable and fully perfected as of the Petition Date and (B) in all instances, subject to the Intercreditor Agreement and with the relative priorities set forth on **Exhibit 4** hereto.  Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to Bankruptcy Code sections 506(c), 510, 549, or 550.  No lien or interest avoided and preserved for the benefit of any Debtor's estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Adequate Protection Liens.

(ii)        Priority of Adequate Protection Liens.  The Adequate Protection Liens shall be payable from and have recourse to all Prepetition Collateral and DIP Collateral, subject to the Intercreditor Agreement (including the priorities set forth therein), with relative priorities set forth on **Exhibit 4** hereto.

(c)        Adequate Protection Superpriority Claims.

(i)        Superpriority Claims of the Prepetition Secured Parties.  Subject to the Carve Out, as further adequate protection of the interests of the Prepetition Secured Parties with respect to the Prepetition Secured Obligations, each of the Prepetition Secured Parties are hereby granted to the extent of the Diminution in Value in their respective Prepetition Collateral an allowed administrative claim against the Debtors' Estates under section 503 of the Bankruptcy

Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their Estates of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 546(c), and 726 of the Bankruptcy Code, as provided for by section 507(b) of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claims</u>"), to the extent that the Adequate Protection Liens do not adequately protect against the Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral.

(ii)    <u>Priority of Adequate Protection Superpriority Claims</u>.    The Adequate Protection Superpriority Claims shall be payable from and have recourse to all Prepetition Collateral, DIP Collateral, and pre- and postpetition property of the Debtors, and all proceeds thereof, including, without limitation, all proceeds of claims or causes of action that the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof; <u>provided</u>, however, that effective as of entry of the Interim Order, the Adequate Protection Super-Priority Claims shall be payable from and have recourse to all proceeds of claims or causes of action that the Debtors may be entitled to assert under section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof, subject to the Intercreditor Agreement (including the priorities set forth therein), with relative priorities set forth in the **<u>Exhibit 4</u>** hereto.

(d)    <u>Adequate Protection Payments</u>.    As adequate protection for the Diminution in Value in the value of the interests of the holders of the Prepetition Secured Obligations in their respective Prepetition Collateral, and the security interests and liens securing the Prepetition Secured Obligations, the Prepetition Secured Parties shall be entitled to (a) adequate protection

payments in the amount of any amounts due under the Prepetition Credit Agreements at the times required therein (including, without limitation, interest at the respective default rate, indemnities, and expenses) solely with respect to any such Prepetition Secured Obligations that are not refinanced or rolled-up, and in all cases, subject to the provisions of the Intercreditor Agreement (but subject to the Challenge rights to the extent preserved in paragraph 24 below) and (b) in accordance with this Final Order, the payment of all reasonable and documented fees, costs, expenses and charges of the DIP Professionals to the extent permitted under the Prepetition Credit Documents, respectively (the "Adequate Protection Payments"); *provided*, *however*, that following the occurrence and during the continuance of a default under the First Lien DIP ABL Facility, no Adequate Protection Payments shall be made on account of the Second Lien Prepetition Term Obligations without the prior written consent of the First Lien DIP ABL Agent; *provided further*, *however*, that notwithstanding the foregoing, the out-of-pocket expenses incurred by the Prepetition Secured Parties prior to and unpaid as of the Closing Date and due under the applicable Prepetition Credit Agreement shall be paid indefeasibly upon the occurrence of the Closing Date without the Prepetition Secured Parties being required to deliver an invoice in summary form as set forth herein. The Prepetition Secured Parties shall deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information) to the Debtors, counsel to the Debtors, counsel to the DIP Lenders, the U.S. Trustee, and any Committee, with a copy of such invoices delivered simultaneously to the DIP Agents. If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the Debtors (the "Adequate Protection Payment Objection Deadline"), counsel to the Debtors, the U.S. Trustee, and any Committee, the Debtors shall promptly pay such fees and expenses in full. If an objection to a Prepetition Secured

Parties' invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice after the applicable Adequate Protection Payment Objection Deadline has passed, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The Prepetition Secured Parties shall not be required to file applications or motions with, or obtain approval of, the Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts).  The amounts paid pursuant to a Prepetition Secured Parties' invoice in accordance with this paragraph 14(d) may be recharacterized as payments of the Prepetition Secured Obligations (as principal, interest or otherwise) upon entry of a final, non-appealable order of the Court finding that such recharacterization is proper.

(e)    Reservations of Rights.  Subject to the Carve Out described in paragraph 9 hereof and the Intercreditor Agreement, nothing contained herein shall impair or modify the Prepetition Secured Parties' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties in this Final Order is insufficient to compensate for the Diminution in Value of the interest of the Prepetition Secured Parties' in the Prepetition Collateral during these Chapter 11 Cases or any Successor Cases.  Nothing contained in this Final Order shall be construed as an admission as to the existence or extent of any Diminution in Value, if any, in the interest of any Prepetition Secured Parties in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any assertion of Diminution in Value or contest any request for additional adequate protection.  Notwithstanding anything contained in this Final Order, all parties' rights are reserved with respect to allocation of any Adequate Protection Payments provided for in this Final Order with respect to any allowed secured claims of any parties receiving such Adequate Protection Payments.

15.     *Insurance*.  Except as subject to the terms of the Debtors' nonresidential real property leases and otherwise to the fullest extent provided by applicable law, at all times the Debtors shall maintain usual and customary casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date.  The DIP Agents shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and lender's loss payees on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral; *provided*, however, that the liens **granted** on proceeds herein shall not interfere with any rights held by a landlord under applicable law to insurance proceeds for damage to a landlord's property in accordance with the terms of the Debtors' nonresidential real property leases.

16.     **Reservation of Rights of the DIP Agents, DIP Lenders, Prepetition Secured Parties and IP Licensors**.  Except as otherwise expressly set forth in this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, subject in all respects to the terms of the Intercreditor Agreement, as applicable: (a) any of the rights of any of the Prepetition Secured Parties or IP Licensors to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection; (b) any of the rights of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or the IP Licensors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or the IP Licensors to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, (iii) seek to propose, subject to the provisions of

Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or the IP Licensors.  The delay in or failure of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or the IP Licensors to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Agents', the DIP Lenders', the Prepetition Second Lien Parties', or the IP Licensors' rights and remedies.

17.    ***Termination Event***.    The occurrence of any of the following shall constitute a "Termination Event": (a) the occurrence of an Event of Default (as defined in either of the DIP Credit Agreements) to the extent not waived or subject to a forbearance or similar agreement with the applicable lenders, or (b) the occurrence of the Maturity Date (as defined in each of the DIP Credit Agreements).

18.    ***Remedies Upon a Termination Event***.    Upon the occurrence and during the continuation of a Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, (a) any DIP Agent (with the consent of the respective Required Lenders, as defined in the applicable DIP Credit Agreements) may send a written notice to the Debtors, counsel to the Committee (if appointed), counsel to each of the Prepetition Agents, and the U.S. Trustee (any such declaration shall be referred to herein as a "Termination Declaration"), which shall be filed on the docket of the Chapter 11 Cases, declaring (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the commitment of each DIP Lender to make loans under the DIP Facilities to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facilities, (3) the termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Liens or the DIP

Obligations, and (4) the application of the Carve Out has occurred following the delivery of the Carve-Out Trigger Notice (as defined herein) to the Borrower; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Documents; and (c) any DIP Agent (with the consent of the respective Required Lenders, as defined in the applicable DIP Credit Agreements) may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, other than to pay expenses set forth in the Approved DIP Budget so long as such payments do not result in an overadvance under the DIP Facilities; *provided that* the Debtors' use of Cash Collateral shall be prohibited if an overadvance exists at such time or would result from the use of such Cash Collateral.  The earliest date on which a Termination Declaration is delivered by the DIP Agent (at the direction of the respective Required Lenders, as defined in the applicable DIP Credit Agreements) and filed on the Docket shall be referred to herein as the "<u>Termination Date</u>."  Following a Termination Date, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Facilities.  The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, counsel to each of the Prepetition Agents, and the U.S. Trustee.

19.    ***Emergency Hearing***.  The Debtors, the DIP Agents (at the direction of the respective Required Lenders, as defined in the applicable DIP Credit Agreements), and the Committee (if any), may seek an emergency hearing during the five (5) business days following the date a Termination Declaration is delivered (such five (5) business day period, the "<u>Remedies Notice Period</u>").  During the Remedies Notice Period, the Debtors shall continue to have the right to use Cash Collateral in accordance with the terms of this Final Order, solely to pay expenses set forth in the Approved DIP Budget so long as such payments do not result in an overadvance under

the DIP Facilities; *provided that* the Debtors' use of Cash Collateral shall be prohibited if an overadvance exists at such time or would result from the use of such Cash Collateral.  At the end of the Remedies Notice Period, unless the Court has entered an order to the contrary, the Debtors' right to use Cash Collateral shall immediately cease, unless otherwise provided herein, and the DIP Agent and DIP Lenders shall have the rights set forth immediately below.

20.     ***Certain Rights and Remedies Following the Termination Date***.  Following a Termination Date and upon either the expiration of the Remedies Notice Period or order of the Court (which may authorize the remedies set forth in this paragraph or any other appropriate remedy as then determined by the Court) upon an emergency motion by any DIP Agent (at the direction of the respective Required Lenders, as defined in the applicable DIP Credit Agreements) to be heard on no less than five (5) business days' notice (and the Debtors shall not object to such shortened notice) (the "Termination Enforcement Order"), the DIP Agents shall be entitled to exercise all rights and remedies in accordance with the DIP Documents, this Final Order, and applicable law and shall be permitted to satisfy the relevant DIP Obligations and DIP Superpriority Claims, to be applied in accordance with the priorities set forth in **Exhibit 4** hereto.  Following entry of the Termination Enforcement Order, except as otherwise ordered by the Court (including in any Termination Enforcement Order): (a) subject to the terms of this Final Order and the Intercreditor Agreement, the First Lien DIP ABL Secured Parties, the Second Lien DIP Term Secured Parties and the First Lien Prepetition ABL Secured Parties, as applicable, may exercise any rights and remedies against the DIP Collateral available to them under this Final Order, the respective DIP Documents, the First Lien Prepetition ABL Credit Documents and applicable non-bankruptcy law, including but not limited to terminating all commitments to extend credit under the DIP Facilities, in each case subject to the Carve Out and Permitted Liens (if any); (b)

subject to the Intercreditor Agreement and the terms of this Final Order, the Second Lien Prepetition Term Loan Secured Parties may exercise any rights and remedies to satisfy the Second Lien Prepetition Term Obligations, the Second Lien Prepetition Term Adequate Protection Liens, and the Adequate Protection Super-Priority Claims, in each case subject to the Carve Out, the First Lien Prepetition ABL Obligations, the First Lien ABL Adequate Protection Obligations, the DIP Obligations, the Permitted Liens (if any).  Notwithstanding the foregoing, the DIP Agents, DIP Lenders, Prepetition Agents and Prepetition Secured Lenders, as applicable (collectively, the "Termination Enforcement Parties"), may only enter upon a leased premises of the Debtors following an Event of Default or Termination Date in accordance with (i) a separate written agreement among the Termination Enforcement Parties and the applicable landlord for the leased premises, (ii) pre-existing rights of the Termination Enforcement Parties under applicable nonbankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice to and an opportunity to be heard for the applicable landlord for the leased premises.

21.     ***Perfection of the DIP Liens and Adequate Protection Liens***.

(a)     The DIP Agents and the Prepetition Agents are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Whether or not the DIP Agents or the Prepetition Agents shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed

valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Final Order), at the time and on the date of entry of this Final Order.  Upon the request of the DIP Agents and the Prepetition Agents, each of the First Lien Prepetition ABL Lenders, the Second Lien Prepetition Term Lenders and the Debtors, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in the case of the Prepetition Secured Lenders, without representation or warranty of any kind) to enable the DIP Agents and the Prepetition Agents to further validate, perfect, preserve and enforce the DIP Liens and the applicable Adequate Protection Liens, respectively.  All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agents or the applicable Prepetition Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Final Order.

(c)     Any provision of any lease (except for nonresidential real property leases other than in respect of the proceeds thereof as otherwise approved hereby or except as may be otherwise ordered by this Court in connection with any action of the Debtors authorized pursuant to section 365) or other license, contract or other agreement that requires (i) the consent or approval of one or more parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign or otherwise transfer any such interest, license, contract, other agreement, or the proceeds thereof, or other collateral related thereto, is hereby

deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such interest, license, contract, other agreement, or the proceeds of any assignment, and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreements or this Final Order.

22.     ***Preservation of Rights Granted Under this Final Order***.

(a)     Unless and until the DIP Obligations, First Lien Prepetition ABL Obligations and First Lien ABL Adequate Protection Obligations are indefeasibly paid in full, in cash or in kind, as applicable, and all commitments to extend credit under the DIP Facilities are terminated, the Second Lien Prepetition Term Lenders shall, in each case solely to the extent provided for in the Prepetition Credit Documents, the Intercreditor Agreement, and applicable law: (i) take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Second Lien Prepetition Term Credit Documents or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) be restricted from exercising any rights and remedies or taking any other actions in respect of the DIP Collateral to the extent provided by the this Final Order, the DIP Documents, the Intercreditor Agreement and applicable law.

(b)     In the event this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise, any liens or claims granted to the Prepetition Secured Parties or the IP Licensors hereunder arising prior to the effective date of any such vacatur, reversal or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein, and the Prepetition Secured Parties shall be entitled to the protections afforded in Bankruptcy Code

section 363(m) with respect to all uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations.

(c)     Subject to the Carve Out, unless and until all DIP Obligations, First Lien Prepetition ABL Obligations, Second Lien Prepetition Term Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash or in kind, as applicable, and all commitments to extend credit under the DIP Facilities are terminated, it shall be an immediate Event of Default under the DIP Documents if the Debtors shall seek or consent to, directly or indirectly: (i) except as permitted under the DIP Documents, (x) any modification, stay, vacatur or amendment of this Final Order, (y) a priority claim for any administrative expense, secured claim or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a) or 507(b)) in any of the Chapter 11 Cases, equal or superior to the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the First Lien Prepetition ABL Obligations, and the Second Lien Prepetition Term Obligations (or the liens and security interests securing such claims and obligations), or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Documents, any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens, the First Lien Prepetition ABL Liens or the Second Lien Prepetition Term Liens, as the case may be; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iv) except as set forth in the DIP Documents, the return of goods pursuant to Bankruptcy Code section 546(h) (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (v) an order converting or dismissing any of the Chapter 11 Cases; (vi) an order appointing a chapter 11 trustee in any of the Chapter 11

Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(d)     Notwithstanding any order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and any other administrative claims granted pursuant to this Final Order, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order and the DIP Documents until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full, in cash or in kind, as applicable (and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims and the other administrative claims granted pursuant to this Final Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(e)     Except as expressly provided in this Final Order, the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Royalty Superpriority Claims and all other rights and remedies of the DIP Agents, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, and the IP Licensors granted by the provisions of this Final Order and the DIP Documents shall survive, shall maintain their priority as provided in this Final Order, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to Bankruptcy Code section 363(b) or (iii) the

entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered or in any superseding chapter 7 cases under the Bankruptcy Code.

23.    ***Expenses and Indemnification***.

(a)    All (i) reasonable and documented out-of-pocket fees and expenses incurred by the DIP Professionals in connection with the Chapter 11 Cases (in any capacity) and the DIP Facilities, whether or not the DIP Facilities are successfully consummated, and (ii) reasonable and documented out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of DIP Professionals) of the DIP Agents and the DIP Lenders for enforcement costs and documentary taxes associated with the DIP Facilities and the transactions contemplated thereby, are to be paid by the Debtors in accordance with the procedures described in paragraph 14(d) hereof.

(b)    The Debtors shall indemnify and hold harmless the DIP Secured Parties in accordance with, and subject to, the terms and conditions of the DIP Documents.

24.    ***Effect of Stipulations on Third Parties***.  The Debtors' Stipulations and the Release contained herein shall be binding in all circumstances upon the Debtors and upon their Estates. The Debtors' Stipulations shall be binding upon each other party-in-interest, including the Committee, except to the extent such party in interest (including any chapter 11 trustee) or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined herein), the chapter 7 trustee in such Successor Case), *first* obtains standing by

no later than July 8, 2024 (the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined herein) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "Challenge"), such Challenge is fully and finally adjudicated, (i) and (ii) shall be referred to as the "Challenge Period Termination Date") and *second*, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge"); provided, however, that the Committee may consent in writing to an earlier termination of the Challenge Period solely with respect to the Committee.  The filing of a motion seeking standing to file a Challenge before expiration of the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period with respect to solely that party until two business days after the Court rules on the standing motion, or such other time period ordered by the Court in ruling on the standing motion.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court, (i) any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise authorized by this Final Order (whether made prior to, on, or after the Petition Date) shall not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever

released, waived, and barred, (iii) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee.  Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party-in-interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge; *provided*, that all other stipulations (other than those subject to a Successful Challenge) shall remain binding on any Committee or other party-in-interest.  Notwithstanding any provision to the contrary herein, nothing in this Final Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' Estates.  The failure of any party-in-interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' Estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph 24 or to require or permit an extension of the Challenge Period Termination Date.  No portion of the Carve Out, any Cash Collateral, any other DIP Collateral, or any proceeds of the DIP Facility, including any disbursements set forth in the Approved DIP Budget or obligations benefitting from the Carve Out, shall be used for the payment of Allowed Professional Fees, disbursements, costs or expenses incurred by any person, including, without limitation, any Committee, in connection with challenging the DIP Secured Parties', the

Prepetition Secured Parties' liens or claims, preventing, hindering or delaying any of the DIP Secured Parties' or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral, or initiating or prosecuting any claim or action against any DIP Secured Party or Prepetition Secured Party; *provided further* that, for the avoidance of doubt, the Court may fashion any remedy it deems appropriate in any order granting a Successful Challenge. Notwithstanding the foregoing, proceeds from the DIP Facility and/or Cash Collateral not to exceed $200,000 in the aggregate (the "Investigation Budget Cap") may be used on account of Allowed Professional Fees incurred by Committee Professionals (if any) in connection with the investigation of avoidance actions or any other claims or causes of action (but not the prosecution of such actions) on account of the Obligations, under the Prepetition Credit Documents and Prepetition Secured Parties (but not the DIP Facility and DIP Secured Parties); *provided, further*, that nothing in this Final Order shall prejudice or limit the Committee from asserting an administrative expense claim against the Debtors for any fees and expenses incurred in connection with any action described in this paragraph 24 in excess of $200,000 and nothing in this Final Order shall prejudice any party in interest from objecting to the allowance of any such asserted administrative expense claim under sections 330 and 331 of the Bankruptcy Code (or any other section pursuant to which such administrative expense claims described in this paragraph 24 are asserted).

25.     ***Release***.  Subject to the rights and limitations set forth in paragraph 24 of this Final Order, each of the Debtors and the Debtors' Estates, on its own behalf and on behalf of each of their predecessors, their successors and assigns shall to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties (in each case, solely in their capacities as such) and each of their respective former, current

or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds or investment vehicles, managed, advised or sub-advised accounts, funds or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and predecessors in interest, each solely in their capacity as such (all such released parties, collectively, the "DIP Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof solely with respect to or relating to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Prepetition Liens and the Prepetition Secured Obligations (including the First Lien DIP ABL Roll-Up Loans and the Second Lien DIP Roll-Up Term Loans), as applicable, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection or avoidability of the liens or claims of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties.  For the avoidance of doubt, the DIP Released Parties shall not include (i) any parties affiliated with the Debtors, including the Debtors' current or former directors and officers and the Debtor Professionals, (ii) the IP Licensors and any parties affiliated with the IP Licensors, or (iii) MGF Sourcing US, LLC or any parties affiliated with MGF Sourcing US, LLC.  Any reference to the satisfaction,

repayment or payment in full of the DIP ABL Obligations and the DIP Term Obligations and the termination of the First Lien DIP ABL Facility or the Second Lien DIP Term Facility, in this Final Order, the First Lien DIP ABL Documents or the Second Lien DIP Term Documents, respectively, shall mean and include, in addition to and without limitation of any provisions in this Final Order, the First Lien DIP ABL Documents or the Second Lien DIP Term Documents, respectively, the receipt by First Lien DIP ABL Agent and the Second Lien DIP Term Agent, as applicable, of an agreement releasing in the same manner as described in this paragraph 25 the respective DIP Released Parties from all claims arising on or before the date of such payment in full and termination (the "Release").

26.     ***Limited IP Licensor Release***.  Notwithstanding anything to the contrary herein, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors and assigns, or any other person, including the Committee, claiming through the Debtors shall to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge (the "Limited IP Payment Release") all claims and causes of action arising under Chapter 5 of the Bankruptcy Code or otherwise against the IP Licensors, solely as it relates to the Debtors' payment of $5,666,667 under the License Agreements to the IP Licensors on April 19, 2024 (the "Limited IP Payment"); *provided*, that the DIP Lenders shall not be deemed to have waived any claims or causes of action with respect to the amount of the Limited IP Payment not otherwise returned to the Debtors' estates as of the entry of this Final Order until the closing of a going-concern sale transaction, the payment in full of the DIP Obligations, or unless otherwise agreed to in writing by the DIP Lenders (it being understood that all parties reserve rights as to the existence of any such claims or causes of action and/or the standing of the DIP Lenders in respect thereof).  For the

avoidance of doubt, the Debtors and the Debtors' estates retain, and do not release, any other claims and causes of action against the IP Licensors, if any, and any other such claims or causes of action against the IP Licensors shall not be subject to the Challenge Period.

27. ***Credit Bidding***. (a) Subject to this Final Order and the Intercreditor Agreement, and consistent with section 363(k) of the Bankruptcy Code and applicable law, the First Lien DIP ABL Agent, Second Lien DIP Term Agent, or any assignee or designee of the DIP Agents shall have the right to credit bid up to the full amount of the First Lien DIP ABL Loans or Second Lien DIP Term Loans, as applicable, in the sale of any of the Debtors' assets, including pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129 or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725, (b) subject to this Final Order and the Intercreditor Agreement and the discharge of the First Lien DIP ABL Obligations and consistent with section 363(k) of the Bankruptcy Code and applicable law, the First Lien Prepetition ABL Agent or any assignee or designee thereof, on behalf of the First Lien Prepetition ABL Parties, shall have the right to credit bid up to the full amount of the First Lien Prepetition ABL Obligations in the sale of any of the Debtors' assets, including pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129 or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725, and (c) subject to the discharge of the First Lien DIP ABL Obligations, Second Lien DIP Term Obligations, First Lien Prepetition ABL Obligations and the indefeasible payment in full of the DIP Obligations and the First Lien Prepetition ABL Obligations, and subject to the Intercreditor Agreement, and consistent with section 363(k) of the Bankruptcy Code and applicable law, the Second Lien Prepetition Term Loan Agent (on behalf of the Second Lien Prepetition Term

Lenders) shall have the right to credit bid up to the full amount of the Second Lien Prepetition Term Obligations in the sale of any of the Debtors' assets, including, but not limited to, pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129 or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725.  The DIP Agents and the First Lien Prepetition ABL Agent or Second Lien Prepetition Term Agent (in accordance with the DIP Documents and this Final Order), shall have the absolute right to assign, sell or otherwise dispose of their respective rights to credit bid in connection with any credit bid by or on behalf of the DIP Secured Parties to any acquisition entity or joint venture formed in connection with such bid.  Notwithstanding anything herein to the contrary, all rights of the Committee to challenge, for cause pursuant to section 363(k) of the Bankruptcy Code, any credit bid based on any liens securing the DIP Obligations, any Adequate Protection Obligations, and/or any Prepetition Secured Obligations, including by the DIP Agents or Prepetition Agents (in each case, either directly or through one or more acquisition vehicles), bidding procedures or sale, are hereby fully reserved and preserved.  To the extent that there is a successful Challenge and the DIP Agents or the Prepetition Agents have submitted a credit bid pursuant to 363(k), the Court may fashion an appropriate remedy.

28.    ***Final Order Governs***.  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

29.    ***Proof of Claim***.  None of the Prepetition Secured Parties or the DIP Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases in order to assert claims for payment of the Prepetition Secured Obligations arising under the Prepetition Credit Documents or the DIP Obligations arising under the DIP Documents.  The statements of claim in respect of the Prepetition Secured Obligations and the DIP Obligations set forth in this

Final Order (including the DIP Documents and the Debtors' Stipulations), together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient and do constitute timely filed proofs of claim in respect of such debt and such secured status against each of the applicable Debtors. Any order entered by the Court in relation to the establishment of a bar date for any claim (including administrative claims) in any of the Chapter 11 Cases shall not apply to any of the DIP Secured Parties or Prepetition Secured Parties with respect to any claims and interests, including claims arising under or related to the DIP Documents or the Prepetition Credit Documents. Notwithstanding the foregoing, or any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases, the DIP Agents and the Prepetition Agents are hereby authorized and entitled, in each case in its respective sole discretion, but not required, to file a master proof of claim in the Debtors' lead chapter 11 case, *Express, Inc., et al.*, 24-10831 (DRJ) (a "Master Proof of Claim"), which shall be deemed asserted against each of the Borrower and Guarantors (collectively, the "Obligor Debtors") in their respective Chapter 11 Cases. Upon the filing of a Master Proof of Claim, the Prepetition Agents and the DIP Agents, and each of their respective successors and assigns, as applicable, shall be deemed to have filed a proof of claim in the aggregate amount set forth in such Master Proof of Claim against each of the Obligor Debtors. The Master Proofs of Claim shall not be required to identify each Prepetition Secured Party (other than the Prepetition Agents) or whether such Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. A Master Proof of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Obligor Debtors to the applicable Prepetition

Secured Parties, which instruments, agreements, or other documents will be provided upon written request to the Prepetition Agents.  Any proof of claim filed by the Prepetition Agents shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the applicable Prepetition Secured Parties.  The provisions set forth in this paragraph 29 are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest.

30.    ***Reserves.***  The DIP Agents will provide the Committee Professionals with concurrent notice of the imposition of new reserves or the increase in the size of existing reserves as delivered to the Debtors pursuant to the DIP Credit Agreements.

31.    ***Events of Default.***  Section 6.01(q)(iv)(a) of the DIP Credit Agreements is modified as follows: "(a) the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Loan Documents or the Interim Order, the Final Order, the Store Closing Interim Order, the Store Closing Final Order or the Cash Management Order without the written consent of the Administrative Agent or the filing of a motion for reconsideration by a party other than a Loan Party or the Committee with respect to the Interim Order, the Final Order, the Store Closing Interim Order, the Store Closing Final Order or the Cash Management Order, or the Interim Order, the Final Order, the Store Closing Interim Order, the Store Closing Final Order or the Cash Management Order shall otherwise not be in full force and effect or (b) any Loan Party or any Subsidiary shall fail to comply with the Interim Order, the Final Order, the Store Closing Interim Order, the Store Closing Final Order or the Cash Management Order in any material respect."

32.    ***Liberty Mutual – LC Collateral***.  Notwithstanding any provision herein to the contrary, nothing in this Final Order, the Interim Order, the First Lien DIP ABL Credit Agreement, or in any amendments thereto, shall affect the rights of Liberty Mutual Insurance Company

("Liberty Mutual") in its letters of credit, associated letter of credit rights, or the cash proceeds thereof (collectively, "Liberty Mutual's LC Collateral"), and nothing herein shall be deemed to alter, limit, modify or impair any rights of Liberty Mutual in, to or under any of Liberty Mutual's LC Collateral, and the definition of "DIP Collateral" and "DIP Liens" shall not include or apply to any of Liberty Mutual's LC Collateral.  To the extent any of Liberty Mutual's LC Collateral is deemed to be subject to this Final Order or the Interim Order, such Liberty Mutual LC Collateral shall be deemed to be Permitted Liens under the DIP Credit Agreements.

33.     ***Broward County, Florida Taxing Authority***.  Notwithstanding anything else in this Final Order, nothing in this Final Order shall prime any pre- or post-petition statutory property tax liens in favor of Broward County, Florida, only to the extent such liens are valid, senior, perfected, and unavoidable; *provided*, *however*, that all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by Broward County, Florida are fully preserved.

34.     ***Chubb Reservation of Rights***.  For the avoidance of doubt, (i) the proceeds of any insurance policy issued by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers, "Chubb") shall only be considered to be DIP Collateral to the extent such proceeds are paid to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy or applicable law; and (ii) nothing, including the DIP Documents, the Interim Order and/or this Final Order, alters or modifies the terms and conditions of any insurance policies issued by Chubb and/or any agreements related thereto.

35.     ***Comenity Bank***.

(a)     Comenity Capital Bank's (referred to herein as "Comenity") rights of setoff and/or recoupment and right to use the Debtors' trademarks, service marks, and/or other rights

pertaining to the Debtors' names, if any, as set forth in the Private Label Credit Card Program

Agreement by and between Comenity Bank f/k/a World Financial Network National Bank and

Express, LLC and Retail Factoring, Inc. dated as of November 1, 2005 (as amended or modified

from time to time, the "Program Agreement"): (i) shall not be affected, modified, waived, primed,

subordinated, or impaired in any way by this Final Order, and (ii) shall not be made subject to,

subordinated by, or pari passu with any (x) secured financing, security interests, or liens, and/or

(y) super priority, administrative, or adequate protection claims.

(b)     All of Comenity's rights, remedies, claims, defenses, and other relief (if any)

arising from or related to the Program Agreement (including, but not limited to, those set forth in this

paragraph) are expressly preserved and reserved; provided that, notwithstanding anything contained in this

paragraph to the contrary, nothing in this paragraph will expand the rights or privileges set out by the

Program Agreement or applicable law, or otherwise will alter or affect the relative rights and priorities of

the Prepetition Secured Parties and Comenity that existed on the Petition Date; provided further that the

DIP Secured Parties' and Prepetition Secured Parties' rights, remedies, claims, defenses, and other relief

(if any) with respect to any of Comenity's rights, remedies, claims, defenses, and other relief (if any) arising

from or related to the Program Agreement are expressly preserved and reserved.

36.     *Texas Taxing Authorities*.  Notwithstanding any other provisions in this Final

Order or any final orders pertaining to postpetition financing or the use of cash collateral in these

Chapter 11 Cases, any statutory liens on account of ad valorem taxes held by the Texas Taxing

Authorities[16] (the "Tax Liens") shall neither be primed by nor made subordinate to any liens

---

[16]    For purposes of this Final Order, the term "Texas Taxing Authorities" shall refer to: City of Allen, Allen
Independent School District, Bexar County, Cameron County, Cypress-Fairbanks Independent School District,
Dallas County, Ector CAD, City of El Paso, Fort Bend County, City of Frisco, Galveston County, Harris County
Emergency Service District #9, Harris County Improvement District #1, Hidalgo County, City of Houston (for
those accounts collected by Linebarger Goggan Blair and Sampson), Houston Community College System,
Houston Independent School District, City of Humble, Irving Independent School District, Jefferson County,
Lone Star College System, City of McAllen, Montgomery County, Northwest Independent School District,
Nueces County, San Marcos CISD, Tarrant County, Brazos County, Denton County, Hays County, Williamson

granted to any party hereby to the extent the Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.  Further, as adequate protection for the asserted secured tax claims of the Texas Taxing Authorities (the "Tax Claims"), the Debtors shall set aside the amount of $473,450.00 in a segregated account from the proceeds of the sale of the Debtors' assets located in its Texas stores (the "Tax Reserve").  The asserted liens of the Texas Taxing Authorities shall attach to the Tax Reserve to the same extent and with the same priority as the liens they now assert against the property of the Debtors located in its Texas stores.  These funds shall be on the order of adequate protection and shall constitute neither the allowance of the Tax Claims nor a cap on the amounts the Texas Taxing Authorities may be entitled to receive.  The funds may be distributed only upon agreement between the Texas Taxing Authorities, the Debtors, and the DIP Agents, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities and the DIP Agents.

37.     ***Collin County, Collin College, and City of Plano Tax Liens***.  Notwithstanding anything in the Interim Order or any Final Order, or any agreements approved to the contrary, to the extent that Collin County, Collin College, or the City of Plano has valid, senior, perfected, enforceable, and nonavoidable liens as of the Petition Date for prepetition ad valorem taxes arising under state law on any DIP Collateral then, for the avoidance of doubt, such tax liens shall be deemed to be Permitted Liens under the DIP Credit Agreements, and neither the DIP Liens nor any other lien shall prime such tax lien as

---

County, Potter County Tax Office, Lubbock Central Appraisal District, City of Garland, Garland Independent School District, Plano Independent School District, Frisco Independent School District, Crowley Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Fort Bend Independent School District, Fort Bend County Levee Improvement District # 2, City of Katy, Katy Management District #1, Brazoria County, et al, Woodlands Metro Municipal Utility District, Woodlands Road Utility District, Clear Creek Independent School District, City of Houston (for those accounts collected by Perdue Brandon Fielder Collins and Mott), Humble Independent School District, Spring Branch Independent School District, Harris County Municipal Utility District 358, Harris County Water Control Improvement District 155, Dickinson Independent School District and Galveston County MUD #54.

described herein.  All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by Collin County, Collin College, or the City of Plano are fully preserved.

38.     ***Provisions Regarding United States of America***.  Notwithstanding anything in this Final Order or any DIP Documents, nothing in this Final Order or any DIP Documents shall affect, modify or impair the United States of America's rights and defenses of setoff and recoupment, if any.

39.     ***DIP Milestones***.  It is a condition of the DIP Facilities that the Debtors shall comply with those certain case milestones attached hereto as **Exhibit 5** (as amended, modified, or supplemented from time to time, the "DIP Milestones").   For the avoidance of doubt, Schedule 5.01(r) of the DIP Credit Agreements is deemed modified in accordance with **Exhibit 5** hereto, and, to the extent of any inconsistency with respect to such DIP Milestones as between the DIP Credit Agreements and this Final Order, this Final Order shall control; *provided*, that if the requisite parties to the DIP Credit Agreements subsequently agree to modify the DIP Milestones in accordance with the DIP Credit Agreements, then such subsequent agreement shall control; *provided, further,* that the consent of the Committee shall be required to shorten any of the DIP Milestones, and that the parties to the DIP Credit Agreements shall consult with the Committee regarding any extension of the DIP Milestones.

40.     ***Binding Effect; Successors and Assigns***.  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including without limitation, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, the IP Licensors, any Committee appointed in these Chapter 11 Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104 or any other fiduciary appointed as a legal

representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, and the IP Licensors.

41.     ***Limitation of Liability***.  In determining to make any loan under the DIP Documents, permitting the use of Cash Collateral or exercising any rights or remedies as and when permitted pursuant to this Final Order, the DIP Documents or the Prepetition Credit Documents, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties (in each case, solely in their capacities as such) shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or Estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order, the DIP Documents or the Prepetition Credit Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their direct or indirect subsidiaries.

42.     ***Effectiveness***.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final

Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

43.   ***Retention of Jurisdiction***.  The Court has and will retain jurisdiction to enforce the terms of any and all matters arising from or related to the DIP Facilities or this Final Order.

**Dated: June 6th, 2024**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**