**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>**EXPRESS, INC. et. al.,**<br><br>             Debtors. | **Chapter 11**<br><br>**Case No. 24-10831 (KBO)**<br><br>**(Jointly Administered)**<br><br>**Hearing: June 14, 2024 at 9:30 AM**<br>**Objection Date: June 13, 2024**<br><br>**Docket Nos. 41 and 414** |

**ORACLE'S RESERVATION OF RIGHTS REGARDING DEBTORS' SALE MOTION ("RIGHTS RESERVATION")**

Oracle America, Inc., successor in interest to PeopleSoft, Inc. and Sun MicroSystems, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 case, submits this Rights Reservation in response to the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Dkt. No. 41] ("Sale Motion"), filed by Express, Inc., *et al.* ("Debtors").

**I.    INTRODUCTION**

1. By the Sale Motion, the Debtors are seeking Bankruptcy Court authority to, among other things, sell substantially all of their assets. In connection with the Sale Motion, the Debtors filed an APA (defined below) with the Stalking Horse Bidders (defined below).

2. Oracle's agreements are, or pertain to, licenses of intellectual property that are not assignable or transferable absent Oracle's consent, pursuant to both the underlying license agreements and applicable law.

3. The APA apparently contemplates the provision of transitional services. Since the Debtors have not filed a copy of the proposed transitional services agreement, Oracle cannot determine whether it contemplates the unauthorized shared use of Oracle's licenses.

4. Accordingly, Oracle respectfully requests that the Court condition the proposed sale and the rights granted under any asset purchase agreement or related transitional use agreement to preclude simultaneous use and access to Oracle's licenses inconsistent with Oracle's terms of use.

## II.    FACTUAL BACKGROUND

5. The above captioned case commenced on April 22, 2024 ("Petition Date") and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

6. Oracle is a licensor of computer software and provides software related products, technical support, maintenance, educational materials and programs, as well as cloud-based and point of sale services, which often are designed for the customer's specific needs.

7. Prior to the Petition Date, the Debtors entered into various agreements with Oracle for the license of Oracle products and related support services.

8. On the Petition Date, the Debtors filed the Sale Motion, which seeks Court authority to sell substantially all of their assets.

9. The Debtors have identified Phoenix Retail, LLC ("Phoenix") as the JV Purchaser[1] which will purchase the Acquired Business Assets and EXPWHP, LLC ("EXPWHP", and together with Phoenix, the "Stalking Horse Bidders") as the WHP Global Purchaser which will purchase the Acquired IP Assets.

---

[1] Capitalized terms not defined herein shall have the same meaning as those set forth in the Sale Motion or APA.

10. On June 5, 2024, the Debtors filed the *Revised Notice of Selection of Stalking Horse Bidder* [Dkt. No. 414] ("Notice").

11. The Asset Purchase Agreement between the Debtors and the Stalking Horse Bidders ("APA") is attached to the Notice as Exhibit A.

12. The APA contemplates that the Debtors and Stalking Horse Bidders will enter into a Transitional Services Agreement ("TSA"), as follows:

> **Transition Services Agreement**. Between the date of this Agreement and the Closing, Sellers and Purchasers shall cooperate and negotiate in good faith to agree on the final terms of a transition services agreement (the "Transition Services Agreement)" containing the terms set forth in Section 6.4(d) and the Transition Services Agreement Term Sheet attached as Exhibit F hereto and otherwise in form and substance reasonably satisfactory to the Sellers and the JV Purchaser. In connection with the foregoing, Sellers and Purchaser will cooperate reasonably and in good faith to finalize the scope and other terms of the services to be provided pursuant to the Transition Services Agreement. The Parties agree to use their commercially reasonable efforts to complete the foregoing by the Closing Date. Without limiting the generality of the foregoing, such reasonable cooperation shall include Sellers providing access to data and information reasonably available to Sellers related to the services and making appropriate, knowledgeable personnel of Sellers or its Affiliates reasonably available to participate in meetings and other discussions to the extent any of the foregoing is requested by any Purchaser. Notwithstanding the foregoing, as part of the consideration of Purchasers entering into this Agreement, if Sellers and Purchasers do not agree to a Transition Services Agreement to be executed by Sellers and Purchasers as of the Closing, the terms and conditions of Section 6.4(d) and the Transition Services Agreement Term Sheet shall be effective as of the Closing as if they were the Transition Services Agreement and shall be legally binding upon both Sellers and Purchasers. However, the Parties will continue in accordance with this Section 6.13 to finalize and execute the Transition Services Agreement as promptly as possible following the Closing.

APA § 6.13.

13. Exhibit F is not attached to the APA nor has the TSA been filed with the Court. Thus, the specific services to be provided between the Debtors and the Stalking Horse Bidders during the post-closing period are not known.

14. In addition, the Stalking Horse Bidders may not be the ultimate purchasers as the sale is subject to overbid and an auction will be held on June 12, 2024, giving parties little to no time to review any additional sale related documents.

15. Therefore, Oracle reserves all rights regarding any TSA that may be included in any subsequent asset purchase agreement.

16. The acquired assets under the APA include "Assigned Business Contracts" which were to be identified on Schedule 1.1(a)(i) and (ii). However, no Schedules were included. The acquired assets also include "Business Data," which is defined in §1.1 (l) of the APA. Both of these provisions could potentially include Oracle's agreements.

17. The *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Dkt. No. 427], sets forth the assumption and assignment procedures.

18. It states in part, "As soon as the Debtors receive authorization from the Successful Bidder, the Debtors shall file on the docket and serve a notice of contracts assumed and assigned to any Successful Bidder (the "Contract Assumption Notice")….".

19. As of the date of filing this Rights Reservation, the Contract Assumption Notice has not been filed. Oracle intends to file a specific response to the Contract Assumption Notice if its contracts are implicated.

20. However, to the extent the Sale Motion and the APA, including any TSA, may have an impact on, or could be deemed to assume and assign Oracle's agreements, Oracle reserves all rights to be heard.

## III.  ARGUMENT

### A.  The Debtors May Not Transfer Any Oracle Agreement Absent Oracle's Consent Because Oracle's Agreements Pertain To Licenses Of Intellectual Property.

21.  Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

22.  If the Debtors wish to transfer Oracle's agreements, or rights under them, the Debtors first must obtain Oracle's consent. At this time, for the reasons discussed below, Oracle does not consent to any such transfer or shared use.

### B.  Simultaneous Use Of Any Oracle Agreement By The Debtors and The Stalking Horse Bidders Is Not Authorized.

23.  The APA contemplates that certain services will be provided between the Debtors and the Stalking Horse Bidders via the TSA.

24.  Precise information about the nature of the proposed services has not been provided, nor has the TSA been filed with the Court.

5

25. This omission precludes Oracle from evaluating whether, and if so, how, its contracts are affected.

26. Simultaneous use of, and access to, Oracle's licensed software would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Stalking Horse Bidders.

27. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and the Stalking Horse Bidders the right to shared use of the Oracle licenses beyond the licenses' terms.

28. Oracle accordingly reserves all rights regarding any APA and TSA, to the extent that either purports, or endeavors, to authorize the shared use of Oracle's licensed software and/or services, pending Oracle's further review of the same.

## IV. CONCLUSION

29. For the reasons set forth above, Oracle respectfully requests that as to Oracle, the Court conditions the proposed sale and the parties' rights under any asset purchase agreement or TSA to preclude simultaneous use and access which would be inconsistent with Oracle's terms of use.

Dated: June 13, 2024
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:   /s/ James E. Huggett
    James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Alice Miller, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**