# IIN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MARK STILL IN SUPPORT OF ENTRY OF AN ORDER (I) APPROVING ASSET PURCHASE AGREEMENT; (II) AUTHORIZING AND APPROVING SALE OF CERTAIN ASSETS OF DEBTORS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (III) APPROVING THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE; (IV) AUTHORIZING THE DEBTORS TO CONSUMMATE TRANSACTIONS RELATED TO THE ABOVE; AND (V) GRANTING RELATED RELIEF**

I, Mark Still, hereby declare under penalty of perjury:

1. I am the Senior Vice President and Chief Financial Officer at Express, Inc. I have provided financial and managerial services for the Debtors since I joined their team in June 2005. I was promoted to Vice President of Finance in January 2016. I have served as the Chief Financial Officer since April 21, 2024. I have more than 18 years of experience in providing financial modeling services in the retail industry with the Debtors. I graduated from the Ross School of Business at University of Michigan in 2005 with a Master of Business Administration degree in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

finance. I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

2. I submit this declaration (this "Declaration")[2] in support of entry of the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* (the "Proposed Sale Order").

3. I am familiar with sale and marketing processes related to the going-concern stalking horse asset purchase agreement (the "Stalking Horse APA") with Phoenix Retail, LLC (the "Phoenix JV"), a consortium to consist of PHXWHP, LLC, an affiliate of EXPWHP, LLC and affiliates of certain of the Debtors' landlords, specifically, SPG Fashion Retail, LLC and BPR Acquisitions LLC, and have selected the Phoenix JV to act as the stalking horse bidder (the "Stalking Horse Bidder") for the Debtors' business operations (as part of the Acquired Assets and Assumed Liabilities under the Stalking Horse APA (each as defined in the Stalking Horse APA)). The Stalking Horse APA is attached as Exhibit A to the Revised Notice of Selection of Stalking Horse Bidder [Docket No. 414] (the "Notice of APA") filed on June 5, 2024.

4. The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge, (b) information regarding the Debtors' operations and finances that I obtained from the Debtors' advisors or employees, (c) the Debtors' books, records, and relevant

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, the Bidding Procedures, the First Day Declaration, or the Stalking Horse APA.

documents, and/or (d) my opinions, experience, and knowledge as the Debtors' Senior Vice President and Chief Financial Officer.  In that capacity, I have been directly involved in the matters leading up to the Debtors' chapter 11 filings and postpetition operations.  I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## The Stalking Horse APA Represents the Highest or Otherwise Best Offer

5. As described in the Keil Declarations,[3] the Kamlani Declarations,[4] and the Still Bidding Procedures Declaration,[5] the Debtors, with the assistance of their advisors, engaged with numerous potential counterparties regarding one or more possible going-concern sale

---

[3] "Keil Declarations" means, collectively, the *Declaration of Adam Keil in Support of Entry of an Order (I)Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* to be filed in advance of the hearing (the "Keil Sale Declaration") and the *Declaration of Adam Keil, Managing Director of Moelis & Company LLC, in Support of the Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Keil Bidding Procedures Declaration") [Docket No. 380].

[4] "Kamlani Declarations" means, collectively, the *Declaration of Kunal S. Kamlani in Support of Entry of an Order (I)Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* to be filed in advance of the hearing (the "Kamlani Sale Declaration") and the *Declaration of Kunal S. Kamlani in Support of the Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures and Bid Protections,(II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Assumed Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* (the "Kamlani Bidding Procedures Declaration") [Docket No. 379].

[5] "Still Bidding Procedures Declaration" means *Declaration of Mark Still in Support of the Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Assumed Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Docket No. 378].

transactions (the "Marketing Process").  The Debtors began the Marketing Process prepetition, and have continued to run the Marketing Process throughout the pendency of these chapter 11 cases. The Marketing Process included fifty potential counterparties.  Ultimately, the Debtors received multiple Qualified Bids, but only one Qualified Bid contemplates a going-concern transaction for substantially all of the Debtors' assets and certain assumed liabilities.  The other Qualified Bids contemplate an enterprise-wide liquidation transaction.

6. I believe that the Stalking Horse APA represents the highest or otherwise best offer for the Debtors' assets.  The Debtors and their advisors value the cash component portions of the Stalking Horse Bidder's bid to be approximately $136 million, while the cash components of the liquidation bids amount to at least $200 million.  However, the one critical distinction between the Stalking Horse Bid and the other Qualified Bids is that of survival:  overall, the sale of substantially all of the Debtors' assets on the terms set forth in the Stalking Horse APA will preserve the Debtors' operations as a going concern, including the assumption of over 450 leases, and will save thousands of jobs, all of which I understand will likely result in a significantly lower pool of general unsecured claims.  I understand that this in turn will result in a higher recovery to holders of general unsecured claims and is a key consideration for pursuing the Stalking Horse APA.

### Execution of the Stalking Horse APA Is a Sound Exercise of the Debtors' Business Judgment

7. It is my opinion that executing the Stalking Horse APA was, and is, a sound exercise of the Debtors' business judgment.  The Stalking Horse APA constitutes the highest or otherwise best offer for the Debtors' assets, and provides the most value-maximizing path forward for the Debtors and their stakeholders.  The Stalking Horse Bid will, importantly, preserve the Debtors' business as a going concern and, through the assumption of various executory contracts

and unexpired leases, will keep nearly all of the Debtors' existing store locations open and ready for business.  The Stalking Horse APA allows the iconic Express brand to live on.

8. As described in the Still Bidding Procedures Declaration, I have been personally involved in the Marketing Process, spending countless hours with the Phoenix JV, advisors, potential go-forward vendors, landlords, and other key contract counterparties to ensure that the Phoenix JV is in position to stand up the company's business operations.  With the assistance of the Debtors' advisors, I have analyzed the bid and understand that the cash component of the Stalking Horse Bid, on a headline basis, may be lower than that of the other Qualified Bids.  However, as described in the Kamlani Sale Declaration, the ultimate goal of business preservation would not be met in the other Qualified Liquidation Bids, and continuation of the business will protect the jobs of approximately 7,500 employees.  Further, the contemplated assumption and assignment of over 450 leases and continuation of existing vendors and other contract counterparties on a go-forward basis would provide the company with access to the resources and services needed for the company to chart a path forward after emerging from these chapter 11 cases.

9. Given these qualitative and quantitative factors, in conjunction with my observations during the Marketing Process and negotiations with the Phoenix JV, I believe that the Debtors selected the Stalking Horse Bidder as the proposed successful purchaser of the Debtors' assets at arms-length and in good faith, and I strongly believe that the Stalking Horse Bidder has transacted with the Debtors at arms-length and in good faith in connection with this Marketing Process.  Proceeding with the Stalking Horse APA—the highest or otherwise best offer for the Debtors' assets—is a sound exercise of the Debtors' business judgment and is in the best interests of the company.

## **Conclusion**

10. Based on the foregoing, and based on my and my team's involvement in the Marketing Process and the negotiations surrounding the Stalking Horse APA with the Phoenix JV, I believe that consummating the sale on the terms set forth in the Stalking Horse APA maximizes the value of the Debtors' estates by preserving the Debtors' business as a going concern, is the highest or otherwise best offer for the Debtors' assets, and is the only actionable alternative to a liquidation of the Debtors' businesses. Therefore, I respectfully request that the Court approve the sale on the terms set forth in the Stalking Horse APA.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 13, 2024

*/s/ Mark Still*
Mark Still
Senior Vice President and Chief Financial Officer
Express, Inc.