## Exhibit B

**Form of Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I)
APPROVING ASSET PURCHASE
AGREEMENT; (II) AUTHORIZING AND
APPROVING SALE OF CERTAIN ASSETS OF
DEBTORS PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE FREE AND CLEAR OF ALL LIENS,
CLAIMS, INTERESTS, AND ENCUMBRANCES; (III) APPROVING
THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE
BANKRUPTCY CODE; (IV) AUTHORIZING THE DEBTORS TO CONSUMMATE
TRANSACTIONS RELATED TO THE ABOVE; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases pursuant to sections 105(a),

363, and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy</u>

<u>Code</u>"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Asset Purchase Agreement, the Bidding Procedures Order, or the Bidding Procedures, as applicable.

(the "Local Rules"), for entry of an order: (a) authorizing and approving that certain Amended & Restated Asset Purchase Agreement, dated as of June [●], 2024, by and among Express, Inc. and its subsidiaries (collectively, the "Sellers" and each, individually, a "Seller") and Phoenix Retail, LLC (the "JV Purchaser") and EXPWHP, LLC (the "WHP Global Purchaser") (together with their designees, successor and/or assigns, as provided under Section 10.4 of the Asset Purchase Agreement, the "Purchasers"), (as amended, restated, supplemented or otherwise modified from time to time, the "Asset Purchase Agreement"), a fully conformed copy of which is attached hereto as **Exhibit A**, (b) approving the sale of the Acquired Assets and Assumed Liabilities pursuant to the Asset Purchase Agreement, (c) approving the assumption, assignment and sale of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code, (d) authorizing the Debtors to consummate transactions related to the Asset Purchase Agreement, and (e) granting related relief; and this court (the "Court") having entered on June 6, 2024, that certain *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Docket No. 427] (the "Bidding Procedures Order"); and the Debtors having determined that the highest or otherwise best offer for the Acquired Assets and Assumed Liabilities was made by the Purchasers pursuant to the Asset Purchase Agreement; and the Court having conducted a hearing on June 14, 2024 at 9:30 a.m. (ET) (the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the proposed sale of the Acquired Assets and Assumed Liabilities pursuant to the Asset Purchase Agreement (the "Sale"), to consider the approval of the

Sale pursuant to the terms and conditions of the Asset Purchase Agreement, and the Court having considered: (i) the Motion, all objections thereto, and all replies in support thereof; (ii) the arguments of counsel made, and evidence adduced, related to the Motion; and (iii) the full record in these chapter 11 cases, including the record related to the hearing to consider the Bidding Procedures Order (the "Bidding Procedures Hearing") and the Sale Hearing held before the Court; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Asset Purchase Agreement and sale of the Acquired Assets and Assumed Liabilities and the related relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT:**

      A.     <u>Findings of Fact and Conclusions of Law</u>. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.     <u>Jurisdiction</u>.  This Court has jurisdiction over the Motion and over the property of the Debtors, including the Acquired Assets and Assumed Liabilities to be sold, transferred, and conveyed pursuant to the Asset Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.    <u>Final Order</u>.  This order (this "<u>Order</u>") constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Order, and directs entry of judgment as set forth herein.

D.    <u>Property of the Estate</u>.  The Debtors are the sole and lawful owner of, and have clear and marketable title to, the Acquired Assets to be sold pursuant to the Asset Purchase Agreement.  The Debtors' right, title and interest in and to the Acquired Assets constitute property of the Sellers' estates and title thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.    <u>Statutory Bases for Relief</u>.  The statutory bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

F.    <u>Petition Date</u>.  On April 22, 2024 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.    <u>Bidding Procedures Order</u>.  This Court entered the Bidding Procedures Order on June 6, 2024, (i) approving bid procedures and bid protections; (ii) scheduling certain dates and deadlines with respect thereto; (iii) approving the form and manner of notice thereof; (iv) establishing notice and procedures for the assumption and assignment of contracts and leases,

(v) authorizing the assumption and assignment of assumed contracts, (vi) authorizing the sale of assets; and (vii) granting related relief.

H.    <u>Notice</u>. As evidenced by the affidavits of service and publication previously filed with the Court Docket Nos. 69, 346, 408, and 436, and based on the representations of counsel at the Bidding Procedures Hearing and the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures Order, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable: (a) the United States Trustee for the District of Delaware; (b) the Committee (as defined below); (c) counsel to the DIP Agents; (d) counsel to the ABL Lenders; (e) counsel to the FILO Agent; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002. With respect to entities whose identities or addresses are not reasonably ascertainable by the Debtors, publication of the Auction Notice in *The New York Times* (National Edition) and posted it on to the Debtors' restructuring website at https://cases.stretto.com/express on June 10, 2024, as evidenced by the *Notice of Auction* filed by the Debtors on June 6, 2024 [Docket No. 429], was, and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities. Additionally, the Notice of Successful Bidder, which included information about the Sale and the Sale Hearing, was filed by the Debtors on June 12, 2024 [Docket No. 445]. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Sale, and the Sale Hearing

is, or shall be, required.  The Notice of Successful Bidder provided all interested parties with timely and proper notice of the Sale contemplated by the Asset Purchase Agreement, the Bidding Procedures Order, and the Sale Hearing.

I.     <u>Disclosures</u>.  The disclosures made by the Debtors in the Motion, the Notice of Successful Bidder, and related documents filed with the Court concerning the Asset Purchase Agreement, and at the Bidding Procedures Hearing and the Sale Hearing were sufficient under the circumstances.

J.     <u>Sale and Marketing Process</u>.  The bidding procedures attached as an exhibit to the Bidding Procedures Order (the "<u>Bidding Procedures</u>") were non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, and substantively and procedurally fair to all parties.  Based on the evidence adduced at the Sale Hearing, the Debtors and their professionals have adequately marketed and conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order and the Bidding Procedures.  The sale process established by the Bidding Procedures Order and Bidding Procedures afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets and Assumed Liabilities.  The sale process was conducted in a noncollusive, fair, and good faith manner.  All potential purchasers had a full and fair opportunity to participate in the sale process and make higher or better offers.

K.     <u>Successful Bidder</u>.  The Debtors determined, in accordance with their business judgment and the Bidding Procedures Order and the Bidding Procedures, in consultation with the Consultation Parties (as defined in the Bidding Procedures), that the Purchasers' bid was a Qualified Bid and represented the highest or otherwise best offer for the

Acquired Assets and Assumed Liabilities.  As a result, the Debtors declared the Purchasers the Successful Bidder in the Notice of Successful Bidder.

L.      <u>Highest and Best Bid</u>.  After a full, fair, and robust sale process and Auction, the Sellers' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets and Assumed Liabilities constitutes a valid and sound exercise of the Sellers' business judgment.  The total consideration provided by the Purchasers for the Acquired Assets as reflected in the Asset Purchase Agreement represents not only a fair and reasonable offer to purchase the Acquired Assets, but also the highest and best offer received by the Debtors for the Acquired Assets.  No other entity or group of entities has presented a higher or otherwise better offer to the Sellers to purchase the Acquired Assets for greater economic value to the Sellers' estates than the Purchasers pursuant to the Asset Purchase Agreement.  The transactions contemplated under the Asset Purchase Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and best offer received by the Debtors after extensive marketing, including through the Bidding Procedures, and (ii) is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  The sale of the Acquired Assets under the Asset Purchase Agreement represents the best available alternative for the Debtors' estates. Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates.  Therefore, the Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer and the Debtors' selection of the Asset Purchase Agreement as the Successful Bid each constitute a valid and sound exercise of the Debtors' business judgment and the Debtors' decision to enter into the Asset Purchase Agreement and consummate the transactions contemplated thereunder constitutes a proper exercise of the fiduciary duties of the Debtors and their officers

and directors.  In the event that the Sale Transaction does not close, the Debtors view that the two Qualified Bids contemplating a liquidation transaction will be considered by the Debtors, which will be noticed to all parties-in-interest as required under the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any applicable law, and all parties' rights are reserved.

M.      <u>Best Interests of the Estates, Creditors, and Parties in Interest</u>.  Given all of the facts and circumstances of these chapter 11 cases and the adequacy and fair value of the consideration provided by the Purchasers under the Asset Purchase Agreement, the Sale constitutes a reasonable and sound exercise of the Sellers' business judgment, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and should be approved.

N.      <u>Sound Business Purpose</u>.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Acquired Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.  Given all of the facts and circumstances of these chapter 11 cases, the Debtors' entry into the Asset Purchase Agreement and the consummation of the Sale is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

O.      <u>Good Faith</u>.  Each Purchaser is purchasing the applicable Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. No Purchaser nor any of its Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor, and, therefore, each such person is entitled to the full protections of section 363(m), and otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases in that: (1) the Purchasers

recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (2) the Purchasers complied with the provisions of the Bidding Procedures Order; (3) the Purchasers' bid was subject to the competitive bid procedures set forth in the Bidding Procedures Order; (4) all payments to be made by the Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Sale have been fully and properly disclosed; (5) the Purchasers have not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (6) the negotiation and execution of the Asset Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith. There was no evidence of insider influence or improper conduct by the Purchasers or any of their respective Affiliates in connection with the negotiation of the Asset Purchase Agreement with the Debtors.

P.    <u>No Collusion</u>.    The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. None of the Debtors, the Purchasers, or any of their respective Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, attorneys, advisors, consultants, bankers, successors, or assigns have engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

Q.    <u>Fair Consideration</u>.    The consideration provided by the Purchasers pursuant to the Asset Purchase Agreement: (1) is fair and adequate and (2) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform

Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and similar laws).

R.    <u>Purchaser Not a Successor</u>.  By consummating the Sale pursuant to the Asset Purchase Agreement (including operating the applicable Acquired Assets under the Debtors' trade names), neither Purchaser is a mere continuation of any Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between any Purchaser and any Debtor.  No Purchaser shall be deemed to be holding itself out as a continuation of the Debtors based on the Sale, the Asset Purchase Agreement or this Order.  No Purchaser is a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of any Purchaser and any Debtor.  Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, neither the Purchasers nor any of their respective Affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) or any Debtor's estate, except to the extent expressly provided in the Asset Purchase Agreement.

S.    <u>No *Sub Rosa* Plan</u>.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan of the Debtors. The Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation.

T.    <u>Power and Authority</u>.  The Debtors and the Purchasers, each acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby.  Upon entry of this Order, the Debtors and the Purchasers require no further consents or

approvals to consummate the Sale contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

U.      Binding Agreement.  The Asset Purchase Agreement is a valid and binding contract between the Sellers and the Purchasers and shall be enforceable pursuant to its terms.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession or the District of Columbia.  The Asset Purchase Agreement and the Sale itself, and the consummation thereof, shall be, to the extent provided in the Asset Purchase Agreement, specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed with respect to any of the Debtors, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.  The terms and provisions of this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the applicable Acquired Assets, all counterparties to the applicable Assigned Contracts (as defined below), each applicable, the Purchasers, and each of their respective affiliates, successors, and assigns (provided, affiliates of the Purchasers shall be bound only to the extent expressly set forth in the Asset Purchase Agreement), and any affected third parties, including, without limitation, all Persons asserting Adverse Interests (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner,

receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary.  The provisions of this Order and the terms and provisions of the Asset Purchase Agreement, shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7.  The rights and interests granted pursuant to this Order and Asset Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the Asset Purchase Agreement and this Order without the need for further order of the Court.

V.      <u>Valid Transfer</u>.   The transfer of each of the Acquired Assets to the applicable Purchaser pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of such Acquired Assets, and vests or will vest such Purchaser with all right, title, and interest of the Sellers to the Acquired Assets free and clear of all Adverse Interests (as defined below) accruing, arising or relating thereto any time prior to the Closing (as defined below) under the Asset Purchase Agreement), except to the extent expressly assumed under the Asset Purchase Agreement.

W.      <u>Free and Clear Sale</u>.  Each Seller may sell the Acquired Assets free and clear of all Adverse Interests against such Seller, its estate, or any of the Acquired Assets (except to the extent expressly set forth in this Order and the Asset Purchase Agreement) because, in each

case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. If the Sale were not free and clear of all Adverse Interests, or if any Purchaser would, or in the future could, be liable for any of the Adverse Interests (except to the extent expressly set forth in the Asset Purchase Agreement), such Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors and their estates and creditors. The total consideration to be provided under the Asset Purchase Agreement reflects the Purchasers' reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the applicable Acquired Assets free and clear of all Adverse Interests (except to the extent expressly set forth in the Asset Purchase Agreement). Notwithstanding anything to the contrary in this Order, nothing herein shall affect or impair the rights of Bath and Body Works Logistics Services LLC and certain affiliates ("BBW") in connection with that certain Standby Letter of Credit Number IS000342066U, issued on January 19, 2023 by Wells Fargo Bank, National Association for the benefit of BBW.

X.    <u>Assigned Contracts</u>. The Sellers seek authority to assume, assign and sell to each Purchaser the applicable Assigned Contracts, and any other executory contracts and unexpired leases related to the Acquired Assets that are to be assumed, assigned and sold to such Purchaser as more particularly set forth in the Asset Purchase Agreement (collectively, and subject in each case to the amendments and other agreements described in the Asset Purchase Agreement and agreed with the applicable counterparties, including Schedule 7.2(e) thereto (the "<u>Agreed Modifications</u>"), the "<u>Assigned Contracts</u>"). The Debtors have demonstrated that the assumption, assignment and sale of the Assigned Contracts under the Asset Purchase Agreement are an exercise of its sound business judgment and are in the best interests of the

Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts to be assumed, assigned and sold to the Purchasers under the Asset Purchase Agreement, subject to the Agreed Modifications, are an integral part of the Asset Purchase Agreement and the Sale and, accordingly, such assumption, assignment and sale are reasonable and enhance the value of the Debtors' estates.  Subject to Paragraphs 39 and 40 hereof, any contract counterparty to any Assigned Contract that has not actually filed with the Court an objection to such assumption, assignment and/or sale as of the applicable deadline specified in the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [Docket No. 269] (the "Assumption Rejection Procedures Order") (as such date may have been modified or extended in accordance with the terms of the Assumption Rejection Procedures Order or with the consent of the Debtors and the Purchasers) will be deemed to have consented to such assumption, assignment and sale.

Y.    Designation Rights.    Pursuant to Section 1.7 of the Asset Purchase Agreement, the Purchasers shall maintain certain rights to modify the list of Assigned Contracts after the date of this Order and up to the end of the applicable Designation Rights Period as set forth in the Asset Purchase Agreement.  Such modification rights include, but are not limited to, the right of the Purchasers, prior to the end of the applicable Designation Rights Period, to designate certain Designated Contracts and Designated Leases for assumption by the Debtors and assignment and sale to the Purchasers, as well as for rejection by the Debtors.  The notice and opportunity to object provided to the contract counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Assumption Rejection Procedures Order and Asset Purchase Agreement, fairly and reasonably protects any rights that such contract counterparties and other parties in interest may have with respect to such Contracts.

Z.      Pursuant to section 1.7 of the Asset Purchase Agreement and the assumption and assignment procedures approved pursuant to the Assumption Rejection Procedures Order ( the "Assumption and Assignment Procedures"), the Debtors shall provide notice in the form required under the Assumption Rejection Procedures Order not less than ten (10) days prior to the expiration of the Designation Rights Period to any contract counterparty to any executory contract or unexpired lease that shall be designated an Assigned Contract under the Asset Purchase Agreement, except as otherwise agreed by the Debtors, the Purchaser, and such applicable contract counterparty.  Upon the entry of a subsequent order authorizing the assumption, assignment and sale of the applicable Assigned Contract (an "Assignment Order"), except as otherwise agreed by the Debtors, the Purchaser, and such applicable contract counterparty, and conditioned on the assumption, assignment and sale of the applicable Assigned Contract in accordance with the applicable Assumption and Assignment Procedures approved pursuant to the Assumption Rejection Procedures Order, the applicable Assigned Contract will be deemed to have been assumed and assigned to the Purchaser as of the date of the Assignment Order and the applicable Purchaser (1) will cure, in accordance with the terms set forth in the Assignment Order and the Asset Purchase Agreement and the Agreed Modifications, if applicable, any default existing prior to the date of the assumption and assignment of such Assumed Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (2) has provided or will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of assumption, assignment and sale of such Assigned Contract, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (3) has provided or will provide adequate assurance of future performance of and under the applicable Assigned Contracts, within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and

365(f)(2) of the Bankruptcy Code.  For the avoidance of doubt, the effective date of any such assumption, assignment and sale of an Assigned Contract shall be the date of the entry of an Assignment Order, except as otherwise agreed by the Debtors, the Purchaser, and such applicable contract counterparty.

AA.    <u>Single, Integrated Transaction</u>.  Entry of this Order approving the Asset Purchase Agreement and all provisions of this Order and the Asset Purchase Agreement are a necessary condition precedent to the Purchasers consummating the Sale.  The provisions of this Order and the Asset Purchase Agreement and the transactions contemplated by this Order and the Asset Purchase Agreement and Sale to the Purchasers are inextricably linked and technically and collectively constitute a single, integrated transaction.

BB.    <u>Consummation is Legal, Valid and Authorized</u>.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with.

CC.    <u>Protection of Consumer Privacy</u>.  As contemplated in the Asset Purchase Agreement, and subject to the terms of this Order, the sale to the Purchasers under the Asset Purchase Agreement of any personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) satisfies the requirements of section 363(b)(1)(A) of the Bankruptcy Code.

DD.    <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Motion is granted as set forth herein.

2.      Any and all objections and responses to the Motion, the entry of this Order or the relief granted herein that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice; *provided*, *however*, notwithstanding anything in this Order to the contrary, all objections to the assumption, assignment and sale of an Assigned Contract, including as to any cure claim or adequate assurance objection, raised in response to a Contract Assumption Notice or Supplemental Assumption Notice, as applicable, and not resolved prior to the Sale Hearing (an "Assignment Objection"),  are expressly reserved.  In the event that the Debtors, the Purchaser and a Contract Counterparty cannot resolve an Assignment Objection pursuant to an agreement of the parties, the Debtors shall file and serve a notice setting the Assignment Objection for hearing on no less than ten (10) days' notice, unless the Debtors, the Purchaser and the objecting counterparties agree to a different time and subject to the Court's schedule; *provided*, *further*, that the Debtors shall segregate any Cure Payment that the Contract Counterparty asserts is required to be paid pending resolution of the Assignment Objection by the Court or mutual agreement of the parties.  All persons and entities notified of the relief sought in the Motion and set forth in this Order that failed to timely object thereto are deemed to consent to such relief.

3.      Notice of the Motion, the Bidding Procedures Order, the Bidding Procedures Hearing, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4.      The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the

Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

5.     <u>Approval of the Sale of the Acquired Assets</u>.  The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, and the Sale and related transactions contemplated thereby, are hereby approved in all respects.

6.     Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the Asset Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the Asset Purchase Agreement and all other ancillary documents as and when due thereunder without further order of this Court.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized, without further order of this Court, to take any and all actions necessary or appropriate to: (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement; (b) transfer and assign all right, title, and interest to all assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Asset Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement the Asset Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, including any other ancillary documents, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such other ancillary documents.  Neither the Purchasers nor the Sellers shall have any obligation to proceed

with the Closing under the Asset Purchase Agreement until all conditions precedent to their respective obligations to do so have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

7.      The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

8.      This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Adverse Interests against any Debtor, any holders of Adverse Interests against or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchasers, any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases, and any filing agents, filing officers, title agents, title companies, registrars of deeds, administrative agencies, governmental departments, recording agencies, secretaries of state, federal, state and local officials, and other persons and entities who may be required by operation of law, the duties of their office or contract,

to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.  The terms and provisions of the Asset Purchase Agreement and this Order shall inure to the benefit of the Debtors, their estates and their creditors, each Purchaser and its Affiliates, and any other affected third parties, including all persons asserting any Adverse Interests in the Acquired Assets to be sold pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel, effective upon the closing of the Sale Transaction contemplated under the Asset Purchase Agreement, which shall occur no later than June 21, 2024 or such later date as agreed upon between the Sellers and JV Purchaser, in consultation with the Consultation Parties (the "Closing"), any Adverse Interests of record, as provided herein, except with respect to Assumed Liabilities (as appliable) and Permitted Post-Closing Encumbrances (as defined in the Asset Purchase Agreement); *provided* that, for the avoidance of doubt, the provisions of this Order shall be self-executing.  Nothing contained in any chapter 11 plan confirmed in any of these chapter 11 cases, any order confirming any such chapter 11 plan or any order approving the wind-down or dismissal of any of these chapter 11 cases or any subsequent chapter 7 cases (including any discharge of claims thereunder) or otherwise shall alter, conflict with or derogate from the provisions of this Order or the Asset Purchase Agreement, and to the extent of any conflict or derogation between this Order or the Asset Purchase Agreement and such future plan or order, the terms of this Order and the Asset Purchase Agreement shall control.  This Order shall survive any

dismissal or conversion of any of these chapter 11 cases or any dismissal of any subsequent chapter 7 cases.

9.      <u>Sale and Transfer of Assets</u>.  Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing and thereafter pursuant to the Asset Purchase Agreement, and pursuant to and except to the extent expressly set forth in the Asset Purchase Agreement or this Order, the Acquired Assets shall be transferred free and clear of all encumbrances, claims, interests, and liens of any kind or nature whatsoever, including all Excluded Liabilities (as defined in the Asset Purchase Agreement), excluding, solely to the extent expressly set forth in the Asset Purchase Agreement, Permitted Post-Closing Encumbrances and the Purchasers' obligations with respect to Assigned Contracts, Designated Contracts, Designated Leases and Transferred Employees (collectively, the "<u>Adverse Interests</u>"), with all such Adverse Interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they have as against the Acquired Assets prior to the Sale, subject to any claims and defenses the Debtors may possess with respect thereto.  Those holders of Adverse Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale being free and clear of their Adverse Interests pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Adverse Interests who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such Adverse Interests pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Adverse Interests that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders

had prior to the Sale, subject to any claims and defenses of the Debtors. On the Closing Date, (a) the Debtors will remit payment in the amount of approximately $92 million from the proceeds of the Sale (the "Sale Proceeds") to bring any outstanding obligations of the Debtors under the DIP Documents,[3] Prepetition Credit Documents, and the Final DIP Order[4] to $0 and terminate any further borrowings available thereunder, (b) for the purpose of securing the obligations of the Debtors with respect to their indemnification obligations and any challenges to the payment in full of the obligations under the DIP Documents, the Prepetition Credit Documents, and the Final DIP Order until such time as the DIP Facilities and Prepetition Credit Facilities have received Payment in Full,[5] the Prepetition Liens, the DIP Liens, and Adequate Protection Liens (collectively, the "Lender Liens") of the Prepetition Secured Parties and DIP Secured Parties, as applicable, shall attach to the Sale Proceeds in the order of their priority, with the same validity, force, and effect that they now have as against the Acquired Assets, and the Lender Liens on the Sale Proceeds shall not be released or extinguished as a result of the entry of this Order or the consummation of the Sale, and (c) the Lender Liens on the Acquired Assets shall be automatically and irrevocably released and extinguished as a result of the entry of this Order upon the consummation of the Sale. Furthermore, nothing in this Order shall waive, release, extinguish, or otherwise cancel the Lender Liens against any Prepetition Collateral or DIP Collateral, as applicable, including Cash Collateral, that is not an Acquired Asset (the "Non-Sale Collateral"). The Lender Liens on the Sale Proceeds

---

[3]    Capitalized terms used in this paragraph 9 but not otherwise defined herein or in the Motion, the Asset Purchase Agreement, or the Bidding Procedures Order, as applicable, shall have the meanings ascribed to them in the Final DIP Order (as defined below).

[4]    "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 419]

[5]    "Payment in Full" shall have the meaning set forth in the Prepetition Credit Documents or DIP Documents (including the Final DIP Order), as applicable.

and the Non-Sale Collateral shall continue in full force and effect in accordance with the terms of the Final DIP Order (including compliance with the Approved DIP Budget) until the DIP Facilities and the Prepetition Credit Facilities have received Payment in Full. Notwithstanding the foregoing, upon the Payment in Full of the DIP Facilities and Prepetition Credit Facilities, all liens and claims of the DIP Secured Parties and Prepetition Secured Parties on or against the Prepetition Collateral, the DIP Collateral, the Sale Proceeds, the Non-Sale Collateral, the Debtors, and/or the Debtors' estates, including, without limitation and as applicable, the Lender Liens, shall be released and discharged in accordance with the terms of the Final DIP Order. For the avoidance of doubt, the Court's ability to fashion an appropriate remedy under the Final DIP Order, including disgorgement, in the event of a Successful Challenge is preserved. Neither the process by which any of the Acquired Assets were sold, nor the results of the Sale (as opposed to selling the Acquired Assets to any other party), create claims of any kind against either the Purchasers or the Debtors, including, without limitation, claims of any kind under any of the Debtors' executory contracts or unexpired leases, and no claims arising out of the sale process or any Sale itself shall be brought against the Purchasers or the Debtors.

10.    The sale of the Avoidance Actions pursuant to the Asset Purchase Agreement is hereby approved. To the extent any Avoidance Action is not assignable to the Purchaser or any of its Affiliates, the Debtors, and any chapter 11 or chapter 7 trustee (or any other designee) of any of the Debtors and their estates, shall be prohibited from bringing any such Avoidance Actions.

11.    Conditioned upon the occurrence of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring all of the Debtors' right, title, and interest in the applicable Acquired Assets to the applicable Purchaser pursuant to the terms

23

and allocations set forth in the Asset Purchase Agreement.  For the avoidance of doubt, the Excluded Assets set forth in the Asset Purchase Agreement are not included in the Acquired Assets, and the Excluded Liabilities set forth in the Asset Purchase Agreement are not Assumed Liabilities.

12.     All persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Purchasers in accordance with the Asset Purchase Agreement and this Order.

13.     Subject to the terms and conditions of this Order, the transfer of the Acquired Assets to the Purchasers pursuant to the Asset Purchase Agreement and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in the Asset Purchase Agreement, constitute a legal, valid, and effective transfer to the Purchasers of all of the Debtors' right, title, and interest in the Acquired Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Purchasers with the right, title, and interest of the Sellers in and to the Acquired Assets as set forth in the Asset Purchase Agreement, as applicable, free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent expressly set forth in the Asset Purchase Agreement or this Order).  This Order is and shall be effective as a determination that, on the Closing, all Adverse Interests whatsoever existing as to the Acquired Assets prior to the Closing shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effective; *provided*, *however*, that such Adverse Interests shall attach to the proceeds of the applicable Sale in the order of their priority, with the same validity, force and effect which they had before the Sale against such Acquired Assets.

14.    To the maximum extent permitted under applicable law, each Purchaser or its Affiliates, to the extent provided by the Asset Purchase Agreement, shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers constituting Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the applicable Purchaser or its Affiliates as of the Closing as provided by the Asset Purchase Agreement.  To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to any Purchaser or its Affiliates on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale set forth in the Asset Purchase Agreement.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

15.    All entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed (wherever located) to the Purchasers pursuant to the Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchasers on the Closing.

16.    Effective upon the Closing and except to the extent included in Assumed Liabilities or Permitted Post-Closing Encumbrances or as otherwise expressly provided in the Asset Purchase Agreement or this Order, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory

contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade or other creditors holding Adverse Interests against the Debtors or the Acquired Assets, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise, arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the transfer of the Acquired Assets, hereby are forever barred and estopped from asserting any Adverse Interests relating to the Acquired Assets or the transfer of the Acquired Assets against the Purchasers and their Affiliates, assets, or property, or the Acquired Assets transferred to the Purchasers, including, without limitation, taking any of the following actions with respect to or based on any Adverse Interest relating to the Acquired Assets or the transfer of the Acquired Assets (other than to the extent expressly set forth in the Asset Purchase Agreement or this Order): (a) commencing or continuing in any manner any action or other proceeding against the applicable Purchaser, its Affiliates, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the applicable Purchaser, its Affiliates, assets, or properties; (c) creating, perfecting, or enforcing any Adverse Interest against the applicable Purchaser or its Affiliates, assets or properties; (d) asserting an Adverse Interest as a setoff (except for setoffs asserted prior to the Petition Date), or right of subrogation of any kind against any obligation due the applicable Purchaser or Affiliates; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; or (f) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale.  No such

persons shall assert or pursue against any Purchaser or its Affiliates, assets, or property any such Adverse Interest directly or indirectly, in any manner whatsoever.

17.     This Order shall be effective as a determination that, as of the Closing, except as expressly set forth in the Asset Purchase Agreement, (i) no claims other than the applicable Assumed Liabilities will be assertable against the Purchasers or any of their respective assets or property (including the Acquired Assets), (ii) the Acquired Assets shall have been transferred to the applicable Purchaser (or its designee) free and clear of all liens, claims, interests, and encumbrances, subject only to the Assumed Liabilities and Permitted Post-Closing Encumbrances, and (iii) the conveyances described herein and in the Asset Purchase Agreement, as applicable, have been effected as of the applicable Closing.

18.     If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, interests, and encumbrances that the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then with respect to the Acquired Assets, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets, (b) the applicable Purchaser (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against such Purchaser and the Acquired Assets as of the applicable Closing, and (c) upon consummation of the Sale, the applicable Purchaser (or its designee) may seek, as

necessary, in this Court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the applicable Acquired Assets. Notwithstanding the foregoing, the provisions of this Order shall be self-executing and neither the Debtors nor any Purchaser (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

19.    The Purchaser and its Affiliates and their respective successors, assigns, nominees, designees, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement or any other event occurring in the Debtors' chapter 11 cases under any theory of law or equity, including, without limitation, successor or transferee liability, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The Purchasers shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except to the extent otherwise expressly provided in the Asset Purchase Agreement, including, solely to the extent expressly set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities, Permitted Post-

Closing Encumbrances and the Purchasers' obligations with respect to Designated Contracts and Designated Leases. Except to the extent otherwise set forth in the Asset Purchase Agreement, including, solely to the extent expressly set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities, Permitted Post-Closing Encumbrances and the Purchaser's obligations with respect to Designated Contracts and Designated Leases, the transfer of the Acquired Assets and the Assigned Contracts to the Purchasers under the Asset Purchase Agreement shall not result in (i) any Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) any Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff (except for setoffs asserted prior to the Petition Date) or otherwise, directly or indirectly, any Adverse Interests or Excluded Liability or (iii) any Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Acquired Assets, having any liability or responsibility to the Debtors, in each case except to the extent expressly set forth in the Asset Purchase Agreement.

20.     Without limiting the effect or scope of the foregoing, except to the extent expressly provided in the Asset Purchase Agreement, or this Order as of the Closing, each Purchaser and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character with respect to the applicable Acquired Assets, including, but not limited to: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation, multiemployer

plan (as such term is defined in connection with the Employee Retirement Income Security Act of 1974, as amended) or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan or multiemployer plan of or related to any of the Debtors or any of the Debtors' Affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of the Debtors; (f) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law; and (g) any claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination in Employee Act of 1967, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state and local discrimination laws; (xii) state and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes,

regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law doctrine of de facto merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Acquired Assets, the Asset Purchase Agreement or the Assigned Contracts except to the extent otherwise set forth in this Order.

21.     Except as expressly set forth in the Asset Purchase Agreement, including with respect to Assumed Liabilities, Permitted Post-Closing Encumbrances and the Purchasers' obligations with respect to Designated Contracts and Designated Leases and Transferred Employees, it is expressly ordered and directed that the Sale of the Acquired Assets is free and clear of any and all unemployment compensation taxes and any related contribution and reimbursement obligations of the Debtors, and all state tax and labor agencies shall treat the Purchasers as a "new employer" in all respects and for any applicable tax rates and contribution and reimbursement obligations and "experience rates" as of and after the Closing (and each state unemployment compensation law agency or department shall be prohibited from treating the Purchasers as a successor of the Debtors for any contribution rates, benefit charges, benefit rates, experience rates or similar charges or taxes).

22.     Subject to the Asset Purchase Agreement, each Purchaser is hereby authorized in connection with the consummation of the Sale to transfer or direct the transfer of any or all of the Acquired Assets and the Assigned Contracts (or any rights to acquire the Acquired Assets and the

Assigned Contracts) to its direct and indirect subsidiaries or affiliates in a manner as it, in its sole and absolute discretion, deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Acquired Assets or the rights under any Assigned Contract to its direct and indirect subsidiaries or affiliates with all of the rights and protections accorded under this Order and the Asset Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchasers to effectuate any of the foregoing.

23.   <u>Assumption and Assignment</u>.   Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, the Assumption and Assignment Procedures set forth in the Assumption Rejection Procedures Order, and subject to Paragraphs 26, 39 and 40 hereof, and the Sellers' assumption, assignment and sale to the Purchasers are hereby approved in their entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.   Subject to Paragraphs 26, 39 and 40 hereof, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume, assign and sell to the Purchasers the Assigned Contracts, effective upon the Closing of the Sale of the Acquired Assets or thereafter pursuant to the Asset Purchase Agreement and any applicable Assignment Order, free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent expressly set forth in the Asset Purchase Agreement or this Order) and execute and deliver to the Purchasers such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchasers. For the avoidance of doubt, in the event an Assignment Objection is resolved by agreement of the parties prior to the Closing or the expiration of the Designation Period, as applicable, the parties shall be authorized to file an agreed Assignment Order under certification of counsel reflecting the resolution of such objection.   Upon the entry of such Assignment Order, the executory contract or

unexpired lease at issue shall be deemed an Assigned Contract under the Asset Purchase Agreement.

24.     Upon the date that each Assigned Contract is assumed, assigned and sold, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchasers shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.  The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchasers to effectuate the foregoing, as further provided in the Asset Purchase Agreement.  The Purchasers shall likewise cooperate with the Debtors and otherwise comply with the terms and conditions in relation to any Designated Contracts and Designated Leases under the Asset Purchase Agreement.

25.     The Assigned Contracts (including, for the avoidance of doubt, any non-disclosure agreement entered into by any of the Sellers following the Petition Date that constitutes an Assigned Contract) shall be transferred to, and remain in full force and effect for the benefit of the Purchasers in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that is assumed, assigned and sold to the Purchasers pursuant to the Asset Purchase Agreement (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, or requires any counterparty to consent to assignment.

26.     Any executory contract or unexpired lease for which there is an unresolved Assignment Objection (or objection to the applicable Agreed Modification) shall not be assumed, assigned and sold unless (i) all such objections relating to such contract or lease are withdrawn, (ii) the contract or lease counterparty consents, or (iii) the Court subsequently orders otherwise.

27.     Any obligations relating to any Assigned Contract prior to the Closing shall be the responsibility of the Sellers, and any obligations relating to any Assigned Contract upon the Closing shall be the responsibility of the JV Purchaser.

28.     The rights of the Purchasers to modify the lists of Assigned Contracts and Non-Assigned Contracts after the date of this Order and up to the end of the applicable Designation Rights Period as set forth in Section 1.7 of the Asset Purchase Agreement are hereby approved and shall survive confirmation of any chapter 11 plan or proceeding under chapter 7, notwithstanding sections 365(d)(2) and 365(d)(4) or any similar provision of the Bankruptcy Code.  Moreover, with respect to any Designated Contracts or Designated Leases which are not an Assigned Contract on the Closing and provided such Contract has not been rejected by the Debtors after the Closing pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from the Purchasers to the Debtors, the Debtors are hereby authorized to take all actions reasonably necessary to assume, assign and sell to the Purchasers pursuant to section 365 of the Bankruptcy Code any such Assigned Contract(s) as set forth in such notice(s) filed and served in accordance with the Assumption and Assignment Procedures; provided, that any Cure Costs applicable thereto shall be satisfied solely by the applicable Purchaser, subject to the appliable Agreed Modifications. Notwithstanding anything in this Order to the contrary, on the date any such Assigned Contract is assumed, assigned and sold to the Purchasers, such Assigned Contract shall thereafter be deemed an Acquired Asset for all purposes under this Order and the Asset Purchase Agreement.

29.     The payment of the applicable Cure Payments (if any) and cure of any non-monetary defaults shall effect a cure of all defaults existing as of the date that the applicable Assigned Contracts are assumed and assigned and shall compensate for any actual pecuniary loss to such contract counterparty resulting from such default.

30.    Pursuant to section 365(f) of the Bankruptcy Code, the assumption, assignment and sale by the Debtors to the Purchasers of such Assigned Contracts shall not be a default thereunder. Upon the applicable effective date of such assumption, assignment and sale of an Assigned Contract, and after the payment of the relevant Cure Payment as provided for herein, the Debtors and the Purchasers shall not have any further liabilities to the contract counterparties to the Assigned Contracts, other than the applicable Purchaser's obligations under the Assigned Contracts that become due and payable on or after the date that such Assigned Contracts are assumed, assigned and sold, including as set forth in Paragraph 38 of this Order; *provided*, however, that any landlord of an Assigned Contract may seek to recover from the Debtors (but not the Purchaser) indemnification obligations, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the Premises prior to the Closing or applicable assignment effective date for which the Debtors had a duty to indemnify such landlord pursuant to any Assigned Contract, solely with respect to available insurance coverage that survives the Closing or Designation Rights Period, as applicable, if any; *provided*, *further*, that the Purchasers shall not have any obligations to reimburse or indemnify the Debtors or the Debtors' insurer for any such recovery.

31.    Any provisions in any Assigned Contracts that prohibit or condition the assignment and sale of such Assigned Contracts or allow the party to such Assigned Contracts to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any counterparty, or modify any term or condition upon the assignment and sale of such Assigned Contracts constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contracts to the applicable Purchaser in connection with the Sale approved pursuant to this Order and all Assigned Contracts

shall remain in full force and effect, without existing default(s), subject only to payment by such Purchaser of the appropriate cure amount, if any.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment and sale to the applicable Purchaser of the Assigned Contracts have been or will be satisfied as of the applicable effective date of the assumption, assignment, and sale of the Assigned Contract.

32.     Subject to Paragraphs 39 and 40 hereof, any party having the right to consent to the assumption, assignment or sale of any Assigned Contract that failed to object to such assumption, assignment and/or sale is deemed to have consented to such assumption, assignment and sale as required by section 365(c)(1)(B) of the Bankruptcy Code.

33.     As of the date of assignment and sale to the Purchasers and payment of the applicable Cure Payment, the applicable Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts arising from and after the assignment and sale.

34.     All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchasers, and shall not charge the Purchasers for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

35.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchasers any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to

assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed, assigned and sold or arising by reason of the Closing.  For the avoidance of doubt, nothing in this paragraph alters any counterparty's entitlement to the Cure Payments determined with respect to its Assigned Contract.

36.     Notwithstanding any term of any Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the applicable Purchaser subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with all Assigned Contracts that the Debtors validly exercised prior to the entry of this Order, and all Assigned Contracts are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Assigned Contracts has not otherwise expired.

37.     Neither the Purchasers nor any successor of the Purchasers shall be responsible for any Adverse Interests or obligations arising out of any of the executory contracts or unexpired leases that are not assumed, assigned, and sold to the applicable Purchaser (whether at the Closing or any other time prior to the end of the applicable Designation Rights Period) as specifically provided by the Asset Purchase Agreement and this Order.

38.     Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, with respect to each Assigned Contract, from and after the date that such Assigned Contract is assumed, assigned and sold to the applicable Purchaser, such Purchaser shall be responsible for continuing obligations under such Assigned Contract, *cum onere* after giving effect to the Agreed Modifications, if any, including, without limitation, liabilities for any breach of or

default under such Assigned Contract, in each case arising or occurring after such assumption, assignment and sale, and for payment or performance of any and all obligations under the Assigned Contracts arising after such assumption, assignment and sale when due in accordance with the terms of such Assigned Contracts, including with respect to year-end adjustment and reconciliation amounts that accrue after the entry of this Order (irrespective of whether such obligations accrued before, on, or after assumption, assignment and sale of the Assigned Contract), including for royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent, in each case subject to the terms and conditions of the Assigned Contracts, and subject to any defenses provided by such Assigned Contracts and applicable non-bankruptcy law and unless otherwise agreed; *provided*, *further*, without relieving Purchaser of its obligations under this Order or the Asset Purchase Agreement, nothing in this Order or the Asset Purchase Agreement shall relieve the Debtors of their obligations to lease counterparties of unexpired leases under Section 365(d)(3) of the Bankruptcy Code prior to and through the effective date of any assumption, assignment and sale or rejection of any Designated Lease.

39.      Notwithstanding anything in this Order or the Asset Purchase Agreement to the contrary, for any executory contracts and unexpired leases that are to be designated for assumption, assignment and sale to the Purchasers pursuant to the Assumption and Assignment Procedures set forth in the Assumption Rejection Procedures Order , the rights of counterparties to such contracts and leases to object to the assumption, assignment and sale thereof, including with respect to cure amounts and adequate assurance of future performance, are fully preserved in accordance with the Assumption Rejection Procedures Order and subject to the Assumption and Assignment Procedures, and the Sellers shall not be authorized to assume, assign and sell such contracts and

leases to the applicable Purchaser absent compliance with the Assumption and Assignment Procedures and the following paragraph or further order of the Court.

40.      In the case of any executory contracts and/or unexpired leases that the Debtors seek to assume, assign and sell pursuant to the Asset Purchase Agreement, as soon as the Debtors receive notice from the Successful Bidder, that an executory contract and/or unexpired lease is designated for assumption, assignment and sale, the Debtors shall file with the Court a written notice in accordance with the Assumption and Assignment Procedures, of the Debtors' intent to assume, assign and sell such executory contract and/or unexpired lease, substantially in the form of the Contract Assumption Notice attached as an exhibit to the Assumption Rejection Procedures Order (each, a "Contract Assumption Notice"); *provided* however that such notice may specify that the effective date of any assumption and assignment shall be the later of the assignment date set forth on the Contract Assumption Notice and the Closing.  To the extent the Debtors, at any time after the Auction (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Contract Assumption Notice, (iii) and/or modify the previously stated Cure Payment associated with any Executory Contract or Unexpired Lease, the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the Contract Counterparties affected by the Supplemental Assumption Notice.  Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Contract Assumption Notice.

41.      The Debtors shall serve such Contract Assumption Notice or Supplemental Cure Notice via first class mail (except as set forth in clause (i), which shall be by overnight mail) on

each of the following parties (the "Contract Assumption Parties"): (i) each counterparty to any such executory contract and/or unexpired lease (and their known counsel via email) to be assumed, assigned and sold by the Debtors, (ii) the U.S. Trustee, (iii) counsel to the Committee, (iv) counsel to Wells Fargo, National Association as DIP Agent, and (v) counsel to the Purchasers. The Debtors shall also serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail adequate assurance information for the applicable Purchaser in accordance with the Bidding Procedures at the same time as service of the Contract Assumption Notice or the Supplemental Contract Assumption Notice, as applicable. The Contract Assumption Notice or Supplemental Contract Assumption Notice shall set forth the following information, to the best of the Debtors' knowledge: (a) the street address of any real property that is the subject of any unexpired lease that the Debtors seek to assume, assign and sell or a description of any executory contract that the Debtors seek to assume, assign and sell, (b) the name and address of the affected counterparties (and their known counsel), (c) a description of the deadlines and procedures for filing objections to the Contract Assumption Notice, and (d) any proposed cure amounts as of that time. Any objection to the assumption and assignment of such executory contract or unexpired lease, including as to the proposed cure and the Purchasers' ability to provide adequate assurance of future performance, must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Contract Assumption Notice Parties no later than 10 calendar days after the date the Debtors served the applicable Contract Assumption Notice. If no objection is timely filed and served with respect to the applicable Contract Assumption Notice, all non-Debtor parties to such executory contract and/or unexpired lease shall be deemed to have consented to the cure amount set forth in such Contract Assumption Notice. If an objection to a Contract Assumption Notice is timely filed and served on

the Contract Assumption Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled by the Court to consider that objection on no less than ten (10) days' notice.  The assumption, assignment and sale of any executory contract and/or unexpired lease set forth in a Contract Assumption Notice shall occur as of the date set forth in the applicable Assignment Order, subject to the payment of the cure amount, unless otherwise agreed by the relevant counterparty.

42.    <u>Consumer Privacy Provisions</u>.  The sale of personally identifiable information contemplated in the Asset Purchase Agreement is consistent with the Sellers' privacy policies and satisfies the requirements of section 363(b)(1)(A) of the Bankruptcy Code.

43.    The Purchasers shall be bound by and meet the material standards established by the Sellers' privacy policies solely with respect to the personally identifiable information transferred to the Purchaser pursuant to the Asset Purchase Agreement; provided, however, that nothing in this Order shall affect, limit, restrict, prohibit or impair any right to amend or replace the Sellers' privacy policies on a going forward basis with respect to the personally identifiable information transferred to the Purchaser, in accordance with the terms thereof and applicable law.

44.    <u>Health Plan Obligations</u>.  Notwithstanding anything in this Order to the contrary, the Purchaser shall be responsible for all costs associated with the Debtors' self-funded health plan for claims for covered services rendered on or after the Closing for employees that the Purchaser has agreed to employ (and for their covered dependents), including the funding of such claims and the payment of corresponding administrative fees due to United HealthCare Services, Inc. ("<u>UHCS</u>") in accordance with that certain Administrative Services Agreement by and between Debtors and UHCS with an effective date of January 1, 2022, as amended from time to time.

45.     Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of executory contracts to be assumed and assigned and/or any Cure Notices or Supplemental Cure Notices, this Order, or any documents relating to any of the foregoing: nothing shall permit or otherwise effect a sale, an assignment or any other transfer of (a) any insurance policies that have been issued at any time by ACE American Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, Great Northern Insurance Company and/or any of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") to or that provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively the "Chubb Insurance Contracts"), and/or (b) any rights, proceeds, benefits, interests, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Purchaser; *provided, however*, that to the extent any claim with respect to the Acquired Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, solely to the extent contemplated by the Asset Purchase Agreement, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"), *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

46.     Stay Relief.  The automatic stay pursuant to section 362 is hereby lifted to the extent necessary, without further order of this Court, to (i) allow the Purchasers to deliver any notice provided for in the Asset Purchase Agreement and any ancillary documents and (ii) allow the Purchasers to take any and all actions permitted under this Order, the Asset Purchase Agreement and any ancillary documents in accordance with the terms and conditions thereof.

47.    <u>Bulk Transfer Laws</u>.  Each of the Sellers and the Purchaser hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

48.    <u>Non-Interference</u>.  Following the Closing, no holder of an Adverse Interest in or against the Debtors or the Acquired Assets, nor any other person or entity, shall interfere with any Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Adverse Interest or any actions that the Debtors or their successors, including any chapter 11 or chapter 7 trustee, may take in these chapter 11 cases or any successor chapter 7 cases.

49.    <u>Authorization</u>.  The Debtors, including their respective officers, employees and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Asset Purchase Agreement and this Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of the Asset Purchase Agreement, this Order and the relief granted pursuant to this Order.

50.    <u>Good Faith</u>.  The Sale contemplated by the Asset Purchase Agreement is undertaken by each Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, for the avoidance of doubt, the assumption, assignment and sale to the Purchasers of the Assumed Contracts and the Sale of the Acquired Assets free and clear of all Adverse Interests (unless otherwise assumed under, or permitted by, the Asset Purchase Agreement)), unless such authorization and consummation of such Sale were stayed pending such appeal.  Each Purchaser

is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. No Purchaser has colluded with any of the other bidders, potential bidders, or any other parties interested in the Acquired Assets, and therefore the sale of the Acquired Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

51.    <u>Cooperation</u>.  From time to time, as and when requested by any party, each party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the applicable Purchaser's right, title and interest in and to the Acquired Assets.

52.    <u>Scope of Approval</u>.  The failure specifically to include any particular provisions of the Asset Purchase Agreement, including any of the documents, agreements, or instruments executed in connection therewith, in this Order shall not diminish or impair the efficacy, approval, or effectiveness of such provision, document, agreement, or instrument, it being the intent of this Court that the Asset Purchase Agreement and each such document, agreement or instrument be authorized and approved in its entirety, except as otherwise specifically set forth herein.

53.    <u>Post-Closing Claims Administration</u>.  After the Closing: (a) neither the Debtors nor any successor in interest, including any chapter 11 or chapter 7 trustee in these chapter 11 cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability or Permitted Post-Closing Encumbrance without the prior written consent of the Purchaser; and (b) the Purchaser shall have standing to object to any claim against the Debtors and their estates to the extent that, if allowed, it would constitute an Assumed

Liability or Permitted Post-Closing Encumbrance, and the Court will retain jurisdiction to hear and determine any such objections.

54.     <u>Notice of Sale Closing</u>.  Within one (1) Business Day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of the closing of the Sale.

55.     <u>Computations of Time-Periods</u>.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

56.     <u>This Order Governs in Event of Inconsistencies</u>.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.  To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

57.     <u>Modifications</u>.  The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

58.     The Debtors have demonstrated that the requested relief is necessary to avoid immediate and irreparable harm, as contemplated by Bankruptcy Rule 6003.

59.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Sale Order in accordance with the Motion.

60.     <u>Non-Severability</u>.  The provisions of this Order are nonseverable and mutually dependent.

61.     <u>No Stay</u>.  Notwithstanding the provisions of the Bankruptcy Rules, including Bankruptcy Rules 6004(h), 6006(d), and 7062, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is waived and shall not apply.

62.     <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, and all amendments thereto any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which the Debtors are a party or which have been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

Dated: [●], 2024
Wilmington, Delaware

_____
KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE