# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EXPRESS, INC., *et al.*,[1] | ) Case No. 24-10831 (KBO) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket Nos. 269, 446, 447, 450** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF AP UNION II LLC, ACADIA SECOND CITY 843-45 WEST ARMITAGE LLC, AVALON NORTH, LLC, ATHERTON MILL (E&A), LLC, BELDEN MALL LLC, BRIDGEWATER COMMONS MALL II LLC, BROWARD MALL LLC, CVM HOLDINGS, LLC, CENTENNIAL REAL ESTATE COMPANY, LLC, FEDERAL REALTY OP LP, HENDERSON AVE MAIN OWNER LLC, KRE COLONIE OWNER LLC, METRONATIONAL CORPORATION, PLAZA WEST COVINA LP, RREEF AMERICA REIT II CORP. HH, STAR-WEST PARKWAY MALL, LP, THE FORBES COMPANY, THE MACERICH COMPANY, UE BERGEN MALL OWNER LLC, WEA PALM DESERT LLC, AND YTC MALL OWNER LLC TO DEBTORS' NOTICES OF ASSUMPTION OF CERTAIN EXECUTORY AND/OR UNEXPIRED LEASES**

AP Union II LLC, Acadia Second City 843-45 West Armitage LLC, Avalon North, LLC, Atherton Mill (E&A), LLC, Belden Mall LLC, Bridgewater Commons Mall II LLC, Broward Mall LLC, CVM Holdings, LLC, Centennial Real Estate Company, LLC, Federal Realty OP LP, Henderson Ave Main Owner LLC, KRE Colonie Owner LLC, MetroNational Corporation, Plaza West Covina LP, RREEF America REIT II Corp. HH, Star-West Parkway Mall, LP, The Forbes Company, The Macerich Company, UE Bergen Mall Owner LLC, WEA Palm Desert LLC, and YTC Mall Owner LLC (the "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the respective *Notice of Assumption of Certain Executory*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

*Contracts and/or Unexpired Leases* [D.I. 446, 447, 450] (each individually, a "Cure Notice," and collectively, the "Cure Notices"), and respectfully represent as follows:

## I. BACKGROUND

1. On April 22, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.[2]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at each of the locations more fully set forth on **Schedule A**, which Schedule is attached hereto and incorporated into this Objection by this reference.

3. Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. On April 22, 2024, the Debtors filed a *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (Vii) Granting Related Relief* [D.I. 41] (the "Sale Motion"), pursuant to which the Debtors sought procedures (the "Bidding Procedures") for the sale of all or substantially

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2

all of their assets (the "Sale"), including procedures for to assume and assign certain of their non-residential real property leases to a Successful Bidder(s).

5. On June 6, 2024, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment* [D.I. 427] (the "Bidding Procedures Order"), which approved *inter alia* the Bidding Procedures for the Sale.

6. On June 13, 2024, the Debtors filed the Cure Notices setting forth the Debtors' propose cure amounts for leases and executory contracts that are being assumed and assigned to the Purchaser (as defined below) in connection with the Sale, and setting ten (10) days from the filing and service of the Cure Notices as the deadline for Landlords to object to the assumption and assignment of their Leases, including to the cure amounts set forth in the Cure Notices.

7. Contemporaneously with the filing and service of the Cure Notices, the Debtors caused Landlords to be served with certain confidential adequate assurance information for the JV Purchaser, which Landlords continue to review and evaluate.

8. On June 14, 2024, the Court entered the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* [D.I. 471] (the "Sale Order"), which authorized the Sale of substantially all of the Debtors' assets to Phoenix

Retail, LLC (the "JV Purchaser") and EXPWHP, LLC (the "WHP Global Purchaser") (together with their designees, successor and/or assigns, the "Purchasers").[3]

## II.     OBJECTION

9. While Landlords do not generally object to a sale of the Debtors' assets to the Purchasers, Landlords do object to any assumption and assignment of the Leases unless Debtors and/or the Purchasers comply with all of the requirements of Sections 365 of the Bankruptcy Code.

10. Further, the cure amounts set forth in the Cure Notices do not reflect all outstanding balances due and owing to Landlords under the Leases, or account for accrued but unbilled charges which may come due in the future. The cure amounts must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

### A.     The Debtors' proposed cure amounts as set forth in the Cure Notices fail to provide for the payment of all obligations due under the Leases.

11. Although the Debtors seek to assume and assign the Leases, in order to do so the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then

---

[3] Capitalized terms used but not otherwise defined here shall have the meaning given to them in the Sale Motion, the Cure Notices, the Sale Order, and the accompanying documents, as applicable.

such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

12. The Landlords' cure, as compared to the Debtors' cure is summarized more fully in Schedule A attached hereto, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1 through 21, which are attached hereto and incorporated into this Objection by this reference.[4]

### i. Year-end Adjustments and Reconciliations

13. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid

---

4 Unless otherwise indicated, Landlords' cure does not include the unpaid rent and other charges due to the Landlords for June rent which is the responsibly of the JV Purchaser under the Sale Order, and to be paid following the Closing. Moreover, Landlords' cure does not include charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserves the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Lease through the later of the date of any cure payment or effective date of assumption. In addition, unless otherwise indicated, Landlords' cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlords' actual pecuniary losses. Presently, Landlords estimate that their attorneys' fees incurred to date are in an amount not less than $3,500.

against actual charges incurred at the respective Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2023 may not yet have been billed under the Leases, and such charges that are accruing for 2024 will not be billed until 2025). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Accordingly, consistent with the Sale Order, any Assumption Order must not be free and clear of these obligations under the Leases.

ii.  **Attorneys' Fees, Costs, and Interest**

14.  The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

15.  The Debtors (or any assignee) take the Leases *cum onere*—subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of its Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va.

6

1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352-55 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

16. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or any successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. In re Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs

for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  Id., see also In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entm't Corp., et al., 01 Civ. 8946 (RWS), 2002 U.S. Dist. LEXIS 6186 at *25 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

17.     Accordingly, unless otherwise agreed as between the Purchaser and the applicable Landlord, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings.  To date, the Landlords estimate their attorney's fees and costs to be approximately $3,500 per Lease.

### iii.     The Cure Amounts Serve Only As Estimates.

18.     Landlords can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this limited Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations.  There is no

basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

### iv. The Debtors Or Any Assignee Must Pay Undisputed Cure Amounts Immediately.

19. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for any Lease, the undisputed portion of the cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

### B. Any assumption and assignment must comply with terms of the Leases.

20. Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

21. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the

assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

22. BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

23. Section 365(f)(1) does not modify or override Section 365(b). *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to override the specific protections granted to landlords in Section 365(b)(3)(C)). Any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance. .

**C.    Additional Security**

24. While the Purchasers may be backed by entities with industry experience and/or adequate capitalization, here, the Purchasers are a "Newco", so the assignee entity itself does not possess such experience or capitalization and, therefore, should provide some type of credit enhancement, such as: (i) a guaranty of future performance from a financially capable parent entity; (ii) a letter or credit; or (iii) a cash security deposit. Where the proposed assignee is a newly formed entity with no financial or operating history, an existing entity with acceptable financing should guaranty the performance of any newly-formed company that seeks an assignment of the Leases consistent with Section 365(l) of the Bankruptcy Code. Pursuant to Section 365(l), a landlord may require a security deposit or letter of credit as security for the performance of the

assignee's obligations under the Leases in the event that the assignee fails to perform on a going-forward basis.  Unless Landlords agree otherwise, this is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of an assignee with no operating history.

### D. Assumption and Amendment Agreement

25. Landlords also request that, as a condition to any order approving assumption and assignment of any of Landlords' Leases, the Buyer shall be required to enter into a short form Assumption and Amendment Agreement whereby the Buyer shall become directly obligated to Landlords and the provisions of the Leases regarding notice addresses will be modified.

### E. The Assumption Order Must Be Revised To Comply With The Leases, the Sale Order and This Objection.

26. Both Paragraph 1s to the proposed Assumption Order attached to the Cure Notices should be modified to reference the Sale Order and incorporate the provisions of same that address in connection with the assumption and assignment of Leases.

27. Further, the Assumption Order must be revised to comply with the terms of the Leases, as may have been amended pursuant to a separate agreement by and between the Debtors, the JV Purchaser and the Landlords, the terms of the Sale Order and the terms of the Asset Purchase Agreement.  For example, the Paragraph 4, among other provisions, should be in all respects subject to Paragraph 38 of the Sale Order and provide that it is subject to any other agreements between the Purchasers and the applicable landlord.

### III. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

28. To the extent consistent with the objections expressed herein, Landlords join in the objections of other landlords.

## IV. CONCLUSION

The Landlords respectfully request that any assumption and assignment order (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, (iii) order compliance with all Lease provisions, additional security to Landlords, as necessary, to satisfy adequate assurance requirements, and that any assignee enter into a short form Assumption and Amendment Agreement; and (iv) grant the other relief requested herein.

Dated: June 24, 2024  
Wilmington, Delaware

*/s/ Leslie C. Heilman*  
Leslie C. Heilman (DE No. 4716)  
Laurel D. Roglen (DE No. 5759)  
Margaret A. Vesper (DE No. 6995)  
Nicholas J. Brannick (DE No. 5721)  
BALLARD SPAHR LLP  
919 N. Market Street, 11th Floor  
Wilmington, Delaware 19801-3034  
Telephone: (302) 252-4465  
Facsimile: (302) 252-4466  
E-mail: heilmanl@ballardspahr.com  
       roglenl@ballardspahr.com  
       vesperm@ballardspahr.com  
       brannickn@ballardspahr.com

-and-

Dustin P. Branch, Esquire  
Nahal Zarnighian, Esquire  
Sara Shahbazi, Esquire  
BALLARD SPAHR LLP  
2029 Century Park East, Suite 1400  
Los Angeles, California 90067-2915  
Telephone: (424) 204-4400  
Facsimile: (424) 204-4350  
E-mail: branchd@ballardspahr.com  
       zarnighiann@ballardspahr.com  
       shahbazis@ballardspahr.com

*Counsel for AP Union II LLC, Acadia Second City 843-45 West Armitage LLC, Avalon North, LLC, Atherton Mill (E&A), LLC, Belden Mall LLC, Bridgewater Commons Mall II LLC, Broward Mall LLC, CVM Holdings, LLC, Centennial Real Estate Company, LLC, Federal Realty OP LP, Henderson Ave Main Owner LLC, KRE Colonie Owner LLC, MetroNational Corporation, Plaza West Covina LP, RREEF America REIT II Corp. HH, Star-West Parkway Mall, LP, The Forbes Company, The Macerich Company, UE Bergen Mall Owner LLC, WEA Palm Desert LLC, and YTC Mall Owner LLC*