**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXPRESS, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:** |
| | ) | **August 8, 2024 at 1:00 p.m. (ET)** |
| | ) | **Objection Deadline:** |
| | ) | **July 24, 2024 at 4:00 p.m. (ET)** |
| | ) | |

**MOTION OF DEBTORS FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING**
**THE SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS,**
**THE COMMITTEE, AND RESTORE; AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):  (a) authorizing and approving the Debtors to enter into and perform

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration").  Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement, the First Day Declaration, or the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to The Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No.419] (the "Final DIP Order"), as applicable.

any and all obligations under the settlement agreement attached to the Order as <u>Exhibit 1</u> (the "<u>Settlement Agreement</u>") by and between the above captioned debtors (the "<u>Debtors</u>"), the official committee of unsecured creditors appointed in this case (the "<u>Committee</u>") and ReStore Capital, LLC, as the Second Lien Prepetition Term Agent and the Second Lien DIP Term Agent ("<u>ReStore</u>," and the Debtors, the Committee, and ReStore, each a "<u>Party</u>," and together, the "<u>Parties</u>"); and (b) granting related relief.

## Jurisdiction

2.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## Background

5.      On April 22, 2024 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and

managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 23, 2024, the Court entered an order [Docket No. 67] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On May 3, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee [Docket No. 154].

I.      **These Chapter 11 Cases and Sale Transaction.**

6.      On June 6, 2024, the Court entered the Final DIP Order approving, on a final basis, the relief requested in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 24] (the "DIP Motion").  Through the DIP Motion, as approved by the Final DIP Order, the DIP Secured Parties provided the Debtors access to an aggregate $224 million in commitments under the DIP Facilities to support working capital needs, pay administrative costs during the chapter 11 cases, and enable the Debtors to continue to pursue a marketing process that yielded the value-maximizing going-concern sale of substantially all of the Debtors' assets.  The Final DIP Order further provided that parties in interest, including the Committee, had until July 8, 2024 (the "Challenge Period") to commence any challenge with respect to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations in the Final DIP Order.  In accordance with the Final DIP Order, the Committee is conducting an investigation of potential challenges, avoidance actions, or other claims or causes of action with respect to obligations arising under the Prepetition Credit Documents, with the cooperation of the Debtors.

7.    In accordance with the milestones provided in the Final DIP Order and the Bidding Procedures Order,[3] as amended or modified from time to time, on June 14, 2024, the Court entered the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 471] (the "Sale Order") approving the going-concern sale of substantially all of the Debtors' assets (the "Sale Transaction").  The Debtors closed the Sale Transaction on June 21, 2024.  *See Notice of the Occurrence of Sale Closing of the Stalking Horse APA on June 21, 2024* [Docket No. 535].

8.    On June 24, 2024, the DIP Secured Parties were paid all principal and interest owed pursuant to the Final DIP Order and the DIP Documents from proceeds of the Sale Transaction.  Accordingly, the DIP Claims[4] have been paid in full, except for certain amounts owed to the DIP Secured Parties on account of permitted fees and expenses that have accrued or will accrue on or prior to the date of entry of a final order by the Court approving the Settlement Agreement (the "Settlement Effective Date").  Following the consummation of the Sale Transaction, the Debtors are working with the Committee on the terms of a chapter 11 plan, which will provide for distribution of the residual proceeds their estates, including the value

---

[3]    "Bidding Procedures Order" means the *Order (I) Approving Bidding Procedures And Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner Of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Docket No. 427].

[4]    "DIP Claims" means any claims arising under or relating to the DIP Documents or granted to the DIP Secured Parties under the Final DIP Order, including any and all permitted fees and expenses, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Credit Agreements.

realized in connection with the Sale Transaction, as recoveries to Holders of Allowed Claims, and the orderly wind-down of their estates. The Debtors and the Committee are working together on a chapter 11 plan to accomplish this goal.

## II.     The Settlement Agreement.

9.      In June 2024, the Parties began settlement discussions with the goal of reaching a consensual path towards confirmation of a chapter 11 plan that would enhance and maximize recoveries for the Debtors' general unsecured creditors. The Parties engaged in extensive, good-faith, arm's length negotiations, which resulted in the execution of the Settlement Agreement on July 10, 2024.

10.      Pursuant to the terms of the Settlement Agreement, the Parties agreed, after hard-fought arms-length negotiations and subject to Court approval, that ReStore would pay $295,000.00 to the Debtors' estates as a settlement of the Committee's potential challenges, which amount will be made available under the chapter 11 plan for the benefit of general unsecured creditors. In addition, ReStore will be entitled to receive any additional permitted fees and expenses incurred by ReStore in connection with the Prepetition Second Lien Term Credit Documents or the Second Lien DIP Term Credit Documents through the Settlement Effective Date.

11.      In order to effectuate the Settlement, the Parties also agreed to an extension of the Challenge Period with respect to alleged potential challenges that could be brought against the Second Lien Secured Parties[5] by the Committee only from July 8, 2024, through and including the Settlement Effective Date. As a result of the settlement, the Committee agreed that it will not further pursue its investigation or challenge rights during this approval period; rather, the Parties

---

[5]     "Second Lien Secured Parties" means, collectively, the Second Lien Prepetition Secured Parties and the Second Lien DIP Term Secured Parties.

agreed to the extension so that the Challenge Period does not inadvertently lapse pending final approval of the Settlement Agreement. As a result, no further estate costs will be incurred in connection with the Committee's investigation pending such approval. On the Settlement Effective Date, the Additional Reserves will be released, and all of the Parties will be bound by the Debtors' Stipulations and Release set forth in the Final DIP Order.

12.     The effectiveness of the Settlement Agreement is expressly conditioned upon the Court's approval. As detailed in the *Declaration of Mark Still In Support of Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and between the Debtors, the Committee, and Restore; and (II) Granting Related Relief* (the "Still Declaration"), the Debtors have accepted the terms of the Settlement Agreement and submit that the Settlement Agreement is in the best interest of the Debtors and their estates, and that entry into the Settlement Agreement is a sound exercise of their business judgment. The Settlement Agreement enables the Debtors and their stakeholders to further the Debtors' chapter 11 objectives, provides an enhanced recovery to general unsecured creditors, and charts a path to an orderly wind-down and exit from chapter 11, all while eliminating potentially material administrative costs  and expensive litigation that could otherwise reduce recoveries for unsecured creditors. It also eliminates potential indemnification obligations related to a continued Committee investigation and challenge. In the interest of providing finality for all stakeholders, the Debtors seek authorization to enter into the Settlement Agreement and to implement its terms.

### Basis for Relief

13.     Pursuant to Bankruptcy Rule 9019, bankruptcy courts are authorized to approve a compromise proposed by a debtor after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a). The decision to approve a settlement or compromise is within the "sound discretion" of the

bankruptcy court. *See In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *7 (Bankr. D. Del. April 29, 2014) (quoting *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997)). In exercising its discretion, the bankruptcy court may also consider the opinions of the debtor in possession and its counsel that the settlement is fair and reasonable. *See In re MF Global, Inc.*, No. 11-2790 (MG), 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) ("[C]ourts may give weight to the opinion of bankruptcy counsel supporting the settlement."); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) ("[T]he court is permitted to rely upon opinions of the trustee, the parties, and their attorneys.") (internal quotations omitted). Further, "[i]n approving a settlement, the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must only conclude that the compromise is fair, reasonable, and in the best interest of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (internal quotations and citations omitted).

14.     As the Third Circuit has emphasized, "compromises are favored in bankruptcy" since they minimize litigation costs and provide for the efficient resolution of bankruptcy cases. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

15.     In the Third Circuit, a bankruptcy settlement should be approved under Bankruptcy Rule 9019 "if the settlement is 'fair and equitable and in the best interests of

the estate.'" *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The Third Circuit specifically sets forth four factors to be considered by the court in determining the fairness, reasonableness, and adequacy of a settlement, as follows:

    i.   the probability of success in litigation;

    ii.   the likely difficulties in collection;

    iii.   the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

    iv.   the paramount interest of creditors.

*Martin*, 91 F.3d at 393; *see also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (reiterating the *Martin* factors); *In re Nutraquest, Inc.*, 434 F. 3d 639, 644–47 (3d Cir. 2006) (same).

    16. Moreover, if a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999); *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

    17. The Debtors respectfully submit that the settlement memorialized in the Settlement Agreement is fair, equitable, and in the best interests of the Debtors' estates. Additionally, the *Martin* factors weigh in favor of approval of the Settlement Agreement.

18.     **First**, the Settlement Agreement resolves various legal issues and claims among the Parties at a benefit to the Debtors' estates, particularly in light of the cost and delay from any litigation with respect to alleged potential challenges and the Debtors' potential indemnification obligations to the DIP Secured Parties.

19.     **Second**, and relatedly, because the prospects of success in any litigation would be uncertain and costly, take considerable time, and could result in indemnification obligations owed by the Debtors to the DIP Secured Parties, the Settlement Agreement is a reasonable exercise of business judgment and provides a path forward for increased recoveries for general unsecured creditors by enhancing the estates while avoiding potential cost erosion.

20.     **Third**, the issues that would be likely to arise in the course of litigation would be complex and multi-faceted and severely strain the Debtors' limited resources.  Further, litigation between the Parties could distract the Debtors' remaining management team from (a) the important work of transitioning the Debtors' assets and operations to the Purchasers, and (b) progressing these chapter 11 cases toward a successful conclusion.  "It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation[,]" and so too here will the efficient resolution of the underlying disputes through the Settlement Agreement reduce expense and inconvenience at this critical juncture in the Debtors' chapter 11 cases and inure to the benefit of all stakeholders.  *See In re Nutraquest, Inc.*, 434 F. 3d at 646. Moreover, the Settlement Agreement will provide an efficient path towards resolution of these chapter 11 cases and a value-maximizing plan of liquidation.

21.     **Finally**, the Settlement Agreement was negotiated with the Committee taking into account the interest of unsecured creditors including for the reasons noted above. Indeed, the

compromises reflected in the Settlement Agreement set forth a consensual framework for a resolution between the Parties that will inure to the benefit of all creditors.

22.    Accordingly, as set forth herein and described in the Still Declaration, the Debtors believe that the Settlement Agreement is fair and advantageous to the Debtors' estates, falls well within the range of reasonableness, and represents a sound exercise of their business judgment. The Debtors thus submit that the Settlement Agreement satisfies the standards for approval under applicable law and should be approved by this Court.

## **Reservation of Rights**

23.    Other than as set forth in the Settlement Agreement, nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

### **Notice**

24.     The Debtors will provide notice of this motion to:  (a) the United States Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agents and counsel thereto; (i) the ABL Lenders and counsel thereto; (j) ReStore and counsel thereto; (k) counsel to the Committee; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

25.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  July 10, 2024 Wilmington, Delaware

*/s/  Michael W. Yurkewicz*

| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
|---|---|
| Domenic E. Pacitti (DE Bar No. 3989) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Michael W. Yurkewicz (DE Bar No. 4165) | Emily E. Geier, P.C. (admitted *pro hac vice*) |
| Alyssa M. Radovanovich (DE Bar No. 7101) | Nicholas M. Adzima (admitted *pro hac vice*) |
| 919 North Market Street, Suite 1000 | 601 Lexington Avenue |
| Wilmington, Delaware 19801 | New York, New York 10022 |
| Telephone:    (302) 426-1189 | Telephone:    (212) 446-4800 |
| Facsimile:    (302) 426-9193 | Facsimile:    (212) 446-4900 |
| Email:    dpacitti@klehr.com | Email:    joshua.sussberg@kirkland.com |
|         myurkewicz@klehr.com |         emily.geier@kirkland.com |
|         aradvanovich@klehr.com |         nicholas.adzima@kirkland.com |
| | |
| -and- | -and- |
| | |
| Morton R. Branzburg (admitted *pro hac vice*) | Charles B. Sterrett (admitted *pro hac vice*) |
| 1835 Market Street, Suite 1400 | 333 West Wolf Point Plaza |
| Philadelphia, Pennsylvania 19103 | Chicago, Illinois 60654 |
| Telephone:    (215) 569-3007 | Telephone:    (312) 862-2000 |
| Facsimile:    (215) 568-6603 | Facsimile:    (312) 862-2200 |
| Email:    mbranzburg@klehr.com | Email:    charles.sterrett@kirkland.com |
| | |
| *Co-Counsel for the Debtors and Debtors in Possession* | *Co-Counsel for the Debtors and Debtors in Possession* |