# IIN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | ) Case No. 24-10831 (KBO) |
| Debtors. | ) (Jointly Administered) |

## DECLARATION OF MARK STILL
## IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER
## (I) AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS, THE COMMITTEE, AND RESTORE; AND (II) GRANTING RELATED RELIEF

I, Mark Still, hereby declare under penalty of perjury:

1.  I am the Senior Vice President and Chief Financial Officer at Express, Inc. I have provided financial and managerial services for the Debtors since I joined their team in June 2005. I was promoted to Vice President of Finance in January 2016. I have served as the Chief Financial Officer since April 21, 2024. I have more than 18 years of experience in providing financial modeling services in the retail industry with the Debtors. I graduated from the Ross School of Business at University of Michigan in 2005 with a Master of Business Administration degree in finance. I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

2.      I submit this declaration (this "Declaration")[2] in support of the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and Between the Debtors, the Committee, and Restore; and (II) Granting Related Relief* [Docket No. 598] (the "Motion") and the settlement agreement attached as Exhibit 1 to the proposed Order (the "Settlement Agreement") by and between the Debtors, the official committee of unsecured creditors (the "Committee"), and ReStore Capital, LLC in its capacity as the Second Lien Prepetition Term Agent and the Second Lien DIP Term Agent ("ReStore," and together with the Debtors and the Committee, collectively, the "Parties").

3.      The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge, (b) information regarding the Debtors' operations and finances that I obtained from the Debtors' advisors or employees, (c) the Debtors' books, records, and relevant documents, and/or (d) my opinions, experience, and knowledge as the Debtors' Senior Vice President and Chief Financial Officer.  In that capacity, I have been directly involved in matters regarding the Debtors' chapter 11 filings, the Debtors' efforts to obtain postpetition financing, the Debtors' marketing and sale process, and the Debtors' postpetition operations.  I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Settlement Agreement, the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 419] (the "Final DIP Order"), or the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 471] (the "Sale Order").

**Investigation of Claims and the Terms of the Settlement Agreement**

4.  In accordance with the Final DIP Order, the Committee has been investigating potential challenges, avoidance actions, or other claims or causes of action, if any, with respect to obligations arising in connection with the DIP Facilities and the Prepetition Credit Facilities.[3] I understand that the Committee has alleged that certain fees and charges incurred by the Second Lien Secured Parties in connection therewith may be disallowed as unreasonable fees, impermissible penalties, and/or unmatured interest, and that the Second Lien Secured Parties' prepetition conduct in connection with the imposition of certain reserves under the Prepetition Credit Facilities may give rise to claims against the Second Lien Secured Parties. I further understand that the Second Lien Secured Parties have alleged that all fees and charges identified by the Committee, including the $91,844,606.94 of DIP Claims that were paid by the Debtors to the Second Lien Secured Parties on June 24, 2024, are allowable and that the Second Lien Secured Parties have no liability for their prepetition conduct.

5.  In June 2024, in anticipation of the closing of the Sale Transaction, the Parties began engaging in discussions regarding the possibility of a settlement of potential claims and causes of action, if any, in connection with the Committee's investigation of the DIP Facilities and the Prepetition Credit Facilities. Following the closing of the Sale Transaction on June 21, 2024, the DIP Secured Parties were paid all principal and interest owed pursuant to the Final DIP Order and the DIP Documents from proceeds of the Sale Transaction. Accordingly, the DIP Claims have been paid in full, except for certain amounts owed to the DIP Secured Parties on account of permitted fees and expenses that they had incurred prior to the Settlement Effective Date, which I

---

[3] "Prepetition Credit Facilities" means the First Lien Prepetition ABL Facility and the Second Lien Prepetition Term Facility.

3

understand will be the date the Court enters a final order approving the Settlement Agreement. Now, the Debtors are working with the Committee to draft a chapter 11 plan which will provide for the distribution of proceeds of the Sale Transaction and any residual assets of the Debtors' estates to creditors, and facilitate the orderly wind-down of the Debtors' estates.

6. Following hard-fought, arms-length negotiations, the Parties agreed to the terms of the Settlement Agreement, which provides for, among other things: (a) a one-time payment of $295,000.00 from ReStore to the Debtors' estates, which amount will be made available under the chapter 11 plan for the benefit of general unsecured creditors; (b) payment of permitted fees and expenses incurred by ReStore in connection with the Prepetition Second Lien Term Credit Documents or the Second Lien DIP Term Credit Documents through the Settlement Effective Date; and (c) the extension of the Challenge Period only with respect to asserted potential challenges that could be brought by the Committee against the Second Lien Secured Parties from July 8, 2024, through and including the Settlement Effective Date. I understand that the extension of the Committee's Challenge Period is merely to ensure that the Challenge Period does not inadvertently lapse pending approval of the Settlement Agreement, and the Committee has agreed that it will not pursue its investigation or challenge while the Motion is pending.

### Entry into the Settlement Agreement Is a Sound Exercise of the Debtors' Business Judgment

7. In my view, execution of the Settlement Agreement was, and is, a sound exercise of the Debtors' business judgment. By resolving the various legal issues and claims among the Parties, the Settlement Agreement provides stakeholders with finality and enables the Debtors to further their chapter 11 objectives. The Settlement Agreement also provides an immediate infusion of value into the estates, which will be earmarked for an enhanced recovery to general unsecured creditors, cuts off potentially material administrative and litigation costs that would

otherwise reduce recoveries for creditors, and eliminates potential indemnification obligations related to a continued Committee investigation and challenge. The Settlement Agreement is an efficient, value-maximizing resolution among the Parties that will allow the Parties to move forward and focus their efforts on the important work of confirming a chapter 11 plan and winding down the Debtors' estates.

8. Given these factors, and at this stage in the chapter 11 cases, I believe that the Debtors and all stakeholders are best served by approval of the Settlement Agreement so that the Debtors, with the cooperation of the Committee and stakeholders, may proceed expeditiously toward confirmation of a consensual, value-maximizing chapter 11 plan.

## Conclusion

9. Based on the foregoing, and based on my and my team's involvement in the chapter 11 cases and the negotiations surrounding the Settlement Agreement, I believe that execution and approval of the Settlement Agreement benefits the Debtors' estates by providing an immediate cash infusion, giving finality to all stakeholders, and clearing the way for the Debtors, the Committee, and other parties in interest to work toward confirmation of a chapter 11 plan that will maximize value for all stakeholders. Therefore, I respectfully request that the Court grant the Motion and approve the Settlement Agreement.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 12, 2024    /s/ *Mark Still*
　　　　　　　　　　　　　Mark Still
　　　　　　　　　　　　　Senior Vice President and Chief Financial Officer
　　　　　　　　　　　　　Express, Inc.