**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | ) ) | Case No. 24-10831 (KBO) |
| Debtors. | ) ) ) | (Jointly Administered) |

**MOTION OF DEBTORS FOR ENTRY
OF AN ORDER (I) EXTENDING THE DEBTORS'
EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), (a) extending the deadline by which the Debtors have the exclusive right to (i) file a chapter 11 plan by ninety (90) days through and including November 18, 2024, (the "<u>Filing Exclusivity Period</u>"), and (ii) solicit votes thereon by ninety (90)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "<u>First Day Declaration</u>"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

days through and including January 20, 2025[3] (the "Solicitation Exclusivity Period" and, together with the Filing Exclusivity Period, the "Exclusivity Periods"), without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods, and (b) granting related relief. Absent the relief requested herein, the Filing Exclusivity Period will expire on August 20, 2024, and the Solicitation Exclusivity Period will expire on October 21, 2024.[4]

## Preliminary Statement

2.    The Debtors request that the Court grant a 90-day extension of the Exclusivity Periods. Fewer than three months from the Petition Date, the Debtors have made substantial progress in chapter 11. In addition to customary "first day relief," on the Petition Date, the Debtors filed a motion seeking approval of certain proposed bidding procedures for an expedited sale process for all or substantially all the assets of the Debtors under section 363 of the Bankruptcy Code. These bidding procedures were approved by the Court on June 6, 2024 [Docket No. 427] (the "Bidding Procedures Order"). The Debtors' sale process resulted in a value-maximizing sale transaction, which preserved over 7,000 jobs and more than 450 stores. But significant work remains to be done.

3.    After the filing of these cases, the Debtors worked tirelessly to complete their marketing process for the Debtors' sale process. After a full, fair, and robust sale process, the Debtors determined, in accordance with their business judgement and the Bidding Procedures Order, that the Amended & Restated Asset Purchase Agreement (the "Asset Purchase Agreement"), by and among the Debtors, Phoenix Retail, LLC (the "JV Purchaser"), and

---

[3]  Ninety days after October 21, 2024, is a Sunday, January 19, 2024, but such date would be continued to Monday January 20, 2025, by operation of Bankruptcy Rule 9006.

[4]  180 days after April 22, 2024, is a Saturday, October 19, 2024, but such date would be continued to Monday, October 21, 2024, by operation of Bankruptcy Rule 9006.

EXPWHP, LLC (the "WHP Global Purchaser", and together with the JV Purchaser, the "Purchasers") constituted the highest and best offer for the Acquired Assets and Assumed Liabilities (as defined in the Asset Purchase Agreement). The Debtors then consummated the sale of the Acquired Assets and Assumed Liabilities to the Purchasers (the "Sale Transaction").

4. In parallel with the sale process, the Debtors have actively engaged with their stakeholders in an effort to build consensus surrounding treatment of certain executory contracts and unexpired leases, are providing transition services to effectuate a smooth transition to the Purchasers, have reached a settlement agreement between themselves, the Committee (as defined below), and Restore Capital, LLC that will resolve various legal issues and claims among the parties at a benefit to the Debtors' estates and enhance recovery for the general unsecured creditors (the "Settlement Agreement"), and are developing a value-maximizing chapter 11 plan (the "Plan") that the Debtors expect will pay all secured debt in full and provide for a meaningful recovery to unsecured creditors.

5. Despite the Debtors' progress, work remains to be done to bring these chapter 11 cases to a close. The Debtors remain focused on ensuring the success of the Sale Transaction by fulfilling their obligations under the transition services agreement with the Purchasers and negotiating key terms of the Plan with parties in interest in these chapter 11 cases. Extension of the Exclusivity Periods is critical to the Debtors' efforts to obtain global support of a value-maximizing plan without the risk of substantial disruption and additional costs that could stem from the introduction of new plans, proposed by creditors seeking to advance their parochial interests. Accordingly, by this motion the Debtors are seeking a 90-day extension of the Exclusivity Periods so that they may continue to diligently pursue an appropriate and

value-maximizing resolution of these chapter 11 cases without the distraction and cost of an exclusivity dispute.

6. Furthermore, the Debtors have taken a number of key steps in these chapter 11 cases, including, among other things:

- obtaining relief that has enabled the Debtors to continue their operations and administration of these chapter 11 cases, including obtaining approval of "first day" motions, "second day" motions, and retention applications;

- negotiating and obtaining final approval for the Debtors' debtor-in-possession financing facility and use of cash collateral to address the Debtors' liquidity needs in chapter 11;

- addressing questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest;

- obtaining entry of the order setting the claims bar date to facilitate the timely administration of their claims pool and beginning the process of reconciling claims and interests as promptly and efficiently as possible;

- promptly completing and filing their schedules of assets and liabilities and statements of financial affairs on May 30, 2024;

- obtaining entry of the contract rejection procedures order [Docket No. 269] (the "<u>Procedures Order</u>") and rejecting numerous onerous executory contracts and unexpired leases [Docket Nos. 386, 564, 565];

- continuing an extensive marketing process to identify, develop, and, subject to Court approval, consummate value-maximizing transactions for the Debtors' assets;

- Obtaining entry of the Bidding Procedures Order, establishing the Bid Deadline (as defined therein), and approving entry of the stalking horse asset purchase agreement;

- working with their advisors to implement and effectuate the Sale Transaction following entry of the sale order to the stalking horse bidder [Docket No. 471] (the "<u>Sale Order</u>");

- responding to diligence requests from the Committee (as defined below) and other key stakeholder groups;

4

- reaching a settlement agreement, subject to Court approval, between themselves, the Committee (as defined below), and Restore Capital, LLC that will resolve various legal issues and claims among the parties at a benefit to the Debtors' estates and enhance recovery for the general unsecured creditors; and

- continuing significant negotiations with key stakeholders regarding the terms of a consensual resolution to these chapter 11 cases.

7. Based on the current posture of these chapter 11 cases, the Debtors believe sufficient cause exists to warrant an extension of the Exclusivity Periods. Given the complexities of these chapter 11 cases and the Debtors' need to continue moving these chapter 11 cases forward, the Debtors' ability to provide needed transition services as required by the Asset Purchase Agreement while building support for the terms of a Plan would be seriously disrupted if another party were permitted to file a plan. An extension of the Exclusivity Periods is in the best interests of the Debtors, their estates, and all stakeholders, as it will allow the Debtors to procure the best recovery for their creditors and help to ensure a successful conclusion to these chapter 11 cases.

8. Accordingly, the Debtors seek a modest 90-day extension of the Exclusivity Periods to maintain the exclusive right to file a plan until November 18, 2024, and solicit votes thereon until January 20, 2025. For all of the foregoing reasons and those set forth below, the Debtors respectfully submit that a 90-day extension of exclusivity is appropriate in these circumstances, and request that the Court approve extension of the Exclusivity Periods.

## Jurisdiction and Venue

9. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory bases for the relief requested herein are sections 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6006, 6007, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 9006-2, and 9013-1.

## Background

12. On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 23, 2024, the Court entered an order [Docket No. 67] granting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). On May 3, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 154] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Basis for Relief

13. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here. Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within

the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d). Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 533–534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility") (quoting *In re Lake In The Woods*, 10 B.R. 338, 340, 345 (E.D. Mich. 1981)). Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

14. Courts within the Third Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. These factors include the following:

    (a)    the size and complexity of the case;

    (b)    the existence of good-faith progress;

    (c)    the necessity of sufficient time to negotiate and prepare adequate information to allow a creditor to determine whether to accept such chapter 11 plan;

  (d)  whether the debtor is paying its debts as they become due;

  (e)  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

  (f)  whether the debtor has made progress negotiating with creditors;

  (g)  the length of time a case had been pending;

  (h)  whether the debtor is seeking an extension to pressure creditors; and

  (i)  whether or not unresolved contingencies exist.

See *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

  15.  Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *Express One*, 194 B.R. at 100–101 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend exclusivity). For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231–232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek . . . [relief] . . . under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the

8

consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

16. As set forth below, the Debtors' chapter 11 cases satisfy the relevant factors and, thus, sufficient "cause" exists to extend the Exclusivity Periods as provided herein. There is ample precedent in this district and others for an initial extension of exclusivity as the Debtors seek here. *See, e.g.*, *In re Mist Holdings, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Jun. 10, 2024) (granting an initial extension of the exclusive periods by approximately ninety days); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Feb. 26, 2024) (same); *In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Nov. 8, 2023) (same); *In re PGX Holdings, Inc.*, No. 23-40718 (CTG) (Bankr. D. Del. Sept. 25, 2023) (same); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. Sept. 17, 2020) (same).[5]

## I. The Debtors' Chapter 11 Cases Are Large and Complex.

17. These chapter 11 cases involve twelve Debtor-affiliate entities, which had, at the outset of these cases, approximately 9,300 employees, 2,800 of whom were full-time. The Debtors have successfully consummated a sale transaction for substantially all of their assets with the Purchasers, which will allow the Express and Bonobos brand to continue to operate a complex business with over 450 locations. As of the Petition Date, the Debtors had approximately $190 million in funded-debt obligations. The Debtors continue to provide transition services to the Purchasers, and are proceeding with the final store closing sales at stores that will not be transferred to the Purchasers, to effectuate a smooth transfer for all stakeholders and to maximize the value of these estates before proceeding to an orderly winddown.

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

18. Moreover, the Debtors have a wide variety of parties in interest, from various vendors and contractual and litigation counterparties to local, state, and federal agencies—many of whom have been active in these chapter 11 cases. The Debtors also have a myriad of reporting obligations with respect to local, state, and federal taxing and regulatory agencies that the Debtors have continued to comply with, to the extent required by the Bankruptcy Code.

19. Accordingly, the size and complexity of these chapter 11 cases weigh in favor of extending the Exclusivity Periods.

**II.     The Debtors Have Made Good-Faith Progress Towards Conclusion of these Chapter 11 Cases.**

20. During their short time in chapter 11, the Debtors have made significant progress in negotiating with their stakeholders and administering these chapter 11 cases. The Debtors commenced these chapter 11 cases with extremely limited liquidity, and immediately sought and obtained approval of postpetition financing to pursue a value maximizing sale transaction, sought and obtained approval of the Bidding Procedures (as defined in the Bidding Procedures Order), and have consummated a value maximizing sale transaction, which will allow the Express brand to continue to serve its customers and employ thousands of workers across the country. The Debtors have moved as expeditiously as possible through these chapter 11 cases and are now working to transition their assets and vendor relationships to the Purchasers and run going-out-of-business sales at the closing stores to maximize the value of their estates for the benefit of all stakeholders.

21. In the weeks ahead, the Debtors will continue to engage with their stakeholders to develop and negotiate a chapter 11 plan. The Debtors' substantial progress administering these chapter 11 cases weighs in favor of an extension of the Exclusivity Periods.

**III.     The Debtors Are Paying Their Bills as They Come Due.**

22.     Since the Petition Date, the Debtors have paid their postpetition debts in the ordinary course or as otherwise provided by Court order.

**IV.     The Debtors Have Reasonable Prospects for Filing a Viable Plan**

23.     The Debtors have consummated a value maximizing sale transaction, which has provided for, among other things, a paydown of the Debtors' postpetition financing, substantial additional cash consideration, and has mitigated the size of the claims pool through the (i) assumption and assignment of executory contracts and leases and (ii) by continuing to provide employment for thousands of employees.  As a result of the significant consideration provided as a result of the Sale Transaction as well as the ongoing proceeds from store closing sales, the Debtors will have meaningful assets to make distributions to creditors through their forthcoming chapter 11 plan.

**V.     These Cases Are Fewer Than Three Months Old.**

24.     The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes fewer than three months after the Petition Date.  As discussed above, during this short time, the Debtors have accomplished a great deal, including approval of the Bidding Procedures Order and of the Sale Transaction, addressing questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest, and negotiating and obtaining final approval for the Debtors' debtor in possession financing facility and use of cash collateral to address the Debtors' liquidity needs, and the Debtors will continue to work diligently with all stakeholders to negotiate and consummate a plan.  The fact that this is the Debtors' first request for an extension supports granting the requested extension.

**VI.        An Extension of the Exclusivity Periods Will Not Pressure Creditors.**

25.     The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders.  The Debtors have been diligently moving these chapter 11 cases forward.  Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will benefit the Debtors' estates, their creditors, and all other key parties in interest.

26.     An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these chapter 11 cases.  Accordingly, sufficient cause exists to extend the Exclusivity Periods as provided herein.

**Notice**

27.     The Debtors will provide notice of this motion to:  (a) the United States Trustee for the District of Delaware; (b) the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware;  (e) the Internal Revenue Service;  (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice;  (h) the DIP Agents and counsel thereto; (i) the ABL Lenders and counsel thereto; (j) the FILO Agent and counsel thereto; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  July 25, 2024
Wilmington, Delaware

*/s/ Michael W. Yurkewicz*

| | |
|---|---|
| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP** |
| Domenic E. Pacitti (DE Bar No. 3989) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Michael W. Yurkewicz (DE Bar No. 4165) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Alyssa M. Radovanovich (DE Bar No. 7101) | Emily E. Geier, P.C. (admitted *pro hac vice*) |
| 919 North Market Street, Suite 1000 | Nicholas M. Adzima (admitted *pro hac vice*) |
| Wilmington, Delaware 19801 | 601 Lexington Avenue |
| Telephone: (302) 426-1189 | New York, New York 10022 |
| Facsimile: (302) 426-9193 | Telephone: (212) 446-4800 |
| Email: dpacitti@klehr.com | Facsimile: (212) 446-4900 |
|        myurkewicz@klehr.com | Email: joshua.sussberg@kirkland.com |
|        aradvanovich@klehr.com |        emily.geier@kirkland.com |
| |        nicholas.adzima@kirkland.com |
| -and- | -and- |
| Morton R. Branzburg (admitted *pro hac vice*) | Charles B. Sterrett (admitted *pro hac vice*) |
| 1835 Market Street, Suite 1400 | 333 West Wolf Point Plaza |
| Philadelphia, Pennsylvania 19103 | Chicago, Illinois 60654 |
| Telephone: (215) 569-3007 | Telephone: (312) 862-2000 |
| Facsimile: (215) 568-6603 | Facsimile: (312) 862-2200 |
| Email: mbranzburg@klehr.com | Email: charles.sterrett@kirkland.com |
| *Co-Counsel for the Debtors and Debtors in Possession* | *Co-Counsel for the Debtors and Debtors in Possession* |