**Exhibit 1**

**Settlement Agreement**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | Case No. 24-10831 (KBO) |
| Debtors. | (Jointly Administered) |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Settlement Agreement**") is entered into as of the ___ day of July, 2024, by and between the above captioned debtors (the "**Debtors**"), the Official Committee of Unsecured Creditors (the "**Committee**") and ReStore Capital, LLC, as the Second Lien Prepetition Term Agent and the Second Lien DIP Term Agent ("**ReStore**") (the Debtors, Committee and ReStore, each a "**Party**" and together, the "**Parties**").

## RECITALS

WHEREAS, on April 22, 2024 (collectively, the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

WHEREAS, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, on the Petition Date, the Debtors moved for joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b), and the cases were so consolidated under Case No. 24-10831 (collectively, the "**Bankruptcy Cases**");

WHEREAS, on May 3, 2024, the United States Trustee for Region 3 appointed the Committee;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

WHEREAS, prepetition, the Debtors and the Second Lien Prepetition Term Secured Parties (as defined in the DIP Order), including ReStore, were parties to a second-priority asset-based term loan agreement on a first-in, last-out basis (the "**Second Lien Prepetition Term Facility**");

WHEREAS, the Second Lien Prepetition Term Facility was secured by substantially all of the Debtors' assets (other than leasehold interests) that were sold in the Sale Transaction (as defined below);

WHEREAS, the Second Lien Prepetition Term Facility provided for certain interest, fees and charges;

WHEREAS, the Second Lien Prepetition Term Lenders (as defined in the DIP Order), in their capacity as Second Lien DIP Term Lenders (as defined in the DIP Order) provided debtor-in-possession financing to the Debtors in the Bankruptcy Cases pursuant to a final order entered June 6, 2024 (the "**DIP Order**") [D.I. 419];

WHEREAS, pursuant to the DIP Order, all of the outstanding Second Lien Prepetition Term Obligations (as defined in the DIP Order) under the Second Lien Prepetition Term Facility were rolled-up so as to be deemed issued under the Second Lien DIP Term Documents (as defined in the DIP Order) as Second Lien DIP Roll-Up Term Loans (as defined in the DIP Order);

WHEREAS, on June 14, 2024, the Bankruptcy Court entered an order [D.I. 471] approving the going-concern sale of substantially all of the Debtors' assets (the "**Sale Transaction**");

WHEREAS, the Sale Transaction closed on June 21, 2024 [D.I. 535];

WHEREAS, on June 24, 2024, subject to the DIP Order and any party in interest's ability to assert a Challenge thereto (as defined in the DIP Order), the Second Lien DIP Term Lenders were paid $91,844,606.94 on account of all principal and interest accrued through such date (including the Second Lien DIP Roll-Up Term Loans) and owed pursuant to the DIP Order and the Second Lien DIP Term Documents, and, accordingly, the claims of the Second Lien DIP Term Secured Parties (as defined in the DIP Order) and the Second Lien Prepetition Term Secured Parties (together with the Second Lien DIP Term Secured Parties, collectively, the "**Second Lien Secured Parties**") have been paid in full other than certain amounts owed to the Second Lien DIP Term Secured Parties for permitted fees and expenses that have accrued or may accrue prior to the Effective Date;

WHEREAS, the DIP Order provided certain stipulations regarding the perfection of liens securing, among other things, the Second Lien Prepetition Term Facility, and releases of all claims against the Second Lien Secured Parties arising out of the Second Lien Prepetition Term Facility and the Second Lien Secured Parties' conduct (the "**DIP Waivers and Releases**"), subject to a Challenge Period (as defined in the DIP Order);

WHEREAS, pursuant to the DIP Order, parties in interest could commence a Challenge against any Second Lien Secured Party during the Challenge Period, including as to the allowed amount of any claim, the roll-up and the June 24, 2024 repayment;

WHEREAS, the Committee has investigated the status of the Second Lien Secured Parties' prepetition liens and the allowance of certain fees and expenses allegedly incurred by the Second Lien Secured Parties and their conduct in connection with the Second Lien Prepetition Term Facility;

WHEREAS, for purposes of this Settlement Agreement, the Committee has alleged that certain fees and charges incurred by the Second Lien Secured Parties may be disallowed as unreasonable fees, impermissible penalties and/or unmatured interest, and that the Second Lien Secured Parties' prepetition conduct in connection with the imposition of reserves may give rise to claims against them;

WHEREAS, the Second Lien Secured Parties have alleged that all fees and charges identified by the Committee, including the $91,844,606.94 of claims that were paid by the Debtors to the Second Lien Secured Parties on June 24, 2024, are allowable and that they have no liability for their prepetition conduct;

WHEREAS, the Parties have exchanged information and engaged in discussions regarding these disputes and, as a result of those discussions, and to avoid further costs and the attendant risks of litigation, have agreed to resolve any and all disputes between them upon the terms and conditions set forth in this Settlement Agreement; and

WHEREAS, no other party in interest, other than the Committee, informally objected to the claims of the Second Lien Secured Parties or otherwise filed a Challenge during the Challenge Period.

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby mutually acknowledged, the Parties agree, subject to approval of the Bankruptcy Court, as follows:

## AGREEMENT

1. <u>Bankruptcy Court Approval</u>.  Following the execution of this Settlement Agreement, the Debtors, by and through their undersigned counsel, shall file a motion in the chapter 11 cases pursuant to Fed. R. Bankr. P. 9019 (the "**Settlement Motion**"), seeking Bankruptcy Court approval of this Settlement Agreement, and shall diligently pursue approval of the Settlement Motion.  The Parties shall cooperate to obtain approval of the Settlement Motion.

2. <u>Effective Date</u>.  Except as set forth in Section 4 below, the effectiveness of this Settlement Agreement is conditioned upon the entry of a Final Order by the Bankruptcy Court, in a form reasonably acceptable to each of the Parties, approving the Settlement Motion (the "**Settlement Order**").  The Settlement Order shall be considered a "Final Order" if the order is in full force and effect, not subject to appeal, and has not been reversed, vacated, or stayed.  This

Settlement Agreement shall become effective (the "**Effective Date**") on the date upon which the Settlement Order becomes a Final Order.

3. <u>Settlement and Final Allowance of Second Lien Secured Parties' Claims</u>. The Second Lien Secured Parties shall have an allowed secured claim in the Bankruptcy Cases on account of the Second Lien DIP Term Obligations (inclusive of the Second Lien DIP Roll-Up Term Loans) equal to (i) in the aggregate amount of $91,844,606.94 as of June 24, 2024, plus any fees, expenses or other obligations (other than principal and interest) that accrue under the DIP Order and associated loan documents through the Effective Date, minus (ii) $295,000 (the "**Settlement Amount**") in full settlement of the Committee's alleged claims against the Second Lien Secured Parties (the difference between (i) and (ii), the "**Allowed Secured Claim**"); *provided* that, for the avoidance of doubt, any known indemnification obligations in favor of ReStore arising prior to the Effective Date in accordance with the terms of the DIP Order and the associated loan documents shall continue only through the Effective Date and shall be deemed satisfied and released by the payment of permitted lender fees, if any; *provided further* that any currently unknown indemnification obligations in favor of ReStore that arise following the Effective Date shall not be deemed satisfied and released by this Settlement Agreement. ReStore shall pay the Settlement Amount in cash to the Debtors' estates within three (3) Business Days following the Effective Date. For the avoidance of doubt, ReStore shall not be required to file a proof of claim in the Bankruptcy Cases with respect to the Allowed Secured Claim or any indemnification obligations identified in this Section 3 and shall be entitled to be paid for its permitted lender fees that accrue through the Effective Date.

4. <u>Extension of Committee's Challenge Period with Respect to Second Lien Secured Parties</u>. The Challenge Period with respect to the Second Lien Secured Parties is extended through the Effective Date solely for the Committee and no other party in interest. Any other party in interest's Challenge Period with respect to the Second Lien Secured Parties shall terminate in accordance with the terms of the DIP Order (which such Challenge Period for other parties in interest expired on July 8, 2024). On the Effective Date, the Committee's Challenge Period shall terminate as to the Second Lien Secured Parties. Following the respective termination of the Challenge Period, all Parties shall be bound by the DIP Waivers and Releases as to ReStore to the full extent provided by the DIP Order.

5. <u>Release of Reserves</u>. Pursuant to the DIP Order, the Additional Reserves (as defined in the DIP Order) shall be released upon the termination of the Committee's Challenge Period on the Effective Date.

6. <u>No Admission of Liability</u>. By signing this Settlement Agreement, the Parties do not admit liability or any wrongdoing.

7. <u>No Assignment or Abandonment of Claims</u>. Each of the Parties represents and warrants that, as of its execution of this Settlement Agreement, it has not assigned or otherwise transferred any of the claims addressed in, or to be released by, this Settlement Agreement and shall not assign or otherwise transfer to any person any such claim.

8. <u>Choice of Law</u>. This Settlement Agreement shall be governed by the laws of the State of Delaware, and shall be construed and interpreted in accordance with its laws,

notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

9. <u>Authority of Parties</u>.  The Parties each represent and warrant that the undersigned is fully authorized and empowered to execute and deliver this Settlement Agreement on behalf of, and to bind, each Party, as applicable, to the terms and conditions of this Settlement Agreement; provided, however, that the Debtors' authorization is subject to Bankruptcy Court approval.

10. <u>Merger</u>.  The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations, and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.  This Settlement Agreement may only be modified by an instrument in writing executed by each of the Parties hereto.

11. <u>Validity</u>.  If any provision of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, then said illegal, unenforceable, or invalid provision shall be deemed not to be a part of this Settlement Agreement and the legality, validity, and enforceability of the remaining provisions shall not be affected thereby, unless the provision(s) held illegal, unenforceable, or invalid will, if not enforced, substantially impair the benefits and fairness of the remaining Settlement Agreement provisions.

12. <u>Execution of Settlement Agreement</u>.  This Settlement Agreement may be executed in one or more counterparts, any of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same agreement.  Facsimile, electronic mail and scanned signatures shall be deemed to have the full force and effect of ink signatures.

13. <u>Enforcement of Settlement Agreement</u>.  In the event that legal action is instituted to enforce this Settlement Agreement, the prevailing party shall be entitled to recover from the losing party all costs and expenses of litigation, including, without limitation, court costs and reasonable attorneys' fees.

14. <u>Jurisdiction</u>.  Subject to the entry of a Final Order, the Bankruptcy Court shall have jurisdiction to resolve any disputes or controversies arising from or related to this Settlement Agreement and the Parties consent to the jurisdiction of the Bankruptcy Court to resolve any disputes or controversies arising from or related to this Settlement Agreement.

15. <u>Construction</u>.  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result of which the Parties hereto acknowledge and agree (a) that any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement and (b) that each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of its own free will.

IN WITNESS WHEREOF, the Parties have hereby executed this Settlement Agreement as of the date first written above, intending to be legally bound.

**EXPRESS INC., AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

/s/ *Mark Still*
_____

By:  Mark Still
Its:  Chief Financial Officer

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

_____

By:
Its:

**RESTORE CAPITAL, LLC,
AS THE SECOND LIEN PREPETITION TERM AGENT AND
THE SECOND LIEN DIP TERM AGENT**

_____

By:
Its:

[*signature page to Settlement Agreement*]

IN WITNESS WHEREOF, the Parties have hereby executed this Settlement Agreement as of the date first written above, intending to be legally bound.

**EXPRESS INC., AND ITS AFFILIATED
DEBTORS AND DEBTORS IN POSSESSION**

_____
By: Stewart Glendinning
Its: Chief Executive Officer

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

_____
By: Adam Rogoff
Its: Kramer Levin Naftalis & Frankel LLP
Counsel to Committee

**RESTORE CAPITAL, LLC,
AS THE SECOND LIEN PREPETITION TERM AGENT AND
THE SECOND LIEN DIP TERM AGENT**

_____
By:
Its:

[*signature page to Settlement Agreement*]

IN WITNESS WHEREOF, the Parties have hereby executed this Settlement Agreement as of the date first written above, intending to be legally bound.

**EXPRESS INC., AND ITS AFFILIATED
DEBTORS AND DEBTORS IN POSSESSION**

---

By:  Stewart Glendinning
Its:  Chief Executive Officer


**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

By:
Its:


**RESTORE CAPITAL, LLC,
AS THE SECOND LIEN PREPETITION TERM AGENT AND
THE SECOND LIEN DIP TERM AGENT**

*T. Kellan Grant*
---

By:  T. Kellan Grant
Its:  EVP Commercial Counsel


[*signature page to Settlement Agreement*]