# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | Case No. 24-10831 (KBO) |
| Debtors. | (Jointly Administered) |

## JOINT CHAPTER 11 PLAN
## OF EXPRESS, INC. AND ITS DEBTOR AFFILIATES

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

**KLEHR HARRISON HARVEY BRANZBURG LLP**

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:      (302) 426-9193
Email:            dpacitti@klehr.com
                      myurkewicz@klehr.com
                      aradvanovich@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-3007
Facsimile:      (215) 568-6603
Email:            mbranzburg@klehr.com

*Co-Counsel for the Debtors and Debtors in Possession*

Dated:  July 31, 2024

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                      emily.geier@kirkland.com
                      nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

## <u>TABLE OF CONTENTS</u>

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
      OF TIME, AND GOVERNING LAW ..................................................................1
    A.     Defined Terms. ...............................................................................................1
    B.     Rules of Interpretation. ................................................................................18
    C.     Computation of Time. ..................................................................................19
    D.     Governing Law. ............................................................................................20
    E.     Reference to Monetary Figures......................................................................20
    F.     Controlling Document. .................................................................................20
    G.    Nonconsolidated Plan. .................................................................................20
    H.    Purchase Agreement Consent Rights and Controlling Documents .....................20
    I.     References to the Debtors and the Wind-Down Debtors.....................................21

ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE  CLAIMS,
      PRIORITY TAX CLAIMS, AND DIP CLAIMS.................................................21
    A.     Administrative Claims. .................................................................................21
    B.     Professional Fee Claims................................................................................22
    C.     Payment of Fees and Expenses under DIP Orders.............................................23
    D.     DIP Claims. .................................................................................................24
    E.     U.S. Trustee Fees. ........................................................................................25

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
      INTERESTS ...............................................................................................25
    A.     Classification of Claims and Interests.............................................................25
    B.     Treatment of Claims and Interests. .................................................................26
    C.     Special Provision Governing Unimpaired Claims.............................................29
    D.     Elimination of Vacant Classes.......................................................................29
    E.     Voting Classes, Presumed Acceptance by Non-Voting Classes...........................29
    F.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
       Bankruptcy Code. ........................................................................................29
    G.    Controversy Concerning Impairment. .............................................................30
    H.    Subordinated Claims.....................................................................................30

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN........................................30
    A.     General Settlement of Claims and Interests......................................................30
    B.     The Sale Transaction.....................................................................................30
    C.     The Wind-Down Debtors................................................................................31
    D.     Corporate Existence and Dissolution...............................................................42
    E.     Corporate Action..........................................................................................44
    F.     Cancellation of Notes, Instruments, Certificates, and Other Documents. ............44
    G.    Effectuating Documents; Further Transactions. ...............................................45
    H.    Section 1146(a) Exemption............................................................................45
    I.     Preservation of Rights of Action.....................................................................45
    J.     Closing the Chapter 11 Cases. .......................................................................46
    K.    Deemed Consolidation of Class 3...................................................................47

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
     LEASES ........................................................................................................47
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ........47
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..........49
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .......50
    D.    Preexisting Obligations to the Debtors under Executory Contracts and
        Unexpired Leases. .............................................................................................52
    E.    Insurance Policies. ............................................................................................52
    F.    Indemnification Provisions. ..............................................................................52
    G.    Modifications, Amendments, Supplements, Restatements, or Other
        Agreements. ......................................................................................................53
    H.    Reservation of Rights. .......................................................................................53
    I.    Nonoccurrence of Effective Date. ......................................................................54
    J.    Contracts and Leases Entered Into After the Petition Date. ...............................54
    K.    Sale Order Assignment Procedures. ..................................................................54

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .................................................54
    A.    Timing and Calculation of Amounts to Be Distributed. .....................................54
    B.    Distributions on Account of Obligations of Multiple Debtors. ...........................55
    C.    Distributions Generally. ....................................................................................55
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..........56
    E.    Manner of Payment. .........................................................................................56
    F.    Compliance with Tax Requirements. .................................................................56
    G.    Allocations. .......................................................................................................57
    H.    No Postpetition Interest on Claims. ...................................................................57
    I.    Foreign Currency Exchange Rate. .....................................................................57
    J.    Setoffs and Recoupment. ..................................................................................57
    K.    Claims Paid or Payable by Third Parties. ..........................................................58

ARTICLE VII THE PLAN ADMINISTRATOR .......................................................................58
    A.    The Plan Administrator. ....................................................................................58
    B.    Wind-Down. ......................................................................................................60
    C.    Exculpation, Indemnification, Insurance & Liability Limitation. ........................61
    D.    Tax Returns. ......................................................................................................61

ARTICLE VIII RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR .............61
    A.    Maintenance of Reserve Accounts. ....................................................................61
    B.    Undeliverable Distribution Reserve. ..................................................................62
    C.    Wind-Down Reserve. ........................................................................................62
    D.    Administrative Claims Reserve. ........................................................................63

ARTICLE IX PROCEDURES FOR RESOLVING CONTINGENT,
     UNLIQUIDATED, AND DISPUTED CLAIMS ..............................................63
    A.    Disputed Claims Process. ..................................................................................63
    B.    Allowance of Claims. ........................................................................................64
    C.    Claims Administration Responsibilities. ............................................................64
    D.    Estimation of Claims. .......................................................................................64

| | | |
|---|---|---|
| E. | Adjustment to Claims or Interests without Objection. | 65 |
| F. | Time to File Objections to Claims. | 65 |
| G. | Disallowance of Claims or Interests. | 65 |
| H. | No Distributions Pending Allowance. | 66 |
| I. | Distributions After Allowance. | 66 |
| J. | Tax Treatment of Reserves for Disputed Claims. | 66 |
| K. | No Interest. | 67 |
| L. | Amendments to Claims. | 67 |

ARTICLE X SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ..................................................................................67

| | | |
|---|---|---|
| A. | Settlement, Compromise, and Release of Claims and Interests. | 67 |
| B. | Release of Liens. | 68 |
| C. | Debtor Release. | 68 |
| D. | Third-Party Release. | 70 |
| E. | Exculpation. | 71 |
| F. | Injunction. | 71 |
| G. | Preservation of Setoff Rights. | 73 |
| H. | Protections Against Discriminatory Treatment. | 73 |
| I. | Document Retention. | 73 |
| J. | Term of Injunctions or Stays. | 73 |
| K. | Subordination Rights. | 74 |
| L. | No Discharge of the Debtors. | 74 |

ARTICLE XI CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...............74

| | | |
|---|---|---|
| A. | Conditions Precedent to the Effective Date. | 74 |
| B. | Waiver of Conditions. | 75 |
| C. | Effect of Failure of Conditions. | 76 |
| D. | Substantial Consummation. | 76 |

ARTICLE XII MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...........................................................................................76

| | | |
|---|---|---|
| A. | Modification and Amendments. | 76 |
| B. | Effect of Confirmation on Modifications. | 76 |
| C. | Revocation or Withdrawal of Plan. | 76 |

ARTICLE XIII RETENTION OF JURISDICTION ....................................................77

ARTICLE XIV MISCELLANEOUS PROVISIONS ...................................................79

| | | |
|---|---|---|
| A. | Immediate Binding Effect. | 79 |
| B. | Additional Documents. | 79 |
| C. | Statutory Committee and Cessation of Fee and Expense Payment. | 79 |
| D. | Rights of Purchasers under the Sale Order. | 80 |
| E. | Reservation of Rights. | 80 |
| F. | Successors and Assigns. | 80 |
| G. | Notices. | 80 |
| H. | Entire Agreement. | 83 |

iv

I.      Exhibits. ....................................................................................................................83
J.      Nonseverability of Plan Provisions.........................................................................83
K.      Waiver or Estoppel. .................................................................................................84
L.      Conflicts....................................................................................................................84

**INTRODUCTION**

Express, Inc. ("Express") and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 Cases (each a "Debtor" and, collectively, the "Debtors") propose this joint chapter 11 plan (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  The Plan does not contemplate substantive consolidation of any of the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "ABL Facility" means the senior secured asset-based revolving credit facility provided for under the Prepetition ABL Credit Agreement.

2.    "*ABL Lenders*" means the lenders from time to time under the ABL Facility.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; *provided*, *however*, that any Administrative Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

4.    "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which:  (a) with respect to Administrative Claims other than Professional Fee Claims, shall be the later of (i) 30 days after the Effective Date or (ii) in the event an Executory Contract is rejected following the Effective Date, solely as to Administrative Claims related to such rejected Executory Contract, 30 days after notice to the counterparty to such

rejected Executory Contract; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

5.      "*Administrative Claim Objection Bar Date*" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 180 days following the Effective Date; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

6.      "*Administrative Claims Reserve*" means the reserve established pursuant to the Final DIP Order and funded in the amount of the Administrative Claims Reserve Amount prior to the Effective Date.

7.      "*Administrative Claims Reserve Amount*" means $[●].

8.      "*Affiliate*" means, with respect to any person, or any other person, which directly or indirectly controls, or is under common control with, such Person, and shall include the meaning of "affiliate" set forth in section 101(2) of the Bankruptcy Code as if such Person were a debtor in a case under the Bankruptcy Code.

9.      "*Agents*" means, collectively, the Prepetition Agents and the DIP Agents, including, in each case, any successors thereto.

10.     "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed by the Claims Bar Date or the Administrative Claims Bar Date, as applicable (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed) in accordance with the terms of the Bar Date Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be Filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  For the avoidance of doubt: (x) a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed after

the Claims Bar Date or the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or agreement in writing by the Debtors and the Holder of such late-Filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  "Allow" and "Allowing" shall have correlative meanings.

11.    "*Assignment Procedures*" means any assignment procedures attached to the Sale Order.

12.    "*Assumed Liabilities*" means the liabilities assumed by the Purchasers in the Sale Transaction pursuant to the terms of the Purchase Agreement.

13.    "*Assumption/Rejection Procedures Order*" means the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 386.]

14.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common Law, including fraudulent transfer Laws.

15.    "*Bank of America*" means Bank of America, N.A.

16.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

17.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 156, the United States District Court for the District of Delaware.

18.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

19.    "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 280].

20.    "*Bidding Procedures*" means the bidding procedures attached as <u>Exhibit 1</u> to the Bidding Procedures Order.

21.     "*Bidding Procedures Order*" means the *Order (I) Approving Bidding Procedures and Bid Protection (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Docket No. 427].

22.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

23.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

24.     "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

25.     "*Cause of Action*" or "*Causes of Action*" means any Claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, cross claim, counterclaim, contribution, suit, class action, third-party claim, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, direct or indirect, choate or inchoate, Disputed or undisputed, liquidated or unliquidated, Secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at Law, in equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by Law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign Law, or breach of any duty imposed by Law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) Claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer Laws.

26.     "*Chapter 11 Cases*" means the procedurally consolidated cases Filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

27.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

28.     "*Claims and Noticing Agent*" means Stretto, Inc., the claims and noticing agent retained by the Debtors in the Chapter 11 Cases by order of the Bankruptcy Court [Docket No. 80].

29.     "*Claims Bar Date*" means the date established pursuant to the Bar Date Order, by which Proofs of Claim must be Filed with respect to Claims, other than Administrative Claims, including Claims held by Governmental Units, or other Claims or Interests for which the

Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

30.    "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to Claims.

31.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

32.    "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

33.    "*CM/ECF*" means the Bankruptcy Court's case management and electronic case filing system.

34.    "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases [Docket No. 154].

35.    "*Committees Professionals*" means any and all professionals retained or engaged by the Committees by order of the Bankruptcy Court in connection with the Chapter 11 Cases and the administration thereof.

36.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

37.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

38.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code.

39.    "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code; *provided* that the Sale Order shall govern the consummation of the Sale Transaction.

40.    "*Consulting Agreement*" means that certain Letter Agreement dated as of November 6, 2019 (as amended and supplemented from time to time, including as supplemented by the 24th, 25th, and 26th amendments, a copy of which, with the amendments, is attached as Exhibit 1 to the Store Closing Order, made by and between Express, LLC and Hilco Merchant Resources, LLC.

41.    "*Court-Ordered Cure Cost*" means the amount (if any) by which the Bankruptcy Court determines that the Allowed Cure Cost exceeds the amount set forth in the Schedule of Assumed Contracts and Unexpired Leases.

42.     "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults and other non-monetary defaults to the extent required by section 365 of the Bankruptcy Code, under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors (and/or assigned by the Debtors pursuant to the Sale Order or the Confirmation Order) pursuant to sections 365 or 1123 of the Bankruptcy Code.

43.     "*D&O Liability Insurance Policies*" means all of the Debtors' insurance policies (including any "tail policy") and all agreements, documents or instruments relating thereto issued or providing coverage at any time to any of the Debtors or any of their predecessors for current or former directors', managers', and officers' liability.

44.     "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in <u>Article X.C</u> of the Plan.

45.     "*Debtors*" means, collectively, each of the following:  Express, Inc., Express Topco LLC; Express Holding, LLC; Express Finance Corp.; Express, LLC; Express Fashion Investments, LLC; Express Fashion Logistics, LLC; Express Fashion Operations, LLC; Express GC, LLC; Express BNBS Fashion, LLC; UW, LLC; and Express Fashion Digital Services Costa Rica, S.R.L.

46.     "*Definitive Documents*" means, collectively, and in each case in form and substance reasonably acceptable to the Committee, (a) the Plan and any Plan Supplement, (b) the Disclosure Statement and the Solicitation Materials, (c) the Confirmation Order, (d) the Disclosure Statement Order, (e) any and all filings with or requests for regulatory or other approvals from any governmental Entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Wind-Down Transactions, (f) such other agreements and documentation contemplated in, or necessary or advisable to, consummate and implement the Wind-Down Transactions, and (g) any amendments or modifications to each of the Definitive Documents in clauses (a) through this clause (g).

47.     "*Designation Rights Period*" means the period consistent with the Purchase Agreement in which the Debtors reserve the right to alter, amend, modify, or supplement (i) the Schedule of Assumed Executory Contracts and Unexpired Leases and (ii) any schedule of Executory Contracts and Unexpired Leases that is attached to the Purchase Agreement, with the consent of the applicable Purchaser, at any time prior to the later of (x) the date on which the Bankruptcy Court enters an order confirming a reorganization or liquidation plan concerning the Debtors, and (y) seventy-five (75) days following the Closing Date (as defined in the Purchase Agreement); provided that such date may be extended with respect to any Designated Contract (as defined in the Purchase Agreement) or Designated Lease (as defined in the Purchase Agreement) (a) for up to an additional one hundred eighty (180) days beyond such seventy-fifth (75th) day with the consent of the applicable Purchaser and the applicable Designation Counterparty (as defined in the Purchase Agreement) and (b) for up to an additional one hundred eighty (180) days beyond the expiration of the one hundred eighty (180) day extension period set forth in (a) above with the consent of the Debtors, Phoenix and the applicable Designation Counterparty (as defined in the Purchase Agreement)..

48.     "*DIP ABL Agent*" means Wells Fargo in its capacity as administrative and collateral agent, as applicable, under the DIP ABL Credit Agreement, together with its respective successor, assign, or any replacement agent, each in its capacity as such.

49.     "*DIP ABL Claim*" means any Claim arising under or relating to the DIP ABL Facility under the DIP ABL Credit Agreement or the DIP Orders, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP ABL Credit Agreement.

50.     "*DIP ABL Credit Agreement*" means the debtor-in-possession financing credit agreement by and among the Debtors, the applicable DIP Agent, and the DIP ABL Lenders, as approved by the DIP Orders, setting forth the terms and conditions of the DIP ABL Facility and the DIP Term Loan Facility.

51.     "*DIP ABL Facility*" means the first lien superpriority secured revolving asset–based loans made in accordance with the DIP ABL Credit Agreement and the DIP Orders.

52.     "*DIP ABL Lenders*" means, collectively, the lenders from time to time under the DIP ABL Facility.

53.     "*DIP ABL Required Lenders*" means the "Required Lenders" as defined in the DIP ABL Credit Agreement.

54.     "*DIP Agents*" means, collectively, Wells Fargo and ReStore, each in their capacity as administrative, collateral agent, and senior collateral agent, as applicable, under the DIP Credit Agreements, together with its respective successors, assigns, or any replacement agent(s) appointed pursuant to the terms of the DIP Credit Agreements.

55.     "*DIP Budget Consenting Parties*" means, collectively, the DIP ABL Agent, the DIP ABL Required Lenders, the DIP Term Loan Agent, and the DIP Term Loan Lenders

56.     "*DIP Claims*" means, collectively, the DIP ABL Claims and the DIP Term Loan Claims.

57.     "*DIP Credit Agreements*" means, collectively, the DIP ABL Credit Agreement and the DIP Term Loan Credit Agreement.

58.     "*DIP Documents*" means, collectively, the DIP Credit Agreements and any other agreements, documents, and instruments delivered or entered into therewith, including, without limitation, any guarantee amendments, pledge and collateral agreements, intercreditor agreements, and other security documents.

59.     "*DIP Lenders*" means the DIP ABL Lenders and the DIP Term Loan Lenders.

60.     "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

61.    "*DIP Term Loan Agent*" means ReStore, in its capacity as administrative and collateral agent, as applicable, under the DIP Term Loan Credit Agreement, together with its respective successor, assign, or any replacement agent, each in its capacity as such.

62.    "*DIP Term Loan Claim*" means any Claim arising under or relating to the DIP Term Loan Facility under the DIP Term Loan Credit Agreement or the DIP Orders, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Term Loan Credit Agreement.

63.    "*DIP Term Loan Credit Agreement*" means the debtor-in-possession financing credit agreement by and among the Debtors, the applicable DIP Agent, and the DIP Term Loan Lenders, as approved by the DIP Orders, setting forth the terms and conditions of the DIP Term Loan Facility.

64.    "*DIP Term Loan Facility*" means the second lien superpriority secured term loans made in accordance with the DIP Term Loan Credit Agreement and the DIP Orders.

65.    "*DIP Term Loan Lenders*" means, collectively, the lenders from time to time under the DIP Term Loan Facility.

66.    "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is scheduled as zero or as contingent, Disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

67.    "*Disbursing Agent*" means, as applicable, the Debtors, the Wind-Down Debtors, the Plan Administrator, or any Entity or Entities selected by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, to make or facilitate distributions contemplated under the Plan.

68.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

69.    "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

70.    "*Disputed*" means, with respect to any Claim or Interest (or portion thereof), any Claim or Interest (or portion thereof) that is not yet Allowed.

71.    "*Distributable Proceeds*" means all Cash of the Debtors or the Wind-Down Debtors, on or after the Effective Date, after giving effect to the funding of the Professional Fee Escrow Account the Administrative Claims Reserve, and the Wind-Down Reserve, including, as determined by the Debtors or the Wind-Down Debtors, in consultation with the Committee, any Cash returned to the Debtors or the Wind-Down Debtors, after the irrevocable payment in full of all Allowed Professional Fee Claims and Allowed Administrative Claims.

72.    "*Distribution Date*" means a date on which the Disbursing Agent makes distributions to Holders of Claims pursuant to the Plan, which shall be as soon as reasonably practicable after the Effective Date.

73.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

74.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article XI.A of the Plan have been satisfied or waived in accordance with Article XI.B of the Plan.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

75.    "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

76.    "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code.

77.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 upon the commencement of the applicable Debtor's Chapter 11 Case.

78.    "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a *et seq*., as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

79.    "*Exculpated Parties*" means, collectively, to the extent that they are estate fiduciaries, and in each case solely in their capacities as such on or after the Petition Date through and including the Effective Date: (a) each of the Debtors; (b) the Committee and each of its respective members; and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

80.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

81.    "*Existing Equity Interests*" means, collectively, the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, or other securities or

agreements to acquire or subscribe for, or which are convertible into the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, or other equity, ownership, or profit interests of any Debtors (in each case, whether or not arising under or in connection with any employment agreement).

82.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

83.    "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

84.    "*FILO Lenders*" means, collectively, the lenders from time to time under the FILO Term Loan Facility.

85.    "*FILO Term Loan Facility*" means that certain first-in, last-out term loan facility provided under the Prepetition FILO Credit Agreement.

86.    "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 419].

87.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for reargument, reconsideration, or rehearing or petition for certiorari has been timely taken or Filed, or as to which any appeal that has been taken, motion for reargument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be Filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

88.    "*General Unsecured Claim*" means any Claim, other than a Secured Claim, that is not (a) an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), (b) a Priority Tax Claim, (c) an Other Secured Claim, (d) an Other Priority Claim, (e) a DIP Claim, (f) an Intercompany Claim, or (g) a Section 510 Claim; *provided* that any General Unsecured Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

89.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

90.     "*Holder*" means any holder of an Allowed Claim or Interest.

91.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

92.     "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, indemnification agreements, employment contracts, or trust agreements, for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, other Professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

93.     "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate against a Debtor.

94.     "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor or non-Debtor subsidiary or Affiliate.

95.     "*Interest*" means any Equity Security in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

96.     "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, (C) Utilize Cas Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing;, and (V) Granting Related Relief* [Docket No. 85].

97.     "*IP Licensors*" means EXP Topco LLC and Bonobos, Inc.

98.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

99.     "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

100.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

101.    "*Liquidating Trust*" means a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations, which may be established by the Plan Administrator for the purposes of facilitating the Wind-Down.

102.    "*Liquidating Trust Assets*" means any assets transferred from any Wind-Down Debtor to the Liquidating Trust in accordance with the Plan.

103.    "*Money Transmitter License*" means any consent, license, certificate, franchise, permission, variance, clearance, registration, qualification, authorization, waiver, exemption or other permit issued, granted, given or otherwise made available by or under the authority of any Governmental Unit pursuant to state money transmission or similar laws.

104.    "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases; *provided* that any Other Priority Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

105.    "*Other Secured Claim*" means any Secured Claim, other than (a) a DIP ABL Claim or (b) a DIP Term Loan Claim; *provided* that any Other Secured Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

106.    "*Permitted Transfer*" means a transfer of all or a portion of the assets of the Wind-Down Debtors to the Wind-Down Reserve or Liquidating Trust in accordance with Article IV herein.

107.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

108.    "*Petition Date*" means April 22, 2024, the date on which the Debtors commenced the Chapter 11 Cases.

109.    "*Phoenix*" means Phoenix Retail, LLC.

110.    "*Plan*" has the meaning set forth in the Introduction.

111.    "*Plan Administrator*" means the person or persons identified in the Plan Supplement to be appointed on the Effective Date who will serve as the trustee and administrator of the Wind-Down Debtors and of the Plan.

112.    "*Plan Administrator Agreement*" means that certain agreement by and among the Debtors, the Committee, the Plan Administrator, and the Wind-Down Debtors, which shall be included in the Plan Supplement.

113.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than seven days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the Wind-Down Transactions Memorandum; (d) the Plan Administrator Agreement and the identity of the Plan Administrator; and (e) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan

Supplement.  The Debtors, after prior consultation with the Committee, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date, subject to the terms of the Plan, the Purchase Agreement, and the Sale Order.

114.    "*Prepetition ABL Credit Agreement*" means the certain first-priority, asset-based revolving credit agreement, dated as of May 20, 2015, by and between the Debtors and Wells Fargo, Bank of America, U.S. Bank, National Association, and Fifth Third Bank, National Association, as lenders, Wells Fargo as administrative and collateral agent, and Bank of America as documentation agent.

115.    "*Prepetition Agents*" means, collectively, Wells Fargo and ReStore, each in their capacities as administrative and collateral agents, as applicable, under the Prepetition Credit Agreements.

116.    "*Prepetition Credit Agreements*" means, collectively, the Prepetition ABL Credit Agreement and the Prepetition FILO Credit Agreement.

117.    "*Prepetition FILO Credit Agreement*" means that certain asset-based term loan credit agreement, dated as of September 5, 2023, by and between the Debtors, the lenders from time to time party thereto, and ReStore as administrative agent and collateral agent, as amended, restated, or supplemented from time to time.

118.    "*Prepetition Lenders*" means, collectively, the ABL Lenders and the FILO Lenders.

119.    "*Priority Claims*" means, collectively, the Priority Tax Claims and Other Priority Claims.

120.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code; *provided* that any Priority Tax Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

121.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

122.    "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

123.    "*Professional Fee Claim*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date and through and including the Effective Date that

the Bankruptcy Court has not denied by Final Order. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

124. "*Professional Fee Escrow Account*" means an interest-bearing escrow account to be funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount.

125. "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II of the Plan.

126. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

127. "*Purchase Agreement*" means that certain Amended & Restated Asset Purchase Agreement, by and among Express, Inc. and its subsidiaries, on the one hand, and Phoenix and the WHP Global Purchaser, on the other hand, a copy of which is attached to the Sale Order as Exhibit A, as amended, restated, supplemented, or otherwise modified from time to time.

128. "*Purchasers*" means, collectively, the Phoenix and the WHP Global Purchaser.

129. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

130. "*Related Party*" means, collectively, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, heirs, executors, and assigns, and other professionals, in each case solely in their capacities as such, together with their respective past and present directors, officers, shareholders, partners, members, employees, agents, attorneys, representatives, heirs, executors and assigns, in each case solely in their capacities as such.

131. "*Released Party*" means, collectively, in each case in its capacity as such: (a) each of the Debtors; (b) each of the Wind-Down Debtors; (c) the DIP Lenders; (d) the DIP Agents; (e) the Prepetition Lenders; (f) the Prepetition Agents; (g) the Committee and each of its members; (h) WHP and the IP Licensors; (i) the Purchasers; (j) all Holders of Claims who affirmatively opt in to the releases provided by the Plan; *provided, however,* that any party who opts out of the releases under the Plan shall not be a "Released Party"; *provided further, however,* that any party required to opt in to the releases contained in the Plan that fails to do so shall not be a "Released Party"; (k) each current and former Affiliate of each Entity in clauses (a) through clause (j); (l) each Related Party of each Entity in the foregoing clauses (a) through (k);

14

(m) all Holders of Claims who vote to accept the Plan; and (n) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan.

132. "*Releasing Party*" means, collectively, in each case in its capacity as such: (a) each of the Debtors; (b) each of the Wind-Down Debtors; (c) the DIP Lenders; (d) the DIP Agents; (e) the Prepetition Lenders; (f) the Prepetition Agents; (g) the Committee and each of its members; (h) WHP and the IP Licensors; (i) the Purchasers; (j) all Holders of Claims who vote to accept the Plan; (k) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (l) all Holders of Claims who affirmatively opt in to the releases provided by the Plan; (m) each current and former Affiliate of each Entity in clauses (a) through clause (l); and (n) each Related Party of each Entity in the foregoing clauses (a) through clause (m); *provided* that a Related Party of a Person or Entity in the foregoing clauses (a) through (m) is a Releasing Party solely to the extent that such Affiliate or Related Party would be obligated to grant a release under principles of agency if it were so directed by such Person or Entity in the foregoing clauses (a) through (m) to whom they are related.

133. "*ReStore*" means ReStore Capital, LLC.

134. "*Sale Order*" means the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 471].

135. "*Sale Process*" means the competitive marketing and bidding process conducted by the Debtors for the Sale Transaction pursuant to the Bidding Procedures and Bidding Procedures Order.

136. "*Sale Transaction*" means the going concern sale of all or substantially all of the Debtors' assets, and all other transactions pursuant to the Purchase Agreement.

137. "*Sale Transaction Documentation*" means the definitive documentation for the Sale Transaction, including the Purchase Agreement.

138. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means that certain schedule Filed with the Plan Supplement of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan and in accordance with the respective Purchase Agreement (if applicable), as such schedule may be amended, modified, or supplemented from time to time by the Debtors in accordance with Article V of the Plan, which, including any modifications thereto, shall be acceptable to the Purchasers.

139. "*Schedule of Retained Causes of Action*" means the schedule, which will be included in the Plan Supplement, of certain (but not all) Causes of Action of the Debtors that are not released, waived, or transferred, other than to the Wind-Down Debtors, pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

140.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

141.    "*Section 510(b) Claim*" means any Claim arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

142.    "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

143.    "*Secured Claim*" means a Claim secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

144.    "*Secured Tax Claim*" means any Secured Claim that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties; *provided* that any Secured Claim that would otherwise be a Secured Tax Claim that is an Assumed Liability under the Purchase Agreement shall be satisfied solely under the Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors, and shall not be considered a Secured Tax Claim.

145.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

146.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

147.    "*Solicitation Materials*" means all solicitation materials in respect of the Plan.

148.    "*Store Closing Order*" means the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 234].

149.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article X.D of the Plan.

16

150. "*Transition Services Agreement*" means that certain agreement by and between the Debtors and the Wind-Down Debtors, as applicable, on the one hand, and the Purchasers, on the other hand, regarding the provision of transition services after the closing of the Sale Transaction.

151. "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

152. "*U.S. Trustee Fees*" means fees arising under section 1930(a)(6) of the Judicial Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

153. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

154. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

155. "*Vested Causes of Action*" means the Causes of Action vesting in the Wind-Down Debtor pursuant to Article IV.I of the Plan, including, but not limited to, those Causes of Action enumerated on the Schedule of Retained Causes of Action, which shall be included in the Plan Supplement and in all respects consistent with the terms of the Purchase Agreement.

156. "*Voting Deadline*" means October 9, 2024, at 4:00 p.m., prevailing Eastern Time, which date may be extended by the Debtors.

157. "*Waterfall Recovery*" means the priority by which Distributable Proceeds shall be allocated and paid to the Holders of Claims, other than Allowed Professional Fee Claims, as applicable, until paid in full, in each case, on a Pro Rata basis, except as otherwise agreed to by such Holders of Claims or Interests, as follows, and subject in all respects to the terms of Article II.B hereof: (a) Allowed Administrative Claims and Allowed Priority Tax Claims; (b) Allowed Other Secured Claims; (c) Allowed Other Priority Claims; and (d) Allowed General Unsecured Claims that are not assumed by a Purchaser; provided that the aggregate amount of Distributable Proceeds allocated to Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Other Priority Claims shall not exceed the Administrative Claims Reserve Amount.

158. "*Wells Fargo*" means Wells Fargo Bank, National Association.

159. "*WHP*" means WHP Global, LLC.

160. "*WHP Global Purchaser*" means EXPWHP, LLC.

161. "*Wind-Down*" means, the wind-down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

162. "*Wind-Down Budget*" means a budget for the activities and expenses to be incurred in connection with the Wind-Down, in amount to be mutually agreed by the Debtors and the Committee which shall include amounts necessary to fund the Professional Fee Escrow

Account, the Administrative Claims Reserve, and the Wind-Down Reserve, each in accordance with the Purchase Agreement, the Plan, and the Confirmation Order.

163.    "*Wind-Down Debtor Assets*" means, on the Effective Date, all assets of each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, which shall exclude the Acquired Assets and Assumed Liabilities, and which shall in any event include, without limitation, but only to the extent the following are not Acquired Assets:  (a) the Wind-Down Reserve, (b) the Administrative Claims Reserve, and (c) the Vested Causes of Action.

164.    "*Wind-Down Debtors*" means, the Debtors, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

165.    "*Wind-Down Debtor Beneficiaries*" means the Holders of Allowed Claims or Allowed Interests that are entitled to receive distributions pursuant to the terms of the Plan, whether or not such Claims or Interests are Allowed as of the Effective Date.

166.    "*Wind-Down Debtor Parties*" means the Plan Administrator and the Wind-Down Debtors Oversight Committee, their respective members, employees, employers, designees, or professionals, or any of their duly designated agents or representatives.

167.    "*Wind-Down Debtors Oversight Committee*" means the oversight committee tasked with overseeing the Wind-Down Debtors in accordance with the Plan and the Plan Administrator Agreement.

168.    "*Wind-Down Reserve*" means a segregated account established by the Wind-Down Debtors established in accordance with Article VIII.C and funded in accordance with the Wind-Down Budget.

169.    "*Wind-Down Transactions*" means the transactions described in Article IV of the Plan, including the Sale Transaction, the Wind-Down, and any and all mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors or the Wind-Down Debtors, as applicable, reasonably determine to be necessary to implement the transactions described in this Plan.

170.    "*Wind-Down Transactions Memorandum*" means a document to be included in the Plan Supplement that will set forth a summary of the transactions steps to complete the Wind-Down Transactions.

   *B.    Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been

Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (9) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal Law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the Laws of the State of Delaware, without giving effect to the principles of conflict of Laws; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) any effectuating provisions may be interpreted by the Debtors or the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (16) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; and (18) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the Laws of the State of Delaware, without giving effect to the principles of conflict of Laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors not incorporated in Delaware shall be governed by the Laws of the state of incorporation or formation of the applicable Debtor.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control.  In the event of any inconsistency between the Plan or Plan Supplement, on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall control.

G.      *Nonconsolidated Plan.*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for substantive consolidation of any of the Debtors.

H.      *Purchase Agreement Consent Rights and Controlling Documents*

Any and all consent rights of the Purchasers set forth in the Purchase Agreement with respect to the form and substance of this Plan, the Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, any Definitive Documents and any other documents related to the Sale Transaction, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A of the Plan) and be fully enforceable as if stated in full herein until such time as the Purchase Agreement is terminated in accordance with its terms.  Failure to reference in this Plan the rights referred to in the immediately preceding sentence as such rights relate to any document referenced in the Purchase Agreement shall not impair such rights and obligations.

I.     *References to the Debtors and the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

# ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> hereof.

A.     *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim that is an Assumed Liability under the Purchase Agreement shall be an obligation of the applicable Purchaser and shall not be an obligation of the Debtors or the Wind-Down Debtors; *provided*, *further*, that any Allowed Administrative Claim that is not an Assumed Liability under the Purchase Agreement shall instead be satisfied solely from the Administrative Claims Reserve.

Except for Professional Fee Claims, DIP Claims, and U.S. Trustee Fees, and unless previously Filed, subject to the terms of the Sale Order, requests for payment of Administrative Claims must be Filed and served on the Wind-Down Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Objections to such requests must be Filed and served on the Wind-Down Debtors and the requesting party on or before the Administrative Claim Objection

Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

Except for Professional Fee Claims, DIP Claims, and U.S. Trustee Fees, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Wind-Down Debtors, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors, the Wind-Down Debtors, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

     *B.    Professional Fee Claims.*

     1.    <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Wind-Down Debtors (by and through the authorized signatories to the Professional Fee Escrow Account, after consultation with the Plan Administrator), as applicable, shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

     2.    <u>Professional Fee Escrow Account</u>.

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates, the Debtors, or the Wind-Down Debtors.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Wind-Down Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account and such Allowed

Professional Fee Claims shall also be payable from the Wind-Down Reserve.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

      3.      <u>Professional Fee Amount</u>.

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors and/or the Committees before and as of the Confirmation Date projected to be outstanding as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated as of the Confirmation Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

      4.      <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after entry of the Confirmation Order, the Debtors and the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the entry of the Confirmation Order, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

      C.      *Payment of Fees and Expenses under DIP Orders.*

On the Effective Date, the Debtors shall pay all accrued and unpaid fees, expenses, disbursements, contribution or indemnification obligations, including without limitation, attorneys' and agents' fees, expenses, and disbursements incurred by each of the DIP Agents and the DIP Lenders, whether incurred prior to or after the Petition Date, in each case to the extent payable or reimbursable under or pursuant to the DIP Orders and DIP Credit Agreements, as applicable (subject to any applicable conditions set forth in the DIP Orders).  Such fees, expenses, disbursements, contribution, or indemnification obligations shall constitute Allowed Administrative Claims.  Nothing herein shall require the DIP Agents and DIP Lenders to File applications, a Proof of Claim, or otherwise seek approval of the Court as a condition to the payment of such Allowed Administrative Claims.

D.     *DIP Claims.*

All outstanding DIP Claims were paid all principal and interest owed pursuant to the Final DIP Order and the DIP Documents from proceeds of the Sale Transaction.  Accordingly, the DIP Claims have been paid in full.  To the extent any DIP Claims are not fully satisfied as of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Credit Agreements, including principal, interest, fees, costs, other charges, and expenses.  Upon the satisfaction of the Allowed DIP Claims in accordance with the terms of this Plan, the Final DIP Order, and the Purchase Agreement, all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

Pursuant to the DIP Credit Agreement, all distributions pursuant to this Article II.D shall be made to the applicable DIP Agent for distributions to the applicable DIP Lenders in accordance with the DIP Credit Agreements and DIP Documents unless otherwise agreed upon in writing by such DIP Agent and the Debtors.  The DIP Agents shall hold or direct distributions for the benefit of the applicable Holders of DIP Claims.  Each DIP Agent shall retain all rights as DIP Agent under the DIP Documents in connection with the delivery of the distributions to the DIP Lenders. The DIP Agents shall not have any liability to any person with respect to distributions made or directed to be made by such DIP Agents.

Except to the extent that a Holder of an Allowed DIP ABL Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for each Allowed DIP ABL Claim, each Holder of an Allowed DIP ABL Claim shall receive payment in full in Cash on the Effective Date.

Except to the extent that a Holder of an Allowed DIP Term Loan Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for each Allowed DIP Term Loan Claim, each Holder of an Allowed DIP Term Loan Claim shall receive payment in full in Cash on the Effective Date.

E.     *Priority Tax Claims*

All Allowed Priority Tax Claims were either paid during the Chapter 11 Cases or are an Assumed Liability under the Purchase Agreement and shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors. To the extent that an Allowed Priority Tax Claim was not otherwise paid during the Chapter 11 Cases or assumed and paid under the applicable Purchase Agreement, or the holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Wind Down Debtors, as applicable,

either payment in full or such other treatment rendering such Holder's Allowed Priority Tax Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    *F.*       *U.S. Trustee Fees.*

    All U.S. Trustee Fees prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors and the Wind-Down Debtors, as applicable, shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. Within two business days of the Effective Date, the Wind-Down Debtors or the Plan Administrator and any other authorized parties who have been charged with administering the Confirmed Plan, shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. The Debtors shall file all monthly operating reports relating to the time period prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, each of the Wind-Down Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each of the Debtors and the Wind-Down Debtors, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor or Wind-Down Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Proof of Claim in the case and shall not be treated as providing any release under the Plan.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

    *A.*      *Classification of Claims and Interests.*

    This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

    The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 5 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 6 | Existing Equity Interests in Express | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

> B.     *Treatment of Claims and Interests.*

Subject to Article IV hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

> 1.     Class 1 – Other Secured Claims

>> (a)     *Treatment*:  To the extent that each Holder of an Allowed Other Secured Claim was either not paid during the Chapter 11 Cases or not an Assumed Liability under the Purchase Agreement, unless such Holder agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

(i)    payment in full in Cash; or

(ii)    delivery of such collateral securing such Allowed Other Secured Claim; or

(iii)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code;

(b)    *Voting*: Class 1 is Unimpaired. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims

(a)    *Classification*: Class 2 consists of all Other Priority Claims.

(b)    *Treatment*: Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, shall receive, at the option of the applicable Debtor or Wind-Down Debtor, as applicable, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

(i)    payment in full in Cash; or

(ii)    such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*: Class 2 is Unimpaired. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 – General Unsecured Claims

(a)    *Classification:* Class 3 consists of all General Unsecured Claims.

(b)    *Treatment:* Except to the extent that a Holder of a General Unsecured Claim and the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, agree to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction and release of and in exchange for its Claim, its Pro Rata share of the Distributable Proceeds.

27

(c)    *Voting:*  Class 3 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – Intercompany Claims

(a)    *Classification*:  Class 4 consists of all Intercompany Claims.

(b)    *Treatment*:  Each Intercompany Claim shall be, at the option of the Debtors, after prior consultation with the Committee, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is reasonably determined by the Debtors, after prior consultation with the Committee.

(c)    *Voting*:  Holders of Claims in Class 4 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Intercompany Interests

(a)    *Classification*:  Class 5 consists of all Intercompany Interests.

(b)    *Treatment*:  Each Intercompany Interest shall be, at the option of the Debtors, after prior consultation with the Committee, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interest, or such other treatment as is reasonably determined by the Debtors, after prior consultation with the Committee.

(c)    *Voting*:  Holders of Interests in Class 5 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

6.    Class 6 – Existing Equity Interests in Express

(a)    *Classification*:  Class 6 consists of all Existing Equity Interests in Express.

(b)    *Treatment*:   All Existing Equity Interests in Express will be cancelled and extinguished, and Holders of Existing Equity Interests in Express shall receive no recovery on account of such Interests.

(c)    *Voting*:  Class 6 is Impaired.  Holders of Existing Equity Interests in Express are conclusively deemed to have rejected the Plan under

section 1126(g) of the Bankruptcy Code.   Therefore, Holders of Existing Equity Interests in Express are not entitled to vote to accept or reject the Plan.

7.      Class 7 – Section 510(b)

(a)      *Classification:*  Class 7 consists of all Section 510(b) Claims.

(b)      *Treatment:*  Section 510(b) Claims shall be cancelled, released, and extinguished without any distribution to Holders of such Claims.

(c)      *Voting:*  Class 7 is Impaired.  Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan. Therefore, Holders (if any) of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired; *provided* that the Reinstatement or other treatment of such Claims shall not be inconsistent with the Purchase Agreement.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XII of the Plan to the extent, if any, that

29

Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.    *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute the resolution of the treatment of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

B.    *The Sale Transaction.*

Prior to the Effective Date, the Debtors consummated the Sale Transaction, and, among other things, the Acquired Assets and Assumed Liabilities were transferred from the Debtors to the Purchasers free and clear of all Liens, Claims, Interests, charges, or other encumbrances, and the Purchasers paid to the Debtors the Distributable Proceeds, as and to the extent provided for in the Purchase Agreement.

The Debtors and the Purchasers shall be authorized to take all actions, if any, as may be deemed necessary or appropriate in furtherance of the Sale Transaction pursuant to the terms of the Purchase Agreement and this Plan.  On and after the Effective Date, except as otherwise provided in the Plan, the Wind-Down Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without

supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing.

       1.      <u>Sources of Consideration for the Plan Distributions</u>.

Distributions under the Plan shall be funded by (i) the Administrative Claims Reserve, (ii) Cash on hand, (iii) the Distributable Proceeds, and (iv) the proceeds of the Wind-Down; provided, however, that Allowed Professional Fee Claims shall be paid from the Professional Fee Escrow Account in the first instance.

       2.      <u>Vesting of Wind-Down Debtor Assets</u>.

Except as otherwise provided in the Confirmation Order, the Plan (including the Wind-Down Transactions Memorandum and <u>Article X</u> hereof), or the Purchase Agreement, as applicable, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Retained Causes of Action, and any property retained by any of the Debtors pursuant to the Plan or the Purchase Agreement shall vest in each respective Wind-Down Debtors, as applicable, free and clear of all Liens, Claims, charges, other encumbrances, and interests for the purposes of winding down the Wind-Down Debtors.  On and after the Effective Date, except as otherwise provided in the Purchase Agreement or the Plan, including <u>Article X</u> hereof, each of the Wind-Down Debtors, as applicable, may operate their businesses and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

       3.      <u>Transition Services Agreement</u>.

The Debtors and the Wind-Down Debtors, as applicable, shall be authorized to implement or otherwise continue adherence with the Transition Services Agreement pursuant to the Purchase Agreement.  The Transition Services Agreement shall help ensure that employees are available to provide transition services to the Purchasers and the Debtors or the Wind-Down Debtors, as applicable, to wind down the Debtors' Estates.

       *C.*      *The Wind-Down Debtors.*

On the Effective Date, the Wind-Down Debtors shall be formed or converted into for the benefit of the Wind-Down Debtor Beneficiaries, and each of the Debtors shall transfer the Wind-Down Debtor Assets for distribution in accordance with the terms of the Plan.  The Confirmation Order shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

1.      <u>Establishment of the Wind-Down Debtors.</u>

Pursuant to the Plan Administrator Agreement, the Wind-Down Debtors will be established, formed, merged, or converted.   The Wind-Down Debtors shall be the successors-in-interest to the Debtors, and the Wind-Down Debtors shall be successors to the Debtors' rights, title, and interest to the Wind-Down Debtor Assets.  The Wind-Down Debtors will conduct no business operations and will be charged with winding down the Debtors' Estates.  The Wind-Down Debtors shall be managed by the Plan Administrator and shall be subject to the Wind-Down Debtors Oversight Committee.  The Wind-Down Debtors shall be administered in accordance with the terms of the Plan Administrator Agreement and shall be subject to the Wind-Down Budget.  For the avoidance of doubt, the Wind-Down Debtors shall not have any right or interest in any Cause of Action or Claim constituting an Acquired Asset.  The Wind-Down Debtors shall be administered in a manner consistent with the SEC's published guidance on liquidating trusts.

Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtors.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-Down Debtors specifically retain and reserves the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date (and whether or not listed on the Schedule of Retained Causes of Action), and all proceeds of the foregoing, subject to the terms of the Plan, including without limitation <u>Article IV.F</u> and <u>Article IV.G</u>.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtors and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Plan Administrator Agreement, compromise or settle any Wind-Down Debtors Assets transferred to the Wind-Down Debtors.  On and after the Effective Date, the Wind-Down Debtors and the Plan Administrator may, without further Bankruptcy Court approval, commence, litigate, and settle any Vested Causes of Action or Claims relating to any Wind-Down Debtor Assets transferred to the Wind-Down Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided herein and in the Plan Administrator Agreement.  All of the Wind-Down Debtors' activities shall be subject to the Wind-Down Budget.  The Wind-Down Debtors shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

The Wind-Down Debtors shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Wind-Down Debtor Asset without the need for filing any motion for such relief.  On the Effective Date, the Debtors and the Plan Administrator shall execute the Plan Administrator Agreement and shall have established the Wind-Down Debtors pursuant hereto.   In the event of any conflict between the terms of

this <u>Article IV.C</u> and the terms of the Plan Administrator Agreement, the terms of the Plan Administrator Agreement shall control.

2. <u>Directors and Officers of the Debtors and the Wind-Down Debtors.</u>

On the Effective Date, the terms of the Debtors' existing boards of directors or managers, as applicable, shall expire, and the Plan Administrator shall be appointed by the Debtors or the Wind-Down Debtors, as applicable, as the sole director and the sole officer of each of the Wind-Down Debtors, and the Plan Administrator shall succeed to the powers of the Debtors' directors and officers.

3. <u>Wind-Down Debtor Assets.</u>

Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date and thereafter if additional Wind-Down Debtor Assets become available, the Debtors shall be deemed, subject to the Plan Administrator Agreement, to have automatically transferred to the applicable Wind-Down Debtors all of their right, title, and interest in and to all of property in each Estate, all Causes of Action, and any property retained by any of the Debtors pursuant to the Plan, in accordance with section 1141 of the Bankruptcy Code. All such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the expenses of the Wind-Down Debtors as set forth herein and in the Plan Administrator Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Wind-Down Debtor Assets or the Wind-Down Debtors.

Notwithstanding anything to the contrary herein, the Plan Administrator, in his or her discretion, may transfer all or any portion of the assets of the Wind-Down Debtors to a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations. For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in <u>Article IV.I</u> herein shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Causes of Action included on the Schedule of Retained Causes of Action transferred to the Liquidating Trust. The Liquidating Trust shall be established for the primary purpose of liquidating the Liquidating Trust's assets, reconciling claims asserted against the Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust. Upon the transfer of the Wind-Down Debtor's assets to the Liquidating Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust. To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests. Prior to any Permitted Transfer, the Plan Administrator may designate

trustee(s) for the Liquidating Trust for the purposes of administering the Liquidating Trust.  The reasonable costs and expenses of the trustee(s) shall be paid from the Liquidating Trust.

      4.    <u>Liquidating Trust Treatment</u>

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of any Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly.  For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the trustee(s) of the Liquidating Trust, and the holders of Claims receiving interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the

end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

5.    Disputed Ownership Fund Treatment

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

6.    Treatment of Wind-Down Debtors for Federal Income Tax Purposes; No Successor-in-Interest.

The Wind-Down Debtors shall be established for the primary purpose of liquidating and distributing the Wind-Down Debtor Assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind-Down Debtors. Accordingly, the Plan Administrator may, in an expeditious but orderly manner, liquidate the Wind-Down Debtor Assets, make timely distributions to the Wind-Down Debtor Beneficiaries and not unduly prolong its duration. The Wind-Down Debtors shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Wind-Down Debtor Agreement. The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Wind-Down Debtors expressly for such purpose.

The Wind-Down Debtors are intended to qualify as a "grantor trust" for federal income tax purposes to the extent reasonably practicable, with the Wind-Down Debtor Beneficiaries treated

as grantors and owners of the Wind-Down Debtors.  However, with respect to any of the assets of the Wind-Down Debtors that are subject to potential disputed claims of ownership or uncertain distributions, *or* to the extent "liquidating trust" treatment is otherwise unavailable, the Debtors anticipate that such assets will be subject to disputed ownership fund treatment under Section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account.  Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

    7.      Appointment of Plan Administrator.

    The Plan Administrator shall be selected by the Debtors, and shall be identified in the Plan Supplement.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.  The Plan Administrator shall administer the distributions to the Wind-Down Debtor Beneficiaries and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Vested Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan, including Article IV.F and Article IV.G.

    In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors is dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that a Plan Administrator resigns, is terminated, or is otherwise unable to serve, the Wind-Down Debtors Oversight Committee shall appoint a successor to serve as a Plan Administrator in accordance with the Plan Administrator Agreement.  If the Wind-Down Debtors Oversight Committee does not appoint a successor within the time periods specified in the Plan Administrator Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Debtors, shall approve a successor to serve as a Plan Administrator.

    8.      Responsibilities of Plan Administrator.

    Responsibilities of the Plan Administrator shall be as identified in the Plan Administrator Agreement and shall include, but are not limited to:

            (i)      implementing the Wind-Down, and making distributions contemplated by the Plan;

            (ii)     marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

            (iii)    overseeing the accounts of the Debtors and the Wind-Down Debtors and the Wind-Down and dissolution of the Debtors and the Wind-Down Debtors, including effectuating the

transactions described in the Wind-Down Transactions Memorandum;

(iv)    implementing, pursuing, and adhering to the terms of this Plan, the Sale Transaction, and Purchase Agreement and any Definitive Documents related thereto;

(v)     receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtors to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtors to invest any moneys held as Wind-Down Debtor Assets;

(vi)    opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtors, including, in the Plan Administrator's discretion, separating bank accounts for each of the Debtors;

(vii)   entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or the Plan Administrator Agreement, and to perform all obligations thereunder;

(viii)  collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets;

(ix)    protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Vested Causes of Action) vested in the Wind-Down Debtors and Plan Administrator by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(x)     reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(xi)    seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(xii)   retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan Administrator Agreement and paying the reasonable compensation thereof;

(xiii)  paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the

Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

(xiv) prosecuting and settling the Vested Causes of Action, any causes of action not included in the Purchase Agreement or released under the Plan;

(xv) reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action;

(xvi) reviewing and compelling turnover of the Debtors or the Wind-Down Debtors' property;

(xvii) calculating and making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and the Plan Administrator Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make Distributions from the Wind-Down Debtor Assets to the holders of Claims and Interests (if applicable) against that specific Debtor;

(xviii) withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(xix) in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor;

(xx) making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down

Debtors, and filing tax returns for the Debtors, the Wind-Down Debtors, or the Liquidating Trust pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtors, as applicable; *provided, however,* that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(xxi)    abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(xxii)   seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(xxiii)  establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtors as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtors;

(xxiv)   if the Plan Administrator deems appropriate in the Plan Administrator's sole discretion, seeking to establish a bar date for filing proofs of Interest in any Debtor or otherwise to determine the holders and extent of Allowed Interests in any Debtor;

(xxv)    purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(xxvi)   undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtors', or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(xxvii)  retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of the Plan Administrator Agreement and the Plan,

including, without limitation, to address any disputes between the Debtors;

(xxviii) exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, the Purchase Agreement, and the Plan Administrator Agreement; and

(xxix) taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtor.

9.    The Wind-Down Debtors Oversight Committee.

The Wind-Down Debtors Oversight Committee shall consist of those parties selected by the Committee and identified in the Plan Supplement, and which, at no time shall consist of greater than seven members.

The Wind-Down Debtors Oversight Committee shall have the responsibility to review and advise the Plan Administrator with respect to the liquidation and distribution of the Wind-Down Debtor Assets transferred to the Wind-Down Debtors in accordance herewith and the Plan Administrator Agreement. For the avoidance of doubt, in advising the Plan Administrator, the Wind-Down Debtors Oversight Committee shall maintain the same fiduciary responsibilities as the Plan Administrator. Vacancies on the Wind-Down Debtors Oversight Committee shall be filled by a Person designated by the Plan Administrator, after consultation with the remaining member or members of the Wind-Down Debtors Oversight Committee. The Plan Administrator shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Debtors Oversight Committee for cause or an order otherwise reconstituting the Wind-Down Debtors Oversight Committee.

10.    Expenses of Wind-Down Debtors.

The Wind-Down Debtor Expenses shall be paid from the Wind-Down Debtor Assets subject to the Wind-Down Budget, without further notice or approval from the Court. The Wind-Down Budget shall contemplate any professional and operational expenses from the Debtors' Wind-Down, including any amounts owed in connection with store closings under the Consulting Agreement.

11.    Insurance; Bond.

The Plan Administrator may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Plan Administrator and the Wind-Down Debtors Oversight Committee under the Plan Administrator Agreement. Unless otherwise agreed to by the Wind-Down Debtors Oversight Committee, the Plan Administrator shall serve with a bond, the terms of which shall be agreed to by the Wind-Down Debtors Oversight Committee, and the cost and expense of which shall be paid by the Wind-Down Debtors.

12.    <u>Fiduciary Duties of the Plan Administrator.</u>

Pursuant hereto and the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan**.**

13.    <u>Termination of the Wind-Down Debtors.</u>

The Wind-Down Debtors will terminate on the earlier of:  (a) (i) the final liquidation, administration and distribution of the Wind-Down Debtor Assets in accordance with the terms of the Plan Administrator Agreement and the Plan, and the full performance of all other duties and functions as set forth herein or in the Plan Administrator Agreement and (ii) the Chapter 11 Cases of the Debtors have been closed; or (b) the Plan Administrator determines in its reasonable judgment that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to the Plan Administrator under the Plan, the Confirmation Order and/or the Plan Administrator Agreement.  After (x) the final distributions pursuant hereto, (y) the Filing by or on behalf of the Wind-Down Debtors of a certification of dissolution with the Bankruptcy Court, and (z) any other action deemed appropriate by the Plan Administrator, the Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions.

14.    <u>Liability of Plan Administrator; Indemnification.</u>

Neither the Plan Administrator, the Wind-Down Debtors Oversight Committee, their respective members, employees, employers, designees or professionals, or any of their duly designated agents or representatives shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the Wind-Down Debtors or for the act or omission of any other Wind-Down Debtor Parties, nor shall the Wind-Down Debtor Parties be liable for any act or omission taken or omitted to be taken pursuant to the discretion, powers and authority conferred, or in good faith believed to be conferred by the Plan Administrator Agreement or the Plan other than for specific acts or omissions resulting from such Wind-Down Debtor Parties' willful misconduct, gross negligence or actual fraud.  Subject to the Plan Administrator Agreement, the Plan Administrator shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee, and the Wind-Down Debtors Oversight Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.  The Plan Administrator or the Wind-Down Debtors Oversight Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Plan Administrator nor the Wind-Down Debtors Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Administrator, the Wind-Down Debtors Oversight Committee, or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or actual fraud.  The Wind-Down Debtors shall indemnify and hold harmless the Wind-Down Debtor Parties (in their capacity as such), from and against and

41

in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) that such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Wind-Down Debtors or the Plan or the discharge of their duties hereunder; *provided*, *however*, that no such indemnification will be made to such Persons for actions or omissions as a result of willful misconduct, gross negligence, or actual fraud. Persons dealing or having any relationship with the Plan Administrator shall have recourse only to the Wind-Down Debtor Assets and shall look only to the Wind-Down Debtor Assets to satisfy any liability or other obligations incurred by the Wind-Down Debtors or the Wind-Down Debtors Oversight Committee to such Person in carrying out the terms of the Plan Administrator Agreement, and neither the Plan Administrator nor the Wind-Down Debtors Oversight Committee, shall have any personal obligation to satisfy any such liability. The Plan Administrator and/or the Wind-Down Debtors Oversight Committee members shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into the Plan Administrator Agreement against any of them. The Wind-Down Debtors shall promptly pay expenses reasonably incurred by any Wind-Down Debtor Party in defending, participating in, or settling any action, proceeding or investigation in which such Wind-Down Debtor Party is a party or is threatened to be made a party or otherwise is participating in connection with the Plan Administrator Agreement or the duties, acts or omissions of the Plan Administrator or otherwise in connection with the affairs of the Wind-Down Debtors, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Wind-Down Debtor Party hereby undertakes, and the Wind-Down Debtors hereby accepts his or her undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such exculpated party is not entitled to be indemnified therefor under the Plan Administrator Agreement. The foregoing indemnity in respect of any Wind-Down Debtor Party shall survive the termination of such Wind-Down Debtor Party from the capacity for which they are indemnified.

15.   No Liability of the Wind-Down Debtors.

On and after the Effective Date, the Wind-Down Debtors shall have no liability on account of any Claims or Interests except as set forth herein and in the Plan Administrator Agreement. All payments and all distributions made by the Plan Administrator hereunder shall be in exchange for all Claims or Interests against the Debtors.

D.   *Corporate Existence and Dissolution.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) in effect prior to the Effective Date, except

to the extent such certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) are amended pursuant to the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings under applicable state or federal law).

On and after the Effective Date, the Wind-Down Debtors will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Wind-Down Debtors shall have the power and authority to take any action necessary to Wind-Down and dissolve the Debtors' Estates.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all of its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Debtors or the Wind-Down Debtors, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Debtors or the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

As soon as practicable after the Effective Date, the Wind-Down Debtors shall take such actions as the Wind-Down Debtors may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Wind-Down Debtors on behalf of any Wind-Down Debtors without need for any action or approval by the shareholders or board of directors or managers of such Debtor. On and after the Effective Date, the Debtors or the Wind-Down Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Pursuant to the terms of this Plan, any Money Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further action is required to be taken by the Debtors or the Wind-Down Debtors to effectuate such withdrawal; *provided* that, following the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall use commercially reasonable efforts to comply with all state banking department requirements for the surrender of a Money Transmitter License. Nothing in this Plan shall be construed to limit the rights of creditors, Debtors, the Wind-Down Debtors, or regulators to pursue recoveries against surety bonds maintained by the Debtors in connection with this Money Transmitter Licenses. Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

E.    *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan, the Definitive Documents, and the Purchase Agreement shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Wind-Down Debtors, including: (1) appointment of the directors, managers, members, and officers for the Wind-Down Debtors as provided herein; (2) the issuances, transfer, and distribution of the Wind-Down Debtor Assets, as applicable; (3) the formation of the Wind-Down Debtors and appointment of the Plan Administrator and Wind-Down Debtors Oversight Committee; (4) the formation of any entities pursuant to and the implementation of the Plan and performance of all actions and transactions contemplated hereby and thereby; (5) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (6) all other acts or actions contemplated by the Plan, the Definitive Documents, and the Purchase Agreement, or reasonably necessary or appropriate to promptly consummate the Wind-Down Transactions (including effectuating the Wind-Down Transactions Memorandum), regardless of whether such act or action is contemplated to occur before, on, or after the Effective Date). All matters provided for in the Plan, Definitive Documents, and the Purchase Agreement involving the corporate structure of the Debtors or the Wind-Down Debtors, as applicable, and any corporate action required by the Debtors or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors, as applicable. On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.E shall be effective notwithstanding any requirements under non-bankruptcy law.

F.    *Cancellation of Notes, Instruments, Certificates, and Other Documents.*

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Wind-Down Transactions (including, without limitation, the Definitive Documents and the Purchase Agreement), all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

G.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtors, and its directors, managers, partners, officers, authorized persons, and members thereof, and the Wind-Down Debtors and Plan Administrator are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, Definitive Documents, and Purchase Agreement, in the name of and on behalf of the Debtors and Wind-Down Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

H.      *Section 1146(a) Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor, the Purchasers, or to any other Entity, including from any Wind-Down Debtor to a Liquidating Trust) of property under the Plan, Definitive Documents, the Purchase Agreement, or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors, (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (3) the making, assignment, or recording of any lease or sublease, or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, including the Purchase Agreement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

I.      *Preservation of Rights of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtors shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action (which, for the avoidance of doubt, is a non-exclusive list of Vested Causes of Action released, waived, settled, compromised, or transferred).  Such rights shall be preserved by the Debtors and Wind-Down Debtors, as applicable, and shall vest in the Wind-Down Debtors with the Wind-Down Debtors'

rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the Debtor Release or the Third-Party Release and exculpations contained in the Plan, including in <u>Article X</u> of the Plan, or pursuant to the Purchase Agreement, which Causes of Action shall be deemed released and waived by the Debtors and Wind-Down Debtors as of the Effective Date.

The Wind-Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the beneficiaries of the Wind-Down Debtors and in accordance with the Plan Administrator Agreement and the Plan.  For the avoidance of doubt, the Schedule of Retained Causes of Action will not be inclusive of all potential retained causes of action.  **No Entity may rely on the absence of a specific reference in the Schedules of Assets and Liabilities or Statements of Financial Affairs, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.  The Wind-Down Debtors, on behalf of the Debtors and the Wind-Down Debtors, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including <u>Article X</u> of the Plan.**  Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, on behalf of the Debtors and Wind-Down Debtors, and in accordance with the Plan Administrator Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the consummation of the Wind-Down Transactions.

The Wind-Down Debtors, on behalf of the Debtors, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise provided in the Plan, including <u>Article X</u> of the Plan.  The Wind-Down Debtors, through their authorized agents or representatives, including the Plan Administrator, shall retain and may exclusively enforce any and all such Causes of Action.  The Wind-Down Debtors and/or Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

> J.     *Closing the Chapter 11 Cases.*

On and after the Effective Date, the Wind-Down Debtors shall be permitted to file a motion for entry of an order closing some or all of the Chapter 11 Cases of the Debtors, as appropriate at any given time.  In the event that the lead Chapter 11 Case of Express, Inc. remains the only open Chapter 11 Case, all contested matters relating to any of the Debtors, including objections to

Claims or Interests and any adversary proceedings, may be administered and heard in the Chapter 11 Case of Express, Inc., irrespective of whether such Claims or Interests were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

K.    *Deemed Consolidation of Class 3.*

Solely for the purposes of distributions to Holders of Allowed General Unsecured Claims by virtue of the classification of such Allowed General Unsecured Claims in Class 3 – General Unsecured Claims under the Plan, (a) all General Unsecured Claims against all of the Debtors shall be deemed General Unsecured Claims against Express, Inc., (b) all guarantees or responsibility of one Debtor for the obligations of any other Debtor shall be deemed eliminated, and (c) solely for purposes of distributions to Holders of Allowed General Unsecured Claims by virtue of the classification of such Allowed General Unsecured Claims in Class 3 – General Unsecured Claims under the Plan and no other purpose, each General Unsecured Claim Filed or to be Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against, and shall be a single obligation of, Express, Inc. with respect to any distribution to such Holder of such General Unsecured Claim.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the date that is ninety (90) days after the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) have been previously assumed or rejected by the Debtors pursuant to the Assumption/Rejection Procedures Order or any other Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, through or in connection with the Sale Order; or (5) are a contract, release, or other agreement or document entered into in connection with the Plan.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein or in the Confirmation Order or the Purchase Agreement to be approved pursuant to the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is not assumed on the date that is 90 days after the Effective Date pursuant to this Article V.A, the effective date of rejection of such

47

Unexpired Leases shall be the later of: (A) the Effective Date, except (1) in connection with a Bankruptcy Court-ordered Cure Cost pursuant to Article V.C or (2) if agreed by the applicable counterparty, and (B) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors surrender the premises as set forth in subsection (B) above, all property remaining in the premises will be deemed abandoned free and clear of any interests, Liens, and encumbrances and landlords may dispose of such property without further notice or court order, unless otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court. If the effective date of any rejection of an Executory Contract or Unexpired Lease is after the Effective Date pursuant to the terms herein, the Wind-Down Debtors shall serve a notice on the affected counterparty setting forth the deadline for Filing any Claims arising from such rejection.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the rights of counterparties to Unexpired Leases of nonresidential real property to object to the continued possession of such leased property, including the ability to conduct GOB sales on the properties, or failure to comply with any other lease terms or obligations, including payment of rents and charges and insurance obligations, in each case related to such Unexpired Lease following entry of the Confirmation Order are expressly preserved, and the rights of such counterparties to request such objection be heard on shortened notice are preserved.

Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the date that is ninety (90) days after the Effective Date shall revest in, and be fully enforceable by the applicable Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption, subject to this Article V.A. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or Wind-Down Debtors.

Subject to the Sale Order, to the maximum extent permitted by Law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (A) result in a violation, breach or default under such Executory Contract or Unexpired Lease, (B) increase, accelerate, or otherwise alter any obligations, rights or liabilities of the Debtors or the Wind-Down Debtors under such Executory Contract or Unexpired Lease, or (C) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Wind-Down Debtors pursuant to the applicable Executory Contract or Unexpired Lease. Any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption thereof (subject to the other provisions of this Article V.A) shall be deemed satisfied by Confirmation.

Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, reserve the right, so long as consistent with the Purchase Agreement, to alter, amend, modify, or supplement (i) the Schedule of Assumed Executory Contracts and Unexpired Leases and (ii) any schedule of Executory Contracts and Unexpired Leases that is attached to the Purchase Agreement, with the consent of the applicable Purchaser, at any time up

to the later of (x) the date on which the Bankruptcy Court enters an order confirming a reorganization or liquidation plan concerning the Debtors, and (y) seventy-five (75) days following the Closing Date (as defined in the Purchase Agreement); provided that such date may be extended with respect to any Designated Contract (as defined in the Purchase Agreement) or Designated Lease (as defined in the Purchase Agreement) (a) for up to an additional one hundred eighty (180) days beyond such seventy-fifth (75th) day with the consent of the applicable Purchaser and the applicable Designation Counterparty (as defined in the Purchase Agreement) and (b) for up to an additional one hundred eighty (180) days beyond the expiration of the one hundred eighty (180) day extension period set forth in (a) above with the consent of the Debtors, the Phoenix and the applicable Designation Counterparty (as defined in the Purchase Agreement) and (z) solely with respect to Unexpired Leases of nonresidential real property, the deadline set forth in section 365(d)(4) of the Bankruptcy Code, as such date may be extended with the consent of the applicable lessor counterparty, consistent with the Purchase Agreement, as applicable; *provided* that, subject to Article V.C of the Plan, at any time during such ninety (90)-day period after the Effective Date, the Wind-Down Debtors shall remain liable for any and all amounts incurred under any such Executory Contracts and Unexpired Leases on the Schedule of Assumed Executory Contracts and Unexpired Leases in the ordinary course of business; *provided further*, that, subject to Article V.C of the Plan, on the first Business Day that follows such ninety (90)-day period, (i) to the extent any Executory Contracts and Unexpired Leases remain on the Schedule of Assumed Executory Contracts and Unexpired Leases, such Executory Contracts and Unexpired Leases shall be deemed Assumed Executory Contracts and Unexpired Leases and the Wind-Down Debtors shall pay any and all Cure Claims owing under such Assumed Executory Contracts and Unexpired Leases pursuant to section 365 of the Bankruptcy Code or (ii) to the extent the Wind-Down Debtors have filed an amended or otherwise modified Schedule of Assumed Executory Contracts and Unexpired Leases, removing any Executory Contract or Unexpired Lease, such Executory Contracts and Unexpired Leases shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. The Debtors shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

      B.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

      Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time shall be barred from asserting such claims against the Debtors and precluded from voting on the Plan and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely filed;** ***provided*** **that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register as a result of being untimely filed**. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General

Unsecured Claims and shall be treated in accordance with <u>Article III.B</u> and may be objected to in accordance with the provisions of <u>Article IX</u> of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

       C.       *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases, the Purchase Agreement, and the Sale Order, pay all Cure Costs relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan on such terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that, if a dispute regarding assumption or Cure Cost is unresolved as of the Effective Date, then payment of the applicable Cure Cost shall occur as soon as reasonably practicable after such dispute is resolved.  Any Cure Cost shall be deemed fully satisfied and released upon payment of the Cure Cost.

Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Cost must be Filed, served, and actually received by counsel to the Debtors no later than ten (10) days after the service of notice of assumption on affected counterparties.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment and any untimely request for an additional or different Cure Cost shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any of the Debtors without the need for any objection by the applicable Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Any payment of Cure Costs by the Debtors or the Purchasers, as applicable, in connection with Executory Contracts and Unexpired Leases assumed or assumed and assigned pursuant to the Sale Transaction shall be satisfied in full by the Debtors or the Purchasers, as applicable, in accordance with the terms in the Purchase Agreement and the Sale Order (including the Assignment Procedures), including in the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Debtors, the Purchasers, or any assignee to provide "adequate assurance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption.

If there is any dispute regarding any Cure Costs, the ability of the Debtors, the Wind-Down Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assumption and assignment, then payment of any Cure Costs shall occur as soon as reasonably practicable after (a) entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment) or (b) as may be agreed upon by the Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. Any such disputes shall be scheduled for hearing upon request of the affected counterparty or the

Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, at the earliest convenience of the Court; *provided* that no hearing will be scheduled on less than 10 days' notice to the affected counterparty and the Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, and that no such hearing shall be scheduled less than 30 days after the Effective Date unless agreed to between the Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, and the affected counterparty.   The Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, may reconcile and settle in the ordinary course of the Debtors' business any dispute (following a timely Filed objection) regarding any Cure Cost or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Contracts and Unexpired Leases, the Debtors or the Purchaser, as applicable, shall have the right to (a) satisfy the Court-Ordered Cure Cost as soon as reasonably practicable thereafter and assume such Executory Contract or Unexpired Lease in accordance with the terms herein or, (b) within 14 days of such determination, remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected on the later of (i) the date of entry of the Court-Ordered Cure Cost and, (ii) solely with respect to Unexpired Leases, the date upon which the Debtors notify the landlord in writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable, and in the case of rejection of an Unexpired Lease pursuant to the preceding clause (ii), the Debtors shall, pursuant to section 365(d)(4) of the Bankruptcy Code, immediately surrender the related premises to the lessor unless otherwise agreed with the applicable lessor or ordered by the Court, subject to the applicable counterparty's right to object to such rejection; *provided* that, after the deadline to assume an Executory Contract or Unexpired Lease set forth in section 365(d) of the Bankruptcy Code, as clarified by the Extension Order, an Executory Contract or Unexpired Lease may only be removed from the Schedule of Assumed Executory Contracts and Unexpired Leases if (1) the applicable counterparty consents to such rejection, (2) the applicable counterparty objected to the assumption or cure of such Executory Contract or Unexpired Lease on the grounds that such Executory Contract or Unexpired Lease should not be assumed and should instead be rejected, including alleging an incurable default (and such objection remains outstanding), or (3) the court orders a Court-Ordered Cure Cost.  Notwithstanding anything to the contrary herein, the Wind-Down Debtors and the applicable counterparty shall be entitled to the full benefits of the Executory Contract or Unexpired Lease (including without limitation, any license thereunder) pending the resolution of any Cure Cost dispute.

The assumption of any Executory Contract or Unexpired Lease in connection with the Sale Transaction or the Plan and the cure of defaults associated therewith in accordance with section 365(b) of the Bankruptcy Code, including the payment of any Cure Costs as adjudicated or agreed upon by the Debtors and the applicable Purchaser, shall result in the full release and satisfaction of any Cure Cost, Claims, or defaults, whether monetary or nonmonetary, including those arising from or triggered by the filing of these Chapter 11 Cases and provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, in each case at any time prior to the effective date of assumption.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as**

**of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption or (2) the effective date of such assumption without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.  Notwithstanding anything in this Plan, the Purchase Agreement, the Sale Order, the Plan Supplement, or otherwise to the contrary, any non-Debtor party to any such Executory Contract or Unexpired Lease shall be entitled to receive, and nothing herein shall release or result in the satisfaction of such party's right to receive, payment in full of all Cure Costs and all amounts that have accrued or otherwise arisen as of the Effective Date (but are not in default as of the Effective Date) with respect to any Executory Contract or Unexpired Lease.

  *D. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

  Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, the Purchase Agreement, or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors (for themselves and for their successors) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

  *E. Insurance Policies.*

  Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (i) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (ii) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall vest in the Wind-Down Debtors.

  *F. Indemnification Provisions.*

  Except as set forth in the Plan Supplement, all Indemnification Provisions, consistent with applicable law, currently in place (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of each of the Debtors, as applicable, shall be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors than the Indemnification Provisions in place prior to the Effective Date; *provided* that, notwithstanding anything herein to the contrary, the Wind-Down Debtors' obligation to fund such indemnification obligations shall be limited to the extent of coverage, if any, available under any Insurance Policy

assumed by the Debtors and assigned to the Wind-Down Debtors. Accordingly, the Wind-Down Debtor Assets and any proceeds therefrom, if any, will not be used to fund such indemnification obligations of the Debtors or the Wind-Down Debtors, as applicable.

The Debtors or the Wind-Down Debtors, as applicable, shall maintain tail coverage under any D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than under, and with an aggregate limit of liability no less than the aggregate limit of liability under, the D&O Liability Insurance Policies.  In addition to such tail coverage, the D&O Liability Insurance Policies shall remain in place in the ordinary course during the Chapter 11 Cases.

The Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies  in effect prior to the Effective Date, and any directors and officers of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.  Notwithstanding anything herein to the contrary, the Debtors shall retain the ability to supplement the D&O Liability Insurance Policies as the Debtors deem necessary, including purchasing any tail coverage.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, the Sale Order, or the Purchase Agreement, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including easements, reciprocal easement agreements, construction operating and reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Contracts and Unexpired Leases, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan or the Sale Order.  Following the expiration of the Designation Rights Period, as applicable, the Debtors may not subsequently reject

any Unexpired Lease previously designated as assumed or assumed and assigned and may not assume or assume and assign an Unexpired Lease previously designated as rejected on the Schedule of Assumed Contracts and Unexpired Leases absent the consent of the applicable lessor or order of the Bankruptcy Court.  A final and timely designation with respect to all Unexpired Leases of nonresidential real property will be made in accordance with Article V.A of this Plan.

        *I.*     *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code.

        *J.*     *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor (but excluding any Executory Contracts), will be performed by the applicable Debtor or, after the Effective Date, the Wind-Down Debtors, liable thereunder in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases but excluding any Executory Contracts or Unexpired Leases that have been rejected as of the date of entry of the Confirmation Order) will survive and remain unaffected by entry of the Confirmation Order.

        *K.*     *Sale Order Assignment Procedures.*

Nothing contained in the Plan or the Confirmation Order constitutes or shall be construed as any modification or amendment of the Sale Order or the Assignment Procedures attached thereto.

# ARTICLE VI
# PROVISIONS GOVERNING DISTRIBUTIONS

        *A.*     *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter, (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter) each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class (which, for the avoidance of doubt, may be multiple distributions over time).  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article IX hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions

provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

      *B.*      *Distributions on Account of Obligations of Multiple Debtors.*

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan, *provided* that Claims held by a single Entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor.  Any such Claims shall be released pursuant to <u>Article X</u> of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.  For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

      *C.*      *Distributions Generally.*

Except as otherwise provided herein, distributions under the Plan shall be made by the Disbursing Agent, as applicable.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtors.

      1.      <u>Powers of the Disbursing Agent.</u>

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ Professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

      2.      <u>Expenses Incurred on or After the Effective Date.</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement Claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Wind-Down Debtors or from the Wind-Down Reserve, as applicable.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records; *provided* that the manner of such distributions shall be determined at the reasonable discretion of the Disbursing Agent; *provided further* that the address for each Holder of an Allowed Claim or Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Interest Filed by such Holder, or, if no Proof of Claim or Interest has been Filed, the address set forth in the Schedules. If a Holder holds more than one Claim in any one Class, all Claims of the Holder may be aggregated into one Claim and one distribution may be made with respect to the aggregated Claim.

2.      Minimum Distributions.

No Cash payment of less than $100.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

3.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the time of the distribution. After such date all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property Laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be released and forever barred.

A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind-Down Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or the Wind-Down Debtors' requests, as applicable, for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

E.      *Manner of Payment.*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Disbursing Agent, the Debtors, the Wind-Down Debtors, the Liquidating Trust, and any applicable withholding agent shall

comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Disbursing Agent, Debtors, and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

G.    *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the DIP Orders, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

I.    *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Effective Date.

J.    *Setoffs and Recoupment.*

Except as expressly provided in this Plan, the Wind-Down Debtors may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all Claims, rights, and Causes of Action that such Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any and all Claims, rights, and Causes of Action that such Debtor or its successor may possess against the applicable Holder.

K.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties.

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor, such Holder shall be barred from asserting such Claim against the Debtors and precluded from voting on any plans of reorganization Filed in these Chapter 11 Cases and/or receiving distributions from the Debtors or the Wind-Down Debtors, as applicable, on account of such Claims in these Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims Filed with respect to an Executory Contract or Unexpired Lease that received payment in full satisfaction on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor, as applicable. In no event shall the Holder of a Claim's total recovery on account of such Claim from a third party and under the Plan exceed the amount of such Claim as of the date of any such distribution under the Plan. The Debtors and Wind-Down Debtors, as applicable, may file a *Notice of Satisfaction of Claim* with respect to any Claim that has been satisfied by the Debtors or any third party.

2.    Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove the applicable portion of such Claim.

3.    Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims and Interests shall be in accordance with the provisions of any applicable insurance policy. Notwithstanding anything herein to the contrary (including, without limitation, Article X), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII
THE PLAN ADMINISTRATOR**

A.    *The Plan Administrator.*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the amounts set forth in the Administrative Claims Reserve and the Wind-Down Reserve in accordance with the Plan, and wind-down the

business and affairs of the Wind-Down Debtors, including (all without further order of the Bankruptcy Court): (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Wind-Down Debtors, the Administrative Claims Reserve, and the Wind-Down Reserve; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Administrative Claims Reserve and the Wind-Down Reserve; (3) making distributions from the Administrative Claims Reserve and the Wind-Down Reserve as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (7) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (8) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (9) complying with the Debtors' continuing obligations under the Sale Order and Purchase Agreement, and the Transition Services Agreement; and (10) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Wind-Down Reserve.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Purchasers, the Wind-Down Debtors, and the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be chosen by the Wind-Down Debtors Oversight Committee. Upon any other vacancy of the Plan Administrator, a permanent or interim successor Plan Administrator shall be chosen by the Wind-Down Debtors Oversight Committee. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

       1.     <u>Plan Administrator Rights and Powers.</u>

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down Reserve, and as otherwise provided in the Confirmation Order. The Plan Administrator shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

       2.     <u>Retention of Professionals.</u>

The Plan Administrator shall have the right, subject to the Wind-Down Reserve, to retain the services of attorneys, accountants, and other Professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties, without notice or approval of the Bankruptcy Court. The reasonable fees and expenses of such Professionals shall be paid by the Wind-Down Debtors from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Wind-Down Reserve, without notice or approval of the Bankruptcy Court. The payment of the

reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

3.   <u>Compensation of the Plan Administrator.</u>

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

4.   <u>Plan Administrator Expenses.</u>

All costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Wind-Down Debtors, or in any manner connected, incidental or related thereto, in effecting distributions from the Wind-Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid in accordance with the Wind-Down Budget.  Such costs, expenses and obligations shall be paid from the Wind-Down Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

B.   *Wind-Down.*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind-down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (1) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan, Confirmation Order, the Purchase Agreement, the Sale Order, and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to Wind-Down Debtors as set forth herein, the Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which

the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to this Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

      *C.*     *Exculpation, Indemnification, Insurance & Liability Limitation.*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

      *D.*     *Tax Returns.*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

## ARTICLE VIII
## RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR

      *A.*     *Maintenance of Reserve Accounts.*

The Plan Administrator shall establish and/or maintain, as applicable, each of the Administrative Claims Reserve and the Wind-Down Reserve (which may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Plan Administrator).  The Wind-Down Reserve shall be funded in the amount set forth in the Wind-Down Budget.

B.      *Undeliverable Distribution Reserve.*

1.      Deposits.

If a distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed, such distribution shall be reserved in an account designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VIII.B.2 of this Plan.

2.      Forfeiture.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within six months after the first distribution is made to such Holder shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such Claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Plan Administrator, the Wind-Down Debtors, or their respective properties or assets.  In such cases, any Cash or other property held by the Wind-Down Debtors in the Undeliverable Distribution Reserve for distribution on account of such Claims for undeliverable or unclaimed distributions, including the interest, if any, that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Wind-Down Debtors, notwithstanding any federal or state escheat Laws to the contrary, and shall promptly be transferred to the Wind-Down Reserve to be distributed according to the priority set forth in Article VIII.C without any further action or order of the Court.

3.      Disclaimer.

The Plan Administrator and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder; *provided* that in his or her sole discretion, the Plan Administrator may periodically publish notice of unclaimed distributions.

4.      Distribution from Reserve.

Within fifteen (15) Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution (provided that satisfaction occurs within the time limits set forth in Article VIII.B of this Plan), the Plan Administrator shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim.

C.      *Wind-Down Reserve.*

On the Effective Date, the Wind-Down Debtors shall establish the Wind-Down Reserve by depositing Cash, in the amount set forth in the Wind-Down Budget into the Wind-Down Reserve.  The Wind-Down Reserve shall be used by the Wind-Down Debtors solely to satisfy the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan and Wind-Down Budget; *provided* that all costs and expenses associated with the winding up of the

Wind-Down Debtors and the storage of records and documents of the Wind-Down Debtors (and excluding, for the avoidance of doubt, records and documents related to any Acquired Assets or Assumed Liabilities) shall constitute expenses of the Wind-Down Debtors and shall be paid from the Wind-Down Reserve to the extent set forth in the Wind-Down Budget.  Any amount remaining in the Wind-Down Reserve after the dissolution of the Wind-Down Debtors shall be distributed pursuant to the Waterfall Recovery.  In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.

D.    *Administrative Claims Reserve.*

Prior to the Effective Date, the Debtors shall ensure that the Administrative Claims Reserve is funded in the amount of the Administrative Claims Reserve Amount, including by depositing Cash into the Administrative Claims Reserve, if necessary (and the Plan Administrator shall deposit Cash into or withdraw Cash from the Administrative Claims Reserve if the Administrative Claims Reserve Amount changes at any time).  On and after the Effective Date, the Plan Administrator shall administer the Administrative Claims Reserve.  The Administrative Claims Reserve Amount shall be used to pay Holders of all Allowed Priority Claims, Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims or DIP Claims), Allowed Priority Tax Claims, Allowed Secured Tax Claims, and Allowed Other Secured Claims in full; *provided, however*, for the avoidance of doubt, that any such Allowed Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, or other Allowed Other Secured Claims that are Assumed Liabilities shall be satisfied under the Purchase Agreement and shall not be satisfied from the Administrative Claims Reserve.

If all or any portion of any such Claim shall become a Claim that is not Allowed, then the amount on deposit in the Administrative Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Administrative Claims Reserve, shall remain in the Administrative Claims Reserve to the extent that the Wind-Down Debtors determine necessary to ensure that the Cash remaining in the Administrative Claims Reserve is sufficient to ensure that all Allowed Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, or other Allowed Other Secured Claims (that in each case are not Assumed Liabilities) will be paid in accordance with the Plan without any further action or order of the Court.  Any amounts remaining in the Administrative Claims Reserve after payment of all Allowed Priority Claims, Allowed Administrative Claims, Allowed Other Priority Tax Claims, Allowed Secured Tax Claims, or other Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the Wind-Down Reserve until such time the Wind-Down Debtors are dissolved in accordance with the provisions herein.

## ARTICLE IX
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Disputed Claims Process*

The Debtors, the Wind-Down Debtors, and the Plan Administrator shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the

Bankruptcy Court, that a Claim subject to any Proof of Claim that is Filed is Allowed and (ii) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of (a) the Effective Date, or (b) the applicable Claims Bar Date, shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Wind-Down Debtor, as applicable, without the need for any objection by the Debtors, the Wind-Down Debtors, or Plan Administrator, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

> B.    *Allowance of Claims.*

After the Effective Date, subject to <u>Article IV.I</u>, the Wind-Down Debtors and Plan Administrator shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately before the Effective Date except for such rights and defenses assigned or transferred in accordance with the Purchase Agreement.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order is not considered Allowed and shall be expunged without further action by the Debtors or the Plan Administrator and without further notice to any party or action, approval, or order of the Bankruptcy Court.

> C.    *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, the Wind-Down Debtors and the Plan Administrator shall have the sole authority:  (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

> D.    *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor, Wind-Down Debtor, or the Plan Administrator, as applicable, may elect to pursue any

supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 14 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtors or Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.  Additionally, any Claim or Interest that is duplicative or redundant with another Claim against or Interest in the same Debtor or another Debtor may be adjusted or expunged on the Claims Register by the Wind-Down Debtors or Plan Administrator without the applicable Wind-Down Debtors or Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed by the Debtors, the Wind-Down Debtors, or the Plan Administrator, and with the consent of the applicable Purchaser solely to the extent that responsibility to satisfy such Claim or Interest is transferred to the applicable Purchaser pursuant to the Purchase Agreement, on or before the Claims Objection Deadline, as such deadline may be extended from time to time.

G.      *Disallowance of Claims or Interests.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Wind-Down Debtors, as applicable.  All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Pursuant to the terms of the Bar Date Order, if a Proof of Claim is not received by the Claims and Noticing Agent on or before the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, the Holder of the underlying Claim shall be barred from asserting such claim against the Debtors and precluded from voting on any plans of reorganization filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such claims in these Chapter 11 Cases. The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall be authorized to update the Claims Register to remove any claims not received by the Claims and Noticing Agent before the Claims Bar Date or the Administrative Claims Bar Date, as applicable; *provided* that the Debtors, the Wind-Down Debtors, or the Plan Administrator will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be removed from the Claims Register as a result of being untimely filed.**

H.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Disputed Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Interest; *provided* that if the Allowed amount of a Claim or Interest is Disputed, but not the existence or nature of such Claim, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

I.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

J.      *Tax Treatment of Reserves for Disputed Claims.*

After the Effective Date, Cash may be distributed to Holders of Claims ultimately determined to be Allowed after the Effective Date (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article III hereof. Pending the resolution of such Claims, a portion of the Cash to be received by Holders of such Claims may be held back and deposited into the Wind-Down Reserve as described further in Article IV.C, and to the extent that any property is deposited into such a reserve, the reserve is expected to be subject to "disputed ownership fund" treatment under section 1.468B-9 of the United States Treasury Regulations.

K. *No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim; *provided* that interest on any Disputed Priority Tax Claim that (i) becomes an Allowed Priority Tax Claim and (ii) is treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code shall accrue and be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

L. *Amendments to Claims.*

Except as otherwise expressly provided for in the Plan or the Confirmation Order, on or after the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court or the Wind-Down Debtors. Absent such authorization, any new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

## ARTICLE X
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Satisfaction and Release of Claims and Interests.*

The assets of the Debtors and the Wind-Down Debtors, as applicable, are being and shall be used for the satisfaction of expense obligations and/or the payment of Claims only in the manner set forth in the Plan and shall not be available for any other purpose. Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Wind-Down Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such

debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. Therefore, notwithstanding anything in section 1141(d)(3) to the contrary, all Persons or Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Chapter 11 Cases, that occurred prior to the Effective Date, other than as expressly provided in the Plan, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan. The Confirmation Order shall be a judicial determination of the satisfaction and release of all Claims and Interests subject to the occurrence of the Effective Date.

     *B.*     *Release of Liens.*

**On the Effective Date, concurrently with the consummation of the Wind-Down Transactions and except as otherwise set forth in the Purchase Agreement, the Acquired Assets and Assumed Liabilities shall be transferred to and vest in the Purchasers free and clear of all Liens, Claims, charges, interests, or other encumbrances pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Confirmation Order, the Plan, and the Purchase Agreement, each as applicable. Without limiting the foregoing, except as otherwise provided in the Purchase Agreement, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases, and the Debtors and their successors and assigns shall be authorized to file and record such terminations or releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

     *C.*     *Debtor Release.*

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, in exchange for**

good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates and, if applicable, the Wind-Down Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, or through, for, or because of, the foregoing Entities, from any and all claims and Causes of Action, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, and the Wind-Down Debtors, as applicable, whether liquidated or unliquidated, fixed or contingent, accrued or unaccrued, known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in Law, equity, contract, tort, or under federal or state statutory of common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that the Debtors, their Estates, and the Wind-Down Debtors, as applicable, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), or the Estates, the Chapter 11 Cases, the Wind-Down Transactions, their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the pursuit of the Wind-Down Transactions, the administration and implementation of the Plan, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, in all cases upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this Article X.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article X.C is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors or their respective Estates or, if applicable, the Wind-Down Debtors or the Wind-Down Debtors, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

D.       *Third-Party Release.*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in Law, equity, contract, tort, or arising under federal or state statutory or common law, or any other applicable international foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them, including any derivative claims asserted or assertable on behalf of any of the Debtors, would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof) or the Estates, the Chapter 11 Cases, their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the pursuit of the Wind-Down Transactions, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the administration and implementation of the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in this **Article X.D**, which include by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this **Article X.D** is: (i) consensual; (ii) given in exchange for the good and valuable consideration provided by the Released Parties; (iii) a good-faith settlement and compromise of such claims and Causes of Action; (iv) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) a sound exercise of the Debtors' business judgment; and (viii) a bar to any of the Releasing Parties or the Debtors or their respective Estates or, if applicable, the Wind-

Down Debtors, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

E.    *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any claim or Cause of Action for any act or omission arising on or after the Petition Date and prior to or on the Effective Date in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and Consummation of this Plan, the making of Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan, the occurrence of the Effective Date, the administration of this Plan or the property to be distributed under this Plan, the issuance of securities under or in connection with this Plan, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors, or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any sale, restructuring, or liquidation of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of this Plan, *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; *provided, further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Article X.E</u> shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in this Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law, except as provided in Article X.L of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to this <u>Article X</u> of the Plan,

whether released pursuant to the Debtor Release, released pursuant to the Third-Party Release, or released pursuant to another provision of the Plan (including the release of Liens pursuant to **Article X.B** of the Plan), or are subject to exculpation pursuant to **Article X.E** of the Plan, are enjoined ((a) in the case of the Debtors and the Wind-Down Debtors, from and after the Effective Date, through and until the date upon which all remaining property of the Debtors' Estates vests into the Wind-Down Debtors, and has been liquidated and distributed in accordance with the terms of the Plan, and (b) in the case of the Released Parties, the Exculpated Parties, and all other Persons and Entities other than the Debtors and the Wind-Down Debtors, as applicable, permanently) from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, in each case to the extent provided by the relevant release, exculpation, or other Plan provision:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to **Article X.B**, **Article X.C**, **Article X.D**, or **Article X.E** hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this **Article X.F** of the Plan.

**For the avoidance of doubt and notwithstanding section 1141(d)(3) of the Bankruptcy Code, as of the Effective Date, except as otherwise specifically provided in the Plan and Sale Order, all Persons or Entities who have held, hold, or may hold Claims or Interests that are treated under the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claim or Interest from the Debtors, the Estates, the Purchasers, or the Wind-Down Debtors, except for the receipt of the payments or distributions, if any, that are contemplated by the Plan from the Wind-Down Debtors, or otherwise contemplated under the Sale Order. Such injunction will not enjoin Persons or Entities that do not consent to the Third-Party Release from pursuing any direct (but not derivative) Claims or Cause of Action such Persons or Entities may have against Released Parties other than the Debtors, the Estates, the Purchasers, or the Wind-Down Debtors.**

G.      *Preservation of Setoff Rights.*

Notwithstanding anything to the contrary in Article X or in the Sale Order, any right of setoff or recoupment is preserved against the Debtors, the Purchasers, and any of their affiliates and successors to the extent such right(s) exist under applicable law and subject to the Debtors', Purchasers', and any of their Affiliates' and successors', as applicable, right to contest any such right(s) of setoff or recoupment; *provided*, *however*, that notwithstanding the foregoing or anything in the Plan to the contrary, the right of any Entity or Holder of a Claim or Interest to assert setoff or recoupment as a defense or affirmative defense to Claims brought against them is expressly preserved to the extent permitted by applicable law and shall not be impaired, enjoined, precluded, restricted, or otherwise limited by the Plan or the Confirmation Order.

H.      *Protections Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the supremacy clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Document Retention.*

On and after the Effective Date, the Wind-Down Debtors may maintain documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors, or in connection with the terms of the Purchase Agreement.

J.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any

order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect on and following the Effective Date in accordance with their terms.

> ### K.      Subordination Rights.

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any distribution made pursuant to the Plan.  Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to the Plan shall be terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, the Estates, their respective property, and Holders of Claims and Interests and is fair, equitable, and reasonable.

> ### L.      No Discharge of the Debtors.

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors or the Wind-Down Debtors.  Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan.  All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

# ARTICLE XI
# CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

> ### A.      Conditions Precedent to the Effective Date.

It shall be a condition to the occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XI.B hereof:

1.      the Wind-Down Transactions shall have been implemented in accordance with the Wind-Down Transactions Memorandum in all material respects;

2.      the Confirmation Order shall have been entered and shall not be stayed;

3.      all documents necessary to consummate this Plan shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith;

4.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

5.      the Wind-Down Reserve and the Administrative Claims Reserve shall have each been funded;

6.      the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

7.      all waiting periods imposed by any Governmental Unit in connection with the transactions contemplated by the Plan and the Sale Transaction shall have terminated or expired and all authorizations, approvals, consents or clearances under the any applicable antitrust Laws in connection with such transactions shall have been obtained;

8.      the Purchasers shall have acquired the Acquired Assets pursuant to the applicable Purchase Agreement, and in each case all conditions precedent to the closing of such Sale Transaction shall have been satisfied or duly waived;

9.      any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained;

10.     any material settlement between a Governmental Unit and the Debtors and their non-Debtor Affiliates, which is required to consummate the Plan, shall be entered into on or prior to the Effective Date, and shall be in form and substance acceptable to the Committee;

11.     the aggregate amount of Allowed Administrative Claims, Allowed Priority Claims, Allowed Secured Tax Claims, and Allowed Other Secured Claims to be paid pursuant to the Plan shall be reasonably acceptable to the Committee; and

> B.      *Waiver of Conditions.*

The conditions to the Effective Date set forth in <u>Article XI.A</u>, may be waived by the Debtors, after prior consultation with the Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; provided that, the condition in <u>Article XI.A.6</u> may not be waived without the consent of the affected Professionals.

C.      *Effect of Failure of Conditions.*

If the Effective Date of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

D.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XII
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Committee, reserve the right to modify the Plan, whether such modification is material or immaterial, seek Confirmation consistent with the Bankruptcy Code, and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to each Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, to revoke or withdraw the Plan before the Confirmation Date and to File subsequent plans, in each case with the consent rights as set forth therein.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims, Causes of Action, or Interests; (b) prejudice in any manner the

rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity; *provided* that for the avoidance of doubt, the revocation or withdrawal of the Plan, or the failure to obtain Confirmation or consummation of the Plan, shall not affect the occurrence of the closing of the Sale Transaction or the consummation of the Wind-Down Transactions.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Wind-Down Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.    grant any consensual request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, that may arise in connection with any Vested Causes of Action;

8.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10.     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article X hereof and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

14.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI hereof;

15.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.     enter an order concluding or closing the Chapter 11 Cases;

18.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions and releases granted in the Plan, including under <u>Article X</u> hereof;

24.     enforce all orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

25.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

*A.     Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*B.     Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Wind-Down Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.     Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising on or prior to the Effective Date, from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; *provided* that (a) the Committee will remain in place after the Effective Date solely for the purpose of addressing (i) all final fee applications for all Professionals for the Committee and (ii) the resolution of any appeals of the Confirmation Order, and (b) the members of the Committee are discharged from all of their duties as of the date that the Committee is dissolved with respect thereto.

D.     *Rights of Purchasers under the Sale Order.*

Nothing contained in the Plan or the Confirmation Order constitutes or shall be construed as any modification or amendment of the rights or obligations of the Purchasers or other parties under the Sale Order.

E.     *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

F.     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.     *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.     <u>If to the Debtors, to:</u>

Express, Inc.
One Express Drive
Columbus, Ohio 43230
Attn:   Mark Still
Email: MStill@express.com

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn:   Joshua A. Sussberg, P.C.
          Emily E. Geier, P.C.
          Nicholas M. Adzima
Email: joshua.sussberg@kirkland.com

emily.geier@kirkland.com
nicholas.adzima@kirkland.com

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attn:   Charles B. Sterrett
Email: charles.sterrett@kirkland.com

Klehr Harrison Harvey Branzburg LLP
919 North Market Stret, Suite 100
Wilmington, Delaware 19801
Attn:   Domenic E. Pacitti
        Michael W. Yurkewicz
        Alyssa Radovanovich
Email: dpacitti@klehr.com
        myurkewicz@klehr.com
        aradovanovich@klehr.com

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Attn:   Morton R. Branzburg
Email: mbranzburg@klehr.com

2.      If to the DIP Agents or DIP Lenders, to:

Goldberg Kohn Ltd.
55 E. Monroe Street, Suite 3300
Chicago, Illinois 60603
Attn:   Randall Klein;
        Dimitri Karcazes
        Keith G. Radner
        Eva D. Gadzheva
Email: randall.klein@goldbergkohn.com
        dimitri.karcazes@goldbergkohn.com
        keith.radner@goldbergkohn.com
        eva.gadzheva@goldbergkohn.com

Richards Layton & Finger
920 North King Street
Wilmington, Delaware 19801
Attn:   John H. Knight
        Paul N. Heath
        Alexander R. Steiger
Email: knight@rlf.com

> heath@rlf.com
> steiger@rlf.com

> Ropes & Gray LLP
> 191 North Wacker Drive, 32nd Floor
> Chicago, Illinois 60606
> Attn:   Stephen L. Iacovo
> Email: Stephen.Iacovo@ropesgray.com

> Chipman, Brown, Cicero & Cole, LLP
> 1313 North Market Street, Suite 5400
> Wilmington, Delaware, 19801
> Attn:   Mark L. Desgrosseilliers
> Email: desgross@chipmanbrown.com

3.    <u>If to the Committee, to:</u>

> Kramer Levin Naftalis & Frankel LLP
> 1177 Avenue of the Americas
> New York, NY 10036
> Attn:    Adam C. Rogoff
>          Robert T. Schmidt
>          Nathaniel Allard
> Email: arogoff@kramerlevin.com
>          rschmidt@kramerlevin.com
>          nallard@kramerlevin.com

> Saul Ewing LLP
> 1201 North Market Street, Suite 2300
> P.O. Box 1266
> Wilmington, DE 19899
> Attn:   Lucian B. Murley
>          Nicholas Smargiassi
> Email: luke.murley@saul.com
>          nicholas.smargiassi@saul.com

> Saul Ewing LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA 19102-2186
> Attn:   Turner N. Falk
> Email: turner.falk@saul.com

After the Effective Date, the Wind-Down Debtors may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, are authorized to limit the list of Entities receiving

documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.    *Entire Agreement.*

Except as otherwise indicated (including with respect to the Sale Order and the Purchase Agreement), the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.  If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, Claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, Claims and, defenses.   This Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any Claim or fault or liability or damages whatsoever.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to Plan and the documents comprising the Plan Supplement is part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

I.    *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/express or the Bankruptcy Court's website at https://www.deb.uscourts.gov.

J.    *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:   (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' and the Committee's consent; and (3) nonseverable and mutually dependent.

K.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

L.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

[*Remainder of page intentionally left blank*]

Dated:  July 31, 2024

EXPRESS, INC.
on behalf of itself and all other Debtors


*/s/  Stewart Glendinning*

Stewart Glendinning
Chief Executive Officer
Express, Inc.