**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| EXPRESS, INC., *et al.*,[1] | Case No. 24-10831 (KBO) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I)**
**APPROVING THE ADEQUACY OF THE DISCLOSURE**
**STATEMENT, (II) APPROVING THE SOLICITATION**
**PROCEDURES, (III) APPROVING THE FORMS OF BALLOTS AND**
**NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN**
**DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):[2]

**Preliminary Statement**

1.       The Debtors commenced these chapter 11 cases to implement a comprehensive

chapter 11 plan that would efficiently and expeditiously maximize value for the Company's

stakeholders through a going-concern transaction that preserves thousands of jobs, rationalizes its

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]    Capitalized terms used but not immediately or otherwise defined herein shall have the meanings ascribed to them in the *Joint Chapter 11 Plan of Express, Inc. and its Debtor Affiliates* [Docket No. 689] (as amended, supplemented, or modified from time to time, the "Plan"), or the Disclosure Statement, as applicable.

store footprint while maintaining as many store locations as possible, and ensures commercial counterparties can continue to do business with Express for years to come.

2.      The Debtors' first major step towards achieving their goals is now complete following the clearing of their biggest hurdle:  the consummation of the going-concern sale transaction ("Sale Transaction") with Phoenix Retail, LLC ("Phoenix"), a consortium consisting of PHXWHP, LLC, an affiliate of EXPWHP, LLC and affiliates of certain of the Debtors' landlords, specifically, SPG Fashion Retail, LLC and BPR Acquisitions LLC.  With the support of the Committee (as defined below) and the DIP Lenders and other key stakeholders, the Sale Transaction closed on June 21, 2024, and preserved 7,500 jobs, assumed over 450 store locations across 44 states, continued service to customers across the Express and Bonobos omnichannel retail platform, maintained relationships with many key contract counterparties, and allowed the Debtors to pay down the outstanding DIP obligations in full.

3.      The Debtors are now fully focused on achieving their second, and final, goal:  a confirmed chapter 11 plan that provides for the satisfaction of all administrative and priority claims, results in meaningful recoveries to general unsecured creditors, and that is supported by the Committee and its constituency.  The proposed Plan provides this treatment and distributes value to Holders of Allowed Claims through a standard waterfall in the Plan and the Debtors will continue to engage closely with the Committee and all constituents on the Plan process and path forward.

4.      Accordingly, the Debtors file this Motion to proceed with confirmation of the Plan, provide recoveries to Holders of Allowed General Unsecured Claims, and facilitate an orderly wind down of the Debtors' estates.  For the reasons set forth herein, and the Motion should be granted.

**Relief Requested**

5.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), granting the following relief:

a.      ***Approving Adequacy of the Disclosure Statement***.   Approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 690] (as amended, supplemented, or modified from time to time, the "Disclosure Statement"), attached to the Order as **Exhibit 1**, as containing "adequate information" pursuant to section 1125(a)(1) of the Bankruptcy Code and providing notice of injunction, exculpation, and release provisions in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c); with such approval;

b.      ***Solicitation Procedures***.   Approving procedures for (i) soliciting, receiving, and tabulating votes to accept or reject the Plan, (ii) voting to accept or reject the Plan, and (iii) filing objections to the Plan (the "Solicitation Procedures"), substantially in the form attached to the Order as **Exhibit 2**;

c.      ***Ballots***.   Approving the ballots that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan, and providing an opportunity to opt-out of the Third Party Release contained in Article X.D of the Plan, substantially in the form attached to the Order as **Exhibit 3**, (the "Ballots");

d.      ***Notices of Non-Voting Status***.   Approving the forms of notice to (i) Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan and (ii) Holders of Claims or Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan, substantially in the form attached to the Order as **Exhibit 4A** and **4B** (the "Notices of Non-Voting Status");

e.      ***Deemed to Accept Opt-In Release Form***.   Approving the form (the "Deemed to Accept Opt-In Form") that will go solely to Holders of Claims or Interests that are deemed to accept the Plan, providing the opportunity to opt-in to the Third-Party Release contained in Article X.D of the Plan through a form attached to the Order as **Exhibit 4C**;

f.      ***Deemed to Reject Opt-In Release Form***.   Approving the form (the "Deemed to Reject Opt-In Form," and together with the Deemed to Accept Opt-In Form, the "Opt-In Forms") that will go solely to Holders of Claims or Interests that are deemed to reject the Plan, providing the

opportunity to opt-in to the Third-Party Release contained in Article X.D of the Plan through a form attached to the Order as **Exhibit 4D**;

g.    ***Cover Letter***.  Approving the form of letter (the "Cover Letter") that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan recommending that such parties vote in favor of the Plan, substantially in the form attached to the Order as **Exhibit 5**;

h.    ***Confirmation Hearing Notice***.  Approving the form and manner of notice (the "Confirmation Hearing Notice") of the Confirmation Hearing (as defined below) and the procedures for objecting thereto, substantially in the form attached to the Order as **Exhibit 6**;

i.    ***Plan Supplement Notice***.  Approving the notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as **Exhibit 7** (the "Plan Supplement Notice");

j.    ***Solicitation Packages***.    Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to Holders of Claims entitled to vote to accept or reject the Plan are in compliance with rules 2002(b) and 3017(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

k.    ***Confirmation Dates***.  Establishing the following dates and deadlines with respect to confirmation of the Plan, subject to modification as necessary (the "Confirmation Dates"):

| Event | Date | Description |
|---|---|---|
| Voting Record Date | July 31, 2024 | The date to determine which Holders of Claims are entitled to vote to accept or reject the Plan (the "Voting Record Date"). |
| Solicitation Mailing Deadline | As soon as practicable after entry of the Order, but in no event more than five (5) business days thereafter | The deadline by which the Debtors must distribute Notices of Non-Voting Status and Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Mailing Deadline"). |
| Publication Deadline | As soon as practicable after entry of the Order, but in no event more than five (5) business days thereafter | The date by which the Debtors will submit the Confirmation Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Publication Deadline"). |

| Plan Supplement Filing Deadline | October 2, 2024 | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Deadline"). |
|---|---|---|
| Voting Deadline | October 9, 2024, at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and the Opt-In Forms must be properly executed, completed, and submitted so that they are **actually received** (the "Voting Deadline") by Stretto, Inc. (the "Solicitation Agent"). |
| Confirmation Objection Deadline | October 9, 2024, at 4:00 p.m., prevailing Eastern Time | The deadline by which parties in interest may file objections to confirmation of the Plan (the "Confirmation Objection Deadline"). |
| Deadline to File Voting Report | Two (2) business days prior to the confirmation hearing, at 12:00 p.m., prevailing Eastern Time | The date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court. |
| Confirmation Brief and Confirmation Objection Reply Deadline | Two (2) business days prior to the confirmation hearing, at 12:00 p.m., prevailing Eastern Time | Not later than the deadline to file the agenda for the hearing to consider confirmation of the Plan (unless otherwise extended by the Court), as the date by which the Debtors shall file their brief in support of confirmation of the Plan and reply to objections to confirmation of the Plan. |
| Confirmation Hearing Date | On or after October 16, 2024, at [●] [a.m./p.m.], prevailing Eastern Time, subject to the Court's availability | The date of the hearing (the "Confirmation Hearing") at which the Court will consider confirmation of the Plan (the "Confirmation Hearing Date"). |

## Jurisdiction and Venue

6.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent

5

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105, 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3001, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002, 3016-2, 3017-1, 3017-2, and 9006-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

9.      The Debtors are an omnichannel fashion retail company whose business operates under a multi banner portfolio comprised of Express, UpWest, and Bonobos.  Grounded in a belief that style, quality, and value should all be found in one place, Express is a brand with a purpose. The Debtors offer their merchandise through approximately 600 stores throughout the United States and Puerto Rico—located primarily in high traffic shopping malls, lifestyle centers, and outlets—as well as online through their U.S. e-commerce websites.  Headquartered in Columbus, Ohio, Express, Inc. is a publicly traded company that currently employs approximately 9,300 employees, of whom approximately 2,800 are full time.

10.     The Debtors commenced these chapter 11 cases to facilitate a timely and efficient process that will maximize the value of the Debtors' estates for the benefit of all stakeholders.  The Debtors anticipate right sizing their retail footprint, winding down brick-and-mortar locations that are not part of their go-forward business plan.  The Debtors will seek to implement a value maximizing going concern transaction for their remaining operations.

11.     On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their

businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

12.     The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 3, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 154].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

13.     On July 10, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and Between the Debtors, the Committee, and ReStore and (II) Granting Related Relief* (the "9019 Motion") [Docket No. 598]. Pursuant to the 9019 Motion, the Debtors, the Committee, and ReStore Capital, LLC (the "DIP Term Loan Agent"), executed a settlement agreement (the "Settlement"), whereby the DIP Term Loan Agent shall pay $295 thousand to the Debtors' estates, which payment may be accomplished by a reduction of amounts owing from the Debtors to the DIP Term Loan Agent under the Prepetition Second Lien Term Credit Documents or the Second Lien DIP Term Credit Documents on account of permitted fees and expenses incurred by the DIP Term Loan Agent in connection therewith, if any.[3]   On July 26, the Court entered the *Order (I) Authorizing and Approving the Settlement Agreement by and Between the Debtors, the Committee, and ReStore; and (II) Granting Related Relief* [Docket No. 651].

---

[3]     "Second Lien Prepetition Term Facility" means that certain first-in, last-out term loan credit facility provided under the Second Lien Prepetition Term Credit Agreement.

## **Summary of the Plan**

14.     On June 21, 2024, the Debtors and Phoenix successfully consummated the Sale Transaction, which boasted a total purchase price of approximately $174 million, and will continue Express as a going concern, meaning that many employees will continue to have jobs and many creditors will continue to have go-forward business partners.   The Plan contemplates the distribution for the benefit of Holders of Claims and Interests, funded by (i) the Distributable Proceeds of the Sale Transaction, (ii) Cash on hand, (iii) the Administrative Claims Reserve, and (iv) the proceeds of the winding down of the remainder of the Debtors' Estate following the Effective Date.   By this framework, the Plan provides a superior framework than a liquidation transaction to maximize value for the both the Debtors' Estates and Holders of Claims or Interests.

15.     The Plan classifies Holders of Claims or Interests into the below Classes for all purposes, including with respect to voting on the Plan pursuant to section 1126 of the Bankruptcy Code.   The following chart summarizes the Classes of Claims and Interests under the Plan and each Class's respective proposed treatment and voting rights:

| Class | Claim/Interest | Treatment of Claim/ Interest | Status | Voting Rights |
|---|---|---|---|---|
| Class 1 | Other Secured Claims | To the extent that each Holder of an Allowed Other Secured Claim was either not paid during the Chapter 11 Cases or not an Assumed Liability under the Purchase Agreement, unless such Holder agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim: (i)      payment in full in Cash; or (ii)      delivery of such collateral securing such Allowed Other Secured Claim; or (iii)      such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, shall receive, at the option of the applicable Debtor or Wind-Down Debtor, as applicable, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim: (i)      payment in full in Cash; or (ii)      such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claim/Interest | Treatment of Claim/ Interest | Status | Voting Rights |
|-------|----------------|------------------------------|--------|---------------|
| Class 3 | General Unsecured Claims | Except to the extent that a Holder of a General Unsecured Claim and the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, agree to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction and release of and in exchange for its Claim, its Pro Rata share of the Distributable Proceeds | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Each Intercompany Claim shall be, at the option of the Debtors, after prior consultation with the Committee, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is reasonably determined by the Debtors, after prior consultation with the Committee | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 5 | Intercompany Interests | Each Intercompany Interest shall be, at the option of the Debtors, after prior consultation with the Committee, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interest, or such other treatment as is reasonably determined by the Debtors, after prior consultation with the Committee | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 6 | Existing Equity Interests in Express | All Existing Equity Interests in Express will be cancelled and extinguished, and Holders of Existing Equity Interests in Express shall receive no recovery on account of such Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Section 510(b) Claims | Section 510(b) Claims shall be cancelled, released, and extinguished without any distribution to Holders of such Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

16.     Based on the foregoing (and as discussed in detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 3 only (the "Voting Class").  The Debtors are **not** proposing to solicit votes from Holders of Claims or Interests in Classes 1, 2, 4, 5, 6, or 7 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").  Accordingly, Holders of Claims or Interests in the Non-Voting Classes will not receive a Solicitation Package but instead will receive a Confirmation Hearing Notice, a Deemed to Accept Opt-In Form or Deemed to Reject Opt-In Form, as applicable, and a Notice of Non-Voting Status, except for Class 4 Intercompany Claims and Class 5 Intercompany Interests, which will receive neither a Solicitation Package nor a Notice of Non-Voting Status or any other type of notice in connection with the solicitation, as discussed below.

17.     The Disclosure Statement provides adequate information with respect to the Plan, ensuring that Holders of Claims entitled to vote on the Plan will receive information of a kind and in sufficient detail to make an informed judgment regarding acceptance or rejection of the Plan. The proposed schedule and procedures to confirm and consummate the Plan will move these chapter 11 cases forward in a timely manner, in accordance with the DIP Milestones as approved pursuant to the Final DIP Order while ensuring due process and providing for the procedural safeguards mandated under the Bankruptcy Code, Bankruptcy Rules, and Local Rules. Accordingly, the Debtors respectfully submit the relief requested in this Motion should be approved.

## Basis for Relief

### I.     The Court Should Approve the Adequacy of the Disclosure Statement.

#### A.     The Standard of Approval of the Disclosure Statement.

18.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1)

of the Bankruptcy Code provides, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan.

11 U.S.C. § 1125(a)(1).

19.    Courts in several circuits have stated that the primary purpose of a disclosure

statement is to provide all material information that creditors and interest holders affected by a

proposed plan need to make an informed decision regarding whether to vote for the plan.  *See, e.g.*,

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d

Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a

creditor to make an informed judgment about the Plan" (internal quotations omitted)); *Century

Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to

guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier

Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to

give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix

Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure

statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest

holders to make an informed judgment about the proposed plan and determine whether to vote in

favor of or against that plan."); *In re A. H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989)

(stating that the disclosure statement must provide "information of a kind, and in sufficient detail

. . . that would enable a hypothetical reasonable investor typical of holders of claims or interests

of the relevant class to make an informed judgment about the plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan.").

20.     "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . . "); *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *In re Congoleum Corp.*, 636 B.R. 362, 383 (Bankr. D.N.J. 2022) ("What constitutes 'adequate information' is determined on a case-by-case basis, with the ultimate determination within the discretion of the bankruptcy court." (internal quotations omitted)); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case."); *In re River Vill. Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phx. Petrol. Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

21.     In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a.     the events that led to the filing of a bankruptcy petition;

b.     the relationship of the debtor with its affiliates;

c.     a description of the available assets and their value;

d.     the debtor's anticipated future performance;

e.     the source of information stated in the disclosure statement;

f.     the debtor's condition while in chapter 11;

g.     claims asserted against the debtor;

h.     the estimated return to creditors under a chapter 7 liquidation of the debtor;

i.     the future management of the debtor;

j.     the chapter 11 plan or a summary thereof;

k.     financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.     information relevant to the risks posed to creditors under the plan;

m.     the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.     litigation likely to arise in a nonbankruptcy context; and

o.     tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).  Disclosure regarding all topics is not necessary in every case.  *See U.S. Brass*, 194 B.R. at 424; *see also Phx.*

*Petrol.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

> **B.      The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code**.

22.     The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including:

> a.      ***The Debtors' Business Operations and Capital Structure.***  An overview of the Debtors' corporate history, business operations, assets, organizational structure, and capital structure, which are described in detail in Article IV of the Disclosure Statement;
>
> b.      ***Events Leading to these chapter 11 cases.***  An overview of the events leading to the commencement of the Debtors' chapter 11 cases, which are described in detail in Article V of the Disclosure Statement;
>
> c.      ***Release and Exculpation Provisions of the Plan.***  A description of the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtors' Release, Lien Release, Third-Party Release, Exculpation, and Injunction, which are described in Article III.Q of the Disclosure Statement;[4]
>
> d.      ***Risk Factors.***  Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, which are described in Article IX of the Disclosure Statement;
>
> e.      ***Solicitation Procedures.***  A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan, which are described in Article VIII of the Disclosure Statement;
>
> f.      ***Confirmation of the Plan.***  Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, which are described in Article X of the Disclosure Statement;

---

[4]     The Debtors will seek approval of the substance and structure of the releases at the Confirmation Hearing.

g.   ***Certain United States Federal Income Tax Consequences of the Plan.*** A description of certain U.S. federal income tax law consequences of the Plan, which are described in <u>Article XI</u> of the Disclosure Statement;

h.   ***Recommendation of the Debtors.*** A recommendation by the Debtors that Holders of Claims in the Voting Class should vote to accept the Plan, stated in <u>Article XII</u> of the Disclosure Statement; and

i.   ***Questions and Answers Regarding the Disclosure Statement and the Plan.*** A list of frequently asked questions, which are described in detail in <u>Article III</u> of the Disclosure Statement.

23.   Based on the foregoing, the Debtors submit, and will demonstrate at the Disclosure Statement Hearing, that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims entitled to vote to accept or reject the Plan. Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and therefore should be approved so that the Debtors can begin the Plan solicitation process.

**C.   The Disclosure Statement Provides Sufficient Notice of Release, Exculpation, and Injunction Provisions in the Plan**.

24.   Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

25.   <u>Article X.C-F</u> of the Plan and <u>Article III.Q.6</u> of the Disclosure Statement describe in detail the entities subject an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release, Third-Party Release, exculpation provisions, and injunction provisions. <u>Article VI.L</u> of the Disclosure Statement also summarizes the appointment of the Disinterested Director to conduct an investigation with respect to potential claims or causes of action of the Debtors, if any, against any Related Party

(the "<u>Independent Investigation</u>").  <u>Article III.Q</u> of the Disclosure Statement clarifies in plain language that the releases and exculpations contemplated in the Plan are subject to the outcome of the Independent Investigation.  To the extent the Independent Investigation concludes there are any viable Claims and/or Causes of Action against certain parties, such parties will be expressly carved out of the Released Parties and Exculpated Parties, and such Claims and/or Causes of Action will be retained by the Wind-Down Debtors.  The relevant language in <u>Article X.F</u> of the Plan and <u>Article III.Q.6</u> of the Disclosure Statement is in bold, making it conspicuous to anyone who reads it.  Moreover, <u>Article X.B-E</u> of the Plan and <u>Article III.Q.3-6</u> of the Disclosure Statement describe in detail the releases provided by the Releasing Parties to the Released Parties, each as defined under <u>Article I.A</u> of the Plan, and <u>Article X.B-E</u> of the Plan and <u>Article III.Q</u> of the Disclosure Statement describe in detail the exculpation provided to Exculpated Parties under the Plan.  Each of the foregoing sections is set forth, conspicuously, in bold.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan.

## II.    Approval of Notice of the Disclosure Statement Hearing.

1.    Bankruptcy Rule 3017(a) requires that notice of the hearing to consider the proposed disclosure statement be provided to creditors and other parties in interest.  *See* Fed. R. Bankr. P. 3017(a) (providing that after a disclosure statement is filed, it must be mailed with the notice of the hearing to consider the disclosure statement and any objections or modifications thereto on no less than 28 days' notice thereof); *see also* Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement).  Additionally, Local Rule 3017-1(a) provides that, upon the filing of a disclosure statement, the proponent of the plan shall obtain hearing and objection dates from the Court and shall provide notice of those dates in accordance with Bankruptcy Rule 3017.

*See* Del. Bankr. L.R. 3017-1(a) (requiring setting the hearing date "at least thirty-five (35) days following service of the disclosure statement and the objection deadline . . . at least twenty-eight (28) days from service of the disclosure statement").

2.      The Debtors will serve all known creditors with notice of the Disclosure Statement Hearing (the "Disclosure Statement Hearing Notice") twenty-eight days before the deadline to object to the Disclosure Statement.   The Disclosure Statement Hearing Notice identifies the following:  (a) the date, time, and place of the Disclosure Statement Hearing; (b) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained; and (c) the deadline and procedures for filing objections to the approval of the Disclosure Statement.  Additionally, the Debtors will distribute copies of the Disclosure Statement to the list of all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1 (the "2002 List").   Accordingly, the Debtors submit that notice of the Disclosure Statement Hearing is adequate.

**III.    The Court Should Approve the Ballots, the Timeline, and the Forms of Notices Related to Solicitation.**

**A.      The Court Should Approve the Voting Record Date, Solicitation Mailing Deadline, and Voting Deadline.**

26.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P.  3018(a).  Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests

may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

27.     The Debtors request that the Court exercise its authority under Local Rule 3017-1 and Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish, subject to the Court's availability, (i) July 31, 2024, as the Voting Record Date; (ii) September 11, 2024 (or as soon as practicable after entry of the Order, but in no event more than five (5) business days thereafter) as the Solicitation Mailing Deadline; and (iii) October 9, 2024, at 4:00 p.m., prevailing Eastern Time, as the Voting Deadline.  Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

28.     The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims entitled to vote on the Plan, the Court require that all Holders of Claims entitled to vote on the Plan complete and submit their votes via Ballots so that such Ballots are **actually received** by the Solicitation Agent on or before the Voting Deadline.

29.     The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan at least twenty-eight (28) days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before

the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.[5]

Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed

procedures for distributing, the Solicitation Packages to the Holders of Claims in the Voting Class

and the deadline for Holders of Claims and Interests to vote to accept or reject the Plan.

**B.      The Court Should Approve the Forms of the Ballots**.

30.     Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection shall be in

writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security

holder or an authorized agent, and conform to the appropriate Official Form."

Fed. R. Bankr. P. 3018(c).   In accordance with Bankruptcy Rule 3018(c), the Debtors have

prepared and customized the Ballots.   Although based on Official Form B 314, the Ballots have

been modified to (a) address the particular circumstances of these chapter 11 cases and (b) include

certain additional information that is relevant and appropriate for Claims in the Voting Class.   The

proposed Ballot for the Voting Class is annexed as <u>Exhibit 3</u> to the Order.   The Debtors respectfully

submit that the form of the Ballots complies with Bankruptcy Rule 3018(c) and, therefore, should

be approved.

**C.      The Court Should Approve the Form and Distribution of the Solicitation Packages to Holders of Claims Entitled to Vote on the Plan**.

31.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of

allowed claims and/or equity interests upon approval of a disclosure statement, including the

court-approved plan and disclosure statement and notice of the time within which acceptances and

rejections of the plan may be filed.   Fed. R. Bankr. P. 3017(d).

---

[5]    *See* Fed. R. Bankr. P. 3017(d) (the debtor must transmit the plan, the disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).   Nonetheless, the Debtors request authority to extend the Voting Deadline in their sole discretion and without further order of the Court.

32.     In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Class with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Mailing Deadline (or as soon as reasonably practicable thereafter), the Debtors will cause the Solicitation Packages to be distributed by e-mail, where available, and/or first-class mail through the Solicitation Agent to such Holders of Claims in the Voting Class.

33.     Each Solicitation Package will include the following materials, as applicable:

   a.    a copy of the Solicitation Procedures, substantially in the form attached to the Order as <u>Exhibit 2</u>;

   b.    the applicable forms of Ballots, substantially in the forms of the Ballot attached to the Order as <u>Exhibit 3</u>, together with detailed voting instructions and instructions on how to submit the Ballots;

   c.    the Cover Letter, substantially in the form attached to the Order as <u>Exhibit 5</u>, which describes the contents of the Solicitation Package and urges Holders of Claims in the Voting Class to vote to accept the Plan;

   d.    the Confirmation Hearing Notice, substantially in the form attached to the Order as <u>Exhibit 6</u>;

   e.    the Disclosure Statement (and exhibits thereto, including the Plan), substantially in the form to be attached to the Order as <u>Exhibit 1</u>;

   f.    the Order granting the relief requested herein (without exhibits, except for the Solicitation Procedures);

   g.    a pre-addressed, postage pre-paid reply envelope;[6] and

   h.    any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Class.

---

[6]    The Debtors will provide pre-addressed, postage pre-paid reply envelopes only to those holders who receive a Ballot directly from the Debtors.

34.     The Debtors request that they be authorized to distribute the Plan, the Disclosure Statement, and the Order (without exhibits, except for the Solicitation Procedures) to Holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, via e-mail, hyperlink and/or on a flash drive, as applicable).  The Ballots, the Cover Letter, and the Confirmation Hearing Notice will be provided in electronic format for those parties receiving service by e-mail, and paper format for those parties receiving service by first-class mail.

35.     Distribution in this manner will translate into significant monetary savings for the Debtors' estates (the Plan, the Disclosure Statement, and the proposed Order, collectively, are hundreds of pages long) by reducing printing and postage costs.  Bankruptcy courts in this circuit have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs.  *See, e.g.*, *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. April 29, 2024) (conditionally authorizing the debtors to distribute solicitation packages in electronic format by email); *In re Rite Aid Corp.*, No. 23-19883 (MBK) (Bankr. D.N.J. March 28, 2024) (authorizing the debtors to distribute solicitation packages in electronic format by email); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. Sept. 26, 2023) (same); *In re Bed Bath & Beyond Inc., et al.,* No. 23-13359 (VFP) (Bankr. D.N.J. Aug. 2, 2023) (same); *In re BlockFi Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Aug. 2, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. June 9, 2023) (authorizing the debtors to distribute the plan, disclosure statement, and related documents electronically); *In re Carestream Health Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24. 2022) (authorizing the debtors to provide solicitation packages electronically); *In re The Hertz Corporation*, No. 20-11218 (MFW) (Bankr. D. Del. Apr. 22, 2021) (authorizing the debtors to provide holders of claims with a QR Code to access solicitation documents electronically instead of mailing paper

copies, except for the cover letter, applicable ballot, and Combined Hearing Notice, which were mailed); *see also In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. June 10, 2021) (authorizing the debtors to distribute solicitation documents other than the cover letter, ballot, and Combined Hearing Notice in electronic format); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Nov. 6, 2020) (authorizing the debtors to distribute solicitation documents other than the cover letter, ballot, and Combined Hearing Notice in electronic format); *In re Pier 1 Imports, Inc.* No. 20-30805 (KRH) (Bankr. E.D.V.A. June 24, 2020) (authorizing the distribution of the plan, disclosure statement, and entered order on CD-Rom or flash drive) *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D.V.A. July 3, 2018) (same); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D.V.A. Dec. 28, 2018) (same); *In re CGG Holdings (U.S.) Inc.*, No. 17-11637 (MG) (Bankr. S.D.N.Y. Aug. 29, 2017) (authorizing the debtors to give notice of their restructuring website where holders of claims can access copies of the disclosure statement and plan).

36.    Additionally, the Debtors will provide complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee (in paper format) and all parties on the Master Service List (in electronic form) as of the Voting Record Date.  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).  The Debtors will not provide Solicitation Packages to: (a) Holders of Claims that have already been paid in full during the chapter 11 cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) any party to whom the notice of the Motion and/or notice of the applicable Bar Date[7] was sent but was

---

[7]    For purposes of this Motion, "Bar Date" shall have the meaning ascribed to such term in the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)9, (II) Establishing*

subsequently returned as undeliverable without a forwarding address by the Voting Record Date; (c) the holders of Class 4 (Intercompany Claims) and Class 5 (Intercompany Interests); or (d) parties that received a Notice of Non-Voting Status, as applicable.

37.     All votes to accept or reject the Plan must be cast by using the appropriate Ballots. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a) first-class mail, in the return envelope provided with each Ballot; (b) overnight delivery; (c) personal delivery; (d) the Balloting Portal, as applicable, or (e) electronic mail, so that the Ballots are **actually** **received** by the Solicitation Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot.  Each Ballot contains detailed instructions that describe the appropriate means of Ballot submission.

### D.     The Court Should Approve the Confirmation Hearing Notice.

38.     The Confirmation Hearing Notice includes the following:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent's and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Confirmation Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto.  The Debtors will serve the Confirmation Hearing Notice on all known Holders of Claims or Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) on the Solicitation Mailing Deadline (or as soon as reasonably practicable thereafter).

---

*Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 280].

39.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).  Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Publication Notice on one occasion in the *New York Times* (national edition) and the *Financial Times* (global edition) on the Publication Deadline (or as soon as reasonably practicable thereafter).  The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Confirmation Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.  Additionally, service of the Confirmation Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**E.      The Court Should Approve the Plan Supplement Notice**.

40.     The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be Filed by the Debtors no later than October 2, 2024, or such later date as may be approved by the Court on notice to parties in interest, pursuant to Local Rule 3016-2.  The Plan Supplement may include the following materials in connection with Confirmation, as applicable:  (a) the New Corporate Governance Documents; (b) the Management Incentive Plan; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the Schedule of Retained Causes of Action; (e) the Restructuring Transactions Memorandum; (f) the Exit Facilities Documents; (g) in the event of an asset sale, the identity of the Plan Administrator; (h) the Liquidating Trust Agreement (if any); and (i) subject to

the terms of the Plan and Confirmation Order, any additional documents Filed with the Bankruptcy

Court prior to the Effective Date as amendments to the Plan Supplement. [8]

  41.  To ensure that all Holders of Claims or Interests receive notice of the Debtors' filing

of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the

Debtors file the Plan Supplement, or as soon as practicable thereafter.   Accordingly, the

Plan Supplement Notice should be approved.

  **F.**  **The Court Should Approve the Form of Notices to Non-Voting Classes**.

  42.  As discussed above, the Non-Voting Classes are not entitled to vote on the Plan.

As a result, they will not receive Solicitation Packages and, instead, the Debtors propose that such

parties receive a Notice of Non-Voting Status and applicable Deemed to Accept Opt-In Form or

Deemed to Reject Opt-In Form in addition to the Confirmation Hearing Notice.  Specifically, in

lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims

or Interests in Non-Voting Classes:

| Class | Status | Treatment |
|---|---|---|
| Class 1 | Unimpaired – Deemed to Accept | Holders of Claims that are deemed to accept the Plan are not entitled to vote.  As such, Holders of such Claims, will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as <u>Exhibit 4A</u>, and a Deemed to Accept Opt-In Form attached to the Order as <u>Exhibit 4C</u>, in lieu of a Solicitation Package. |
| Class 2 | Unimpaired – Deemed to Accept | Holders of Claims that are deemed to accept the Plan are not entitled to vote.  As such, Holders of such Claims, will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as <u>Exhibit 4A</u>, and a Deemed to Accept Opt-In Form attached to the Order as <u>Exhibit 4C</u>, in lieu of a Solicitation Package. |

---

[8] *See* Plan at Art.I.A.

| Class | Status | Treatment |
|---|---|---|
| Class 6 | Impaired - Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote.  As such, Holders of such Claims or Interests will receive, as applicable, a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4A, and a Deemed to Reject Opt-In Form in lieu of a Solicitation Package. |
| Class 7 | Impaired - Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote.  As such, Holders of such Claims or Interests will receive, as applicable, a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4A, and a Deemed to Reject Opt-In Form in lieu of a Solicitation Package. |

43.    In light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors will not provide the Holders in Class 4 (Intercompany Claims) or Class 5 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with the solicitation.

44.    The Debtors seek Court approval to permit Nominees[9], including agents thereof, to forward the Notice of Non-Voting Status and applicable Deemed to Accept Opt-In Form or Deemed to Reject Opt-In Form (or a summary thereof) to their Beneficial Holder[10] clients by voter information form ("VIF"), e-mail, phone or other customary means of communication, including an online electronic link to solicitation materials.  Similarly, the Debtors seek Court approval to permit Nominees and/or the Solicitation Agent to collect the applicable Opt-In Forms from their

[9]    "Nominee" shall mean any broker, dealer, commercial bank, trust company, savings and loan, financial institution, mailing agent, or other such party in whose name a Beneficial Holder's (as defined herein) beneficial ownership in equity interests is registered or held of record on the Beneficial Holder's behalf as of the Voting Record Date.

[10]    "Beneficial Holder" shall mean an entity that beneficially owns Class 6 Existing Equity Interests in Express as of the Voting Record Date as maintained by the applicable Nominee and Depository Trust Company.

Beneficial Holder clients by VIF, e-mail, phone, or other customary means of communication, including an electronic link to an online voting platform.

45.     Each applicable Notice of Non-Voting Status will include, among other things:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes; (c) and a disclosure regarding the settlement, release, exculpation, and injunction language set forth in <u>Article X</u> of the Plan.  Additionally, attached to the Notice of Non-Voting Status will be, as applicable, the Deemed to Reject Opt-In Form or the Deemed to Accept Opt-In Form.  The Opt-In Forms shall provide an opportunity to affirmatively opt-in to the Third-Party Release.

46.     The Debtors believe that mailing the Notices of Non-Voting Status in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.

**IV.     The Court Should Approve the Solicitation Procedures**.

47.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

48.     Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). Consistent with these requirements, the Debtors propose using the Solicitation Procedures. The Solicitation Procedures include specific voting and tabulation requirements and procedures, as described below.

A.     **Completion of Ballots**.

49.     To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Solicitation Procedures provide that the Debtors will not count a Ballot if it is, among other things, submitted by a Holder of a Claim or Interest that is not entitled to vote on the Plan or incomplete. Further, the Debtors may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

B.     **General Ballot Tabulation and Voting Procedures**.

50.     The proposed Solicitation Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes. The Debtors believe that the proposed Solicitation Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Debtors submit that the Solicitation Procedures are in the best interests of the Debtors' Estates, Holders of Claims or Interests, and other parties in interest, and that good cause supports the relief requested herein.

51.     The Debtors respectfully request that the Solicitation Agent be authorized to assist the Debtors in:   (a) distributing the Solicitation Package and Notice of Non-Voting Status; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, Notices of Non-Voting Status, and all other documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan.

52.     For purposes of serving the solicitation materials, the Debtors seek authorization to rely on the address information (for voting and non-voting parties alike) maintained by the Debtors and provided to the Solicitation Agent as of the Voting Record Date, unless an alternative address was received by the Debtors and/or the Solicitation Agent after the Voting Record Date but prior to the date that Solicitation Packages and the applicable Notice of Non-Voting Status are to be disseminated.  To that end, the Debtors seek the waiver of any obligation for the Debtors or the Solicitation Agent to conduct any additional research for updated addresses based on undeliverable solicitation materials (including undeliverable Ballots).  Furthermore, notwithstanding anything herein to the contrary, the Debtors request that neither they nor the Solicitation Agent be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity from which the notice of the Motion or other mailed notice in this case was returned as undeliverable unless the Solicitation Agent is provided with accurate addresses for such persons or entities before the Voting Record Date.

53.     The Solicitation Agent will retain all paper copies of Ballots and all solicitation-related correspondence for two (2) years following the closing of these cases, whereupon the Debtors seek authorization for the Solicitation Agent to destroy and/or otherwise dispose of (a) all paper copies of Ballots; (b) printed solicitation materials including unused copies of the Solicitation Package; and (c) all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such two (2) year period.

54.     The Debtors request that the Court authorize the Debtors and/or the Solicitation Agent, as applicable, to determine, in consultation with the Committee, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination will be final and binding absent a contrary ruling by the Court.

**V.     The Court Should Approve the Procedures for Confirming the Plan**.

     **A.     The Confirmation Hearing Date**.

55.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation.  11 U.S.C. § 1128.  Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan.  Fed. R. Bankr. P. 3017(c).  In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court establish a Confirmation Hearing Date that satisfies the milestones applicable to these chapter 11 cases.

56.     The Debtors request that the Court enter the Order establishing a Confirmation Hearing Date of October 16, 2024 at [●] [a.m./p.m.] (prevailing Eastern Time).  The Debtors further request that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than announcement of such

adjournment in open court and/or filing a notice of adjournment with the Court and serving such notice on the 2002 List.

**B.      The Court Should Approve the Procedures for Filing Objections to Confirmation of the Plan**

57.      Bankruptcy Rule 2002 requires no less than twenty-eight days' notice to all Holders of Claims of the time fixed for filing objections to and the hearing on confirmation of a chapter 11 plan.  Fed. R. Bankr. P. 2002(b), (d).  The Debtors have requested that the Court establish October 9, 2024, at 4:00 p.m. (prevailing Eastern Time), as the Confirmation Objection Deadline.

58.      The Court has discretion to reduce the time periods prescribed by Rule 2002(b).  Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1).

59.      Cause exists here to shorten the notice periods prescribed by Rule 2002(b).  The Debtors and parties in interest here are actively working to finalize a value maximizing go-forward sale process, but work remains.  Indeed, the Debtors have maintained open lines of communication with all stakeholders, including those representing the Debtors' entire capital structure, in addition to key state and federal regulatory interests and significant business counterparties, and the Debtors' landlord base.  On the other hand, the Debtors are required to maintain their Confirmation schedule pursuant to the milestones contained in the DIP Facilities, and the practical demands of the high administrative costs of these chapter 11 cases.  The Confirmation Hearing Date, and Confirmation Objection Deadline, and solicitation process proposed in this Motion balance these competing concerns.  Shortened notice periods have been approved for cause by bankruptcy courts in the Third Circuit and others.  *See, e.g. In re MVK FarmCo LLC*, No. 23-22721 (Bankr. D. Del.

Feb. 23, 2024) (23-day period); *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (Bankr. D. Del. Nov. 17, 2020) (17-day period); *In re Stearns Holdings, LLC*, No. 19-12226 (Bankr. S.D.N.Y. Sept. 26, 2019) (17-day period); *In re Vanguard Resources*, No. 19-31786 (Bankr. S.D. Tex. Jun. 12, 2019) (11-day period); *In re Sanchez Energy Corp.*, No. 19-34508 (Bankr. S.D. Tex. Apr. 9, 2020) (14-day period).

60.     The Debtors also request that the Court direct the manner in which parties in interest may object to confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  The Confirmation Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

     a.     Be in writing;

     b.     Conform to the Bankruptcy Rules and the Local Rules;

     c.     State, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve each objection; and

     d.     Be filed with the Court (contemporaneously with a proof of service) and served upon the notice parties in the Confirmation Hearing Notice on or before September 26, 2024 at 4:00 p.m. (prevailing Eastern Time).

61.     The Debtors believe that the Confirmation Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

62.     Moreover, the Confirmation Hearing and any other Confirmation Dates may be adjourned or continued from time to time by the Court or the Debtors, without further notice other than adjournments announced in open court or as indicated in any notice of adjournment filed by the Debtors with the Court.

## Non-Substantive Modifications

63.     The Debtors request authorization to make non-substantive changes, to the Plan, Disclosure Statement, Solicitation Procedures, Ballots, Solicitation Packages, Notice of Non-Voting Status, Opt-In Forms, Confirmation Hearing Notice, Cover Letter, Plan Supplement Notice, and any notice attached hereto, and any related documents without further order of the Bankruptcy Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials (including any appendices thereto) in the Solicitation Packages before distribution; *provided, however*, that the Committee and U.S. Trustee shall be provided notice of any non-typographical and grammatical changes.

## Reservation of Rights

64.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a

waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## Notice

65.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of Delaware; (b) the Committee; (c) the agents under the Prepetition Credit Facilities and counsel thereto; (d) the DIP Agents and counsel thereto; (e) the ABL Lenders and counsel thereto; the FILO Agent and counsel thereto; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the U.S. Securities and Exchange Commission; (i) the attorneys general in the states where the Debtors conduct their business operations; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

66.     No prior motion for the relief requested herein has been made to this Court or any other court.


*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order,

substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein

and (b) granting such other relief as is just and proper.

Dated:  July 31, 2024
Wilmington, Delaware

*/s/ Michael W. Yurkewicz*

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              aradovanovich@klehr.com


-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com


*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              emily.geier@kirkland.com
              nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        charles.sterrett@kirkland.com


*Co-Counsel for the Debtors and Debtors in Possession*