UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| EXPRESS, INC., ET AL. | § | CASE NO. 24-10831-KBO |
| Debtor.[1] | § | |

LOUISIANA DEPARTMENT OF REVENUE'S
OBJECTION TO CONFIRMATION OF JOINT CHAPTER 11 PLAN OF
EXPRESS, INC. AND ITS DEBTOR AFFILIATES

The Secretary of the Louisiana Department of Revenue ("LDR"), by and through undersigned counsel, appears herein to OBJECT to confirmation of the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates based on the following representations and for the following reasons:

BACKGROUND

1.

The LDR timely filed Claim No. 420 with the Claims Agent approved by this Honorable Court on June 5, 2024. Claim No. 420 was filed in the total *pre-petition amount* of $37,319.62 for

---

[1] An order has been entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, directing joint administration for procedural purposes only of the chapter 11 cases of: Express, Inc., Case No. 24-10831; Express Topco LLC, Case No. 24-10832; Express Holding, LLC, Case No. 24-10833; Express Finance Corp., Case No. 24-10834; Express, LLC, Case No. 24-10835; Express Fashion Investments, LLC, Case No. 24-10836; Express Fashion Logistics, LLC, Case No. 24-10837; Express Fashion Operations, LLC, Case No. 24-10838; Express GC, LLC, Case No. 24-10839; Express BNBS Fashion, LLC, Case No. 24-10840; UW, LLC, Case No. 24-10841; and Express Fashion Digital Services Costa Rica, S.R.L., Case No. 24-10842. The docket in **Case No. 24-10831** should be consulted for all matters affecting these cases.

the tax Corporate tax liabilities of Express, LLC (LDR Acct No. xxx6758), including only pre-petition tax ($34,309.00) in the amount and accrued pre-petition interest ($3,010.62) for the fiscal year tax period ending 01/31/2023.  LDR asserts that the total is entitled to priority treatment pursuant to 11 U.S.C. 507(a)(8); no portion of the total is for penalty or other sum that would be classified as general unsecured claim.

2.

To date, no party in interest has filed an objection to Claim No 420.  Therefore, LDR's claim is deemed allowed by the Bankruptcy Code.  While the Plan provides that priority tax claims are "unimpaired," the language within the priority tax provisions leaves that in question.

OBJECTIONS

3.

LDR objects to, and disputes, the statements that *priority taxes were paid during the case*, and to the extent they were not paid, such priority claims are to be paid by the Purchasers and are not the responsibility of the [Wind Down Debtors, Liquidating Trustee or Plan Administrator]. The Plan does not identify which tax types have been assumed by any such purchasers or which tax types were not assumed.[2]  **LDR's tax claim has <u>not</u> been paid to date.**

4.

LDR objects to the Priority Tax treatment included in the plan because it does not expressly comply with 11 U.S.C. § 1129(a)(9)(C) ("Section 1129(a)(9)(C)") and 11 U.S.C. § 511 ("Section

---

[2] Typically, taxes are assumed only going forward and the purchasers have no liability for past due taxes under the 363 sales.  LDR is left with no clear understanding from the Plan document who any such Purchasers are who may have assumed such a responsibility with respect to the LDR or the document numbers in which such matters would be disclosed.

511"). The Plan does not state that the LDR is to be paid in a lump sum on or before the effective date, or if not, that LDR will be paid post-effective date interest required under Section 1129(a)(9)(C) at the applicable non-bankruptcy rate required Section 511.[3] LDR has not agreed to any lesser treatment than that required by Section 1129(a)(9)(C). In the absence of proper treatment pursuant to the Bankruptcy Code, LDR's Claim 420 is impaired pursuant to Section 1124. LDR specifically objects to Article VI.A statement that "[e]xcept as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest…" Because the Priority Tax Provision at Article II.E. does not make reference to payment pursuant to Section 1129(a)(9)(C) including interest at the rate required under Section 511 of the Bankruptcy Code, the Plan could be argued not to allow for interest on Priority Tax Claims – that is, interest is required by the Code, and not expressly by the Plan. ***Accordingly the requirements of Section 1129(a)(9)(C) are not met.***[4]

5.

---

[3] The current applicable non-bankruptcy law rate for delinquent Louisiana tax liabilities is 11.75% per annum. *LDR Revenue Information Bulletin 24-001*: "In accordance with La. R.S. 47:1601(A)(2), the Department will collect interest on unpaid taxes at the annual rate of three points above the judicial interest rate. The judicial interest rate has been set by the Office of Financial Institutions at eight and seventy-five hundredths percent (8.75%) per annum for 2024. ***Therefore, the interest on unpaid taxes will be collected at the annual rate of eleven and seventy-five hundredths percent (11.75%) from January 1, 2024, through December 31, 2024.***" [Emphasis added]. See https://ofi.la.gov/legal/statutes-rules-policies-opinions/judicial-interest-rates/.

[4] LDR does note that there is an additional provision at Article VI.H which includes "by applicable bankruptcy and non-bankruptcy law" but this sets up three separate and unclear provisions with respect to interest.

While it is doubtful in a liquidating case[5] that installment payments are intended, the plan gives no indication of when any "regular installment payments" required by Section 1129(a)(9)(C) would commence or the time period over which they will be paid, to allow the LDR and the Court to determine if the Plan indeed meets the requirements under Section 1129.  LDR is entitled to know when payments will commence, and the frequency with which they will occur, and that the plan term shall not be more than five years from the petition date, all as required to meet the requirements of "regular installment payments" required by the bankruptcy code.  Although the Bankruptcy Code does not require any particular frequency, the LDR should be told when payment will be made or when installments will commence, and the frequency on which such installments shall be made and final payment received.  LDR is entitled to be able to determine when plan distributions are in default.  **Unless or until the requirements of Section 1129(a)(9)(C) are met, the plan should not be confirmed.**

6.

Further, LDR objects to the Administrative Expense provisions as it fails to exclude governmental entities from the requirement of having to file a "request for payment" to have an allowed administrative expense.  *See* 11 U.S.C. § 503(b)(1)(D) which expressly exempts governmental units from this requirement for taxes allowable pursuant to 11 U.S.C. §503(b)(1)(B)-(C).  Because the Plan does not comply with 11 U.S.C. § 503, the requirements of 11 U.S.C. 1129(a)(1) have not been met.

7.

---

[5] Although the Plan is not titled as a Liquidating, it mentions sales and a Liquidating Trust, which indicate same. In other places, the plan is indicated as a Waterfall Plan.

If the Sale or Sales in these cases occurred on or after 01/31/2023, then a corporate return will be due by the estate for the tax period 01/31/2024. Accordingly, the LDR may have an Administrative Tax Expense of which it is not yet aware, and may not be aware, unless or until such returns are filed. If so, those returns are already ***delinquent.*** Noting should relieve the estate of the Debtor or the respective Debtor Affiliate from responsibility of having to file such tax returns and the payment of such Administrative Tax Expenses. See 28 U.S.C. 959 & 960.

8.

A. LDR objects to the Plan to the extent it attempts to enjoin assertion of any right of set off or recoupment[6] rights the LDR may have under applicable non-bankruptcy law, as preserved by the Bankruptcy Code. Confirmation of a plan does not extinguish setoff and recoupment claims when they are timely asserted. Under § 553 of the Bankruptcy Code, setoff rights survive bankruptcy and are not affected by other sections of the Bankruptcy Code, including § 1141. IRS v. Luongo (In re Luongo), 259 F.3d 323 (5th Cir. 2001); United States on Behalf of IRS v. Norton, 717 F.2d 767772 (3rd Cir. 1983); In re Garden Ridge Corp., 338 B.R. 627, 632 (Bankr. D. Del. 2006); Carolco Television, Inc. v. National Broadcasting Co. (In re De Laurentis Entertainment Group, Inc.), 963 F.2d 1269, 1276-78 (9th Cir. 1992), *cert. denied*, 506 U.S. 918, 113 S. Ct. 330, 121 L.Ed.2d 249 (1992); Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1537 (10th Cir. 1990); Pettibone Corp. V. United States (In re Pettibone Corp.), 161 B.R. 960, 964 (N.D. Ill. 1993); Womack v. United States (In re Womack), 188 B.R. 259 (Bankr. E.D. Ark. 1995); In re

---

[6] **The Bankruptcy Code codifies and governs setoff but is silent as to recoupment.** *See In re B&L Oil*, 782 F.2d 155 (10th Cir. 1986); 11 U.S.C. § 553. **Most significantly, setoff is available in bankruptcy only when both the opposing claims arise on the same side of the time line described by the petition's filing; i.e., both must be prepetition claims or both must be post-petition claims. Recoupment is not so limited.** *See generally Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984).

Whitaker, 173 B.R. 359 (Bankr. S.D. Ohio 1994). **LDR asserts and preserves all setoff and recoupment rights on its attachment to claims at the top of the page below the caption to the extent they are not yet known, and on page 2 of the Official Claim Form where such setoff rights are known at the time the claim is filed**.[7] Like other creditors, "[t]he government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." See *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947). Governmental units also generally also have the right to assert setoff mutual post-petition debts and claims. Section 553 "preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law." In re Semcrude, L.P., 399 B.R. 388 (Bankr. D. Del. 2009)(quoting Packaging Indus. Group, Inc. v. Dennison Mfg. Co., Inc. (In re Sentinel Prod. Corp., Inc.), 192 B.R. 41, 45 (N.D. N.Y. 1996)). And "there is no basis in the Code to eliminate [a creditor's] setoff rights" asserted prior to confirmation. In re ALTA+CAST, LLC, 2004 WL 484881 (Bankr. D. Del. 2004) (creditor was entitled to preserve its setoff rights under § 553 where those rights were asserted prior to confirmation). The LDR has statutory setoff rights and recoupment rights, including but not limited to those under La. Rev. Stat. Ann. § 47:1622, *et seq*.

      B. To the extent that the Plan contains provisions which impair or eliminate the setoff and recoupment rights of LDR, the Plan does not comply with 11 U.S.C. §553. **For the avoidance of doubt, confirmation should be denied pursuant to 11 U.S.C. §1129(a)(1),** *unless the plan is expressly preserves setoff and recoupment rights.* [Further, to the extent that a refund/overpayment

---

[7] At the present time it is not known whether the LDR has any right of setoff or recoupment against the Debtor or any of the Debtor owned entities because there may be a return outstanding for the tax period ending 01/31/2024. Accordingly, such rights should not be cut off by confirmation of the plan before the LDR is even aware of the existence of same. Additionally, the plan says that the businesses are continuing in their corporate existence.

is ultimately awarded to the Debtor for any tax period for which a required return has not been filed, the claim filed by the LDR against the Debtor is entitled to be treated as a secured claim and to the extent over-secured, would be entitled to post-petition interest as provided by 11 U.S.C. 1129]. The right to setoff and recoupment are preserved within the attachment to the LDR's proof of claim.

9.

LDR objects to "Undeliverable Distributions and Unclaimed Property" provisions at Article VI.D.3. No distribution of a governmental unit should be subject to these provisions. The Bankruptcy Code is clear as to when distributions can become unclaimed and revert to the estate, and it is not in the manner set forth in these provisions. Specifically: 11 U.S.C. §347 provides that *"any money unclaimed at the expiration of the time allowed in a case under chapter 11 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section …1129 … of this title, becomes the property of the debtor;"* and 11 U.S.C. §1143 which provides that "if a plan requires presentment … of a security as a condition to participate in distributions under the plan, such action shall be taken *not later than five years after the date of the entry of the order of confirmation."* Therefore, LDR, as a creditor must claim a distribution within a certain amount of time to participate in the distribution, and that time period is not later than five years after the date of the entry of the order of confirmation absent which only then can distributions under the plan before such distributions may become property of the estate.

10.

Out of an abundance of caution, the LDR objects to the Plan to the extent it imposes Third Party Releases and injunctions against collection.

WHEREFORE, after all due delays and legal proceedings are had, the LDR prays that this Honorable Court will deny confirmation of the Plan unless or until the objections of the LR are cured by amendment of the Plan or within the proposed confirmation order.

Dated: AUGUST 28, 2024　　　　　Respectfully submitted,

      LOUISIANA DEPARTMENT OF REVENUE

By: /s/ Florence Bonaccorso-Saenz
FLORENCE BONACCORSO-SAENZ
Senior Bankruptcy Counsel, Litigation Division
Division 617 N. Third Street, 7th Floor
Post Office Box 4064 (ZIP 708214064)
Baton Rouge, Louisiana 70802
Email: Florence.Saenz@la.gov
Tel. 225-219-2083
*Government Counsel, Pursuant to*
*Local Rule* 9010-1(e)

## CERTIFICATE OF SERVICE

I, Florence Bonaccorso-Saenz, hereby certify that on AUGUST 28, 2024, I caused a true and correct copy of the Louisiana Department of Revenue's Objection to Confirmation of Joint Chapter 11 Plan filed by Express Inc. and Its Debtor Affiliates to be served via the Court's CM-ECF system on all parties having registered for electronic notice in the above entitled and numbered case.

/s/ Florence Bonaccorso-Saenz
Florence Bonaccorso-Saenz
Senior Bankruptcy Counsel, Litigation Division
Louisiana Department of Revenue