**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF FILING EXHIBIT TO THE DISCLOSURE
STATEMENT RELATING TO THE JOINT CHAPTER 11 PLAN OF
EXPRESS OLDCO WINDDOWN, INC. AND ITS DEBTOR AFFILIATES**

    **PLEASE TAKE NOTICE THAT**, on November 1, 2024, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the proposed *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express OldCo Winddown, Inc. and Its Debtor Affiliates* [Docket No. 955] (the "Disclosure Statement").

    **PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the following exhibit to the Disclosure Statement:

                 **Exhibit C** – Liquidation Analysis

    **PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Disclosure Statement Order, or related documents, you should visit the Debtors' restructuring website at: https://cases.stretto.com/express/ to obtain copies free of charge, or contact Stretto, Inc., the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent") by: (a) calling the Debtors' restructuring hotline at (855) 337-3537 (toll free) or (949) 617-1363 (international); (b) writing to Express, Inc. *et al.*, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; and/or (c) emailing ExpressBallotInquiries@stretto.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

Dated:  November 4, 2024
Wilmington, Delaware

/s/  Domenic E. Pacitti

| **KLEHR HARRISON HARVEY BRANZBURG LLP** | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

<table>
<tr><td>

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              aradvanovich@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com

*Co-Counsel for the Debtors and Debtors in Possession*

</td><td>

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              emily.geier@kirkland.com
              nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

</td></tr>
</table>

**<u>Exhibit C</u>**

**Liquidation Analysis**

**LIQUIDATION ANALYSIS FOR EXP OLDCO WINDDOWN, INC.,** *et al.*[1]

## I.    INTRODUCTION

Under the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, a bankruptcy court may not confirm a plan under chapter 11 of the Bankruptcy Code unless each holder of an allowed claim or interest in an impaired class either: (a) accepts the plan; or (b) will receive or retain property on account of such claim or interest of a value, as of the Conversion Date (defined below) of the plan, that is not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the proposed plan satisfies the "best interests of creditors" test, the Debtors, with the assistance of their advisors, have prepared the following hypothetical liquidation analysis presenting recoveries available assuming a hypothetical liquidation (the "Liquidation Analysis"), which is based upon certain assumptions discussed in the Disclosure Statement and in the accompanying notes to this Liquidation Analysis.

This Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests that may be realizable upon the disposition of assets pursuant to a hypothetical chapter 7 liquidation of the Debtors' estates. As illustrated by this Liquidation Analysis, Holders of General Unsecured Claims would receive a lower recovery in a hypothetical liquidation than they would under the Plan. Further, no Holder of a Claim or Interest would receive or retain property under the Plan of a value that is less than such Holder would receive in a hypothetical chapter 7 liquidation. Accordingly, and as set forth in greater detail below, the Debtors believe that the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

**Statement of Limitations**

The preparation of a liquidation analysis is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in this Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. This Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. This Liquidation Analysis is not intended, and should not be used, for any other purpose. The underlying financial information in this Liquidation Analysis and values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm. In addition, various liquidation decisions upon which certain assumptions are based, are subject to change. As a result, the actual amount of Claims that would ultimately be Allowed against the Debtors' Estates could vary significantly from the estimates stated herein, depending on the nature and amount of Claims asserted during the pendency of the hypothetical chapter 7 cases. Similarly, the value of the Debtors' assets in a liquidation scenario is uncertain and could vary significantly from the values set forth in this Liquidation Analysis.

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A CHAPTER 7 LIQUIDATION OF THE DEBTORS' ESTATES WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THIS LIQUIDATION ANALYSIS. THE ACTUAL LIQUIDATION VALUE OF THE DEBTORS' ESTATES IS SPECULATIVE AND RESULTS COULD VARY MATERIALLY FROM ESTIMATES PROVIDED IN THIS LIQUIDATION ANALYSIS.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Disclosure Statement Relating to the Joint Plan of EXP OldCo Winddown, Inc. and Its Debtor Affiliates* [Docket No. 955] (the "Disclosure Statement").

THIS LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE, GOOD FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE AS OF THE PLAN CONVERSION DATE.   THIS LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THIS LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THIS LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION.   NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM AGAINST OR INTEREST IN THE DEBTORS.   THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS AND INTERESTS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THIS LIQUIDATION ANALYSIS.   THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

**Basis of Presentation**

This Liquidation Analysis has been prepared assuming that the Debtors convert their current chapter 11 cases to cases under chapter 7 of the Bankruptcy Code on or about November 3, 2024 (the "Conversion Date").   Except as otherwise noted herein, this Liquidation Analysis is based upon the unaudited balance sheets of the Debtors, and those values, in total, are assumed to be representative of the Debtors' assets and liabilities as of the Conversion Date. Certain balances, including cash, and certain receipts and expenses have been projected forward or estimated as of the Conversion Date.   As noted above, the assets available to the Debtors in an actual liquidation may differ from the assets assumed to be available pursuant to this Liquidation Analysis.

In preparing this Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of the Debtors' financial statements.   In addition, this Liquidation Analysis includes estimates for Claims not currently asserted in the chapter 11 cases, but which could be asserted and Allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Claims, chapter 7 Administrative Claims such as liquidation and wind-down expenses, trustee fees, tax liabilities, and professional fees attributable to the liquidation and wind-down.   To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims that were used for purposes of preparing this Liquidation Analysis.   Therefore, the Debtors' estimate of Allowed Claims set forth in this Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distributions to be made on account of Allowed Claims and Interests under the Plan.

**Conversion Date and Appointment of a Chapter 7 Trustee**

This Liquidation Analysis assumes that on the Conversion Date, the Bankruptcy Court would appoint a chapter 7 trustee to oversee the liquidation of the Debtors' estates, during which time all of the Debtors' assets would be sold or surrendered and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with applicable law.   There can be no assurance, however, that the liquidation would be completed within a certain timeframe, nor is there any assurance that the recoveries assigned to the assets would in fact be realized.   In accordance with section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally at distressed prices) as is compatible with the best interests of parties in interest.   The Liquidation Analysis is an estimate and is subject to material change and revision in all respects, and takes a conservative approach to analyzing the value to Holders of Claims in a chapter 7 liquidation.

**Additional Global Notes and Assumptions**

This Liquidation Analysis should be read in conjunction with the following global notes and assumptions:

1.   Unaudited Financial Statements.   This Liquidation Analysis contains numerous estimates.   Except as otherwise noted herein, available recoveries are based upon the unaudited financial statements and balance sheets of the Debtors as projected as of the Conversion Date.

2. <u>Chapter 7 Liquidation Costs</u>.  The Debtors have assumed that a hypothetical chapter 7 liquidation would last approximately twelve (12) months, in order to pursue sales of substantially all remaining assets and collect receivables as well as to arrange distributions and otherwise administer and close the estates.  In an actual liquidation, the length of the wind-down process could vary significantly, thereby impacting recoveries.  Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

3. <u>Distribution of Net Proceeds</u>.  Pursuant to section 726 of the Bankruptcy Code, Allowed Administrative Claims incurred by the chapter 7 trustee, including expenses affiliated with selling the Debtors' assets, are entitled to payment in full prior to any distribution to chapter 11 Administrative Claims or Other Priority Claims.  The estimates used in this Liquidation Analysis for these expenses includes estimates for operational expenses and certain legal, accounting, and other professionals, as well as an assumed 3.0% fee based upon liquidated assets payable to the chapter 7 trustee.  Any remaining net Cash would then be distributed to creditors in accordance with applicable law.

   Under the absolute priority rule, no junior creditor at a given entity would receive any distribution until all senior creditors are paid in full, and no equity holder at such entity would receive any distribution until all creditors at such entity are paid in full.  The assumed distributions to creditors as reflected in this Liquidation Analysis are estimated in accordance with the absolute priority rule.

4. <u>Certain Exclusions and Assumptions</u>.  This Liquidation Analysis does not include detailed estimates for the tax consequences that may be triggered upon the liquidation and sale events included in the analysis.  Such tax consequences may be material.

## II.    **CONCLUSIONS**

> **THE DEBTORS HAVE DETERMINED, AS SUMMARIZED IN THE FOLLOWING ANALYSIS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE CREDITORS WITH A RECOVERY THAT IS GREATER THAN OR EQUAL TO WHAT THEY WOULD OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

*($ in millions)*

| Ref # | | Chapter 11 Plan | Chapter 7 Liquidation |
|---|---|---|---|
| 1 | **Pro Forma Cash Balance** | $22.8 | $20.3 |
| 2 | Estimated CARES Act Tax Receivable | 1.0 | – |
| 3 | Going-Out-of-Business Sale Proceeds | 0.2 | 0.2 |
| 4 | Cash Collateralized Letter of Credit Proceeds | 2.8 | 2.8 |
| 5 | Causes of Action | TBD | TBD |
| 6 | Professional Fee Retainer Return | 0.9 | 0.9 |
| 7 | Settlement Payment | 0.8 | 0.8 |
| 8 | Utility Deposits | 0.7 | 0.7 |
| | **Total Estimated Distributable Value** | **$29.2** | **$25.6** |
| 9 | Chapter 7 Trustee Fee | – | ($0.8) |
| | **Total Fees** | **–** | **($0.8)** |
| | **Proceeds Available for the Benefit of Creditors** | **$29.2** | **$24.9** |
| | **Administrative and Priority Claims** | | |
| 10 | 503(b)(9) Claims | (5.1) | (5.1) |
| | **Total Administrative and Priority Claims** | **($5.1)** | **($5.1)** |
| | **Proceeds Available for the Benefit of General Unsecured Creditors** | **$24.1** | **$19.8** |
| | **Estimated Recoveries to Creditors** | | |
| 11 | Estimated Priority Claims | $5.1 | $5.1 |
| | Priority Claim Payments | (5.1) | (5.1) |
| | **Remaining Priority Claim Balance** | **–** | **–** |
| | *Recovery to Priority Creditor Class* | *100.0%* | *100.0%* |
| 12 | Estimated General Unsecured Claims | $206.7 | $206.7 |
| | Proceeds Available for the Benefit of Creditors | (24.1) | (19.8) |
| | **Remaining General Unsecured Claim Balance** | **$182.6** | **$186.9** |
| | *Recovery to General Unsecured Creditor Class* | *11.7%* | *9.6%* |

**Notes**

1. The pro forma cash balance assumes an Effective Date of December 16, 2024 in the Chapter 11 Plan case. The Chapter 7 Liquidation case assumes the cases convert on November 3, 2024. The pro forma cash balance is comprised of the forecast ending cash balance as of November 2, 2024, which is then reduced for operating disbursements through the Wind Down period. The Chapter 7 Liquidation case assumes elevated professional fees due to the lack of knowledge and relationships held by the Chapter 7 Trustee (and other professionals) with key counterparties that will be required to effectuate the wind down of the Estate, offset by the exclusion of a post-effective date budget funding requirement.

2. Estimated CARES Act Tax Receivable represents a potential federal tax receivable owed to the Estate, expected to be recovered after 2024; the Chapter 7 Liquidation case assumes zero recovery due to the expedited wind down of the Estate

3. Going-Out-of-Business Sale Proceeds includes proceeds from liquidating stores, UpWest inventory, FF&E, and augment sales; the Chapter 7 Liquidation case assumes lower recoveries due to an expedited liquidation and auction of residual UpWest inventory.

4. Represents proceeds from cash collateralized L/Cs that are expected to be cancelled.

5. For purposes of the Liquidation Analysis, no values have been ascribed to any potential litigation.

6. Represents the return of Debtor professional fee retainer.

7. Represents negotiated settlement payment with vendor.

8. Utility Deposits represent funds owed to the estate by utility providers, expected to be received in the post effective date period.

9. Trustee fees include all fees paid to the Trustee by the Debtors, consistent with the fee structure set forth in the Bankruptcy Code. The Trustee fee is estimated at 3% of all distributions to creditors from gross asset proceeds (including cash), inclusive of payments of chapter 7 and chapter 11 administrative claims and all prepetition claims. See 11 U.S.C. § 326(a)

10. 503(b)(9) claims represent the balance of merchandise and non-merchandise 503(b)(9) claims not assumed by Phoenix.

11. Represents Classes 1-2 (Other Secured Claims and Other Priority Claims).

12. Represents any Claim, other than a Secured Claim, that is not an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), a Tax Priority Claim, an Other Secured Claim, an Other Priority Claim, a DIP Claim, a Prepetition Credit Agreement Claim, an Intercompany Claim, or a Section 510 Claim.