## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on November 6, 2024, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. 969] (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and Its Debtor Affiliates* [Docket No. 953] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and Its Debtor Affiliates* [Docket No. 955] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Bankruptcy Court on December 4, 2024 [Docket No. [●]] (the "Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement includes current drafts of the following documents (certain of which continue to be negotiated and finalized pursuant to the terms of the Plan by the Debtors and the Committee, as applicable, and, to the extent altered, amended, modified, or supplemented in any material respect, will be filed in substantially final form on or prior to the Effective Date):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

| **Exhibit A** | Schedule of Retained Causes of Action |
| **Exhibit B** | Wind Down Transactions Memorandum |
| **Exhibit C** | Schedule of Assumed Executory Contracts |
| **Exhibit D** | Identity of Plan Administrator |
| **Exhibit E** | Identities of the Members of the Wind-Down Debtors Oversight Committee |
| **Exhibit F** | Plan Administrator Agreement |

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights, with the consultation or consent of any applicable counterparties to the extent required under the Plan, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan; *provided* that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court. The final version of any such document may contain material differences from the version filed herewith.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider confirmation of the Plan will commence on **December 17, 2024, at 10:30 a.m., (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Confirmation Hearing") before the Honorable Chief Karen B. Owens, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, Fifth Floor, Courtroom #3, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **December 11, 2024, at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). Any objection to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) confirm to the Bankruptcy Rules and the Local Rules; (c) state with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve each objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the notice parties in the Confirmation Hearing Notice on or before December 11, 2024 at 4:00 p.m. (prevailing Eastern Time):

| Co-Counsel to the Debtors | |
|---|---|
| **KIRKLAND & ELLIS LLP**<br>Attn: Joshua A. Sussberg, P.C.<br>Attn: Emily E. Geier, P.C.<br>Attn: Nicholas M. Adzima<br>601 Lexington Avenue<br>New York, New York 10022<br>jsussberg@kirkland.com<br>emily.geier @kirkland.com<br>nicholas.adzima@kirkland.com<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>Attn: Charles B. Sterrett<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>charles.sterrett@kirkland.com | **KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Attn: Domenic E. Pacitti (DE Bar No. 3989)<br>Attn: Michael W. Yurkewicz (DE Bar No. 4165)<br>Attn: Alyssa M. Radovanovich (DE Bar No. 7101)<br>919 North Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>dpacitti@klehr.com<br>myurkewicz@klehr.com<br>aradovanovich@klehr.com |

| U.S. Trustee |
|---|
| **THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE**<br>Attn: Richard Schepacarter<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Richard.Schepacarter@usdoj.gov |

| *Counsel to the Committee* |
|:---:|
| **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>Attn:  Adam Rogoff<br>Attn:  Robert Schmidt<br>Attn:  Nathaniel Allard<br>1177 Avenue of the Americas<br>New York, New York 10036<br>arogoff@kramerlevin.com<br>rschmidt@kramerlevin.com<br>nallard@kramerlevin.com<br><br>-and-<br><br>**SAUL EWING LLP**<br>Attn:  Luke Murley<br>1201 North Market Street, Suite 2300<br>Wilmington, Delaware 19801<br>luke.murley@saul.com |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost**, you should contact Stretto, Inc., the Debtors' claims, noticing and solicitation agent in the chapter 11 cases (the "Solicitation Agent") by: (a) visiting the Debtors' restructuring website https://cases.stretto.com/express/, (b) writing to the Solicitation Agent at Express, Inc., et al. Claims Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602, (c) emailing the Solicitation Agent at ExpressBallotInquiries@stretto.com (with "In re Express, Inc. - Solicitation Inquiry" in the subject line), or (d) calling the Solicitation Agent at (855) 337-3537 (toll free) or (949) 617-1368 (international).  You may also obtain copies of any pleadings filed with the Bankruptcy Court for free at the Debtors' restructuring website, https://cases.stretto.com/express/, or the Bankruptcy Court's website, https://www.deb.uscourts.gov/, in accordance with the procedures and fees set forth therein.

Dated:  December 4, 2024
Wilmington, Delaware

/s/ Domenic E. Pacitti

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:          dpacitti@klehr.com
                    myurkewicz@klehr.com
                    aradovanovich@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:          mbranzburg@klehr.com

*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                    emily.geier@kirkland.com
                    nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Schedule of Retained Causes of Action**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SCHEDULE OF RETAINED CAUSES OF ACTION**

Article IV of the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* dated November 1, 2024 [Docket No. 953] (as may be amended, modified, or supplemented, the "Plan"),[2] provides that the Retained Causes of Action shall remain with the Debtors and shall immediately vest with the Wind-Down Debtors as of the Effective Date.

The Debtors, reserve all rights, in a manner acceptable to the Committee (with the Committee's consent not to be unreasonably withheld) to amend, revise, or supplement this Schedule, and any of the designations contained herein, at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

**No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in this Schedule of Retained Causes of Action, the Schedules, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Wind-Down Debtors and/or, if applicable, the Liquidating Trust, will not pursue any and all available Causes of Action against it. The Wind-Down Debtors and, if applicable, the Liquidating Trust, expressly reserve all rights to prosecute any and all Claims and Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article X of the Plan. Unless any Cause of Action against a Released Party is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, and/or, if applicable, the Liquidating Trust, on behalf of the Debtors and Wind-Down Debtors, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine,**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the consummation of the Wind-Down Transactions.**

The Wind-Down Debtors and, if applicable, the Liquidating Trust, expressly reserve their rights with respect to all claims and Causes of Action (other than those against Released Parties), including the following, which such list is illustrative, not exhaustive:

1.      All Causes of Action against any Non-Released Parties,[3] including, without limitation, any claims or Causes of Action for breach of fiduciary duty and any other claims or Causes of Action arising from (i) any actual or contemplated pre-petition transactions, events or relationships, (ii) any action or inaction in connection with such transactions, events or relationships and (iii) any other misconduct.

2.      All Causes of Action relating to any and all Insurance Contracts and insurance policies, including the D&O Liability Insurance Policies, to which the Debtors are a party or pursuant to which the Debtors have any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, fidelity bond issuers or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

3.      All Causes of Action relating to any and all tax obligations to which the Debtors are a party or pursuant to which the Debtors have any rights whatsoever, including, without limitation, against or related to all entities that owe or that may in the future owe money related to tax refunds to the Debtors.  The Debtors expressly reserve all Causes of Action, including potential tax refund, reimbursement of overpayments resulting from ordinary course payments or payments of any filed proofs of claim, and any rights arising under section 505 of the Bankruptcy Code.

4.      All Causes of Action against or related to all entities (other than Released Parties) that owe or that may in the future owe money to the Debtors, regardless of whether such entity is expressly identified in the Plan except to the extent such entity is a Released Party.  The Wind-Down Debtors or the Liquidating Trust, as applicable, expressly reserve all Causes of Action against or related to all entities who assert or may assert that the Debtors owe money to them.  The claims and Causes of Action reserved include without limitation Causes of Action against vendors, suppliers of goods and services, customers or any other parties, except to the extent such party is a Released Party or to the extent such claims and Causes of Action were acquired by the Purchasers pursuant to the Sale Transaction Documentation:

---

[3]      *"Non-Released Party"* means all former directors, officers, managers, employees, attorneys, financial advisors, consultants, or other professionals or other advisors of the Debtors who did not serve as such director, officer, manager, employee, attorney, financial advisor, consultant, or other professional or other advisor of the Debtors on or after the Petition Date.

a. for overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff; or

b. for (i) wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (ii) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (iii) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party; (iv) for any liens, including mechanics', artisans', material mens', possessory or statutory liens held by the Debtors; (v) for counter-claims and defenses related to any contractual obligations; (vi) for any turnover actions arising under Bankruptcy Code sections 542 or 543; and (vii) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property or any business tort claims.

5.      All Causes of Action based in whole or in part upon any and all postings of a security deposits, adequate assurance payment, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, adequate assurance payment, or any other type of deposit, prepayment or collateral is specifically identified herein.

6.      All Causes of Action based in whole or in part upon the enforcement of the terms of the Sale Transaction Documentation or the Plan.

## **Exhibit B**

**Wind-Down Transactions Memorandum**

[*To come*]

**<u>Exhibit C</u>**

**Schedule of Assumed Executory Contracts**

[*To come*]

**Exhibit D**

**Identity of Plan Administrator**

### Identity of Plan Administrator

Pursuant to the Plan, the Official Committee of Unsecured Creditors (the "Committee"), in consultation with the Debtors, selected Tracy L. Klestadt to serve as the Plan Administrator.

Mr. Klestadt has been practicing in the fields of bankruptcy, workouts, corporate reorganizations and commercial law for 38 years, and has been involved in many prominent national and local cases representing institutional, corporate and individual clients involving a wide variety of industries. Mr. Klestadt has represented parties on virtually all possible sides of bankruptcy cases - debtor, secured creditor, unsecured trade creditor, creditors' committees, landlords, equipment lessors and others. As a result, he brings a unique, practical business perspective to resolving difficult situations, maximizing asset valuations and minimizing losses.

During these Chapter 11 Cases (as defined in the Plan), Mr. Klestadt represented one of the Committee members.

Mr. Klestadt has previously served as a plan administrator or liquidation trustee, including in the following cases:

*Evergreen Gardens Mezz LLC, et al.*, United States Bankruptcy Court, Southern District of New York, Case no. 21-10335 (MG) – served as Plan Administrator for multi-building apartment complex surrendered to secured creditor.

*Choxi.com, Inc.,* United States Bankruptcy Court, Southern District of New York, Case no. 16-13131 (MEW) – served as Plan Administrator (after representing the Debtor) of internet retail business.

*Alliance Bancorp*, United States Bankruptcy Court, District of Delaware, Case no. 0710942 (CSS) – served as the Chapter 7 liquidation trustee, *elected* by the creditors in the case to replace the appointed panel trustee.

*Legacy Healthcare LLC*, United States Bankruptcy Court, Western District of New York, 05-11270-MJK – served as liquidation trustee pursuant to a confirmed plan for 5 nursing homes and their individual debtor principal.

In addition to the above assignments, Mr. Klestadt's bankruptcy case experience over the years includes the following:

- Conflicts counsel for the Official Committee of Unsecured Creditors of LatAm Airlines S.A. et al.
- Conflicts counsel for the Official Committee of Unsecured Creditors of The Great Atlantic & Pacific Tea Company, Inc. et al.
- Counsel to China Fishery Group (Cayman) Limited and affiliates in their Chapter 11 case and multinational insolvency matters.

- Official Committee of Unsecured Creditors of Rienzi & Sons, Inc. (Italian food importer and distributor)
- Former partners of Dewey & LeBoeuf LLP, Heller Ehrman LLP and Thelen LLP in their bankruptcy cases.
- AOF Imaging Technology (US) Ltd., the largest trade creditor in the Chapter 11 case of Eastman Kodak Company.
- Several investor "clawback" defendants (individual and fund) in the SIPA case of Bernard L. Madoff Investment Securities LLC.
- Chair of the Official Committee of Unsecured Creditors of Extended Stay, Inc., a multi-billion dollar hotel chain.
- Official Committee of Unsecured Creditors of Dreier LLP, a 250 attorney law firm in its chapter 11 case resulting from the alleged criminal activities of its sole equity holder, Marc Drier.
- Coudert Brothers LLP, a former major international law firm, in its chapter 11 case in the Southern District of New York.
- The largest unsecured creditor and Co-Chair of the Creditors' Committee in the Hartmarx Corporation chapter 11 case in Chicago.
- Conflicts Counsel in the Bayou Group chapter 11 cases.
- Air America Radio (Piquant LLC), in its chapter 11 case in the Southern District of New York.
- Sypris Technologies, Inc., as the largest trade creditor and member of the Creditors' Committee in the Dana Corporation chapter 11 case, and Textron Fastening Systems, Inc. in the Delphi Corporation case, both in the auto parts industry.
- Tender Loving Care Health Care Services, Inc., a $250 million home health care company, in its chapter 11 case. Creditors recovered 100% of their claims plus interest.
- Several creditors in the chapter 11 cases of Lehman Brothers Holdings, Inc., Enron Corporation, WorldCom, Inc., PSInet, Inc., and Adelphia Communications Corporation.

Prior to founding his own firm in February 1995, Mr. Klestadt practiced with the bankruptcy group of LeBoeuf, Lamb, Greene & MacRae, L.L.P., a national law firm. Mr. Klestadt graduated from the University of Chicago Law School in 1986, and from Columbia University, majoring in Economics, in 1983. He is admitted to practice in the States of New York and New Jersey, the U.S. Court of Appeals for the Second Circuit, and the U.S. District and Bankruptcy Courts, Southern and Eastern Districts of New York and District of New Jersey. He has been recognized by "New York Metro Super Lawyers" each year from 2007 through 2024, and was named a Super Lawyer "Top 100" New York City attorney in 2023 and 2024. His law firm has been recognized by Chambers in its New York Spotlight Guide in 2024 and 2025.

**<u>Exhibit E</u>**

**Identities of the Members of the Wind-Down Debtors Oversight Committee**

| Wind-Down Debtors Oversight Committee |
|---|
| 1.    Jorge Chacon (Attn: Bevin Allen Pike, Esq., Capstone Law APC) |
| 2.    Manchu Times Fashion Limited (Attn: Michael Durbin) |
| 3.    Motives International (Hong Kong) Limited and Motives International Limited (Attn: Corey Baggett) |

## **Exhibit F**

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "**Agreement**") is made this [●] day of December, 2024, by and among EXP OldCo Winddown, Inc. and its affiliated debtors in the Chapter 11 Cases (each a "**Debtor**" and, collectively, the "**Debtors**" or "**Wind-Down Debtors**," as applicable), and Tracy L. Klestadt (the "**Plan Administrator**"), in accordance with the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* as the same may from time to time be amended or modified in accordance with the terms thereof (the "**Plan**").[6]

## RECITALS

**WHEREAS,** on the Petition Date of April 22, 2024, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

**WHEREAS,** on May 3, 2024, the Office of the United States Trustee appointed the official committee of unsecured creditors in the Chapter 11 Cases (the "**Committee**");

**WHEREAS,** the Plan contemplates that a Plan Administrator will be appointed as of the Effective Date to administer the Plan in accordance with the terms of the Plan and this Agreement and to take such other actions as may be authorized under the Plan and this Agreement;

**WHEREAS,** the Plan provides that the Plan Administrator will, among other things, retain, preserve, and distribute certain assets of the Wind-Down Debtors for the benefit of the Wind-Down Debtor Beneficiaries in accordance with their respective priorities under the Bankruptcy Code;

**WHEREAS,** the Plan was confirmed by the Bankruptcy Court on [●] [●], 2024 and became effective on [●] [●], 2024 (the "**Effective Date**");

**WHEREAS,** this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan; and

**WHEREAS,** Tracy L. Klestadt has been selected by the Committee in consultation with the Debtors, and has agreed to serve as the Plan Administrator in accordance with this Agreement and the Plan.

**NOW, THEREFORE,** in consideration of the foregoing and the covenants and agreements set forth herein, as well as the relevant provisions of the Plan, the parties hereto agree as follows:

---

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

# ARTICLE I

## ACCEPTANCE AND APPOINTMENT; FIDUCIARY STATUS

**Section 1.1      Acceptance and Appointment**. Tracy L. Klestadt hereby (a) accepts appointment as the Plan Administrator as of the Effective Date and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, orders of the Bankruptcy Court, and applicable law, in each case, on and after the Effective Date. Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to his or her position as such.

**Section 1.2      Fiduciary**. On and after the Effective Date, the Plan Administrator shall be the sole director and sole officer of each of the Wind-Down Debtors and the exclusive representative of the Estates of the Wind-Down Debtors. The Plan Administrator shall perform its obligations consistent with the Plan, this Agreement and applicable orders of the Bankruptcy Court. Pursuant to the Plan, the Plan Administrator shall act in a fiduciary capacity on behalf of the interest of all Holders of Claims and Interests that will receive distributions pursuant to the Plan.

# ARTICLE II

## GENERAL POWERS, RIGHTS AND OBLIGATIONS
## OF THE PLAN ADMINISTRATOR

**Section 2.1      General Powers**. On and after the Effective Date, subject in each instance to the terms and conditions of the Plan, the Confirmation Order and any further order of the Bankruptcy Court, the Plan Administrator shall have the following rights, powers, duties and responsibilities:

(a)      Except as otherwise provided in the Plan, the Confirmation Order or in this Agreement, the Plan Administrator shall control and exercise authority over Wind-Down Debtor Assets, over the acquisition, management and disposition thereof and over the management and conduct of the affairs of the Wind-Down Debtors. The Plan Administrator will be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. For the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, the powers and authority of the Plan Administrator shall in all respects be subject to the terms of the Plan and Confirmation Order. The Plan Administrator shall execute all agreements and other documents on behalf of the Wind-Down Debtors with the signature "as Plan Administrator".

(b)      The Plan Administrator shall have complete control over the day-to-day decisions and operations of the Wind-Down Debtors except as specifically provided for in the Plan or this Agreement. To the extent the Wind-Down Debtors Oversight Committee and Plan Administrator disagree regarding a proposed action by, or course of conduct for, the Wind-Down Debtors that is expressly subject to the consent of the Wind-Down Debtors Oversight Committee

2

as specifically provided under the Plan or this Agreement, the matter may be brought via motion before the Bankruptcy Court for determination. The party seeking such Bankruptcy Court determination shall certify that the parties met and conferred (or the moving party unsuccessfully pursued a meet and confer) regarding such proposed action or course of conduct in good faith and were unable to reach resolution. The Bankruptcy Court shall retain jurisdiction regarding any such dispute.

(c)     In connection with the management of the Wind-Down Debtors and implementation of the Plan on behalf of the Wind-Down Debtors and the Wind-Down Debtor Beneficiaries, the duties and powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and Wind-Down the business and affairs of the Wind-Down Debtors, all without the need for further order of the Bankruptcy Court, including, but not limited to:

(i)      implementing the Wind-Down and making distributions contemplated by the Plan;

(ii)     marshalling, collecting, marketing for sale, liquidating and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

(iii)    overseeing the accounts of the Debtors and the Wind-Down Debtors and the Wind-Down and dissolution of the Debtors and the Wind-Down Debtors, including effectuating the transactions described in the Wind-Down Transactions Memorandum;

(iv)     implementing, pursuing, and adhering to the terms of the Plan, the Confirmation Order, the Sale Transaction Documentation including the Purchase Agreement and the Sale Order, and any Definitive Documents related thereto;

(v)      receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtors to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtors to invest any moneys held as Wind-Down Debtor Assets;

(vi)     opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtors, including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors;

(vii)    entering into any agreement or executing any document or instrument required by or consistent with the Plan or Confirmation Order, and performing all obligations thereunder;

3

(viii)   protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Retained Causes of Action) vested in the Wind-Down Debtors by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(ix)   reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(x)   seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(xi)   retaining professionals, disbursing agents, and other agents, independent contractors, and third parties on behalf of the Wind-Down Debtors, the Plan Administrator and/or the Wind-Down Debtors Oversight Committee, and paying the reasonable compensation thereof;

(xii)   paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

(xiii)   investigating, reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Retained Causes of Action, subject to the consent of the Wind-Down Debtors Oversight Committee;

(xiv)   reviewing and compelling turnover of the Debtors or the Wind-Down Debtors' property;

(xv)   calculating and making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan;

(xvi)   withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other Laws of the United States or of any state or political subdivision thereof;

(xvii)   in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases, and the

4

Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtors;

(xviii) making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtors, and filing tax returns for the Debtors, the Wind-Down Debtors, or the Liquidating Trust pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtors, as applicable; *provided, however*, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(xix) abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(xx) seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(xxi) establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtors as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtors;

(xxii) if the Plan Administrator deems appropriate, seeking to establish a bar date for filing proofs of Interest in any Debtor or otherwise to determine the holders and extent of Allowed Interests in any Debtor;

(xxiii) purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(xxiv) undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the

Debtors', the Wind-Down Debtors', or the Plan Administrator's duties under the Plan, including monthly and quarterly reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(xxv)  retaining, terminating, appointing, hiring, or otherwise employing employees, personnel, management, and directors at any of the Wind-Down Debtors to the extent necessary to carry out the purposes of the Plan, including, without limitation, to address any disputes between the Wind-Down Debtors;

(xxvi)  exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and the Purchase Agreement, and the Plan Administrator Agreement; and

(xxvii)  taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtor.

(d)  All Cash or other property held or collected by the Wind-Down Debtors shall be used solely for the purposes contemplated by the Plan and this Agreement.

(e)  The Plan Administrator shall not authorize the Wind-Down Debtors to enter into or engage in any trade or business or use or dispose of any Wind-Down Debtor Assets in furtherance of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Plan and for the benefit of the Wind-Down Debtor Beneficiaries.

(f)  From and after the Effective Date, the Plan Administrator, on behalf of the Wind-Down Debtors, shall be solely authorized, with respect to those Claims or Interests which are not Allowed hereunder or by Court order, to review, and where appropriate, allow or object to Claims and (if applicable) Interests, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtors. Pursuant to the Plan, the Wind-Down Debtors reserve the right to seek an order of the Bankruptcy Court extending the Claims Objection Deadline.

(g)  When all Disputed Claims have become Allowed or disallowed, all Retained Causes of Action have been pursued, settled, resolved or abandoned, and all remaining Cash has been distributed in accordance with the Plan (or the Plan Administrator otherwise determines in its reasonable business judgment that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete its duties), the Plan Administrator (with the consent of the Wind-Down Debtors Oversight Committee) shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in

accordance with the Bankruptcy Code and the Bankruptcy Rules. Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

**Section 2.2**    **Pursuit and Resolution of Causes of Action.** Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Wind-Down Debtors shall, with the consent of the Wind-Down Debtors Oversight Committee, have the right to pursue or not to pursue, compromise or settle any dispute with respect to the Wind-Down Debtor Assets (including the Retained Causes of Action). On and after the Effective Date, the Wind-Down Debtors may, without further Bankruptcy Court approval but with the consent of the Wind-Down Debtors Oversight Committee, commence, litigate, and settle any Retained Causes of Action or Claims relating to any Wind-Down Debtor Assets transferred to the Wind-Down Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors on or after the Effective Date, except as otherwise expressly provided herein or in the Plan. The Wind-Down Debtors shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code. In pursuing any Claim, right, or Cause of Action, including the Retained Causes of Action, the Wind-Down Debtors and the Liquidating Trust, as applicable, shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under section 546 of the Bankruptcy Code. For the avoidance of doubt, the Plan Administrator may seek (but is not required to seek or obtain) Bankruptcy Court approval of any settlement of any Retained Causes of Action.

**Section 2.3**    **Retention of Attorneys and Other Professionals by Plan Administrator**. The Plan Administrator shall have the right to retain the services of attorneys, accountants, consultants and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties, including any professional employed by the Debtors or Committee in the Chapter 11 Cases, without notice or approval of the Bankruptcy Court. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors upon the submission of statements to the Plan Administrator without notice or approval of the Bankruptcy Court. Effective as of the Effective Date, [●] shall be counsel to the Plan Administrator.

**Section 2.4**    **Privileges**. On the Effective Date, any attorney client privilege, work product protections, or other privilege or immunity held by any of the Debtors, including any predecessors, committee or sub-committees, or other designated Entities or Persons, to the extent that it is related to the Retained Causes of Action, shall vest in and be succeeded to by the Wind-Down Debtors. The Plan Administrator, on behalf of the Wind-Down Debtors, shall have exclusive authority to waive or not waive the Debtors' and Wind-Down Debtors' privileges in its sole discretion. For the avoidance of doubt, the Plan Administrator's receipt of such information (or the transfer of any privileged books and records provided to the Plan Administrator) shall not

waive any privileges and such privileges are fully preserved. Nothing herein or in the Plan shall preclude the Wind-Down Debtors Oversight Committee from obtaining information reasonably necessary to perform its obligations set forth in the Plan or this Agreement, nor shall the Wind-Down Debtors Oversight Committee's receipt of privileged information from the Plan Administrator be deemed to waive any privilege otherwise applicable and belonging to the Plan Administrator and/or the Wind-Down Debtors. The Committee and its members and professionals shall be permitted to share any work product, analysis or discovery obtained relating to the Retained Causes of Action with the Plan Administrator, the Wind-Down Debtors Oversight Committee, and its and their respective advisors, without waiver of any privileges.

   **Section 2.5    Cooperation and Access to Information**. On and after the Effective Date, the Wind-Down Debtors shall maintain documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors, subject to the approval of the Wind Down Debtors Oversight Committee (not to be unreasonably withheld). The Debtors and Wind-Down Debtors, and any directors and officers that are Released Parties, as applicable, shall use their commercially reasonable best efforts to provide cooperation necessary to maximize the value of the Retained Causes of Action and any Claims or Causes of Action against the Non-Released Parties, including, without limitation (i) providing (or directing third parties to provide) the Plan Administrator and its professionals with full access to the Debtors' and Wind-Down Debtors' books, records, and other documents that are relevant to the Retained Causes of Action (including privileged documents and materials insofar as such documents and materials are relevant to the Retained Causes of Action), (ii) providing the Plan Administrator and its professionals with reasonable access to employees and agents of the Debtors and Wind-Down Debtors (including, for the avoidance of doubt, the commercially reasonable best efforts from any directors or officers that are "Released Parties" under this Plan to cooperate), as applicable, for fact finding, consultation, interviews, and as witnesses (including as needed to authenticate documents where appropriate) that are relevant to the Retained Causes of Action, (iii) taking commercially reasonable measures to retain documents relevant to the Retained Causes of Action, consistent with the "Document Retention" provision in the Plan, (iv) providing commercially reasonable assistance to maximize the value of the Retained Causes of Action and Claims and Causes of Action against the Non-Released Parties, as reasonably determined by the Committee, the Plan Administrator, or any of their respective professionals.

   In connection with this engagement, upon reasonable request, the Plan Administrator shall have complete and full access to all company information that the Plan Administrator deems appropriate. It is understood that the Plan Administrator (a) is relying solely upon the information supplied by the Debtors and their representatives without assuming any responsibility for independent investigation or verification thereof, and (b) shall have the absolute and unconditional right to rely on the information provided by the Debtors and their representatives and shall not incur any liability by relying on such information.

   The Plan Administrator shall be permitted, in his or her discretion with the consent of the Wind-Down Debtors Oversight Committee to abandon, destroy or otherwise dispose of any books and records of the Debtors and/or Wind-Down Debtors that the Plan Administrator deems not necessary for the continued administration of the Plan or Wind-Down of the Wind-Down Debtors,

or required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same.

Section 2.6    **Potential Conflicts**. Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of their duties under this Agreement, the issue shall first be brought to the attention of the Wind-Down Debtors Oversight Committee, and then to the Bankruptcy Court for consideration, if bringing to the Bankruptcy Court's attention is deemed appropriate by either the Plan Administrator or the Wind-Down Debtors Oversight Committee.

Section 2.7    **Liquidating Trust**. The Plan Administrator, in his or her discretion (subject to the terms of the Plan and with the consent of the Wind-Down Debtors Oversight Committee) shall have the right to establish a liquidating trust, either before or after the Effective Date, to the extent the Plan Administrator determines that a liquidating trust would more efficiently wind down the Estates. The rights of the Wind-Down Debtors Oversight Committee shall equally apply with respect to a liquidating trust in the event a liquidating trust is formed.

## ARTICLE III

## THE WIND-DOWN DEBTORS OVERSIGHT COMMITTEE

Section 3.1    **Formation and Membership of the Wind-Down Debtors Oversight Committee**. An oversight committee (the "**Wind-Down Debtors Oversight Committee**") shall be formed as of the Effective Date to oversee certain actions of the Plan Administrator as set forth in and pursuant to the terms of the Plan and this Agreement and shall consist of three members selected by the Committee that are willing to serve on the Wind-Down Debtors Oversight Committee. Vacancies on the Wind-Down Debtors Oversight Committee shall be filled by a Person designated by the Plan Administrator, with the consent of the remaining member or members of the Wind-Down Debtors Oversight Committee. The Plan Administrator shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Debtors Oversight Committee for cause or an order otherwise reconstituting the Wind-Down Debtors Oversight Committee for cause.

Section 3.2    **Term of Service**. Upon the earlier to occur of (a) the completion of all the Plan Administrator's duties, responsibilities and obligations under the Plan and this Agreement, and (b) dissolution of all of the Wind-Down Debtors in accordance with the Plan, the Wind-Down Debtors Oversight Committee shall be automatically disbanded and its members shall have no further duties, responsibilities and obligations in connection with the Chapter 11 Cases or the Plan and its implementation.

Section 3.3    **Reporting to the Wind-Down Debtors Oversight Committee**. After the Effective Date, and until the Wind-Down Debtors Oversight Committee is disbanded, the Plan Administrator shall provide the Wind-Down Debtors Oversight Committee with a copy of each operating report filed with the Bankruptcy Court on behalf of the Wind-Down Debtors. Nothing herein or in the Plan shall preclude the Wind-Down Debtors Oversight Committee from reasonably requesting additional information from the Plan Administrator in the exercise of the Wind-Down Debtors Oversight Committee's duties under the Plan or this Agreement. Any

9

amendments or modifications to the Wind-Down Budget shall require the consent of the Wind-Down Debtors Oversight Committee.

**Section 3.4     Fiduciary Responsibilities**. The members of the Wind-Down Debtors Oversight Committee shall maintain the same fiduciary responsibilities as the Plan Administrator.

**Section 3.5     Potential Conflicts.** In the event that any matter under review or consideration by the Wind-Down Debtors Oversight Committee may involve a conflict of interest with respect to any member of the Wind-Down Debtors Oversight Committee, such member shall disclose to the other members such potential conflict and either (a) voluntarily recuse itself from participating in discussions and voting on the matter, or (b) be excluded from voting on such matter by a unanimous vote of the other members. In the event there is a disagreement regarding whether a matter involves a conflict of interest, such disagreement may be brought to the Bankruptcy Court for resolution by any member of the Wind-Down Debtor Oversight Committee.

**Section 3.6     No Compensation**. Members of the Wind-Down Debtors Oversight Committee shall receive no compensation from the Wind-Down Debtors or the Plan Administrator on account of their membership on the Wind-Down Debtors Oversight Committee except for reimbursement of their reasonable and documented out of pocket expenses (which, for the avoidance of doubt, shall not include the fees or expenses of any professionals retained individually by any member of the Wind-Down Debtors Oversight Committee).

**Section 3.7     Professionals.** The Wind-Down Debtors Oversight Committee shall be entitled to retain professionals (without further notice or approval by the Bankruptcy Court), paid by the Wind-Down Debtors (without further notice or approval by the Bankruptcy Court), to advise the Wind-Down Debtors Oversight Committee, which professionals may be Professionals who previously advised the Committee or the Debtors.

**ARTICLE IV**

**TERM OF SERVICE, RESIGNATION AND REMOVAL OF THE PLAN ADMINISTRATOR; APPOINTMENT OF SUCCESSOR; STANDARD OF CARE; COMPENSATION OF PLAN ADMINISTRATOR AND PROFESSIONALS**

**Section 4.1     Term of Service**. The Plan Administrator shall serve in such capacity through the earlier of (a) the date on which the Wind-Down Debtors are dissolved and (b) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve.

**Section 4.2     Resignation of the Plan Administrator**. The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Wind-Down Debtors and the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be chosen by the Wind-Down Debtors Oversight Committee by majority vote.

**Section 4.3     Removal of Plan Administrator or Wind-Down Debtors Oversight Committee Member for Cause**. The Wind-Down Debtors Oversight Committee may seek to remove the Plan Administrator, and the Plan Administrator may seek to remove a member of the Wind-Down Debtors Oversight Committee (or otherwise reconstitute the Wind-Down Debtors

Oversight Committee), in each case, only for cause shown by filing a motion with the Bankruptcy Court seeking such removal. For the avoidance of doubt, during the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall (i) continue to discharge the rights, obligations, and duties of the Plan Administrator set forth in the Plan and this Agreement, and (ii) continue to receive payment of reasonable fees and expenses accrued prior to removal, subject to the terms of the Plan and this Agreement. During the pendency of any dispute before the Bankruptcy Court regarding removal of a member of the Wind-Down Debtors Oversight Committee and any appeals therefrom, such member of the Wind-Down Debtors Oversight Committee shall continue to discharge its rights, obligations, and duties set forth in the Plan and this Agreement.

**Section 4.4     Continuity; Appointing of a Successor Plan Administrator**.

(a)     The death, incapacity, dissolution, resignation, or removal of the Plan Administrator for good cause shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Plan Administrator. In the event of a vacancy by reason of death, incapacity, dissolution, resignation or removal of the Plan Administrator for good cause or prospective vacancy by reason of resignation or removal for good cause, the Wind-Down Debtors Oversight Committee shall appoint a successor Plan Administrator by majority vote and the Wind-Down Debtors shall file a notice with the Bankruptcy Court with respect to any successor Plan Administrator.

(b)     If the Wind-Down Debtors Oversight Committee has not appointed a successor Plan Administrator within thirty (30) days of the occurrence or effectiveness, as applicable, of the prior Plan Administrator's death, incapacity, dissolution, resignation or removal, then the Bankruptcy Court, upon the motion of counsel to the Plan Administrator or counsel to the Wind-Down Debtors, shall approve a successor to serve as a Plan Administrator.

(c)     A successor Plan Administrator, without any further act, shall (a) become vested with all the rights, powers, duties, and obligations of the Plan Administrator and (b) become the sole director and sole officer of each of the Wind-Down Debtors; *provided*, *however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or later Plan Administrator.

**Section 4.5     Standard of Care**. None of the Plan Administrator, members of the Wind-Down Debtors Oversight Committee, their respective affiliates and agents, professionals or any of their respective officers, directors and employees to the fullest extent permitted by applicable law, shall be personally liable to any Entity for actions taken under or pursuant to this Agreement or the Plan, except to the extent that its, his or her own acts constitutes criminal behavior, gross negligence, fraud or willful misconduct. For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Plan, the Plan Administrator and the members of the Wind-Down Debtors Oversight Committee, each in their capacities as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

**Section 4.6     Indemnification**. The Wind-Down Debtors shall indemnify and hold harmless (i) the Plan Administrator (in his or her capacity as such and as sole officer and sole director of each of the Wind-Down Debtors and representative of the Estates), (ii) the members

of the Wind-Down Debtors Oversight Committee, and (iii) all professionals retained by the Wind-Down Debtors or Wind-Down Debtors Oversight Committee, each in their capacities as such (collectively, the "**Indemnified Parties**"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Indemnified Party's criminal behavior, gross negligence, fraud or willful misconduct, with respect to the Wind-Down Debtors or the implementation or administration of the Plan or this Agreement. To the extent an Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced by the Wind-Down Debtors (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined through a Final Order that such Indemnified Party is not entitled to be indemnified therefore). The indemnification provisions of the Plan or this Agreement shall remain available to and be binding upon any former Plan Administrator or former member of the Wind-Down Debtors Oversight Committee (or the estate of any decedent Plan Administrator or member of the Wind-Down Debtors Oversight Committee) and shall survive the termination of this Agreement.

       **Section 4.7**     **Exculpation**. Neither the Plan Administrator, the members of the Wind-Down Debtors Oversight Committee, nor any professionals retained by the Wind-Down Debtors or Wind-Down Debtors Oversight Committee, each in its capacity as such (collectively, the "**Exculpated Parties**") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Exculpated Party's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court or applicable law or as may arise by reason of any action, omission or error of an Exculpated Party, and Persons dealing or having any relationship with the Wind-Down Debtors and/or the Estates shall have recourse only to the Wind-Down Debtors' assets and shall look only to the Wind-Down Debtor's assets to satisfy any liability or other obligations incurred in carrying out the terms of the Plan and this Agreement, and the Exculpated Parties shall not have any personal obligation to satisfy any such liability; *provided*, *however*, that the foregoing limitations shall not apply to any acts or omissions ultimately and finally determined by a final and non-appealable order of a court of competent jurisdiction to be the direct result of such Exculpated Party's criminal behavior, gross negligence, fraud or willful misconduct. None of the Exculpated Parties is deemed to be responsible for any other Exculpated Party's actions or inactions. The Exculpated Parties may, in connection with the performance of their functions hereunder and under the Plan, and in their sole and absolute discretion, consult with professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals or any order of the Bankruptcy Court. Notwithstanding such authority, such Exculpated Parties shall not be under any obligation to consult with any professionals and their determination not to do so shall not result in the imposition of liability, unless such determination is based upon criminal behavior, gross negligence, fraud or willful misconduct as determined by a final and non-appealable order of a court of competent

jurisdiction; *provided*, that in no event will any such person be liable for punitive, exemplary, consequential, or special damages under any circumstances. Any action taken or omitted to be taken by the Exculpated Parties after the Effective Date on the advice of counsel or with the approval of the Bankruptcy Court will conclusively be deemed not to constitute criminal behavior, gross negligence, fraud or willful misconduct. The foregoing indemnification and exculpation with respect to any Exculpated Party shall survive the termination of such Exculpated Party from the capacity for which it was deemed indemnified and exculpated and the termination or modification of this Agreement.

Section 4.8 **Insurance**. The Plan Administrator is authorized (but not required) to obtain and pay at the expense of the Wind-Down Debtors all reasonably necessary insurance coverage for itself, the Wind-Down Debtors and the Wind-Down Debtors Oversight Committee and its members, and their respective agents, representatives, and employees or independent contractors, in connection with the Chapter 11 Cases and the Wind-Down of the Wind-Down Debtors (in the form of any errors and omissions policy or otherwise), including, but not limited to, coverage with respect to commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors, which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator, in consultation with the Wind-Down Debtors Oversight Committee, after the termination of this Agreement.

Section 4.9 **Burden of Proof**. In any proceeding brought by the Wind-Down Debtors, any member of the Wind-Down Debtors Oversight Committee (whether current or former), or any other Person who is bound by this Agreement challenging any action, determination or failure to act of the Plan Administrator or the Wind-Down Debtors Oversight Committee in the Plan Administrator's or Wind-Down Debtors Oversight Committee's discharge of its respective duties under this Agreement, the Person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted gross negligence, fraud or willful misconduct.

Section 4.10 **Reliance by the Plan Administrator and Wind-Down Debtors Oversight Committee**. The Plan Administrator and the Wind-Down Debtors Oversight Committee (the "**Reliance Parties**" and each, a "**Reliance Party**") may absolutely rely on, and shall be fully protected in acting or refraining from acting if it relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that each of them, as applicable, has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of criminal behavior, gross negligence, fraud or willful misconduct in respect of the Reliance Parties' duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Agreement, each of them, as applicable, may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Reliance Parties may consult with counsel and other professionals with respect to matters the Reliance Parties reasonably believe to be in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in

13

respect of any action taken or not taken by a Reliance Party. A Reliance Party shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon. The Reliance Parties shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan or any other document executed in connection therewith, and the Reliance Parties shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

       **Section 4.11    Reliance by Entities Dealing with the Plan Administrator**. In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Wind-Down Debtors shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Wind-Down Debtors, and shall have no obligation to inquire into the existence of such authority.

       **Section 4.12    Compensation of Plan Administrator and Professionals**.

       (a)    The Plan Administrator shall receive fair and reasonable compensation for its services as follows:

       (i)    a monthly fee of $25,000 per month for the first twelve months following the Effective Date, and $12,500 per month thereafter. Such monthly fees shall be payable in advance of each month beginning with the first full month following the Effective Date.

       (ii)    in addition to the monthly fees, additional fees based upon and payable exclusively from the aggregate gross proceeds of any litigation or settlement of affirmative claims against third parties ("**Gross Proceeds**"), payable upon receipt of Gross Proceeds, as follows:

       (A)    for the first $10 million of Gross Proceeds, the amount of the additional fee shall be 3% of such Gross Proceeds; plus

       (B)    for Gross Proceeds in excess of $10 million and up to $20 million, the amount of the additional fee shall be 5% of such Gross Proceeds; plus

       (C)    for Gross Proceeds in excess of $20 million, the amount of the additional fee shall be 7% of such Gross Proceeds.

       (b)    In addition to the fees describe above, the Plan Administrator shall be entitled to reimbursement of all reasonable and documented costs and expenses.

       (c)    The Plan Administrator's compensation structure may be modified by agreement between the Plan Administrator and the Wind-Down Debtors Oversight Committee.

       (d)    The Plan Administrator shall deliver (which may be by electronic mail) reasonably detailed monthly invoices or fee statements to the Wind-Down Debtors Oversight Committee.

(e)     All professionals retained by the Wind-Down Debtors or Wind-Down Debtors Oversight Committee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses reasonably incurred in rendering such services.

(f)     The payment of the fees and expenses of the Plan Administrator and professionals retained by the Wind-Down Debtors or the Wind-Down Debtors Oversight Committee shall be paid from the Wind-Down Reserve in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**Section 4.13    Information and Reporting.** The Plan Administrator shall file with the Bankruptcy Court an annual statement describing the progress of the Wind-Down and the activities of the Wind-Down Debtors, in such detail and covering such matters as the Plan Administrator determines is appropriate in its discretion (in consultation with the Wind-Down Debtors Oversight Committee).

**ARTICLE V**

**<u>TERMINATION</u>**

**Section 5.1    Termination**. This Agreement shall terminate upon the dissolution of the Wind-Down Debtors and the entry of an order by the Bankruptcy Court closing the Chapter 11 Cases. All provisions of this Agreement that expressly survive by their terms shall remain in effect in accordance with their terms. All of the protective provisions contained in Article IV of this Agreement shall survive the termination of this Agreement and the death, dissolution, resignation or removal, as may be applicable, of the Plan Administrator, the Indemnified Parties, the reliance Parties and shall inure to the benefit of their respective heirs and assigns.

**Section 5.2    Obligations of the Plan Administrator Upon Termination**. Upon or as soon as practicable after termination of this Agreement, the Plan Administrator shall (solely at the expense of the Wind-Down Debtors) (i) file a certificate or other document with the Bankruptcy Court stating that the assets of the Wind-Down Debtors have been exhausted and final distributions of Cash have been made under the Plan; and (ii) be deemed to have resigned as the sole officer, and sole director of each of the Wind-Down Debtors. Upon the filing of certificate(s) described in clause (i) of the preceding sentence, the relevant Debtors and/or Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Wind-Down Debtors or payments to be made in connection therewith.

**Section 5.3    No Other Duties or Obligations**. The Plan Administrator shall have no duties or obligations under law or otherwise except as set forth in this Agreement and pursuant to the Plan. Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to the terms hereof, the Plan Administrator shall have no further duties or obligations hereunder and pursuant to the Plan.

## ARTICLE VI

## DISTRIBUTIONS

**Section 6.1    Distributions Under the Plan**. Distributions shall be made in accordance with the Plan. With respect to all payments and distributions made under the Plan, the Plan Administrator shall cause the Wind-Down Debtors to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax and reporting matters.

Any party entitled to receive any property or distribution under the Plan shall, upon request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator, Form W-9 or, if the payee is a foreign Person, an applicable Form W-8, unless such Person is exempt under the internal revenue code and so notifies the Plan Administrator. If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the Claim Holder fails to comply within ninety (90) days after the request, the amount of such distribution shall irrevocably revert to the Wind-Down Debtors and any Claim in respect of such distribution shall be expunged without need of further order of the Bankruptcy Court and the Holder thereof shall be forever barred from asserting such Claim against any Debtor and their respective assets and property. The Plan Administrator may, but is not required to, file a notice with the Bankruptcy Court indicating which Claims are to be expunged for failure to comply with such requests for tax information or on account of being unclaimed distributions. If such information is requested, the request shall be sent to the address provided in proofs of claim submitted or, if no such form has been provided, to the last known address for such entity provided by the Debtors to the Plan Administrator.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

**Section 7.1    Descriptive Headings**. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 7.2    Amendment and Waiver**. This Agreement may be amended or modified by the Plan Administrator with the consent of the Wind-Down Debtors Oversight Committee in any way that is not inconsistent with the Plan or the Confirmation Order and that is necessary to implement the provisions of the Plan and to facilitate the orderly and effective liquidation of the Wind-Down Debtor Assets and maximize the value thereof (including to clarify any ambiguity or inconsistency or render the Agreement in compliance with its stated purposes), *provided* that any such material amendments or modifications shall be filed with the Bankruptcy Court.

**Section 7.3    Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws of the State of Delaware or any other jurisdiction.

Section 7.4    **Counterparts; Effectiveness**. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same agreement. This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto. Executed copies of this Agreement may be delivered by facsimile, electronic mail, PDF or other electronic means.

Section 7.5    **Severability; Validity**. If any provision of this Agreement or the application thereof to any Entity or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other Entities or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

Section 7.6    **Notices**. Any notice or other communication hereunder shall be deemed given upon (a) confirmed delivery by a standard overnight carrier or when delivered by hand, or (b) the expiration of five (5) Business Days after the date mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice), and in all instances shall include a concurrent copy via e-mail to the e-mail addresses set forth below:

| | |
|---|---|
| If to the Plan Administrator, to:<br><br>Klestadt Winters Jureller Southard & Stevens, LLP<br>Attn: Tracy L. Klestadt<br>200 West 41st Street, 17th Floor<br>New York, New York 10036-7203<br>Tel: (212) 972-3000<br>Email: TKlestadt@klestadt.com | If to the Debtors or Wind-Down Debtors, to:<br><br>[●] |
| With a copy (which shall not constitute notice) to:<br><br>[●] | With a copy (which shall not constitute<br><br>notice) to:<br><br><br><br>[●] |

Section 7.7    **Change of Address**. Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Section 7.7 of this Agreement in the manner set forth therein. Such change of address shall be effective ten (10) Business Days after service of such notice.

Section 7.8    **Relationship to Plan**. The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the

provisions of the Plan and Confirmation Order. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order, whether or not such action is specified in this Agreement. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or Confirmation Order, the provisions of the Plan and Confirmation Order control.

**Section 7.9     Meaning of Terms**. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, and words importing the singular number include the plural number and vice versa.

**Section 7.10     Retention of Jurisdiction**. As provided in Article [XIII] of the Plan, the Bankruptcy Court shall retain jurisdiction over the Wind-Down Debtors, including, but not limited to, for the purpose of interpreting and implementing the provisions of this Agreement; provided, however, that nothing in this Section or Article [XIII] of the Plan shall prevent the Plan Administrator or the Wind-Down Debtors from pursuing the Retained Causes of Action in jurisdictions other than the Bankruptcy Court.

**Section 7.11     Assignment**. Neither this Agreement nor any of the rights, duties or obligations of any of the parties hereto may be assigned without Bankruptcy Court approval.

**Section 7.12     Successors and Assigns; No Third-Party Beneficiaries**. This Agreement shall be binding on and shall inure to the benefit of each of the parties and their respective successors and assigns, except as otherwise provided herein. No party may assign, transfer, hypothecate or otherwise convey its respective rights, benefits, obligations or duties hereunder without the prior express written consent of the other parties. Any such purported assignment, transfer, hypothecation or other conveyance by any party without the prior express written consent of the other parties shall be null and void and of no force or effect. The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties with respect to the transactions contemplated hereby and no Entity shall be a third-party beneficiary of any of the terms and provisions of this Agreement unless specifically set forth in this Agreement.

**Section 7.13     Effective Date**. This Agreement shall become effective on the Effective Date.

*[Remainder of page intentionally left blank]*

18

**IN WITNESS WHEREOF,** the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written and effective as of the Effective Date.

EXP OLDCO WINDDOWN, INC.

on behalf of itself and all other Debtors

By: _____

Name: _____

Title: _____


TRACY L. KLESTADT AS PLAN
ADMINISTRATOR OF THE ESTATES
OF EXP OLDCO WINDDOWN, INC.
AND ALL OTHER DEBTORS

By: _____

Name: _____

Title: _____