## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MEMORANDUM OF LAW
## IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN
## OF EXP OLDCO WINDDOWN, INC. AND ITS DEBTOR AFFILIATES

**KLEHR HARRISON HARVEY BRANZBURG LLP**

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:     (302) 426-9193
Email:         dpacitti@klehr.com
               myurkewicz@klehr.com
               aradovanovich@klehr.com

-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-3007
Facsimile:     (215) 568-6603
Email:         mbranzburg@klehr.com

*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               emily.geier@kirkland.com
               nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

# TABLE OF CONTENTS

## CONTENTS

RELIEF REQUESTED..................................................................................................................1

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................3

I.      The Debtors' Chapter 11 Filings and the Marketing Process. .............................................3

II.     Negotiations and Settlements with Key Stakeholders. ........................................................4

        A.      The Disinterested Director's Investigation. ............................................................4

        B.      The Committee Settlement By and Between the Debtors and the
                Committee..................................................................................................................6

III.    The Solicitation Process and Voting Results. ......................................................................7

ARGUMENT ................................................................................................................................9

IV.     The Deemed Consolidation Solely for Purposes of Voting, Confirmation, and
        Distribution Under the Plan Does Not Constitute Impermissible Substantive
        Consolidation. .....................................................................................................................10

V.      The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and
        Should Be Confirmed. ........................................................................................................13

        A.      The Plan Complies with the Applicable Provisions of the Bankruptcy
                Code (§ 1129(a)(1)). ...............................................................................................13

                1.      The Plan Satisfies the Classification Requirements of Section 1122
                        of the Bankruptcy Code. ..............................................................................14

                2.      The Plan Satisfies the Mandatory Plan Requirements of
                        Section 1123(a) of the Bankruptcy Code......................................................16

                3.      The Plan Complies with the Discretionary Provisions of
                        Section 1123(b) of the Bankruptcy Code......................................................19

                4.      The Plan Complies with Section 1123(d) of the Bankruptcy Code..........34

        B.      The Debtors Complied with the Applicable Provisions of the
                Bankruptcy Code (§ 1129(a)(2))............................................................................35

                1.      The Debtors Complied with Section 1125 of the Bankruptcy Code. ........35

Page(s)

2. The Debtors Complied with Section 1126 of the Bankruptcy Code. ........37

C. The Plan Is Proposed in Good Faith (§ 1129(a)(3)). ..............................38

D. The Plan Provides That the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)). ....................................39

E. The Debtors Disclosed All Necessary Information Regarding Post-Effective Date Governance (§ 1129(a)(5)). ..........................................40

F. The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)). ...........................................................................................41

G. The Plan Is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7)). ...........................................................................................41

H. The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code. ...........................................43

I. The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)). ...........................................................................................43

J. At Least One Impaired Class of Non-Insider Claims Accepted the Plan (§ 1129(a)(10)). .........................................................................................45

K. The Plan Is Feasible (§ 1129(a)(11)). ....................................................45

L. All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)). ...........47

M. Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan. ................48

N. The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code. ...........................................................................48

1. The Plan Does Not Unfairly Discriminate Under Section 1129(B)(1) with Respect to the Impaired Classes That Have Not Voted to Accept the Plan. ...........................................49

**Page(s)**

    O.        The Plan Is Fair and Equitable (§ 1129(b)(2)(B)(ii)).............................................51

    P.        The Plan Complies with the Other Provisions of Section 1129 of the
                    Bankruptcy Code (§ 1129(c)–(e)). ..........................................................................52

VI.    The Waiver of a Stay of the Confirmation Order and the Proposed Modifications
      to the Plan Are Appropriate. .............................................................................................53

    A.        Good Cause Exists to Waive the Stay of the Confirmation Order. ......................53

    B.        Modifications to the Plan. .....................................................................................54

CONCLUSION.....................................................................................................................55

## TABLE OF AUTHORITIES

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship,*
190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, Bank of Am.,
526 U.S. 434 (1999) ..................................................................................51

*In re Abbotts Dairies of Pa., Inc.*,
788 F.2d 143 (3d Cir. 1986) ......................................................................40

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ......................................................43

*In re AeroCision Parent, LLC*,
No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) ...............................29

*In re Aleris Int'l, Inc.*,
2010 WL 3492664 ......................................................................................52

*In re Alto Maipo,*
No. 21-11507 (KBO) (Bankr. D. Del. May 13, 2022)...............................29

*In re Appgate*,
No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) ...............................11

*In re Armstrong World Indus.*,
348 B.R. 111 (Bankr. D. Del. 2006) .............................................14, 16, 52, 54

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) ...................................................52

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) ..................................................................................43

*In re Big Village Holding LLC*,
No. 23-10174 (CTG) (Bankr. D. Del. Aug. 24, 2023)...............................13

*Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*,
764 F.2d 406 (5th Cir. 1985) .....................................................................40

*In re Burns & Roe Enters., Inc.*,
No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) ...............56

*In re Cano Health, Inc.*,
No. 24-10164 (KBO) (Bankr. D. Del. June 28, 2024)...............................13

*In re Capmark Fin. Grp. Inc.*,
No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ...............48

*In re Casa Systems, Inc.*,
    No. 24-10695 (KBO) (Bankr. D. Del. June 3, 2024)............................................29

*In re Century Glove, Inc.*,
    Civ. A. Nos. 90-400-SLR and 90-401-SLR, 1993 WL 239489 (D. Del. Feb.
    10, 1993) ....................................................................................................40

*In re Chapel Gate Apartments, Ltd.*,
    64 B.R. 569 (Bankr. N.D. Tex. 1986)...........................................................41

*In re Charter Commc'ns*,
    419 B.R. 221 (Bankr. S.D.N.Y. 2009) ..........................................................12

*In re Coram Healthcare Corp.*,
    315 B.R. 321 (Bankr. D. Del. 2004) ................................................22, 23, 52

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
    699 F.2d 599 (2d Cir. 1983)...........................................................................23

*In re Emerge Energy Services LP*,
    No. 19-11563 (KBO), 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019) ........28, 29

*In re Exaeris, Inc.*,
    380 B.R. 741 (Bankr. D. Del. 2008) ..............................................................23

*In re Exide Techs.*,
    303 B.R. 48 (Bankr. D. Del. 2003) ................................................................24

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans
    Ltd. P'ship)*,
    116 F.3d 790 (5th Cir. 1997) .........................................................................40

*In re Flintkote Co.*,
    486 B.R. 99 (Bankr. D. Del. 2012) ..........................................................47, 48

*In re Freymiller Trucking, Inc.*,
    190 B.R. 913 (Bankr. W.D. Okla. 1996) .......................................................51

*Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*,
    10 F.3d 944 (2d Cir. 1993)..............................................................................16

*In re Future Energy Corp.*,
    83 B.R. 470 (Bankr. S.D. Ohio 1988).............................................................41

*In re Genesis Health Ventures, Inc.*,
    266 B.R. 591 (Bankr. D. Del. 2001) ...............................................................14

**Page(s)**

*Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*,
    402 F.3d 416 (3d Cir. 2005)...................................................................................12, 14

*Gillman v. Continental Airlines (In re Continental Airlines)*,
    203 F.3d 203 (3d Cir. 2000)...............................................................................................31

*In re Glob. Safety Textiles Holdings LLC*,
    No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009)..............................56

*Hargreaves v. Nuverra Env't Sols., Inc. (In re Nuverra)*,
    590 B.R. 75 (D. Del. 2018), *aff'd*, 834 F. App'x 729 (3d Cir. 2021), *as amended* (Feb. 2, 2021) ................................................................................................51

*Harrington v. Purdue Pharma L. P.*,
    144 S. Ct. 2071 (2024)................................................................................................9, 10, 29

*In re Indianapolis Downs*,
    486 B.R. 286 (Bankr. D. Del. 2013) ..........................................................................27, 28, 34

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987)...............................................................................................16

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs (In re Route 37 Bus. Park Assocs.)*,
    987 F.2d 154 (3d Cir. 1993).........................................................................................16, 51

*In re Kabbage Inc.*,
    No. 22-10951 (CTG) (Bankr. D. Del. Mar. 15, 2023).........................................................35

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988)...........................................................................................47, 48

*In re Lannett Co.*,
    No. 23-10559 (JKS) (Bankr. D. Del. June 8, 2023)...........................................................11

*In re Lapworth*,
    1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)..............................................................37

*In re Lason, Inc.*,
    300 B.R. 227 (Bankr. D. Del. 2003) ...................................................................................44

*Liberty Nat'l Enter. v. Ambanc La Mesa L.P. (In re Ambanc La Mesa L.P.)*,
    115 F.3d 650 (9th Cir. 1997) .............................................................................................51

*In re Lisanti Foods, Inc.*,
    329 B.R. 491 (D.N.J. 2005) ...............................................................................................41

*In re Louise's, Inc.*,
   211 B.R. 798 (D. Del. 1997) ...................................................................................21

*In re Lucky Bucks, LLC*,
   No. 23-10758 (KBO) (Bankr. D. Del. July 28, 2023) ......................................13, 29

*In re Master Mortg. Inv. Fund, Inc.*,
   168 B.R. 930 (Bankr. W.D. Mo. 1994)....................................................................24

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994).....................................................................................38

*In re MVK FarmCo LLC*,
   No. 23-11721 (LSS) (Bankr. D. Del. Mar. 29, 2024)................................11, 13, 42

*Myers v. Martin (In re Martin)*,
   91 F.3d 389 (3d Cir. 1996)..................................................................................21, 22

*In re Neff*,
   60 B.R. 448 (Bankr. N.D. Tex. 1985), *aff'd*, 785 F.2d 1033 (5th Cir. 1986) .........44

*In re NII Holdings, Inc.*,
   288 B.R. 356 (Bankr. D. Del. 2002) ........................................................................40

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) ........................................................................15

*In re PGX Holdings, Inc.*,
   No. 23-10718 (CTG) (Bankr. D. Del. Oct. 24, 2023)...............................................13

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
   761 F.2d 1374 (9th Cir. 1985) .................................................................................48

*In re Premier Int'l Holdings, Inc.*,
   No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ........14, 32

*In re Project Sage M Holdings Oldco, Inc.*,
   No. 24-10245 (JTD) (Bankr. D. Del. June 18, 2024) ........................................11, 42

*In re Prussia Assocs.*,
   322 B.R. 572 (Bankr. E.D. Pa. 2005) ......................................................................48

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)........................................................................32, 34, 40

*In re Restoration Forest Products Group, Inc.*,
   No. 24-10120 (KBO) (Bankr. D. Del. Mar. 27, 2024) .............................................29

**Page(s)**

*In re S&W Enter.*,
 37 B.R. 153 (Bankr. N.D. Ill. 1984) ...................................................................15

*In re Sabine Oil & Gas Corp.*,
 No. 15-11835 (SCC), Docket No. 1359...............................................................13

*In re Sea Garden Motel & Apartments*,
 195 B.R. 294 ........................................................................................................48

*SEC v. Drexel Burnham Lambert Grp. (In re Drexel Burnham Lambert Grp.)*,
 960 F.2d 285 (2d Cir. 1992).................................................................................10

*In re SiO2 Med. Prods.*,
 No. 23-10366 (JTD) (Bankr. D. Del. July 19, 2023) ..........................................11

*In re Spansion, Inc.*,
 426 B.R. 114 (Bankr. D. Del. 2010) ...............................................................24, 32

*In re Starry Group Holdings, Inc.*,
 No. 23-10219 (KBO) (Bankr. D. Del. May 26, 2023).........................................13

*In re Stimwave Technologies Inc.*,
 No. 22-10541 (KBO) (Bankr. D. Del. Mar. 21, 2023) ...................................13, 29

*In re TCI 2 Holdings, LLC*,
 428 B.R. 117 (Bankr. D.N.J. 2010) .....................................................................14

*In re TECT Aerospace Group Holdings, Inc.*,
 No. 21-10670 (KBO) (Bankr. D. Del. Mar. 8, 2022) ..........................................13

*In re Transwest Resort Properties Inc.*,
 881 F. 3d 724 (9th Cir. 2018) (Friedland, J., concurring) ...................................11

*In re Tribune Co.*,
 464 B.R. 126 (Bankr. D. Del. 2011), *on reconsideration,* 464 B.R. 208
 (Bankr. D. Del. 2011) ..........................................................................................48

*In re U.S. Truck Co.*,
 47 B.R. 932 (E.D. Mich. 1985), *aff'd,* 800 F.2d 581 (6th Cir. 1986) ...................47

*In re Verso Corp.*,
 No. 16-10163 (KG), Docket No. 1231 (Bankr. D. Del. June 24, 2016) ................34

*In re Virgin Orbit Holdings, Inc.*,
 No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) ...........................13, 29, 31, 32

*In re W.R. Grace & Co.*,
 475 B.R. 34 (D. Del. 2012)........................................................................40, 47, 48

Page(s)

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) ..................................................24, 28, 32

*In re Western Global Airlines, Inc.*,
  No. 23-11093 (KBO) (Bankr. D. Del. Nov. 11, 2023) ............................................13

*In re Wiersma*,
  227 F. App'x 603 (9th Cir. 2007) ..................................................................14

*Will v. Nw. Univ. (In re Nutraquest, Inc.)*,
  434 F.3d 639 (3d Cir. 2006)............................................................................22

*In re World Health Alts., Inc.*,
  344 B.R. 291 (Bankr. D. Del. 2006) ........................................................21, 22, 23

*In re Worldcom, Inc.*,
  No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........................37

*In re Yogaworks, Inc.*,
  No. 20-12599 (KBO) (Bankr. D. Del. May 5, 2021)............................................13

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ..............................................................24, 28

*In re Zymergen Inc.*,
  No. 23-11661 (KBO) (Bankr. D. Del. Feb. 5, 2024) ........................................13, 29

**Statutes**

11 U.S.C. § 101(31) ....................................................................................42

11 U.S.C. § 101(51D)(B) ..............................................................................55

1111 U.S.C. § 328 ......................................................................................41

11 U.S.C. § 328(a) ....................................................................................41

11 U.S.C. § 330 ........................................................................................41

11 U.S.C. § 330(a)(1)(A) ..............................................................................41

11 U.S.C. § 363 ..........................................................................................4

11 U.S.C. § 365 ......................................................................................4, 36

11 U.S.C. § 365(d)(4) ..................................................................................37

11 U.S.C. § 365(f)......................................................................................55

**Page(s)**

11 U.S.C. § 502 ................................................................................................................39

11 U.S.C. § 503(b) ..........................................................................................................45

11 U.S.C. § 507(a)(1) ......................................................................................................45

11 U.S.C. § 507(a)(2) ................................................................................................45, 49

11 U.S.C. § 507(a)(8) ......................................................................................................46

11 U.S.C. § 510(b) ....................................................................................................17, 53

11 U.S.C. § 524 ...............................................................................................................34

11 U.S.C. § 1114 .............................................................................................................50

11 U.S.C. § 1114(a) ........................................................................................................50

11 U.S.C. § 1122 ..................................................................................................15, 16, 56

11 U.S.C. § 1122(a) ..................................................................................................15, 17

11 U.S.C. § 1123 ..................................................................................................15, 23, 56

11 U.S.C. § 1123(a) ........................................................................................................18

11 U.S.C. § 1123(a)(1) ....................................................................................................18

11 U.S.C. § 1123(a)(2) ....................................................................................................18

11 U.S.C. § 1123(a)(3) ....................................................................................................18

11 U.S.C. § 1123(a)(4) ....................................................................................................18

11 U.S.C. § 1123(a)(5) ..............................................................................................18, 19

11 U.S.C. § 1123(a)(6) ....................................................................................................19

11 U.S.C. § 1123(a)(7) ....................................................................................................20

11 U.S.C. § 1123(b) ..................................................................................................20, 23

11 U.S.C. § 1123(b)(1) ....................................................................................................21

11 U.S.C. § 1123(b)(2) ....................................................................................................21

11 U.S.C. § 1123(b)(3) ....................................................................................................21

11 U.S.C. § 1123(b)(3)(A) ........................................................................................21, 23

**Page(s)**

11 U.S.C. § 1123(b)(6) ...................................................................................................21

11 U.S.C. § 1123(d) ................................................................................................35, 36

11 U.S.C. § 1125 ................................................................................................... *passim*

11 U.S.C. § 1125(a) ......................................................................................................38

11 U.S.C. § 1125(a)(1) ..................................................................................................38

11 U.S.C. § 1125(b) ................................................................................................37, 38

11 U.S.C. § 1125(c) ......................................................................................................38

11 U.S.C. § 1126 ................................................................................................... *passim*

11 U.S.C. § 1126(a) ......................................................................................................39

11 U.S.C. § 1126(c) ......................................................................................................40

11 U.S.C. § 1126(f) ...................................................................................................8, 39

11 U.S.C. § 1126(g) ..................................................................................................8, 39

11 U.S.C. § 1127 ..........................................................................................................56

11 U.S.C. § 1127(a) ......................................................................................................56

11 U.S.C. § 1129 ................................................................................................... *passim*

11 U.S.C. § 1129(a) ...............................................................................14, 15, 46, 50

11 U.S.C. § 1129(a)(1) ..................................................................................................15

11 U.S.C. § 1129(a)(2) ...............................................................................33, 37, 40

11 U.S.C. § 1129(a)(3) ...............................................................................33, 40, 41

11 U.S.C. § 1129(a)(4) ..................................................................................................41

11 U.S.C. § 1129(a)(5) ............................................................................................42, 43

11 U.S.C. § 1129(a)(5)(A)(i) .........................................................................................42

11 U.S.C. § 1129(a)(5)(B) ............................................................................................42

11 U.S.C. § 1129(a)(6) ..................................................................................................43

11 U.S.C. § 1129(a)(7) ...........................................................................................43, 44

**Page(s)**

11 U.S.C. § 1129(a)(7)(A)(ii) ..................................................................................43

11 U.S.C. § 1129(a)(8)......................................................................45, 47, 50, 51

11 U.S.C. § 1129(a)(9) ...............................................................................45, 46

11 U.S.C. § 1129(a)(9)(A) .........................................................................45, 46

11 U.S.C. § 1129(a)(9)(B) .........................................................................45, 46

11 U.S.C. § 1129(a)(9)(C) ................................................................................46

11 U.S.C. § 1129(a)(10).............................................................................45, 47

11 U.S.C. § 1129(a)(11)........................................................................47, 48, 49

11 U.S.C. § 1129(a)(12)....................................................................................49

11 U.S.C. § 1129(a)(13)....................................................................................50

11 U.S.C. § 1129(a)(14)....................................................................................50

11 U.S.C. § 1129(a)(15)....................................................................................50

11 U.S.C. § 1129(a)(16)....................................................................................50

11 U.S.C. § 1129(b) ................................................................................... *passim*

11 U.S.C. § 1129(b)(1) ........................................................................50, 51, 52, 53

11 U.S.C. § 1129(b)(2) .....................................................................................54

11 U.S.C. § 1129(b)(2)(B)(ii) ..........................................................................54

11 U.S.C. § 1129(d) ....................................................................................54, 55

11 U.S.C. § 1129(e) .........................................................................................55

11 U.S.C. § 1141(a) .........................................................................................11

11 U.S.C. § 1141(b) .........................................................................................11

11 U.S.C. § 1141(c) .........................................................................................11

15 U.S.C. § 77(e) .............................................................................................54

Bankruptcy Code chapter 7................................................................................44

Bankruptcy Code chapter 11.......................................................................... *passim*

**Page(s)**

**Rules**

Fed. R. Bankr. P. 3019 .................................................................................................56

Fed. R. Bankr. P. 3020 .................................................................................................55

Fed. R. Bankr. P. 3020(e) .............................................................................................55

Fed. R. Bankr. P. 6004 .................................................................................................55

Fed. R. Bankr. P. 6004(h) .............................................................................................55

Fed. R. Bankr. P. 6006 .................................................................................................55

Fed. R. Bankr. P. 6006(d) .............................................................................................55

**Other Authorities**

H.R. Rep. No. 95-595, *reprinted in* 1978 U.S.C.C.A.N. 5963 (1977) .........................................15

S. Rep. No. 95-989, *reprinted in* 1978 U.S.C.C.A.N. 5787 (1978) ...............................................15

## RELIEF REQUESTED

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this memorandum of law (this "Memorandum") in support of confirmation of the *Joint*

*Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 953] (as modified,

amended, or supplemented from time to time, the "Plan"), pursuant to sections 1125, 1126, and

1129, respectively, of title 11 of the United States Code, 11 U.S.C. §§ 101–1532

(the "Bankruptcy Code"). In support of confirmation of the Plan, the Debtors have filed the

Kamlani Declaration, the Still Declaration, the Transier Declaration, and the Voting Report

(collectively, the "Confirmation Declarations").[2] In further support of confirmation of the Plan,

the Debtors state as follows.

## PRELIMINARY STATEMENT[3]

1.     The Debtors commenced these chapter 11 cases to effectuate a value-maximizing

sale transaction that would allow the business to survive as a going concern and to fairly and fully

resolve their liabilities in an orderly and value-maximizing manner. Now, having already

negotiated, executed, and consummated the going concern Sale Transaction (as defined herein) for

substantially all of the Debtors' assets and following the arm's length, hard-fought negotiation and

---

[2]    The Debtors have filed contemporaneously herewith the *Declaration of Kunal S. Kamlani in Support of Confirmation of the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* (the "Kamlani Declaration"), the *Declaration of Mark Still, Chief Financial Officer of EXP OldCo Winddown, Inc. in Support of Confirmation of the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* (the "Still Declaration"), the *Declaration of William Transier, Disinterested Director of EXP OldCo Winddown, Inc., in Support of Confirmation of the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* (the "Transier Declaration"), and the *Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Voting Report").

[3]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Stewart Glendinning, Chief Executive Officer of Express, Inc., In Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration") and the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express, Inc. And Its Debtor Affiliates* [Docket No. 955] (the "Disclosure Statement"). Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the First Day Declaration, as applicable.

ultimate agreement with the official committee of unsecured creditors (the "Committee") on a comprehensive settlement memorialized through the Plan, the Debtors stand poised to confirm a chapter 11 plan that will achieve the overwhelming majority of the Debtors' remaining chapter 11 objectives. The Plan has been overwhelmingly accepted by creditors in the Voting Class—holders of General Unsecured Claims.

2.      The Plan itself exemplifies and embodies a comprehensive, good-faith settlement with the Debtors' major stakeholders, including the Committee, and has no outstanding, unresolved objections. The Plan is consistent with the Bankruptcy Code, maximizes the value of the Debtors' estates (the "Estates"), and provides a meaningful recovery to the vast majority of the Debtors' creditors. Significantly, the Plan provides for an orderly liquidation of the Debtors' remaining assets and brings finality to these chapter 11 cases.

3.      In anticipation of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), the Debtors worked closely with key stakeholders—including, primarily, the United States Trustee for the District of Delaware (the "U.S. Trustee")—in advance of the Confirmation Objection Deadline to incorporate agreed-upon revisions into the Plan and Confirmation Order, which resolved their concerns with certain terms contained in the Plan and the Confirmation Order. The Debtors also resolved the remaining filed objections to the Plan through incorporating certain other revisions to the Plan and Confirmation Order.

4.      For the reasons set forth herein, the Debtors believe that the Plan comports with the requirements of the Bankruptcy Code and request that the Court overrule any outstanding objections and confirm the Plan.

**BACKGROUND**

I.    **The Debtors' Chapter 11 Filings and the Marketing Process.**

5.    On April 22, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On May 3, 2024, the U.S. Trustee appointed the Committee [Docket No. 154]. No trustee or examiner has been appointed in these chapter 11 cases.

6.    Prior to the Petition Date, the Debtors commenced a marketing process to solicit interest in a sale transaction that could be effectuated through a chapter 11 filing. *See* First Day Declaration, ¶¶ 57–60. On the Petition Date, the Debtors filed a motion [Docket No. 41] (the "Bidding Procedures Motion") requesting entry of an order establishing bidding procedures to further market the Debtors' assets (the "Bidding Procedures") and granting other related relief. On June 6, 2024, the Court entered an order approving the Bidding Procedures and the other relief requested in the Bidding Procedures Motion [Docket No. 427] (the "Bidding Procedures Order").

7.    Pursuant to the Bidding Procedures, on May 24, 2024, the Debtors filed a *Notice of Selection of Stalking Horse Bidder* [Docket No. 305], and on June 5, 2024 and June 13, 2024, the Debtors filed *Revised Notice[s] of Selection of Stalking Horse Bidder* [Docket Nos. 414, 460] (collectively, the "Stalking Horse Notices"). The Stalking Horse Notices indicated that the Debtors had executed a stalking horse asset purchase agreement with Phoenix[4] (the "Purchase Agreement") for the purchase and sale of substantially all of the Debtors' assets on a going concern basis (the "Sale Transaction"). On June 12, 2024, the Debtors filed the *Notice of Successful Bidder* [Docket No. 445] naming Phoenix's approximately $174 million going concern bid in connection

---

[4]    "Phoenix" means Phoenix Retail, LLC, a consortium comprising PHXWHP, LLC, an affiliate of the WHP Global Purchaser and affiliates of certain of the Debtors' landlords, specifically, SPG Fashion Retail, LLC and BPR Acquisitions LLC. "WHP Global Purchaser" means EXPWHP, LLC.

with the Purchase Agreement as the highest and best bid received by the Debtors in connection with the Bidding Procedures.

8.        On June 14, 2024, the Court entered the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 471] (the "Sale Order"), approving, among other things, the Debtors' entry into the Purchase Agreement and the consummation of the Sale Transaction.  On June 24, 2024, the Debtors filed the *Notice of the Occurrence of Sale Closing of the Stalking Horse APA on June 21, 2024* [Docket No. 535], indicating that the Sale Transaction closed on June 21, 2024.

## II.        Negotiations and Settlements with Key Stakeholders.

### A.        The Disinterested Director's Investigation.

9.        Prior to the Petition Date, the Company's board of directors appointed William Transier as a disinterested, independent director of the Debtors (the "Disinterested Director").[5] The scope of the Disinterested Director's authority included, among other things, conducting an investigation (the "Investigation") into potential prepetition claims and causes of action with the assistance of the Debtors' Delaware co-counsel, Klehr Harrison Harvey Branzburg LLP ("Klehr Harrison") and the Debtors' current and former directors, officers, managers, employees, attorneys, financial advisors, consultants, Professionals, or other professionals or advisors of the Debtors in their respective capacities as such, who were serving as such director, officer, manager,

---

[5]    *See* Transier Declaration, ¶ 4.

employee, attorney, financial advisor, consultant, Professional, or other professional or advisor of the Debtors on or after the Petition Date (each a "Debtor Related Party," and together the "Debtor Related Parties").[6]

10.    The Disinterested Director, with Klehr Harrison's assistance, conducted a broad investigation of dealings involving the Debtors and their related parties, including the activities of the Debtors' directors and officers and potential prepetition claims and causes of action.[7]  During the Investigation, the Disinterested Director received and facilitated the review of, in the aggregate, over 100,000 documents comprising approximately 658,000 pages.[8]

11.    The Disinterested Director, through counsel, also interviewed over twenty-five of the Debtors' current and former employees, board members, and advisors, covering a variety of topics that spanned over fifty hours.  The interviews performed during the Investigation lasted more than fifty hours and covered the range of topics most relevant to the Investigation.[9] Throughout the Investigation, at the Disinterested Director's direction, Klehr Harrison engaged with the Committee and their advisors.[10]  Based upon the Investigation, and as a result of negotiations with the Committee, certain parties were expressly identified to be included as "Non-Released Parties" with other parties being "Released Parties" with respect to the Debtor Release and/or the Third-Party Release, each as defined herein.[11]

---

[6]    *See id.*

[7]    *See id.*, ¶ 5.

[8]    *See id.*, ¶ 6.

[9]    *See id.*

[10]    *See id.*, ¶ 7.

[11]    *See id.*, ¶ 11.

B.    **The Committee Settlement By and Between the Debtors and the Committee.**

12.    In October 2024, upon preliminary completion of the Disinterested Director's Investigation, the Debtors engaged in further hard-fought and arm's-length negotiations with the Committee regarding the terms of a consensual chapter 11 plan.  This round of negotiations focused on the scope of the releases and exculpations to be included in the Plan and culminated in the Plan (the "Committee Settlement").[12]

13.    Pursuant to the Committee Settlement, this version of the Plan provided for, among other things, (i) releases of certain parties, including the Debtors and the Debtor Related Parties, (ii) the preservation of potential claims and causes of action against the Non-Released Parties,[13] (iii) authorization of the Wind-Down Debtors to, after the Effective Date, investigate and, if appropriate, pursue potential claims and causes of action with respect the Non-Released Parties, (iv) the continuation of the Debtors' standard document retention practices on and after the Effective Date, and (v) the commercially reasonable cooperation of the Debtors, Wind-Down Debtors, and any directors and officers who are Released Parties in connection with the investigation and pursuit of potential claims and causes of action against the Non-Released Parties. The Plan and the Plan Supplement embody and implement the terms of the Committee Settlement, and the Debtors are seeking approval of the Committee Settlement in connection with the confirmation of the Plan.[14]

---

[12]    *See id.*, ¶ 8.

[13]    "Non-Released Parties" means all former directors, officers, managers, employees, attorneys, financial advisors, consultants, or other professionals or other advisors of the Debtors who did not serve as such director, officer, manager, employee, attorney, financial advisor, consultant, or other professional or other advisor of the Debtors on or after the Petition Date.

[14]    *See* Transier Declaration, ¶¶ 9-12.

### III.    The Solicitation Process and Voting Results.

14.    After the Debtors filed the Plan and the Disclosure Statement, on November 6, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 969] (the "Disclosure Statement Order"), approving, among other things, the Disclosure Statement and the Debtors' solicitation procedures (the "Solicitation Procedures").  The Debtors caused Stretto, Inc. in its capacity as the Debtors' administrative advisor (the "Solicitation Agent") to distribute the Solicitation Packages and to serve the Confirmation Hearing Notice[15] on November 13, 2024 pursuant to the terms of the Disclosure Statement Order.

15.    As more fully described in the Disclosure Statement Order and the Voting Report, and as set forth in the *Affidavit of Service* [Docket No. 1032], the Debtors caused the Solicitation Agent to distribute to Holders of Claims in Class 3—the only Class entitled to vote to accept or reject the Plan (the "Voting Class")—the Solicitation Packages containing, among other items, a Ballot, the Cover Letter, the Disclosure Statement, a letter from the Committee in support of the Plan, the Solicitation Procedures, the Confirmation Hearing Notice, and the Plan Supplement Notice, pursuant to sections 1125 and 1126 of the Bankruptcy Code.[16]  The Solicitation Agent transmitted the Solicitation Packages to Holders in the Voting Class by overnight mail, and such Holders were directed in the Solicitation Procedures, the Disclosure Statement, and the Ballot to

---

[15]  "Solicitation Package" and "Confirmation Hearing Notice" have the meanings given to them in the Solicitation Procedures and the Disclosure Statement Order, as applicable.

[16]  *See* Voting Report, ¶ 8.

follow the instructions contained in the Ballot (and described in the Disclosure Statement) to complete and submit their respective Ballots to cast a vote to accept or reject the Plan.[17]

16.    Each Holder of a Claim in the Voting Class was expressly and conspicuously informed in the Disclosure Statement and the Ballot that if its Ballot was not actually received by the Solicitation Agent on or before December 11, 2024, at 4:00 p.m. (prevailing Eastern Time) (as may be modified, the "Voting Deadline"), then it would not be counted.  Holders of Claims and Interests that are either (a) Unimpaired and conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code or (b) Impaired and deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code (the "Non-Voting Classes") were not provided a Solicitation Package.  In lieu of a Solicitation Package, Holders in the Non-Voting Classes received an applicable notice of non-voting status (the "Non-Voting Status Notices"), an optional form that gives each such Holder of a Claim or Interest the opportunity to opt in to granting the Third-Party Release (the "Opt-In Form"), and the Confirmation Hearing Notice.[18]

17.    Importantly, each Ballot contained the complete text of the third-party release provisions contained in Article X.D of the Plan (the "Third-Party Release"), and detailed instructions on how Holders of Claims in the Voting Class may elect to opt in to the Third-Party Release by checking a clearly-marked check box on the face of the Ballot and returning the Ballot in accordance with the Solicitation Procedures.  A copy of the Ballot is attached hereto as **Exhibit B**.  Similarly, each Holder of a Claim or Interest in the Non-Voting Classes received, in addition to the applicable Non-Voting Status Notice, a returnable Opt-In Form providing the complete text of the Third-Party Release and giving detailed instructions on how Holders of

---

[17]    *See Affidavit of Service* [Docket No. 1032].

[18]    *See* Voting Report, ¶ 9.

Claims and Interests in the Non-Voting Classes may elect to opt in to the Third-Party Release. Copies of the Unimpaired and Impaired Non-Voting Status Notices are attached hereto as **Exhibit C1** and **Exhibit C2**, respectively, and the Unimpaired and Impaired Opt-In Forms are attached hereto as **Exhibit D1** and **Exhibit D2**, respectively.

18.     On December 13, 2024, the Debtors filed the Voting Report, which shows the results of voting on the Plan. **The Voting Class voted to accept the Plan at each Debtor**. Among Holders who voted, 96% by claim amount and 96% by number voted to accept the Plan.[19]

19.     On December 4, 2024, the Debtors filed the Initial Plan Supplement.[20]   On December 5, 2024, the Debtors caused a notice of the Initial Plan Supplement to be transmitted to all parties listed on the Debtors' master service list.[21]  On December 10, 2024, the Debtors filed the First Amended Plan Supplement and caused notice thereof to be transmitted to all parties on the Debtors' master service list.[22]

20.     Concurrently with the filing of this Memorandum, the Debtors submitted a proposed Confirmation Order.

<u>**ARGUMENT**</u>

21.     The Debtors request that the Bankruptcy Court confirm the Plan, including its release, exculpation, and injunction provisions, as satisfying the applicable requirements of the Bankruptcy Code by a preponderance of the evidence.

---

[19]   *See* Voting Report, ¶ 14, <u>Ex. A</u>.

[20]   *See Notice of Filing of Plan Supplement* [Docket No. 1077] (the "<u>Initial Plan Supplement</u>").

[21]   *See Affidavit of Service* [Docket No. 1089].

[22]   *See Notice of Filing of First Amended Plan Supplement* [Docket No. 1107] (the "<u>First Amended Plan Supplement</u>," and, together with the Initial Plan Supplement, the "<u>Plan Supplement</u>"); *Affidavit of Service* [Docket No. 1110].

**IV.    The Deemed Consolidation Solely for Purposes of Voting, Confirmation, and Distribution Under the Plan Does Not Constitute Impermissible Substantive Consolidation.**

22.     The Bankruptcy Code allows for joint administration without violating the corporate separateness principal.  When a group of debtors files for chapter 11, the Bankruptcy Code authorizes, under certain circumstances, that the bankruptcy cases be conducted under one case, through joint administration.   Such consolidation is not meant to disrupt the corporate separateness between the debtor entities and the creditors of each debtor "continue to look to that debtor for payment of their claims."[23]   Indeed, when a corporate group enterprise is managed by one particular entity on an integrated basis, it is "reasonable and administratively convenient to propose a joint plan."[24]

23.     As the Third Circuit Court of Appeals explained in *In re Genesis Health Ventures Inc.*:

> Substantive consolidation treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for enter-entity liabilities, which are erased). The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor.   Because its effect radically rearranges legal boundaries, assets and liabilities, substantive consolidation is typically a sparingly used remedy for debtors' conduct that blurs separateness so significantly that either the debtors' assets are so scrambled that unscrambling them is cost, time and energy prohibitive or creditors already perceive the debtors as simply a single unit and deal with them so.[25]

24.     In *Genesis Health Ventures*, the U.S. Trustee argued that the "deemed consolidation" provision of the debtors' chapter 11 plan, which deemed the debtor consolidated

---

[23]    *In re Transwest Resort Properties Inc.*, 881 F. 3d 724, 731 (9th Cir. 2018) (Friedland, J., concurring).

[24]    *In re Charter Commc'ns*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009).

[25]    *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 423 (3d Cir. 2005).

for the purposes of voting and distribution constituted "de facto substantive consolidation."[26]  The Third Circuit Court of Appeals ruled against the U.S. Trustee, finding that "deemed consolidation left no effect on the Debtors (including their legal and organizational structures) and the rights of claimholders."[27]  The court noted that the *Genesis Health Ventures* debtors had "made clear…that [the deemed consolidation provision] does not result in substantive consolidation," and that the effect of the provision was to ensure that "voting and distribution were streamlined."[28]

25.    In *In re Sabine Gas & Oil*, the United States Bankruptcy Court for the Southern District of New York faced a similar argument,[29] which posited that the plan effected a *de facto* substantive consolidation because it (a) eliminated all guarantees and joint and several liability for purposes of distribution under the plan,[30] (b) gave the debtors the option to cancel intercompany claims,[31] and (c) provided for a single distribution to creditors in respect of any claims against any of the various debtor estates without any allocation for the relative values of the estates.[32]  The court held that these facts did not constitute substantive consolidation, reasoning that the deemed elimination of guarantees and joint and several liability were appropriate because the ballots and

---

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

[29]    555 B.R. 180, 317 (Bankr. S.D.N.Y. 2016).

[30]    *See* Second Amended Joint Chapter 11 Plan of Reorganization of Sabine Oil & Gas Corporation and Its Debtor Affiliates at Art. VI.B, *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC), Docket No. 1359, <u>Ex. 1</u> (Bankr. S.D.N.Y. July 28, 2016).

[31]    *See id.* at Art. III.B.12.b.

[32]    *See id.* at Art. III.B.

voting tabulation were recorded on a debtor-by-debtor basis, and because distributions under the plan were otherwise on a debtor-by-debtor basis.[33]

26.     This Court has approved similar relief in numerous other recent comparable cases.[34]  Here, the Plan explicitly states that it does not provide for a substantive consolidation of the Debtors' Estates.[35]  Instead, the Plan applies separately for each of the Debtors, and the classification of Claims and Interests under the Plan applies separately to each of the Debtors.  The Debtors, in consultation with the Committee, determined that consolidation of the Debtors solely for purposes of voting, confirmation, and distribution, but not for any other purpose would be fair and appropriate under the circumstances and in light of the Debtors' capital structure.  Because, as determined by *Genesis Health Ventures*, the Plan does not effect a substantive consolidation of the Debtors' Estates, and because the Plan consolidates claims ***solely*** for the limited purposes of voting, confirmation, and distribution, the Debtors submit that the Plan provisions on deemed consolidation are equitable under the circumstances, are consistent with precedent and practice in this Court, and should be approved.

---

[33]    *See Sabine*, 555 B.R. at 318.

[34]    *See, e.g.*, *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. June 28, 2024); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 29, 2024); *In re Zymergen Inc.*, No. 23-11661 (KBO) (Bankr. D. Del. Feb. 5, 2024); *In re Western Global Airlines, Inc.*, No. 23-11093 (KBO) (Bankr. D. Del. Nov. 11, 2023); *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. Oct. 24, 2023); *In re Big Village Holding LLC*, No. 23-10174 (CTG) (Bankr. D. Del. Aug. 24, 2023); *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023); *In re Lucky Bucks, LLC*, No. 23-10758 (KBO) (Bankr. D. Del. July 28, 2023); *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. May 26, 2023); *In re Stimwave Technologies Inc.*, No. 22-10541 (KBO) (Bankr. D. Del. Mar. 21, 2023); *In re TECT Aerospace Group Holdings, Inc.*, No. 21-10670 (KBO) (Bankr. D. Del. Mar. 8, 2022); *In re Yogaworks, Inc.*, No. 20-12599 (KBO) (Bankr. D. Del. May 5, 2021).

[35]    *See* Plan, Art. I.G.

## V.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and Should Be Confirmed.[36]

27.    To confirm the Plan, the Bankruptcy Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[37] As described in detail below, the Plan complies with all relevant provisions of the Bankruptcy Code and all other applicable law.

### A.    The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)).

28.    Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."[38]  The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a chapter 11 plan, respectively.[39]  As explained below, the Plan complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other applicable provisions.

---

36  *See In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *4 (Bankr. D. Del. Apr. 29, 2010) (holding that the plan proponent must prove each element of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 148 (Bankr. D.N.J. 2010) ("The plan proponent bears the burden to show by a preponderance of the evidence that the proposed Chapter 11 plan has a reasonable probability of success, and is more than a visionary scheme") (citing *In re Wiersma*, 227 F. App'x 603, 606 (9th Cir. 2007)) (internal quotation marks omitted).

37  *See In re Armstrong World Indus.*, 348 B.R. 111, 120 (Bankr. D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 (Bankr. D. Del. 2001).

38  11 U.S.C. § 1129(a)(1).

39  S. Rep. No. 95-989, at 126, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123.").

1.     **The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.**

29.     The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, that "[e]xcept as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[40]  For a classification structure to satisfy section 1122 of the Bankruptcy Code, substantially similar claims or interests need not be grouped in the same class.[41]  Instead, claims or interests placed in a particular class must be substantially similar to each other.[42]  Courts in this jurisdiction and others have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so.[43]

30.     The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into separate Classes, with Claims and Interests in each class differing from the Claims and Interests in each

---

40   11 U.S.C. § 1122(a).

41   *See, e.g.*, *In re Armstrong World*, 348 B.R. at 159.

42   *Id.*

43   Courts have identified grounds justifying separate classification, including where members of a class possess different legal rights or there are good business reasons for separate classification.  *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 158–59 (3d Cir. 1993) (as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–611 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because the classification scheme had a rational basis on account of the bankruptcy court-approved settlement).

other class in a legal or factual way or based on other relevant criteria.[44]  Specifically, the Plan

provides for the separate classification of Claims and Interests into the following Classes:

| Class | Claim / Equity Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| 5 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| 6 | Existing Equity Interests in Express | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

31.     Here, each of the Claims and Interests in each Class is substantially similar to the

other Claims and Interests in such Class.  The Plan's classification scheme generally corresponds

to the Debtors' corporate and capital structure, thereby taking into account the relative priority

among Claims and Interests, including the relative priorities between secured and unsecured

claims.  Other aspects of the classification scheme are related to the different legal or factual

circumstances of the Claims or Interests within each Class, and no unfair discrimination exists

between or among Holders of Claims and Interests.  The Plan separately classifies the Claims and

Interests because each Holder of such Claims or Interests may hold (or may have held) rights in

the Debtors' Estates legally dissimilar to the Claims or Interests in other Classes or because

substantial administrative convenience resulted from such classification.[45]

---

44  *See* Plan, Art. III.

45  *See* Kamlani Declaration, ¶ 16.

32.    Accordingly, the Claims or Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in each such Class.  Furthermore, the distinctions among Classes are based on valid business, factual, and legal reasons.  The Plan fully complies with and satisfies section 1122(a) of the Bankruptcy Code.

### 2.    The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.

#### a.    Designation of Classes of Claims and Equity Interests, Specification of Unimpaired Classes, and Treatment of Impaired Classes (§ 1123(a)(1)–(3)).

33.    The first three requirements of section 1123(a) of the Bankruptcy Code are that a plan specify (a) the classification of claims and interests, (b) whether such claims and interests are impaired or unimpaired, and (c) the treatment of any impaired class under the Plan.[46]  Article III of the Plan sets forth these specifications in detail, in satisfaction of these three requirements.[47]

#### b.    Equal Treatment Within Classes (§ 1123(a)(4)).

34.    Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[48]  The Plan satisfies this requirement because Holders of Allowed Claims or Interests will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class.[49]

---

[46]    11 U.S.C. § 1123(a)(1)–(3).

[47]    *See* Plan, Art. III.A, III.B.

[48]    11 U.S.C. § 1123(a)(4).

[49]    *See* Plan, Art. III.B.

### c.    Means for Implementation (§ 1123(a)(5)).

35.    Section 1123(a)(5) of the Bankruptcy Code requires that the Plan must provide "adequate means" for its implementation.[50]  The Plan satisfies this requirement because Article IV of the Plan, among other provisions, sets forth the means by which the Plan will be implemented.[51] Among other things, Article IV of the Plan describes (a) the sources of consideration for Plan distributions,[52] (b) the vesting of assets in the Wind-Down Debtors and the authorization for the Wind-Down Debtors and the Plan Administrator, as applicable, to take corporate actions necessary to effectuate the Plan,[53] (c) the cancellation of notes, instruments, certificates, and other documents and existing securities,[54] and (d) the preservation and retention of certain Causes of Action.[55]  The Plan also provides for the appointment of the Plan Administrator to manage the Wind-Down Debtors, and describes the Plan Administrator's duties and compensation.  The precise terms governing the execution of these transactions are set forth in the applicable Definitive Documents and/or forms of agreements included in the Plan Supplement.[56]  Thus, the Plan sets forth adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.

---

[50]   11 U.S.C. § 1123(a)(5).

[51]   *See* Plan, Art. IV.

[52]   *See* Plan, Art. IV.B.1.

[53]   *See* Plan, Art. IV.C, IV.E.

[54]   *See* Plan, Art. IV.F.

[55]   *See* Plan, Art. IV.I.

[56]   *See* Plan Supplement.

### d.    Issuance of Non-Voting Securities (§ 1123(a)(6)).

36.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities.[57]  Because the Debtors are not issuing any new securities under the Plan, section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan.

### e.    Directors and Officers (§ 1123(a)(7)).

37.    Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions be "consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan."[58]  The Plan satisfies this requirement by providing that, on the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be immediately and automatically deemed appointed as the sole director and the sole officer of each of the Wind-Down Debtors and shall succeed to the powers of the Debtors' directors and officers.[59]  The manner for selection of the Plan Administrator is set forth in the Plan and the Plan Supplement.[60]  The Debtors also filed the Plan Administrator Agreement in the Plan Supplement, which provides the identity of the Plan Administrator.[61]    Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code, and no party has asserted otherwise.

---

[57]    11 U.S.C. § 1123(a)(6).

[58]    11 U.S.C. § 1123(a)(7).

[59]    *See* Plan, Art. IV.C.2, Art. VII.

[60]    *See* Plan, Art. VII.A.1; Plan Supplement.

[61]    *See* Plan Supplement.

3. **The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.**

38.     Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.[62]

a. **The Plan Appropriately Implements Settlements of Claims and Causes of Action in Compliance with the Bankruptcy Code and the Bankruptcy Rules.**

39.     The Plan implements the Committee Settlement by and among the Debtors and the Committee.  In each case, the applicable settlement parties worked collaboratively to maximize recoveries to unsecured creditors and ensure timely, cost-effective confirmation and Wind-Down processes.  The Committee Settlement is the product of a rigorous and productive negotiation process among the Debtors and their stakeholders and resolve all disputes between the Debtors and the Committee relating to the chapter 11 cases.  The terms of the Committee Settlement represent a fair exchange among the applicable settlement parties and benefit all stakeholders and parties in interest.

40.     Section 1123(b)(3) of the Bankruptcy Code provides that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[63]  In order to "minimize litigation and expedite the administration of the bankruptcy estate

---

62    *See* 11 U.S.C. §§ 1123(b)(1)–(3), (6).

63    11 U.S.C. § 1123(b)(3)(A).

'compromises are favored in bankruptcy.'"[64]    Whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate."[65]    In exercising that discretion, the Third Circuit has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[66] The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'"[67]

41.    The four *Martin* factors weigh heavily in favor of approval of the Committee Settlement embodied in the Plan.  The Committee Settlement settles complex, fact-intensive matters that may otherwise have required costly and protracted litigation to resolve, with an uncertain outcome.  It is undeniable that litigating chapter 11 disputes with the applicable settlement parties would have been complex and time consuming and could unnecessarily extend the chapter 11 cases while administrative costs continued to be incurred, thereby eroding Estate value and creditor recoveries.  Considering the costs and risks of litigation (and the likely disputes over which party would bear such costs and risks), the Debtors, after careful review and analysis

---

[64]    *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. rev. 1993)); *see also In re World Health Alts., Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements are "generally favored in bankruptcy").

[65]    *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

[66]    *In re Martin*, 91 F.3d at 393; *see also, e.g., Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

[67]    *World Health*, 344 B.R. at 296 (internal citations and some quotation marks omitted); *see also, e.g., In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

with the assistance of their advisors, determined in their sound business judgment to use their commercially reasonable best efforts to provide cooperation necessary to maximize the value of the Retained Causes of Action and any Claims or Causes of Action against the Non-Released Parties.

42.    The Committee Settlement provides consensus and finality between significant economic stakeholders in these chapter 11 cases, which is reflected by the overwhelming support the Plan garnered.  The Committee Settlement avoids costly and protracted litigation, the cost of which would significantly diminish returns to all stakeholders.  Accordingly, the Plan's discretionary settlement provisions satisfy the requirements of section 1123 of the Bankruptcy Code, and, in light of the foregoing, the Committee Settlement is in the best interests of the Debtors' Estates and should be approved.

> **b.    The Plan's Release, Exculpation, and Injunction Provisions Satisfy Section 1123(b) of the Bankruptcy Code.**

43.    The Plan includes certain Debtor and third-party releases, an exculpation provision, and an injunction provision.  These discretionary provisions are proper because, among other reasons, they are the product of extensive good-faith, arm's-length negotiations, are consistent with applicable precedent because they are granted by the Releasing Parties (as defined in the Plan) on an opt-in basis, and are overwhelmingly supported by the Debtors and their key stakeholders. Further, these provisions were fully and conspicuously disclosed to all parties in interest and the world through the Confirmation Hearing Notice, which excerpted in bold font the full text of the releases, the exculpation, and the injunction provision as set forth in the Plan.  Parties in interest also received conspicuous notice of the releases through the Ballots and the Opt-In Forms, each of which excerpt in bold font the full text of the Third-Party Release (as defined herein).

### (i)    The Debtor Release Is Appropriate.

44.    The Bankruptcy Code supports the inclusion of debtor releases in a chapter 11 plan. Section 1123(b)(3)(A) of the Bankruptcy Code states that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[68] Furthermore, a debtor may release a claim under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[69]  In determining whether a debtor release is proper, courts in Delaware and elsewhere generally may consider the following five factors:

    a.    whether the non-debtor has made a substantial contribution to the debtor's reorganization;

    b.    whether the release is essential to the debtor's reorganization;

    c.    whether there is an agreement by a substantial majority of creditors to support the release;

    d.    whether there is an identity of interest between the debtor and the third party; and

    e.    whether a plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.[70]

---

[68]    *See In re Coram Healthcare Corp.*, 315 B.R. at 334–35.  Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "is above the lowest point in the range of reasonableness." *Id.* at 330 (internal citation omitted); *see also In re Exaeris, Inc.*, 380 B.R. 741, 746–47 (Bankr. D. Del. 2008) (internal citation omitted); *see Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point in the range of reasonableness") (alteration in original) (internal citation omitted); *In re World Health*, 344 B.R. at 296 (stating that settlement must be within reasonable range of litigation possibilities) (internal citation omitted).

[69]    *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) (internal citation omitted); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether the compromise is fair, reasonable, and in the best interest of the estate.") (internal citation omitted).

[70]    *See, e.g., In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.,* 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)); *In re Spansion, Inc.*, 426 B.R. at 143 n.47 (citing the *Zenith* factors).

Not all of the above factors need to be satisfied for a court to approve a debtor release.[71]

45.     Article X.C of the Plan provides for releases by the Debtors, as of the Effective Date, of, among other things, certain Claims, rights, and Causes of Action that the Debtors and the Wind-Down Debtors may have against the Released Parties (the "Debtor Release").  The scope of the Debtor Release is narrowly tailored to exclude any claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.[72]  The Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.  The Debtor Release meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' Estates, the product of extensive arm's-length negotiations, and was critical to obtaining support for the Plan.  Indeed, the Debtor Release was negotiated as part of the Plan and is an indispensable component to achieve final resolution of potential disputes that would otherwise negatively affect the Debtors' Estates and the recoveries available to creditors under the Plan.

46.     *First*, each Released Party has made a contribution to the Debtors' Estates.  The Released Parties played an integral role in the Debtors' marketing and sale process, and in the formulation of the Plan.  The Released Parties not only expended significant time and resources analyzing and negotiating the terms of the DIP Documents, the Sale Transaction Documentation, and the Plan, but also gave up material economic interests to ensure the success of the Debtors' chapter 11 cases.  For example, the DIP Lenders, the DIP Agents, the Prepetition Lenders, and the

---

[71]  *See, e.g.*, *In re Wash. Mut.*, 442 B.R. at 346 ("These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the [c]ourt's determination of fairness.") (internal citation omitted); *In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that *Zenith* factors are not exclusive or conjunctive requirements).

[72]  *See* Plan, Art. X.C.

Prepetition Agents contributed value in the form of their agreement to provide the DIP Facilities and consent to the Debtors' use of cash collateral. The Second Lien Secured Parties[73] also contributed the right to receive $295,000.00 in cash for the benefit of general unsecured creditors under the Plan. The Debtors' directors, officers, employees, professionals, and other agents who served in such capacity on or after the Petition Date have been involved in negotiating, formulating, and implementing the Sale Transaction and the Plan. These measures, among others, improved the Debtors' liquidity throughout these chapter 11 cases, enabled the Debtors to consummate a value-maximizing going-concern Sale Transaction, and have allowed the Debtors to chart a path toward an orderly and cost-efficient Wind-Down on the terms set forth in the Plan. The Debtor Release, therefore, is essential to the Debtors' Plan.

47. *Second*, the Debtor Release is essential to the success of the Debtors' Plan because it constitutes an integral term of the Plan. Indeed, absent the Debtor Release, it is highly unlikely the Debtors would have been able build the level of consensus with respect to the Plan and the transactions contemplated thereby. Importantly, the Debtor Release is the product of arms-length negotiations between the Debtors and their key stakeholders and is limited in scope. The Debtor Release does not release any entity other than the Released Parties, their respective Affiliates, and each of their Related Parties (to the extent such Related Parties would be obligated to grant a release under principles of agency if they were so directed by the Releasing Parties to which they are related) or Debtor Related Parties, as applicable, and does not release the Claims and Causes

---

[73] "Second Lien Secured Parties" means, collectively, the Second Lien DIP Term Secured Parties and the Second Lien Prepetition Term Secured Parties, each as defined in the Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief [Docket No. 419] (the "Final DIP Order").

of Action expressly set forth and preserved by the Plan.[74]  The Debtors believe the Debtor Release

is appropriate in light of the risk, expense, and delay of pursuing any such Causes of Action with

respect to the Released Parties as compared to the results and benefits achieved under the Plan.

The Debtor Release provides finality, underpins the Committee Settlement and various

compromises of issues achieved by the Plan, and avoids significant delay in consummating the

Plan.  Therefore, the inclusion of the Debtor Release is worthwhile and inures to the benefit of all

the Debtors' stakeholders.

48.     **Third,** as evidenced by the Voting Report and noted herein, the Debtors'

stakeholders overwhelmingly support the Plan, and no economic stakeholder has objected to the

Debtor Release contained in the Plan.  The single Voting Class voted to accept the Plan.[75]  Given

the critical nature of the Debtor Release, this degree of consensus evidences the Debtors'

stakeholders' support of for the Debtor Release and Plan.

49.     **Fourth**, an identity of interest exists between the Debtors and the Released Parties.

Each Released Party, as a stakeholder and critical participant in the Plan process, shares a common

goal with the Debtors in seeing the Plan succeed.  Like the Debtors, these parties seek to confirm

the Plan and implement the transactions contemplated thereunder.  Moreover, any directors and

officers that are Released Parties have agreed under the Plan to cooperate with the investigation,

commencement, and pursuit of the Retained Causes of Action.[76]

---

[74]  *See* Plan, Art. X.C.

[75]  *See* Voting Report, Ex. A.

[76]  *See* Plan Art. V.F; *see also In re Indianapolis Downs*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) ("An identity of
      interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release.").

50.     For these reasons, the Debtor Release is justified, is in the best interests of creditors and all stakeholders, is an integral part of the Plan, and satisfies key factors considered by courts in determining whether a debtor release is proper.

### (ii)     The Third-Party Release Is Consensual and Appropriate.

51.     The Plan also provides for the Releasing Parties' release of the Released Parties to the extent set forth in the Plan (the "Third-Party Release").[77]  Here, the Plan includes, among other specifically enumerated entities, the following persons as "Releasing Parties" under the Plan and the Third-Party Release:  (a) each of the Debtors; (b) each of the Wind-Down Debtors; (c) the DIP Lenders; (d) the DIP Agents; (e) the Prepetition Lenders; (f) the Prepetition Agents; (g) the Committee and each of its members; (h) all Holders of Claims who affirmatively opt in to the releases provided by the Plan; (i) each current and former Affiliate of each Entity in clauses (a) through clause (h); and (l) each Related Party of each Entity in the foregoing clauses (a) through clause (k); *provided* that a Related Party of a Person or Entity in the foregoing clauses (a) through (i) is a Releasing Party solely to the extent that such Affiliate or Related Party would be obligated to grant a release under principles of agency if it were so directed by such Person or Entity in the foregoing clauses (a) through (i) to whom they are related; *provided, that* the Non-Released Parties shall not be "Releasing Parties" regardless of whether such Non-Released Party would otherwise constitute a "Releasing Party."[78]  The scope of the Third-Party Release is narrowly tailored to exclude any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have

---

77    *See* Plan, Art. X.I; *see also* Transier Declaration, ¶ 19-21.

78    *See* Plan, Art. I.A.136.

constituted actual fraud, gross negligence, or willful misconduct.[79]  The Third-Party Release is

appropriate under the circumstances and should be approved because it is consistent with Third

Circuit law, integral to the Plan, and is granted on a consensual basis.

52.     Courts in this jurisdiction routinely approve such release provisions if, as here, they

are consensual and appropriately tailored.[80]  Consensual releases are permissible on the basis of

general principles of contract law.[81]  The law is clear that a release is consensual where parties

have received sufficient notice and have had an opportunity to object and opt in to the releases.  In

*Emerge*, this Court recognized that a release by a non-debtor third party is consensual where the

releasing party indicates its consent by an affirmative act.[82]  Since *Emerge*, this Court and others

have approved numerous third-party releases as consensual where the releasing third parties were

required to indicate their consent by returning a form indicating the party's desire to participate in

the third-party release.[83]

53.     Furthermore, the Supreme Court's decision in *Purdue* is not at odds with the release

provisions commonly approved by this Court, and its holding is generally inapplicable to the

---

[79]   *See* Plan, Art. X.D.

[80]   *See, e.g.*, *In re Wash. Mut.*, 442 B.R. at 352 (observing that consensual third-party releases are permissible); *In re Zenith Elecs.*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of the plan).

[81]   *See In re Indianapolis Downs*, 486 B.R. at 305.

[82]   *Compare In re Emerge Energy Services LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (declining to approve third-party release where holders of claims and interests were presumed to consent to participation in the third-party release if they did not return an opt-out form, regardless of whether such holder returned a ballot); *with, e.g.*, *In re AeroCision Parent, LLC*, No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) (approving a consensual third-party release that included, among others, all holders of claims who return a ballot voting to accept the plan, with no option to opt out); *Virgin Orbit*, No. 23-10405 (KBO) (same); *Lucky Bucks,* No. 23-10758 (KBO) (same, also including all holders of claims who return a ballot voting to reject plan who do not opt out).

[83]   *See, e.g.*, *In re Casa Systems, Inc.*, No. 24-10695 (KBO) (Bankr. D. Del. June 3, 2024); *In re Restoration Forest Products Group, Inc.*, No. 24-10120 (KBO) (Bankr. D. Del. Mar. 27, 2024); *Zymergen*, No. 23-11661 (KBO); *AeroCision*, No. 23-11032 (KBO); *Virgin Orbit*, No. 23-10405 (KBO); *Stimwave*, No. 22-10541 (KBO); *Alto Maipo*, No. 21-11507 (KBO) Bankr. D. Del. May 13, 2022).

release provisions contemplated by the Debtors.  In *Purdue*, the Supreme Court made clear the narrow scope of the decision by pointing out that "nothing in this opinion should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan."[84]  Therefore, *Purdue's* applicability is limited to cases where a debtor or debtors seek non-consensual third-party releases.

54.    Here, all parties in interest were provided extensive notice of these chapter 11 cases, the Plan, and the deadline to object to confirmation of the Plan.  Moreover, the Disclosure Statement, the Cover Letter included with the Solicitation Packages, the Confirmation Hearing Notice, the Ballot, the Non-Voting Status Notices, and the Opt-In Forms provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Releases.  The Debtors required all Holders of Claims or Interests to affirmatively opt in to the Third-Party Releases by either checking a box on the Ballot and returning the Ballot, or by completing and returning the applicable Opt-In Form, and provided each Holder of a Claim or Interest with ample notice and instructions on how to do so.  As of the time of filing, sixty-eight parties have affirmatively opted into the Third-Party Release by completing and returning a Ballot with the applicable box checked, or by completing and returning the applicable Opt-In Form.[85]

55.    For all of these reasons, the inclusion of "Holders of Claims who affirmatively opt in to the releases provided by the Plan" as "Releasing Parties" under the Plan and with respect to the Third-Party Release is entirely appropriate and should be approved.  Importantly, the Confirmation Hearing Notice, the Ballots, and the Opt-In Form, as applicable, quoted the entirely of the Third-Party Release in bold, conspicuous font, and clearly provided such Holders with

---

[84]    144 S. Ct. at 2074 (2024).

[85]    *See* Voting Report, ¶ 15.

detailed instructions on how to opt in to the Third-Party Release.  Thus, affected parties were on notice of the Third-Party Release, including the option to opt into the Third-Party Release.  All Holders of Claims and Interests also had the opportunity to object to the Third-Party Release by timely filing an objection to the Plan.  The Third-Party Release is therefore consensual as to all creditors and interest holders who affirmatively opted in to the Third-Party Release.

56.     Moreover, the parties bound by the Third-Party Release have received sufficient consideration in exchange for the release of their Claims against the Released Parties to justify the Third-Party Release, which was a critically negotiated provision of the Plan and the Committee Settlement and was necessary to secure support for the Plan and the Debtors' chapter 11 objectives among the Committee, the DIP Secured Parties, and the Prepetition Secured Parties.  The Third-Party Release brought key stakeholders to the table for negotiations around the DIP Facilities, the Sale Transaction, the Plan, and the Committee Settlement, each of which contributed to the Debtors' success in chapter 11.  As noted in the Transier Declaration, the Third-Party Release was critical to incentivizing key parties to support the Plan.[86]  And importantly, the Third-Party Release only applies to parties who have (a) actively participated in the chapter 11 or Plan process, including in the formulation and negotiation of the Third-Party Release, or (b) manifested their affirmative consent to the Third-Party Release.  Thus, the Third-Party Release is wholly consensual and the factors governing non-consensual third-party releases under *In re Continental* and its progeny are inapplicable.[87]

57.     The Debtors submit that the inclusion of "Affiliates" and "Related Parties" as "Releasing Parties" is also appropriate, even though those parties have not necessarily manifested

---

[86]     *See* Transier Declaration, ¶¶ 20.

[87]     *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 213-14 (3d Cir. 2000).

consent to the Third-Party Release.[88]  Courts in this district regularly approve such provisions, so long as the Plan specifies that such entities are "Releasing Parties" solely to the extent they can be bound under principles of applicable agency law by the "Releasing Party" to which they are related, so that a hypothetical future court may intelligibly interpret the Plan to determine if a party was released or not.[89]  Here, the Plan provides that "Affiliates" and "Related Parties" are "Releasing Parties" "solely to the extent that such Related Party would be obligated to grant a release under principles of agency if it were so directed by such Person or Entity . . . to whom they are related."[90]  Therefore, the inclusion of "Affiliates," "Debtor Related Parties," and "Related Parties" in the Third-Party Release should be approved.

58.     For the foregoing reasons, the Third-Party Release is consensual, permissible, and should be approved.

### (iii)     The Exculpation Provision Is Appropriate.

59.     Exculpation provisions that apply only to estate fiduciaries and are limited to claims not involving actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.[91]  Unlike third-party releases, exculpation provisions do not affect the liability of third parties *per se*, but rather set a standard of

---

88    *See* Plan, Art. I.A.136.

89    *See, e.g.*, *Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO).

90    Plan, Art. I.A.136.

91    *See In re Washington Mutual, Inc.*, 442 B.R. 314, 350–51 (Bankr. D. Del. 2011) (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate); *see also In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) (approving exculpation of related parties "to the extent they are estate fiduciaries").

care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.[92]

60.     Article X.E of the Plan provides for the exculpation of the Exculpated Parties.[93] The Exculpation is fair and appropriate under both applicable law and the facts and circumstances of these chapter 11 cases.  The Exculpated Parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtors, and they should be entitled to protection from exposure to lawsuits filed by disgruntled creditors or other unsatisfied parties.

61.     Moreover, the Exculpation and the liability standard it sets represents a conclusion of law that flows logically from certain findings of fact that the Court must reach in confirming the Plan as it relates to the Debtors.   As discussed above, this Court must find, under section 1129(a)(2) of the Bankruptcy Code, that the Debtors have complied with the applicable provisions of the Bankruptcy Code.  Additionally, this Court must find, under section 1129(a)(3) of the Bankruptcy Code, that the Plan has been proposed in good faith and not by any means forbidden by law.  These findings apply to the Debtors and, by extension, to certain of the Debtors' officers, directors, employees, and professionals.  Furthermore, these findings imply that the Plan

---

[92]   *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.*, 2010 WL 2745964, at *10 (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion*, No. 09-10690 (KJC), 2010 WL 2905001, at *16 (Bankr. D. Del. 2010) (same).

[93]   Article X.E of the Plan sets forth the terms of the exculpation of the Exculpated Parties.  Article I.A.79 of the Plan defines "Exculpated Parties" as, to the extent they are estate fiduciaries, and in each case in their respective capacities as such on or after the Petition Date through and including the Effective Date:  (a) the Debtors; (b) the Committee and each of its members; (c) the DIP Agents; (d) the DIP Lenders; (e) the Purchaser, and (f) with respect to each of the foregoing in clauses (a) through (e), each such Entity's current and former Affiliates, and each such Entity's and its current and former Affiliates' current and former subsidiaries, officers, directors (including any sub-committee of directors), managers, principals, members (including ex officio members and managing members), employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, and other professionals.

was negotiated at arm's-length and in good faith.  Where such findings are made, parties who have been actively involved in such negotiations should be protected from collateral attack.

62.    Here, the Debtors and their officers, directors, and professionals who served in such capacities on or after the Petition Date actively negotiated with Holders of Claims and Interests across the Debtors' capital structure including the Committee, among others, in connection with the formulating, and/or implementing the DIP Facilities, the Sale Transaction, and the Plan.[94]  Such negotiations were extensive and held at arms'-length.[95]  As a result, the Debtors have largely achieved their chapter 11 objectives, and the Plan enjoys broad support from Holders of Claims entitled to vote.[96]  The Exculpated Parties played a critical role in negotiating, formulating, and implementing the DIP Facilities, the Sale Transaction, the Committee Settlement, the Disclosure Statement, the Plan, and related documents in furtherance of the Wind-Down Transactions.[97]  Accordingly, the Court's findings of good faith vis-à-vis the Debtors' chapter 11 cases should also extend to the Exculpated Parties.

63.    In addition, the promise of exculpation played a significant role in facilitating negotiations on the Plan.  As set forth in the Plan, the scope of the Exculpation is narrowly tailored to exclude actual fraud, willful misconduct, or gross negligence, relates only to acts or omissions in the Exculpated Party's capacity as an Estate fiduciary in connection with or arising out of the Debtors' restructuring, and is limited to the duration of time between the Petition Date and

---

[94]    *See* Transier Confirmation Decl., ¶ 22.

[95]    *See id.*, ¶ 22.

[96]    *See, e.g.*, Voting Report, Ex. A.

[97]    *See* June 23, 2016 Hr'g Tr., 58:18–19, *In re Verso Corp.*, No. 16-10163 (KG), Docket No. 1231 (Bankr. D. Del. June 24, 2016) ("[T]he debtors did not do this alone; they did it with the help of many others.").

Effective Date, and ultimately inures to the benefit of only those parties traditionally considered Estate fiduciaries and their agents.[98]

64.    Accordingly, under the circumstances, it is appropriate for the Court to approve the exculpation provision and to find that the Exculpated Parties have acted in good faith and in compliance with the law.[99]

### (iv)    The Injunction Provision Is Appropriate.

65.    The Injunction Provision set forth in Article X.F of the Plan implements the Plan's release and exculpation provisions.  Courts in this district hold that, under a chapter 11 plan of liquidation, although a debtor may not receive a discharge under section 524 of the Bankruptcy Code in the form of "***permanent*** injunctive relief," a liquidating debtor may nevertheless receive "***temporary*** injunctive relief that will remain in effect only as long as those entities hold assets."[100]

66.    Here, on one hand, the Injunction Provision ***temporarily*** enjoins all Entities from and after the Effective Date, through and until the date upon which all remaining property of the Debtors' Estates vests into the Wind-Down Debtors, and has been liquidated and distributed in accordance with the terms of the Plan, from commencing or maintaining ***against the Debtors or the Wind-Down Debtors*** on account of, or in connection with, or with respect to, any Claims or Interests released, exculpated, or settled under the Plan.[101]  On the other hand, the Injunction Provision ***permanently*** enjoins all Persons or Entities who have held, hold, or may hold Claims or interests that are treated under the Plan on and after the Effective Date from enforcing, pursuing,

---

[98]    *See* Plan, Art. X.E.

[99]    *See In re PWS Holding Corp.*, 228 F.3d at 246–47 (approving plan exculpation provision exception for willful misconduct and gross negligence); *In re Indianapolis Downs*, 486 B.R. at 306 (same).

[100]    Letter Ruling at 3, *In re Kabbage Inc.*, No. 22-10951 (CTG) (Bankr. D. Del. Mar. 15, 2023).

[101]    *See* Plan, Art. X.F.

or seeking any setoff or relief with respect to such Claim or Interest from the Debtors, the Estates, the Purchasers, or the Wind-Down Debtors, except for the receipt of the payments or distributions, if any, that are contemplated by the Plan from the Wind-Down Debtors, or otherwise contemplated under the Sale Order.[102]  Thus, the Injunction Provision is consistent with applicable authority and practice in this district, and is a necessary part of the Plan precisely because it enforces the release and exculpation provisions that are centrally important to the Plan.  While the Plan is consensual, the Injunction is essential to bind the good-faith agreement between the Debtors and their stakeholders, as embodied in the Plan, with finality.  Furthermore, the Injunction Provision is narrowly tailored to achieve its purpose.  For all of these reasons, the Injunction Provision and the Plan should be approved.

### 4.     The Plan Complies with Section 1123(d) of the Bankruptcy Code.

67.     Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[103]

68.     The Plan complies with section 1123(d) of the Bankruptcy Code.  The Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan, by payment of the default amount, if any, on the Effective Date, subject to the limitations described in the Plan or in the Confirmation Order.[104]  Notwithstanding anything to the contrary in the Plan, in accordance with section 365 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors, as applicable, reserve the right to

---

[102]  *See id.*

[103]  11 U.S.C. § 1123(d).

[104]  *See* Plan, Art. V.C.

alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases, with the consent of the applicable Purchaser, (a) to add or remove any Executory Contract or Unexpired Lease to or from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Confirmation Date, and (b) to remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time through and including the Effective Date, subject to the temporal limitations described in the Plan.[105]

**B.     The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).**

69.     The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a chapter 11 plan comply with the applicable provisions of the Bankruptcy Code.[106]  The legislative history to section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.[107]  As discussed below, the Debtors have complied with sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and solicitation of the Plan.

**1.     The Debtors Complied with Section 1125 of the Bankruptcy Code.**

70.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan "unless, at the time of or before such solicitation, there is transmitted

---

[105]  *See* Plan, Art. V.A.

[106]  11 U.S.C. § 1129(a)(2).

[107]  *See, e.g.*, *In re Lapworth*, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2).") (internal citations omitted); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code").

to such holder the Plan or a summary of the Plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[108]  Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision on whether to approve or reject the plan.[109]

71.    Section 1125 of the Bankruptcy Code is satisfied here.  Before the Debtors solicited votes on the Plan, the Court approved the Disclosure Statement in accordance with section 1125(a)(1).[110]  The Court also approved the contents of the Confirmation Hearing Notice, the Solicitation Packages provided to holders of Claims entitled to vote on the Plan, the applicable Non-Voting Status Notices, Opt-In Forms, and other materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan.[111]  As stated in the Voting Report, the Debtors, through the Solicitation Agent, complied with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.[112]  The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.[113]

---

[108]  11 U.S.C. § 1125(b).

[109]  *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the Plan).

[110]  *See* Disclosure Statement Order.

[111]  *Id.*

[112]  *See* Voting Report; *see also Affidavit of Service* with respect to the Disclosure Statement Order [Docket No. 1032].

[113]  *See* Voting Report.

72.     Based on the foregoing, the Debtors have complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order.

### 2.     The Debtors Complied with Section 1126 of the Bankruptcy Code.

73.     Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a chapter 11 plan.  Specifically, under section 1126 of the Bankruptcy Code, only holders of allowed claims and allowed interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.  Section 1126 of the Bankruptcy Code provides, in pertinent part, that:

(a)     The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .

(f)     Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g)     Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive any property under the plan on account of such claims or interests.[114]

74.     As set forth in Disclosure Statement Order, in accordance with section 1125 of the Bankruptcy Code, the Debtors solicited votes from the Holders of Allowed Claims in Class 3—the only Class entitled to vote on the Plan.  The Debtors did not solicit votes from Holders of Claims and Interests in Classes 1, 2, 4, 5, 6 or 7 because Holders of such Claims and Interests are either Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or Impaired and conclusively deemed to have rejected the Plan pursuant to

---

[114]  11 U.S.C. §§ 1126(a), (f), (g).

section 1126(g) of the Bankruptcy Code.  Thus, pursuant to section 1126(a) of the Bankruptcy Code, only Holders of Claims in Class 3 were entitled to vote to accept or reject the Plan.[115]

75.    With respect to the Voting Class, section 1126(c) of the Bankruptcy Code provides that a class accepts a plan where holders of claims holding at least two-thirds in amount and more than one-half in number of allowed claims in such class of those voting vote to accept such plan. The Voting Report reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[116]    Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

**C.    The Plan Is Proposed in Good Faith (§ 1129(a)(3)).**

76.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[117]  Where a plan satisfies the purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[118]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[119]

---

[115]  *See* Plan, Art. III.

[116]  *See generally* Voting Report.

[117]  11 U.S.C. § 1129(a)(3).

[118]  *See, e.g., In re PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove, Inc.*, Civ. A. Nos. 90-400-SLR and 90-401-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[119]  *See, e.g., In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012) ("[A] determination of good faith associated with a Chapter 11 reorganization plan requires a factual inquiry into a totality of the circumstances surrounding the plan's proposal.") (citing *In re Sun Country Dev., Inc.*, 764 F. 2d at 408); *Century Glove*, 1993 WL 239489, at *4 ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a

77.     Here, the Debtors have proposed the Plan with the goal of providing recoveries to creditors and maximizing the value of the Debtors' Estates.  The Plan represents the culmination of collaborative efforts between the Debtors, their stakeholders, and their respective advisors. Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

**D.     The Plan Provides That the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)).**

78.     Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent or by the debtor be subject to approval by the Court as reasonable.[120] Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the court as to their reasonableness.[121]

79.     The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.  The payment of Professional Fee Claims is the only category of payments that fall within the ambit of section 1129(a)(4) of the Bankruptcy Code in these chapter 11 cases.  The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 and 330 of the Bankruptcy Code.[122]  The Plan also provides that the requirement of Court approval with respect to compensation of

---

reasonable opportunity to make a fresh start.") (citing *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *T-H New Orleans*, 116 F.3d at 802 (same).

120   *See* 11 U.S.C. § 1129(a)(4).

121   *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 503 (D.N.J. 2005) ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court."); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) (holding that fees and expenses related to the plan are subject to the approval by the Bankruptcy Court); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

122   11 U.S.C. §§ 328(a), 330(a)(1)(A); *see* Plan, Art. II.B.

Professionals' fees and expenses will terminate on the Confirmation Date.[123]  Similar relief has been approved in comparable chapter 11 cases in this Court.[124]  Moreover, the Plan provides that the Debtors' Professionals shall File all final requests for payment of Professional Fee Claims be Filed no later than forty-five (45) days after the Effective Date, thereby providing an adequate period of time for interested parties to review the requests for payment of Professional Fee Claims.[125]

E.     **The Debtors Disclosed All Necessary Information Regarding Post-Effective Date Governance (§ 1129(a)(5)).**

80.     Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that a plan proponent disclose "the identity and affiliations" of the proposed officers and directors of any successor to the debtor,[126] and section 1129(a)(5)(A)(ii) requires that any such appointment be "consistent with public the interests of creditors and equity security holders and with public policy[.]"[127] Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the identity of an "insider" (as defined by section 101(31) of the Bankruptcy Code) to be employed or retained by a successor to the debtor, and the nature of any compensation for such insider.

81.     The Plan satisfies section 1129(a)(5) of the Bankruptcy Code.  Article IV.C and Article VII of the Plan provide for the appointment of a Plan Administrator to act as the sole director and sole officer of each of the Wind-Down Debtors, and the Debtors have disclosed the

---

[123]  Plan Art. II.B.4.

[124]  *See, e.g.*, *In re Project Sage M Holdings Oldco, Inc.*, No. 24-10425 (JTD) (Bankr. D. Del. June 18, 2024) (confirming a plan where the requirement of court approval of debtors' professional fees would terminate on the confirmation date); *MVK FarmCo*, No. 23-11721 (LSS) (same).

[125]  Plan Art. II.B.1.

[126]  11 U.S.C. § 1129(a)(5)(A)(i).

[127]  11 U.S.C. § 1129(a)(5)(A)(ii).

identity, responsibilities, and compensation of the Plan Administrator, who was selected by the Committee in consultation with the Debtors, and the identities, responsibilities, and compensation of the members of the Wind-Down Debtors Oversight Committee, who were selected by the Committee.[128]  The Plan provides that the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of Holders of Claims and Interests who are entitled receive distributions pursuant to Plan, and will be overseen by the Wind-Down Debtors Oversight Committee.[129] Therefore, the requirements under section 1129(a)(5) of the Bankruptcy Code are satisfied, and no party has asserted otherwise.

### F.    The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)).

82.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

### G.    The Plan Is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7)).

83.    Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a value of not less than the value such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.[130]  The best interests test applies to individual dissenting holders of

---

[128]  *See* Plan Supplement.

[129]  Plan, Art. IV.C.12.

[130]  *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

impaired claims and interests rather than classes,[131] and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's chapter 11 plan.[132]

84.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.  As set forth in the Disclosure Statement, the Debtors, with the assistance of their financial advisors, prepared a liquidation analysis that was filed as Exhibit C to the Disclosure Statement (the "Liquidation Analysis").  As reflected in the Liquidation Analysis, liquidation of the Debtors' businesses under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Allowed Claims or Interests as compared to distributions contemplated under the Plan.  Importantly, because this is a liquidating plan, creditors are receiving all of the remaining assets in the Debtors' Estates, subject to the priority under the Bankruptcy Code and the contributions from the Second Lien Secured Parties for the benefit of general unsecured creditors.[133]  In light of the minimal remaining assets and incremental costs of a liquidation, no party would be better off in an alternative structure, including a chapter 7 liquidation.[134]  Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code, and no party has asserted otherwise.

---

[131] *See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[132] *See In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985) (stating that "best interests" of creditors means "creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation of the Debtor as of the effective date of the plan"), *aff'd*, 785 F.2d 1033 (5th Cir. 1986); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.") (internal citation and quotation marks omitted).

[133] *See* Kamlani Declaration, ¶¶ 40-43, Ex. A.

[134] *See id.*

### H.    The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.

85.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Under the Plan, certain Classes of Claims were unimpaired and conclusively presumed to accept the Plan and certain Classes of Claims and Interests are deemed to have rejected the Plan and, thus, were not entitled to vote.[135] While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Impaired Classes that were deemed to reject the Plan, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

### I.    The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)).

86.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.[136]   In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code— must receive on the effective date cash equal to the allowed amount of such claims.[137] Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such

---

[135]  *See* Plan Art. III.

[136]  *See* 11 U.S.C. § 1129(a)(9).

[137]  11 U.S.C. § 1129(a)(9)(A).

class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).[138] Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.[139]

87.     The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.  ***First***, Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each holder of an Allowed Administrative Claim allowed on or prior to the Effective Date will receive payment in full in Cash on the Effective Date or as soon as reasonably practicable thereafter, or on such terms as agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable.  ***Second***, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no Holders of the types of claims specified by 1129(a)(9)(B) of the Bankruptcy Code are Impaired under the Plan and such Claims have been paid in the ordinary course.  ***Third***, Article II.E of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that Holders of Allowed Priority Tax Claims (as defined in the Plan) shall be treated in accordance with the terms of Section 1129(a)(9)(C) of the Bankruptcy Code.  The Plan therefore satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

---

[138]  11 U.S.C. § 1129(a)(9)(B).

[139]  11 U.S.C. § 1129(a)(9)(C).

**J.      At Least One Impaired Class of Non-Insider Claims Accepted the Plan (§ 1129(a)(10)).**

88.      Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.[140]

89.      Here, Class 3, which is Impaired, voted to accept the Plan independent of any insiders' votes with respect to every Debtor entity.[141]  Thus, the Plan has been accepted by at least one Voting Class holding Impaired, non-insider claims with respect to each Debtor.

90.      Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**K.      The Plan Is Feasible (§ 1129(a)(11)).**

91.      Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation.  Specifically, the Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[142]  To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[143]  Rather, a debtor must provide only a

---

[140]  11 U.S.C. § 1129(a)(10).

[141]  *See* Voting Report, Ex. A.

[142]  11 U.S.C. § 1129(a)(11).

[143]  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012) (stating that the bankruptcy court "need not require a guarantee of success") (internal citations and quotation marks omitted); *In re W.R. Grace & Co.*, 475 B.R. at 115; *In re U.S. Truck Co.*,

reasonable assurance of success.[144]  There is a relatively low threshold of proof necessary to satisfy

the feasibility requirement.[145]  As demonstrated below, the Plan is feasible within the meaning of

section 1129(a)(11) of the Bankruptcy Code.

92.    The Plan satisfies the feasibility requirements of section 1129(a)(11) of the

Bankruptcy Code by providing that the Debtors will be able to satisfy all of their obligations under

the Plan.[146]  The Plan provides for the orderly liquidation and Wind-Down of the Debtors' Estates

and timely distributions to Holders of Allowed Claims in accordance with the Bankruptcy Code

and applicable law.[147]  The Debtors have analyzed the Debtors' ability to maintain adequate

liquidity to effectively wind down the Debtors' Estates and determined that, following the

consummation of the Sale Transaction, the Debtors have adequate funds from, among other

sources, (i) Cash on hand, (ii) the Distributable Proceeds, (iii) the proceeds of the Wind-Down;

and (iv) to the extent provided for in Article VIII.C of the Plan, the Wind-Down Reserve, provided,

however, that Allowed Professional Fee Claims will be paid from the Professional Fee Escrow

---

47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

144  *Kane*, 843 F.2d at 649; *In re Flintkote Co.*, 486 B.R. at 139; *In re W.R. Grace & Co.*, 475 B.R. at 115; *see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation") (internal quotation marks omitted) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] (15th ed. 1984)); *In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

145  *See, e.g.*, *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal quotation marks and citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D.N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011).

146  *See* Plan, Art. IV.B.2 (describing "Sources of Consideration for the Plan Distributions").

147  *See* Plan, Art. IV.C.

Account in the first instance.[148]  The Debtors and the Committee have agreed on the Wind-Down Budget, which provides for the activities and expenses that will be incurred in connection with the Wind-Down.[149]  Any Allowed Administrative Claims or Allowed Priority Claims will be paid in accordance with the Plan, and Allowed General Unsecured Claims will be treated in accordance with Article III of the Plan.  The Debtors will also establish and fund the Professional Fee Escrow Account to pay Professional Fee Claims.[150]  The Plan provides closure and assurance that the assets of the Debtors' Estates are being distributed in an efficient and value-maximizing manner subject to the Debtors' obligations under the Plan without the need for any further financial restructuring.  Thus, the Plan satisfies the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code.

### L.    All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)).

93.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."[151]  Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[152]  The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article II.C of the Plan provides that all such fees and charges due and payable by the Debtors before the Effective Date shall be paid by the Debtors on the

---

[148]  *See* Kamlani Declaration, ¶ 48.

[149]  *See id.*

[150]  *See* Plan, Art. II.B.2.

[151]  11 U.S.C. § 1129(a)(12).

[152]  11 U.S.C. § 507(a)(2).

Effective Date.  After the Effective Date, the Debtors and the Wind-Down Debtors, as applicable, will be jointly and severally liable to pay any and all such fees when due and payable.[153]

### M.    Sections 1129(a)(13) through 1129(a)(16) Do Not Apply to the Plan.

94.    A number of the Bankruptcy Code's confirmation requirements are inapplicable to the Plan.  Section 1129(a)(13) of the Bankruptcy Code requires chapter 11 plans to continue all "retiree benefits" (as defined in section 1114 of the Bankruptcy Code).[154]  The Debtors have no obligations to pay retiree benefits after the Effective Date and, as such, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.  Section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan because the Debtors are not subject to any domestic support obligations.[155]  Section 1129(a)(15) is inapplicable to the Plan because none of the Debtors are "individuals" as that term is defined in the Bankruptcy Code.[156]  Section 1129(a)(16) of the Bankruptcy Code is also inapplicable because the Plan does not provide for any property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.[157]

### N.    The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code.

95.    Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of

---

[153]  *See* Plan, Art. II.C.

[154]  11 U.S.C. § 1129(a)(13).  Section 1114(a) of the Bankruptcy Code defines "retiree benefits" as:  "[P]ayments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title."

[155]  *See id.* § 1129(a)(14).

[156]  *See id.* § 1129(a)(15).

[157]  *See id.* § 1129(a)(16).

the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[158]   To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[159]

96.    The Plan satisfies section 1129(b) of the Bankruptcy Code.  The Debtors received the requisite votes at the Voting Class, Class 3, which was the only class entitled to vote on the Plan.[160]  Classes 6 and 7 will receive no recovery and are deemed to reject the Plan.  Classes 4 and 5 may be deemed to reject the Plan based on the Debtors' ultimate determination to reinstate or cancel Intercompany Claims and Intercompany Interests.  Notwithstanding the fact Classes 6 and 7, and, possibly, Classes 4 and 5, are deemed to have rejected the Plan, the Plan is confirmable.

### 1.  The Plan Does Not Unfairly Discriminate Under Section 1129(B)(1) with Respect to the Impaired Classes That Have Not Voted to Accept the Plan.

97.    Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[161]  In general, courts have held that a plan unfairly

---

[158] *See* 11 U.S.C. § 1129(b).

[159] *See* 11 U.S.C. § 1129(b)(1); *In re Route 37 Bus. Park Assocs.*, 987 F.2d at 157 n.5; *Liberty Nat'l Enter. v. Ambanc La Mesa L.P. (In re Ambanc La Mesa L.P.)*, 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

[160] *See* Voting Report.

[161] *See Hargreaves v. Nuverra Env't Sols., Inc. (In re Nuverra)*, 590 B.R. 75, 93 (D. Del. 2018), *aff'd*, 834 F. App'x 729 (3d Cir. 2021), *as amended* (Feb. 2, 2021) ("As unfair discrimination is not defined in the Bankruptcy Code, courts must examine the facts and circumstances of the particular case to determine whether unfair discrimination exists."); *In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."), *rev'd on other grounds, Bank of Am.*, 526 U.S. 434 (1999); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all

discriminates in violation of section 1129(b) of the Bankruptcy Code only if (a) it provides less favorable treatment to a dissenting class of creditors than to another class of creditors with similar legal rights, taking into account whether the different treatment is material and the relative risks associated with each class's treatment, and (b) there is not sufficient justification for doing so.[162] A threshold inquiry to assessing whether a proposed chapter 11 plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[163]

98.     With respect to Class 4 (Intercompany Claims), the Plan's classification of Intercompany Claims is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment and the Plan's classification scheme rests on a legally acceptable rationale, and no party has asserted otherwise.[164]

99.     With respect to Class 5 (Intercompany Interests), the relevant Interests may be Unimpaired.   These Intercompany Interests, which exist to support the Debtors' corporate structure, ultimately may be Reinstated because reinstatement of Intercompany Interests advances the Debtors' Wind-Down Transactions by avoiding the need to unwind and recreate the corporate

---

the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination.").

[162] *See In re Nuverra*, 590 B.R. at 93 (holding that a plan's unequal treatment of substantially similar claims did not constitute unfair discrimination where such unequal treatment was justified); *In re Aleris Int'l*, 2010 WL 3492664, at *31 ("section 1129(b) of the Bankruptcy Code ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value the dissenting class will receive under a plan when compared to the value given to all other similarly situated classes") (citing *In re Armstrong World Indus.*, 348 B.R. at 121); *In re Coram Healthcare Corp.*, 315 B.R. at 349 (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business).

[163] *See In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *31 (citing *In re Armstrong World Indus.,* 348 B.R. at 121).

[164] *See* Plan, Art. III.B.4.

structure and relationships of the Wind-Down Debtors.[165]  This reinstatement does not affect the economic substance of the Plan for the Debtors' stakeholders.

100.    With respect to Class 6 (Existing Equity Interests in Express), the Debtors formed Class 6 to include Holders of Interests in Express, Inc.  Existing Equity Interests are classified separately from Intercompany Interests to preserve the option to either reinstate, compromise, or cancel Intercompany Interests.  Significantly, Holders of Intercompany Interests will not receive a recovery under the Plan and Intercompany Interests may be Reinstated only for administrative convenience in the Wind-Down process.[166]  Thus, the Plan's treatment of Class 6 is proper because no similarly situated class will receive more favorable treatment.

101.    With respect to Class 7 (Section 510(b) Claims), the Debtors do not have any Section 510(b) Claims.  Out of an abundance of caution, the Debtors formed Class 7 to include Holders of Claims that may be subordinated pursuant to section 510(b) of the Bankruptcy Code. The Plan's treatment of Class 7 is proper because no similarly situated class will receive more favorable treatment.  As there are no holders of Section 510(b) Claims, no distributions should or will be made to Class 7.

102.    Thus, the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and may be confirmed notwithstanding the deemed rejection by Classes 4, 5, 6, and 7, as applicable.

**O.    The Plan Is Fair and Equitable (§ 1129(b)(2)(B)(ii)).**

103.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.  This

---

[165]  *See* Plan, Art. III.B.5.

[166]  *See* Plan, Art. III.B.6.

requires either that an impaired rejecting class of claims or interests be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.[167]  Under the Plan, no Holder of a Claim or Interest junior to an Impaired rejecting Class of Claims or Interests will receive any recovery due to such Claim or Interest.[168]  Accordingly, the Plan is "fair and equitable" with respect to all Impaired Classes of Claims and Interests and satisfies section 1129(b) of the Bankruptcy Code.

**P.     The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code (§ 1129(c)–(e)).**

104.    The Plan satisfies the remaining provisions of section 1129 of the Bankruptcy Code. Section 1129(c), prohibiting confirmation of multiple plans, is not implicated because there is only one proposed joint chapter 11 plan.[169]

105.    Section 1129(d) of the Bankruptcy Code provides that "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[170]  The principal purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933[171]  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

---

[167]  *See* 11 U.S.C. 1129(b)(2); *see also In re Armstrong World Indus.*, 348 B.R. at 114 (stating that the absolute priority rule is embodied in section 1129(b) of the Bankruptcy Code).

[168]  *See* Plan, Art. III.B.

[169]  *See* 11 U.S.C. § 1129(c).

[170]  11 U.S.C. § 1129(d).

[171]  15 U.S.C. § 77(e).

106.    Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases is a "small business case."[172]  Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements.

## VI.    The Waiver of a Stay of the Confirmation Order and the Proposed Modifications to the Plan Are Appropriate.

### A.    Good Cause Exists to Waive the Stay of the Confirmation Order.

107.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[173] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.[174]  Each rule also permits modification of the imposed stay upon court order.

108.    Good cause exists for waiving and eliminating any stay of the proposed Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the proposed Confirmation Order will be effective immediately upon its entry.  As noted above, these chapter 11 cases and the related transactions under the Plan have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information. Additionally, for each day the Debtors remain in chapter 11, they incur significant administrative and professional costs, which will be significantly reduced if the Debtors emerge expeditiously.[175]

---

[172]  *See* 11 U.S.C. § 1129(e).  A "small business debtor" cannot be a member "of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,000,000 (excluding debt owed to 1 or more affiliates or insiders)."  11 U.S.C. § 101(51D)(B).

[173]  Fed. R. Bankr. P. 3020(e).

[174]  Fed. R. Bankr. P. 6004(h), 6006(d).

[175]  *See* Kamlani Declaration, ¶ 58.

### B.      Modifications to the Plan.

109.      Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Furthermore, when a plan proponent files a modified plan with the court, the modified plan becomes the Plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[176]

110.      The Debtors filed a modified version of the Plan substantially contemporaneously with the filing of this memorandum, which includes technical clarifications and resolves certain formal and informal comments to the Plan by parties in interest.   Such modifications are immaterial and thus comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Committee supports the modifications.[177]   No modifications will require additional solicitation or disclosure is required on account of the modifications, and such modifications should be deemed accepted by all creditors that previously accepted the Plan.

---

[176] *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation);  *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

[177] *See* Kamlani Declaration, ¶ 59.

## **CONCLUSION**

111.    For all of the reasons set forth herein, in the Confirmation Declarations, in the
Voting Report, and as will be further shown at the Confirmation Hearing, the Debtors request that
the Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy
Code by entering the proposed Confirmation Order, overruling any remaining objections, and
granting such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated:  December 13, 2024
Wilmington, Delaware

/s/  Domenic E. Pacitti

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:     (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              aradovanovich@klehr.com


-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:     (215) 568-6603
Email:        mbranzburg@klehr.com

*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              emily.geier@kirkland.com
              nicholas.adzima@kirkland.com


-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:        charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

## Exhibit A

**Confirmation Objection Chart**

***In re* Express, Inc., et al., Confirmation Objection Chart**

| | Objection | Summary of Objection | Debtors' Response |
|---|---|---|---|
| 1. | Louisiana Department of Revenue<br><br>[Docket No. 766] | • Priority tax claim of the Louisiana Department of Revenue ("LDR") shall be paid on or by the Effective Date or shall be paid applicable post-effective date interest at the rate required by section 511 (as required by 1129(a)(9)(C)) a clean-up of the priority tax provision with respect to LDR – paid with interest as required by 1129(a)(9)(C).<br><br>• To the extent the priority tax liability is to be paid in installments, specify the commencement date of the payments, the frequency of the payments or number of payments and that the final payment is due within five years of the Petition Date.<br><br>• Corporate tax returns for the fiscal year tax period ending 01/31/2024 shall be filed within 90 days of the Effective Date (assumes the sales occurred after 01/31/2023);<br><br>• To the extent that the LDR is owed money for the 01/31/2024, the LDR shall be entitled be an Allowed Administrative Tax Expense exempt from the requirement of filing a request for payment (as exempted by 11 U.S.C. 503(b)(1)(D) with respect to tax liabilities allowable pursuant to 11 U.S.C. 503(b)(1)(B)-(C)).<br><br>• Clarification that LDR's payment distributions shall not be subject to unclaimed property provision (see objection). | • The Confirmation Order includes language that resolves the LDR's objection.<br><br>• Revised Plan to specify that governmental units are exempted from requests for payment for admin claims under 503(b)(1)(D). |

|   | Objection | Summary of Objection | Debtors' Response |
|---|---|---|---|
|   |   | • Set off and recoupment rights of the LDR are preserved. |   |
| 2. | Google LLC<br><br>[Docket No. 1113] | • The Plan allows for an extension for assumption or rejection of executory contracts well beyond Plan confirmation contrary to 11 U.S.C. § 365(d)(1),<br><br>• Objections to a proposed assumption or related Cure Cost should be twenty-one (21) and not ten (10) days.<br><br>• The Plan does not make clear who the responsible party is for payment of post-Effective Date services pending assumption or rejection.  Counterparties to rejected contracts should not be caught in a dispute between the Debtors and the purchaser concerning who is responsible to pay for services during this period.<br><br>• It is unclear whether amounts incurred post-confirmation would qualify as an "administrative claim" for purposes of 11 U.S.C. § 503 and/or Plan § I.A.3 | • Revised Article V.A of the Plan to make clear that executory contracts are automatically deemed reject on the Effective Fate instead of 90 days after.<br><br>• Included language in paragraph 120 of the Confirmation Order clarifying that all contract counterparties will have 30 days from the date of rejection to file an administrative claim. |
| 3. | EKFH LLC<br><br>[Docket No. 1111] | • The Plan contains inconsistent language making it unclear as to whether third-parties, like EKFH, that do not Opt-In to the third-party release provision of the Plan are nonetheless subject to a non-consensual third party release in contravention of the United States Supreme Court's holding in Harrington v. Purdue Pharma L.P., 603 U.S. __;144 S. Ct. 2071 (2024). | • Revised the Confirmation Order to make clear that parties that do not opt-in to the third party releases are not in any way bound by the releases. |

| | Objection | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | • EKFH specifically opts-out and objects to any releases, exculpations, injunctions, and other provisions that could impair or otherwise affect EKFH's ability to pursue its claims against Bonobos.<br><br>• EKFH requests that the Court require that the Confirmation Order makes clear that any party that does not affirmatively Opt-In to the Third-Party Release shall not be found to have granted any release of any party nor shall any such party be constrained, limited or otherwise affected by any injunction or exculpation in the Plan;<br><br>• EKFH also asks that the Court clarify that, because EKFH did not Opt-In to the Third-Party Release, EKFH shall not be found to have granted any release to any party affected in any way by any injunction or exculpation or other language in the Plan that releases any claim against Bonobos. | |

**Exhibit B**

**Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT CHAPTER 11 PLAN OF EXPRESS, INC. AND ITS DEBTOR AFFILIATES**

**CLASS 3 BALLOT FOR HOLDERS OF GENERAL UNSECURED CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT
MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE
*ACTUALLY RECEIVED*
BY THE SOLICITATION AGENT BY DECEMBER 11, 2024, AT 4:00 P.M.,
PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE
WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 689] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 690] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on November 6, 2024 [Docket No. 969] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Class 3 ballot (this "Class 3 Ballot" or "Ballot") because you are a Holder of a General Unsecured Claim (your "General Unsecured Claim") as July 31, 2024 (the "Voting Record Date").  Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 3 Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.deb.uscourts.gov; or (b) at no charge from Stretto, Inc. (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.stretto.com/express/; (ii) writing to Express, Inc., et al. Claims Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; (iii) emailing ExpressBallotInquiries@stretto.com; or (iv) calling the Solicitation Agent at:

U.S. Toll Free:  855-337-3537
International:  949-617-1363

This Class 3 Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class 3 Ballot in error, or if you believe you have received the wrong Ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your General Unsecured Claim has been placed in Class 3 under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a Ballot or Notice of Non-Voting Status, as applicable for each such Class.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot.  Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**Express, Inc., et al. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to ExpressBallotInquiries@stretto.com and provide the anticipated date and time of your delivery.**

***OR***

**Via the Balloting Portal.  Submit your Ballot via the Solicitation Agent's online portal, by visiting https://cases.stretto.com/express/ (the "Balloting Portal").  Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique Password:**_____

**The Solicitation Agent's Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Password you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Portal should NOT also submit a paper Ballot.  In the event you submit a Ballot using the Balloting Portal and a paper Ballot, the last properly executed Ballot timely received shall control.**

**Item 1**.        **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of General Unsecured Claims in the following aggregate unpaid amount (insert amount in box below):



**Item 2**.        **Vote on Plan.**

The Holder of the General Unsecured Claims set forth in Item 1 votes to (please check only <u>one</u>)

> **Prior to voting on the Plan, please note the following:**
>
> **If you vote to accept the Plan, the Debtors will seek a finding from the Court that you shall be deemed to have consented to the releases, injunction, and exculpation provisions set forth in Articles X.B, C, E, and F of the Plan.**
>
> **Unless you affirmatively opt in to the Third-Party Release by checking the box in Item 3 below, you shall not be deemed to have consented to the Third-Party Release set forth in Article X.D of the Plan.**
>
> **Please also be advised that the Debtor Release contained in Article X.C of the Plan will be included in the Confirmation Order and that it is separate from and independent of the Third-Party Release.  If you object to the debtor release, you must file an objection with the bankruptcy court in accordance with the procedures described in the disclosure statement order.  Unless you object to the Debtor Release contained in Article X.C of the Plan, you shall be bound by the Debtor Release.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Articles X.B, C, D, E, and F of the Plan, respectively.**

☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan

**Item 3.**      **Important information regarding the Third-Party Release.**

**ARTICLE X.D. OF THE PLAN CONTAINS THE FOLLOWING PROVISION:**

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS HEREBY DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED BY EACH AND ALL OF THE RELEASING PARTIES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES, IN EACH CASE SOLELY TO THE EXTENT OF THE RELEASING PARTIES' AUTHORITY TO BIND ANY OF THE FOREGOING, INCLUDING PURSUANT TO AGREEMENT OR APPLICABLE NON-BANKRUPTCY LAW, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR**

HEREAFTER ARISING, WHETHER IN LAW, EQUITY, CONTRACT, TORT, OR ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL FOREIGN OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT, OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF) OR THE ESTATES, THE CHAPTER 11 CASES, THE WIND-DOWN TRANSACTIONS, THEIR CAPITAL STRUCTURE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE DEBTORS' OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DEFINITIVE DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DEFINITIVE DOCUMENTS, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE PURSUIT OF THE WIND-DOWN TRANSACTIONS, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO THE DEBTORS TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. FOR THE AVOIDANCE OF DOUBT, HOLDERS OF CLAIMS SHALL ONLY BE CONSIDERED RELEASING PARTIES WITH RESPECT TO THE THIRD-PARTY RELEASE TO THE EXTENT THAT SUCH HOLDERS OF CLAIMS OPT INTO GRANTING THE THIRD-PARTY RELEASE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS ARTICLE X.D, WHICH INCLUDE BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS ARTICLE X.D IS: (I) CONSENSUAL; (II) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (III) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS AND CAUSES OF ACTION; (IV) IN THE BEST INTERESTS OF

**THE DEBTORS, THEIR ESTATES, AND ALL HOLDERS OF CLAIMS AND INTERESTS; (V) FAIR, EQUITABLE, AND REASONABLE; (VI) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VII) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES OR THE DEBTORS OR THEIR RESPECTIVE ESTATES OR, IF APPLICABLE, THE WIND-DOWN DEBTORS, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS <u>ARTICLE X.D</u> SHALL RELEASE ANY RETAINED CAUSE OF ACTION OR ANY CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS PLAN OR THE CONFIRMATION ORDER SHALL OPERATE AS A RELEASE OF, AND THE RELEASING PARTIES SHALL NOT RELEASE, ANY CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF ANY COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE THIRD-PARTY RELEASE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.**

\*       \*       \*

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, COLLECTIVELY, IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE WIND-DOWN DEBTORS; (C) THE DIP LENDERS; (D) THE DIP AGENTS; (E) THE PREPETITION LENDERS; (F) THE PREPETITION AGENTS; (G) THE COMMITTEE AND EACH OF ITS MEMBERS; (H) ALL HOLDERS OF CLAIMS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH CLAUSE (H); AND (L) EACH RELATED PARTY OF EACH ENTITY IN THE FOREGOING CLAUSES (A) THROUGH CLAUSE (K); *PROVIDED* THAT A RELATED PARTY OF A PERSON OR ENTITY IN THE FOREGOING CLAUSES (A) THROUGH (I) IS A RELEASING PARTY SOLELY TO THE EXTENT THAT SUCH AFFILIATE OR RELATED PARTY WOULD BE OBLIGATED TO GRANT A RELEASE UNDER PRINCIPLES OF AGENCY IF IT WERE SO DIRECTED BY SUCH PERSON OR ENTITY IN THE FOREGOING CLAUSES (A) THROUGH (I) TO WHOM THEY ARE RELATED; *PROVIDED, THAT* THE NON-RELEASED PARTIES SHALL NOT BE "RELEASING PARTIES" REGARDLESS OF WHETHER SUCH NON-RELEASED PARTY WOULD OTHERWISE CONSTITUTE A "RELEASING PARTY."

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH DEBTOR RELATED PARTY; (C) EACH OF THE WIND-DOWN DEBTORS; (D) THE DIP LENDERS; (E) THE DIP

AGENTS; (F) THE PREPETITION LENDERS; (G) THE PREPETITION AGENTS; (H) THE COMMITTEE AND EACH OF ITS MEMBERS; (I) ALL HOLDERS OF CLAIMS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; *PROVIDED, HOWEVER,* THAT ANY PARTY THAT IS REQUIRED TO OPT IN TO THE RELEASES CONTAINED IN THE PLAN THAT DOES NOT DO SO SHALL NOT BE A "RELEASED PARTY"; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) AND CLAUSES (C) THROUGH (I), EXCEPT TO THE EXTENT THAT ANY SUCH AFFILIATE WOULD OTHERWISE CONSTITUTE A NON-RELEASED PARTY; *PROVIDED, THAT* WHP AND THE IP LICENSORS SHALL NOT BE "RELEASED PARTIES" SOLELY ON ACCOUNT OF THEIR STATUS AS "AFFILIATES" OF THE DEBTORS, ANY DEBTOR RELATED PARTY, OR THE WIND-DOWN DEBTORS; (K) EACH RELATED PARTY OF EACH ENTITY IN THE FOREGOING CLAUSES (D) THROUGH CLAUSE (J); *PROVIDED, THAT* THE NON-RELEASED PARTIES SHALL NOT BE "RELEASED PARTIES" REGARDLESS OF WHETHER SUCH NON-RELEASED PARTY WOULD OTHERWISE CONSTITUTE A "RELEASED PARTY".  FOR THE AVOIDANCE OF DOUBT, NO (X) RELATED PARTY OF A NON-RELEASED PARTY NOR (Y) ANY FORMER DIRECTOR OR OFFICER (WHO DID NOT SERVE AS A DIRECTOR OR OFFICER ON OR AFTER THE PETITION DATE) SHALL BE A "RELEASED PARTY" IN ANY OTHER CAPACITY (INCLUDING, WITHOUT LIMITATION, IF SUCH PERSON SERVED AS A CONSULTANT OR ADVISOR), AND ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST SUCH PERSONS (IDENTIFIED IN (X) AND (Y)) SHALL BE PRESERVED AND NOT RELEASED IN ACCORDANCE WITH THIS PLAN.

**Optional Third-Party Release Election**

If you voted to accept or reject the Plan in Item 2 above or elected not to vote to accept or reject the Plan in Item 2 above, check this box if you elect **to** grant the release contained in Article X.D of the Plan.  Election to withhold consent to the releases contained in Article X.D of the Plan is at your discretion.  If you submit your Ballot with this box checked, you will be deemed to consent to the releases contained in Article X.D of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, you will not be deemed to consent to the releases contained in Article X.D. of the Plan unless you check this box.  If you do not submit this Ballot, you will not be deemed to consent to the releases contained in Article X.D of the Plan.

☐    The undersigned elects **to** grant the releases contained in Article X.D of the Plan

**Item 4.**    **Certifications.**

By signing this Class 3 Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)    as of the Voting Record Date, either:  (i) the Entity is the Holder of the General Unsecured Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the General Unsecured Claims being voted;

(b)    the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)    the Entity has cast the same vote with respect to all General Unsecured Claims; and

(d)    no other Class 3 Ballots with respect to the amount of the General Unsecured Claims identified in Item 1 have been cast or, if any other Class 3 Ballots have been cast with respect to such General Unsecured Claims, then any such earlier Class 3 Ballots are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE DECEMBER 11, 2024, AT 4:00 P.M., PREVAILING EASTERN TIME, (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY NOT BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

## <u>INSTRUCTIONS FOR COMPLETING THIS CLASS 3 BALLOT</u>

1.  The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Class 3 Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Class 3 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  To ensure that your Class 3 Ballot is counted, you *must either*:  (a) complete and submit this hard copy Class 3 Ballot or (b) vote through the Balloting Portal accessible through the Debtors' restructuring website at https://cases.stretto.com/express/.  **Ballots will not be accepted by facsimile or electronic means (other than the Balloting Portal).**

4.  <u>Use of Ballot.</u>  To ensure that your Class 3 Ballot is counted, you must:  (a) complete your Class 3 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 3 Ballot; and (c) clearly sign and submit your Class 3 Ballot as instructed herein.

5.  <u>Use of Online Ballot Portal</u>.  To ensure that your electronic Class 3 Ballot is counted, please follow the instructions on the Debtors' case administration website at https://cases.stretto.com/express/.  You will need to enter your unique password indicated above.  The Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the Balloting Portal).**

6.  Your Class 3 Ballot *must* be returned to the Solicitation Agent so as to be *actually received* by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is <u>December 11, 2024, at 4:00 p.m.,</u> prevailing Eastern Time.**

7.  If a Class 3 Ballot is received *after* the Voting Deadline and if the Voting Deadline is not extended, it will not be counted.  Additionally, **the following Class 3 Ballots will *not* be counted**:

    (a)    any Class 3 Ballot that partially rejects and partially accepts the Plan;

    (b)    Class 3 Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any agent, indenture trustee, or the Debtors' financial or legal advisors;

(c)      Class 3 Ballots sent by facsimile or any electronic means other than via the Balloting Portal;

(d)      any Class 3 Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

(e)      any Class 3 Ballot cast by an Entity that does not hold a Claim in Class 3;

(f)      any Class 3 Ballot submitted by a Holder not entitled to vote on the Plan;

(g)      any unsigned Class 3 Ballot (for the avoidance of doubt, Ballots validly submitted through the Balloting Portal will be deemed signed); and/or

(i)      any Class 3 Ballot not marked to accept or reject the Plan or any Class 3 Ballot marked both to accept and reject the Plan.

8.      The method of delivery of Class 3 Ballots to the Solicitation Agent is at the election and risk of each Holder of a General Unsecured Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent ***actually receives*** the originally executed Class 3 Ballot. In all cases, Holders should allow sufficient time to assure timely delivery.

9.      If multiple Class 3 Ballots are received from the same Holder of General Unsecured Claims with respect to the same General Unsecured Claims prior to the Voting Deadline, the latest, timely received, and properly completed Class 3 Ballot will supersede and revoke any earlier received Class 3 Ballots. If you wish to change your vote on the Plan prior to the Voting Deadline, please contact the Solicitation Agent at ExpressBallotInquiries@stretto.com.

10.      You must vote all of your General Unsecured Claims within Class 3 either to accept or reject the Plan and may ***not*** split your vote. Further, if a Holder has multiple Class 3 General Unsecured Claims, the Debtors may aggregate the Class 3 General Unsecured Claims of any particular Holder with multiple Class 3 General Unsecured Claims for the purpose of counting votes.

11.      This Class 3 Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim or Interest.

12.      **<u>Please be sure to sign and date your Class 3 Ballot</u>**. If you are signing a Class 3 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 3 Ballot.

**<u>PLEASE SUBMIT YOUR CLASS 3 BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 3 BALLOT,
THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**U.S. TOLL FREE: 855-337-3537
INTERNATIONAL: 949-617-1363**

**OR EMAIL EXPRESSBALLOTINQUIRIES@STRETTO.COM.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON
OR BEFORE DECEMBER 11, 2024, AT 4:00 P.M., PREVAILING EASTERN TIME (AND
IF THE VOTING DEADLINE IS NOT EXTENDED) YOUR VOTE TRANSMITTED BY
THIS CLASS 3 BALLOT WILL NOT BE COUNTED TOWARD CONFIRMATION OF
THE PLAN.**

**<u>Exhibit C1</u>**

**Unimpaired Non-Voting Status Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF NON-VOTING STATUS TO HOLDERS OF
## UNIMPAIRED CLAIMS CONCLUSIVELY DEEMED TO ACCEPT THE PLAN

PLEASE TAKE NOTICE THAT on November 6, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 969] (the "Disclosure Statement Order"): (a) approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 690] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Joint Chapter 11 Plan Express, Inc. and Its Debtor Affiliates* [Docket No. 689] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan; and (d) approving the manner and forms of notice and other related documents as they relate to the Debtors.

PLEASE TAKE FURTHER NOTICE THAT because of the nature and treatment of your Claim under the Plan, *you are not entitled to vote on the Plan*. Specifically, under the terms of the Plan, as a Holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are *not* entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider confirmation of the Plan (the "Confirmation Hearing") will commence on **December 17, 2024**, at **10:30 a.m.** prevailing Eastern Time, before the Honorable Karen B. Owens, in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]    Capitalized terms used but not defined herein have the meaning given to such terms in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, Fifth Floor, Courtroom #3, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **December 11, 2024,** at **4:00 p.m.** prevailing Eastern Time (the "Confirmation Objection Deadline"). Any objection to the Plan *must*: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve each objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the notice parties in the Confirmation Hearing Notice on or before December 11, 2024 at 4:00 p.m. (prevailing Eastern Time):

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents free of charge, contact Stretto, Inc., the voting and claims agent retained by the Debtors in the chapter 11 cases by: (a) calling the Debtors' restructuring hotline at (855) 337-3537 (toll free) or (949) 617-1363 (international); (b) visiting the Debtors' restructuring website at: https://cases.stretto.com/express/ and clicking on the link for the Plan and Disclosure Statement; (c) writing to Express, Inc. *et. al.*, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; and/or (d) emailing ExpressBallotInquiries@stretto.com. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.deb.uscourts.gov.

| *Co-Counsel to the Debtors* | |
|---|---|
| **KIRKLAND & ELLIS LLP**<br>Attn: Joshua A. Sussberg, P.C.<br>Attn: Emily E. Geier, P.C.<br>Attn: Nicholas M. Adzima<br>601 Lexington Avenue<br>New York, New York 10022<br>jsussberg@kirkland.com<br>emily.geier@kirkland.com<br>nicholas.adzima@kirkland.com<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>Attn: Charles B. Sterrett<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>charles.sterrett@kirkland.com | **KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Attn: Domenic E. Pacitti (DE Bar No. 3989)<br>Attn: Michael W. Yurkewicz (DE Bar No. 4165)<br>Attn: Alyssa M. Radovanovich (DE Bar No. 7101)<br>919 North Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>dpacitti@klehr.com<br>myurkewicz@klehr.com<br>aradovanovich@klehr.com |

| *U.S. Trustee* |
|:---:|
| **THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE**<br>Attn:  John Schanne<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>John.Schanne@usdoj.gov |
| *Counsel to the Committee* |
| **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>Attn:  Adam Rogoff<br>Attn:  Robert Schmidt<br>Attn:  Nathaniel Allard<br>1177 Avenue of the Americas<br>New York, New York 10036<br>arogoff@kramerlevin.com<br>rschmidt@kramerlevin.com<br>nallard@kramerlevin.com<br><br>-and-<br><br>**SAUL EWING LLP**<br>Attn:  Luke Murley<br>1201 North Market Street, Suite 2300<br>Wilmington, Delaware 19801<br>luke.murley@saul.com |

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE X.D. CONTAINS A THIRD-PARTY RELEASE**. PURSUANT TO THE PLAN YOU ARE DEEMED TO ACCEPT THE PLAN BUT ARE NOT DEEMED TO HAVE CONSENTED TO THE RELEASE SET FORTH IN ARTICLE X.D, UNLESS YOU FILE A TIMELY DEEMED TO ACCEPT OPT-IN FORM. YOU MAY OPT-IN TO THE RELEASE BY COMPLETING AND RETURNING THE DEEMED TO ACCEPT OPT-IN FORM BY THE VOTING DEADLINE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.C OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE. IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN, YOU MAY WISH TO CONTACT A LAWYER. IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION REGARDING THE PLAN OR ANYTHING STATED HEREIN, CONTACT THE SOLICITATION AGENT. PLEASE BE ADVISED THAT THE SOLICITATION AGENT CANNOT PROVIDE LEGAL ADVICE.**

Dated:  November 6, 2024
Wilmington, Delaware

/s/ Domenic E. Pacitti
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              aradovanovich@klehr.com


-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com


*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              emily.geier@kirkland.com
              nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

## **Exhibit C2**

**Impaired Non-Voting Status Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-10831 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF
IMPAIRED CLAIMS AND INTERESTS DEEMED TO REJECT THE PLAN**

      **PLEASE TAKE NOTICE THAT** on November 6, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 969] (the "Disclosure Statement Order"): (a) approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 690] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 689] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan; and (d) approving the manner and forms of notice and other related documents as they relate to the Debtors.

      **PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, ***you are not entitled to vote on the Plan***. Specifically, under the terms of the Plan, as a Holder of a Claim or Interest (as currently asserted against the Debtors) that is receiving no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are ***not*** entitled to vote on the Plan.

      **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider confirmation of the Plan (the "Confirmation Hearing") will commence on **December 17, 2024**, at **10:30 a.m.** prevailing Eastern Time, before the Honorable Karen B.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]    Capitalized terms used but not defined herein have the meaning given to such terms in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

Owens, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, Fifth Floor, Courtroom #3, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **December 11, 2024**, at **4:00 p.m.** prevailing Eastern Time (the "Confirmation and Final Disclosure Statement Objection Deadline"). Any objection to the Plan *must*: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve each objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the notice parties in the Confirmation Hearing Notice on or before December 11, 2024 at 4:00 p.m. (prevailing Eastern Time):

| *Co-Counsel to the Debtors* | |
|---|---|
| **KIRKLAND & ELLIS LLP**<br>Attn:  Joshua A. Sussberg, P.C.<br>Attn:  Emily E. Geier, P.C.<br>Attn:  Nicholas M. Adzima<br>601 Lexington Avenue<br>New York, New York 10022<br>jsussberg@kirkland.com<br>emily.geier@kirkland.com<br>nicholas.adzima@kirkland.com<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>Attn:  Charles B. Sterrett<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>charles.sterrett@kirkland.com | **KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Attn:  Domenic E. Pacitti (DE Bar No. 3989)<br>Attn:  Michael W. Yurkewicz (DE Bar No. 4165)<br>Attn:  Alyssa M. Radovanovich (DE Bar No. 7101)<br>919 North Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>dpacitti@klehr.com<br>myurkewicz@klehr.com<br>aradovanovich@klehr.com |

| *U.S. Trustee* |
|---|
| **THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE**<br>Attn:  John Schanne<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>John.Schanne@usdoj.gov |

| *Counsel to the Committee* |
|:---:|
| **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>Attn:  Adam Rogoff<br>Attn:  Robert Schmidt<br>Attn:  Nathaniel Allard<br>1177 Avenue of the Americas<br>New York, New York 10036<br>arogoff@kramerlevin.com<br>rschmidt@kramerlevin.com<br>nallard@kramerlevin.com<br><br>-and-<br><br>**SAUL EWING LLP**<br>Attn:  Luke Murley<br>1201 North Market Street, Suite 2300<br>Wilmington, Delaware 19801<br>luke.murley@saul.com |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents free of charge, contact Stretto, Inc., the voting and claims agent retained by the Debtors in the chapter 11 cases by:  (a) calling the Debtors' restructuring hotline at (855) 337-3537 (toll free) or (949) 617-1363 (international); (b) visiting the Debtors' restructuring website at: https://cases.stretto.com/express/ and clicking on the link for the Plan and Disclosure Statement; (c) writing to Express, Inc. *et. al.*, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; and/or (d) emailing ExpressBallotInquiries@stretto.com.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.deb.uscourts.gov.

3

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE X.D CONTAINS A THIRD-PARTY RELEASE**. PURSUANT TO THE PLAN YOU ARE DEEMED TO REJECT THE PLAN AND THEREFORE ARE DEEMED TO HAVE REJECTED THE RELEASE SET FORTH IN ARTICLE X.D.   YOU MAY OPT-IN TO THE RELEASE BY COMPLETING AND RETURNING THE DEEMED TO REJECT OPT-IN FORM BY THE VOTING DEADLINE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**PLEASE ALSO BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.C OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.  IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN, YOU MAY WISH TO CONTACT A LAWYER.  IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION REGARDING THE PLAN OR ANYTHING STATED HEREIN, CONTACT THE SOLICITATION AGENT. PLEASE BE ADVISED THAT THE SOLICITATION AGENT CANNOT PROVIDE LEGAL ADVICE.**

[*Remainder of page intentionally left blank*]

Dated:  November 6, 2024
Wilmington, Delaware

/s/ Domenic E. Pacitti

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:   (302) 426-1189
Facsimile:   (302) 426-9193
Email:       dpacitti@klehr.com
             myurkewicz@klehr.com
             aradovanovich@klehr.com


-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:   (215) 569-3007
Facsimile:   (215) 568-6603
Email:       mbranzburg@klehr.com


*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       joshua.sussberg@kirkland.com
             emily.geier@kirkland.com
             nicholas.adzima@kirkland.com


-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

**Exhibit D1**

**Unimpaired Opt-In Form**

## OPTIONAL:  DEEMED TO ACCEPT OPT-IN RELEASE FORM

**What is this form?  This optional form (the "<u>Opt-In Form</u>") gives you the opportunity to opt-in to granting the Third-Party Release described below.**

**Who should fill out this form?  You should only consider filling out this form if you have a Claim against, or Interest in, the Debtors, and are deemed to accept the Plan.  If you are unsure whether you hold such a Claim or Interest, you should consult your own attorney.**

**What is the Third-Party Release?  If you have a claim against, or Interest in, the Debtors, and are not in Class 3 you are not by default deemed to grant the Third-Party Release.  If you want to opt-in to the Third-Party Release, you must fill out and return this form.  That means you will release, that is, waive or give up, certain legal claims you might have against the parties identified as the "Released Parties" on this form.  If you are unsure whether you have any such claims against the Released Parties, you should consult your own attorney.**

**How do I opt-in to the Third-Party Release?  Complete this form and return it as instructed below.  If you are unsure how to complete the form, you should consult your own attorney.**

**Will this affect my treatment under the Plan?  No.  Whether you choose to opt-in to the Third-Party Release or not will have no effect on your treatment under the Plan.  If you have received this Opt-In Form, your claim is unimpaired under the Plan and you are deemed to accept the Plan.**

**What am I being asked to do?  You have the option of opting in to granting the Third-Party Release.  If you do not wish to opt-in, you do not need to do anything, and you will be deemed to reject the Third-Party Release.  If you are uncertain as to whether you should opt-in, you should consult your own attorney.**

**When is the deadline to submit this form?  If you wish to opt-in, this form must be actually received by the Solicitation Agent by December 11, 2024, at 4:00 p.m. Prevailing Eastern Time, as set forth on the following page.**

> **You should read the rest of this form thoroughly.  This summary is qualified in all respects by the information set forth below.  If you have any questions regarding what this form does, you should consult your own attorney.**

You are receiving this Opt-In Form because the Debtors' books and records indicate you are or may be a Holder of a Claim or Interest that is deemed to accept the *Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 689] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").  Holders of such Claims and Interests are deemed to reject the Third-Party Release set forth below unless a Holder affirmatively opts in on or before the Voting Deadline.

**If you believe you are a Holder of a Claim or Interest with respect to Express, Inc. or any of its Debtor affiliates and choose to opt-in to the Third-Party Release set forth in Article X.D of the Plan, please complete, sign, and date this Opt-In Form and return it promptly** via first class mail (in the enclosed reply envelope provided), overnight courier, or hand delivery to Stretto, Inc. (the "Solicitation Agent") at the address set forth below, or via the Solicitation Agent's Balloting Portal:

| |
|---|
| **Express, Inc., et al. Ballot Processing**<br>**c/o Stretto**<br>**410 Exchange, Suite 100**<br>**Irvine, CA 92602** |

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY DECEMBER 11, 2024, AT 4:00 P.M. (PREVAILING EASTERN TIME).  IF THE OPT-IN FORM IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED OR EFFECTIVE.**

**Item 1. Amount of Claim or Interest.**

The undersigned hereby certifies that, as of July 31, 2024 (the "**Voting Record Date**"), the undersigned was the Holder of a Claim or Interest in one or more of the following classes: (a) Class 1 Other Secured Claims, or (b) Class 2 Other Priority Claims.  For the avoidance of doubt, each entity should only submit one Opt-In Form for all Claims and/or Interests it holds.

| |
|---|
| Class 1 Other Secured Claims Amount $_____<br><br>OR<br><br>Class 2 Other Priority Claims Amount $_____ |

**Item 2.**        **Important information regarding the Third-Party Release.**

**ARTICLE X OF THE PLAN CONTAINS THE FOLLOWING RELEASE, INJUNCTION AND RELATED PROVISIONS:**

**C.**        *Debtor Releases.*

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS HEREBY DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED BY EACH AND ALL OF THE DEBTORS AND THEIR ESTATES AND, IF APPLICABLE, THE WIND-DOWN DEBTORS, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, OR THROUGH, FOR, OR BECAUSE OF, THE FOREGOING ENTITIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING ANY AVOIDANCE ACTIONS AND ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, THEIR ESTATES, AND THE WIND-DOWN DEBTORS, AS APPLICABLE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, ACCRUED OR UNACCRUED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR UNDER FEDERAL OR STATE STATUTORY OF COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT, OR OTHERWISE, THAT THE DEBTORS, THEIR ESTATES, AND THE WIND-DOWN DEBTORS, AS APPLICABLE, OR THEIR AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), OR THE ESTATES, THE CHAPTER 11 CASES, THE WIND-DOWN TRANSACTIONS, THEIR CAPITAL STRUCTURE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE CHAPTER 11 CASES AND RELATED ADVERSARY PROCEEDINGS, THE DEBTORS' OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE**

FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DEFINITIVE DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DEFINITIVE DOCUMENTS, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE PURSUIT OF THE WIND-DOWN TRANSACTIONS, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, IN ALL CASES UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS <u>ARTICLE X.C</u> BY THE DEBTORS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS <u>ARTICLE X.C</u> IS:  (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE WIND-DOWN TRANSACTIONS AND IMPLEMENTING THE PLAN, INCLUDING COOPERATION WITH THE INVESTIGATION, COMMENCEMENT AND PURSUIT OF THE RETAINED CAUSES OF ACTION; (II) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VI) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (VII) A BAR TO ANY OF THE DEBTORS OR THEIR RESPECTIVE ESTATES OR, IF APPLICABLE, THE WIND-DOWN DEBTORS OR THE WIND-DOWN DEBTORS, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.

FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS <u>ARTICLE X.C</u> SHALL RELEASE ANY RETAINED CAUSES OF ACTION OR ANY CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY. FURTHER, NOTHING IN THIS PLAN OR THE CONFIRMATION ORDER SHALL OPERATE AS A RELEASE OF, AND THE DEBTORS SHALL NOT RELEASE, ANY CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF ANY COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.  NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE DEBTOR RELEASE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.

**D.**          *Third Party Release.*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS HEREBY DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED BY EACH AND ALL OF THE RELEASING PARTIES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES, IN EACH CASE SOLELY TO THE EXTENT OF THE RELEASING PARTIES' AUTHORITY TO BIND ANY OF THE FOREGOING, INCLUDING PURSUANT TO AGREEMENT OR APPLICABLE NON-BANKRUPTCY LAW, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREAFTER ARISING, WHETHER IN LAW, EQUITY, CONTRACT, TORT, OR ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL FOREIGN OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT, OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF) OR THE ESTATES, THE CHAPTER 11 CASES, THE WIND-DOWN TRANSACTIONS, THEIR CAPITAL STRUCTURE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE DEBTORS' OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DEFINITIVE DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DEFINITIVE DOCUMENTS, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE PURSUIT OF THE WIND-DOWN TRANSACTIONS, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE

CHAPTER 11 CASES, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO THE DEBTORS TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. FOR THE AVOIDANCE OF DOUBT, HOLDERS OF CLAIMS SHALL ONLY BE CONSIDERED RELEASING PARTIES WITH RESPECT TO THE THIRD-PARTY RELEASE TO THE EXTENT THAT SUCH HOLDERS OF CLAIMS OPT INTO GRANTING THE THIRD-PARTY RELEASE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS ARTICLE X.D, WHICH INCLUDE BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS ARTICLE X.D IS:  (I) CONSENSUAL; (II) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (III) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS AND CAUSES OF ACTION; (IV) IN THE BEST INTERESTS OF THE DEBTORS, THEIR ESTATES, AND ALL HOLDERS OF CLAIMS AND INTERESTS; (V) FAIR, EQUITABLE, AND REASONABLE; (VI) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VII) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES OR THE DEBTORS OR THEIR RESPECTIVE ESTATES OR, IF APPLICABLE, THE WIND-DOWN DEBTORS, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.

FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS ARTICLE X.D SHALL RELEASE ANY RETAINED CAUSE OF ACTION OR ANY CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS PLAN OR THE CONFIRMATION ORDER SHALL OPERATE AS A RELEASE OF, AND THE RELEASING PARTIES SHALL NOT RELEASE, ANY CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF ANY COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE THIRD-PARTY RELEASE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.

E.        *Exculpations.*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR

**LIMITING EITHER THE DEBTOR RELEASE OR THE THIRD-PARTY RELEASE, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM ANY CLAIM OR CAUSE OF ACTION FOR ANY ACT OR OMISSION ARISING ON OR AFTER THE PETITION DATE AND PRIOR TO OR ON THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE ADMINISTRATION OF THE CHAPTER 11 CASES, COMMENCEMENT OF THE CHAPTER 11 CASES, PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE MAKING OF DISTRIBUTIONS, THE DISCLOSURE STATEMENT, THE SALE PROCESS, THE SALE ORDER, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THIS PLAN, THE OCCURRENCE OF THE EFFECTIVE DATE, THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THIS PLAN, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY ASSET OR SECURITY OF THE DEBTORS, OR THE TRANSACTIONS OR DOCUMENTATION IN FURTHERANCE OF ANY OF THE FOREGOING, INCLUDING ANY POSTPETITION, PRE-EFFECTIVE DATE ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF ANY SALE, RESTRUCTURING, OR LIQUIDATION OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN, *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE: (I) ANY CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (II) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED, FURTHER*, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS.  THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON. NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS <u>ARTICLE X.E</u> SHALL OR SHALL BE DEEMED TO PROHIBIT THE DEBTORS FROM ASSERTING AND ENFORCING ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES THEY MAY HAVE AGAINST ANY PERSON THAT IS BASED UPON AN ALLEGED BREACH OF A CONFIDENTIALITY OR NON-COMPETE OBLIGATION OWED TO THE DEBTORS, IN EACH CASE UNLESS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF,**

**ALL OTHER RELEASES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS <u>ARTICLE X.E</u> SHALL RELEASE OR EXCULPATE ANY RETAINED CAUSE OF ACTION OR NON-RELEASED PARTY. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE EXCULPATION SHALL NOT AFFECT, LIMIT, EXCULPATE OR RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.**

F.      *Injunction.*

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EXCEPT AS PROVIDED IN <u>ARTICLE X.L</u> OF THE PLAN, AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THIS <u>ARTICLE X</u> OF THE PLAN, WHETHER RELEASED PURSUANT TO THE DEBTOR RELEASE, RELEASED PURSUANT TO THE THIRD-PARTY RELEASE, OR RELEASED PURSUANT TO ANOTHER PROVISION OF THE PLAN (INCLUDING THE RELEASE OF LIENS PURSUANT TO <u>ARTICLE X.B</u> OF THE PLAN), OR ARE SUBJECT TO EXCULPATION PURSUANT TO <u>ARTICLE X.E</u> OF THE PLAN, ARE ENJOINED ((A) IN THE CASE OF THE DEBTORS AND THE WIND-DOWN DEBTORS, FROM AND AFTER THE EFFECTIVE DATE, THROUGH AND UNTIL THE DATE UPON WHICH ALL REMAINING PROPERTY OF THE DEBTORS' ESTATES VESTS INTO THE WIND-DOWN DEBTORS, AND HAS BEEN LIQUIDATED AND DISTRIBUTED IN ACCORDANCE WITH THE TERMS OF THE PLAN, AND (B) IN THE CASE OF THE RELEASED PARTIES, THE EXCULPATED PARTIES, AND ALL OTHER PERSONS AND ENTITIES OTHER THAN THE DEBTORS AND THE WIND-DOWN DEBTORS, AS APPLICABLE, PERMANENTLY) FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE WIND-DOWN DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES, IN EACH CASE TO THE EXTENT PROVIDED BY THE RELEVANT RELEASE, EXCULPATION, OR OTHER PLAN PROVISION:  (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH**

8

OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND, AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED OR SETTLED PURSUANT TO THE PLAN.

OTHER THAN THE WIND-DOWN DEBTORS, THE PLAN ADMINISTRATOR, OR THE LIQUIDATING TRUST OR LIQUIDATING TRUSTEE, AS APPLICABLE, NO PERSON OR ENTITY MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST THE DEBTORS, THE WIND-DOWN DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES, AS APPLICABLE, THAT RELATES TO OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF A CLAIM OR CAUSE OF ACTION SUBJECT TO ARTICLE X.B, ARTICLE X.C, ARTICLE X.D, OR ARTICLE X.E HEREOF, WITHOUT THE BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM OF ANY KIND, AND (II) SPECIFICALLY AUTHORIZING SUCH PERSON OR ENTITY TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH DEBTOR, WIND-DOWN DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY.

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AND DIRECT AND INDIRECT AFFILIATES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN. EXCEPT AS OTHERWISE SET FORTH IN THE CONFIRMATION ORDER, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS UNDER OR REINSTATEMENT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH IN THIS ARTICLE X.F OF THE PLAN.

FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING SECTION 1141(D)(3) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN AND SALE ORDER, ALL PERSONS OR ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR

**INTERESTS THAT ARE TREATED UNDER THE PLAN SHALL BE PRECLUDED AND PERMANENTLY ENJOINED ON AND AFTER THE EFFECTIVE DATE FROM ENFORCING, PURSUING, OR SEEKING ANY SETOFF OR RELIEF WITH RESPECT TO SUCH CLAIM OR INTEREST FROM THE DEBTORS, THE ESTATES, THE PURCHASERS, OR THE WIND-DOWN DEBTORS, EXCEPT FOR THE RECEIPT OF THE PAYMENTS OR DISTRIBUTIONS, IF ANY, THAT ARE CONTEMPLATED BY THE PLAN FROM THE WIND-DOWN DEBTORS, OR OTHERWISE CONTEMPLATED UNDER THE SALE ORDER.  SUCH INJUNCTION WILL NOT ENJOIN PERSONS OR ENTITIES THAT DO NOT CONSENT TO THE THIRD-PARTY RELEASE FROM PURSUING ANY DIRECT (BUT NOT DERIVATIVE) CLAIMS OR CAUSE OF ACTION SUCH PERSONS OR ENTITIES MAY HAVE AGAINST RELEASED PARTIES OTHER THAN THE DEBTORS, THE ESTATES, THE PURCHASERS, OR THE WIND-DOWN DEBTORS.**

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THIS ARTICLE X.F SHALL NOT ENJOIN THE WIND-DOWN DEBTORS' OR LIQUIDATING TRUST'S PURSUIT OF ANY RETAINED CAUSES OF ACTION OR CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY.**

\*     \*     \*

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, COLLECTIVELY, IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE WIND-DOWN DEBTORS; (C) THE DIP LENDERS; (D) THE DIP AGENTS; (E) THE PREPETITION LENDERS; (F) THE PREPETITION AGENTS; (G) THE COMMITTEE AND EACH OF ITS MEMBERS; (H) ALL HOLDERS OF CLAIMS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH CLAUSE (H); AND (L) EACH RELATED PARTY OF EACH ENTITY IN THE FOREGOING CLAUSES (A) THROUGH CLAUSE (K); *PROVIDED* THAT A RELATED PARTY OF A PERSON OR ENTITY IN THE FOREGOING CLAUSES (A) THROUGH (I) IS A RELEASING PARTY SOLELY TO THE EXTENT THAT SUCH AFFILIATE OR RELATED PARTY WOULD BE OBLIGATED TO GRANT A RELEASE UNDER PRINCIPLES OF AGENCY IF IT WERE SO DIRECTED BY SUCH PERSON OR ENTITY IN THE FOREGOING CLAUSES (A) THROUGH (I) TO WHOM THEY ARE RELATED; *PROVIDED, THAT* THE NON-RELEASED PARTIES SHALL NOT BE "RELEASING PARTIES" REGARDLESS OF WHETHER SUCH NON-RELEASED PARTY WOULD OTHERWISE CONSTITUTE A "RELEASING PARTY."

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH DEBTOR RELATED PARTY; (C) EACH OF THE WIND-DOWN DEBTORS; (D) THE DIP LENDERS; (E) THE DIP AGENTS; (F) THE PREPETITION LENDERS; (G) THE PREPETITION AGENTS; (H) THE COMMITTEE AND EACH OF ITS MEMBERS; (I) ALL HOLDERS OF CLAIMS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; *PROVIDED, HOWEVER,* THAT ANY PARTY THAT IS REQUIRED TO OPT IN TO THE RELEASES CONTAINED IN THE PLAN THAT DOES NOT DO SO SHALL NOT BE A "RELEASED

PARTY"; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) AND CLAUSES (C) THROUGH (I), EXCEPT TO THE EXTENT THAT ANY SUCH AFFILIATE WOULD OTHERWISE CONSTITUTE A NON-RELEASED PARTY; *PROVIDED, THAT* WHP AND THE IP LICENSORS SHALL NOT BE "RELEASED PARTIES" SOLELY ON ACCOUNT OF THEIR STATUS AS "AFFILIATES" OF THE DEBTORS, ANY DEBTOR RELATED PARTY, OR THE WIND-DOWN DEBTORS; (K) EACH RELATED PARTY OF EACH ENTITY IN THE FOREGOING CLAUSES (D) THROUGH CLAUSE (J); *PROVIDED, THAT* THE NON-RELEASED PARTIES SHALL NOT BE "RELEASED PARTIES" REGARDLESS OF WHETHER SUCH NON-RELEASED PARTY WOULD OTHERWISE CONSTITUTE A "RELEASED PARTY". FOR THE AVOIDANCE OF DOUBT, NO (X) RELATED PARTY OF A NON-RELEASED PARTY NOR (Y) ANY FORMER DIRECTOR OR OFFICER (WHO DID NOT SERVE AS A DIRECTOR OR OFFICER ON OR AFTER THE PETITION DATE) SHALL BE A "RELEASED PARTY" IN ANY OTHER CAPACITY (INCLUDING, WITHOUT LIMITATION, IF SUCH PERSON SERVED AS A CONSULTANT OR ADVISOR), AND ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST SUCH PERSONS (IDENTIFIED IN (X) AND (Y)) SHALL BE PRESERVED AND NOT RELEASED IN ACCORDANCE WITH THIS PLAN.

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND SUBMIT THE DEEMED TO ACCEPT OPT-IN FORM BY THE VOTING DEADLINE. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION. PLEASE BE ADVISED THAT IF YOU WOULD OTHERWISE FALL WITHIN THE DEFINITION OF A "RELEASED PARTY" AND DO NOT ELECT TO OPT-IN TO THE THIRD-PARTY RELEASE, YOU WILL NO LONGER BE A "RELEASED PARTY."

☐    By checking this box, you elect to opt-in to the Third-Party Release.

PLEASE BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.C OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE. IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.

**<u>Item 3</u>. Certifications.**

By signing this Opt-In Form, the undersigned certifies that:

(a)    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)    the Holder has received a copy of the *Notice of Non-Voting Status* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)    for a Holder of Claims or Interests, the Holder has submitted the same respective election concerning the releases with respect to all Claims or Interests set forth in Item 1; and

(d)    no other Opt-In Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title: | _____ |
| Address: | _____ |
| | |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO OPT-IN, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT TO THE SOLICITATION AGENT (I) VIA STRETTO'S BALLOTING PORTAL OR (II) BY MAIL, OVERNIGHT OR HAND DELIVERY TO:**

**Express, Inc., et al. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602**

**THE VOTING DEADLINE IS DECEMBER 11, 2024 AT 4:00 P.M.**

**(PREVAILING EASTERN TIME).**

**Via the Balloting Portal.**  Submit your Opt-In Form via the Solicitation Agent's online portal, by visiting https://cases.stretto.com/express/ (the "**Balloting Portal**").   Click on the "Balloting" section of the website and follow the instructions to submit your Opt-In Form.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Opt-In Form:**

**Unique Password:_____**

**The Solicitation Agent's Balloting Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission.  Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each password is to be used solely for voting only those Claims described in Item 1 of your electronic Opt-In Form.  Please complete and submit an electronic Opt-In Form for each password you receive, as applicable.**

**Holders of Claims who cast an Opt-In Form using the Balloting Portal should NOT also submit a paper Opt-In Form.  In the event you submit an Opt-In Form using the Balloting Portal and a paper Opt-In Form, the last properly executed Opt-In Form timely received shall control.**

## Exhibit D2

**Impaired Opt-In Form**

## <u>OPTIONAL:  DEEMED TO REJECT OPT-IN RELEASE FORM</u>

**What is this form?  This optional form (the "<u>Opt-In Form</u>") gives you the opportunity to opt-in to granting the Third-Party Release described below.**

**Who should fill out this form?  You should only consider filling out this form if you have a Claim against, or Interest in, the Debtors, and are deemed to reject the Plan.  If you are unsure whether you hold such a Claim or Interest, you should consult your own attorney.**

**What is the Third-Party Release?  Because you are deemed to reject the Plan, you are by default deemed to be excluded from the Third-Party Release.  By being excluded from the Third-Party Release, you preserve certain legal claims you might have against the Released Parties.  If you are unsure whether you have any such claims against the Released Parties, you should consult your own attorney.**

**How do I opt-in to the Third-Party Release?  Complete this form and return it as instructed below.  If you are unsure how to complete the form, you should consult your own attorney.**

**Will this affect my treatment under the Plan?  No.  Whether you choose to opt-in to the Third-Party Release or not will have no effect on your treatment under the Plan.  If you have received this Opt-In Form, you are not entitled to any distribution under the Plan.**

**What am I being asked to do?  You have the option of opting in to granting the Third-Party Release.  If you do not wish to opt-in, you do not need to do anything, and you will be deemed to reject the Third-Party Release.  If you are uncertain as to whether you should opt-in, you should consult your own attorney.**

**When is the deadline to submit this form?  If you wish to opt-in, this form must be actually received by the Solicitation Agent by December 11, at 4:00 p.m. Prevailing Eastern Time, as set forth on the following page.**

---

**You should read the rest of this form thoroughly. This summary is qualified in all respects by the information set forth below.  If you have any questions regarding what this form does, you should consult your own attorney.**

---

You are receiving this Opt-In Form because the Debtors' books and records indicate you are or may be a Holder of a Claim or Interest that is deemed to reject the *Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 689] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").  Holders of such Claims and Interests are deemed to reject the Third-Party Release set forth below unless a Holder affirmatively opts in on or before the Voting Deadline.

**If you believe you are a Holder of a Claim or Interest with respect to Express, Inc. or any of its Debtor affiliates and choose to opt-in to the Third-Party Release set forth in Article X.D of the Plan, please complete, sign, and date this Opt-In Form and return it promptly** via first class mail (in the enclosed reply envelope provided), overnight courier, or hand delivery to Stretto, Inc. (the "Solicitation Agent") at the address set forth below, or via the Solicitation Agent's Balloting Portal:

---

**Express, Inc., et al. Ballot Processing**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

---

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY DECEMBER 11, 2024, AT 4:00 P.M. (PREVAILING EASTERN TIME).  IF THE OPT-IN FORM IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED OR EFFECTIVE.**

**Item 1**. Amount of Claim or Interest.

The undersigned hereby certifies that, as of July 31, 2024 (the "**Voting Record Date**"), the undersigned was the Holder of a Claim or Interest in one or more of the following classes: (a) Class 4 Intercompany Claims, (b) Class 5 Intercompany Interests, (c)  Class 6 Existing Equity Interests in Express, and (d) Class 7 Section 501(b) Claims  For the avoidance of doubt, each entity should only submit one Opt-In Form for all Claims and/or Interests it holds.

Class 4 Intercompany Claims Amount $_____

OR

Class 5 Intercompany Interests Amount $_____

OR

Class 6 Existing Equity Interests In Express Amount
$_____

OR

Class 7 Section 510(b) Claims Amount $_____

**Item 2.**     **Important information regarding the Third-Party Release.**

**ARTICLE X OF THE PLAN CONTAINS THE FOLLOWING RELEASE, INJUNCTION AND RELATED PROVISIONS:**

**C.**     *Debtor Releases.*

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS HEREBY DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED BY EACH AND ALL OF THE DEBTORS AND THEIR ESTATES AND, IF APPLICABLE, THE WIND-DOWN DEBTORS, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, OR THROUGH, FOR, OR BECAUSE OF, THE FOREGOING ENTITIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING ANY AVOIDANCE ACTIONS AND ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, THEIR ESTATES, AND THE WIND-DOWN DEBTORS, AS APPLICABLE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, ACCRUED OR UNACCRUED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR UNDER FEDERAL OR STATE STATUTORY OF COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC**

3

**LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT, OR OTHERWISE, THAT THE DEBTORS, THEIR ESTATES, AND THE WIND-DOWN DEBTORS, AS APPLICABLE, OR THEIR AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), OR THE ESTATES, THE CHAPTER 11 CASES, THE WIND-DOWN TRANSACTIONS, THEIR CAPITAL STRUCTURE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE CHAPTER 11 CASES AND RELATED ADVERSARY PROCEEDINGS, THE DEBTORS' OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DEFINITIVE DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DEFINITIVE DOCUMENTS, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE PURSUIT OF THE WIND-DOWN TRANSACTIONS, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, IN ALL CASES UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS <u>ARTICLE X.C</u> BY THE DEBTORS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS <u>ARTICLE X.C</u> IS:  (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE WIND-DOWN TRANSACTIONS AND IMPLEMENTING THE PLAN, INCLUDING COOPERATION WITH THE INVESTIGATION, COMMENCEMENT AND PURSUIT OF THE RETAINED CAUSES OF ACTION; (II) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VI) A SOUND EXERCISE OF THE DEBTORS'**

**BUSINESS JUDGMENT; AND (VII) A BAR TO ANY OF THE DEBTORS OR THEIR RESPECTIVE ESTATES OR, IF APPLICABLE, THE WIND-DOWN DEBTORS OR THE WIND-DOWN DEBTORS, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS <u>ARTICLE X.C</u> SHALL RELEASE ANY RETAINED CAUSES OF ACTION OR ANY CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY. FURTHER, NOTHING IN THIS PLAN OR THE CONFIRMATION ORDER SHALL OPERATE AS A RELEASE OF, AND THE DEBTORS SHALL NOT RELEASE, ANY CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF ANY COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE DEBTOR RELEASE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.**

D.        *Third Party Release.*

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS HEREBY DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED BY EACH AND ALL OF THE RELEASING PARTIES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES, IN EACH CASE SOLELY TO THE EXTENT OF THE RELEASING PARTIES' AUTHORITY TO BIND ANY OF THE FOREGOING, INCLUDING PURSUANT TO AGREEMENT OR APPLICABLE NON-BANKRUPTCY LAW, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREAFTER ARISING, WHETHER IN LAW, EQUITY, CONTRACT, TORT, OR ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL FOREIGN OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT, OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM, INCLUDING**

ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF) OR THE ESTATES, THE CHAPTER 11 CASES, THE WIND-DOWN TRANSACTIONS, THEIR CAPITAL STRUCTURE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE DEBTORS' OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DEFINITIVE DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DEFINITIVE DOCUMENTS, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE PURSUIT OF THE WIND-DOWN TRANSACTIONS, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO THE DEBTORS TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. FOR THE AVOIDANCE OF DOUBT, HOLDERS OF CLAIMS SHALL ONLY BE CONSIDERED RELEASING PARTIES WITH RESPECT TO THE THIRD-PARTY RELEASE TO THE EXTENT THAT SUCH HOLDERS OF CLAIMS OPT INTO GRANTING THE THIRD-PARTY RELEASE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS ARTICLE X.D, WHICH INCLUDE BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS <u>ARTICLE X.D</u> IS:  (I) CONSENSUAL; (II) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (III) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS AND CAUSES OF ACTION; (IV) IN THE BEST INTERESTS OF THE DEBTORS, THEIR ESTATES, AND ALL HOLDERS OF CLAIMS AND INTERESTS; (V) FAIR, EQUITABLE, AND REASONABLE; (VI) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VII) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES OR THE DEBTORS OR THEIR RESPECTIVE ESTATES OR, IF APPLICABLE, THE WIND-DOWN DEBTORS, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS <u>ARTICLE X.D</u> SHALL RELEASE ANY RETAINED CAUSE OF ACTION OR ANY CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS PLAN OR THE CONFIRMATION ORDER SHALL OPERATE AS A RELEASE OF, AND THE RELEASING PARTIES SHALL NOT RELEASE, ANY CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED TO, ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS DETERMINED BY FINAL ORDER OF ANY COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE THIRD-PARTY RELEASE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.**

E.        *Exculpations.*

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR LIMITING EITHER THE DEBTOR RELEASE OR THE THIRD-PARTY RELEASE, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM ANY CLAIM OR CAUSE OF ACTION FOR ANY ACT OR OMISSION ARISING ON OR AFTER THE PETITION DATE AND PRIOR TO OR ON THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE ADMINISTRATION OF THE CHAPTER 11 CASES, COMMENCEMENT OF THE CHAPTER 11 CASES, PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE MAKING OF DISTRIBUTIONS, THE DISCLOSURE STATEMENT, THE SALE PROCESS, THE SALE ORDER, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THIS PLAN, THE OCCURRENCE OF THE EFFECTIVE DATE, THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THIS PLAN, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY ASSET OR SECURITY OF THE DEBTORS, OR THE TRANSACTIONS OR DOCUMENTATION IN FURTHERANCE OF ANY OF THE FOREGOING, INCLUDING ANY POSTPETITION, PRE-EFFECTIVE DATE ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF ANY SALE, RESTRUCTURING, OR LIQUIDATION OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN, *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT OPERATE TO WAIVE OR RELEASE: (I) ANY CAUSES OF ACTION ARISING FROM WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE OF SUCH APPLICABLE EXCULPATED PARTY AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (II) THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS,**

INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT; *PROVIDED, FURTHER*, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS.   THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON. NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS <u>ARTICLE X.E</u> SHALL OR SHALL BE DEEMED TO PROHIBIT THE DEBTORS FROM ASSERTING AND ENFORCING ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES THEY MAY HAVE AGAINST ANY  PERSON THAT IS BASED UPON  AN ALLEGED BREACH OF A CONFIDENTIALITY OR  NON-COMPETE OBLIGATION OWED TO THE DEBTORS, IN EACH CASE UNLESS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THIS <u>ARTICLE X.E</u> SHALL RELEASE OR EXCULPATE ANY RETAINED CAUSE OF ACTION OR NON-RELEASED PARTY. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE EXCULPATION SHALL NOT AFFECT, LIMIT, EXCULPATE OR RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN.

F.        *Injunction.*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EXCEPT AS PROVIDED IN <u>ARTICLE X.L</u> OF THE PLAN, AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THIS <u>ARTICLE X</u> OF THE PLAN, WHETHER RELEASED PURSUANT TO THE DEBTOR RELEASE, RELEASED PURSUANT TO THE THIRD-PARTY RELEASE, OR RELEASED PURSUANT TO ANOTHER PROVISION OF THE PLAN (INCLUDING THE RELEASE OF LIENS PURSUANT TO <u>ARTICLE X.B</u> OF THE PLAN), OR ARE SUBJECT TO EXCULPATION PURSUANT TO <u>ARTICLE X.E</u> OF THE PLAN, ARE ENJOINED ((A) IN THE CASE OF THE DEBTORS AND THE WIND-DOWN DEBTORS, FROM AND AFTER THE EFFECTIVE DATE, THROUGH AND UNTIL THE DATE

UPON WHICH ALL REMAINING PROPERTY OF THE DEBTORS' ESTATES VESTS INTO THE WIND-DOWN DEBTORS, AND HAS BEEN LIQUIDATED AND DISTRIBUTED IN ACCORDANCE WITH THE TERMS OF THE PLAN, AND (B) IN THE CASE OF THE RELEASED PARTIES, THE EXCULPATED PARTIES, AND ALL OTHER PERSONS AND ENTITIES OTHER THAN THE DEBTORS AND THE WIND-DOWN DEBTORS, AS APPLICABLE, PERMANENTLY) FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE WIND-DOWN DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES, IN EACH CASE TO THE EXTENT PROVIDED BY THE RELEVANT RELEASE, EXCULPATION, OR OTHER PLAN PROVISION: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND, AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED OR SETTLED PURSUANT TO THE PLAN.

OTHER THAN THE WIND-DOWN DEBTORS, THE PLAN ADMINISTRATOR, OR THE LIQUIDATING TRUST OR LIQUIDATING TRUSTEE, AS APPLICABLE, NO PERSON OR ENTITY MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST THE DEBTORS, THE WIND-DOWN DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES, AS APPLICABLE, THAT RELATES TO OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF A CLAIM OR CAUSE OF ACTION SUBJECT TO ARTICLE X.B, ARTICLE X.C, ARTICLE X.D, OR ARTICLE X.E HEREOF, WITHOUT THE BANKRUPTCY COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM OF ANY KIND, AND (II) SPECIFICALLY AUTHORIZING SUCH PERSON OR ENTITY TO BRING SUCH

**CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH DEBTOR, WIND-DOWN DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY.**

**UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AND DIRECT AND INDIRECT AFFILIATES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN. EXCEPT AS OTHERWISE SET FORTH IN THE CONFIRMATION ORDER, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS UNDER OR REINSTATEMENT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH IN THIS <u>ARTICLE X.F</u> OF THE PLAN.**

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING SECTION 1141(D)(3) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN AND SALE ORDER, ALL PERSONS OR ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT ARE TREATED UNDER THE PLAN SHALL BE PRECLUDED AND PERMANENTLY ENJOINED ON AND AFTER THE EFFECTIVE DATE FROM ENFORCING, PURSUING, OR SEEKING ANY SETOFF OR RELIEF WITH RESPECT TO SUCH CLAIM OR INTEREST FROM THE DEBTORS, THE ESTATES, THE PURCHASERS, OR THE WIND-DOWN DEBTORS, EXCEPT FOR THE RECEIPT OF THE PAYMENTS OR DISTRIBUTIONS, IF ANY, THAT ARE CONTEMPLATED BY THE PLAN FROM THE WIND-DOWN DEBTORS, OR OTHERWISE CONTEMPLATED UNDER THE SALE ORDER.  SUCH INJUNCTION WILL NOT ENJOIN PERSONS OR ENTITIES THAT DO NOT CONSENT TO THE THIRD-PARTY RELEASE FROM PURSUING ANY DIRECT (BUT NOT DERIVATIVE) CLAIMS OR CAUSE OF ACTION SUCH PERSONS OR ENTITIES MAY HAVE AGAINST RELEASED PARTIES OTHER THAN THE DEBTORS, THE ESTATES, THE PURCHASERS, OR THE WIND-DOWN DEBTORS.**

**FOR THE AVOIDANCE OF DOUBT AND NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THIS ARTICLE X.F SHALL NOT ENJOIN THE WIND-DOWN DEBTORS' OR LIQUIDATING TRUST'S PURSUIT OF ANY RETAINED CAUSES OF ACTION OR CLAIMS OR CAUSES OF ACTION AGAINST ANY NON-RELEASED PARTY.**

\*     \*     \*

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, COLLECTIVELY, IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE WIND-DOWN DEBTORS; (C) THE DIP LENDERS; (D) THE DIP AGENTS; (E) THE PREPETITION LENDERS; (F) THE PREPETITION AGENTS; (G) THE COMMITTEE AND EACH OF ITS MEMBERS; (H) ALL HOLDERS OF CLAIMS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (I) EACH CURRENT AND FORMER AFFILIATE

OF EACH ENTITY IN CLAUSES (A) THROUGH CLAUSE (H); AND (L) EACH RELATED PARTY OF EACH ENTITY IN THE FOREGOING CLAUSES (A) THROUGH CLAUSE (K); *PROVIDED* THAT A RELATED PARTY OF A PERSON OR ENTITY IN THE FOREGOING CLAUSES (A) THROUGH (I) IS A RELEASING PARTY SOLELY TO THE EXTENT THAT SUCH AFFILIATE OR RELATED PARTY WOULD BE OBLIGATED TO GRANT A RELEASE UNDER PRINCIPLES OF AGENCY IF IT WERE SO DIRECTED BY SUCH PERSON OR ENTITY IN THE FOREGOING CLAUSES (A) THROUGH (I) TO WHOM THEY ARE RELATED; *PROVIDED, THAT* THE NON-RELEASED PARTIES SHALL NOT BE "RELEASING PARTIES" REGARDLESS OF WHETHER SUCH NON-RELEASED PARTY WOULD OTHERWISE CONSTITUTE A "RELEASING PARTY."

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH DEBTOR RELATED PARTY; (C) EACH OF THE WIND-DOWN DEBTORS; (D) THE DIP LENDERS; (E) THE DIP AGENTS; (F) THE PREPETITION LENDERS; (G) THE PREPETITION AGENTS; (H) THE COMMITTEE AND EACH OF ITS MEMBERS; (I) ALL HOLDERS OF CLAIMS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; *PROVIDED, HOWEVER,* THAT ANY PARTY THAT IS REQUIRED TO OPT IN TO THE RELEASES CONTAINED IN THE PLAN THAT DOES NOT DO SO SHALL NOT BE A "RELEASED PARTY"; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) AND CLAUSES (C) THROUGH (I), EXCEPT TO THE EXTENT THAT ANY SUCH AFFILIATE WOULD OTHERWISE CONSTITUTE A NON-RELEASED PARTY; *PROVIDED, THAT* WHP AND THE IP LICENSORS SHALL NOT BE "RELEASED PARTIES" SOLELY ON ACCOUNT OF THEIR STATUS AS "AFFILIATES" OF THE DEBTORS, ANY DEBTOR RELATED PARTY, OR THE WIND-DOWN DEBTORS; (K) EACH RELATED PARTY OF EACH ENTITY IN THE FOREGOING CLAUSES (D) THROUGH CLAUSE (J); *PROVIDED, THAT* THE NON-RELEASED PARTIES SHALL NOT BE "RELEASED PARTIES" REGARDLESS OF WHETHER SUCH NON-RELEASED PARTY WOULD OTHERWISE CONSTITUTE A "RELEASED PARTY".  FOR THE AVOIDANCE OF DOUBT, NO (X) RELATED PARTY OF A NON-RELEASED PARTY NOR (Y) ANY FORMER DIRECTOR OR OFFICER (WHO DID NOT SERVE AS A DIRECTOR OR OFFICER ON OR AFTER THE PETITION DATE) SHALL BE A "RELEASED PARTY" IN ANY OTHER CAPACITY (INCLUDING, WITHOUT LIMITATION, IF SUCH PERSON SERVED AS A CONSULTANT OR ADVISOR), AND ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST SUCH PERSONS (IDENTIFIED IN (X) AND (Y)) SHALL BE PRESERVED AND NOT RELEASED IN ACCORDANCE WITH THIS PLAN.

## **IMPORTANT INFORMATION REGARDING THE RELEASES**:

YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASES CONTAINED IN ARTICLE X.D OF THE PLAN.   YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF YOU CHECK THE BOX BELOW AND SUBMIT THE DEEMED TO REJECT OPT-IN FORM BY THE VOTING DEADLINE. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.  PLEASE BE ADVISED THAT IF YOU WOULD OTHERWISE FALL WITHIN THE DEFINITION OF A "RELEASED PARTY" AND DO NOT ELECT TO OPT-IN TO THE THIRD-PARTY RELEASE, YOU WILL NO LONGER BE A

"RELEASED PARTY."

☐    By checking this box, you elect to opt-in to the Third-Party Release.

PLEASE BE ADVISED THAT THE DEBTOR RELEASE CONTAINED IN ARTICLE X.C OF THE PLAN WILL BE INCLUDED IN THE CONFIRMATION ORDER AND THAT IT IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE.   IF YOU OBJECT TO THE DEBTOR RELEASE, YOU MUST FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.

## <u>Item 3</u>.  Certifications.

By signing this Deemed to Reject Opt-In Form, the undersigned certifies that:

(e)    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(f)    the Holder has received a copy of the *Notice of Non-Voting Status* and that this Deemed to Reject Opt-In Form is made pursuant to the terms and conditions set forth therein;

(g)    for a Holder of Claims or Interests, the Holder has submitted the same respective election concerning the releases with respect to all Claims or Interests set forth in Item 1; and

(h)    no other Deemed to Reject Opt-In Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Deemed to Reject Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Deemed to Reject Opt-In Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title: | _____ |
| Address: | _____ |
| | |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF YOU WISH TO OPT-IN, PLEASE COMPLETE, SIGN, AND DATE THIS DEEMED TO REJECT OPT-IN FORM AND RETURN IT TO THE SOLICITATION AGENT
(I) VIA STRETTO'S BALLOTING PORTAL OR (II) BY MAIL, OVERNIGHT OR HAND DELIVERY TO:**

**Express, Inc., et al. Ballot Processing**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**THE VOTING DEADLINE IS DECEMBER 11, 2024 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

<u>**Via the Balloting Portal**</u>. **Submit your Opt-In Form via the Solicitation Agent's online portal, by visiting https://cases.stretto.com/express/ (the "<u>Balloting Portal</u>"). Click on the "Balloting" section of the website and follow the instructions to submit your Opt-In Form.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Deemed to Reject Opt-In Form:**

**Unique Password:_____**

**The Solicitation Agent's Balloting Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each password is to be used solely for voting only those Claims described in Item 1 of your electronic Opt-In Form.  Please complete and submit an electronic Opt-In Form for each password you receive, as applicable.**

**Holders of Claims who cast an Opt-In Form using the Balloting Portal should NOT also submit a paper Opt-In Form.  In the event you submit an Opt-In Form using the Balloting Portal and a paper Opt-In Form, the last properly executed Opt-In Form timely received shall control.**