## EXHIBIT B

**Revised Proposed Confirmation Order (Redline)**

*As Filed at Docket No. 1137*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-110831 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## FINDINGS OF FACT, CONCLUSIONS OF LAW,
## AND ORDER CONFIRMING THE JOINT CHAPTER 11
## PLAN OF EXP OLDCO WINDDOWN, INC. AND ITS DEBTOR AFFILIATES

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a.  commenced, on April 22, 2024 (the "Petition Date"), these chapter 11 cases
    (the "Chapter 11 Cases") by filing voluntary petitions in the United States
    Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief
    under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.  continued to operate and manage their businesses and properties as debtors in
    possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  obtained on June 6, 2024, the *Final Order (I) Authorizing the Debtors to (A)*
    *Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority*
    *Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting*
    *Adequate Protection to the Prepetition Secured Parties; (III) Modifying the*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification
numbers, are EXP OldCo Winddown, Inc. (8128); Project Pine TopCo Winddown, LLC (8079); Project Pine
Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160);
Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine
Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861);
Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382).
The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases
is One Express Drive, Columbus, Ohio 43230.

[2]  All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order
(collectively, this "Confirmation Order") have the meanings given to them in the *Joint Chapter 11 Plan of EXP*
*OldCo Winddown, Inc. and its Debtor Affiliates* [Docket No. 1130] (as amended, modified, or supplemented
from time to time, the "Plan"), attached hereto as **Exhibit A**.  The rules of interpretation set forth in Article I of
the Plan shall apply to this Confirmation Order.

*Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 419] (the "<u>Final DIP Order</u>");

d.      obtained on May 20, 2024, the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 280].

e.      obtained on June 14, 2024, the *Order (I) Approving Asset Purchase Agreement; (II) Authorizing and Approving Sale of Certain Assets of Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (IV) Authorizing the Debtors to Consummate Transactions Related to the Above; and (V) Granting Related Relief* [Docket No. 471] (the "<u>Sale Order</u>");

f.      filed, on July 31, 2024, (a) the *Joint Chapter 11 Plan of Express, Inc. and its Debtor Affiliates* [Docket No. 689], and (b) the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Express, Inc. and Its Debtor Affiliates* [Docket No. 690] (as amended, supplemented, or modified from time to time, the "<u>Disclosure Statement</u>");

g.      filed, on July 31, 2024, the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 691] (the "<u>Disclosure Statement Motion</u>");

h.      obtained on August 7, 2024, the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 705];

i.      obtained on September 9, 2024, the further *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 805];

j.      filed on November 1, 2024, the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* [Docket No. 953];

k.      filed on November 1, 2024, the *Disclosure Statement Relating to the Joint Chapter 11 Plan of EXP Oldco Winddown, Inc. and its Debtor Affiliates* [Docket No. 955];

l.      filed on November 4, 2024, the *Notice of Filing Exhibit to the Disclosure Statement Relating to the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* [Docket No. 961];

m.      filed on November 5, 2024, the *Notice of Revised Proposed Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 962];

n.      obtained, on November 6, 2024, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 969] (the "Disclosure Statement Order"), following a hearing (the "Disclosure Statement Hearing"), which among other things, approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code, approved the solicitation procedures (the "Solicitation Procedures"), the forms of Ballots and notices in connection therewith, the Cover Letter, and other related materials (the foregoing materials, collectively, the "Solicitation Packages");

o.      caused the Solicitation Packages and the *Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan Filed by the Debtors, the Disclosure Statement and Related Voting and Objection Deadlines* (the "Confirmation Hearing Notice") to be distributed on or before November 19, 2024, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1032] (the "Solicitation Affidavit");

p.      caused the Confirmation Hearing Notice to be published in *The New York Times* and the *Financial Times* on November 13, 2024, as evidenced by, among other things, the *Proof of Publication* [Docket Nos. 994, 995] (the "Publication Affidavit" and together with the Solicitation Affidavit, the "Affidavits");

q.      filed, on December 4, 2024, the *Notice of Filing Plan Supplement* [Docket No. 1077];

r.      filed, on December 13, 2024, the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates (Technical Modifications)* [Docket No. 1130];

s.      filed, on December 13, 2024, the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and Its Debtor Affiliates* [Docket No. 1136];

t.      filed, on December 13, 2024, the *Declaration of William Transier, Disinterested Director of EXP OldCo Winddown, Inc., in Support of Confirmation of the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc., and its Debtor Affiliates* [Docket No. 1132] (the "Transier Confirmation Declaration"), the *Declaration of Kunal S. Kamlani in Support of Confirmation of the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc., and its Debtor Affiliates* [Docket No. 1133] (the "Kamlani Confirmation Declaration"), and the *Declaration of Mark Still in Support of Confirmation of the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc., and its Debtor Affiliates* [Docket No. 1134]] (the "Still Confirmation Declaration"); and

u.      obtained approval of the Plan by the Voting Class as of the Voting Deadline, as evidenced by the *Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* [Docket No. 1135] (as may be amended, modified, or supplemented, the "Voting Report," and together with the Transier Confirmation Declaration, the Kamlani Confirmation Declaration, and the Still Confirmation Declaration, the "Confirmation Declarations");

v.      filed, on December 13, 2024, the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates (Technical Modifications)* [Docket No. [●]];

This Bankruptcy Court having:

a.      entered on November 6, 2024, the Disclosure Statement Order;

b.      set December 4, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing the Plan Supplement (the "Plan Supplement Deadline");

c.      set December 11, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline by which all Ballots and the Opt-In Forms must be properly executed, completed, and submitted so that they are actually received (the "Voting Deadline") by Stretto, Inc. (the "Solicitation Agent");

d.      set December 11, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Confirmation Objection Deadline"); and

e.      set December 17, 2024, at 10:30 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code (the "Confirmation Hearing").

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation

Hearing and the opportunity for any party in interest to object to Confirmation of the Plan have

been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.**      **Findings of Fact and Conclusions of Law.**

1.      The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.**      **Jurisdiction, Venue, Core Proceeding.**

2.      The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for*

*the District of Delaware*, dated February 29, 2012. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code. Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of the Judicial Code.

**C.      Eligibility for Relief.**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On April 23, 2024, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 67] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment.**

5.      On May 3, 2024, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 154] pursuant to section 1102 of the Bankruptcy Code.

**F.      Objections.**

6.      Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.    All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Confirmation of the Plan are hereby overruled on the merits.

**G.      Plan Supplement.**

7.      The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.    All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.    The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.    No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.    All documents included in the Plan Supplement are integral to and part of the Plan. Subject to the terms of the Plan (including the review and consent rights of certain parties, as set forth in the Plan), the Debtors' right to alter, amend, update, or modify the Plan Supplement through the Effective Date in accordance with the terms of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules is reserved.

**H.      Disclosure Statement Order.**

8.      On November 6, 2024, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved the Solicitation Procedures, (c) approved the forms of Ballots and notices in connection therewith, (d) set December 11, 2024, at 4:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline and the Voting Deadline, and (e) set December 17, 2024, at 10:30 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing.

**I.      Solicitation and Notice.**

9.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

10.      As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with section 1125, section 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

11.      As described in the Voting Report, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an

opportunity to appear and be heard with respect thereto. Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**J.      Voting Report.**

12.      Prior to the Confirmation Hearing, the Debtors filed the Voting Report. As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

13.      As set forth in the Plan, Holders of Claims in Class 3 (the "Voting Class") were eligible to vote on the Plan pursuant to the Solicitation Procedures. Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Depending on whether such Claims are reinstated or canceled and released without any distribution on account of such Claims, Holders of Claims in Classes 4 and 5 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan. Holders of Claims and Interests in Classes 6 and 7 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

14.      As evidenced by the Voting Report, the Voting Class voted to accept the Plan.

**K.      Bankruptcy Rule 3016.**

15.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.**     **Burden of Proof.**

16.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**M.**     **Modifications to Plan.**

17.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Confirmation Hearing) (the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan.  After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan.  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to

have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**N.     Compliance with the Bankruptcy Code (11 U.S.C. § 1127).**

18.     The Debtors have complied with section 1127 of the Bankruptcy Code with respect to the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**O.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129).**

19.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

> **a)     Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

20.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

> **i)     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

21.     The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into seven Classes, based on differences in the legal nature or priority of such Claims and Interests other than Administrative Claims (including Professional Fee Claims), Priority Tax Claims, and DIP Claims (if any), and each of which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy

Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

> ii)    **Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

22.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, 5, 6, and 7.  Holders of Interests in Classes 4 and 5 are deemed to accept or deemed to reject the Plan depending on whether such Interests are reinstated or canceled and released without any distribution an account of such Interests.  Holders of Claims and Interests in Classes 6 and 7 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

> iii)    **No Discrimination (11 U.S.C. § 1123(a)(4)).**

23.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

> iv)    **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**

24.     The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code.  The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Wind-Down Transactions and the appointment of a Plan Administrator and the Wind-Down Oversight Committee.

### v)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

25.     The Plan does not provide for the issuance of new equity interests.  Upon the transfer of the Wind-Down Debtor's assets to the Liquidating Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust.  To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the exemption provisions of section 1145 of the Bankruptcy Code apply to such beneficial interests.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vi)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

26.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  Article IV.C.2 of the Plan provides that, on the Effective Date, the terms of the Debtors' existing boards of directors or managers, as applicable, shall expire, and the Plan Administrator shall be immediately and automatically deemed appointed as the sole director and the sole officer of each of the Wind-Down Debtors, and the Plan Administrator shall immediately and automatically succeed to the powers of the Debtors' directors and officers.  Article IV.C.2 of the Plan also advises that the Plan Administrator shall have the sole authority to act on behalf of the

Wind-Down Debtors subject to coordination with, and where applicable, consent of the Wind-Down Debtors Oversight Committee.

### vii)    Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

27.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### b)    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

28.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, on the ~~date that is ninety (90) days after the~~ Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:   (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) have been previously assumed or rejected by the Debtors pursuant to the procedures established by the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 386] (the "Assumption/Rejection Order") or any other Bankruptcy Court order; (3) are the subject of a Filed motion or notice to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, through or in connection with the Sale Order; or

14

(5) are a contract, release, or other agreement or document entered into in connection with the Plan or Plan Administrator Agreement.

29.    The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

**c)    Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

30.    **Approval of Committee Settlement**.    Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the settlements embodied in the Plan and this Confirmation Order, including the Committee Settlement,[3] because, among other things:  (a) each of the parties supporting the Committee Settlement are represented by counsel that is recognized as being knowledgeable, competent, and experienced; (b) the Committee Settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (c) the Committee Settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Wind-Down Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates and is essential to the successful implementation of the Plan.  Based on the foregoing, the

---

[3]    "Committee Settlement" means the settlement by and between the Debtors and the Committee, the material terms of which are embodied in the version of the Plan filed on November 1, 2024, at Docket No. 953 (as may be amended, modified, or supplemented), the Plan Documents, and this Confirmation Order.

Committee Settlement satisfies the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019. Approval of the Plan shall constitute approval of the Committee Settlement, including the agreement by the Debtors, Wind-Down Debtors, and certain Released Parties, as applicable, to use their commercially reasonable best efforts to provide cooperation necessary to maximize the value of the Retained Causes of Action and any Claims or Causes of Action against the Non-Released Parties as further described in Article X.I of the Plan. The Plan, the Plan Documents, and this Confirmation Order incorporate and implement the material terms of the Committee Settlement, which is a good-faith compromise and settlement of numerous issues and disputes between and among the parties. The Committee Settlement is designed to achieve a reasonable and effective resolution of the Chapter 11 Cases. The Committee Settlement is embodied in the Plan and approved in all respects.

31. **Release of Liens.** Except as otherwise provided in the Plan, the Plan Supplement, the Sale Transaction Documentation, including the Purchase Agreement and the Sale Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the effectuation of the Wind-Down Transactions and applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the

applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases, and the Debtors and their successors and assigns shall be authorized to file and record such terminations or releases. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

32.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article X.C of the Plan (the "Debtor Release"). The Debtor Release represents a valid exercise of the Debtors' business judgement, is an essential component of the Plan, and appropriately offers protection to parties that participated in the Debtors' restructuring process. Further, the scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. Each of the Released Parties made contributions to these Chapter 11 Cases. The Debtor Release is given and made after due notice and opportunity for hearing.

33.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in Article X.C of the Plan by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article X.C of the Plan is:  (i) in

exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan, including ongoing cooperation with the investigation, commencement and, if warranted as determined by the Plan Administrator subject to the consent of the Wind-Down Debtors Oversight Committee, pursuant to the Plan, the pursuit of the Retained Causes of Action (and the Released Parties are authorized and directed to comply with the cooperation provisions of the Plan); (ii) a good-faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors or their respective Estates or, if applicable, the Wind-Down Debtors or the Wind-Down Debtors, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

34.    **Third-Party Releases.**   Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article X.D of the Plan (the "Third-Party Release"). The Third-Party Release is given and made after due notice and opportunity for hearing.

35.    The Third-Party Release is consensual with respect to the Releasing Parties. The Ballots sent to all Holders of Claims and Interests entitled to vote, the Non-Voting Status Notices sent to Holders of Claims and Interests not entitled to vote, and the Confirmation Hearing Notice sent to parties in interest and published as set forth in the Publication Affidavit unambiguously stated in bold letters that the Third-Party Release was contained in the Plan.  Additionally,

Holders of Claims or Interests who elect to grant the Third-Party Release must demonstrate their affirmative consent by returning, as applicable, an Opt-In Form, or a Ballot with the optional box checked to indicate that such holder wishes to grant such Third-Party Releases.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt in to the Third-Party Release, the opportunity to object to the Plan and the Third Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors were being given the opportunity to opt in to the release of all Claims and Causes of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Non-Voting Status Notices.  Thus, the Third-Party Release is consensual as to those Releasing Parties that opt in to the releases provided by the Plan.  For the avoidance of doubt, third parties (other than the DIP Lenders, the DIP Agents, the Prepetition Lenders, the Prepetition Agents, and the Committee and each of its members) who did not opt in to the Third-Party Release are not bound by such release under the Plan.

36.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in Article X.D of the Plan, which include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article X.D of the Plan is:  (i) consensual; (ii) given in exchange for the good and valuable consideration provided by the Released Parties; (iii) a good-faith settlement and compromise of such claims and Causes of Action; (iv) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity

for hearing;(vii) a sound exercise of the Debtors' business judgment; (viii) appropriately narrow in scope given that it expressly excludes any Claims or Causes of Action arising from acts of actual fraud, gross negligence, or willful misconduct; and (ix) a bar to any of the Releasing Parties or the Debtors or their respective Estates or, if applicable, the Wind Down Debtors, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

37.     **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article X.E of the Plan (the "Exculpation").  The Exculpation is an integral part of the Debtors' overall restructuring efforts and is an essential element of the negotiations among the Debtors and key stakeholders in obtaining their support for the Plan.  The evidence before the Bankruptcy Court demonstrates that the Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts, and that these parties would not have been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

38.     **Injunction.**  Section 105(a) and sections 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article X.F of the Plan (collectively, the "Injunction"), and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the

Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article X of the Plan. The Injunction is appropriately tailored to achieve those purposes.

39.     **Preservation of Rights of Action.** The Plan and Schedule of Retained Causes of Action are sufficiently specific and unequivocal to preserve and provide meaningful disclosure of all Retained Causes of Action. The Schedule of Retained Causes of Action is a non-exclusive list of Retained Causes of Action. For the avoidance of doubt, the Debtors are not required to identify by name any individual or entity who is a Non-Released Party, and the Plan and Schedule of Retained Causes of Action are sufficiently specific to preserve any and all Causes of Action against any Non-Released Party. The Schedule of Retained Causes of Action and the provisions of the Plan regarding Retained Causes of Action are appropriate, fair, equitable, and reasonable and are in the best interests of Debtors, their Estates, and Holders of Claims or Interests.

**d)     Cure of Defaults (11 U.S.C. § 1123(d)).**

40.     Article V.C of the Plan provides for the satisfaction of Cure Costs[4] Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described

---

[4]     "Cure Cost" means all amounts, including an amount of $0.00, required to cure any monetary defaults and other non-monetary defaults to the extent required by section 365 of the Bankruptcy Code, under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors (and/or assigned by the Debtors pursuant to the Sale Order or the Confirmation Order) pursuant to sections 365 or 1123 of the Bankruptcy Code.

below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and non-bankruptcy law.  As such, the Plan provides that the Debtors and the Purchaser, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

> **e)**   **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

41.     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

42.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving, among other things, the Solicitation Packages and the Solicitation Procedures.

43.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X.E of the Plan.

f)    **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

44.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the good faith purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record of the Disclosure Statement Hearing, the record of the Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

45.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and effectuating a successful chapter 11 proceeding for the Debtors.  The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders and parties in interest in these Chapter 11 Cases including the Committee.  Further, the Committee Settlement, the Debtor Release, and the Exculpations, and the injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

g)      **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

46.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.  The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

h)      **Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

47.     Because the Plan provides for the orderly Wind-Down of the Debtors and the resignation of the Debtors' officers, directors, and managers on the Effective Date, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtors, the Debtors have satisfied the requirements of this provision by, among other things, providing for the appointment of the Plan Administrator as the sole director and officer of each Wind-Down Debtor effective as of the Effective Date, and disclosing the identity of the Plan Administrator.

i)      **No Rate Changes (11 U.S.C. § 1129(a)(6)).**

48.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

j)      **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

49.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the

amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in Article III.J of the Disclosure Statement and filed at Docket No. 961), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Disclosure Statement Hearing and the Confirmation Hearing, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced at or prior to the Disclosure Statement Hearing and the Confirmation Hearing, are reasonable.

  **k)**  **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

  50.  The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3 voted to accept the Plan.  Class 4 (Intercompany Claims) and Class 5 (Intercompany Interests) are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan, or Impaired and deemed to have rejected the Plan, depending on whether Interests in Class 4 and Class 5 are Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Claims or Interests.  Class 6 (Existing Equity Interests in Express) and Class 7 (Section 510(b) Claims) are Impaired Classes that will not receive or retain any property under the Plan on account of the Claims in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan (collectively, together with Class 4 and Class 5 as applicable, the "Deemed Rejecting Classes").  Nevertheless, as set forth

below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

        **l)**        **Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

51.      Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

        **m)**        **Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

52.      The treatment of Administrative Claims (including Professional Fee Claims), Priority Tax Claims, and DIP Claims, under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

        **n)**        **Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

53.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, the Voting Class is Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**o)      Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

54.      The evidence proffered or adduced at or prior to the Confirmation Hearing, and in the Confirmation Declarations and the Confirmation Brief  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**p)      Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

55.      Article II of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**q)      Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

56.      The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**r)      Only One Plan (11 U.S.C. § 1129(c)).**

57.      Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**s)**     **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

58.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of

the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies

the requirements of section 1129(d) of the Bankruptcy Code.

**t)**     **Not a Small Business Case (11 U.S.C. § 1129(e)).**

59.     These Chapter 11 Cases are not small business cases, and accordingly section

1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**u)**     **Satisfaction of Confirmation Requirements.**

60.     Based upon the foregoing, the Plan satisfies the requirements for plan

confirmation set forth in section 1129 of the Bankruptcy Code.

**R.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

61.     Each of the conditions precedent to the Effective Date, as set forth in Article XI.A

of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with

Article XI.B of the Plan.

**S.     Implementation.**

62.     The Plan, all documents contained in the Plan Supplement, and all other relevant

and necessary documents have been negotiated in good faith and at arm's length, are fair and

reasonable, are supported by reasonably equivalent value and fair consideration, are in the best

interests of the Debtors, their Estates, and the Wind-Down Debtors, as applicable, and shall,

upon completion of documentation and execution in accordance with the terms and conditions of

the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any

federal, state, or local law.  The documents and agreements are essential elements of the Plan

and the Debtors have exercised reasonable business judgment in determining which documents

and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**T.    Disclosure of Facts.**

63.    The Debtors have disclosed all material facts regarding the Disclosure Statement, the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors or the Plan Administrator, as applicable.

**U.    Good-Faith Solicitation (11 U.S.C. § 1125(e)).**

64.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article X.E of the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account

of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**V.      Executory Contracts and Unexpired Leases.**

65.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article V.A of the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in these Chapter 11 Cases.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**A.      Findings of Fact and Conclusions of Law.**

66.     The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

**B.      Confirmation of the Plan.**

67.     The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including

all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, are hereby approved and authorized.  The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors, Wind-Down Debtors, and Plan Administrator in their business judgment subject to the terms and conditions of the Plan (including the Plan Supplement).  The terms of the Plan shall be effective and binding as of the Effective Date.

68.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

## C.     Objections.

69.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**D.      Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

70.      This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**E.      The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

71.      The release, exculpation, injunction, and related provisions set forth in Article X of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

    a.  **Liens.**  The release of liens provisions set forth in Article X.B of the Plan are hereby approved.

    b.  **Releases by the Debtors.**  The Debtor Release provisions set forth in Article X.C of the Plan are hereby approved.

    c.  **Third-Party Releases.**  The Third-Party Release provisions set forth in Article X.D of the Plan are hereby approved.

    d.  **Exculpation.**  The Exculpation provisions set forth in Article X.E of the Plan are hereby approved.

    e.  **Injunctions.**  The Injunction provisions set forth in Article X.F of the Plan are hereby approved.

    f.  **Cooperation**. The Cooperation provisions set forth in Article X.I of the Plan are hereby approved.

**F.**     **Classifications of Claims and Interests.**

72.     The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.**     **Plan Supplement.**

73.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and the execution, delivery, and performance thereof by the Debtors and their successors are authorized when they are finalized, executed, and delivered. Without further order or authorization of this Bankruptcy Court, the Debtors, and their successors, in a manner acceptable to the Committee (with the Committee's consent not to be unreasonably withheld), are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

H.      **Wind-Down Transactions.**

74.      On or before the Effective Date, each Debtor and Wind-Down Debtor, and the Plan Administrator, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions contemplated under the Plan, including, as applicable, the Wind-Down, and any and all mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors or the Wind-Down Debtors, as applicable, reasonably determine to be necessary to implement the transactions described in the Plan or in furtherance of the Sale Transaction (collectively, the "Wind-Down Transactions").  The Wind-Down Transactions shall have been implemented in accordance with the Wind-Down Transactions Memorandum (as defined in the Plan) in all material respects.  This Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

I.      **Sources of Consideration for Plan Distribution.**

75.      Distributions under the Plan shall be funded by (i) Cash on hand, (ii) the Distributable Proceeds, which include, among another things, the prosecution and monetization of Retained Causes of Action, (iii) the proceeds of the Wind-Down, and (iv) to the extent provided for in Article VIII.C of the Plan, the Wind-Down Reserve; *provided*, *however*, that Allowed Professional Fee Claims shall be paid from the Professional Fee Escrow Account in the first instance.

76.     The Wind-Down Debtors shall establish and/or maintain the Wind-Down Reserve (which may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Plan Administrator).  The Wind-Down Reserve shall be funded in the amount set forth in the Wind-Down Budget with the consent of the Committee.

**J.      Wind-Down Debtors.**

77.     As soon as practicable after the Effective Date, the Wind-Down Debtors shall take such actions as the Wind-Down Debtors may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator on behalf of any of the Wind-Down Debtors without need for any action or approval by the shareholders or board of directors or managers of such Debtor.  On and after the Effective Date, except as set forth in the Plan, the Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have Reinstated, set off, settled, distributed, contributed, cancelled, or released, as applicable, pursuant to the Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

78.     Upon the Effective Date, all actions contemplated under the Plan and the Definitive Documents shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders

of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Wind-Down Debtors, including: (a) appointment of the directors, managers, members, and officers for the Wind-Down Debtors as provided in the Plan; (b) the issuances, transfer, and distribution of the Wind-Down Debtor Assets, as applicable; (c) the formation of the Wind-Down Debtors and appointment of the Plan Administrator; (d) the formation of any entities pursuant to and the implementation of the Plan and performance of all actions and transactions contemplated hereby and thereby; (e) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (f) all other acts or actions contemplated by the Plan and the Definitive Documents, or reasonably necessary or appropriate to promptly consummate the Wind-Down Transactions (including effectuating the Wind-Down Transactions Memorandum), regardless of whether such act or action is contemplated to occur before, on, or after the Effective Date.

**K.    The Plan Administrator.**

79.    The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the amounts set forth in or contemplated by the Plan, including administering the Wind-Down Reserve, and to wind-down the business and affairs of the Wind-Down Debtors. The responsibilities and powers of the Plan Administrator shall include, but not be limited to, those responsibilities and powers enumerated in the Plan Administrator Agreement and Article VII.A.2 of the Plan, in each case without further order of the Bankruptcy Court.

80.    The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind-Down Budget, and as otherwise provided in this Confirmation Order. The Plan

Administrator shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in Article VII.A.4 of the Plan and in the Plan Supplement, and shall be paid out of the Wind-Down Reserve.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

**L.      The Liquidating Trust.**

81.      Notwithstanding anything to the contrary herein, the Plan Administrator, in his or her discretion (subject to the prior consent of the Committee or Wind-Down Debtors Oversight Committee, as applicable), may transfer all or any portion of the assets of the Wind-Down Debtors to a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations.  For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in Article IV of the Plan shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Retained Causes of Action transferred to the Liquidating Trust.  The Liquidating Trust, if any, shall be established for the primary purpose of liquidating the Liquidating Trust's assets, reconciling claims asserted against the Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably

necessary to, and consistent with, the purpose of the Liquidating Trust. Upon the transfer of the Wind-Down Debtors' assets to the Liquidating Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust. To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests. Prior to any Permitted Transfer, the Plan Administrator (subject to the prior consent of the Committee or Wind-Down Debtors Oversight Committee, as applicable) may designate trustee(s) for the Liquidating Trust for the purposes of administering the Liquidating Trust. The reasonable costs and expenses of the trustee(s) shall be paid from the Liquidating Trust.

**M.     The Wind-Down Debtors Oversight Committee.**

82.     On the Effective Date, the Wind-Down Debtors Oversight Committee shall be formed. The Wind-Down Debtors Oversight Committee shall consist of those parties selected by the Committee and identified in the Plan Supplement. The Wind-Down Debtors Oversight Committee shall be entitled to retain professionals, paid by the Wind-Down Debtors, to advise the Wind-Down Debtors Oversight Committee, which professionals may be Professionals who previously advised the Committee or the Debtors.

83.     The Wind-Down Debtors Oversight Committee shall have the responsibility to review and advise the Plan Administrator (and the Liquidating Trust, if formed) with respect to the liquidation and distribution of the Wind-Down Debtor Assets transferred to the Wind-Down Debtors in accordance herewith. For the avoidance of doubt, in advising the Plan Administrator (or Liquidating Trust, if formed), the Wind-Down Debtors Oversight Committee shall maintain

the same fiduciary responsibilities as the Plan Administrator.  In addition, the rights of the Wind-Down Debtors Oversight Committee shall equally apply with respect to a Liquidating Trust in the event a Liquidating Trust is formed.

**N.    Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation.**

84.    The Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to the Plan.

85.    The Plan Administrator, the members of the Wind-Down Debtors Oversight Committee, and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for criminal behavior, fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

**O.    Tax Returns.**

86.    After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**P.     Deemed Consolidation Solely for Purposes of Voting, Confirmation, and Distribution.**

87.     Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  This Plan provides for consolidation of the Debtors solely for purposes of voting, confirmation, and distribution, but not for any other purpose.

**Q.     Corporate Existence of the Wind-Down Debtors.**

88.     Except as otherwise provided in the Plan, each Debtor shall (as a Wind-Down Debtor) continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificates or articles of incorporation, certificates of formation, or other governing documents, as applicable.

89.     On and after the Effective Date, the Wind-Down Debtors will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Wind-Down Debtors shall have the power and authority to take any action necessary to Wind-Down and dissolve the Debtors' Estates.

90.     As soon as practicable after the Effective Date, the Wind-Down Debtors shall take such actions as the Wind-Down Debtors may determine to be necessary or desirable to carry out the purposes of the Plan.  Notwithstanding the Debtors' dissolution, the Debtors shall be

deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

**R.    Cancellation of Notes, Instruments, Certificates, and Other Documents.**

91.    On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, this Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Wind Down Transactions (including, without limitation, the Definitive Documents and the Purchase Agreement), all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.  For the avoidance of doubt, except to the extent otherwise specifically provided for in the Plan, this Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Wind Down Transactions, all Securities shall be cancelled in accordance with Article IV.F of the Plan.

**S.    Corporate Action.**

92.    Upon Effective Date, all actions contemplated under the Plan and the Definitive Documents shall be deemed authorized and approved in all respects, and, to the extent taken

prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Wind-Down Debtors, including:  (1) the appointment of the directors, managers, members, and officers for the Wind-Down Debtors as provided in the Plan; (2) the issuances, transfer, and distribution of the Wind Down Debtor Assets, as applicable; (3) the formation of the Wind-Down Debtors and appointment of the Plan Administrator; (4) the formation of any entities pursuant to and the implementation of the Plan and performance of all actions and transactions contemplated hereby and thereby; (5) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (6) all other acts or actions contemplated by the Plan and the Definitive Documents or reasonably necessary or appropriate to promptly consummate the Wind-Down Transactions (including effectuating the Wind-Down Transactions Memorandum), regardless of whether such act or action is contemplated to occur before, on, or after the Effective Date.  All matters provided for in the Plan and the Definitive Documents involving the corporate structure of the Debtors or the Wind-Down Debtors, as applicable, and any corporate action required by the Debtors or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have occurred on, and shall be in effect as of the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors, as applicable.  On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated

under the Plan) in the name of and on behalf of the Wind-Down Debtors, and any and all other agreements, documents, Securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by Article IV.E of the Plan shall be effective notwithstanding any requirements under non-bankruptcy Law.

93.     As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be deemed to have resigned without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

**T.      Effectuating Documents; Further Transactions.**

94.     On and after the Effective Date, the Debtors, the Wind-Down Debtors, and each of their directors, managers, partners, officers, authorized persons, and members thereof, including the Plan Administrator, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Definitive Documents in the name of and on behalf of the Debtors and the Wind-Down Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**U.      Section 1146(a) Exemption.**

95.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor, or to any other Entity, including from

any Wind-Down Debtor to a Liquidating Trust) of property under the Plan and the Definitive Documents or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors, (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (3) the making, assignment, or recording of any lease or sublease, or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan or the Definitive Documents, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**V.      Director and Officer Liability Insurance; Other Insurance.**

96.      Notwithstanding anything to the contrary in the Definitive Documents, any bar date notice or claim objection, or any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, confers Bankruptcy Court jurisdiction, or requires a party to opt into any releases):   (a) on the Effective Date, each of the Debtors' Insurance Contracts, including the D&O Liability Insurance Policies, shall be assumed and revest unaltered in the applicable Wind-Down Debtor without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date; (b) on and after the Effective Date, the Wind-Down Debtors shall be liable in full for any outstanding obligations of the Debtors or the Wind-Down Debtors, as applicable, under the Insurance Contracts regardless of whether such obligations arose before or after the Effective Date; (c) nothing alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any Insurance Contracts, and for the avoidance of doubt, Insurers shall not need to nor be required to file or serve a cure objection or a request, application, claim, Cure Cost Claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim, and Insurers shall not be subject to any claims bar date or similar deadline governing Cure Cost amounts, Proofs of Claim, or Administrative Claims; (d) nothing in the Definitive Documents shall permit or otherwise effect a sale, assignment, or any other transfer of the Insurance Contracts and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto if such Insurance Contract would otherwise require the consent of the applicable Insurer to effect such sale, assignment, or other transfer; and (e) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article X of the Plan, if and to the extent applicable, shall be

deemed lifted without further order of this Court, solely to permit: (1) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (2) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article X of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (3) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Wind-Down Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Wind-Down Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Wind-Down Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine. Pursuant to Article V.F of the Plan and for the avoidance of doubt, ~~however~~and notwithstanding anything in the Plan to the contrary, any existing Indemnification Provisions for any Non-Released Party shall not be Reinstated or assumed and, under ~~the~~any applicable D&O Liability Insurance Policies, there shall be no retention, deductible or other obligation payable by the Debtors or the Wind-Down Debtors with respect to all applicable defense costs and payments in respect of settlements or judgments constituting Non-Indemnifiable Losses (as defined in the D&O Liability Insurance Policies).

97.    For the avoidance of doubt, nothing in Article V.E of the Plan shall in any way affect the Wind-Down Debtors' ability to assert the Retained Causes of Action or any other applicable claims that are not otherwise released pursuant to the Plan and are properly asserted

against the D&O Liability Insurance Policies, or access the proceeds of the D&O Liability Insurance Policies for any losses on account of such Retained Causes of Action or such other claims.

98.     Nothing in the Plan, the Plan Supplement, or this Confirmation Order shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies.  After the Effective Date, all directors, officers, managers, authorized agents, or employees of the Debtors (or their Affiliates) who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any applicable D&O Liability Insurance Policies for the full term of such policies, including but not limited to any extension of coverage after the end of such policy period if any extended reporting period has been purchased, in accordance with the terms thereof.  The Debtors and Wind-Down Debtors, as applicable, shall maintain the existing tail coverage for any current D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than under, and with an aggregate limit of liability no less than the aggregate limit of liability under, the current D&O Liability Insurance Policies. In addition to such tail coverage, the D&O Insurance Policies shall remain in place in the ordinary course during the Chapter 11 Cases.  For the avoidance of doubt, the Wind-Down Debtors are not obligated to acquire new tail coverage, except to the extent required to comply with Article V.E of the Plan.

**W.     Preservation of Rights of Action.**

99.     Except as otherwise provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Wind-Down Debtors shall succeed to all rights to investigate (including pursuant to Federal Rule of Bankruptcy Procedure 2004), commence and pursue any and all Retained Causes of Action of the Debtors and their Estates, whether arising before or after the

Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action (which, for the avoidance of doubt, is a non-exclusive list of Retained Causes of Action not released, waived, settled, compromised, or transferred).  Such rights shall be preserved by the Debtors and the Wind-Down Debtors, as applicable, and shall vest in the Wind-Down Debtors with the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the Debtor Release or the Third Party Release and exculpations contained in the Plan, including in Article X of the Plan, or pursuant to the Purchase Agreement, which Causes of Action shall be deemed released and waived by the Debtors and Wind-Down Debtors as of the Effective Date.

100.    The Wind-Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the beneficiaries of the Wind-Down Debtors and in accordance with the Plan.  For the avoidance of doubt, the Schedule of Retained Causes of Action will not be inclusive of all potential Retained Causes of Action.  **No Entity may rely on the absence of a specific reference in the Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind Down Debtors, as applicable, will not pursue any and all available Claims or Causes of Action of the Debtors against it.  The Wind-Down Debtors, on behalf of the Debtors and the Wind-Down Debtors, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article X of the Plan**.

101.    Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, on behalf of the Debtors and Wind-Down Debtors, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or the consummation of the Wind-Down Transactions.

102.    The Wind-Down Debtors, on behalf of the Debtors, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor or its Estate may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise provided in the Plan, including Article X of the Plan.  The Wind-Down Debtors, through their authorized agents or representatives, including the Plan Administrator, shall retain and may exclusively enforce any and all such Causes of Action.  Subject to the consent of the Wind-Down Debtors Oversight Committee, the Wind-Down Debtors and/or Liquidating Trust as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

**X.      Vesting of Wind-Down Debtor Assets.**

103.    Except as otherwise provided in this Confirmation Order, the Plan (including the Wind-Down Transactions Memorandum and Article X of the Plan), or the Purchase Agreement, as applicable, and notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date and thereafter if additional Wind-Down Debtor Assets become available, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate (including the D&O Liability Insurance Policies), all Retained Causes of Action, and any property retained by any of the Debtors pursuant to the Plan or the Purchase Agreement shall irrevocably vest in and be granted and assigned to each respective Wind-Down Debtor, as applicable, free and clear of all Liens, Claims, charges, other encumbrances, and interests for the purposes of winding down the Wind-Down Debtors, subject only to the Allowed Claims and Interests as set forth in the Plan and the expenses of the Wind-Down Debtors as set forth in the Plan. Thereupon, the Debtors shall have no interest in or with respect to the Wind-Down Debtor Assets or the Wind Down Debtors.

**Y.      Treatment of Executory Contracts and Unexpired Leases.**

104.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

105.    On the ~~date that is ninety (90) days after the~~ Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the

provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) have been previously assumed or rejected by the Debtors pursuant to the Assumption/Rejection Order or any other Bankruptcy Court order; (3) are the subject of a Filed motion or notice to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, through or in connection with the Sale Order; or (5) are a contract, release, or other agreement or document entered into in connection with the Plan.

106.    Entry of this Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in the Plan or in this Confirmation Order, the Purchase Agreement, or the Sale Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Notwithstanding anything in the Plan to the contrary, with respect to any Unexpired Lease that is not assumed on the ~~date that is ninety (90) days after the~~ Effective Date pursuant to Article V.A of the Plan, the effective date of rejection of such Unexpired Leases shall be the later of: (a) the Effective Date, except (1) in connection with a Bankruptcy Court-ordered Cure Cost pursuant to Article V.C of the Plan or (2) if agreed by the applicable counterparty, and (b) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the

landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors surrender the premises as set forth in subsection (b) above, all property remaining in the premises will be deemed abandoned free and clear of any interests, Liens, and encumbrances and landlords may dispose of such property without further notice or court order, unless otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court. If the effective date of any rejection of an Executory Contract or Unexpired Lease is after the Effective Date pursuant to the terms of the Plan, the Wind Down Debtors shall serve a notice on the affected counterparty setting forth the deadline for Filing any Claims arising from such rejection.

**Z.      Provisions Governing Distributions.**

107.    The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Debtors, the Wind-Down Debtors, the Plan Administrator, or any Entity or Entities selected by the Debtors (with the consent of the Committee) or the Wind-Down Debtors, as applicable, to make or facilitate distributions contemplated under the Plan (the "Disbursing Agent").

**AA.      Claims Reconciliation Process.**

108.    The procedures and responsibilities for, and costs of, reconciling Disputed Claims shall be as set forth in the Plan or as otherwise ordered by the Court.

**BB.      Conditions to Effective Date.**

109.    The provisions governing the conditions precedent to the Effective Date set forth in Article XI.A of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are

authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

**CC.    Retention of Jurisdiction.**

110.    The provisions governing the retention of jurisdiction set forth in Article XIII of the Plan shall be, and hereby are, approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain jurisdiction over the matters arising out of, or relating to, these Chapter 11 Cases and the Plan, as set forth in Article XIII of the Plan.

**DD.    Immediate Binding Effect.**

111.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**EE.    Additional Documents.**

112.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Wind-Down Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and

take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**FF.    Payment of Statutory Fees.**

113.    All U.S. Trustee Fees prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors and the Wind-Down Debtors, as applicable, shall be jointly and severally liable to pay any and all U.S. Trustee Fees when due and payable.  The Debtors shall file all monthly operating reports relating to the time period prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the Wind-Down Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each of the Debtors and the Wind-Down Debtors, as applicable, shall remain obligated to pay U.S. Trustee Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor or Wind-Down Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Proof of Claim in the case and shall not be treated as providing any release under the Plan.

**GG.    Provisions Regarding Liberty Mutual Insurance Company.**

114.    On or about December 21, 2007, Debtor, Project Pine OldCo, LLC (f/k/a Express, LLC) ("OldCo LLC" or "Indemnitor"), on behalf of itself and any company which is a subsidiary of OldCo, LLC, whether then owned or thereafter created or acquired; and other entity or individual for whom OldCo LLC requests a bond or bonds, executed a General Agreement of Indemnity (the "Indemnity Agreement"), in connection with the execution by Safeco Insurance Companies, a subsidiary of Liberty Mutual Insurance Company (the "Surety"), of certain surety bonds on behalf of the Indemnitor (each, a "Bond", and collectively, the "Bonds").  To secure, in

part, its obligations under the Indemnity Agreement, the Indemnitor provided to the Surety an Irrevocable Standby Letter of Credit from Wells Fargo Bank. N.A. ("Wells Fargo"), in the amount of $6,744,191.25 (the "Surety Collateral").

115.    Notwithstanding anything set forth to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, nothing shall be deemed to limit the Surety's rights or interests in the Surety Collateral, including, without limitation, the right to draw or use the Surety Collateral to reimburse any claim of the Surety.

116.    Nothing in the Plan, the Plan Supplement, or this Confirmation Order, or any document or agreement in connection therewith shall impair, release, discharge, preclude, or enjoin any obligations of the Debtors or the Wind-Down Debtors to the Surety under or related to the Indemnity Agreement, any Surety Bond, the Surety Collateral, any related indemnity agreements, or under the common law of suretyship, and such obligations are unimpaired and are not being released, discharged, precluded, or enjoined by the Plan or Confirmation Order, or any agreements with third parties *provided*, *however*, that nothing in the foregoing shall be deemed to alter, limit, modify or expand any Surety Bond Obligation.

117.    For the avoidance of doubt:  (i) the Surety shall be deemed to have opted-out of the Release, Injunction, and Exculpation provisions set forth in Article X of the Plan; (ii) the Surety shall not be deemed to be a Releasing Party; (iii) the Surety Bonds, the Indemnity Agreement, and the Surety Collateral shall not be cancelled as set forth in Article IV.F of the Plan; and (iv) the Surety's liens on, and security interests in, the Surety Collateral shall not be cancelled in accordance with Section X.B of the Plan.

**HH.    Provisions Regarding Applicable Landlords.**

118.    Notwithstanding anything to the contrary in the Plan, (a) any objections to any Administrative Claim asserted by an Applicable Landlord[5] shall be filed within one-hundred twenty (120) days after the Effective Date, and each Applicable Landlord may submit an administrative claim form in the form proscribed by rule 3001-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey, in lieu of a formal request for payment, and (b) the Wind-Down Debtors shall provide the Applicable Landlords with at least fourteen (14) days' notice prior to any automatic disallowance, removal, or expungement of an Applicable Landlord's Claim, and the Applicable Landlord shall have the right to file an objection to the automatic disallowance, removal, or expungement of such Applicable Landlord's Claim within fourteen (14) days of delivery of such notice.

119.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing shall modify the rights, if any, of any counterparty to an Unexpired Lease of nonresidential real property to assert any right of setoff or recoupment that such party may have in the ordinary course of business under such Unexpired Lease, and under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors or Wind-Down Debtors, under the Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a

---

[5]    "Applicable Landlord" means any landlord counterparty to a lease of nonresidential real property, and shall include for the avoidance of doubt:  Westland Garden State Plaza Limited Partnership; UTC Venture LLC; Crossgates Mall General Company NewCo, LLC; Crystal Run Galleria LLC; Holyoke Mall Company, L.P.; EklecCo NewCo LLC; Poughkeepsie Galleria LLC; Sangertown Square, L.L.C.; Pyramid Walden Company, L.P.; Atlanta Outlet Shoppes, LLC; Bluegrass Outlet Shoppes II, LLC; El Paso Outlet Center CMBS, LLC; Laredo Outlet Shoppes, LLC; HGP TIC, LLC; Sherman Oaks Fashion Associates, LP; Wheaton Plaza Regional Shopping Center L.L.P.; V F Mall LLC; Plaza Bonita LLC; Benenson Capital Partners; Brooks Shopping Centers, LLC; and Montgomery Mall Owner LLC.

defense, if any, to any Claim or action by the Debtors, Wind-Down Debtors, or any other successors of the Debtors.

120.    Notwithstanding anything to contrary in the in the Plan, including Article V.B of the Plan, a counterparty to an Executory Contract or Unexpired Lease to be rejected (whether prior to, on, or after the Effective Date), shall have until thirty (30) days after notice to the counterparty of such rejection to file a request for payment, if any, for any asserted Administrative Claims related to such rejection.

**II.    Provisions Regarding Wells Fargo.**

121.    Notwithstanding any contrary provision herein or in the Plan or in the Definitive Documents, nothing contained in this Confirmation Order, the Plan, or the Definitive Documents shall affect the rights and responsibilities of the parties, including the Debtors, the Wind-Down Debtors, the ABL Lenders, the DIP ABL Lenders, and Wells Fargo, as an agent for the ABL Lenders and the DIP ABL Lenders under the ABL Facility and the DIP ABL Facility, respectively (in such capacities, the "Revolver Agent"), under that certain lien release letter dated as of June 24, 2024, among the Debtors and the Revolver Agent entered in connection with the Purchase Agreement and the Sale Transaction (the "ABL Lien Release Letter"), including, without limitation, the interests and liens granted by the Debtors to the DIP ABL Agent in certain cash collateral and accounts holding such cash collateral.  From and after the Effective Date, at such time as DIP ABL Agent is obligated to return the cash collateral held by DIP ABL Agent in accordance with the Lien Release Letter, the Wind-Down Debtors (or if the Wind-Down Debtors have been dissolved, the Debtors) shall be entitled to receive the return of all cash collateral held by the DIP ABL Agent under or in connection with the Lien Release Letter.  Upon payment of

such cash collateral to the Wind-Down Debtors (or if the Wind-Down Debtors have been dissolved, the Debtors), the obligations of the Revolver Agent shall be deemed satisfied.

**JJ.      Provisions Regarding the Louisiana Department of Revenue.**

122.    Notwithstanding anything to the contrary in the Plan, all Allowed Priority Tax Claims of the Louisiana Department of Revenue ("LDR") will be paid in full in accordance with 11 U.S.C. § 511 through the date of receipt of payment, in Cash on the Effective Date or promptly after allowance, as applicable.

123.    The Plan Administrator, on behalf of the Wind-Down Debtors, shall within ninety (90) days after the Effective Date, prepare and file with the LDR any required tax returns for the fiscal year tax period ending January 31, 2024.  The LDR shall have an Allowed Administrative Claim pursuant to sections 503(b)(1)(B) and 503(b)(1)(C) of the Bankruptcy Code in the amount of any tax liability of the Debtors or the Wind-Down Debtors, as applicable, due and owing on account of the fiscal year tax period ending January 31, 2024, if any, without the need for the LDR to file a formal request for payment on account of such Administrative Claim.

124.    Notwithstanding Article VI.D.3 of the Plan, if a distribution to the LDR is returned as undeliverable, such distribution shall not be deemed unclaimed property under section 347(b) of the Bankruptcy Code until the expiration of five (5) years from the time of the distribution.

125.    Nothing in the Plan or the Confirmation Order shall modify the rights of the LDR to assert any right of setoff and/or recoupment the LDR may have under applicable bankruptcy or non-bankruptcy Law, if any.

**KK.    Provisions Regarding Texas Taxing Authorities.**

126.    Any Allowed Secured Tax Claims for the 2023 tax year or prior, and any 2024 Texas Tax Claims[6] that were not assumed under the Purchase Agreement, of the Texas Taxing Authorities shall be paid in full within ten days after the Effective Date, including all accrued interest properly charged under applicable non-bankruptcy law through the date of payment. The Texas Taxing Authorities[7] shall retain their liens on the Debtors' property or any proceeds from the sale of such property, including the Texas Tax Reserve established pursuant to the Final DIP Order,[8] until the Texas Tax Claims are paid in full. The Liquidating Trustee shall continue to segregate the funds currently held in the Texas Tax Reserve, which (i) shall be maintained for the payment of the Texas Tax Claims to the extent the Texas Tax Claims are Allowed Claims and (ii) shall not be paid to any other creditor without further order of the Bankruptcy Court. Pursuant to the Sale Order and the Purchase Agreement, the Texas Tax Claims for 2024 taxes assumed under the Purchase Agreement are the responsibility of the purchaser, to be paid in full,

---

[6]    "Texas Tax Claim" means an asserted Secured Tax Claim of the Texas Taxing Authorities.

[7]    "Texas Taxing Authorities" means Crowley Independent School District,  City of Allen, Allen Independent School District, Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Fort Bend County, City of Frisco, Galveston County, Harris County Emergency Service District #9, Harris County Improvement District #1, Hidalgo County, City of Houston (for those accounts collected by Linebarger Goggan Blair and Sampson), Houston Community College System, Houston Independent School District, City of Humble, Irving Independent School District, Jefferson County, Lone Star College System, City of McAllen, Montgomery County, Northwest Independent School District, Nueces County, San Marcos CISD, Tarrant County, Brazos County, Denton County, Hays County, Williamson County, Potter County Tax Office, Lubbock Central Appraisal District, City of Garland, Garland Independent School District, Plano Independent School District, Frisco Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Fort Bend Independent School District, Fort Bend County Levee Improvement District # 2, City of Katy, Katy Management District #1, Brazoria County, et al, Woodlands Metro Municipal Utility District, Woodlands Road Utility District, Clear Creek Independent School District, City of Houston (for those accounts collected by Perdue Brandon Fielder Collins and Mott), Humble Independent School District, Spring Branch Independent School District, Harris County Municipal Utility District 358, Harris County Water Control Improvement District 155, Dickinson Independent School District and Galveston County MUD #54, Brownsville Independent School District, City of Mercedes.

[8]    "Texas Tax Reserve" means the segregated account established pursuant to the Final DIP Order and funded with the proceeds of the sale of the Debtors' assets located in its Texas stores.

in the ordinary course of business, when due, and such 2024 ad valorem tax liens are retained against the subject properties until said taxes are paid in full, including any applicable penalties or interest. The Texas Taxing Authorities' lien priority shall not be primed nor subordinated by any exit financing approved by the Court in conjunction with the Confirmation of the Plan or otherwise.

**LL.     Reservation of Rights.**

127.    Except as expressly set forth in the Plan, the Plan shall have no force or effect until the Bankruptcy Court enters this Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, this Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

**MM.    Non-Severability of Plan Provisions Upon Confirmation.**

128.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' and the Committee's consent; and (3) nonseverable and mutually dependent.

**NN.    Governmental Approvals Not Required.**

129.    Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all the approvals and consents required, if any, by the Laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, the Definitive Documents, and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by the Plan or the Definitive Documents.

**OO.    Recording.**

130.    The Debtors and the Wind-Down Debtors, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Bankruptcy Court, and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.    The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

**PP.    Effect of Conflict between Plan and Confirmation Order.**

131.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency

between the Plan and the Plan Supplement, on the one hand, and this Confirmation Order, on the other hand, this Confirmation Order shall control.

**QQ.    Documents, Mortgages, and Instruments.**

132.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Wind-Down Transactions, and this Confirmation Order.

**RR.    Authorization to Consummate.**

133.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) in accordance with Article XI.B of the Plan of the conditions precedent to the Effective Date set forth in Article XI.A of the Plan.

**SS.    Debtors' Actions Post-Confirmation Through the Effective Date.**

134.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, this Confirmation Order, and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, the Definitive Documents, this Confirmation Order, or the Wind-Down Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, the

Definitive Documents, this Confirmation order, or the Wind-Down Transactions, in each case subject to the terms and conditions of the Plan. Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Motions (as defined in the First Day Declaration).

**TT.    Notices of Confirmation and Effective Date.**

135.    The Debtors shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation and Effective Date Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within five Business Days after the Effective Date. Within two business days of the Effective Date, the Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties. The notice of the Effective Date may be included in this Confirmation Order Notice. Notwithstanding the above, no notice of Confirmation or notice of the Effective Date or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. In addition, no later than five Business Days after the Effective Date, the Debtors, and the Wind-Down Debtors, as applicable, shall cause this Confirmation Order Notice, modified for publication, to be published on one occasion in *The New York Times* (national edition) or another similar nationally circulated news publication. The above-referenced notices

are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**UU.    Return of Adequate Assurance Deposits.**

136.    On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors in the *Final Order (I) Determining Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (III) Approving The Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 233] (the "Final Utility Order") shall be returned to the Debtors or the Wind-Down Debtors, as applicable, consistent with the Final Utility Order.

**VV.    Dissolution of Statutory Committees.**

137.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases shall dissolve and the members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases and under the Bankruptcy Code; provided that (a) the Committee will remain in place after the Effective Date solely for the purpose of addressing (i) the filing of all final fee applications for all Professionals for the Committee and any matters concerning Professional Fee Claims held or asserted by any Professional in these Chapter 11 Cases, and (ii) the resolution of any appeals of this Confirmation Order, and (b) the members of the Committee are discharged from all of their duties as of the date that the Committee is dissolved with respect thereto.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and

expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

## WW.   Headings.

138.   Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## XX.   Final Order and Waiver of Stay.

139.   For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a "Final Order" within the meaning ascribed to that term in the Plan and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

## Exhibit A

**Plan**

**Exhibit B**

**Confirmation and Effective Date Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EXP OLDCO WINDDOWN, INC., *et al.*,[1] | ) | Case No. 24-110831 (KBO) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER,
## (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE THAT** on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed the *Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* [Docket No. 1130] (the "Plan"),[2] which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of EXP OldCo Winddown, Inc. and its Debtor Affiliates* [Docket No. [●]] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on **[●], 2024**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.B of the Plan, unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Debtors and the Holder of such Claim.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128), Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Plan.

**PLEASE TAKE FURTHER NOTICE THAT**, except as otherwise provided by the Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, and except for Administrative Claims subject to 11 U.S.C. § 503(b)(1)(D) (for which a Governmental Unit shall not be required to file a request for payment for any Claims covered by 11 U.S.C. § 503(b)(1)(B) or (C)) and 11 U.SC. § 503(b)(9) (for which the general Claims Bar Date (as defined in the Plan) applies), and except for Professional Fee Claims, the deadline for filing requests for payment of Administrative Claims shall be (i) thirty (30) days after the Effective Date (*i.e.*, [●], 2024)or (ii) in the event an Executory Contract is rejected following the Effective Date, solely as to Administrative Claims related to such rejected Executory Contract, thirty (30) days after notice to the counterparty to such rejected Executory Contract (the "Administrative Claim Bar Date"). If a Holder of an Administrative Claim (other than DIP Claims, Professional Fee Claims, or claims subject to section 503(b)(1)(D) of the Bankruptcy Code) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claim Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property without the need for any objection from the Debtors or any notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Plan, the Deadline to file final requests for payment of Professional Fee Claims is **[●], 2024** (the "Professional Fee Application Deadline"), which is the first Business Day that is forty-five (45) days after the Effective Date. All professionals must file final requests for payment of Professional Fee Claims by no later than the Professional Fee Application Deadline to receive final approval of the fees and expenses incurred in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan, this Confirmation Order, and other documents and materials filed in these Chapter 11 Cases may be obtained at no charge from Stretto, Inc., the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice, Claims, and Solicitation Agent") by (a) visiting the Debtors' restructuring website at https://cases.stretto.com/express/, (b) emailing ExpressInquiries@Stretto.com with a reference to "EXP OldCo Winddown, Inc." in the subject line, or (c) calling the Debtors' Notice, Claims, and Solicitation Agent at (855) 337-3537 (U.S. & Canada) or +1 (949) 617-1363 (International). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

Dated: _____, 202_
Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
Alyssa M. Radovanovich (DE Bar No. 7101)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193
Email:        dpacitti@klehr.com
              myurkewicz@klehr.com
              aradovanovich@klehr.com


-and-

Morton R. Branzburg (admitted *pro hac vice*)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-3007
Facsimile:    (215) 568-6603
Email:        mbranzburg@klehr.com

*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              emily.geier@kirkland.com
              nicholas.adzima@kirkland.com

-and-

Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        charles.sterrett@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

| Summary report:<br>Litera Compare for Word 11.8.0.56 Document comparison done on<br>12/14/2024 2:53:16 PM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Express – Confirmation Order _Filed at Dkt No 1137_(112746139.29).docx | |
| **Modified filename:** Express – Confirmation Order _Post-Filing Revisions_ Filing Version  (116895959.4).docx | |
| **Changes:** | |
| Add | 6 |
| Delete | 6 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 12 |