# EXHIBIT C

**Fill in this information to identify the case:**

Name of Debtor & Case Number:

- ☐ Express, Inc.  (Case No. 24-10831)
- ☐ Express Topco LLC  (Case No. 24-10832)
- ☐ Express Holding, LLC  (Case No. 24-10833)
- ☐ Express Finance Corp.  (Case No. 24-10834)
- ☒ Express, LLC  (Case No. 24-10835)
- ☐ Express Fashion Investments, LLC  (Case No. 24-10836)

- ☐ Express Fashion Logistics, LLC  (Case No. 24-10837)
- ☐ Express Fashion Operations, LLC  (Case No. 24-10838)
- ☐ Express GC, LLC  (Case No. 24-10839)
- ☐ Express BNBS Fashion, LLC  (Case No. 24-10840)
- ☐ UW, LLC  (Case No. 24-10841)
- ☐ Express Fashion Digital Services Costa Rica, S.R.L.  (Case No. 24-10842)

**United States Bankruptcy Court for the District of Delaware**

Official Form 410

*Date Stamp Copy Returned*

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Tote Fashion Sourcing Limited<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes.  From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>**STRETTO**<br><br>AUG 1 4 2024<br><br>RECEIVED | Where should notices to the creditor be sent?<br><br>RMF PC, Attn: S. Giugliano<br>Name<br><br>E. Tower, 15th Flr, 1425 RXR Plaza<br>Number       Street<br><br>Uniondale, NY 11556<br>City            State          ZIP Code<br><br>Contact phone  516-663-6600<br><br>Contact email  sgiugliano@rmfpc.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | Where should payments to the creditor be sent? (if different)<br><br>Name<br><br>Number       Street<br><br>City            State          ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☐ No<br>☒ Yes.  Claim number on court claims registry (if known) 777       Filed on  06/26/2024<br>                                                                                     MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes.  Who made the earlier filing? _____ |

1269708142430000000024

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

---

**7. How much is the claim?**

$ _See Rider._____

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_See Rider._____

---

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                                    $_____

Amount of the claim that is secured:        $_____

Amount of the claim that is unsecured:    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

---

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

---

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☒ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,3 0* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $1 ,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☒ Other. Specify subsection of 11 U.S.C. § 507(a)(2) that applies. | $ See Rider. |

\* Amounts are subject to adjustment on 4/01/2  and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   08/09/2024
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Keven | | Lin |
| | First name | Middle name | Last name |
| Title | Director | | |
| Company | Tote Fashion Sourcing Limited | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | RM 829A, 8F, Rykadan Capital Tower, 135 Hoi Bun Road | | |
| | Number        Street | | |
| | Kwon Tong, KLN, H.K. | | |
| | City | State | ZIP Code |
| Contact phone | 886-935246007 | Email | keven@totefashion.tw |



## RUSKINMOSCOUFALTISCHEK P.C.

*Smart Counsel. Straight Talk.*

Writer's Direct Dial: (516) 663-6638
Writer's Direct Fax: (516) 663-6838
Writer's E-Mail: sgiugliano@rmfpc.com

August 13, 2024

**By Fedex**
Express, Inc., et al. Claims Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

      Re:    *In re Express Inc., et al.*
               Case No. 24-10831 (KBO), U.S. Bankruptcy Court for District of Delaware
               Amended Proof of Claim of Tote Fashion Sourcing Limited

Dear Sir/Madam,

This firm is counsel to Tote Fashion Sourcing Limited ("Claimant"), creditor to Express, LLC (the "Debtor") in Chapter 11 Case No. 24-10835 (KBO), which is jointly administered with the above-referenced Chapter 11 case.

On June 26, 2024, Claimant timely filed its proof of claim (Claim No. 777) (the "Proof of Claim") asserting claims in the aggregate amount of $4,245,494.09 for goods delivered to the Debtor, consisting of: (a) in part, an administrative expense claim under Bankruptcy Code section 503(b)(1) in the amount of $287,595.16; (b) in part, an administrative expense claim under Bankruptcy Code section 503(b)(9) in the amount of $762,375.71; and (c) in part, an unsecured claim in the amount of $3,195,523.22.

With this letter, Claimant hereby serves an amended proof of claim (the "Amended Proof of Claim") against the Debtor to assert an additional $78,012.45 in post-petition administrative claims under Bankruptcy Code section 503(b)(1) for specially manufactured goods ordered and cancelled by the Debtor post-petition that now cannot be resold or repurposed by Claimant. To this end, enclosed is Claimant's original signed Amended Proof of Claim form and supporting documentation.



Express, Inc., et al. Claims Processing
August 13, 2024
Page 2


This office requests Stretto's acknowledgment of receipt of service of the Amended Proof of Claim. Accordingly, additionally enclosed are (1) a copy of Claimant's signed Amended Proof of Claim form and (2) a self-addressed stamped envelope. Please return the stamped Amended Proof of Claim in the self-addressed stamped envelope.

Very truly yours,

/s/ *Sheryl P. Giugliano*
SHERYL P. GIUGLIANO
For the Firm


enclosures

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

In re:

EXPRESS, INC., *et al.*,[1]

                                    Debtors.

-----------------------------------------------------------x

Chapter 11

Case No. 24-10831 (KBO)

(Jointly Administered)

## RIDER TO AMENDED PROOF OF CLAIM
## OF TOTE FASHION SOURCING LIMITED

1. Basis for Claim

    a. This amended proof of claim (the "**Amended Proof of Claim**") is asserted by Tote Fashion Sourcing Limited ("**Claimant**") against Express, LLC (the "**Debtor**"), in Chapter 11 Case No. 24-10835 (KBO) (the "**Bankruptcy Case**"), which is jointly administered with the chapter 11 case filed by Express, Inc., Case No. 24-10831(KBO).

    b. The Amended Proof of Claim arises from the same facts and circumstances giving rise to the proof of claim timely filed on June 26, 2024 as Claim No. 777 (the "**Original Proof of Claim**") against the Debtor for amounts owed to Claimant for goods delivered to the Debtor.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Express, Inc. (8128), Express Topco LLC (8079); Express Holding, LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments, LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400); Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

c.  Claimant files this Amended Proof of Claim to assert an additional $78,012.45 in post-petition administrative claims for goods ordered and cancelled by the Debtor post-petition but which were specially manufactured for the Debtor and now cannot be resold or repurposed.

2. <u>Background</u>.

a.  Claimant manufactures and delivers certain textile goods (the "**Goods**") to the Debtor for future resale.

b.  On April 22, 2024 (the "**Petition Date**"), Express, Inc. and certain of its affiliates, including the Debtor, filed voluntary petitions under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") with the U.S. Bankruptcy Court for the District of Delaware.

c.  On June 26, 2024, Claimant timely filed the Original Proof of Claim asserting claims in the aggregate amount of $4,245,494.09 for Goods delivered to the Debtor, consisting of: (a) in part, an administrative expense claim under Bankruptcy Code section 503(b)(1) in the amount of $287,595.16; (b) in part, an administrative expense claim under Bankruptcy Code section 503(b)(9) in the amount of $762,375.71; and (c) in part, an unsecured claim in the amount of $3,195,523.22.

**The Debtor's Post-Petition Cancellation of Special Purchase Orders**

d.  Claimant's business dealings with the Debtor are governed by a certain a Master Sourcing Agreement (the "**Agreement**") entered into by the parties in or about 2019.

e.  After the Petition Date, the Debtor placed certain purchase orders with Claimant for specially manufactured Goods bearing the Debtor's private "Express" label (the

"**Special Purchase Orders**"), which, pursuant to the Agreement, established a binding contract between the Debtor and Claimant for the manufacture and sale of such Goods. The Special Purchase Orders are as follows: 699073, 700078, 700076, 700074, 708892, and 701860.

f.  After Claimant completed its special manufacture of the Goods under the Special Purchase Orders, and after Claimant filed the Original Proof of Claim, the Debtor requested that Claimant delay shipment of the Goods, and that Claimant hold the Goods in Claimant's factory warehouse.

g.  On or about July 23 and July 24, 2024, after the Petition Date, the Debtor unilaterally and without cause attempted to cancel the Special Purchase Orders, issuing Claimant a debit note dated in the amount of $78,012.45.

h.  Claimant is unable to resell the Goods manufactured under the Special Purchase Orders to a different customer or otherwise repurpose them.

3.  Amount of Additional Administrative Claim.

a.  Since the Petition Date and filing the Original Proof of Claim, in addition to and not in replacement of the amounts set forth in the Original Proof of Claim, Claimant is owed $78,012.45 for specially manufactured Goods under the Special Purchase Orders, cancelled by the Debtor post-petition that now cannot be resold or repurposed by Claimant.

b.  As set forth in the Original Proof of Claim:

i.  Since the Petition Date, Claimant is owed $287,595.16 for Goods delivered to the Debtor and related fees incurred after the Petition Date.

3

        ii.  As of the Petition Date, Claimant is owed the amount of $762,375.71 for Goods delivered to the Debtor within twenty (20) days of the Petition Date; and

        iii.  As of the Petition Date, Claimant is owed $3,195,523.22 for Goods delivered to the Debtor prior to April 2, 2024 — *i.e.*, prior to twenty (20) days before the Petition Date.

   c.  Claimant reserves its right to amend this Amended Proof of Claim to assert additional claims it may hold, and to assert a different classification or amount of the Amended Proof of Claim.

4.  Classification of Claim.

The Amended Proof of Claim is asserted: (a) in part as an administrative expense claim under Bankruptcy Code section 503(b)(1) for specially manufactured Goods ordered under the Special Purchase Orders and cancelled by the Debtor post-petition that now cannot be resold or repurposed by Claimant; (b) in part as an administrative expense claim under Bankruptcy Code section 503(b)(1) for Goods delivered to the Debtor after the Petition Date; (c) in part as an administrative expense claim under Bankruptcy Code section 503(b)(9) for Goods delivered within twenty (20) days of the Petition Date; and (d) in part as an unsecured claim. Claimant reserves the right to amend this Amended Proof of Claim to assert a different or additional classification of claims, as well as claims against different or additional debtors.

5.  Credits and Setoffs.

As of the date of this Amended Proof of Claim, Claimant has not received any payments to reduce the amount set forth herein.

4

6.  Supporting Documents.

The documents supporting the Amended Proof of Claim are annexed hereto as **Exhibit A**.

7.  Reservation of Rights.

Claimant reserves the right to amend or supplement this Amended Proof of Claim to reflect any additional claims against the Debtor or any of its debtor affiliates, to specify interest, costs, expenses, or other charges or claims incurred by Claimant and to file additional claims which may be based on the same or additional documents.

8.  No Waiver.

This Amended Proof of Claim is filed to protect Claimant from forfeiture of the Amended Proof of Claim. The filing of this Amended Proof of Claim is not: (a) a waiver or release of Claimant's rights against any person, entity, or property including but not limited to the Debtor or its debtor affiliates in their jointly administered chapter 11 cases; (b) a consent by Claimant to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to the subject matter of the Amended Proof of Claim or any objection or other proceeding commenced in the Debtor's chapter 11 case against or otherwise involving Claimant; (c) a waiver of the right to move to withdraw the reference or otherwise to challenge the jurisdiction of the United States Bankruptcy Court for the District of Delaware; (d) an election of remedy; (e) a waiver of any rights or claims Claimant has against the Debtor or any of its debtor affiliates in their jointly administered chapter 11 cases or any person or entity with respect to any pending or future litigation or to any matters related to such litigation; or (f) a waiver of past, present, or future defaults or events of default.

9. Notices.

All notices to Claimant should be sent to:

Ruskin Moscou Faltischek, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556-1425
Attn: Sheryl P. Giugliano
sgiugliano@rmfpc.com

# EXHIBIT A

TOTE FASHION SOURCING LIMITED
RM 829 8/F RYKADAN CAPITAL TOWER,135 HOI BUN ROAD,
KWUN TONG,KLN., H.K
TEL: 852-23429888

**EXPRESS**

DATE: 7/29/2024
REF: TOTEFASHION 7/29/2024

# INVOICE

TO: **EXPRESS**
1 Express Drive
Columbus, Ohio 43230
U.S.A
OH 43230 US

ATTEN: Aparna Tewari/Jan Duncan

TEL: 614.474.4986

| Category | PO# | STYLE | COLOR | SHIP DATE | QTY | FOB | TOTAL FOB | REMARK |
|----------|-----|-------|-------|-----------|-----|-----|-----------|--------|
| HANDBAG | 699073 | 60174392 | METALLIC GOLD | 3-Apr-24 | 1,843 | 13.50 | 24,880.50 | |
| SARONG | 700078 | 60172567 | B&W PRINT | 9-Apr-24 | 493 | 8.35 | 4,116.55 | |
| SARONG | 700076 | 60172568 | PRINT-PURPLE | 9-Apr-24 | 3,293 | 8.35 | 27,496.55 | EXPRESS CANCELLED ORDERS ON 7/23/2024 |
| SARONG | 700074 | 60172569 | PRINT-ORANGE | 9-Apr-24 | 1,993 | 8.35 | 16,641.55 | |
| HAT | 708892 | 60165233 | PITCH BLACK | 4-Mar-24 | 7 | 3.90 | 27.30 | |
| BOXER BRIEF | 701860 | 3602671 | JET BLACK | 2-Apr-24 | 1,000 | 4.85 | 4,850.00 | EXPRESS CANCELLED ORDER ON 7/24/2024 |
| TOTAL AMOUNT | | | | | | | 78,012.45 | |

Tote Fashion Sourcing Limited
Bank Name： Bank of China (Hong Kong) Limited, Hong Kong
Bank Account Number： 012-601-9-218702-5
Swift Code： BKCHHKHHXXX
Bank Address： Bank of China Tower, 1 Garden Road, Central, Hong Kong

TOTE FASHION SOURCING LIMITED

### MASTER SOURCING AGREEMENT

This Master Sourcing Agreement ("Agreement") is made and entered into on the Effective Date set forth on the signature page hereto (the "Effective Date"), by and between the party respectfully designated as "Seller" and the party respectfully designated as "Buyer" on the signature page hereto, with each having their principal places of business at the respective addresses set forth on the signature page hereto.

WHEREAS, Seller desires to sell goods, including all packaging, components, materials, containers, and labels in connection therewith, and services related thereto (collectively, "Goods") to Buyer;

WHEREAS, Buyer desires to purchase Goods from Seller; and

NOW, THEREFORE, in consideration of the mutual covenants contained herein, Buyer and Seller (each, a "party" and collectively, the "parties") hereby agree as follows:

**1.    Purchases and Sales of Goods.**

Buyer and Seller may create binding contracts for the purchase and sale of Goods by exchanging one or more written or electronic communications by any commercially reasonable means, showing agreement as to the following items: description, price, and quantity of Goods, date of delivery, and shipping instructions. The terms of any such contract will be comprised exclusively of the foregoing items and the terms of this Agreement which shall be deemed to include and hereby incorporates by reference Buyer's policies, manuals, guidelines, specifications, and other instructions which have been, or may from time to time be, furnished by or on behalf of Buyer to Seller with respect to the manufacture and purchase of Goods ("Business Policies"), and such other agreed upon terms and conditions contained in the parties' written communications. In the event that Buyer issues a purchase order for Goods to Seller, Seller shall be deemed to have accepted such purchase order and a binding contract shall be deemed established hereunder unless Seller notifies Buyer that it rejects the purchase order in writing within three (3) business days of its receipt of the purchase order. Nothing in this Agreement will require Buyer to enter into contracts for the purchase of Goods from Seller.

**2.    Effective Date.**

This Agreement will be effective for and in connection with the purchase and sale of all Goods on and after the Effective Date.

**3.    Entire Agreement.**

With respect to each contract entered into under this Agreement, the terms identified in Section 1 will constitute the complete and exclusive statement of the terms and conditions between the parties, and supersede and merge all prior proposals, understandings, and other agreements, oral and written, between the parties relating to this Agreement. Each contract entered into under this Agreement shall be deemed separate and severable and not part of one or more installment contracts. If there is a conflict between the terms of this Agreement and any other documents which comprise a contract, the terms of this Agreement shall control unless the parties otherwise mutually agree in writing. Any proposals for any additional or different terms contained in communications from Seller which are not agreed to in writing by Buyer, shall be deemed rejected. In addition, no course of dealing or manner of performance will constitute a waiver of or modify against Buyer any of such terms and conditions. No amendment, modification, or other change to this Agreement will be effective unless evidenced by a writing signed by authorized representatives of both parties.

**4.    Exchange of Communications.**

With respect to electronic communications under Section 1, each party may electronically transmit to or receive from the other electronic mail, facsimiles, and other forms of electronic communications agreed to in writing, including electronic data interchange ("EDI"). Any other electronic communications shall have no force or effect between the parties unless justifiably relied upon by the receiving party. With respect to any contract evidenced in an electronic manner contemplated by this Agreement, the parties expressly waive any defense they may have under any law requiring contracts to be evidenced by a signed writing. Each party shall implement security procedures reasonably sufficient to verify that communications between the parties are authentic and authorized, to detect errors in transmission or content, and to provide for protection against improper disclosure or access. Each party has the right and is expected to terminate electronic communications if necessary or advisable to protect information and systems from illegal or unauthorized access, use, destruction, modification, or disclosure, as applicable. If a party terminates or is unable to make use of agreed upon electronic communications for any reason, such party shall promptly notify the other party of such termination and restore electronic communications as soon as reasonably possible thereafter.

**5.    Delivery & Risk of Loss.**

Time is of the essence for each contract entered into under this Agreement. Seller shall ensure that all Goods delivered to Buyer are shipped in accordance with this Agreement and the shipping terms set forth in each contract entered into hereunder. Buyer assumes all risk of loss only upon Seller's delivery to Buyer or its designated agent or carrier at the location specified in the contract.

**6.    Price and Payment Terms.**

Quoted prices shall be in U.S. Dollars and include all charges which may be imposed under the terms of this Agreement or any contract under this Agreement. In no event will any extra charges of any kind be allowed (e.g., interest or service charges, taxes, duties, cartage, boxing, freight, carrying charges, etc.) unless otherwise agreed in writing by Buyer. Seller shall invoice Buyer in U.S. dollars for amounts due Seller pursuant to this Agreement. Payment of undisputed amounts will be due 30 days after such Goods are received at the destination specified by Buyer, or within 30 days of the Buyer's receipt of the invoice, whichever is later. Buyer will make payments in U.S. dollars.

**7.    Inspection.**

Buyer will rely on Seller's representations and warranties with respect to the Goods and will not be obligated to unpack and inspect them before resale. Buyer's payment for, retention, resale, use, or acceptance of Goods will be deemed neither a waiver of Buyer's right to inspect them at any reasonable time or place and in any reasonable manner, nor a waiver of any breach of a representation or warranty by Seller.

**8.    Notice of Defect or Breach.**

Buyer may give Seller notice of any defect or breach by Seller hereunder in any reasonable manner, and any such notice will be considered timely if made within a reasonable time after discovery of such defect by Buyer or notification to Buyer from its customer. Buyer waives no remedies applicable to any defect or breach not identified in the notice.

**9.    Nonconforming Delivery.**

In addition to any other rights and remedies available to Buyer, Buyer may exercise any of the following rights with respect to nonconforming Goods or delivery of Goods: (a) reject or revoke acceptance of the entire shipment; (b) accept the entire shipment; or (c) accept any number of items that Buyer determines in its discretion can be sold at retail and reject or revoke acceptance of the balance of the shipment. With respect to any Goods that have been rejected or where acceptance has been revoked, Buyer may, at its option, upon notice to Seller, (a) return such Goods to Seller at Seller's expense and in exchange for a full credit or refund, including any charges incurred in connection with delivering the Goods to Buyer, (b) resell the Goods in any reasonable manner and remit the sale proceeds, less Buyer's reasonable expenses, to Seller, or (c) store such Goods on behalf of Seller at Seller's expense until Seller gives Buyer reasonable instructions as to their disposition and then dispose of the Goods in accordance with such instructions at Seller's expense. For the avoidance of doubt, Seller shall bear all risk of loss associated with rejected or revoked Goods and shall promptly reimburse Buyer for all unrecovered reasonable expenses incurred by Buyer in connection therewith. Any Goods returned to Seller or subject to Seller's instructions as to disposition will be subject to the restrictions set forth in Section 18 and Buyer's sell-off policies in effect from time to time which, among other things, restricts Seller's ability to dispose or sell goods containing Buyer's Intellectual Property.

**10.    Business Policies**

Seller represents, warrants, and covenants that, with respect to the manufacture or provision of Goods, it will comply with each of Buyer's Business Policies as may be communicated to Seller from time to time, including without limitation, Buyer's Code of Conduct and Compliance Guidebook which sets forth, among other things, Buyer's labor standards (collectively, "Buyer's Labor Standards"). Seller acknowledges and agrees that it is responsible for ensuring that each of its owners, managers, employees, vendors, subcontractors, suppliers, representatives, agents, factories, and other facilities and third parties that participate in the manufacture or provision of the Goods complies with Buyer's Business Policies, including without limitation, Buyer's Labor Standards.

**11.    Compliance with Anti-Corruption Laws.**

Seller represents and warrants that it has not, and agrees that it shall not, make, promise, or offer to make any payment or transfer anything else of value, directly or indirectly, to any individual to secure an improper advantage or illegitimate or unjust benefit in connection with any transaction contemplated by this Agreement. It is the intent of the parties that no payments or transfer of value shall be made which have the purpose or effect of bribery of any kind (public or commercial), acceptance of or acquiescence in extortion, kickbacks, or other unlawful or improper conduct in connection with any transaction contemplated by this Agreement. Seller shall comply, and shall cause its owners, managers,

employees, vendors, subcontractors, suppliers, representatives, agents, and other third parties that participate in the manufacture or provision of Goods to comply, with this section and take no action that might cause Buyer to be in violation of applicable anti-corruption laws, including the U.S. Foreign Corrupt Practices Act. Seller shall immediately report to Buyer in writing any potential violation of applicable anti-corruption laws that relates to this Agreement, including the United States Foreign Corrupt Practices Act, the U.K. Bribery Act, or other applicable anti-corruption laws. Seller will, at the request of Buyer, and at least biennially, provide Buyer with a certification of its compliance with this section and all applicable anti-corruption laws.

## 12.    Anti-Boycott Laws; Anti-Terrorism Laws; Prohibited Transactions.

Nothing in this Agreement shall be construed to imply that Buyer has agreed to participate in or cooperate with an international boycott as defined in the Antiboycott Provisions of the U.S. Export Administration Regulations or the U.S. Internal Revenue Code. In the event any terms proposed by Seller either expressly or implicitly require Buyer, or any of its affiliates, to participate in or cooperate with an international boycott as defined in U.S. Export Administration Regulations or the U.S. Internal Revenue Code, Buyer and its affiliates shall be deemed to have expressly rejected such terms.

Seller agrees to comply with and assist Buyer to the fullest extent possible in Buyer's efforts to comply with applicable anti-terrorism laws. Seller represents, warrants, and covenants, that it is not and will not be directly or indirectly involved with, participate in, or support (financially or otherwise), terrorism or terrorist activities, and that Seller is not aware of any entity with which it has a business relationship that is recognized as a terrorist or that supports (financially or otherwise) terrorism or terrorist activities.

Seller represents and warrants that neither it nor any of its owners or executives is a person that is included on the list of Specially Designated Nationals and Blocked Persons ("SDN List") issued by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"). OFAC's SDN List is currently available at:

http://www.treas.gov/offices/enforcement/ofac/sdn/index.shtml.

Seller further represents and warrants that neither Seller, nor any of its owners or executives is a department, agency, or instrumentality of, or is otherwise controlled by or acting for or on behalf of, directly or indirectly, the government of any country that is the target of any economic sanctions programs administered by OFAC. Neither Seller nor any of its owners, officers, directors, or employees, will at any time be directly or indirectly owned or controlled by the government of any country that is subject to U.S. economic or trade sanctions or act directly or indirectly on behalf of the government of any country that is subject to U.S. economic or trade sanctions.

Seller agrees that it will not supply Goods that are produced in a country that is subject to U.S. or other applicable import restrictions or prohibitions.

## 13.    Representations, Warranties and Covenants of Seller.

In addition to and without prejudice to other representations, warranties, and covenants of Buyer, express or implied by law, Seller represents, warrants, and covenants to Buyer as follows:

a)    Enforceability; Validity; Non-Contravention. This Agreement and each contract entered into under this Agreement: (i) constitutes the legal, valid, and binding obligation of Seller; (ii) is enforceable in accordance with its terms; and (iii) violates no law, rule, regulation, contract, or understanding to which Seller is subject.

b)    Quality of Goods. Seller shall ensure that all Goods delivered to Buyer or one of its designees will be: new and unused; free from defects in materials, workmanship, and fabrication; fit for the particular purposes or uses, if any, either specified by Buyer or otherwise known to Seller; in strict accordance with Buyer's specifications, descriptions, approved samples, or prototypes with respect to quality, size, description, color, and dimensions; free of adulteration; in compliance with normal retailing standards with respect to such items as color, wash, and light fastness; able to pass without objection in the trade of first quality; and in conformance with all certifications and other statements made by Seller, its agents, or representatives, or contained in Seller's promotional material.

c)    Goods Free of Encumbrance; Infringement. Goods shall be free of (i) any security interest, lien, or other encumbrance of any kind and (ii) infringement or violation of any United States or foreign patent, trademark, trade name, copyright, trade secret, right of publicity or privacy right, or any other proprietary or contractual right held by any third party.

d) <u>Compliance with Laws and Business Policies Generally</u>. All Goods shall be tested, produced, labeled, packaged, delivered, handled, and invoiced in compliance with this Agreement, the contract therefor, all Laws and Regulations, and Buyer's Business Policies. Seller is able to and shall comply with this Agreement, any contract entered into under this Agreement, all Laws and Regulations, and Buyer's Business Policies. Seller shall cause its employees, agents, vendors, subcontractors, and other third parties that participate in the manufacture or provision of Goods to comply with, and will be responsible for ensuring their compliance with, all Laws and Regulations and Buyer's Business Policies to the extent related in any way to the transactions contemplated by this Agreement or any contract entered into hereunder. For purposes of this Agreement, "<u>Laws and Regulations</u>" means all applicable laws, regulations, rules, and standards of the United States and any other jurisdiction applicable to Buyer, Seller, the manufacture, sale, or delivery of Goods, or any other transactions or actions contemplated by this Agreement or taken in connection with this Agreement.

e) <u>Licenses and Permits</u>. Seller has procured and shall maintain such licenses, including intellectual property licenses, and permits as are required to fully perform this Agreement and any contract entered into under this Agreement.

f) <u>Pass-Through Benefits</u>. Seller will attempt to procure for Buyer the benefit of any warranties or other rights conferred on Seller by its vendors, subcontractors, and suppliers, and enforce such warranties or other rights on behalf of Buyer as directed by Buyer.

g) <u>Packaging and Waste</u>. Goods shall be delivered by Seller in the packaging and containers and using the labels, if any, specified by Buyer and shall be adequate to preserve and protect the Goods and satisfy the requirements of the carrier used for shipment. Buyer shall determine and communicate to Seller, and Seller shall comply with, standard waste allowances for certain packaging, components, material, containers, and labels. All product packaging and containers shall be in good condition and merchantable, sealed, clean, and without smudges, dust, or dirt or other imperfections or defects. Upon Buyer's request, Seller will provide Buyer with an inventory of its waste related to packaging, components, material, containers, and labels, and will provide to Buyer a reasonable opportunity to inspect such waste before disposal.

h) <u>Import/Export Compliance</u>. All Goods shall be prepared for exportation and importation and exported and imported in compliance with Laws and Regulations, including without limitation those of the U.S. Customs and Border Protection. Seller represents and warrants that all documents and information provided in connection with the importation and exportation of Goods will be accurate, including country of origin claims, country of origin marking requirements, textile declarations, and free trade agreement certifications. Additionally, Seller shall assist Buyer in connection with Buyer's compliance with U.S. or other customs laws, regulations, and programs, including but not limited to the U.S. Customs and Border Protection's Customs-Trade Partnership Against Terrorism (C-TPAT) and providing information required for U.S. Importer Security Filings.

i) <u>Refunds</u>. Seller shall assign to Buyer all refunds available from U.S. Customs and Border Protection, other governmental authorities, or third parties with respect to Goods delivered by Seller pursuant to this Agreement and paid for by Buyer, and Seller shall cooperate with Buyer in taking all steps necessary to obtain any such refunds.

j) <u>Records Retention</u>. Seller agrees to maintain, and to require its suppliers to maintain, for a period of at least three years following delivery of Goods to Buyer or one of its designees (or longer period if specified by Buyer or required pursuant to Laws and Regulations), all information and physical specimens relating to Goods, or their production and sale, including the contents, origin, and properties of Goods and the materials therein, and all other information necessary to establish Seller's compliance with the terms of this Agreement, including all safety, content, and other regulatory requirements that may relate to Goods, or their production or sale. Seller agrees to provide such information to Buyer or Buyer's representative upon Buyer's request.

k) <u>Compliance Monitoring</u>. Seller shall cooperate, and shall cause its employees, agents, vendors, subcontractors, and other third parties that participate in the manufacture or provision of Goods to cooperate, with any compliance and monitoring activities undertaken by Buyer or its agents to verify compliance with this Agreement or to allow Buyer to verify compliance with Laws and Regulations or any of Buyer's Business Policies. Cooperation shall include without limitation, providing Buyer or its agents with information, specimens, and documents as requested, providing Buyer and its agents full access to factories, facilities, workers' dormitories and other facilities involved in the production of Goods, allowing Buyer and its agents to interview employees without interference from others, and permitting Buyer to or its agents to make copies of documents or take photographs of factories, facilities, workers' dormitories,

in each case with or without advance notice. Seller shall ensure, and cause its agents, subcontractors and suppliers and other third parties that participate in the manufacture or provision of Goods to ensure, that there is no effort to interfere with, discourage, or punish efforts by anyone to communicate with Buyer or its agents, concerning compliance with this Agreement, including Laws and Regulations and Buyer's Labor Standards. Seller shall promptly notify Buyer of any issues identified by audits or inspections of factories, facilities, workers' dormitories, or records conducted by Seller or by any other third party that may constitute a violation of this Agreement, including violations of Laws and Regulations or violations of Buyer's Labor Standards. Buyer shall cooperate, and shall cause its agents, subcontractors, suppliers, and third parties that participate in the manufacture or provision of Goods to cooperate, with any compliance and monitoring activities by Buyer or its agents, and Buyer shall ensure that any remediation plans are executed in accordance with their terms. Buyer agrees to maintain the confidentiality of, and not to disclose the confidential, proprietary, or trade secret information provided to Buyer pursuant to this Section except in connection with the enforcement of this Agreement, or as necessary or appropriate to satisfy any safety issue or regulatory requirement that may be contingent on such information, to comply with any Laws or Regulations, or to avoid civil or criminal liability, penalty, or censure.

l) Education & Communications. Seller shall educate its workers, subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods about their obligations to comply with Laws and Regulations and applicable Buyer's Business Policies, including Buyer's Labor Standards and shall cause its subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods to do the same with respect to their respective workers. Seller's managerial employees shall attend seminars or other training programs as requested by Buyer or its agents from time to time. Seller shall distribute other information to workers and implement other compliance programs and procedures and training programs as may be reasonably requested by Buyer or its agents from time to time and cause its subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods to do the same.

m) Physical Security. Seller shall, and shall cause its agents, subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods to protect the physical security of Goods from theft, unauthorized diversion or use, and damage from any cause, including fire, flood, water damage, mold, insects, and excessive exposure to sunlight. Upon the request of Buyer, Seller agrees to promptly: (i) investigate claims regarding missing or otherwise unaccounted for Goods, damaged Goods, and service misconduct and further agrees to report its findings to Buyer; and (ii) provide any and all relevant documentation and other information to Buyer to facilitate Buyer's own investigation of missing or otherwise unaccounted for Goods, damaged Goods, and service misconduct. Seller agrees to implement, and to cause its agents, subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods to implement, loss prevention and "security awareness" programs and procedures as requested by Buyer.

n) Labor Expenses. Seller agrees that it shall be solely responsible for the payment of all wages, fringe benefits, social security, unemployment, and similar taxes applicable to the manufacture and provision of Goods.

o) Incorporation. Seller agrees to incorporate the terms of this Section 13, as applicable, into its agreements with its agents, subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods in order to carry out the intents and purposes of this Section 13, and to enforce such terms for its benefit and the benefit of Buyer.

## 14.   Set-off; Chargebacks; Other Adjustments.

Buyer may set-off or deduct any amounts owed by Seller to Buyer or any of its affiliates from any amounts otherwise due to Seller by Buyer pursuant to this Agreement or any contract entered into hereunder. Chargebacks may be imposed by Buyer to compensate it for its good faith estimate at any time of the cost and expense resulting from any one or more of the following events: failure to pay transportation or exportation or importation costs; absence or illegibility of packing lists; Goods received without strict compliance with shipping and packing instructions; incorrect or incomplete labeling, sizing, packaging, or ticketing; inconsistent quantities per package; incorrectly hung garments; failure to meet quality or other standards, including failure of Goods or delivery of Goods to comply with Laws and Regulations; recalls of Goods; returns to Seller; storage charges; improper invoicing; excessive insurance charges; early or late delivery; overages, shortages or unauthorized partial receipts or substitutions; handling and freight charges for any store recalls; under or over production of Goods; unauthorized diversion, liquidation, or disposal of Goods which contain or incorporate Buyer's Intellectual Property; or any other breach of this Agreement or any contract entered into under this Agreement.

**15.    Indemnification.**

(a)    Seller shall defend, indemnify, and hold harmless Buyer, its subsidiaries and its affiliates, and their respective directors, officers, employees, agents, representatives, and successors (all of the foregoing are hereinafter collectively referred to as the "Indemnitees"), of and from all claims, demands, actions, causes of action, losses, liabilities, damages, costs, and expenses including reasonable attorneys' fees and costs suffered or incurred by any of the Indemnitees, based upon or arising out of (1) any breach or violation by Seller of any of its representations, warranties, covenants, or agreements set forth herein; or (2) the negligence or misconduct of Seller. Notwithstanding the foregoing, in those situations where Buyer provides Intellectual Property to Seller, or directs Seller to procure Goods with Intellectual Property from a specified source other than Seller, Seller shall not be required to defend, indemnify or hold harmless the Indemnitees against any claim, demand, action, cause of action, loss, liability, damage, cost or expense to the extent it arises out of or involves infringement of such Intellectual Property. The right to indemnity hereunder shall exist notwithstanding (1) that joint or several liability may be imposed upon the Indemnitees by statute, ordinance, regulation, or judicial decision, and/or (2) the assertion of negligence or willful misconduct by the Indemnitees in any such claim, action, demand, or suit. Seller shall reimburse Buyer for costs and expenses or other damages or losses pursuant to this Section 15 as they become due and payable by Buyer, but in any event, all amounts owed to Buyer pursuant to this Section 15 shall be paid by Seller no later than ten (10) business days after final determination of losses, liabilities, damages, costs, and expenses, including legal fees and expenses.

(b)    Buyer shall promptly notify Seller in writing of the assertion of any claim, or commencement of any suit, action, investigation, or proceeding by a third party (a "Third Party Claim") which could give rise to a right to indemnification pursuant to this Section 15. The failure of Buyer to give notice in the manner provided herein shall not relieve Seller of its obligations under this Section 15, except to the extent that such failure to give notice materially prejudices Seller's ability to defend such Third Party Claim. Seller shall have the right, at its option, to defend any Third Party Claim at its own expense except that Buyer shall have the right, at its option, to defend any Third Party Claim initiated by a governmental authority or that Buyer has reason to believe could result in Buyer becoming subject to injunctive relief or relief other than the payment of money damages. If Seller wishes to exercise its right to defend a Third Party Claim pursuant to this Section 15, it must notify Buyer in writing of its intention to do so no later than seven (7) days after receipt of Buyer's notice, otherwise such right to defend shall be deemed waived. If Seller defends a Third Party Claim pursuant to this Section 15, (a) Seller shall obtain the prior written consent of Buyer before entering into any settlement if the settlement does not release Buyer from all liabilities and obligations with respect to such claims or the settlement imposes injunctive or other equitable relief against Buyer, and (b) Buyer shall be entitled to participate in the defense and employ separate legal advisors of its choice for such purpose at Buyer's expense. Each party shall make available to the other, any books, records, or other documents that are necessary or appropriate for the defense of a Third Party Claim and otherwise cooperate with each other in the defense of any claim. Notwithstanding anything to the contrary set forth herein, the party defending any Third Party Claim shall keep the other party informed on a reasonable and timely basis as to the status of the defense and conduct the defense in a reasonable manner. For the avoidance of doubt, in the event that Buyer defends a Third Party Claim, Seller shall be responsible for reimbursing Buyer for all reasonable legal fees and expenses associated with the defense to the extent Buyer is entitled to indemnification from Seller pursuant to Section 15(a).

**16.    Insurance.**

For as long as Seller's obligation to indemnify remains in effect, Seller will maintain insurance coverage as set forth in this Agreement. If Seller only sells apparel and does not sell accessories (e.g., jewelry, handbags, shoes, belts, etc.) to Buyer, Seller must maintain comprehensive liability insurance, including product liability coverage, with minimum coverage amounts equal to one million U.S. dollars ($1,000,000) per occurrence and two million U.S. Dollars ($2,000,000) in the aggregate. If Seller sells accessories of any kind (e.g., jewelry, handbags, shoes, belts, etc.) to Buyer, then in lieu of the insurance requirements set forth in the immediately preceding sentence, Seller must maintain comprehensive liability insurance, including product liability coverage, with minimum coverage amounts of one million U.S. dollars ($1,000,000) per occurrence and three million U.S. dollars ($3,000,000) in the aggregate. Such coverage shall be on a date of occurrence form. The insurance coverage required herein shall be provided by an insurance company or companies with a rating of at least A- and financial size "X" or greater in Bests' Insurance Guide. Seller shall provide Buyer with certificates of insurance evidencing such coverage and naming Buyer, its subsidiaries, and affiliates as additional insureds. Each certificate shall indicate that the coverage represented thereby shall not be canceled or modified until at least thirty (30) days prior written notice has been given to Buyer. Buyer may, in its sole discretion, accept Seller's self-insurance provided that Buyer is granted advance notice of this circumstance as well as an opportunity to evaluate the financial condition of Seller. All certificates of insurance shall be mailed by Seller to Express, LLC, ATTN: Director, Risk Management, 1 Express Drive, Columbus OH 43230. Seller agrees to procure and maintain in effect for its employees and will cause its subcontractors, suppliers, and any other third parties that participate in the manufacture or provision of Goods to procure and maintain in effect for their respective employees the full coverage required under applicable law for workers' compensation, employer's liability, and disability insurance.

**17.    Confidentiality.**

"Confidential Information" shall mean any and all information in whatever form communicated at any time before or after the date of this Agreement, whether communicated orally, in writing or in any other form, relating directly or indirectly, without limitation to the business, operations, prospects, finances, assets, liabilities, or affairs of Buyer or its affiliates. Confidential Information includes, but is not limited to any information pertaining to Buyer's business plans or concepts, products, orders, packaging, formulae, specifications, designs, samples, drawings, trade secrets, procedures or processes, merchandising, advertising, distribution or sales plans, processes, methods or sales figures, but does not include information which Seller can demonstrate by documentary evidence was previously known to Seller or generally available to Seller within the industry or becomes generally available to the public or enters the public domain other than as a result of unauthorized disclosure.

Seller, for itself and its affiliates, employees, agents, vendors, subcontractors, and any other third party it shares Confidential Information with pursuant to this Agreement, agrees to hold all Confidential Information in the strictest of confidence. Confidential Information shall remain the exclusive property of Buyer and shall only be disclosed to the extent reasonably necessary to assist Seller in fulfilling its obligations pursuant to this Agreement or any contract hereunder. Seller shall take all reasonable measures to prevent unauthorized disclosure of Confidential Information, including measures to ensure that the recipients of Confidential Information protect the confidentiality thereof. Seller shall promptly notify Buyer in the event that it becomes aware of any unauthorized disclosure, unauthorized interception, or theft of, or unauthorized access to, Confidential Information, including through a data security breach of any kind. Upon termination of this Agreement, or at any time at Buyer's request, Seller shall promptly return to Buyer all Confidential Information, including copies and Confidential Information possessed by Seller's affiliates, employees, agents, vendors, subcontractors, or other third parties Seller has shared Confidential Information with, or destroy or provide for the destruction of such Confidential Information if Buyer so directs. In each case, if requested by Buyer, Seller shall provide Buyer with a certification from an executive officer confirming such return or destruction. Seller agrees that it shall be liable for any unauthorized disclosure of Confidential Information by Seller, its affiliates, employees, agents, vendors, subcontractors, and other third parties it shares Confidential Information with. Seller agrees to incorporate the terms of this Section 17 into its agreements with any employees, agents, vendors, subcontractors and other parties it shares Confidential Information with pursuant to this Agreement, and to enforce such terms for its benefit and the benefit of Buyer. Seller acknowledges that the Confidential Information is unique and that monetary damages would be insufficient to compensate Buyer for any breach of this Section 17 by Seller or its affiliates, employees, agents, vendors, subcontractors, or other third parties Buyer shares Confidential Information with. Accordingly, Seller agrees that, in addition to any other rights and remedies available to Buyer, Buyer shall be entitled to injunctive and other special and equitable relief in connection with any such breach of this Section 17.

Without the prior written consent of Buyer, which may be withheld in Buyer's discretion, Seller shall not make any public disclosure of this Agreement, any contract entered into under this Agreement, or any relationship whatsoever between Seller and Buyer or between Buyer and any other third party.

**18.    Intellectual Property.**

a)    Definitions. For purposes of this Agreement, (a) "Intellectual Property" means any trademarks, service marks, logos, trade dress, trade names, trade secrets, copyrights, including but not limited to copy, designs, images, and artwork, patents, design or utility models, discoveries, inventions, and trade secrets, including but not limited to formulas and processes, and any modifications, derivations, improvements, or adaptations thereof; and (b) "Off The Shelf" means Goods which are Seller's "off the shelf," "market body" or otherwise generic goods that Seller supplies to third parties and as to which Buyer's Intellectual Property is not embodied, attached, or associated.

b)    Exclusions. Notwithstanding this Section or any other provision in this Agreement, to the extent that any Goods are Off the Shelf, Seller's interest in and right to manufacture and sell such Goods to third parties shall not be restricted.

c)    Ownership. If Buyer provides any Intellectual Property for any Goods to be manufactured or sold by Seller, such Intellectual Property will remain the property of Buyer, and Seller shall acquire no rights thereto. Except for Off the Shelf Goods, if Seller creates or modifies Intellectual Property within the scope of providing Goods to Buyer, Seller hereby assigns to Buyer, all right, title, and interest throughout the world in and to such Intellectual Property. All Intellectual Property which is subject to protection under federal copyright law is "work made for hire" for the Buyer. If such Intellectual Property is determined not to be "work made for hire," then Seller irrevocably assigns all right, title, and interest in and to the Intellectual Property to the Buyer. Without limiting the foregoing, Seller waives any and all claims it may

now or later have in any jurisdiction to so-called "moral rights" or rights of "droit moral" with respect to the results and proceeds of its work under this Agreement. Seller further agrees that such Intellectual Property and rights shall be promptly and fully disclosed to Buyer. Where applicable and relevant to perfecting in Buyer the Intellectual Property and other rights specifically allocated to Buyer in this Section, and where such rights arise in or through Seller, Seller agrees to obtain when requested and without additional charge by Seller and at Buyer's expense, any other assignments of rights in such Intellectual Property from the inventor, author, or third parties in favor of Buyer, its successors, and assigns. Seller further agrees that when requested and without additional charge by Seller and at Buyer's expense, Seller will execute all necessary documents and take all reasonable measures to assist and enable Buyer to perfect, preserve, register and record its rights in any such Intellectual Property and rights specifically allocated to Buyer in this Section. Seller represents to Buyer that any and all Intellectual Property of Seller assigned to Buyer under this Agreement does not infringe the rights of any third party.

d)   Notice of Third Party Rights. If Seller obtains any information that any third party has any rights or claims to any Intellectual Property relating to Goods, Seller shall notify Buyer immediately.

e)   No Claim by Seller. Seller shall not make any unlicensed use, file any application for registration, or claim any other proprietary right to any Intellectual Property or other rights allocated to Buyer in this Section. Seller shall not at any time during or after termination or cancellation of this Agreement dispute the validity or enforceability of any part of Buyer's Intellectual Property or any right comprised therein, or cause to be done any act or thing contesting or in any way impairing or tending to impair any part of that right, title, or interest and shall not counsel or assist any other person to do so.

f)   Incorporation. Seller agrees to incorporate the terms of this Section 18 into its agreements with its affiliates, employees, agents, vendors, subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods and to enforce such terms for its benefit and the benefit of Buyer.

### 19.   Term; Termination; Remedies.

a)   This Agreement will remain in effect until terminated by either Buyer or Seller upon giving written notice to the other at least 90 days prior to the date of such termination. No such termination will operate to relieve any party of its obligations under any contract entered into hereunder, whether or not such contract was fully performed at the time of termination.

b)   Buyer or Seller shall have the right with respect to the other to immediately terminate this Agreement and/or any contract entered into under this Agreement, in whole or in part, by providing written notice to the other should the other become insolvent or make a general assignment for the benefit of creditors.

c)   Buyer will have the right, at its election, to immediately terminate this Agreement, and/or immediately terminate any contract created under this Agreement, and/or cancel any outstanding orders for Goods, whether or not in the process of manufacture, and/or to reject any Goods or revoke acceptance of any Goods previously accepted, in whole or in part, by providing written notice to Seller should any of the following occur:

   i.   Seller breaches any representation, warranty, covenant, or agreement set forth in this Agreement or any contract entered into under this Agreement;

   ii.   Buyer has reasonable grounds for insecurity with respect to Seller's performance and has not received reasonable assurance of due performance within five days after written demand therefor;

   iii.   Buyer is prohibited by Laws and Regulations from doing business with Seller for any reason; or

   iv.   any change of ownership, interest, or control of Seller.

d)   For the avoidance of doubt, in the event of a termination, cancellation, rejection, or revocation of acceptance by Buyer hereunder or any breach of this Agreement by Seller, Seller will not be entitled to any payment, and Buyer shall be entitled to indemnification pursuant to Section 15.

### 20.   Force Majeure.

Neither party will be liable for failure to perform under this Agreement or any contract created under this Agreement to the extent such failure is caused by any fire, strike, act of God, war, authorization of law, embargo, accident, or other cause

beyond the reasonable control of the affected party and not correctable or avoidable through exercise of commercially reasonable means. If any such event or cause affects Seller's ability to perform, Seller will give notice thereof to Buyer as soon as reasonably practicable but in no event later than three days after any such occurrence, and if such inability continues for more than 10 days after the date of notice, Buyer will have the right to terminate this Agreement and/or any affected contract, and the costs incurred by Seller in connection with such termination shall be borne by Seller.

### 21.    Limitation of Liability.

Under no circumstances will Buyer be liable to Seller hereunder as a result of any cancellation of any contract, or otherwise, for any amount in excess of the purchase price set forth in the affected contract, if any. ALL CLAIMS FOR INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES, WHETHER BASED UPON THEORIES OF CONTRACT, TORT, OR OTHERWISE, ARE HEREBY WAIVED BY SELLER.

### 22.    Survival.

All of Seller's representations, warranties, indemnities, and other undertakings, and Buyer's rights and remedies under this Agreement, will survive the termination of this Agreement, the termination of any contract entered into under this Agreement, and any inspection, testing, acceptance, payment, or use of the Goods provided under this Agreement.

### 23.    Affiliate Transactions.

Seller agrees that any of Buyer's affiliates shall be entitled to purchase Goods on the same terms and conditions set forth in this Agreement and that any purchases of Goods made by Buyer's affiliates from Seller shall be governed by the terms of this Agreement as if such Affiliate had executed this Agreement as "Buyer."

### 24.    Assignment; Successors; Subcontractors.

Seller will neither assign this Agreement nor any contract created under this Agreement nor subcontract the furnishing of any completed or substantially completed Goods without the prior written approval of Buyer. No permitted assignment or subcontracting will relieve Seller of its obligations hereunder and Seller acknowledges and agrees that it shall be fully responsible for ensuring that any of its agents and subcontractors complies with the terms of this Agreement and shall be liable for any breach of the terms of this Agreement by any of its agents or subcontractors. This Agreement will be binding upon and will inure to the benefit of the parties and their respective successors and permitted assignees.

### 26.    Waiver.

No failure or delay on the part of Buyer to exercise any right, privilege, or power under this Agreement will operate as a waiver or relinquishment thereof, and no single or partial exercise by Buyer of any right, privilege, or power under this Agreement shall preclude the exercise of any other right, privilege, or power or further exercise thereof.

### 25.    Severability.

The invalidity of any provision of this Agreement will not render invalid any other provision of this Agreement, it being the intention of the parties that the terms hereof will be construed in such a way as to make all of such provisions valid and enforceable to the full extent permitted by applicable law.

### 27.    Governing Law; Consent to Jurisdiction; Venue.

This Agreement will be governed by and construed in accordance with the local laws of the State of Ohio, USA, without reference to its conflicts of laws principles. To the extent a court is precluded from applying those laws, the parties intend that the court apply the local laws of any other jurisdiction which has enacted the Uniform Commercial Code and bears an appropriate relation to the transactions governed by this Agreement. The parties consent to the exclusive jurisdiction and venue of the courts of proper subject matter jurisdiction located in the City of Columbus, Franklin County, Ohio, USA for all purposes related to this Agreement or any contract entered into hereunder. Service of any process, summons, notice, or document by written means pursuant to Section 30 will be effective service of process for any action, suit, or proceeding brought against any party hereunder in any such courts. The United Nations Convention on Contracts for the International Sale of Goods will have no application to this Agreement or actions hereunder or contemplated hereby.

### 28.    Further Assurances.

Seller shall use its reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable in order to carry out the intents and purposes of this Agreement, including, without limitation, executing and delivering additional documents, and incorporating the terms of this Agreement, as applicable,

into agreements with its affiliates, employees, agents, vendors, subcontractors, suppliers, and other third parties that participate in the manufacture or provision of Goods in order to carry out the intents and purposes of this Agreement.

### 29.    Interpretive Provisions.

The words "hereof", "herein", and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular. Whenever the words "include", "includes", or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import. "Writing", "written", and comparable terms refer to printing, typing, and other means of reproducing words, including through electronic media, in a visible form. References to any agreement or contract are to that agreement or contract as amended, modified, or supplemented from time to time in accordance with the terms hereof and thereof. References to any person or entity include the successors and permitted assigns of such person or entity.

### 30.    Notices.

Any notice, consent, or other communication or documentation required or permitted under this Agreement shall be given in English to Seller at the address for Seller as indicated under Seller's signature hereto and to Buyer as indicated under Buyer's signature hereto until subsequently changed by notice given pursuant to this Section 30. Notices may be given by any commercially reasonable written or electronic means and, unless otherwise specified by a protocol adopted hereunder, will be deemed given when delivered in person, when electronic delivery is confirmed, when delivered by any reputable courier service, or two days after being sent by registered or certified U.S. mail, postage prepaid, return receipt requested.

### 31.    Counterparts; English Language.

This Agreement may be signed in any number of counterparts and the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. All notices, records, and other documentation to be delivered between the parties shall be delivered in English. If this Agreement exists in counterparts in more than one language, the English language version shall be the official version. An executed copy or counterpart hereof delivered by facsimile or electronic mail shall be deemed an original instrument.

**[Signature page follows]**

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be duly executed by their respective authorized officers as of the Effective Date.

| SELLER | |
|---|---|
| (Insert Full Legal Name of Business)<br>Tote Fashion Sourcing Limited  *For and on behalf of*  TOTE FASHION SOURCING LIMITED | If "SELLER" includes more than one company, or if "SELLER" uses other names, fill in the additional companies and/or names below: |
| (Insert Business Type (Corporation, LLC, etc.)<br>Corporation  *Keven* | |
| (Insert State/Country of Organization)<br>China | (Additional Company and/or Name) |
| (Signature of Authorized Officer)<br>By:  *Keven* | (Additional Company and/or Name) |
| (Printed Name and Title of Authorized Officer)<br>Keven Lin  Director | (Additional Company and/or Name) |
| (Seller Contact Name and Title)<br>Keven Lin  Director | (Additional Company and/or Name) |
| (Telephone)<br>852 2342 9888 | |
| (Fax)<br>852 2342 9000 | |
| (E-mail)<br>keven@totefashion.com.tw | |
| (Address)<br>RM C3,1801,18/F RYKADAN CAPITAL TOWER,135 HOI BUN ROAD, | |
| (Address)<br>KWUN TONG,KLN.,H.K. | |

| BUYER |
|---|
| Express, LLC, a Delaware limited liability company<br><br><br>By:_____<br>   Colin Campbell, Executive Vice President – Sourcing & Production<br><br>Contact Information for Notices:<br><br>By Mail:<br><br>Express, LLC<br>1 Express Drive<br>Columbus, OH 43230<br>Attn: Executive Vice President – Sourcing & Production<br><br><br>By Facsimile:<br>[_____]<br><br>By Email:<br>[_____] |

| EFFECTIVE DATE OF AGREEMENT: | |
|---|---|

Date Filed: 06/26/2024
Claim No: 777

## Fill in this information to identify the case:

Name of Debtor & Case Number:
- ☐ Express, Inc. (Case No. 24-10831)
- ☐ Express Topco LLC (Case No. 24-10832)
- ☐ Express Holding, LLC (Case No. 24-10833)
- ☐ Express Finance Corp. (Case No. 24-10834)
- ☒ Express, LLC (Case No. 24-10835)
- ☐ Express Fashion Investments, LLC (Case No. 24-10836)

- ☐ Express Fashion Logistics, LLC (Case No. 24-10837)
- ☐ Express Fashion Operations, LLC (Case No. 24-10838)
- ☐ Express GC, LLC (Case No. 24-10839)
- ☐ Express BNBS Fashion, LLC (Case No. 24-10840)
- ☐ UW, LLC (Case No. 24-10841)
- ☐ Express Fashion Digital Services Costa Rica, S.R.L. (Case No. 24-10842)

United States Bankruptcy Court for the District of Delaware

Official Form 410                       Date Stamp Copy Returned

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Tote Fashion Sourcing Limited
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

RMF PC, Attn: S. Giugliano
Name

E. Tower, 15th Flr, 1425 RXR Plaza
Number    Street

Uniondale, NY 11556
City          State          ZIP Code

Contact phone   516-663-6600

Contact email   sgiugliano@rmfpc.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City          State          ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

STRETTO

JUN 2 6 2024

RECEIVED

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM   DD   YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____



1269706262430000000007

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor   ____ ____ ____ ____

**7. How much is the claim?**

$ _See Rider._   Does this amount include interest or other charges?
☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Rider.

**9. Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property   $_____
Amount of the claim that is secured   $_____
Amount of the claim that is unsecured:   $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____

Annual Interest Rate (when case was filed) _____ %
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☒ Yes. Check one:

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,3_0* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $1,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☒ Other. Specify subsection of 11 U.S.C. § 507(a)(_2_) that applies.

$ See Rider.

*Amounts are subject to adjustment on 4/01/2_ and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/24/2024
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Keven | | Lin |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Director |
|---|---|

| Company | Tote Fashion Sourcing Limited |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | RM 829A, 8F, Rykadan Capital Tower, 135 Hoi Bun Road |
|---|---|
| | Number    Street |
| | Kwun Tong, LLN, H.K. |
| | City                          State        ZIP Code |

| Contact phone | 886-935246007 | Email | keven@totefashion.com.tw |
|---|---|---|---|

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x

In re:                                          Chapter 11

EXPRESS, INC., *et al.*,[1]                      Case No. 24-10831 (KBO)

                                                (Jointly Administered)

                      Debtors.

-----------------------------------------------------------------x

### RIDER TO PROOF OF CLAIM OF TOTE FASHION SOURCING LIMITED

1.  Basis for Claim

    a.  This proof of claim (the "**Proof of Claim**") is asserted by Tote Fashion Sourcing
        Limited (the "**Claimant**") against Express, LLC (the "**Debtor**"), in Chapter 11 Case
        No. 24-10835 (KBO) (the "**Bankruptcy Case**"), which is jointly administered with
        the chapter 11 case filed by Express, Inc., Case No. 24-10831(KBO).

    b.  This Proof of Claim arises from amounts owed to Claimant for goods delivered to
        the Debtor.

2.  Background.

    a.  Claimant delivers certain textile goods (the "**Goods**") to the Debtor for future
        resale.

    b.  Claimant is owed in the aggregate $3,483,118.38 for Goods delivered to the Debtor.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax
identification numbers, are Express, Inc. (8128); Express Topco LLC (8079); Express Holding,
LLC (8454); Express Finance Corp. (7713); Express, LLC (0160); Express Fashion Investments,
LLC (7622); Express Fashion Logistics, LLC (0481); Express Fashion Operations, LLC (3400);
Express GC, LLC (6092); Express BNBS Fashion, LLC (3861); UW, LLC (8688); and Express
Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of
business and the Debtors' service address in these chapter 11 cases is One Express Drive,
Columbus, Ohio 43230.

c. On April 22, 2024 (the "**Petition Date**"), Express, Inc. and certain of its affiliates, including the Debtor, filed voluntary petitions under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") with the U.S. Bankruptcy Court for the District of Delaware.

3. Amount of Claim.

   a. Since the Petition Date, Claimant is owed $287,595.16 for Goods delivered to the Debtor and related fees incurred after the Petition Date.

   b. As of the Petition Date, Claimant is owed the amount of $762,375.71 for Goods delivered to the Debtor within twenty (20) days of the Petition Date; and

   c. As of the Petition Date, Claimant is owed $3,195,523.22 for Goods delivered to the Debtor prior to April 2, 2024 – *i.e.*, prior to twenty (20) days before the Petition Date.

   d. Claimant reserves its right to amend this Proof of Claim to assert additional claims it may hold, and to assert a different classification or amount of the Proof of Claim.

4. Classification of Claim.

   The Proof of Claim is asserted: (a) in part as an administrative expense claim under Bankruptcy Code section 503(b)(1) for Goods delivered to the Debtor after the Petition Date; (b) in part as an administrative expense claim under Bankruptcy Code section 503(b)(9) for Goods delivered within twenty (20) days of the Petition Date; and (c) in part as an unsecured claim. Claimant reserves the right to amend this Proof of Claim to assert a different or additional classification of claims, as well as claims against different or additional debtors.

5. Credits and Setoffs.

2

As of the date of this Proof of Claim, Claimant has not received any payments to reduce the amount set forth herein.

6. Supporting Documents.

The documents supporting the Proof of Claim are annexed hereto as Exhibit A.

7. Reservation of Rights.

Claimant reserves the right to amend or supplement this Proof of Claim to reflect any additional claims against the Debtor or any of its debtor affiliates, to specify interest, costs, expenses, or other charges or claims incurred by Claimant and to file additional claims which may be based on the same or additional documents.

8. No Waiver.

This Proof of Claim is filed to protect Claimant from forfeiture of the Proof of Claim. The filing of this Proof of Claim is not: (a) a waiver or release of Claimant's rights against any person, entity, or property including but not limited to the Debtor or its debtor affiliates in their jointly administered chapter 11 cases; (b) a consent by Claimant to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to the subject matter of the Proof of Claim or any objection or other proceeding commenced in the Debtor's chapter 11 case against or otherwise involving Claimant; (c) a waiver of the right to move to withdraw the reference or otherwise to challenge the jurisdiction of the United States Bankruptcy Court for the District of Delaware; (d) an election of remedy; (e) a waiver of any rights or claims Claimant has against the Debtor or any of its debtor affiliates in their jointly administered chapter 11 cases or any person or entity with respect to any pending or future litigation or to any matters related to such litigation; or (f) a waiver of past, present, or future defaults or events of default.

3

9. Notices.

All notices to Claimant should be sent to:

Ruskin Moscou Faltischek, PC
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556-1425
Attn: Sheryl P. Giugliano
sgiugliano@rmfpc.com

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------

In re:

Express, Inc., et al.,

Chapter 11

Case No. 24-10831 (KBO)

(Joint Administration Requested)

-------------------------------------------------------------------

## PROOF OF CLAIM OF TOTE FASHION SOURCING LIMITED

Address    RM 829A, 8F,   RYKADAN CAPITAL TOWER,135 HOI BUN ROAD, KWUN TONG,KLN., H.K.

Amount of Claim

owed claim in the amount of **US$3,483,118.38**, as follows:

1> Unpaid payment (delivered the Goods) $3,187,292.61

| ship date | Have not received payment yet | Remark |
|---|---|---|
| 2023/Aug | 1,199,516.43 | |
| 2023/Sep | 186,776.26 | |
| 2023/Oct | 399,543.16 | |
| 2023/Nov | 64,578.74 | pls reference -   Exhibit 1 |
| 2023/Dec | 573,188.31 | |
| 2024/Jan | 214,696.23 | |
| 2024/Feb | 284,455.86 | |
| 2024/Mar | 258,537.62 | |
| **Total** | 3,187,292.61 | |

2> Debit Note $3,544.61

| Date | Amount | Remark |
|---|---|---|
| 2023/10/19 | 2,924.61 | |
| 2023/10/27 | 620.00 | pls reference -   Exhibit 2 |
| 2024/5/13 | 4,686.00 | |
| **Total** | 8,230.61 | |

3> ordered - all materials have been arrived/finished   $287,595.16

| ship date | Amount | Remark |
|---|---|---|
| 2024/Mar | 28,875.00 | |
| 2024/Apr | 225,456.16 | pls reference -   Exhibit 3 |
| 2024/May | 33,264.00 | |
| **Total** | 287,595.16 | |

Supporting Documents

The documents supporting the Claim are as **Exhibit 1**, **Exhibit 2** and **Exhibit 3**

Exhibit 1

 Sourcing Limited

# Invoice

## Total
# $3,187,292.61

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 23EXWHA1275 | 690464 | 01/Aug/23 | 8.19 |
| EXPRESS LLC | 23EXMHA1290 | 690537 | 01/Aug/23 | 12.52 |
| EXPRESS LLC | 23EXWHB1318 | 691938 | 28/Aug/23 | 155.82 |
| EXPRESS LLC | 23EXMHA1263 | 425934 | 08/Aug/23 | 2,283.75 |
| EXPRESS LLC | 23EXWBE1342 | 692768 | 28/Aug/23 | 47,407.50 |
| EXPRESS LLC | 23EXMBE1343 | 692792 | 28/Aug/23 | 7,140.00 |
| EXPRESS LLC | 23EXWBE1344 | 692772 | 28/Aug/23 | 5,512.50 |
| EXPRESS LLC | 23EXWBE1345 | 692775 | 28/Aug/23 | 5,250.00 |
| EXPRESS LLC | 23EXWBE1346 | 692774 | 28/Aug/23 | 25,200.00 |
| EXPRESS LLC | 23EXWBF1347 | 692773 | 28/Aug/23 | 6,930.00 |
| EXPRESS LLC | 23EXWBE1349 | 693074 | 28/Aug/23 | 6,037.51 |
| EXPRESS LLC | 23EXWUW1225 | 688116 | 29/Aug/23 | 63,298.62 |
| EXPRESS LLC | 23EXWUW1226 | 688118 | 29/Aug/23 | 44,304.88 |
| EXPRESS LLC | 23EXWUW1227 | 688120 | 29/Aug/23 | 60,503.70 |
| EXPRESS LLC | 23EXWUW1228 | 688122 | 29/Aug/23 | 79,187.64 |
| EXPRESS LLC | 23EXWUW1230 | 688289 | 29/Aug/23 | 61,291.26 |
| EXPRESS LLC | 23EXWSO1232 | 688557 | 29/Aug/23 | 17,622.36 |
| EXPRESS LLC | 23EXMHA1245 | 689730 | 29/Aug/23 | 103.95 |
| EXPRESS LLC | 23EXMHA1246 | 689732 | 29/Aug/23 | 2,848.23 |
| EXPRESS LLC | 23EXMHA1248 | 689733 | 29/Aug/23 | 112.98 |
| EXPRESS LLC | 23EXMHA1249 | 689735 | 29/Aug/23 | 6,061.38 |
| EXPRESS LLC | 23EXWHA1271 | 690693 | 29/Aug/23 | 98.28 |
| EXPRESS LLC | 23EXWHA1272 | 690695 | 29/Aug/23 | 9,701.06 |
| EXPRESS LLC | 23EXWHA1274 | 690467 | 29/Aug/23 | 8,181.81 |
| EXPRESS LLC | 23EXWHA1276 | 690465 | 29/Aug/23 | 6,953.31 |
| EXPRESS LLC | 23EXMHA1278 | 692521 | 29/Aug/23 | 6,001.00 |
| EXPRESS LLC | 23EXMHA1279 | 692524 | 29/Aug/23 | 81.48 |
| EXPRESS LLC | 23EXMHA1281 | 689761 | 29/Aug/23 | 46,332.40 |
| EXPRESS LLC | 23EXMHA1285 | 689771 | 29/Aug/23 | 11,220.60 |
| EXPRESS LLC | 23EXMHA1289 | 689757 | 29/Aug/23 | 35,270.10 |
| EXPRESS LLC | 23EXMHA1293 | 692349 | 29/Aug/23 | 11,503.07 |
| EXPRESS LLC | 23EXMSC1295 | 692347 | 29/Aug/23 | 8,370.81 |
| EXPRESS LLC | 23EXWAC1297 | 688919 | 29/Aug/23 | 25,068.96 |
| EXPRESS LLC | 23EXWAC1299 | 688927 | 29/Aug/23 | 23,372.00 |
| EXPRESS LLC | 23EXWAC1301 | 688917 | 29/Aug/23 | 21,824.40 |
| EXPRESS LLC | 23EXWAC1303 | 688931 | 29/Aug/23 | 19,085.68 |
| EXPRESS LLC | 23EXWSC1305 | 690560 | 29/Aug/23 | 52,337.88 |

Exhibit 1

 Sourcing Limited

# Invoice

**Total**

## $3,187,292.61

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 23EXWSC1307 | 690498 | 29/Aug/23 | 37,890.72 |
| EXPRESS LLC | 23EXWHA1309 | 690562 | 29/Aug/23 | 29,803.94 |
| EXPRESS LLC | 23EXWHA1311 | 690500 | 29/Aug/23 | 19,061.92 |
| EXPRESS LLC | 23EXWHA1313 | 690556 | 29/Aug/23 | 172,164.36 |
| EXPRESS LLC | 23EXWHA1315 | 690487 | 29/Aug/23 | 44,882.47 |
| EXPRESS LLC | 23EXWHA1325 | 690549 | 29/Aug/23 | 49,892.54 |
| EXPRESS LLC | 23EXWHA1327 | 690489 | 29/Aug/23 | 29,963.01 |
| EXPRESS LLC | 23EXMSC1354 | 693757 | 29/Aug/23 | 10,041.94 |
| EXPRESS LLC | 23EXMSC1356 | 693759 | 29/Aug/23 | 14,635.69 |
| EXPRESS LLC | 23EXMSC1358 | 693761 | 29/Aug/23 | 11,879.44 |
| EXPRESS LLC | 23EXMSC1360 | 693763 | 29/Aug/23 | 6,082.55 |
| EXPRESS LLC | 23EXMSC1362 | 693765 | 29/Aug/23 | 5,526.05 |
| EXPRESS LLC | 23EXMSC1364 | 693767 | 29/Aug/23 | 5,526.05 |
| EXPRESS LLC | 23EXMSC1372 | 693777 | 29/Aug/23 | 4,997.37 |
| EXPRESS LLC | 23EXMSC1374 | 693779 | 29/Aug/23 | 4,936.16 |
| EXPRESS LLC | 23EXMSC1377 | 694182 | 29/Aug/23 | 7,195.55 |
| EXPRESS LLC | 23EXWSC1385 | 695319 | 29/Aug/23 | 10,519.11 |
| EXPRESS LLC | 23EXWHA1387 | 695321 | 29/Aug/23 | 7,841.93 |
| EXPRESS LLC | 23EXMHA1283 | 690533 | 05/Sep/23 | 9,273.92 |
| EXPRESS LLC | 23EXMHA1287 | 690536 | 05/Sep/23 | 9,174.23 |
| EXPRESS LLC | 23EXMHA1291 | 690538 | 05/Sep/23 | 13,611.15 |
| EXPRESS LLC | 23EXWHB1317 | 692314 | 08/Sep/23 | 20,418.20 |
| EXPRESS LLC | 23EXWHB1319 | 691939 | 08/Sep/23 | 31,008.18 |
| EXPRESS LLC | 23EXWSO1332 | 691831 | 19/Sep/23 | 9,870.01 |
| EXPRESS LLC | 23EXWSO1339 | 691825 | 19/Sep/23 | 15,592.51 |
| EXPRESS LLC | 23EXMSC1366 | 693771 | 05/Sep/23 | 9,628.50 |
| EXPRESS LLC | 23EXMSC1368 | 693773 | 05/Sep/23 | 6,412.88 |
| EXPRESS LLC | 23EXMSC1370 | 693775 | 05/Sep/23 | 7,561.31 |
| EXPRESS LLC | 23EXMWA1378 | 695094 | 25/Sep/23 | 10,899.00 |
| EXPRESS LLC | 23EXMBE1379 | 695040 | 25/Sep/23 | 17,955.01 |
| EXPRESS LLC | 23EXMBE1380 | 695041 | 25/Sep/23 | 16,275.00 |
| EXPRESS LLC | 23EXMBE1381 | 695092 | 25/Sep/23 | 9,096.36 |
| EXPRESS LLC | 23EXMBE1388 | 696505 | 30/Oct/23 | 8,631.00 |
| EXPRESS LLC | 23EXMBE1389 | 696503 | 30/Oct/23 | 20,034.53 |
| EXPRESS LLC | 23EXWBE1390 | 697054 | 30/Oct/23 | 13,125.00 |
| EXPRESS LLC | 23EXWBE1391 | 697055 | 30/Oct/23 | 9,240.00 |
| EXPRESS LLC | 23EXWBE1392 | 697056 | 30/Oct/23 | 11,025.01 |

Exhibit 1

 Sourcing Limited

# Invoice

**Total**

# $3,187,292.61

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 23EXMBE1393 | 697188 | 30/Oct/23 | 8,977.50 |
| EXPRESS LLC | 23EXMBE1394 | 697193 | 30/Oct/23 | 8,137.51 |
| EXPRESS LLC | 23EXWHB1399 | 696283 | 30/Oct/23 | 15,904.88 |
| EXPRESS LLC | 23EXWHB1400 | 696281 | 30/Oct/23 | 156.87 |
| EXPRESS LLC | 23EXWHB1402 | 696296 | 30/Oct/23 | 13,773.38 |
| EXPRESS LLC | 23EXWHB1403 | 696294 | 30/Oct/23 | 100.17 |
| EXPRESS LLC | 23EXWHB1406 | 696419 | 30/Oct/23 | 10,156.13 |
| EXPRESS LLC | 23EXWHB1407 | 696417 | 30/Oct/23 | 100.17 |
| EXPRESS LLC | 23EXWHB1411 | 696280 | 30/Oct/23 | 23,740.50 |
| EXPRESS LLC | 23EXWHB1412 | 696278 | 30/Oct/23 | 143.64 |
| EXPRESS LLC | 23EXWHB1415 | 696447 | 30/Oct/23 | 10,757.04 |
| EXPRESS LLC | 23EXWBE1416 | 698087 | 30/Oct/23 | 13,282.52 |
| EXPRESS LLC | 23EXWBE1417 | 698173 | 30/Oct/23 | 21,680.66 |
| EXPRESS LLC | 23EXWBE1419 | 696497 | 30/Oct/23 | 133.88 |
| EXPRESS LLC | 23EXWBE1420 | 696499 | 30/Oct/23 | 8,260.10 |
| EXPRESS LLC | 23EXWBE1422 | 698731 | 30/Oct/23 | 10,708.12 |
| EXPRESS LLC | 23EXWBE1424 | 698365 | 30/Oct/23 | 22,085.65 |
| EXPRESS LLC | 23EXWBE1425 | 698382 | 30/Oct/23 | 209.47 |
| EXPRESS LLC | 23EXMBE1428 | 698500 | 30/Oct/23 | 29,216.25 |
| EXPRESS LLC | 23EXMBE1429 | 698522 | 30/Oct/23 | 18,957.17 |
| EXPRESS LLC | 23EXMBE1430 | 698497 | 30/Oct/23 | 20,868.75 |
| EXPRESS LLC | 23EXMBE1431 | 697187 | 30/Oct/23 | 7,297.51 |
| EXPRESS LLC | 23EXWBE1432 | 699705 | 30/Oct/23 | 143.33 |
| EXPRESS LLC | 23EXWBE1433 | 699707 | 30/Oct/23 | 15,101.69 |
| EXPRESS LLC | 23EXWBE1435 | 699436 | 30/Oct/23 | 374.86 |
| EXPRESS LLC | 23EXWBE1437 | 699438 | 30/Oct/23 | 52,616.47 |
| EXPRESS LLC | 23EXWBE1438 | 698331 | 30/Oct/23 | 19,090.89 |
| EXPRESS LLC | 23EXWBE1440 | 698835 | 30/Oct/23 | 5,512.51 |
| EXPRESS LLC | 23EXWHB1398 | 696282 | 05/Nov/23 | 61.01 |
| EXPRESS LLC | 23EXWHB1401 | 696295 | 05/Nov/23 | 38.96 |
| EXPRESS LLC | 23EXWHB1405 | 696418 | 01/Nov/23 | 38.96 |
| EXPRESS LLC | 23EXWHB1410 | 696279 | 05/Nov/23 | 55.86 |
| EXPRESS LLC | 23EXWHB1414 | 696446 | 01/Nov/23 | 15.96 |
| EXPRESS LLC | 23EXWBE1418 | 698172 | 01/Nov/23 | 54.35 |
| EXPRESS LLC | 23EXWBE1421 | 696498 | 01/Nov/23 | 40.16 |
| EXPRESS LLC | 23EXWBE1423 | 698732 | 03/Nov/23 | 14.49 |
| EXPRESS LLC | 23EXWBE1426 | 698364 | 01/Nov/23 | 48.88 |

Exhibit 1

 Sourcing Limited

# Invoice

**Total**

# $3,187,292.61

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 23EXWBE1427 | 702544 | 06/Nov/23 | 8,426.26 |
| EXPRESS LLC | 23EXWBE1434 | 699706 | 01/Nov/23 | 43.01 |
| EXPRESS LLC | 23EXWBE1436 | 699437 | 01/Nov/23 | 112.48 |
| EXPRESS LLC | 23EXWBE1439 | 698330 | 01/Nov/23 | 19.12 |
| EXPRESS LLC | 23EXMHA1445 | 698846 | 01/Nov/23 | 114.08 |
| EXPRESS LLC | 23EXMHA1446 | 698890 | 01/Nov/23 | 36.60 |
| EXPRESS LLC | 23EXMHA1447 | 698847 | 21/Nov/23 | 4,367.32 |
| EXPRESS LLC | 23EXMHA1448 | 698891 | 21/Nov/23 | 1,270.65 |
| EXPRESS LLC | 23EXMBE1464 | 700166 | 06/Nov/23 | 49,770.02 |
| EXPRESS LLC | 23EXWBE1475 | 702546 | 01/Nov/23 | 50.57 |
| EXPRESS LLC | 23EXWHB1404 | 696529 | 27/Dec/23 | 5,565.00 |
| EXPRESS LLC | 23EXWHB1408 | 696527 | 27/Dec/23 | 100.17 |
| EXPRESS LLC | 23EXWHB1409 | 696528 | 27/Dec/23 | 5,464.83 |
| EXPRESS LLC | 23EXWHB1413 | 696526 | 27/Dec/23 | 7,980.00 |
| EXPRESS LLC | 23EXWHA1441 | 699189 | 01/Dec/23 | 11.87 |
| EXPRESS LLC | 23EXWHA1442 | 699190 | 28/Dec/23 | 8,293.64 |
| EXPRESS LLC | 23EXWHA1443 | 699127 | 01/Dec/23 | 11.87 |
| EXPRESS LLC | 23EXWHA1444 | 699128 | 28/Dec/23 | 7,700.39 |
| EXPRESS LLC | 23EXWHB1455 | 699077 | 15/Dec/23 | 25,252.50 |
| EXPRESS LLC | 23EXWHB1456 | 699072 | 01/Dec/23 | 99.23 |
| EXPRESS LLC | 23EXWHB1458 | 699074 | 01/Dec/23 | 77.18 |
| EXPRESS LLC | 23EXWHB1459 | 699075 | 28/Dec/23 | 32,997.83 |
| EXPRESS LLC | 23EXWHB1460 | 699070 | 01/Dec/23 | 38.96 |
| EXPRESS LLC | 23EXWHB1461 | 699071 | 11/Dec/23 | 12,064.92 |
| EXPRESS LLC | 23EXWHB1462 | 699068 | 01/Dec/23 | 128.63 |
| EXPRESS LLC | 23EXWHB1463 | 699069 | 11/Dec/23 | 19,808.25 |
| EXPRESS LLC | 23EXMBE1465 | 700275 | 27/Dec/23 | 20,868.75 |
| EXPRESS LLC | 23EXMBE1466 | 698836 | 11/Dec/23 | 14,595.01 |
| EXPRESS LLC | 23EXMBE1467 | 698305 | 01/Dec/23 | 102.16 |
| EXPRESS LLC | 23EXMBE1468 | 698306 | 11/Dec/23 | 43,682.84 |
| EXPRESS LLC | 23EXMBE1469 | 698309 | 01/Dec/23 | 52.19 |
| EXPRESS LLC | 23EXMBE1470 | 698310 | 11/Dec/23 | 15,603.32 |
| EXPRESS LLC | 23EXMBE1471 | 698307 | 01/Dec/23 | 14.91 |
| EXPRESS LLC | 23EXMBE1472 | 698308 | 11/Dec/23 | 17,131.60 |
| EXPRESS LLC | 23EXMBE1473 | 700021 | 27/Dec/23 | 16,035.19 |
| EXPRESS LLC | 23EXMBE1474 | 700017 | 27/Dec/23 | 26,695.31 |
| EXPRESS LLC | 23EXWBE1476 | 702547 | 11/Dec/23 | 2,595.29 |

Exhibit 1

 Sourcing Limited

# Invoice

**Total**

# $3,187,292.61

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 23EXWBE1477 | 702545 | 11/Dec/23 | 168.53 |
| EXPRESS LLC | 23EXWBE1478 | 698383 | 01/Dec/23 | 38.96 |
| EXPRESS LLC | 23EXWBE1479 | 698384 | 11/Dec/23 | 21,108.06 |
| EXPRESS LLC | 23EXWBE1480 | 698728 | 01/Dec/23 | 11.13 |
| EXPRESS LLC | 23EXWBE1481 | 698724 | 11/Dec/23 | 9,655.28 |
| EXPRESS LLC | 23EXWBE1482 | 702549 | 27/Dec/23 | 5,448.99 |
| EXPRESS LLC | 23EXWBE1483 | 702548 | 27/Dec/23 | 168.53 |
| EXPRESS LLC | 23EXMBE1484 | 698838 | 11/Dec/23 | 20,868.75 |
| EXPRESS LLC | 23EXMBE1485 | 698837 | 11/Dec/23 | 13,466.25 |
| EXPRESS LLC | 23EXMBE1486 | 698839 | 11/Dec/23 | 20,963.04 |
| EXPRESS LLC | 23EXMBE1487 | 698840 | 11/Dec/23 | 9,765.00 |
| EXPRESS LLC | 23EXMBE1488 | 698841 | 11/Dec/23 | 16,695.01 |
| EXPRESS LLC | 23EXMBE1489 | 698843 | 11/Dec/23 | 7,947.66 |
| EXPRESS LLC | 23EXWBE1490 | 698834 | 11/Dec/23 | 5,250.00 |
| EXPRESS LLC | 23EXWBE1491 | 698833 | 11/Dec/23 | 5,302.51 |
| EXPRESS LLC | 23EXMBE1492 | 700767 | 27/Dec/23 | 3,877.02 |
| EXPRESS LLC | 23EXMBE1493 | 700760 | 27/Dec/23 | 18,573.19 |
| EXPRESS LLC | 23EXMBE1494 | 700766 | 27/Dec/23 | 8,137.50 |
| EXPRESS LLC | 23EXWBE1495 | 702550 | 01/Dec/23 | 50.57 |
| EXPRESS LLC | 23EXWUW1496 | 701856 | 01/Dec/23 | 71.20 |
| EXPRESS LLC | 23EXWUW1497 | 701858 | 01/Dec/23 | 61.12 |
| EXPRESS LLC | 23EXWUW1498 | 701864 | 01/Dec/23 | 32.45 |
| EXPRESS LLC | 23EXMHA1499 | 702569 | 01/Dec/23 | 27.78 |
| EXPRESS LLC | 23EXMHA1500 | 702567 | 01/Dec/23 | 28.52 |
| EXPRESS LLC | 23EXWHB1501 | 703269 | 27/Dec/23 | 24,141.81 |
| EXPRESS LLC | 23EXWBE1502 | 703445 | 27/Dec/23 | 22,470.00 |
| EXPRESS LLC | 23EXMHA1503 | 702573 | 01/Dec/23 | 61.00 |
| EXPRESS LLC | 23EXMHA1504 | 702571 | 01/Dec/23 | 31.61 |
| EXPRESS LLC | 23EXWBE1505 | 702566 | 27/Dec/23 | 33,206.25 |
| EXPRESS LLC | 23EXWBE1506 | 702565 | 27/Dec/23 | 28,560.00 |
| EXPRESS LLC | 23EXWHB1507 | 706317 | 25/Dec/23 | 20,028.75 |
| EXPRESS LLC | 24EXMHA1001 | 699866 | 02/Jan/24 | 5,092.50 |
| EXPRESS LLC | 24EXMBE1003 | 700064 | 15/Jan/24 | 13,466.25 |
| EXPRESS LLC | 24EXMBE1004 | 700065 | 15/Jan/24 | 12,206.25 |
| EXPRESS LLC | 24EXMBE1005 | 700063 | 15/Jan/24 | 16,695.01 |
| EXPRESS LLC | 24EXWBE1006 | 700108 | 15/Jan/24 | 6,930.00 |
| EXPRESS LLC | 24EXWBE1011 | 700101 | 01/Jan/24 | 10.50 |

Exhibit 1

 Sourcing Limited

# Invoice

## Total
# $3,187,292.61

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 24EXWBE1012 | 700102 | 15/Jan/24 | 8,914.50 |
| EXPRESS LLC | 24EXWHB1013 | 699941 | 01/Jan/24 | 223.44 |
| EXPRESS LLC | 24EXWHB1014 | 699942 | 15/Jan/24 | 34,146.00 |
| EXPRESS LLC | 24EXWHB1015 | 700252 | 01/Jan/24 | 36.75 |
| EXPRESS LLC | 24EXWHB1016 | 700253 | 15/Jan/24 | 18,338.25 |
| EXPRESS LLC | 24EXWBE1017 | 701719 | 15/Jan/24 | 175.09 |
| EXPRESS LLC | 24EXWBE1018 | 701717 | 15/Jan/24 | 5,862.42 |
| EXPRESS LLC | 24EXWUW1020 | 701857 | 09/Jan/24 | 24,845.32 |
| EXPRESS LLC | 24EXWUW1021 | 701859 | 09/Jan/24 | 22,855.17 |
| EXPRESS LLC | 24EXWUW1023 | 701865 | 09/Jan/24 | 8,749.34 |
| EXPRESS LLC | 24EXMHA1025 | 702574 | 09/Jan/24 | 11,268.50 |
| EXPRESS LLC | 24EXMHA1027 | 702572 | 09/Jan/24 | 4,031.90 |
| EXPRESS LLC | 24EXMHA1028 | 702570 | 09/Jan/24 | 5,528.82 |
| EXPRESS LLC | 24EXMHA1029 | 702568 | 09/Jan/24 | 6,082.48 |
| EXPRESS LLC | 24EXWBE1030 | 700107 | 15/Jan/24 | 4,725.00 |
| EXPRESS LLC | 24EXWBE1032 | 700094 | 15/Jan/24 | 4,200.00 |
| EXPRESS LLC | 24EXWHB1037 | 702579 | 01/Jan/24 | 91.14 |
| EXPRESS LLC | 24EXWHB1059 | 703583 | 01/Jan/24 | 126.42 |
| EXPRESS LLC | 24EXWHB1061 | 703749 | 01/Jan/24 | 95.18 |
| EXPRESS LLC | 24EXWHB1038 | 702580 | 19/Feb/24 | 23,995.86 |
| EXPRESS LLC | 24EXMBE1044 | 704080 | 19/Feb/24 | 37,563.76 |
| EXPRESS LLC | 24EXMBE1045 | 704078 | 19/Feb/24 | 10,437.01 |
| EXPRESS LLC | 24EXMBE1046 | 704082 | 19/Feb/24 | 7,822.50 |
| EXPRESS LLC | 24EXMBE1047 | 704083 | 19/Feb/24 | 7,811.06 |
| EXPRESS LLC | 24EXMBE1048 | 704081 | 19/Feb/24 | 12,206.26 |
| EXPRESS LLC | 24EXMBE1049 | 704079 | 19/Feb/24 | 27,057.46 |
| EXPRESS LLC | 24EXMBE1050 | 704073 | 19/Feb/24 | 14,595.01 |
| EXPRESS LLC | 24EXMBE1051 | 704074 | 19/Feb/24 | 18,243.76 |
| EXPRESS LLC | 24EXMBE1052 | 704075 | 19/Feb/24 | 3,727.51 |
| EXPRESS LLC | 24EXMBE1053 | 704076 | 19/Feb/24 | 8,347.51 |
| EXPRESS LLC | 24EXMBE1054 | 704077 | 19/Feb/24 | 22,443.75 |
| EXPRESS LLC | 24EXWBE1055 | 704125 | 19/Feb/24 | 4,200.00 |
| EXPRESS LLC | 24EXWBE1056 | 704126 | 19/Feb/24 | 7,875.00 |
| EXPRESS LLC | 24EXWBE1057 | 704124 | 19/Feb/24 | 5,512.51 |
| EXPRESS LLC | 24EXWBE1058 | 704121 | 19/Feb/24 | 5,040.00 |
| EXPRESS LLC | 24EXWHB1060 | 703584 | 19/Feb/24 | 33,284.58 |
| EXPRESS LLC | 24EXWHB1062 | 703750 | 19/Feb/24 | 27,099.82 |

Exhibit 1

 Sourcing Limited

# Invoice

## Total

# $3,187,292.61

|  | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 24EXWBE1077 | 706148 | 19/Feb/24 | 7,192.50 |
| EXPRESS LLC | 24EXWBE1008 | 699923 | 01/Mar/24 | 47.25 |
| EXPRESS LLC | 24EXWSC1039 | 700077 | 01/Mar/24 | 61.37 |
| EXPRESS LLC | 24EXWSC1040 | 700075 | 01/Mar/24 | 61.37 |
| EXPRESS LLC | 24EXWSC1041 | 700073 | 01/Mar/24 | 61.37 |
| EXPRESS LLC | 24EXWHA1101 | 708892 | 04/Mar/24 | 28.67 |
| EXPRESS LLC | 24EXMHA1002 | 698892 | 05/Mar/24 | 15,277.50 |
| EXPRESS LLC | 24EXWHA1102 | 708893 | 05/Mar/24 | 13,075.34 |
| EXPRESS LLC | 24EXWBE1009 | 699922 | 18/Mar/24 | 157.50 |
| EXPRESS LLC | 24EXWBE1010 | 699924 | 18/Mar/24 | 18,170.25 |
| EXPRESS LLC | 24EXWBE1042 | 703962 | 18/Mar/24 | 21,127.42 |
| EXPRESS LLC | 24EXWBE1043 | 704004 | 18/Mar/24 | 168.53 |
| EXPRESS LLC | 24EXMBE1063 | 705137 | 18/Mar/24 | 33,180.01 |
| EXPRESS LLC | 24EXMBE1064 | 705139 | 18/Mar/24 | 8,347.50 |
| EXPRESS LLC | 24EXMBE1065 | 705140 | 18/Mar/24 | 13,466.26 |
| EXPRESS LLC | 24EXMBE1066 | 705132 | 18/Mar/24 | 18,243.74 |
| EXPRESS LLC | 24EXMBE1067 | 705134 | 18/Mar/24 | 14,609.60 |
| EXPRESS LLC | 24EXWBE1068 | 705146 | 18/Mar/24 | 6,037.51 |
| EXPRESS LLC | 24EXWBE1069 | 705145 | 18/Mar/24 | 5,617.50 |
| EXPRESS LLC | 24EXMBE1070 | 705330 | 18/Mar/24 | 17,278.80 |
| EXPRESS LLC | 24EXMBE1071 | 705331 | 18/Mar/24 | 8,137.50 |
| EXPRESS LLC | 24EXMBE1072 | 705333 | 18/Mar/24 | 15,330.01 |
| EXPRESS LLC | 24EXMBE1073 | 705332 | 18/Mar/24 | 21,202.65 |
| EXPRESS LLC | 24EXMBE1074 | 705334 | 18/Mar/24 | 7,041.46 |
| EXPRESS LLC | 24EXWBE1075 | 705697 | 18/Mar/24 | 12,075.00 |
| EXPRESS LLC | 24EXWBE1076 | 705699 | 18/Mar/24 | 9,733.51 |
|  |  |  |  | 3,187,292.61 |

Exhibit 2

 Sourcing Limited

# Debit Note

**Total**

## $8,230.61

| Date | Description | Amount |
|------|-------------|--------|
| 2023/10/19 | materials fee of cancellation order | 2,924.61 |
| 2023/10/27 | materials fee of cancellation order | 620.00 |
| 2024/5/13 | materials fee of cancellation order | 4,686.00 |
| | | 8,230.61 |

Exhibit 3

 Sourcing Limited

# Invoice

**Total**

# $287,595.16

|  | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 24EXWUW1022 | 701860 | 02/Apr/24 | 5,092.50 |
| EXPRESS LLC | 24EXWSC1033 | 700078 | 09/Apr/24 | 4,322.38 |
| EXPRESS LLC | 24EXWSC1034 | 700076 | 09/Apr/24 | 28,871.38 |
| EXPRESS LLC | 24EXWSC1035 | 700074 | 09/Apr/24 | 17,473.63 |
| EXPRESS LLC | 24EXWHB1036 | 699073 | 03/Apr/24 | 26,124.53 |
| EXPRESS LLC | 24EXMBE1078 | 706488 | 10/Apr/24 | 8,137.50 |
| EXPRESS LLC | 24EXMBE1079 | 706487 | 10/Apr/24 | 15,025.50 |
| EXPRESS LLC | 24EXMBE1080 | 706483 | 10/Apr/24 | 7,455.00 |
| EXPRESS LLC | 24EXMBE1081 | 706484 | 10/Apr/24 | 15,330.00 |
| EXPRESS LLC | 24EXMBE1082 | 706476 | 10/Apr/24 | 18,243.75 |
| EXPRESS LLC | 24EXMBE1083 | 706479 | 10/Apr/24 | 28,901.25 |
| EXPRESS LLC | 24EXMBE1084 | 706478 | 10/Apr/24 | 13,466.25 |
| EXPRESS LLC | 24EXMBE1085 | 706477 | 10/Apr/24 | 8,347.50 |
| EXPRESS LLC | 24EXWHB1086 | 706653 | 04/Mar/24 | 91.88 |
| EXPRESS LLC | 24EXWHB1087 | 706654 | 25/Mar/24 | 28,783.13 |
| EXPRESS LLC | 24EXWBE1095 | 709265 | 10/Apr/24 | 28,665.00 |
| EXPRESS LLC | 24EXWBE1103 | 709314 | 01/May/24 | 46.78 |
| EXPRESS LLC | 24EXWBE1104 | 709315 | 13/May/24 | 22,822.22 |
| EXPRESS LLC | 24EXWBE1105 | 709310 | 01/May/24 | 10.40 |
| EXPRESS LLC | 24EXWBE1106 | 709311 | 13/May/24 | 10,384.61 |
|  |  |  |  | 287,595.16 |

1 of 1

| | Invoice Number | PO No. | Ship Date | Amount |
|---|---|---|---|---|
| EXPRESS LLC | 24EXMHA1001 | 699866 | 02/Jan/24 | 5 092 50 |
| EXPRESS LLC | 24EXMBE1003 | 700064 | 15/Jan/24 | 13 466 25 |
| EXPRESS LLC | 24EXMBE1004 | 700065 | 15/Jan/24 | 12 206 25 |
| EXPRESS LLC | 24EXMBE1005 | 700063 | 15/Jan/24 | 16 695 01 |
| EXPRESS LLC | 24EXWBE1006 | 700108 | 15/Jan/24 | 6 930 00 |
| EXPRESS LLC | 24EXWBE1011 | 700101 | 21/Jan/24 | 10 50 |
| EXPRESS LLC | 24EXWBE1012 | 700102 | 15/Jan/24 | 8 914 50 |
| EXPRESS LLC | 24EXWHB1013 | 699941 | 01/Jan/24 | 223 44 |
| EXPRESS LLC | 24EXWHB1014 | 699942 | 15/Jan/24 | 34 146 00 |
| EXPRESS LLC | 24EXWHB1015 | 700252 | 21/Jan/24 | 36 75 |
| EXPRESS LLC | 24EXWHB1016 | 700253 | 15/Jan/24 | 18 338 25 |
| EXPRESS LLC | 24EXWBE1017 | 701719 | 15/Jan/24 | 175 09 |
| EXPRESS LLC | 24EXWBE1018 | 701717 | 15/Jan/24 | 5 862 42 |
| EXPRESS LLC | 24EXWJWV1020 | 701857 | 09/Jan/24 | 24 845 32 |
| EXPRESS LLC | 24EXWJWV1021 | 701859 | 09/Jan/24 | 22 855 17 |
| EXPRESS LLC | 24EXWJWV1023 | 701865 | 09/Jan/24 | 8 749 34 |
| EXPRESS LLC | 24EXMHA 1025 | 702574 | 09/Jan/24 | 11 268 50 |
| EXPRESS LLC | 24EXMHA 1027 | 702572 | 09/Jan/24 | 4 031 90 |
| EXPRESS LLC | 24EXMHA 1028 | 702570 | 09/Jan/24 | 5 528 82 |
| EXPRESS LLC | 24EXMHA 1029 | 702568 | 09/Jan/24 | 6 082 48 |
| EXPRESS LLC | 24EXWBE1030 | 700107 | 15/Jan/24 | 4 725 00 |
| EXPRESS LLC | 24EXWBE1032 | 700094 | 15/Jan/24 | 4 200 00 |
| EXPRESS LLC | 24EXWHB1037 | 702579 | 01/Jan/24 | 91 14 |
| EXPRESS LLC | 24EXWHB1059 | 703583 | 01/Jan/24 | 126 42 |
| EXPRESS LLC | 24EXWHB1061 | 703749 | 01/Jan/24 | 95 18 |
| EXPRESS LLC | 24EXWHB1038 | 702580 | 19/Feb/24 | 23 995 86 |
| EXPRESS LLC | 24EXMBE1044 | 704080 | 19/Feb/24 | 37 563 76 |
| EXPRESS LLC | 24EXMBE1045 | 704078 | 19/Feb/24 | 10 437 01 |
| EXPRESS LLC | 24EXMBE1046 | 704082 | 19/Feb/24 | 7 822 50 |
| EXPRESS LLC | 24EXMBE1047 | 704083 | 19/Feb/24 | 7 811 06 |
| EXPRESS LLC | 24EXMBE1048 | 704081 | 19/Feb/24 | 12 206 26 |
| EXPRESS LLC | 24EXMBE1049 | 704079 | 19/Feb/24 | 27 057 46 |
| EXPRESS LLC | 24EXMBE1050 | 704073 | 19/Feb/24 | 14 595 01 |
| EXPRESS LLC | 24EXMBE1051 | 704074 | 19/Feb/24 | 18 243 76 |
| EXPRESS LLC | 24EXMBE1052 | 704075 | 19/Feb/24 | 3 727 51 |
| EXPRESS LLC | 24EXMBE1053 | 704076 | 19/Feb/24 | 8 347 51 |
| EXPRESS LLC | 24EXMBE1054 | 704077 | 19/Feb/24 | 22 443 75 |
| EXPRESS LLC | 24EXWBE1055 | 704125 | 19/Feb/24 | 4 200 00 |
| EXPRESS LLC | 24EXWBE1056 | 704126 | 19/Feb/24 | 7 875 00 |
| EXPRESS LLC | 24EXWBE1057 | 704124 | 19/Feb/24 | 5 512 51 |
| EXPRESS LLC | 24EXWBE1058 | 704121 | 19/Feb/24 | 5 040 00 |
| EXPRESS LLC | 24EXWHB1060 | 703584 | 19/Feb/24 | 33 284 58 |
| EXPRESS LLC | 24EXWHB1062 | 703750 | 19/Feb/24 | 27 099 82 |
| EXPRESS LLC | 24EXWBE1077 | 706148 | 19/Feb/24 | 7 192 50 |
| EXPRESS LLC | 24EXWBE1008 | 699923 | 01/Mar/24 | 47 25 |
| EXPRESS LLC | 24EXWSC1039 | 700077 | 01/Mar/24 | 61 37 |
| EXPRESS LLC | 24EXWSC1040 | 700075 | 01/Mar/24 | 61 37 |
| EXPRESS LLC | 24EXWSC1041 | 700073 | 01/Mar/24 | 61 37 |
| EXPRESS LLC | 24EXWHA1101 | 708892 | 04/Mar/24 | 28 67 |
| EXPRESS LLC | 24EXMHA1002 | 698892 | 05/Mar/24 | 15 277 50 |
| EXPRESS LLC | 24EXWHA1102 | 708893 | 05/Mar/24 | 13 075 34 |
| EXPRESS LLC | 24EXWBE1009 | 699922 | 18/Mar/24 | 157 50 |
| EXPRESS LLC | 24EXWBE1010 | 699924 | 18/Mar/24 | 18 170 25 |
| EXPRESS LLC | 24EXWBE1042 | 703962 | 18/Mar/24 | 21 127 42 |
| EXPRESS LLC | 24EXWBE1043 | 704004 | 18/Mar/24 | 168 53 |
| EXPRESS LLC | 24EXMBE1063 | 705137 | 18/Mar/24 | 33 180 01 |
| EXPRESS LLC | 24EXMBE1064 | 705139 | 18/Mar/24 | 8 347 50 |
| EXPRESS LLC | 24EXMBE1065 | 705140 | 18/Mar/24 | 13 466 26 |
| EXPRESS LLC | 24EXMBE1066 | 705132 | 18/Mar/24 | 18 243 74 |
| EXPRESS LLC | 24EXMBE1067 | 705134 | 18/Mar/24 | 14 609 60 |
| EXPRESS LLC | 24EXWBE1068 | 705146 | 18/Mar/24 | 6 037 51 |
| EXPRESS LLC | 24EXWBE1069 | 705145 | 18/Mar/24 | 5 617 50 |
| EXPRESS LLC | 24EXMBE1070 | 705330 | 18/Mar/24 | 17 278 80 |

| EXPRESS LLC | 24EXMBE1071 | 705331 | 18/Mar/24 | 8.137.50 |
| EXPRESS LLC | 24EXMBE1072 | 705333 | 18/Mar/24 | 15.330.01 |
| EXPRESS LLC | 24EXMBE1073 | 705332 | 18/Mar/24 | 21.202.65 |
| EXPRESS LLC | 24EXMBE1074 | 705334 | 18/Mar/24 | 7.041.46 |
| EXPRESS LLC | 24EXWBE1075 | 705697 | 18/Mar/24 | 12.075.00 |
| EXPRESS LLC | 24EXWBE1076 | 705699 | 18/Mar/24 | 9.733.51 |
| | | | | 757.689.71 |

| Date | Amount | Description |
|---|---|---|
| 5/13/2024 | 4,686.00 | materials fee of cancellation order |
| Total | 4,686.00 | |



## RUSKINMOSCOUFALTISCHEK p.c.

*Counselors at Law*

Writer's Direct Dial: (516) 663-6638
Writer's Direct Fax: (516) 663-6838
Writer's E-Mail: sgiugliano@rmfpc.com

June 25, 2024

### By Fedex

Express, Inc., et al. Claims Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

Re:  *In re Express Inc., et al.*
 Case No. 24-10831 (KBO), U.S. Bankruptcy Court for District of Delaware
 Proof of Claim of Tote Fashion Sourcing Limited

Dear Sir/Madam,

This firm is counsel to Tote Fashion Sourcing Limited (the "Claimant"), creditor to Express, LLC (the "Debtor") in Chapter 11 Case No. 24-10835 (KBO), which is jointly administered with the above-referenced Chapter 11 case.

With this letter, the Claimant hereby serves its proof of claim (the "Proof of Claim") against the Debtor. To this end, enclosed is the Claimant's original signed Proof of Claim form and supporting documentation.

This office requests Stretto's acknowledgment of receipt of service of the Proof of Claim. Accordingly, additionally enclosed are (1) a copy of the Claimant's signed Proof of Claim form and (2) a self-addressed stamped envelope. Please return the stamped Proof of Claim in the self-addressed stamped envelope.

Very truly yours,

/s/ *Sheryl P. Giugliano*
SHERYL P. GIUGLIANO
For the Firm

Enclosures

1030330

ORIGIN ID:RMEA    (516) 663-6600
NICOLAS FLORIO
RUSKIN MOSCOU FALTISCHEK P.C.
EAST TOWER, 15TH FLOOR
1425 RXR PLAZA
UNIONDALE, NY 11556
UNITED STATES US

SHIP DATE: 25JUN24
ACTWGT: 1.00 LB
CAD: 253607601/INET4535
DIMS: 12x10x1 IN

BILL SENDER

TO **EXPRESS, INC., CLAIMS PROCESSING**
**C/O STRETTO**
**410 EXCHANGE, SUITE 100**

**IRVINE CA 92602**
(516) 663-6600          REF: 199150000001
INV
PO                                    DEPT

 

FedEx
Express

WED – 26 JUN 10:30A
PRIORITY OVERNIGHT

TRK# 7770 5801 0500
0201

92602
CA-US  SNA

**NW DTHA**



After printing this label:
CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

ORIGIN ID:RMEA   (516) 663-6600
SHERYL P. GIUGLIANO
RUSKIN MOSCOU FALTISCHEK P.C.
1425 RXR PLAZA
EAST TOWER, 15TH FLOOR
UNIONDALE, NY 11556
UNITED STATES US

SHIP DATE: 13AUG24
ACTWGT: 0.25 LB
CAD: 253607601/INET4535

BILL SENDER

TO **EXPRESS, INC., ET AL. CLAIMS**
**C/O STRETTO**
**410 EXCHANGE, SUITE 100**

**IRVINE CA 92602**
(855) 337-3537          REF: 19915:1
INV:
PO:                          DEPT:





FedEx
Express

WED - 14 AUG 5:00P
STANDARD OVERNIGHT

TRK# 7779 5412 7552
0201

**XW DTHA**

92602
CA-US  SNA



After printing this label:
CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.