## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXP OldCo Winddown, Inc., *et al.*, [1] | Case No. 24-10831 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: March 7, 2025 at 4:00 p.m. (ET)** |
| | **Hearing Date: March 27, 2025 at 9:30 a.m. (ET)** |

**SUMMARY OF CONSOLIDATED SEVENTH MONTHLY AND FINAL FEE APPLICATION OF KRAMER LEVIN NAFTALIS & FRANKEL LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE (I) MONTHLY PERIOD FROM NOVEMBER 1, 2024 THROUGH DECEMBER 17, 2024 AND (II) FINAL PERIOD FROM MAY 6, 2024 THROUGH DECEMBER 17, 2024**

| | |
|---|---|
| Name of Applicant | Kramer Levin Naftalis & Frankel LLP |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors |
| Date of Retention Order: | June 24, 2024, effective as of May 6, 2024 |
| Monthly Period for which compensation and reimbursement is sought: | November 1, 2024 through December 17, 2024 |
| Total compensation sought for the monthly period: | $708,959.00 |
| Total expenses sought the monthly period: | $1,592.43 |
| Final Period for which compensation and reimbursement is sought: | May 6, 2024 through December 17, 2024 |
| Total compensation sought for the final period: | $3,840,093.50 |
| Total expenses sought for the final period: | $11,157.33 |
| Total compensation approved by interim order to date: | $3,131,134.50 |
| Total expenses approved by interim order to date: | $9,564.90 |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128); Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

| | |
|---|---|
| Total allowed compensation paid to date: | $3,131,134.50 |
| Total allowed expenses paid to date: | $9,564.90 |
| Blended rate in this Application for all attorneys: | $1,481 |
| Blended rate in this Application for all timekeepers: | $1,435 |
| Compensation sought in this application already paid pursuant to an interim compensation order, but not yet allowed: | $0.00 |
| Expenses sought in this application already paid pursuant to an interim compensation Order, but not yet allowed: | $0.00 |
| Number of professionals included in this Application: | 17 |
| Number of professionals billing fewer than 15 hours to the case during this period: | 6 |
| If applicable, number of professionals in this application not included in staffing plans: | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period: | $129,541 below budgeted amount |
| Any rate increases during this period? | No[2] |
| **This is a(n):**      _X_ monthly application      _X_ final application | |

---

[2] All hourly rates are adjusted by Kramer Levin on a periodic basis (the last such adjustment occurred in January 2024). The rates for certain associates working on this matter increased as of September 1, 2024, in connection with the associates' yearly step-up in seniority, but this annual step-up is not considered a "rate increase" as the billing rate among the applicable associate class does not change.

Previous Monthly Applications:

| Monthly Fee Application Filing Date & Docket No. | Period Covered | Total Fees Requested | Total Expenses Requested | CNO Filing Date & Docket No. | Amount of Fees Authorized to be Paid | Amount of Expenses Authorized to be Paid |
|---|---|---|---|---|---|---|
| 7/3/2024 [D.I. 568] | May 6, 2024 – May 31, 2024 | $764,241.50 | $2,354.71 | 7/25/2024 [D.I. 643] | $764,241.50 | $2,354.71 |
| 7/29/2024 [D.I. 661] | June 1, 2024 – June 30, 2024 | $483,269.50 | $503.47 | 8/20/2024 [D.I.730] | $483,269.50 | $503.47 |
| 8/27/2024 [D.I. 744] | July 1, 2024 – July 31, 2024 | $326,121.50 | $458.50 | 9/18/2024 [D.I. 826] | $326,121.50 | $458.50 |
| 10/23/2024 [D.I. 918] | August 1, 2024 – August 31, 2024 | $258,561.00 | $542.10 | 11/14/2024 [D.I. 996] | $258,561.00 | $542.10 |
| 11/12/]2024 [D.I. 982] | September 1, 2024 – September 30, 2024 | $441,759.50 | $1,618.85 | 12/4/2024 [D.I. 1072] | $441,759.50 | $1,618.85 |
| 11/15/2024 [D.I. 999] | October 1, 2024 – October 31, 2024 | $857,181.50 | $4,087.27 | 12/9/2024 [D.I. 1100] | $857,181.50 | $4,087.27 |
| **TOTALS** | | **$3,131,134.50** | **$9,564.90** | | **$3,131,134.50** | **$9,564.90** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| EXP OldCo Winddown, Inc., *et al.*, [1] | Case No. 24-10831 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: March 7, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: March 27, 2025 at 9:30 a.m. (ET)** |

**CONSOLIDATED SEVENTH MONTHLY AND FINAL FEE APPLICATION OF
KRAMER LEVIN NAFTALIS & FRANKEL LLP, AS CO-COUNSEL TO THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR
THE (I) MONTHLY PERIOD FROM NOVEMBER 1, 2024 THROUGH DECEMBER 17,
2024 AND (II) FINAL PERIOD FROM MAY 6, 2024 THROUGH DECEMBER 17, 2024**

Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Express, Inc. and its related and affiliated entities, hereby submits this consolidated seventh monthly and final fee application (the "Application"), pursuant to (a) 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and Del. Bankr. L.R. 2016-2, (b) the Court's *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Dkt. No. 223] (the "Interim Compensation Order"), (c) the *United States Trustee's Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"), and (d) the *Findings of Fact, Conclusions of Law, and*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are EXP OldCo Winddown, Inc. (8128); Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is One Express Drive, Columbus, Ohio 43230.

*Order Confirming the Joint Chapter 11 Plan of Exp OldCo Winddown, Inc. and Its Debtor Affiliates* [Dkt. No. 1150] (the "<u>Confirmation Order</u>").

By this Application, Kramer Levin seeks (i) monthly allowance of compensation in the amount of $708,959.00 and reimbursement of expenses in the amount of $1,592.43 for the period from November 1, 2024 through December 17, 2024 (the "<u>Monthly Compensation Period</u>"), and (ii) final allowance of compensation in the amount of $3,840,093.50 and reimbursement of expenses in the amount of $11,157.33 for the period from May 6, 2024 through December 17, 2024 (the "<u>Final Compensation Period</u>").[2]    In support thereof, Kramer Levin respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B).

2.    Venue of this proceeding and this Application is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3.    On April 22, 2024, (the "<u>Petition Date</u>"), the above-captioned debtors (the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively the "<u>Chapter 11 Cases</u>").  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

4.    The Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Case.

---

[2] Total compensation for the Final Compensation Period reflects a voluntary reduction of $494,330.50 in fees and $8,185.57 in expenses.

5.    On May 3, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee"), pursuant to sections 1102(a) and (b) of Title 11 of the Bankruptcy Code, appointed the Committee. The members of the Committee are: (i) Li & Fung (Trading) Limited, (ii) Manchu Times Fashion Limited, (iii) Jorge Chacon, (iv) Pacific Buying & Marketing Service, Ltd., (v) Radial, Inc., (vi) Motives International (Hong Kong) Limited and Motives International Limited, and (vii) The Macerich Company.

6.    At a meeting held on May 6, 2024, the Committee, among other things, voted to retain Kramer Levin as its as counsel, and soon thereafter Saul Ewing LLP was selected to serve as co-counsel to the Committee.

7.    On June 5, 2024, the Committee filed the *Application of the Official Committee of Unsecured Creditors, Pursuant to Sections 328 and 1103 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014, for an Order Approving the Retention and Employment of Kramer Levin Naftalis & Frankel LLP as Co-Counsel to the Official Committee of Unsecured Creditors Effective as of May 6, 2024* [Dkt. Nos. 407 and 409] (the "Retention Application").  On June 24, 2024, the Court entered an order authorizing such retention, effective as of May 6, 2024 [Dkt. No. 532].

8.    On May 14, 2024, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these Chapter 11 Cases [Dkt. No. 223].

9.    On December 17, 2024, the Court entered the Confirmation Order.  The effective date of the Plan occurred on December 31, 2024 [Dkt. No. 1190] (the "Effective Date").

## PRELIMINARY STATEMENT

10.    The Committee achieved a successful outcome in these Chapter 11 Cases, maximizing recovery for all unsecured creditors while supporting the Debtors' emergence from bankruptcy as a viable going concern.  This outcome was possible because of the efforts of the Committee and its professionals, including Kramer Levin, in investigating and identifying all sources of recovery for unsecured creditors throughout the entirety of these Chapter 11 Cases.  The Committee conducted an investigation of the Debtors' assets, including potential causes of action, which uncovered valuable assets and claims that the Committee used to negotiate for better treatment of all unsecured creditors.  The Committee also negotiated substantial modifications to the Debtors' proposed DIP financing with the Debtors and the DIP lenders, reaching a consensual resolution that preserved maximal value in the Debtors' assets to be available for distribution to unsecured creditors.  Finally, the Committee diligently negotiated with the Debtors to resolve its potential objections to the Debtors' proposed Plan, ultimately reaching a consensual settlement.  As a result of these efforts, the Committee was able to offer its support of the Debtors' Plan at the confirmation hearing in December 2024.

11.    Kramer Levin, working efficiently and effectively with its co-counsel, Saul Ewing LLP, led the Committee in all these endeavors, and respectfully submits that it was necessary to expend effort, energy, and time—as detailed in the time records—on the nuanced analyses, negotiations, and participation in numerous transactions required to effectively represent unsecured creditors and obtain this favorable result.

12.    Accordingly, Kramer Levin respectfully submits that its services during the Final Compensation Period (described in greater detail below) warrant approval of its requested fees and expenses.

## MONTHLY COMPENSATION PERIOD

13.     Kramer Levin seeks allowance of compensation in the amount of $708,959.00 and reimbursement of expenses in the amount of $1,592.43 for the Monthly Compensation Period. During the Monthly Compensation Period, Kramer Levin's attorneys and paraprofessionals expended a total of 492.80 hours in connection with the necessary services performed.  The related monthly fee application is attached hereto as part of **Exhibit B** and contains detailed daily time entries describing the time spent by each attorney and paraprofessional for this period.

## FINAL COMPENSATION PERIOD

14.     Kramer Levin seeks final allowance of compensation in the amount of $3,840,093.50 and reimbursement of expenses in the amount of $11,157.33 for the Final Compensation Period.  During the Final Compensation Period, Kramer Levin's attorneys and paraprofessionals expended a total of 2,708.50 hours in connection with the necessary services performed.

## SUMMARY OF SERVICES RENDERED

15.     The Committee has accomplished a substantial amount since its appointment in these Chapter 11 Cases.  The following summary highlights certain areas in which services were rendered by the Committee and identifies some of the issues to which Kramer Levin devoted significant time and effort during the Final Compensation Period.

**A.      Case Administration**
**Kramer Levin Billing Code: 101**
**(Fees: $67,874.50 / 64.60 Hours Billed:)**

16.     Kramer Levin devoted time to administrative tasks necessary to enable the Committee to efficiently fulfill its statutory oversight role, including, but not limited to: (i) maintaining a works-in-progress report detailing the status of pending items; (ii) conducting internal organizational meetings; (iii) monitoring calendars of critical dates and deadlines; (iv)

coordinating conferences and meetings with Committee members and professionals; (v) conducting routine correspondence with the Committee professionals; (vi) maintaining, updating, and reviewing files in connection with the data room the Debtors created to share documents with the Committee; and (vii) undertaking foundational tasks to organize the Committee, including drafting its by-laws and assisting the Committee in choosing its other professionals.

17.    To manage costs of performing the above tasks, Kramer Levin utilized paraprofessionals to perform administrative non-legal tasks whenever possible.    Such paraprofessional fees were incurred directly in connection with administration of the case, and were necessary and appropriate in connection with the Committee's role in these Chapter 11 Cases.

18.    Additionally, in the early stages of the case, Kramer Levin negotiated a protective order/confidentiality agreement that—together with the Committee's by-laws that Kramer Levin drafted—set the parameters for the Debtors' exchange of information with the Committee.

## B.    Meetings/Communications with UCC Members and Advisors
### Kramer Levin Billing Code: 102
**(Fees: $799,360.50 / 530.00 Hours Billed:)**

19.    Throughout the Final Compensation Period, the Committee generally held Committee calls at least once a week (as well as additional calls more frequently as necessary). The general purpose of these telephonic meetings was to keep the Committee sufficiently informed of all material developments and current issues in these Chapter 11 Cases, and to discuss, analyze, and vote on Committee positions with respect to matters requiring the Committee's input. Committee meetings often required preparation by Kramer Levin professionals and, at times, lasted more than an hour.  Many Committee meetings and preparatory meetings among the Kramer Levin and other professionals were necessary for, and part of, discussions of case strategy to maximize recoveries for unsecured creditors.

20.     Kramer Levin coordinated with the Committee's other professionals and the Committee members for these calls, including drafting and setting agendas and preparing and reviewing materials for presentation to the Committee.  In several of these weekly Committee calls, the Debtors' professionals, including Kramer Levin, prepared robust PowerPoint presentations outlining critical issues facing the Committee that week and possible courses of action to address these issues.

21.     Committee meetings also often required internal pre- and post-meeting conferences to prepare for and/or discuss follow-up items discussed during the Committee meetings. Frequently, due to the number and complexity of items on the agenda for a given Committee meeting, the participation of multiple professionals was necessary to ensure that Kramer Levin could be responsive to Committee members' questions as they arose.

22.     Kramer Levin also participated in numerous conference calls and emails with individual Committee members and other Committee advisors (during certain time periods of the case, on a daily basis) to address any issues that arose and discuss developments specific to these particular constituents.

23.     In addition, Kramer Levin provided the Committee with detailed email updates concerning recently filed pleadings, material issues and developments, status of negotiations and other related developments, and other items relevant to these Chapter 11 Cases.  The update emails often included (i) analyses conducted by Kramer Levin and the Committee's other professionals of relief requested by the Debtors and documents that were the subject of negotiations with the Debtors or other parties-in-interest and (ii) recommendations as to how the Committee should proceed with respect to pending motions or negotiations.

24.     Kramer Levin also collaborated with the Committee to facilitate the appointment of a plan administrator to oversee the post-Effective Date implementation and execution of the Plan.

**C.      Meetings/Communications with Debtors and Advisors**
         **Kramer Levin Billing Code: 103**
         **(Fees: $96,563.00 / 65.20 Hours Billed:)**

25.     Throughout the Final Compensation Period, Kramer Levin prepared for and participated in numerous telephonic meetings and conferences with the Debtors and their advisors, as well as frequent calls and email correspondence with the Debtors and their advisors to address issues of the case as they arose.  These communications helped to coordinate efforts between the Committee and Debtors where appropriate, negotiate resolutions to outstanding issues concerning the Committee, and facilitate the efficient movement of these Chapter 11 Cases through the chapter 11 process.

**D.      Motions, Adversary Proceedings & Contested Matters**
         **Kramer Levin Billing Code: 104**
         **(Fees: $88,648.00 / 65.00 Hours Billed:)**

26.     At the outset of these Chapter 11 Cases, Kramer Levin dedicated time in connection with the Debtors' "first day" and "second day" motions.  This included time reviewing and analyzing the relief sought in these motions, researching legal issues related thereto, summarizing and communicating key issues to the Committee, and coordinating with the Debtors and U.S. Trustee to consensually resolve these issues arising under the "first day" and "second day" motions and subsequent orders.  Kramer Levin also spent time drafting the *Limited Joinder of the Official Committee of Unsecured Creditors to the Omnibus Reply of Debtors (I) in Support of First Day Motions and (II) in Opposition to (A) Motion of Mr. Kurzon for Appointment of a Shareholders' Committee and (B) Granting Related Relief* [Dkt. No. 371].

27.     Time under this matter also includes analyzing certain other motions filed by the Debtors during the Final Compensation Period, including time spent researching related legal issues and precedent, negotiating modifications to certain orders, and corresponding with the Debtors to ensure that the interests of unsecured creditors were protected.

**E.      Collateral Review**
**Kramer Levin Billing Code: 107**
**(Fees: $8,074.00 / 7.60 Hours Billed:)**

28.     During the Final Compensation Period, Kramer Levin worked with other Committee professionals to conduct a review of collateral pledged to secure the secured creditors' claims and liens, including preparing an analysis of the secured lenders' collateral packages, status of lien perfection, and related credit documents.  This included reviewing and analyzing various jurisdictions' applicable law with respect to perfection of liens on different types of assets, as well as analysis of relevant security documents and UCC filings.  These efforts also required Kramer Levin to review thousands of pages of documents and materials that the Debtors produced to the Committee, and to coordinate with other Committee professionals concerning this review and analysis.  This in-depth undertaking equipped Kramer Levin with sufficient knowledge of the Debtors' pledged collateral to leverage in negotiations with the Debtors and secured creditors to obtain favorable treatment of all unsecured creditors.

**F.      Cash Management and DIP Financing**
**Kramer Levin Billing Code: 108**
**(Fees: $330,919.00 / 236.20 Hours Billed:)**

29.     Kramer Levin expended significant time and effort during the Final Compensation Period with respect to, among other things, communication, negotiations, review, and analysis of the Debtors' motions seeking authority to (i) operate its cash management system [Dkt. No. 12] and (ii) obtain debtor-in-possession financing at the outset of the case [Dkt. No. 24].  The Committee had initial concerns with the Debtors' proposed DIP financing and filed an objection

9

to the Debtors' DIP financing motion [Dkt. No. 304]; however, the Committee was ultimately able to negotiate a consensual settlement that resolved these concerns, which included significant modifications to the proposed DIP financing that provided meaningful protections and maximized recovery for unsecured creditors.

**G.      Creditor Communications**
         **Kramer Levin Billing Code: 109**
         **(Fees: $26,261.00 / 16.20 Hours Billed:)**

30.      Kramer Levin expended time and effort discharging its duties under section 1102 of the Bankruptcy Code by providing general information to unsecured creditors and answering specific questions, calls, and emails from unsecured creditors on a variety of issues related to the case.

**H.      Bar Date, Claims Administrations and Objections**
         **Kramer Levin Billing Code: 110**
         **(Fees: $59,883.00 / 40.10 Hours Billed:)**

31.      Kramer Levin expended time in this category in connection with claim and bar date issues, including reviewing the bar date motion, reviewing and analyzing claim reconciliations, and facilitating resolutions to claim objections.

**I.      Sale Issues**
         **Kramer Levin Billing Code: 111**
         **(Fees: $199,726.50 / 126.20 Hours Billed:)**

32.      Kramer Levin played an active role in facilitating the process for the sale and marketing of certain of the Debtors' assets.  Given the large geographic footprint of the Debtors' retail operations, diverse product and business line portfolio, and sheer number of creditor groups, including vendors and landlords, Kramer Levin's substantial involvement in the sale and marketing process was indispensable to protect the interests of unsecured creditors and maximize value of the Debtors' estates for distribution thereto.  Kramer Levin extended significant time reviewing, analyzing, marking up, and negotiating with the Debtors, the prospective purchasers,

and other key stakeholder groups for changes to the bidding procedures that the Debtors proposed in their *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets; and (VII) Granting Related Relief* [Dkt. No. 41], as well as monitoring the process the Court authorized with its order approving the bidding procedures [Dkt. No. 427], to ensure that a fair, robust marketing and sale process was conducted to maximize the value of the Debtors' assets and estates.  This also included time spent by Kramer Levin attorneys reviewing, analyzing, and discussing various sale documents and materials—including draft and form asset purchase agreements, letters of intent to participate in the bidding process, bid packages, and transition services agreements—and coordinating analysis of same with other of the Committee's professionals.  Kramer Levin also worked closely with the Committee to facilitate a smooth transition of business services and operations to the purchaser and to minimize any impact on vendor relationships.

33.     Throughout the entire sale and marketing process, Kramer Levin engaged in consistent communication with the Debtors' and prepetition secured creditors' professionals, including participation in many telephonic calls and conferences, to obtain information and coordinate on the marketing and sale process and to ensure that the sale would result in fair treatment of unsecured creditors.  In large part due to Kramer Levin's efforts, the Debtors executed a sale of certain of their assets that maximized recovery for unsecured creditors while enabling the Debtors to emerge from bankruptcy as a going concern.

**J.    Employee Matters**
**Kramer Levin Billing Code: 113**
**(Fees: $1,969.00 / 1.30 Hours Billed:)**

34.    Kramer Levin spent time in this category reviewing, analyzing, discussing and negotiating changes to the relief the Debtors requested with respect to employee compensation and benefits, including the *Debtors' Motion to Pay Employee Wages Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [Dkt. No. 5].

**K.    Executory Contracts and Unexpired Leases**
**Kramer Levin Billing Code: 114**
**(Fees: $15,957.50 / 10.70 Hours Billed:)**

35.    Kramer Levin expended time in this category during the Final Compensation Period reviewing contracts and schedules related to executory contracts and unexpired leases that the Debtors proposed to assume or to reject, as well as analyzing the potential impact of these decisions to unsecured creditors and the Debtors' estates.  In addition, Kramer Levin reviewed the Debtors' proposed assumption and rejection procedures and negotiated certain protections for unsecured creditors therein.

**L.    SOFAs and Schedules**
**Kramer Levin Billing Code: 115**
**(Fees: $7,058.50 / 4.70 Hours Billed:)**

36.    On May 30, 2024, the Debtors filed their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs").  Kramer Levin reviewed and analyzed the SOFAs and Schedules and engaged in communications with other Committee professionals in connection with the SOFAs and Schedules.

**M.**   **Hearings**
**Kramer Levin Billing Code: 116**
**(Fees: $116,196.50 / 77.50 Hours Billed:)**

37.     Kramer Levin expended time in this category preparing for and participating in the many hearings held over the course of the Chapter 11 Cases.  This category also includes time corresponding with the Debtors and other parties and coordinating hearing logistics.  In connection with certain of these hearings, Kramer Levin prepared certain pleadings and talking points on behalf of the Committee.  In addition, Kramer Levin drafted hearing summaries for delivery to the Committee after every hearing.

**N.**   **Disclosure Statement, Plan, Confirmation, Emergence, Wind Down**
**Kramer Levin Billing Code: 118**
**(Fees: $1,204,351.50 / 823.90 Hours Billed:)**

38.     Kramer Levin spent significant time in connection with disputed matters related to approval of the Debtors' Disclosure Statement and confirmation of the Debtors' Plan.  This includes time spent reviewing, analyzing, and marking up the Debtors' Disclosure Statement and Plan drafts as well negotiating certain provisions therein for the benefit of unsecured creditors.

39.     In the weeks prior to the confirmation hearing, the Committee determined that the Debtors' proposed Disclosure Statement did not provide unsecured creditors with adequate information to make an informed Plan voting decision.  Similarly, the Committee determined that the Debtors' proposed Plan did not adequately protect the interests of unsecured creditors.  Therefore, Kramer Levin engaged in extensive negotiations with the Debtors that were successful in yielding changes to the Disclosure Statement and the Plan that maximized recovery for unsecured creditors and ensured that all unsecured creditors would receive equitable treatment.

40.     Simultaneously, to protect unsecured creditors in the event that the Committee could not reach a consensual resolution with the Debtors with respect to the Committee's concerns with the Disclosure Statement and Plan, Kramer Levin prepared for non-consensual confirmation

proceedings.  This included, among other things, preparing and filing the *Official Committee of Unsecured Creditors' (I) Objection to the Debtors' Motion to Extend Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof and (II) Cross-Motion to Terminate Exclusivity for the Committee* [Dkt. No. 692].  Preparation for this pleading included researching case law and precedent disclosure statements and plans.  Kramer Levin worked tirelessly with the Debtors to arrive at a consensual resolution to this contested issue that protected the interests of unsecured creditors to the maximum extent possible.

41.    Kramer Levin's work was necessary to protect the interests of unsecured creditors in the event that the Committee did not reach an acceptable consensual resolution of its outstanding issues.  The collaborative efforts of Kramer Levin, the Committee, and the other Committee professionals ultimately led to a favorable and consensual resolution of the Committee's potential objections and a consensual Disclosure Statement approval and Plan confirmation hearing, which the Committee, on behalf of unsecured creditors, determined was in the best interests of unsecured creditors.

42.    Kramer Levin also played an active role in negotiating and facilitating certain aspects of the post-confirmation wind down process, including selecting a plan administrator and oversight committee, drafting a plan administrator agreement, and reviewing, analyzing, and negotiating the Debtors' proposed wind down budget.

**O.    UCC Retention and Fee Matters**
      **Kramer Levin Billing Code: 119**
      **(Fees: $146,051.00 / 172.50 Hours Billed:)**

43.    Kramer Levin professionals extended time preparing and reviewing Kramer Levin's Retention Application, as well as reviewing the retention applications for other Committee professionals to ensure compliance with federal bankruptcy law and regulations.

44.     During the Final Compensation Period, Kramer Levin spent time drafting and preparing Kramer Levin's Monthly Fee Statements, including reviewing each statement for privilege and confidentiality concerns and for adherence to the U.S. Trustee Guidelines.  Kramer Levin also spent time drafting and preparing Kramer Levin's interim fee applications.  Whenever possible, Kramer Levin used paraprofessionals or junior associates for initial review and preparation of monthly fee statements.  Kramer Levin also reviewed and commented on the monthly fee statements and fee applications of other Committee professionals.

**P.     Debtor Retention and Fee Matters**
**Kramer Levin Billing Code: 120**
**(Fees: $16,858.50 / 11.00 Hours Billed:)**

45.     Kramer Levin expended time and effort reviewing the Debtors' applications to retain counsel and various other professionals.  Such review was necessary to ensure that these applications complied with applicable legal requirements, the proposed professionals were necessary to the Debtors' continued operations during these Chapter 11 Cases, and the terms of the professionals' employment and compensation were appropriate and minimized waste of the Debtors' assets.  While the Committee had initial concerns with the proposed compensation arrangements for certain of the Debtors' professionals, Kramer Levin collaborated with the Debtors to successfully achieve a consensual resolution of those concerns.

**Q.     Tax Matters**
**Kramer Levin Billing Code: 121**
**(Fees: $33,448.00 / 22.60 Hours Billed:)**

46.     In connection with the Debtors "first day" *Motion of Debtors for Entry of Interim and Final Orders Approving Notification and Hearing Procedures for Certain Transfers of and Declarations of Worthlessness with Respect to Common Stock* [Dkt. No. 8], Kramer Levin spent time analyzing the potential value of any net operating loss carryforwards and other potentially valuable tax attributes.  Kramer Levin also spent time analyzing tax issues related to other filings,

including in the Debtors' "first day" *Motion of Debtors for Entry of Interim and Final Orders Authorizing the (I) Payment of Certain Taxes and Fees and (II) Undertaking of Tax Planning Activities* [Dkt. No. 7].

**R.     Non-Working Travel**
        **Kramer Levin Billing Code: 122**
        **(Fees: $2,782.50 / 3.00 Hours Billed:)**

47.     This category includes all non-working travel time.  All non-working travel time is billed at 50% of the professional's billing rate.

**S.     Vendor and Supplier Matters**
        **Kramer Levin Billing Code: 124**
        **(Fees: $75,376.00 / 45.70 Hours Billed:)**

48.     At the onset of these Chapter 11 Cases, Kramer Levin spent time reviewing and analyzing the Debtors' "first day" *Motion of Debtors Seeking Entry of Interim and Final Orders (I) Authorizing  Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Certain Foreign Vendors, (C) Certain Lien Claimants, (D) 503(B)(9) Claimants, and (E) PACA Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* [Dkt. No. 6] to determine the impact of the relief requested on the Debtors' critical trade vendors, several of whom served on the Committee.

49.     Throughout these Chapter 11 Cases, Kramer Levin consistently corresponded with the Committee, including many calls and emails, to answer their questions and discuss key issues of these Chapter 11 Cases facing the Committee's vendor and supplier constituents.  This included, among other things, ensuring a smooth transition of operations and services provided by these vendors and suppliers to the purchaser of certain of the Debtors' assets in connection with the Debtors' asset sale and marketing process.  Kramer Levin also negotiated provisions in the DIP budget that protected the interests of critical vendors and suppliers.

**T.    Investigations**
     <u>**Kramer Levin Billing Code: 126**</u>
     **(Fees: $541,436.50 / 383.80 Hours Billed:)**

50.     Immediately after its appointment, the Committee undertook a comprehensive investigation of the scope and existence of liens on the Debtors' assets and potential other issues in connection with reviewing and challenging the claims and liens of the Debtors' secured creditors.  During the Final Compensation Period, Kramer Levin spent significant time and effort executing the investigation to identify any assets, including potential causes of action, that could be a source of recovery for unsecured creditors.

51.     Kramer Levin served targeted informal discovery requests on the Debtors related to a wide range of topics, including certain prepetition transactions such as the Debtors' acquisition of Bonobos in 2023, seeking to identify potential causes of action that could yield a recovery for unsecured creditors.  In connection with this discovery, Kramer Levin reviewed more than 100,000 documents, including emails, board meeting minutes, transaction documents, and other diligence materials.  This required substantial time and effort from Kramer Levin attorneys, as well as consistent, often daily correspondence with Committee members and professionals to keep Committee members informed on the status of the investigation and to formulate a go-forward strategy.

52.     The Debtors also conducted their own internal investigation into potential causes of action that could be brought against the Debtors' current and former directors and officers in connection with certain prepetition transactions.  Kramer Levin spent time and effort monitoring the Debtors' internal investigation, including sitting in on certain interviews.  Kramer Levin also provided certain discrete guidance to the Debtors on the scope of the investigation and questions to ask interviewees.

53.     Through its investigation and its monitoring of the Debtors' internal investigation, the Committee was able to negotiate provisions in the Plan that preserved causes of action against certain of the Debtors' former directors and officers, thereby maximizing value for unsecured creditors.

**U.     Avoidance Actions**
        **Kramer Levin Billing Code: 127**
        **(Fees: $1,298350 / 0.70 Hours Billed:)**

54.     Kramer Levin spent time in this category coordinating with Committee professionals on a potential settlement for alleged preference payments.

**SUMMARY OF PROFESSIONAL COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES REQUESTED**

55.     This Application has been prepared in accordance with the U.S. Trustee Guidelines and the Interim Compensation Order.  Pursuant to the U.S. Trustee Guidelines, a certification of Adam C. Rogoff (the "Rogoff Certification") regarding compliance with the same is attached as **Exhibit A** hereto.

56.     There is no agreement or understanding between Kramer Levin and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these Chapter 11 Cases.

57.     The fees charged by Kramer Levin in these Chapter 11 Cases are billed in accordance with its existing billing rates and procedures set forth in the Retention Application.

58.     During the Monthly Compensation Period, Kramer Levin exercised its billing discretion and voluntarily wrote off $127,309.50 in fees and $3,875.75 in expenses.  During the

Final Compensation Period, Kramer Levin voluntarily wrote off $494,330.50[3] in fees and $8,185.57 in expenses, resulting in a total benefit to the Debtors' estates of $502,516.07.

59.     The total amounts due to Kramer Levin for professional services rendered on behalf of the Committee during  the Monthly Compensation Period and the Final Compensation Period are $708,959.00 and $3,840,093.50, respectively.  Charts summarizing Kramer Levin's services by project category for both the Monthly Compensation Period and the Final Compensation Period are attached as **Exhibit B**, along with the time detail for the Monthly Compensation Period.  Charts summarizing Kramer Levin's services by timekeeper for both the Monthly Compensation Period and the Final Compensation Period are attached as **Exhibit C**.  Kramer Levin submits that the professional services it rendered on behalf of the Committee during this time were both reasonable and necessary.

60.     Kramer Levin incurred $1,592.43 in expenses during the Monthly Compensation Period and $11,157.33 during the Final Compensation Period.  A chart detailing the specific disbursements is attached hereto as **Exhibit D**.

61.     Pursuant to Kramer Levin policy (which Kramer Levin submits is consistent with that of other New York City law firms), Kramer Levin pays certain expenses of professionals who work in the office past 8:00 p.m. and on weekends and holidays in the service of its clients. These expenses include meal charges and car fares.  While the U.S. Trustee Guidelines permit late-working professionals to use a car service, Kramer Levin has voluntarily limited its request for reimbursement to $75 per trip to the extent that any such car fare exceeded this limit.  Kramer Levin has also voluntarily reduced its request for reimbursement for late-working professionals' meal charges to $20 per meal to the extent that such meal charges were in excess of this limit.

---

[3] This amount does not include reductions for non-working travel, which is billed at 50%.

62.     These charges are intended to cover Kramer Levin's direct operating costs, which costs are not incorporated into Kramer Levin's hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit D** are separately charged for such services.

63.     Kramer Levin does not derive a profit from legal research charges.  Kramer Levin maintains a flat fee contract with Westlaw and Lexis.  As a general matter, and in the present case, Kramer Levin charges all clients (bankruptcy and non-bankruptcy) on whose behalf legal research is undertaken the amount that Westlaw or Lexis, as applicable, charges to regular users (i.e. users that do not maintain flat fee contracts), provided that if such charges in the aggregate exceed the flat fee amount paid by Kramer Levin, then Kramer Levin discounts such charges so that such charges in the aggregate equal the flat fee amount.  Accordingly, in applying the charges to its clients, Kramer Levin passes the benefits of the flat fee arrangement to its clients while also maintaining a neutral arrangement under its contract(s) with Westlaw and Lexis.

64.     Kramer Levin's rates in these Chapter 11 Cases are consistent with the rates charged by Kramer Levin to its non-bankruptcy clients.  These rates are similar to the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy and bankruptcy cases in a competitive national legal market.  Pursuant to the U.S. Trustee Guidelines, **Exhibit E** discloses the blended hourly rates for all non-bankruptcy timekeepers in Kramer Levin's U.S. offices and the blended hourly rates for timekeepers who billed to the Committee during the Compensation Period.

65.     A budget and staffing plan for the Compensation Period is attached hereto as **Exhibit F** and includes a comparison to actual amounts.  During the Compensation Period, Kramer Levin's fees were approximately $129,541 below the budgeted amount.

WHEREFORE, Kramer Levin respectfully requests that the Court enter an order (i) awarding Kramer Levin allowance on an final basis of fees for the Final Compensation Period of $3,840,093.50 and reimbursement of expenses for the Final Compensation Period of $11,157.33; (ii) authorizing and directing the Debtors and the plan administrator, as the case may be, to pay Kramer Levin all unpaid fees and expenses for the Final Compensation Period; and (iii) granting such other and further relief as is just and proper.

Dated: February 14, 2025

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

*/s/ Adam C. Rogoff*
Adam C. Rogoff (admitted *pro hac vice*)
Robert T. Schmidt admitted (pro hac vice)
Nathaniel Allard (admitted pro hac vice)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
arogoff@kramerlevin.com
rschmidt@kramerlevin.com
nallard@kramerlevin.com

*Counsel to the Official Committee of Unsecured Creditors of Express Inc., et al.*