**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

In Re:                                              Chapter 11

EXP OldCo Windown, Inc., *et al*                    Case No. 24-10831 (KBO)


                        Debtors.                    (Jointly Administered)

EXHIBIT A


1. Declaration of Kush Banda
2. Photo Shoot Confirmation
3. Payment Statement 1
4. Payment Statement 2
5.  Complaint

1

## DECLARATION OF JOHN HEIN

2    I, John Hein, hereby declare as follows:

3    1. I have personal knowledge of the facts stated in this Declaration, except where stated on
     information and belief, and as such matters, I am informed and believe that they are true.

4    2. I am a male model in the state of California.

5    3. Clothing brands employ me to wear their products in still image photos, then use those
6    photos in advertisements to entice potential customers to purchase their wares.

7    4. On December 13-15, 2023, Bonobos Inc. hired me for a still image shoot to model and the
8    photos were intended for use in marketing its products. The daily wage for this still image
9    shoot was $7,500.00.

10   5. On December 13, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid
11   lunch for a total of 9.25 hours). On December 14, 2023, my client worked from 7:00 am to
12   5:00 pm (with 1 hour unpaid lunch for a total of 9 hours). On December 15, 2023, my
13   client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25
14   hours). When calculating waiting penalties, all compensation earned must be included,
15   such as overtime and the usage fee. Hein worked a total of three and a half (3.50) overtime
16   hours. Hein's overtime rate is equal to $1,406.25, or one and a half times his regular rate of
17   $937.50 (based on daily rate of $7,500.00 per day divided by eight (8) hours). Thus, Hein's
18   total overtime pay is $4,921.88, and his average daily overtime is $1,640.63 based on total
19   overtime divided by three (3) days worked. Hein's total daily rate is equal to his regular
20   daily rate plus his average daily overtime, or $9,140.63. As such, Hein is owed waiting
21   time penalties equal to thirty (30) days at his total daily rate of $9,140.63 per day, or
22   $274,218.90. (The maximum amount of waiting time penalties that can be awarded is 30
     days' pay.)

23   6. Under Labor Code § 201.6 and § 204, Bonobos' payment for my December 13, 2023 still
     image shoot was legally due no later than December 26, 2023.

24   7. When my Talent Agency provided my accounting statement, I noticed that I had not been
25   timely paid for the December 13-15, 2023 still image shoot.

26   8. On March 1, 2024, Bonobos paid me the outstanding balance for my December 13-15,
27   2023 still image shoot.

28

-1-
**DECLARATION OF JOHN HEIN**

9. Since the payment was legally due no later than December 26, 2023, Bonobos paid me sixty-six (66) days late.

10. On April 25, 2024, my counsel sent a demand letter to John Hutchison, President of Bonobos, Inc., explaining the waiting time penalties I am entitled under California law and demanding his payroll records, any documents signed by Hein, and his personnel file ("Employment Records"). A true and correct copy of that demand letter is attached as **Exhibit 1**. The Employment Records would enable me to determine exactly when Defendants paid me and whether or not that payment was timely. Since Bonobos did not provide the requested documents, I am entitled to statutory damages of: (a) $750.00 in statutory damages under Labor Code § 226(f); (b) $750.00 in statutory damages under Labor Code § 1198.5(k); (c) reasonable attorney's fees and cost of suit. Labor Code §§ 226(e)(1), 1198.5(l); and pre-judgment interest.

11. On June 14, 2024, my attorneys filed a complaint in Los Angeles County Superior Court seeking a total a $275,718.90. A true and correct copy is attached as **Exhibit 2**.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2025 at Los Angeles, California.

John Hein
Plaintiff

-2-
**DECLARATION OF JOHN HEIN**

Shoot date: 12/13-12/15

Case 24:1082-KRO    Doc 1372-1

Invoiced on: 12/28
Pay date: 3/6
Paid by bonobos
Shot in Palm Springs
Day rate: $7500x3

Today 11:16 AM

John, I've been slammed but I will ask Nate to reach out to you to get any documentation you may have so we can started asap.

Delivered

iMessage

i          the          i'm

q  w  e  r  t  y  u  i  o  p



---------- Forwarded message ---------
From: **Chris Marino** <chrism@newyorkmodels.com>
Date: Tue, May 21, 2024 at 10:36 AM
Subject: RE: Financial Statement
To: John Hein <johnwilliamhein@gmail.com>


Yes, the Bonobos from April was for an Out of Home Usage.  However, please note that Bonobos(Express) filed for bankruptcy protection through Chapter 11 as they try to restructure and raise capital.  Therefore, there is the possibility that they may not pay for the usage.  We are waiting to hear back on that.  We have not received any paperwork to make a claim as a creditor but obviously will submit if they do.  As it's only been about 3 weeks things are still unclear on that front.


Regarding inv 235349, we received payment on March 1st.


Chris Marino

Director of Operations

New York Model Management

(P) 212-937-0437

(F) 212-539-1775

chrism@newyorkmodels.com

1

**From:** John Hein <johnwilliamhein@gmail.com>
**Sent:** Tuesday, May 21, 2024 1:18 PM
**To:** Chris Marino <chrism@newyorkmodels.com>
**Subject:** Re: Financial Statement

Do you know what the Bonobos job not paid is? I didn't work for them in April. Did they extend usage or something?

And could you tell me the date that Bonobos paid invoice 235349?

Thank you.

On Tue, May 21, 2024 at 10:11 AM Chris Marino <chrism@newyorkmodels.com> wrote:

Hi John,

See attached.

Chris Marino

Director of Operations

New York Model Management

(P) 212-937-0437

(F) 212-539-1775

chrism@newyorkmodels.com

2

**From:** John Hein <johnwilliamhein@gmail.com>
**Sent:** Tuesday, May 21, 2024 1:10 PM
**To:** Chris Marino <chrism@newyorkmodels.com>
**Subject:** Financial Statement


Hi, Chris! Could I please get an updated financial statement for this year? Appreciate it.


John Hein



# KANE LAW FIRM

John Hutchison
President
Bonobos, Inc.
850 Cherry Avenue
San Bruno, CA 94066
Email: info@bonobos.com

Amanda Garcia
Agent of Process for Bonobos, Inc.
C T Corporation System
330 North Brand Boulevard
Glendale, CA 91203

*VIA EMAIL AND FIRST-CLASS MAIL*

April 25, 2024

Re:    *John Hein v. Bonobos, Inc.*
       *Request For Waiting Time Penalties And Employment Records*

| | |
|---|---|
| Modeling Shoot Began: | December 13, 2023 |
| Modeling Shoot Terminated: | December 15, 2023 |
| Average Daily Overtime: | $1,645.31 |
| Agreed Daily Rate: | $7,500.00 |
| Payment Due: | December 26, 2023 |
| Payment Received: | March 4, 2024 |
| Labor Code §§ 203, 206.1 Wait Time: | 30 Days |
| Total Penalties Due: | $274,359.30 |

Dear Mr. Hutchison,

My firm represents John Hein ("my Client"), in his claim for "Waiting Time" penalties against Bonobos, Inc. ("Bonobos") for the modeling work he performed for Bonobos on the dates listed above. To avoid any miscommunication, please direct all communications relating to this matter in writing to my office.

Before the close of business on Friday, May 10, 2024, my Client demands either: (i) proof that my Client's talent agency, New York Model Management ("NYMM"), received payment on or before Tuesday, December 26, 2023; or (ii) payment of $274,359.30 in accrued waiting time penalties. Otherwise, my Client will file suit for waiting time penalties under Labor Code §§ 203, 201.6 plus reasonable attorney's fees. Alternatively, you may agree in writing to mediation of this dispute with a retired Superior Court Judge at your sole expense by the same deadline. However, my Client will seek the additional attorney's fees and costs incurred in preparing for and participating in the mediation.

John Hutchison, Amanda Garcia
April 25, 2024
Page 2

## I.      FACTUAL SUMMARY

The facts are straightforward. My Client had a written talent agency agreement with NYMM, which authorized NYMM to receive payments on behalf of my Client. On December 12, 2023, Bonobos required my Client to attend a 1 hour fitting in preparation for a three day photoshoot. On December 13-15, 2023, Bonobos employed my Client as a professional model at the agreed daily rate of $7,500.00 [**Ex. 1**].

After receiving his February NYMM accounting statement, my Client recognized that his payment for his Bonobos' still photo shoot job was late.

On or about March 4, 2024, my Client's agency received payment on behalf of my Client for the December 12-15, 2023 still photo shoot. It is reasonable to assume that  NYMM promptly deposits Client payments, so NYMM can take its commissions. Since Bonobos' payment was legally due no later than December 26, 2023, Bonobos' payment appears to be sixty-nine (69) days late.

## II.     UNDER LABOR CODE § 201.6, BONOBOS IS LIABLE FOR WAITING TIME PENALTIES.

### A.      AS A MATTER OF LAW, BONOBOS WAS MY CLIENT'S EMPLOYER UNDER LABOR CODE § 201.6(a)(1).

On September 5, 2019, Labor Code section 201.6 became effective. Section 201.6 both: (i) defines all persons hired to participate in short-term photography shoots as "employees"; and (ii) designates the deadlines for payment of such employees. Section 201.6 has an unambiguous definition of "employee" that applies to all models, including my Client:

> "Print shoot employee" means an individual hired for a period of limited duration to render services relating to or supporting a still image shoot, including film or digital photography, for use in print, digital, or internet media."

Under Labor code section 201.6, all persons hired to participate in a still photography shoot act as employees in participating in the shoot. As a result, they are entitled to all protections California law affords employees under California law, including the right to be timely paid wages.

Here, Bonobos hired my Client as a model "relating to or supporting" the still image shoot on December 12, 2023. Thus, Bonobos employed my Client as a matter of law.

### B.      BONOBOS WAS ALSO MY CLIENT'S EMPLOYER UNDER CALIFORNIA'S COMMON LAW TEST.

John Hutchison, Amanda Garcia
April 25, 2024
Page 3

To be an "employer" for purposes of wage and hour violations, a defendant *need only satisfy one of three (3) alternative tests*:

    i.  to exercise control over the wages, hours or working conditions, or

    ii.  to suffer or permit to work, or

    iii.  to engage, thereby creating a common law employment relationship.

*Martinez v. Combs,* 49 Cal.4th 35, 59, 76 (2010).

> **(i)**      **Bonobos Controlled, Both Directly And Through Agents, My Client's Wages, Hours And Working Conditions.**

Bonobos directly controlled my Client's wages, hours and working conditions. Bonobos decided my Client's: (i) agreed daily rate – $7,500.00 for the day; (ii) the hours worked; and (iii) the working conditions, including the location. Thus, Bonobos employed my Client under the first alternative test.

> **(ii)**      **Bonobos Suffered Or Permitted My Client To Work.**

Bonobos requested that my Client perform modeling services for its benefit, and Bonobos had the power to prevent my Client from performing these modeling services. Thus, Bonobos employed my Client under the second alternative test.

> **(iii)**      **Bonobos Created A Common Law Employment Relationship.**

Under the common law employment relationship test, professional photography models provide their services as "employees". *Zaremba v. Miller,* 113 Cal.App.3d Supp. 1, 5–6 (1980) (photographer owed waiting time penalties to model);[1] *Smith v. Superior Court ("L'Oreal"),* 39 Cal.4th 77, 85 (2006) (Hair care company owed hair model waiting time penalties for failure to pay at the end of a one (1) day assignment). As the *Zaremba* Court explained:

> In determining whether one is an employee or an independent contractor, the California Supreme Court has adopted the test of the Restatement of Agency, section 220:

> "In determining whether one who performs services for another is an employee or an independent contractor, the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists. Strong evidence in support of an

---

[1] On the heels of *Dynamex Operations West, Inc. v. Superior Court.,* 4 Cal.5th 903 (2018), the Fourth Appellate District, in *Curry v. Equilon Enterprises,* LLC, 23 Cal. App. 5th 289 (2018), rejected the argument that Dynamex's ABC Test applied to the joint employer analysis.

John Hutchison, Amanda Garcia
April 25, 2024
Page 4

> employment relationship is the right to discharge at will, without cause. (Citations
> omitted.) Other factors to be taken into consideration are (a) whether or not the one
> performing services is engaged in a distinct occupation or business; (b) the kind of
> occupation, with reference to whether, in the locality, the work is usually done under
> the direction of the principal or by a specialist without supervision; (c) the skill
> required in the particular occupation; (d) whether the principal or the workman
> supplies the instrumentalities, tools, and the place of work for the person doing the
> work; (e) the length of time for which the services are to be performed; (f) the method
> of payment, whether by the time or by the job; (g) whether or not the work is a part
> of the regular business of the principal; and (h) whether or not the parties believe they
> are creating the relationship of employer-employee. (Rest., Agency, s 220; Cal.Ann.,
> s 220.)"
>
> Applying the above factors, we determine that the relationship of employer-employee
> existed between defendant and plaintiff. The most crucial consideration is the right
> to exercise complete control over the work, including its details. All witnesses were
> in agreement that the photographer controlled every movement and the dress, hours,
> and place of work of plaintiff, and could fire him for disobedience.

*Zaremba*, 113 Cal.App.3d Supp. at 5–6.

Thus, Bonobos employed my Client under the third alternative test.

## C.    BONOBOS MUST PAY MY CLIENT WAITING TIME PENALTIES.

Professional photography models provide their services as "employees" and are entitled to
waiting time penalties. *Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 5–6 (1980) (photographer
owed waiting time penalties to model); *Smith v. Superior Court* ("*L'Oreal*"), 39 Cal.4th 77, 85
(2006) (Hair care company owed hair model waiting time penalties for failure to pay at the end of
a one (1) day assignment); Labor Code §201.6.

As the *L'Oreal* Court observed:

> Together, [Labor Code] sections 201 and 202 direct employers to
> promptly pay wages when employment is terminated by discharge,
> or by resignation if no requisite written contract exists, with section
> 203 providing for penalties when the employer willfully fails to do
> so.

39 Cal.4th at 85.

Under Labor Code § 203, if an employer willfully fails to pay in accordance with § 201.6,
"the wages of the employee shall continue as a penalty from the due date thereof at the same rate
until paid . . . ; but the wages shall not continue for more than 30 days." To relieve any perceived
unfairness to employers, the 2019 Photoshoot Pay Easement Act created special rules that gave

John Hutchison, Amanda Garcia
April 25, 2024
Page 5

photoshoot employers additional time to pay models without incurring any waiting time penalties – "[a] print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code §201.6.

California employers must:

    (i)   establish a weekly, biweekly or semimonthly payroll period;

    (ii)  communicate it to employees in postings and Wage Theft Protection Act notices upon hire (for all non-exempt employees);

    (iii) pay employees consistently within 7-10 days of the end of the pay period;

    (iv) wages earned between the 1st and 15th day of the month must be paid by the 26th day of the month; and

    (v)  wages earned between the 16th and last day of the month must be paid by the 10th day of the following month.

Labor Code §204.

As a result, my Client's wages were due on or before December 26, 2023 and waiting time penalties of one (1) day's pay accrue for each day late up to a maximum of thirty (30) days.

Because Bonobos did not pay Hein's agency until March 4, 2024, Bonobos paid Hein more than thirty (30) days late. As such, Hein is owed waiting time penalties equal to thirty (30) days' pay.

To calculate my Client's "daily rate" for purposes of waiting time penalties, all compensation earned must be included in the calculation, such as overtime and the usage fee. Division of Labor Standards Enforcement Manual ("DLSE") §§ 4.3.4.1, 49.1.2.3. According to California law, any hours worked past 8 hours will be considered overtime paid at 1.5 times the normal rate. Labor Code §515(d)(2);[2] DLSE 49.1.4 ("Ordinarily, the hours to be used in computing the regular rate of pay may not exceed the legal maximum regular hours which, in most cases is 8 hours per day, 40 hours per week"); *Skyline Homes, Inc., etc. et al v. Department of Industrial Relations, et al.*,165 Cal.App.3rd 239, 245-250 (1985), *disapproved on other grounds*, *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557 (1996).

Here, my Client worked the following hours on the following dates:

---

[2] Labor Code §515(d)(2) provides:
    Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, non-overtime hours, notwithstanding any private agreement to the contrary.
Thus, section 515(d)(2) precludes any argument that overtime hours are included in the employee's fixed salary rate.

John Hutchison, Amanda Garcia
April 25, 2024
Page 6

| Date | Agreed Daily Rate | Hours On Set | Hours Worked | Overtime (hrs) |
|------|------|------|------|------|
| 12/13/2023 | $7,500.00 | 6:45 a.m. – 5:00 p.m. | 9.25 | 1.25 |
| 12/14/2023 | $7,500.00 | 7:00 a.m. – 5:00 p.m. | 9.00 | 1.00 |
| 12/15/2023 | $7,500.00 | 6:45 a.m. – 5:00 p.m. | 9.25 | 1.25 |

My Client's agreed daily rate of pay is $7,500.00 without consideration of other charges such as overtime or a usage fee, which DLSE §§ 4.3.4.1, 49.1.2.3 requires be incorporated into his daily rate. Using an 8-hour workday, my Client's hourly rate is $937.50 per hour.

Here, my Client worked 3.50 hour(s) of overtime over three (3) days worked, meaning he averaged an additional 1.17 hours of overtime per day at $1,406.25 (1.5 * $937.50) per hour or $1,645.31 for a total daily rate of $9,145.31.

Since Bonobos paid my Client 69 days late, and my Client's adjusted daily rate is ($7,500.00 + $1,645.31) $9,145.31, my Client is owed (30 * $9,145.31) = $274,359.30 in waiting time penalties.

### D.    BONOBOS' FAILURE TO TIMELY PAY MY CLIENT IS "WILLFUL", BECAUSE BONOBOS DID NOT HAVE A GOOD FAITH LEGAL DISPUTE ABOUT THE AMOUNT OWED.

Under Labor Code § 203, "to be at fault within the meaning of the statute, the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Barnhill v. Robert Saunders & Co.*, 125 Cal.App. 3d 1, 7 (1981) (good faith legal dispute precludes imposition of waiting time penalties). "'In civil cases the word "willful" as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done, was done or omitted intentionally. It amounts to nothing more than this: 'That the person knows what he is doing, intends to do what he is doing, and is a free agent.'" *Nishiki v. Danko Meredith, APC*, 25 Cal.App.5th 883, 892–893 (2018) (employer's inadvertent typographical error rendering check non-negotiable does not support waiting penalties; but employer's subsequent delay in mailing replacement check justifies award of waiting time penalties.)

Code of Regulations, title 8**,** section 13520(a) sets forth the "good faith defense" to waiting time penalties:

> Good Faith Dispute. A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. *Defenses* presented which, under all the circumstances, are *unsupported by any evidence*, are unreasonable, or are presented in bad faith, *will preclude a finding of a "good faith dispute."*

John Hutchison, Amanda Garcia
April 25, 2024
Page 7

(Emphasis added.)

"This regulation imposes an objective standard." *Fei Enterprises, Inc. v. Yoon*, 194 Cal.App.4th 790, 802 (2011). The *Fei* Court explained that an objective standard in determining an prompt payment was necessary, otherwise defendants could escape liability by simply claiming that they were ignorant of the law or received negligent legal counsel:

> To do otherwise leads not only to potential mischief but also ignores the reality that the evaluation of the dispute will, in actuality, be based on the examination of objective facts and circumstances which will or will not demonstrate that an objectively reasonable basis existed for the nonpaying party's action. Certainly, *a party who has no reasonable, objective justification for withholding payment under a construction contract, but "believes" by reason of delusion, ignorance, negligence of legal counsel or otherwise, that the money is not owed should not be able to avoid penalty* interest on such ground.

*Id.* at 805–806 (emphasis added) (footnote omitted) (interpreting contractor prompt payment statute by analogy to section 203).[3]

Since there is no "objective" good faith dispute regarding my Client's right to compensation for the December 13-15, 2023 still photo shoot, my Client is entitled to waiting time penalties of $9,145.31 per day for each day up to 30 days after December 26, 2023 that my Client did not receive payment.

### E.   BONOBOS MAY NOT RELY UPON EITHER A PRIVATE AGREEMENT OR INDUSTRY CUSTOM AND PRACTICE OR WAIVER TO AVOID WAITING TIME PENALTIES.

First, the California Supreme Court has held that Labor Code § 219(a) prohibits any private agreement that delays the payment of wages when due between an employer and employee:

---

[3] Similarly, *Hill v. Walmart Inc.*, 32 F.4th 811 (9th Cir. 2022) demonstrates why a good faith dispute defense to waiting time penalties is not available to Bonobos, Inc. First, in *Hill*, the model's employment occurred in 2016 and 2017, or two (2) years *before* the passage of the 2019 Photoshoot Pay Easement Act. *Id.* at *815*. Second, as the *Hill* plaintiff *failed* to allege violation of Wage Order 4-2001, the court applied the Borello test. *Id.* at 819-20. If a wage order violation was alleged, the employment relationship is presumed and the Court must apply the more employee-friendly *ABC test.* *Id.* at 819. Third, Wage Order 4-2001 regulates "Wage, Hours And Working Conditions In Professional, Technical, Clerical, Mechanical And Similar Occupations" ("Wage Order 4"). The definition of "Professional, Technical, Clerical, Mechanical And Similar Occupations includes . . . models". Section 2(O). Finally, Bonobos, Inc. violated both: (i) Section 4, entitled, "Minimum Wages" by failing to pay minimum wage during the pay period; and (ii) Section 7, entitled "Records" by failing to provide the appropriate documentation at the time of payment.

John Hutchison, Amanda Garcia
April 25, 2024
Page 8

   section 219 prohibits an employer and employee from agreeing, even voluntarily, to circumvent provisions of article I (consisting of §§ 200–243) of the Labor Code. [The employee] also correctly argues that "agreement[s] prospectively waiving an employee's rights under sections 201 [and 202] to receive all his or her earned but deferred or unpaid wages ... constitute ... waivers which section 219 renders illegal and unenforceable."

Schachter v. Citigroup, Inc., 27 Cal.4th 610, 628-29 (2009).

   Second, an industry custom and practice of paying models late does not absolve an employer of liability for waiting time penalties:

   [The provisions of the Labor Code relating to the payment of laborers (Lab. Code at §§ 200, subd. (b), 201, 203)] express a strong public policy for prompt payment of laborers that may not be undercut by any industry habit or custom to the contrary. Labor Code, section 219 provides, in part, "but no provisions of this article [encompassing sections 200 through 240] can in any way be contravened or set aside by private agreement, whether written, oral or implied."

*Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 6 (1980).

   The validity of California's prohibition on waiver of rights under the Labor Code has even been recognized by the United States Supreme Court. *Livadas v. Bradshaw*, 512 U.S. 107, 128 (1994) ("California law requires employers to pay all wages due immediately upon an employee's discharge, imposes a penalty for refusal to pay promptly, precludes any private contractual waiver of these minimum labor standards . . .") Thus, any purported defense based on industry custom and practice would not rise to the level of a good faith dispute.

## III. ANY RETALIATION AGAINST MY CLIENT WILL ONLY INCREASE HIS DAMAGES.

   The intentional interference with a former employee's means of livelihood in retaliation for the employee's assertion of his or her wage rights is actionable, entitling the employee to recover compensatory damages, treble damages, and punitive damages. Labor Code §§ 1050, 1054; *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153-1154 (2003). The days of "blackballing" models and actors for asserting their legitimate wage rights are over.

## IV. BONOBOS HAS NO VIABLE DEFENSES TO MY CLIENT'S CLAIMS FOR WAITING TIME PENALTIES.

   Waiting-time penalty claims are straightforward. Since the 2019 enactment of Labor Code section 201.6, we are not aware of any case where an employer successfully argued

John Hutchison, Amanda Garcia
April 25, 2024
Page 9

that a model's employee status was ambiguous enough to create a "good faith" dispute precluding waiting time penalties. Consequently, an employer's failure to timely pay the wages of employees hired for still shoots governed by Section 201.6 results in essentially *strict* liability given the employer is charged with knowing the law. *Robinson v. Fair Employment & Housing Com.* 2 Cal.4th 226, 244 (1992) ("employers are presumed to know the law and whether they come within the statutory definition of "employer.")

Because Bonobos has no viable defense, my Client would be amendable to a reasonable settlement offer. A reasonable settlement proposal will save Bonobos considerable costs on legal fees to defend an unwinnable strict liability case. Alternatively, Bonobos may choose to litigate, incur substantial legal defense costs, pay my Client his entire waiting time penalties, and pay for his attorney's fees, if applicable.

**V.     BONOBOS MUST PROVIDE MY CLIENT'S PAYROLL RECORDS, DOCUMENTS SIGNED BY MY CLIENT, AND HIS PERSONNEL FILE.**

Labor Code §§ 226(b), 432, and 1198.5 mandate the inspection and copying of my Client's payroll records, any documents signed by my Client and his personnel file ("Employment Records"). California Labor Code §226(c) requires you to permit inspection and copying of all my Client's Employment Records within twenty-one (21) days of the date of this letter. Failure to comply will result in my Client filing a complaint to enforce his rights and to recover both $750.00 in statutory damages and his reasonable attorney's fees. Only aggrieved employees may recover their attorney's fees. As a result, please contact my office to set up a time for the inspection and copying. Alternatively, you may immediately mail a complete copy of my Client's Employment Records to my office.

Finally, any failure of Bonobos to maintain my Client's records violates Wage Order 4-2001, Section 7. Equally important, any failure to provide those records to my Client upon reasonable request violates Section 7(C) ("[A]n employee's records shall be available for inspection by the employee upon reasonable request.").

**VI.    BONOBOS MUST PRESERVE, MAINTAIN, AND PRODUCE EVIDENCE RELATING TO MY CLIENT.**

This is a formal demand that you preserve all evidence relating to my Client and his claims, including but not limited to all documents and electronically stored material as well as the cell phone records for all telephone numbers used by my Client. The destruction of evidence related to my Client is prohibited and will, among other consequences, subject you to court ordered sanctions. *Cedars-Sinai Medical Center v. Superior Court,* 18 Cal.4th 1, 12 (1998).

> *i.     Electronic Data to Be Preserved*

The following types of electronic data and/or the electronic data of your subsidiaries, divisions, agents, employees and relevant third-parties or vendors should be preserved in native format, in accordance with the steps set forth below:

John Hutchison, Amanda Garcia
April 25, 2024
Page 10

1.   All electronic mail and information about electronic mail (including message contents, header and logs of e-mail system usage) sent or received by any custodian RELATING TO this matter ("RELATING TO") means and includes pertaining to, evidencing, reflecting, referring to, discussing, showing, supporting, constituting, or being in any way logically or factually connected to the matter discussed;

2.   All databases, including field and structural information as well as records, containing any information RELATING TO this matter;

3.   All logs of activity on any computer systems that have been used to process or store data containing information RELATING TO this matter;

4.   All other electronic data containing information RELATING TO this matter, including, but not limited to:

> a.  All word processing files and file fragments;
> b.  Electronic data created by applications which process financial, accounting and billing information;
> c.  All electronic calendar and scheduling program files and file fragments;
> d.  All electronic spreadsheet files and file fragments.

     *ii.*     *On-Line Data Storage*

With regard to online storage and/or direct access storage devices including, but not limited to, any file server or data array (e.g., RAID) physically or remotely attached to your computers through wired or wireless networking, we request you not modify or delete any existing electronic data files that meet the criteria set forth above, unless an exact mirror image has been made and will be preserved and kept accessible for purposes of this matter.

     *iii.*     *Off-Line Data Storage, Backups and Archives*

With regard to all electronic media used for offline storage, such as magnetic tapes and cartridges, CDs, DVDs, USB devices (e.g., "thumb drives") and the like, used with any computer, file server or data array (e.g., RAID), whether physically or remotely attached to your computers through wired or wireless access that contain any electronic information RELATING TO the subject matter of this matter, we request you stop any activity that may result in the loss of such data. This request is intended to cover all removable electronic media used for data storage in any device, including those containing backup and/or archive data sets.

     *iv.*     *Preservation of Replaced Data Storage Devices*

We request you preserve any electronic data storage devices and/or media that may contain data RELATING TO this matter and that you replace for any reason.

     *v.*     *Fixed Drives on Stand-Alone Personal Computers and Network*

John Hutchison, Amanda Garcia
April 25, 2024
Page 11

*Workstations*

We request that you not alter, delete or over-write relevant electronic data that existed on fixed drives attached to stand-alone microcomputers, network workstations and/or data arrays (e.g., RAID) as of this date, or perform other procedures such as data compression and disk defragmentation or optimization routines that may impact such data, unless an exact mirror image has been made of such active files and directory listings, including hidden and/or deleted files, for all directories containing such files and that it completely restore any altered, deleted or over-written electronic files and file fragments and arrange to preserve all such data during the pendency of this matter.

     *vi.*    *Applications and Utilities*

We request that you preserve copies of all applications and utilities that may be used to process electronic data discussed in this letter.

     *vii.*    *Log of System Modifications*

We request that you maintain an activity log of document modifications made to any electronic data processing system that may affect any system's capability to process any electronic data RELATING TO this matter.

     *viii.*    *Personal Computers and All Other Devices Used By Employees, Independent Contractors and Others Under Your Control*

Please immediately take the following steps with regard to all fixed drives attached internally, externally, physically and/or remotely by wired or wireless access to any personal computers used by any custodian under your control:

    1.    An exact mirror image must be made of all electronic data RELATING TO this matter; and

    2.    Full directory listings (including hidden and deleted files) for all directories and subdirectories must be written.

Please immediately take the following steps with regard to all removable drives attached internally, externally, physically and/or remotely by wired or wireless access to any personal computers used by any custodian under your control:

    1.    All removable electronic media, such as floppy diskettes, magnetic tapes and cartridges, CDs, DVDs, USB devices (e.g. 'thumb drives') and the like that existed before the delivery of this letter and that contain relevant data should collected, maintained intact and kept available during the pendency of this matter.

Please immediately take the following steps with regard to all other relevant devices used

John Hutchison, Amanda Garcia
April 25, 2024
Page 12

by any custodian under your control, whether it is internally, externally, physically and/or remotely attached by wired or wireless access to any system used by you:

1.      All cellular phones, personal data assistants (e.g., Blackberry), voicemail messages, text messages (SMS or otherwise), instant messages and/or any other device that stores electronic information (e.g., RAM on printing devices or FAX machines) and the like that existed before the delivery of this letter and that contain relevant data should collected, maintained intact and kept available during the pendency of this matter.

      ix.      *Evidence Created After Receipt of This Letter*

Any relevant electronic data created after receipt of this letter should be preserved in a manner consistent with the directions in this letter.

      x.      *Metadata*

As it is relevant to all items cited hereinabove, you are instructed to preserve **all metadata** and not to **alter, delete and/or over-write any metadata**. All rights and remedies are expressly reserved.

Sincerely,

Brad S. Kane

Cc:     Client

Exhibit 1

Wed, Nov 29 at 5:20 PM

Here are the details

Bonobos
Date: 12/12- 12/15
Location: NYC or PS (TBD)
Rate: $7500 + af/day (shoot),
$250 + 20%/hour (fitting) + flight/
hotel
Usage: 6 months. Digital + in-
store (No OOH, CTV, or
Broadcast)

It's three shoot days!

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/18/2024 3:58 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035
Tel: (323) 937-3291
Fax: (323) 571-3579

Attorney for Plaintiff
John Hein

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| JOHN HEIN, an individual,<br><br>     Plaintiff,<br><br>v.<br><br>BONOBOS, INC., a Delaware Corporation ; and DOES 1 to 10, inclusive,<br><br>     Defendants. | Case No.:  24STCV15234<br><br>**UNLIMITED JURISDICTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204; and**<br><br>**(2) Failure to Provide Employment Records, Labor Code §§ 226(b) and 1198.5.**<br><br><br>**JURY TRIAL REQUESTED** |

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**COMPLAINT**

Plaintiff John Hein ("Hein" or "Plaintiff") alleges against defendants Bonobos, Inc. ("Bonobos"), and Does 1-10 (collectively, "Defendants"), inclusive, as follows:

**INTRODUCTION**

1.      This is a Complaint for (i) Waiting Time Penalties under Labor Code §§ 201, 201.6, 202, 203, 204; and (ii) Failure to Provide Employment Records in violation of Labor Code §§ 226(b), and 1198.5.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over all causes of action alleged in this Complaint pursuant to the California Constitution, Article VI, § 10, and CCP § 410.10, and is a Court of competent jurisdiction to grant the relief requested. Plaintiff's Labor Code claims arise under the laws of the State of California, are not preempted by federal law, do not challenge conduct within any federal agency's exclusive domain, and are not statutorily assigned to any other trial court.

3.      Venue is proper in the Superior Court for the County of Los Angeles because the acts of Defendants that form the basis for the causes of action in this Complaint occurred in the County of Los Angeles.  Further, Defendants have a storefront in Los Angeles located at 10250 Santa Monica Boulevard, Space #1820, Los Angeles, CA, 90067.

**THE PARTIES**

4.      At all relevant times Plaintiff was and is an individual residing in the County of Los Angeles, State of California.

5.      Plaintiff is informed and believes and thereon alleges that Bonobos is a Delaware Corporation with its primary place of business at 850 Cherry Avenue, San Bruno, CA 94066. Bonobos is a fashion brand that designs, sources, markets, and sells high-quality retail products in the men's apparel and accessories categories.

7.      The true names and capacities, whether individual, corporate, or otherwise of Defendants named herein as Does 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to set forth the true names and capacities of Defendant Does once they have been ascertained.  Plaintiff is informed

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

and believes and, on that basis, alleges that each Defendant Doe participated in, aided or abetted some or all of the acts alleged herein and is liable to Plaintiff on that basis.

8.    Plaintiff is informed and believes that the Defendants are alter egos.  The Defendants' unity of interest and ownership would promote injustice if the fiction of a corporate separate existence is recognized.  Plaintiff is informed and believes that each Defendant is the alter ego of the other Defendants and the Doe Defendants are alter egos of Defendants and the other Doe Defendants based upon the following factors:

A.  the commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses;

B.  the treatment by individuals of the assets of the corporations as their own;

C.  the failure to obtain authority to issue stock or to subscribe to or issue the same;

D.  the holding out by an individual that he or she is personally liable for the debts of the corporation;

E.  the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;

F.  the sole ownership of all of the stock in a corporation by members of one family;

G.  the use of the same office or business location;

H.  the employment of the same employees and/or attorney;

I.  the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization;

J.  the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;

K.  misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

2
**COMPLAINT**

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

L.  the disregard of legal formalities and the failure to maintain arm's length relationships among related entities;

M.  the use of the corporate entity to procure labor, services or merchandise for another person or entity;

N.  the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;

O.  the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and

P.  the formation and use of a corporation to transfer to it the existing liability of another person or entity.

9.     Plaintiff is informed and believes that the Defendants are or were joint employers of the Plaintiff.  At all material times, all Defendants have acted as the employer of Plaintiff and are or were "employing" him within the meaning of the law of California and under principles of common law.

10.    Plaintiff is informed and believes that each Defendant acted as a joint employer. As joint employers, under common law and statutory definitions, Defendants are all jointly and severally liable for back pay, liquidated damages, statutory damages and other relief owed to Plaintiff.

11.    Plaintiff's *employee* status is conclusively established by the 2019 Photoshoot Pay Easement Act. Labor Code § 201.6(a)(1), which expressly provides that print *models* are *employees* as a matter of law:

> "Print Shoot employee" means an individual hired for a period of limited duration to render services relating to or supporting a still image shoot, including film or digital photography, for use in print, digital, or internet media.

12. Further, "A print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code § 201.6(a); *see also Smith v. Superior Court ("L'Oreal")*, 39 Cal.4th 77, 85 (2006) (Hair care company owed hair model waiting time penalties for failure to pay at the end of a one-day assignment); *Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 5-6 (1980) (photographer owed waiting time penalties to model).

13. Alternatively, even if the 2019 Photoshoot Pay Easement Act did not apply, Plaintiff would come within Wage Order 4-2001 "Regulating Wages, Hours And Working Conditions In The Professional, Technical, Clerical, Mechanical And Similar Occupations." Section 2, entitled, "Definitions", states:

> (O) "Professional, Technical, Clerical, Mechanical, and Similar Occupations" includes . . . *models*[.]

14. Plaintiff is informed and believes that Defendants, and each of them, at all times material to this Complaint, have acted as "employers" and Plaintiff was an "employee"—as opposed to an "independent contractor"—under the California Supreme Court's "ABC" test as explained in *Dynamex Operations W. v. Superior Court* ("*Dynamex*"), 4 Cal.5th 903, 964 (2018). Specifically, under *Dynamex*, workers are presumed to be employees instead of independent contractors unless all three of the following:

> A. that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact;
>
> B. that the worker performs work that is outside the usual course of the hiring entity's business; and
>
> C. that the worker is customarily engaged in an independently established trade, occupation, or business. *Id.*

15. Labor Code § 203(a) provides in pertinent part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

4
**COMPLAINT**

until an action therefor is commenced; but the wages shall not continue for more than 30 days.

**FACTUAL ALLEGATIONS**

16.     Hein is a male model.

17.     Clothing brands photograph Hein wearing their products then market those photographs to entice potential customers to purchase their wares.

18.     Hein has a California Talent Agent, which procures employment for Hein via photography shoots.

19.     On December 13, 2023, Defendants hire Hein for a still image shoot to model and the photos were intended for use in marketing its products. The daily wage for this still image shoot was $7,500.00.

20.     Under Labor Code § 201.6 and § 204, Defendants' payment for Hein's December 13, 2023 still image shoot was legally due no later than December 26, 2023.

21.     When Hein's Talent Agency provided Hein with his accounting statement, Hein noticed that his pay for his  December 13, 2023 still image shoot had not been timely paid.

22.     On March 1, 2024, Defendants paid Hein's Talent Agency for Hein's December 13, 2023 Bonobos still image shoot (even though the payment was legally due no later than December 26, 2023). Shortly after receiving the payment, Hein's Talent Agency took its commission for the still image shoot and paid Hein the remaining fee.

23.     Defendants paid Hein sixty-six (66) days late.

24.     On April 25, 2024, Hein's counsel sent a demand letter to John Hutchison, President of Bonobos, Inc., explaining the waiting time penalties Hein is entitled under California law and demanding his payroll records, any documents signed by Hein, and his personnel file ("Employment Records"). [**Ex. 1**]. The Employment Records would enable Hein to determine exactly when Defendants paid Hein and whether or not that payment was timely.

25.     To date, Defendants have failed to respond to Hein's demand letter.

26.     Defendants have also violated Wage Order 4-2001, which regulates "Wage, Hours And Working Conditions In Professional, Technical, Clerical, Mechanical And Similar

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Occupations" ("Wage Order 4").    The definition of "Professional, Technical, Clerical, Mechanical And Similar Occupations includes . . . models". Section 2(O).

27.    Finally, Defendants have violated Wage Order 4: (i) Section 4, entitled, "Minimum Wages"[1] because they failed to pay Hein at least minimum wage on time; and (ii) Section 7, entitled, "Records,"[2] because they failed to provide a paystub at the time of payment.

## FIRST CAUSE OF ACTION

### (Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204)

28.    Plaintiff re-alleges and incorporates the preceding paragraphs as though fully set forth herein.

29.    Professional photography models provide their services as "employees" and are entitled to waiting time penalties. Labor Code 201.6; *see also Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 5-6 (1980) (photographer owed waiting time penalties to model); *Smith v. Superior Court ("L'Oreal")*, 39 Cal.4th 77, 85 (2006) (Hair care company owed hair model waiting time penalties for failure to pay at the end of a one (1) day assignment). As the *L'Oreal* court explains:

> Together, [Labor Code] sections 201 and 202 direct employers to promptly pay wages when employment is terminated by discharge, or by resignation if no requisite written contract exists, with section 203 providing for penalties when the employer willfully fails to do so.

39 Cal.4th at 85.

30.    At all relevant times, Plaintiff was an employee of Defendants covered by Labor Code §§ 201-204.

---

[1] Wage Order 4, Section 4(B) provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."

[2] Wage Order 4, Section 7(B) provides: "(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item."

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

6
**COMPLAINT**

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

31.     Under Labor Code § 203, if an employer willfully fails to pay in accordance with § 201.6, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . ; but the wages shall not continue for more than 30 days." To relieve any perceived unfairness to employers, the 2019 Photoshoot Pay Easement Act created special rules that gave photoshoot employers additional time to pay models without incurring waiting time penalties — "[a] print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code §201.6.

32.     Moreover, California employers must:

    i.   establish a weekly, biweekly or semimonthly payroll period;

    ii.  communicate it to employees in postings and Wage Theft Protection Act notices upon hire (for all non-exempt employees);

    iii. pay employees consistently within 7-10 days of the end of the pay period;

    iv. wages earned between the 1st and 15th day of the month must be paid by the 26th day of the month; and

    v.  wages earned between the 16th and last day of the month must be paid by the 10th day of the following month.

Labor Code § 204.

33.     As a result, Hein's wages for his December 13, 2023 still photo shoot were due on or before, December 26, 2023 and waiting time penalties of one (1) day's pay accrue for each day late (up to a maximum of thirty (30) days).

34.     Lastly, Defendants have violated Wage Order 4, which specifically applies to "models." Section 2(O). Namely, Defendants have violated Wage Order 4's Section 4(B), entitled, "Minimum Wages," which reads:

> Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether

the remuneration is measured by time, piece, commission, or otherwise.

Defendants have violated Wage Order 4's Section 4(B) because Defendants failed to pay Hein on or before December 26, 2023, for his December 13, 2023 photo shoot.

35.    Because Bonobos did not pay Hein's talent agency until March 1, 2024, Bonobos paid Hein more than thirty (30) days late. As such, Hein is owed waiting time penalties equal to thirty (30) days' pay.

36.    On December 13, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). On December 14, 2023, my client worked from 7:00 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9 hours). On December 15, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). When calculating waiting penalties, all compensation earned must be included, such as overtime and the usage fee. Division of Labor Standards Enforcement Manual ("DSLE") §§ 4.3.4.1, 49.1.2.3. A daily rate can only be based on the maximum number of legal hours worked. DLSE 49.1.4 ("Ordinarily, the hours to be used in computing the regular rate of pay may not exceed the legal maximum regular hours which, in most cases is 8 hours per day, 40 hour per week"); *Skyline Homes, Inc., etc. et al v. Department of Industrial Relations, et al.*,165 Cal.App.3rd 239, 245-250 (1985), *disapproved on other grounds*, *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557 1996). Hein worked a total of three and a half (3.50) overtime hours. Hein's overtime rate is equal to $1,406.25, or one and a half times his regular rate of $937.50 (based on daily rate of $7,500.00 per day divided by eight (8) hours). Thus, Hein's total overtime pay is $4,921.88, and his average daily overtime is $1,640.63 based on total overtime divided by three (3) days worked. Hein's total daily rate is equal to his regular daily rate plus his average daily overtime, or $9,140.63. As such, Hein is owed waiting time penalties equal to thirty (30) days at his total daily rate of $9,140.63 per day, or $274,218.90.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## SECOND CAUSE OF ACTION

### (Failure to Provide Employment Records, Labor Code §§ 226(b), 432 and 1198.5)

37.     Plaintiff re-alleges and incorporates the preceding paragraphs as though fully set forth herein.

38.     Labor Code §§ 226(b), 432, and 1198.5 mandate the inspection and copying of Hein's payroll records, any documents signed by Hein, and his personnel file ("Employment Records").

39.     Labor Code §226(c) requires employers to permit inspection and copying of all Hein's payroll records within twenty-one (21) days of the date of the written demand. Failure to comply results in $750.00 in statutory damages and a plaintiff's reasonable attorney's fees and costs of suit. Labor Code §226(f), (e)(1).

40.     Labor Code §1198.5(a), (b)(1) requires employees to permit inspection and copying of all Hein's personnel that the employer maintains relating to the employee's performance or to any grievance concerning the employee within thirty (30) days of the date of the written demand. Failure to comply results in $750.00 in statutory damages and a plaintiff's reasonable attorney's fees and costs of suit.  Labor Code §1198.5(k)(l).

41.     On April 25, 2024, Hein first demanded his Employment Records pursuant to Labor Code §§ 226(b), 432 and 1198.5 from Bonobos. [**Ex. 1**].

42.     To date, Defendants have not provided a response.

43.     Because it has been more than 30 days since Hein's first request for Bonobos to provide Hein's Employment Records, including the date on which they paid Bonobos, Inc. for Hein's December 13, 2023 still image shoot, Hein is entitled to (i) his Employment Records; (ii) $1,500 in statutory damages; and (iii) reasonable attorney's fees and costs of suit.

44.     Lastly, Defendants have violated Wage Order 4, which specifically applies to "models." Section 2(O). Namely, Defendants have violated Wage Order 4's Section 7(B), entitled, "Records," which reads:

> Every employer shall semimonthly or at the time of each payment
> of wages furnish each employee, either as a detachable part of the
> check, draft, or voucher paying the employee's wages, or

separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

Defendants have violated Wage Order 4's Section 7(B) because Defendants failed to provide Hein his Employment Records either at the time of payment or upon his multiple requests.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE, Plaintiff prays judgment against Defendants as follows:**

1.     For Count I, Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204:

    a.  $274,218.90 in accrued waiting time penalties for paying Hein sixty-six (66) days late under Labor Code § 203;

    b.  Attorney's fees, interest, and costs of suit under Labor Code § 218.5.

2.     For Count II, Failure to Provide Employment Records, Labor Code §§ 226(b), 432, and 1198.5:

    a.  $750.00 in statutory damages under Labor Code § 226(f).

    b.  $750.00 in statutory damages under Labor Code § 1198.5(k)

    c.  Reasonable attorney's fees and cost of suit. Labor Code §§ 226(e)(1), 1198.5(l).

3.     Pre-judgment interest on all Counts.

4.     Such other and further relief as this Court deems just and proper.

DATED:     June 18, 2024                                    **KANE LAW FIRM**

By: *Brad S. Kane*
       Brad S. Kane
       Attorney for Plaintiff
       John Hein

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

1    **DECLARATION OF KUSH BANDA**

2    I, Kush Banda, hereby declare as follows:

3    1.    I have personal knowledge of the facts stated in this Declaration, except where stated

4        on information and belief, and as such matters, I am informed and believe that they

5        are true.

6    2.    I am a male model in the state of California.

7    3.    Clothing brands employ me to wear their products in still image photos, then use

8        those photos in advertisements to entice potential customers to purchase their wares.

9    4.    From December 13-15, 2023, Bonobos Inc. employed me for a still image shoot. The

10        photos were intended for use in marketing its products. The daily wage for this still

11        image shoot was $2,500.00 plus an overall usage fee of $1,000.00.

12    5.    On December 13, 2023, I worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch

13        for a total of 9.25 hours). On December 14, 2023, I worked from 7:00 am to 5:00 pm

14        (with 1 hour unpaid lunch for a total of 9 hours). On December 15, 2023, I worked

15        from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). When

16        calculating waiting penalties, all compensation earned must be included, such as

17        overtime and the usage fee. My actual daily rate is my regular daily rate of $2,500.00

18        per day plus the average daily usage fee of $333.33 (the usage fee of $1,000.00

19        divided by the three (3) days worked), or $2,833.33. Further, my total overtime pay

20        was $1,859.37, and my average daily overtime is $619.79 based on total overtime

21        divided by three (3) days worked. Thus, my total daily rate is equal to my actual daily

22        rate plus my average daily overtime, or $3,453.12. As such, I am owed waiting time

23        penalties equal to thirty (30) days at his total daily rate of $3,452.12 per day, or

24        $103,593.60. (The maximum amount of waiting time penalties that can be awarded

25        is 30 days' pay.)

26    6.    Under Labor Code § 201.6 and § 204, Defendants' payment for my December 13-

27        15, 2023 still image shoot was legally due no later than December 26, 2023.

28    7.    When my Talent Agency provided my accounting statement, I noticed that my pay

        for the Bonobos December 13-15, 2023 still image shoot had not been paid timely.

8.   On February 29, 2024, Bonobos paid me the outstanding balance for my December 13-15, 2023 still image shoot.

9.   Since the payment was legally due no later than December 26, 2023, Bonobos paid me sixty-five (65) days late.

10.   In early 2024, Defendants exercised their option to pay $1,000 for additional usage rights. To date, Defendants have not paid that amount. The definition of "wages" under California Labor Code section 200 is very broad and includes all amounts for labor performed by employees, regardless of whether the payment is fixed or calculated by time, task, piece, commission basis, or other methods, such as usage fees, if the recipient is an employee. Defendants failed to pay me the $1,000.00 additional usage due in early 2024. As such, Bonobos owes additional waiting time penalties equal to thirty (30) days at his total daily rate of $1,000.00 per day, or $30,000.00.

11.   As a result, Bonobos owes me $133,593.60 in waiting time penalties; $1,000 in unpaid wages plus reasonable attorney's fees and costs of suit under Labor Code § 218.5 plus interest from the date the unpaid wages were due under Labor Code § 218.6.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2025 at Los Angeles, California.


Kush Banda
Plaintiff

**Nathaniel Grundmann**

| | |
|---|---|
| **From:** | Kush Banda <kushbanda1@gmail.com> |
| **Sent:** | Friday, July 19, 2024 3:01 PM |
| **To:** | Nathaniel Grundmann |
| **Subject:** | Fwd: VISION LA Confirmed With BONOBOS - BONOBOS |
| **Attachments:** | Appointment.ics |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

---------- Forwarded message ---------
From: **Ross Conway** <notify@portfoliopad.com>
Date: Thu, Dec 7, 2023 at 8:41 AM
Subject: VISION LA Confirmed With BONOBOS - BONOBOS
To: <kushbanda1@gmail.com>

Hi Kush! please confirm the meeting location on the 12th. if you want to uber there and send me the receipt this is great.

# VISION

## KUSH BANDA

Tue
**12**

Dec/12/2023 9:00 AM

Dec/16/2023 5:00 PM

Confirmed

💼 BONOBOS

1

| Dec |  BONOBOS |
|---|---|

**Client**      BONOBOS
**Product**   BONOBOS

**Notes**      We'd like to officially confirm Kush Banda for our Bonobos Out West stills + motion campaign with photographer Clement Pascal. Please reply-all with the signed talent release to confirm.

CLIENT /
Bonobos

ROLE /
Talent

DATES /
Tue, Dec 12: Drive to Palm Springs + Fitting
Wed, Dec 13 - Fri, Dec 15: Shoot
Sat, Dec 16: Drive to LA

RATE /
Day Rate: $2,500/day + 20% x 3 days
TOTAL: USD 9,000.00

USAGE OPTION ADDITIONS /
1K + AF for OOH
1K + AF for TVC

MEDIA /
Stills
Video

USAGE /
In-Store (windows and print)
Digital & Social (paid, owned, earned)
Direct to Consumer
Territory: North America
Excluding, but option to add: OOH, TVC

DURATION /

6 Months
Archival Usage in Perpetuity

BILLING /
Address the final invoice to Bonobos, but send it + W9 to
dev@getitproductions.net, tara@getitproductions.net, and
office@getitproductions.net.

Bonobos
45 West 25th Street, 5th Floor
New York, NY 10010
Attn: Christopher Jurgensen
Ref: Spring 24 Out West

SHOOT LOCATIONS /
Escena Golf Club: 1100 Clubhouse View Dr. Palm Springs, CA 92262
The Courts: 286 Palm Canyon Drive, Borrego Springs, CA 92004
Desert Palisades House: 2278 City View Drive, Palm Springs, CA92264

FITTING /
We will fit him in a conference room at the Ace Hotel on Tuesday, 12/12.
Standby for the call sheet for time + place.

HOTEL /
Production will provide lodging in Palm Springs at The Ace Hotel & Swim
Club.
701 E Palm Canyon Dr, Palm Springs, CA 92264

Please provide me with his full name for your reservation and be sure to
bring his ID for check-in.

TRANSPORTATION /
Production will provide a shuttle from LA to PS for the fitting on Tuesday,
12/12 departing at 8:30 AM.
Please let us know which neighborhood he lives in so we can find a mutually
central meeting spot for the shuttle.

The shuttle van will transport him to and from set each day.

Production will transport him back to the meeting spot in LA on the morning
of Saturday, 12/16.

**Additional
Notes**

TALENT MEETING PLACE, 12/12
Coffee for Sasquatch

[7020 Melrose Ave, Los Angeles, CA 90038](7020 Melrose Ave, Los Angeles, CA 90038)
Arrive at 7:50 AM to depart by 8:00 AM
Driver: JB, 608-354-9188
Drive to Ace Hotel, Palm Springs, CA. ~2 hr 15 min drive

Have Kush self-report here and we'll return on 12/16 back to the same place. Feel free to bill back his Ubers if you'd like.

**Booker**            Ross Conway

✓ ACCEPT            ✕ DECLINE

portfoliopad
POWERED BY MAINBOARD

**CHAMPAGNE TROTT MANAGEMENT LLC**
**8631 WASHINGTON BLVD.**
**CULVER CITY, CA 90232**

**310-733-4440**

**Payment Statement December 20, 2023**

KUSH BANDA
2020 MAINE AVE
LONG BEACH, CA 90806

HAPPY HOLIDAYS!

ACH/DIRECT DEPOSIT #90052 SS

| Client | Inv# | Job Date | Rate | #Units | Base Fee | Oth Chg | Sub Tot | Commis | Reserve | Taxes | Net Due | Reason for Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LUCKY BRAND | 149950 | 10/20/23 | 5000.00 | 1.00dy | 5000.00 | 0.00 | 5000.00 | 1000.00 | 0.00 | 0.00 | 4000.00 | |
| LUCKY BRAND | 149998 | 11/07/23 | 2500.00 | 1.00dy | 2500.00 | 0.00 | 2500.00 | 500.00 | 0.00 | 0.00 | 2000.00 | TIL PD |
| LUCKY BRAND | 150076 | 11/20/23 | 2500.00 | 0.50dys | 1250.00 | 0.00 | 1250.00 | 250.00 | 0.00 | 0.00 | 1000.00 | TIL PD |
| BONOBOS | 150156 | 12/12/23 | 2500.00 | 1.50dys | 3750.00 | 0.00 | 3750.00 | 750.00 | 0.00 | 0.00 | 3000.00 | |
| BONOBOS | 150156 | 12/13/23 | 2500.00 | 1.50dys | 3750.00 | 0.00 | 3750.00 | 750.00 | 0.00 | 0.00 | 3000.00 | TIL PD |
| | | **Reported** | | | 16250.00 | | 3250.00 | | 0.00 | 0.00 | 13000.00 | |
| | | **Less Amount on Hold** | | | 7500.00 | | 1500.00 | | 0.00 | 0.00 | 6000.00 | |
| | | **Amount Due** | | | 8750.00 | | 1750.00 | | 0.00 | 0.00 | 7000.00 | |

| | |
|---|---|
| **Gross Amount Due** | 8750.00 |
| **Less Commission & Tax** | 1750.00 |
| **Less Reserve Amount** | 0.00 |
| **Less Prior Advances** | 52.50 |
| **Balance Due Artist** | 6947.50 |

(Please see attached)
(Please find check enclosed)

**CHAMPAGNE TROTT MANAGEMENT LLC**
**8631 WASHINGTON BLVD.**
**CULVER CITY, CA 90232**

**310-733-4440**

KUSH BANDA
2020 MAINE AVE
LONG BEACH, CA 90806

## Advance Account as of December 20, 2023

| Date | Advance | Repayment | Check # | Description | Remark |
|---|---|---|---|---|---|
| 11/20/2023 | 52.50 | 0.00 | | SANTIAGO FRANCO GOSEE SERIES | PHOTOGRAPHER |
| 12/20/2023 | 0.00 | 52.50 | | PAYMENT DEDUCTION FOR PRIOR ADVANCE(S) | PHOTOGRAPHER |
| | 52.50 | 52.50 | | | |

**CHAMPAGNE TROTT MANAGEMENT, LLC**
**8631 WASHINGTON BLVD.**
**CULVER CITY, CA 90232**

**310-733-4440**

**Payment Statement February 29, 2024**

KUSH BANDA
2020 MAINE AVE
LONG BEACH, CA 90806

ACH / DIRECT DEPOSIT #90054 45

| Client | Inv# | Job Date | Rate | #Units | Base Fee | Oth Chg | Sub Tot | Commis | Reserve | Taxes | Net Due | Reason for Hold |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BONOBOS | 150156 | 12/13/23 | 2500.00 | 1.50dys | 3750.00 | 0.00 | 3750.00 | 750.00 | 0.00 | 0.00 | 3000.00 | |
| DREAM PROJECTS, LLC | 150321 | 01/09/24 | 1500.00 | 1.00dy | 1500.00 | 0.00 | 1500.00 | 300.00 | 0.00 | 0.00 | 1200.00 | TIL PD |
| | | | | | Reported | | 5250.00 | 1050.00 | 0.00 | 0.00 | 4200.00 | |
| | | | | Less Amount on Hold | | | 1500.00 | 300.00 | 0.00 | 0.00 | 1200.00 | |
| | | | | | Amount Due | | 3750.00 | 750.00 | 0.00 | 0.00 | 3000.00 | |

| | |
|---|---|
| **Gross Amount Due** | 3750.00 |
| **Less Commission & Tax** | 750.00 |
| **Less Reserve Amount** | 0.00 |
| **Less Prior Advances** | 0.00 |
| **Balance Due Artist** | 3000.00 |

(Please find check enclosed)

1

**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579

Attorney for Plaintiff
Kush Banda

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES - WEST DISTRICT – SANTA MONICA**
**COURTHOUSE**

| | |
|---|---|
| KUSH BANDA, an individual, | Case No.: |
| Plaintiff, | **UNLIMITED JURISDICTION** |
| v. | **COMPLAINT FOR:** |
| BONOBOS, INC., a Delaware Corporation; and DOES 1 to 10, inclusive, | **(1) Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204; and** |
| Defendants. | **(2) Breach of Oral Agreement** |
| | **JURY TRIAL REQUESTED** |

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**COMPLAINT**

Plaintiff Kush Banda ("Banda" or "Plaintiff") alleges against defendants Bonobos, Inc. ("Bonobos"), and Does 1-10 (collectively, "Defendants"), inclusive, as follows:

### INTRODUCTION

1.    This is a Complaint for  Waiting Time Penalties under Labor Code §§ 201, 201.6, 202, 203, 204.

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over all causes of action alleged in this Complaint pursuant to the California Constitution, Article VI, § 10, and CCP § 410.10, and is a Court of competent jurisdiction to grant the relief requested. Plaintiff's Labor Code claims arise under the laws of the State of California, are not preempted by federal law, do not challenge conduct within any federal agency's exclusive domain, and are not statutorily assigned to any other trial court.

3.    Venue is proper in the Superior Court for the County of Los Angeles because the acts of Defendants that form the basis for the causes of action in this Complaint occurred in the County of Los Angeles.

### THE PARTIES

4.    At all relevant times Plaintiff was and is an individual residing in the County of Los Angeles, State of California.

5.    Plaintiff is informed and believes and thereon alleges that Bonobos is a Delaware Corporation with its primary place of business at 850 Cherry Avenue, San Bruno, CA 94066. Bonobos is a is a fashion brand that designs, sources, markets, and sells high-quality retail products in the men's apparel and accessories categories.

7.    The true names and capacities, whether individual, corporate, or otherwise of Defendants named herein as Does 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to set forth the true names and capacities of Defendant Does once they have been ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each Defendant Doe participated in, aided or abetted some or all of the acts alleged herein and is liable to Plaintiff on that basis.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

1
COMPLAINT

8.      Plaintiff is informed and believes that the Defendants are alter egos.   The Defendants' unity of interest and ownership would promote injustice if the fiction of a corporate separate existence is recognized.   Plaintiff is informed and believes that each Defendant is the alter ego of the other Defendants and the Doe Defendants are alter egos of Defendants and the other Doe Defendants based upon the following factors:

A.  the commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses;

B.  the treatment by individuals of the assets of the corporations as their own;

C.  the failure to obtain authority to issue stock or to subscribe to or issue the same;

D.  the holding out by an individual that he or she is personally liable for the debts of the corporation;

E.  the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;

F.  the sole ownership of all of the stock in a corporation by members of one family;

G.  the use of the same office or business location;

H.  the employment of the same employees and/or attorney;

I.  the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization;

J.  the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;

K.  misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;

L.  the disregard of legal formalities and the failure to maintain arm's length relationships among related entities;

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

M. the use of the corporate entity to procure labor, services or merchandise for another person or entity;

N. the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;

O. the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and

P. the formation and use of a corporation to transfer to it the existing liability of another person or entity.

9.     Plaintiff is informed and believes that the Defendants are or were joint employers of the Plaintiff.  At all material times, all Defendants have acted as the employer of Plaintiff and are or were "employing" him within the meaning of the law of California and under principles of common law.

10.     Plaintiff is informed and believes that each Defendant acted as a joint employer. As joint employers, under common law and statutory definitions, Defendants are all jointly and severally liable for back pay, liquidated damages, statutory damages and other relief owed to Plaintiff.

11.     Plaintiff's *employee* status is conclusively established by the 2019 Photoshoot Pay Easement Act. Labor Code § 201.6(a)(1), which expressly provides that print *models* are *employees* as a matter of law:

> "Print Shoot employee" means an individual hired for a period of limited duration to render services relating to or supporting a still image shoot, including film or digital photography, for use in print, digital, or internet media.

12.     Further, "A print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code § 201.6(a); *see also Smith v. Superior Court ("L'Oreal")*, 39 Cal.4th 77, 85 (2006) (Hair care company owed

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

hair model waiting time penalties for failure to pay at the end of a one-day assignment); *Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 5-6 (1980) (photographer owed waiting time penalties to model).

13.     Alternatively, even if the 2019 Photoshoot Pay Easement Act did not apply, Plaintiff would come within Wage Order 4-2001 "Regulating Wages, Hours And Working Conditions In The Professional, Technical, Clerical, Mechanical And Similar Occupations." Section 2, entitled, "Definitions", states:

>  (O) "Professional, Technical, Clerical, Mechanical, and Similar Occupations" includes . . . *models*[.]

14.     Plaintiff is informed and believes that Defendants, and each of them, at all times material to this Complaint, have acted as "employers" and Plaintiff was an "employee"—as opposed to an "independent contractor"—under the California Supreme Court's "ABC" test as explained in *Dynamex Operations W. v. Superior Court* ("*Dynamex*"), 4 Cal.5th 903, 964 (2018). Specifically, under *Dynamex*, workers are presumed to be employees instead of independent contractors unless all three of the following:

>  A.  that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact;
>
>  B.  that the worker performs work that is outside the usual course of the hiring entity's business; and
>
>  C.  that the worker is customarily engaged in an independently established trade, occupation, or business. *Id.*

15.     Labor Code § 203(a) provides in pertinent part:

>  If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## FACTUAL ALLEGATIONS

16.     Banda is a male model.

17.     Clothing brands photograph Banda wearing their products then market those photographs to entice potential customers to purchase their wares.

18.     Banda has a California Talent Agent, which procures employment for Banda via photography shoots.

19.     From December 13-15, 2023, Defendants hire Banda for a still image shoot to model and the photos were intended for use in marketing its products. The daily wage for this still image shoot was $2,500.00 plus an overall usage fee of $1,000.00.

20.     Under Labor Code § 201.6 and § 204, Defendants' payment for Banda's December 13, 2023 still image shoot was legally due no later than December 26, 2023.

21.     When Banda's Talent Agency provided Banda with his accounting statement, Banda noticed that his pay for his December 13, 2023 still image shoot had not been timely paid.

22.     On February 29, 2024, Defendants paid Banda the outstanding balance for Banda's December 13, 2023 Bonobos still image shoot (even though the payment was legally due no later than December 26, 2023).

23.     Defendants paid Banda sixty-five (65) days late.

24.     In early 2024, Defendants exercised their option to pay Banda $1,000 for additional usage rights. To date, Defendants have not paid that amount. The definition of "wages" under California Labor Code section 200 is very broad and includes all amounts for labor performed by employees, regardless of whether the payment is fixed or calculated by time, task, piece, commission basis, or other methods, such as usage fees, if the recipient is an employee.

25.     Defendants have also violated Wage Order 4-2001, which regulates "Wage, Hours And Working Conditions In Professional, Technical, Clerical, Mechanical And Similar Occupations" ("Wage Order 4").   The definition of "Professional, Technical, Clerical, Mechanical And Similar Occupations includes . . . models". Section 2(O).

**COMPLAINT**

26.     Finally, Defendants have violated Wage Order 4: (i) Section 4, entitled, "Minimum Wages"[1] because they failed to pay Banda at least minimum wage on time.

### FIRST CAUSE OF ACTION

### (Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204)

27.     Plaintiff re-alleges and incorporates the preceding paragraphs as though fully set forth herein.

28.     Professional photography models provide their services as "employees" and are entitled to waiting time penalties. Labor Code 201.6; *see also Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 5-6 (1980) (photographer owed waiting time penalties to model); *Smith v. Superior Court ("L'Oreal")*, 39 Cal.4th 77, 85 (2006) (Hair care company owed hair model waiting time penalties for failure to pay at the end of a one (1) day assignment). As the *L'Oreal* court explains:

> Together, [Labor Code] sections 201 and 202 direct employers to promptly pay wages when employment is terminated by discharge, or by resignation if no requisite written contract exists, with section 203 providing for penalties when the employer willfully fails to do so.

39 Cal.4th at 85.

29.     At all relevant times, Plaintiff was an employee of Defendants covered by Labor Code §§ 201-204.

30.     Under Labor Code § 203, if an employer willfully fails to pay in accordance with § 201.6, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . ; but the wages shall not continue for more than 30 days." To relieve any perceived unfairness to employers, the 2019 Photoshoot Pay Easement Act created special rules that gave photoshoot employers additional time to pay models without incurring waiting time

---

[1] Wage Order 4, Section 4(B) provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

penalties — "[a] print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code §201.6.

31.    Moreover, California employers must:

    i.    establish a weekly, biweekly or semimonthly payroll period;

    ii.    communicate it to employees in postings and Wage Theft Protection Act notices upon hire (for all non-exempt employees);

    iii.    pay employees consistently within 7-10 days of the end of the pay period;

    iv.    wages earned between the 1st and 15th day of the month must be paid by the 26th day of the month; and

    v.    wages earned between the 16th and last day of the month must be paid by the 10th day of the following month.

Labor Code § 204.

32.    As a result, Banda's wages for his December 13, 2023 still photo shoot were due on or before, December 26, 2023 and waiting time penalties of one (1) day's pay accrue for each day late (up to a maximum of thirty (30) days).

33.    Lastly, Defendants have violated Wage Order 4, which specifically applies to "models." Section 2(O). Namely, Defendants have violated Wage Order 4's Section 4(B), entitled, "Minimum Wages," which reads:

> Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

Defendants have violated Wage Order 4's Section 4(B) because Defendants failed to pay Banda on or before December 26, 2023, for his December 13, 2023 photo shoot.

34.    Because Bonobos did not pay Banda's talent agency until , Bonobos paid Banda more than thirty (30) days late. As such, Banda is owed waiting time penalties equal to thirty (30) days' pay.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

36.     On December 13, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). On December 14, 2023, my client worked from 7:00 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9 hours). On December 15, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). When calculating waiting penalties, all compensation earned must be included, such as overtime and the usage fee.  When calculating waiting penalties, all compensation earned must be included, such as overtime and the usage fee. Division of Labor Standards Enforcement Manual ("DSLE") §§ 4.3.4.1, 49.1.2.3. A daily rate can only be based on the maximum number of legal hours worked. DLSE 49.1.4 ("Ordinarily, the hours to be used in computing the regular rate of pay may not exceed the legal maximum regular hours which, in most cases is 8 hours per day, 40 hour per week"); *Skyline Homes, Inc., etc. et al v. Department of Industrial Relations, et al.,*165 Cal.App.3rd 239, 245-250 (1985), *disapproved on other grounds*, *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557 1996). Here, my Client's actual daily rate is his regular daily rate of $2,500.00 per day plus the average daily usage fee of $333.33 (the usage fee of $1,000.00 divided by the three (3) days worked), or $2,833.33. Thus, Banda's total overtime pay is $1,859.37, and his average daily overtime is $619.79 based on total overtime divided by three (3) days worked. Banda's total daily rate is equal to his actual daily rate plus his average daily overtime, or $3,453.12. As such, Banda is owed waiting time penalties equal to thirty (30) days at his total daily rate of $3,452.12 per day, or $103,593.60.

37.     In addition, to date, Defendants failed to pay Banda the $1,000.00 additional usage due in early 2024. As such, Banda is owed additional waiting time penalties equal to thirty (30) days at his total daily rate of $1,000.00 per day, or $30,000.00.

## SECOND CAUSE OF ACTION

### (Breach Of Oral Agreement To Pay Additional Wages)

38.     Plaintiff re-alleges and incorporates the preceding paragraphs as though fully set forth herein.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

39.     In early 2024, Defendants and Banda entered an oral contract authorizing additional usage of the images taken during the December 13 – 15, 2023 photoshoot in exchange for $1,000.00.

40.     While Banda authorized the additional usage (which was all he was required to do), Defendants failed to pay the additional $1,000.00.

41.     As a result, Banda was harmed in the amount of $1,000.00.

42.     Since the amount owed was wages, Banda is also entitled to attorney's fees under Labor Code § 218.5.

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff prays judgment against Defendants as follows:**

1.     For Count I, Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204:

    a.    $133,593.60 in accrued waiting time penalties for paying Banda more than 30 days late on each payment under Labor Code § 203;

2.     For Count II, Failure to Pay Wages,

    a.    $1,000.00 in unpaid wages;

    b.    Attorney's fees, interest, and costs of suit under Labor Code § 218.5.

3.     Pre-judgment interest on all Counts.

4.     Such other and further relief as this Court deems just and proper.

DATED:      July 26, 2024                                   **KANE LAW FIRM**


By:_____
        Brad S. Kane
        Attorney for Plaintiff
        Kush Banda