**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579

Attorney for Plaintiff
Kush Banda

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES - WEST DISTRICT – SANTA MONICA COURTHOUSE**

| | |
|---|---|
| KUSH BANDA, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BONOBOS, INC., a Delaware Corporation; and DOES 1 to 10, inclusive, <br><br> Defendants. | **Case No.:** <br><br> **UNLIMITED JURISDICTION** <br><br> **COMPLAINT FOR:** <br><br> **(1) Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204; and** <br><br> **(2) Breach of Oral Agreement** <br><br> **JURY TRIAL REQUESTED** |

**COMPLAINT**

Plaintiff Kush Banda ("Banda" or "Plaintiff") alleges against defendants Bonobos, Inc. ("Bonobos"), and Does 1-10 (collectively, "Defendants"), inclusive, as follows:

## INTRODUCTION

1. This is a Complaint for Waiting Time Penalties under Labor Code §§ 201, 201.6, 202, 203, 204.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over all causes of action alleged in this Complaint pursuant to the California Constitution, Article VI, § 10, and CCP § 410.10, and is a Court of competent jurisdiction to grant the relief requested. Plaintiff's Labor Code claims arise under the laws of the State of California, are not preempted by federal law, do not challenge conduct within any federal agency's exclusive domain, and are not statutorily assigned to any other trial court.

3. Venue is proper in the Superior Court for the County of Los Angeles because the acts of Defendants that form the basis for the causes of action in this Complaint occurred in the County of Los Angeles.

## THE PARTIES

4. At all relevant times Plaintiff was and is an individual residing in the County of Los Angeles, State of California.

5. Plaintiff is informed and believes and thereon alleges that Bonobos is a Delaware Corporation with its primary place of business at 850 Cherry Avenue, San Bruno, CA 94066. Bonobos is a is a fashion brand that designs, sources, markets, and sells high-quality retail products in the men's apparel and accessories categories.

7. The true names and capacities, whether individual, corporate, or otherwise of Defendants named herein as Does 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to set forth the true names and capacities of Defendant Does once they have been ascertained. Plaintiff is informed and believes and, on that basis, alleges that each Defendant Doe participated in, aided or abetted some or all of the acts alleged herein and is liable to Plaintiff on that basis.

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

8. Plaintiff is informed and believes that the Defendants are alter egos. The Defendants' unity of interest and ownership would promote injustice if the fiction of a corporate separate existence is recognized. Plaintiff is informed and believes that each Defendant is the alter ego of the other Defendants and the Doe Defendants are alter egos of Defendants and the other Doe Defendants based upon the following factors:

    A. the commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses;

    B. the treatment by individuals of the assets of the corporations as their own;

    C. the failure to obtain authority to issue stock or to subscribe to or issue the same;

    D. the holding out by an individual that he or she is personally liable for the debts of the corporation;

    E. the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;

    F. the sole ownership of all of the stock in a corporation by members of one family;

    G. the use of the same office or business location;

    H. the employment of the same employees and/or attorney;

    I. the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization;

    J. the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;

    K. misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;

    L. the disregard of legal formalities and the failure to maintain arm's length relationships among related entities;

M. the use of the corporate entity to procure labor, services or merchandise for another person or entity;

N. the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;

O. the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and

P. the formation and use of a corporation to transfer to it the existing liability of another person or entity.

9. Plaintiff is informed and believes that the Defendants are or were joint employers of the Plaintiff. At all material times, all Defendants have acted as the employer of Plaintiff and are or were "employing" him within the meaning of the law of California and under principles of common law.

10. Plaintiff is informed and believes that each Defendant acted as a joint employer. As joint employers, under common law and statutory definitions, Defendants are all jointly and severally liable for back pay, liquidated damages, statutory damages and other relief owed to Plaintiff.

11. Plaintiff's *employee* status is conclusively established by the 2019 Photoshoot Pay Easement Act. Labor Code § 201.6(a)(1), which expressly provides that print *models* are *employees* as a matter of law:

> "Print Shoot employee" means an individual hired for a period of limited duration to render services relating to or supporting a still image shoot, including film or digital photography, for use in print, digital, or internet media.

12. Further, "A print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code § 201.6(a); *see also Smith v. Superior Court ("L'Oreal")*, 39 Cal.4th 77, 85 (2006) (Hair care company owed

1  hair model waiting time penalties for failure to pay at the end of a one-day assignment); *Zaremba*

2  *v. Miller*, 113 Cal.App.3d Supp. 1, 5-6 (1980) (photographer owed waiting time penalties to

3  model).

4        13.    Alternatively, even if the 2019 Photoshoot Pay Easement Act did not apply,

5  Plaintiff would come within Wage Order 4-2001 "Regulating Wages, Hours And Working

6  Conditions In The Professional, Technical, Clerical, Mechanical And Similar Occupations."

7  Section 2, entitled, "Definitions", states:

> (O) "Professional, Technical, Clerical, Mechanical, and Similar Occupations" includes . . . *models*[.]

      14.    Plaintiff is informed and believes that Defendants, and each of them, at all times material to this Complaint, have acted as "employers" and Plaintiff was an "employee"—as opposed to an "independent contractor"—under the California Supreme Court's "ABC" test as explained in *Dynamex Operations W. v. Superior Court* ("*Dynamex*"), 4 Cal.5th 903, 964 (2018). Specifically, under *Dynamex*, workers are presumed to be employees instead of independent contractors unless all three of the following:

> A. that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact;
>
> B. that the worker performs work that is outside the usual course of the hiring entity's business; and
>
> C. that the worker is customarily engaged in an independently established trade, occupation, or business. *Id.*

      15.    Labor Code § 203(a) provides in pertinent part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## **FACTUAL ALLEGATIONS**

16. Banda is a male model.

17. Clothing brands photograph Banda wearing their products then market those photographs to entice potential customers to purchase their wares.

18. Banda has a California Talent Agent, which procures employment for Banda via photography shoots.

19. From December 13-15, 2023, Defendants hire Banda for a still image shoot to model and the photos were intended for use in marketing its products. The daily wage for this still image shoot was $2,500.00 plus an overall usage fee of $1,000.00.

20. Under Labor Code § 201.6 and § 204, Defendants' payment for Banda's December 13, 2023 still image shoot was legally due no later than December 26, 2023.

21. When Banda's Talent Agency provided Banda with his accounting statement, Banda noticed that his pay for his December 13, 2023 still image shoot had not been timely paid.

22. On February 29, 2024, Defendants paid Banda the outstanding balance for Banda's December 13, 2023 Bonobos still image shoot (even though the payment was legally due no later than December 26, 2023).

23. Defendants paid Banda sixty-five (65) days late.

24. In early 2024, Defendants exercised their option to pay Banda $1,000 for additional usage rights. To date, Defendants have not paid that amount. The definition of "wages" under California Labor Code section 200 is very broad and includes all amounts for labor performed by employees, regardless of whether the payment is fixed or calculated by time, task, piece, commission basis, or other methods, such as usage fees, if the recipient is an employee.

25. Defendants have also violated Wage Order 4-2001, which regulates "Wage, Hours And Working Conditions In Professional, Technical, Clerical, Mechanical And Similar Occupations" ("Wage Order 4"). The definition of "Professional, Technical, Clerical, Mechanical And Similar Occupations includes . . . models". Section 2(O).

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

5
**COMPLAINT**

26. Finally, Defendants have violated Wage Order 4: (i) Section 4, entitled, "Minimum Wages"[1] because they failed to pay Banda at least minimum wage on time.

## FIRST CAUSE OF ACTION

### (Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204)

27. Plaintiff re-alleges and incorporates the preceding paragraphs as though fully set forth herein.

28. Professional photography models provide their services as "employees" and are entitled to waiting time penalties. Labor Code 201.6; *see also Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 5-6 (1980) (photographer owed waiting time penalties to model); *Smith v. Superior Court ("L'Oreal")*, 39 Cal.4th 77, 85 (2006) (Hair care company owed hair model waiting time penalties for failure to pay at the end of a one (1) day assignment). As the *L'Oreal* court explains:

> Together, [Labor Code] sections 201 and 202 direct employers to promptly pay wages when employment is terminated by discharge, or by resignation if no requisite written contract exists, with section 203 providing for penalties when the employer willfully fails to do so.

39 Cal.4th at 85.

29. At all relevant times, Plaintiff was an employee of Defendants covered by Labor Code §§ 201-204.

30. Under Labor Code § 203, if an employer willfully fails to pay in accordance with § 201.6, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . ; but the wages shall not continue for more than 30 days." To relieve any perceived unfairness to employers, the 2019 Photoshoot Pay Easement Act created special rules that gave photoshoot employers additional time to pay models without incurring waiting time

---

[1] Wage Order 4, Section 4(B) provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

penalties — "[a] print shoot employee is entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday." Labor Code §201.6.

31. Moreover, California employers must:

  i. establish a weekly, biweekly or semimonthly payroll period;
  ii. communicate it to employees in postings and Wage Theft Protection Act notices upon hire (for all non-exempt employees);
  iii. pay employees consistently within 7-10 days of the end of the pay period;
  iv. wages earned between the 1st and 15th day of the month must be paid by the 26th day of the month; and
  v. wages earned between the 16th and last day of the month must be paid by the 10th day of the following month.

Labor Code § 204.

32. As a result, Banda's wages for his December 13, 2023 still photo shoot were due on or before, December 26, 2023 and waiting time penalties of one (1) day's pay accrue for each day late (up to a maximum of thirty (30) days).

33. Lastly, Defendants have violated Wage Order 4, which specifically applies to "models." Section 2(O). Namely, Defendants have violated Wage Order 4's Section 4(B), entitled, "Minimum Wages," which reads:

> Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

Defendants have violated Wage Order 4's Section 4(B) because Defendants failed to pay Banda on or before December 26, 2023, for his December 13, 2023 photo shoot.

34. Because Bonobos did not pay Banda's talent agency until , Bonobos paid Banda more than thirty (30) days late. As such, Banda is owed waiting time penalties equal to thirty (30) days' pay.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

36. On December 13, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). On December 14, 2023, my client worked from 7:00 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9 hours). On December 15, 2023, my client worked from 6:45 am to 5:00 pm (with 1 hour unpaid lunch for a total of 9.25 hours). When calculating waiting penalties, all compensation earned must be included, such as overtime and the usage fee. When calculating waiting penalties, all compensation earned must be included, such as overtime and the usage fee. Division of Labor Standards Enforcement Manual ("DSLE") §§ 4.3.4.1, 49.1.2.3. A daily rate can only be based on the maximum number of legal hours worked. DLSE 49.1.4 ("Ordinarily, the hours to be used in computing the regular rate of pay may not exceed the legal maximum regular hours which, in most cases is 8 hours per day, 40 hour per week"); *Skyline Homes, Inc., etc. et al v. Department of Industrial Relations, et al.*,165 Cal.App.3rd 239, 245-250 (1985), *disapproved on other grounds*, *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557 1996). Here, my Client's actual daily rate is his regular daily rate of $2,500.00 per day plus the average daily usage fee of $333.33 (the usage fee of $1,000.00 divided by the three (3) days worked), or $2,833.33. Thus, Banda's total overtime pay is $1,859.37, and his average daily overtime is $619.79 based on total overtime divided by three (3) days worked. Banda's total daily rate is equal to his actual daily rate plus his average daily overtime, or $3,453.12. As such, Banda is owed waiting time penalties equal to thirty (30) days at his total daily rate of $3,452.12 per day, or $103,593.60.

37. In addition, to date, Defendants failed to pay Banda the $1,000.00 additional usage due in early 2024. As such, Banda is owed additional waiting time penalties equal to thirty (30) days at his total daily rate of $1,000.00 per day, or $30,000.00.

## SECOND CAUSE OF ACTION

**(Breach Of Oral Agreement To Pay Additional Wages)**

38. Plaintiff re-alleges and incorporates the preceding paragraphs as though fully set forth herein.

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

39. In early 2024, Defendants and Banda entered an oral contract authorizing additional usage of the images taken during the December 13 – 15, 2023 photoshoot in exchange for $1,000.00.

40. While Banda authorized the additional usage (which was all he was required to do), Defendants failed to pay the additional $1,000.00.

41. As a result, Banda was harmed in the amount of $1,000.00.

42. Since the amount owed was wages, Banda is also entitled to attorney's fees under Labor Code § 218.5.

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff prays judgment against Defendants as follows:**

1. For Count I, Waiting Time Penalties, Labor Code §§ 201, 201.6, 202, 203, 204:
   a. $133,593.60 in accrued waiting time penalties for paying Banda more than 30 days late on each payment under Labor Code § 203;
2. For Count II, Failure to Pay Wages,
   a. $1,000.00 in unpaid wages;
   b. Attorney's fees, interest, and costs of suit under Labor Code § 218.5.
3. Pre-judgment interest on all Counts.
4. Such other and further relief as this Court deems just and proper.

DATED:   July 26, 2024                                              **KANE LAW FIRM**

By:_____
            Brad S. Kane
            Attorney for Plaintiff
            Kush Banda