**Erin Ersenkal**
33-60 21st St. 10b
Long Island City, NY 11106
erin.ersenkal@gmail.com
917.733.7979

October 27, 2025

United States Bankruptcy Court
District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

Re: Response to Plan Administrator's Eighth Omnibus Substantive Objection to Claims (Dated October 8, 2025; Doc 1501)
Case No. 24-10831 KBO
Claimant: Erin Ersenkal, Claim No.: 88
Hearing Date: November 18, 2025, 9:30 a.m. ET
Response/Objection Deadline: October 28, 2025, 4:00 p.m. ET

Dear Judge Owens / To Whom It May Concern,

As the claimant in this matter, I submit this response to the Plan Administrator's Eighth Omnibus Substantive Objection to Claims dated October 8, 2025, docketed as Doc 1501 in this case, concerning my Claim No. 88. I am representing myself in this proceeding.

I respectfully dispute the Plan Administrator's objection to the classification of my claim beyond the acknowledged $9,000 administrative expense portion. While my original claim was filed with a split classification, I now respectfully request that the entire claim totaling $36,780 be recognized as entitled to priority or administrative status. This request is based on a fuller understanding of the legal entitlement, contractual obligations, and the substantial ongoing services I provided during the relevant bankruptcy period, as follows:

1. **Continuous and Essential Services Provided Post-Petition**
   From March 25, 2024, through September 6, 2024, I served as interim leader of the Bonobos Guideshops field organization—the retail store fleet for the Bonobos brand, owned by Express Inc., the debtor in this bankruptcy case. I was asked by the Bonobos brand leader to step into this role following departures of senior field leadership amid instability and bankruptcy rumors. I was uniquely qualified—one of very few with full operational knowledge—allowing me to assume interim leadership instantly without any onboarding, transition, or learning curve. As an original Bonobos employee and former Chief Revenue Officer responsible for the Guideshops' expansion and leadership, I provided critical leadership and operational oversight during a challenging period marked by bankruptcy filings, store closings, asset sales, and organizational transitions. My contributions were essential to preserving and transitioning the debtor's estate value.

2. **Contractual Basis for Services and Compensation**
   My services were provided under a written Independent Contractor Agreement dated March 25, 2024, specifying monthly compensation of $30,000. No amendments or termination agreements were made to modify these obligations during bankruptcy. I invoiced and was paid for services rendered post-petition, signifying acknowledgment of administrative expense status by the estate.

3. **Acknowledgment of Administrative Priority for Post-Petition Services**
   All invoices submitted for services rendered from May through September 2024 have been paid in full. The disputed invoice, covering March and April 2024 (including post-petition days), remains unpaid but should be classified consistently with other services. Thus, the full amount should be recognized as priority in line with the ongoing benefit provided to the estate.

4. **Legal and Equitable Grounds for Full Priority Treatment**

   While a portion of my invoice covers services rendered prior to the petition date, the substantial majority of my work and value delivered occurred post-petition, qualifying for administrative priority under bankruptcy law. The split on the invoice reflects the continuous nature of my services, which cannot reasonably be segregated without causing inequity. Reclassifying the majority of my claim as general unsecured disregards the essential administrative contributions I provided to preserve and transition the debtor's estate value.

   Bankruptcy courts have long recognized that pre-petition services integral to preserving or enhancing the estate and closely connected to post-petition efforts deserve administrative expense priority. In re Allegheny International, Inc., 118 B.R. 282 (Bankr. W.D. Pa. 1990), the court held that the equitable principle of fairness supports such priority where the pre- and post-petition services are continuous and necessary to the estate's preservation. Denying priority to the pre-petition portion of such services would unjustly burden the provider and undermine the estate's interests.

   Accordingly, I respectfully request that the Court uphold the priority and administrative status for the full claim in recognition of this continuous and necessary service.

Enclosed are the following numbered documents to support and substantiate my claim:
1. The Independent Contractor Agreement (5 pages)
2. Official Form 410 / Proof of Claim, including the disputed invoice (4 pages)
3. Post-Petition Invoices for May through September 2024, with corresponding payment confirmation records (5 pages total)
4. Email correspondence from John Hutchison, Senior Vice President & Bonobos Brand Leader (1 page), confirming the scope and conclusion of my engagement and acknowledging my contributions during the bankruptcy period.

Based on the above, I respectfully request that the Court:
- Deny the Objection insofar as it seeks to reclassify any portion of my claim exceeding $9,000 as general unsecured.
- Uphold the priority and administrative status of my total claim of $36,780, recognizing this as a clarification and refinement of my original claim based on applicable legal and factual circumstances.

I am prepared and willing to appear remotely at the scheduled hearing in accordance with the Court's procedures for pro se claimants and will register promptly via the eCourtAppearances system. However, I believe my written submissions fully and clearly presents my position, and my remote attendance may not materially assist the Court beyond those filings. In the interest of judicial efficiency and to avoid unnecessary burden on all parties, I respectfully request the Court consider excusing my remote appearance if it finds that appropriate, while I remain ready to participate if required.

Thank you for your consideration.

Sincerely,

*[signature]*

Erin Ersenkal
Claimant, Pro Se
3360 21st Street, 10b
Long Island City, NY 11106
erin.ersenkal@gmail.com
(917) 733-7979

# INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is between Express BNBS Fashion, LLC d/b/a/ Bonobos, a Delaware LLC ("Company") and Erin Ersenkal, an individual, a provider of operations advisory and consulting services ("Contractor"). Company and Contractor agree as follows:

1. <u>Services and Compensation</u>. Company engages Contractor to provide the services set forth on <u>Exhibit A</u> attached hereto and which services may be continuing or may be for a specific project (the "Services") and Contractor agrees to diligently, timely perform such Services with due care and consistent with the highest standards in Contractor's industry. Company agrees to pay Contractor for the Services at the rate and in the manner set forth on <u>Exhibit A</u> or as hereafter agreed in writing. This Agreement will apply to all services provided by Contractor to Company at any time.

2. <u>Confidentiality</u>. Contractor agrees that any and all Confidential Information (defined as any and all proprietary information of Company, including, but not limited to, technical data, trade secrets, know-how, product plans and developments, product specifications, inventions, processes, formulas, consumer product testing data, technology, designs, drawings, marketing, finances and other business information, including, but not limited to (i) projections of future revenues, earnings or losses, or other financial guidance (such as operating margins) or changes in such projections; (ii) earnings, revenue or other financial information; (iii) potential restatements of the Company's financial statements, changes in auditors, auditor notification that the Company may no longer rely on an auditor's audit report and issues with the Company's or the auditor's assessments of the Company's internal controls; (iv) significant pending or proposed mergers, acquisitions, tender offers, joint ventures or dispositions of significant assets or operations; (v) changes in Company management or its Board of Directors; (vi) significant actual or threatened litigation, regulatory action or governmental investigations or major developments in such matters; (vii) significant changes in operations; (viii) significant developments regarding products, services, customers, suppliers, orders, contracts or financing sources (e.g., the acquisition or loss of a significant contract or customer); (ix) changes in dividend policy, declarations of stock splits, stock repurchases or public or private sales of additional securities; (x) potential defaults under the Company's credit agreements or indentures, or the existence of material liquidity deficiencies; or (xi) bankruptcies or receiverships, and confidential or proprietary information received by Company from third parties which is subject to a duty on the part of Company to maintain the confidentiality of such information and to use it only for certain limited purposes; provided, however, that Confidential Information shall not include any items which have become known generally to the public or ascertainable from public or published information (other than as a result of unauthorized disclosure by Vendor)) will be held in strictest confidence and will not be used by Contractor or disclosed to any third party during the term of this Agreement or any time thereafter.

3. <u>Ownership of Work Product</u>. Contractor acknowledges that Company shall have exclusive, ownership rights to all Work Product (defined as all trademarks, copyrightable and patentable subject matter or any other work developed or produced during the performance

of Services by Contractor, whether separately or jointly with Company personnel), both as individual items and/or as a combination of components. All of the foregoing shall be deemed to be work made for hire and made in the course of services rendered and shall belong exclusively to Company, with Company having the sole right to possess, obtain, hold and renew, in its own name and/or for its own benefit, associated patents, copyrights, trademarks, trade secrets, registrations and/or other appropriate protection. To the extent that exclusive title and/or ownership rights may not originally vest in Company as contemplated hereunder (e.g., Work Product may not be deemed works made for hire), Contractor, at no additional charge, hereby irrevocably assigns, transfers and conveys to Company all right, title and interest therein. Contractor waives any and all claims that Contractor may now or hereafter have in any jurisdiction to so-called "moral rights" or rights of "droit moral" with respect to the Work Product. Contractor acknowledges that Contractor will not retain any rights to create copies of the Work Product or derivative works which incorporate any of the Work Product.

4.     Obligations of Contractor. Contractor will do any and all acts, and will execute any and all instruments, that Company may request to secure to itself the ownership rights obtained under this Agreement. Contractor will cooperate to the extent necessary in the institution and maintenance by Company of any action for infringement of the intellectual property rights described above. Company shall pay all expenses incurred in connection with actions pursuant to this paragraph. Contractor agrees that Company may use Contractor's name, photograph or other indicia of identification on and in connection with any Work Product created pursuant to this Agreement.

5.     Representations of Contractor. Contractor represents and warrants that: (a) all Work Product will be an original work created solely by the Contractor for Company and will not be copied in whole or in part from any existing work and that the Work Product has not been published in any form by distribution to the public by sale or other transfer of ownership or by rental, lease or lending and has not been distributed for purposes of further distribution or public display; (b) Contractor has the full power and authority to enter into this Agreement and the performance of this Agreement will not violate any agreement or obligation of Contractor; (c) the Work Product will not infringe upon any intellectual property right or other proprietary right of any third party; (d) Contractor agrees to perform the Services in compliance with all applicable laws, regulations and ordinances; and (e) Contractor shall maintain and handle all Confidential Information in compliance with all applicable U.S. securities laws, rules and regulations and shall protect and maintain the security, confidentiality, integrity and availability of all such Confidential Information. The provisions of this paragraph shall survive the termination of this Agreement.

6.     Compliance with Securities Laws. Contractor acknowledges that Confidential Information may constitute material non-public information under U.S. securities laws and regulations, and agrees that it shall not transact in securities of Company based on any such Confidential Information or material non-public information and shall take reasonable steps to ensure that any Contractor representatives do not transact in securities of Company based on any such Confidential Information or material non-public information.

7. <u>Relationship of Parties</u>. Contractor is an independent contractor and shall be solely responsible for any unemployment or disability insurance payments, and/or any social security, income tax or other withholdings, deductions or payments which may be required by federal, state or local law with respect to any sums paid Contractor hereunder. Contractor shall provide Company with proof of such payment upon demand. Contractor shall not be entitled to any Company employee benefits of any nature and shall not be covered under Company's worker's compensation program. Contractor is not an agent or representative of Company and has no authority to speak or act for Company in any manner.

8. <u>Company Policies</u>. Contractor agrees to abide by Company's Code of Conduct, including but not limited to its non-discrimination and non-harassment policies, in all contacts with Company's associates, when on Company property or while representing Company in any manner. Contractor further agrees to contact Company's Ethics Hotline at (877) 571-9743 if Contractor believes that any of Company's associates are engaged in discriminatory or harassing behavior with respect to the Contractor.

9. <u>Indemnification.</u> To the extent permitted by law, Contractor agrees to indemnify and hold harmless the Company, its successors, assigns, officers, employees and agents from and against all action, causes of action, claims and demands whatsoever, and from all costs, damages, expenses, charges, debts and liabilities whatsoever (including attorneys' fees), whether known or unknown, present or future, that arise from or are connected with the provision of the Services. This indemnification includes, but is not limited to: 1) any and all claims, demands, losses, costs, fees, liabilities, taxes, penalties, damages or injuries suffered by Company (including, but not limited to, attorney's fees and court costs, whether or not litigation is commenced) arising out of the failure or delay of Contractor to comply with any of the representations in this Agreement, including but not limited to the representations in Paragraph 6, above; 2) any and all claims or demands relating to any personal injury allegedly suffered by Contractor or any individual employed or retained by Contractor while performing Services or otherwise arising out of or related to the Services to be performed by Contractor; and 3) any and all claims, demands, losses, costs, fees, liabilities, taxes, penalties, damages and injuries suffered by Company as a result of the classification of Contractor as an independent contractor.

10. <u>Termination</u>. Either party may terminate this Agreement and the relationship hereunder at any time for any reason by giving at least thirty (30) days advance written notice. Upon such termination, Company shall be obligated to pay Contractor for the Services actually rendered. Upon termination of this Agreement, Contractor shall deliver to Company all property created by or provided to Contractor which relates to the Work Product or contains Confidential Information, including all copies thereof.

11. <u>Remedies</u>. Contractor's sole remedy, if any, for breach of this Agreement shall be money for breach of contract and in no event shall Company be liable to Contractor for any special, punitive, consequential, incidental or similar damages or recovery of attorneys' fees.

12. <u>Personal Services</u>. The obligations of Contractor hereunder are personal in nature and this Agreement may not be assigned, subcontracted or delegated for substantial

performance, in whole or in part, by any other party without the written agreement of the Company. As a condition to any consent by Company of such assignment or subcontract, Contractor shall obtain the written agreement of such approved assignee or subcontractor to all the terms and provisions of this Agreement relating to Confidential Information, Ownership of Work Product, and Representations.

13. <u>Miscellaneous</u>. This Agreement contains the entire understanding of the parties and supersedes all prior agreements or understandings and may not be modified or terminated except in writing signed by an authorized representative of Company. If any provision of this Agreement is held to be void, invalid, unenforceable or illegal by a court, the remaining provisions will remain valid and enforceable. Failure to enforce any provision of this Agreement will not constitute or be construed as a waiver of such provision or of the right to enforce such provision. Any rule of construction disfavoring the drafting party shall not apply in the construction of any provision of this Agreement. This Agreement may be executed in separate counterparts. This Agreement shall be binding upon the permitted successors and assigns of both parties and shall be governed by and construed and enforced in accordance with the laws of the State of Ohio applicable to agreements made and to be performed in Ohio, without regard to conflicts of laws principles.

This Agreement is executed by the parties effective as of March 25, 2024 (the "Effective Date").

**Express BNBS Fashion, LLC d/b/a Bonobos**

Date Signed: 3/21/2024

DocuSigned by: *John Hutchison*
D4447A73BCE141D...
Name: John Hutchison
Title: Senior Vice President

**Erin Ersenkal**

Date Signed: 3/21/2024

DocuSigned by: [signature]
D7164C29D423420...
Name:

# EXHIBIT A

- The Services to be rendered by the Contractor shall be as follows: Interim advisor to Bonobos Guideshops and Operations. The advisory scope is as follows:

    1. GUIDESHOPS ADVISORY (85%+ of time): Be available to the Guideshops Regional Director, the Company's six (6) District Managers, and the Company's Retail Operations Manager for strategic and operational decision-making support, keeping the team focused on the 2024 operating plan (already established) and providing leadership/guidance as needed. Responsibilities include, but are not limited to, joining standing weekly meetings and being available to each of them for 1:1s and ad hoc advice during the week.

    2. EXPANSION ADVISORY (10% of time): In partnership with the team listed above and the Express Inc Store Facilities & Design team, help develop the plan/playbook for building new Guideshops.

    3. GUIDESHOPS INVESTMENT FRAMEWORK (5% of time): Assistance assessing data and creating a presentation and financial model that shows the value creation that comes from new Guideshops.

    Contractor agrees to provide an average of twenty (20) hours per week providing the above services. Contractor agrees to be available to provide Guideshop Advisory services at least a few hours per day during regular business hours.

- The Contractor shall be compensated for the Services as set forth below:

    1. Compensation shall be $30,000 U.S. dollars per month. Contractor shall invoice Company monthly and payment for service will be paid within 45 days of receipt of invoice. All taxes associated with said payment shall be Contractor's responsibility.

    2. Reimbursable expenses related to specific materials and services directly related to the projects, transportation, lodging and out-of-pocket expenses need to be approved by the Company in advance and will be billed at cost.

- All invoices should be sent to and approved by John Hutchison on a monthly basis.

| Fill in this information to identify the case: | |
|---|---|
| Debtor | Express BNBS Fashion, LLC |
| United States Bankruptcy Court for the District of | District of Delaware |
| Case number | 24-10840 |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Erin Ersenkal
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor _____

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? _____

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   Where should notices to the creditor be sent?

   Erin Ersenkal
   33-60 21st Street, Apt 10b
   Long Island City, NY 11106
   E: erin.ersenkal@gmail.com

   Where should payments to the creditor be sent? (if different)

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):
   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____
                                                                         MM/DD/YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? _____

Official Form 410

126930503243499378000001

Page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

6. Do you have any number you use to identify the debtor?

   ☒ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

7. How much is a claim?   36780   Does this amount include interest or other charges?

   ☒ No
   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   Services Provided: Fractional Executive (Freelance)

9. Is all or part of the claim secured?

   ☒ No
   ☐ Yes. The claim is secured by a lien on property

   **Nature of property**
   ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.
   ☐ Motor vehicle.
   ☐ Other. Describe: _____

   **Basis for perfection:** _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property: _____
   Amount of the claim that is secured: _____
   Amount of the claim that is unsecured: _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition: _____

   Annual Interest Rate (when case was filed) _____ %
   ☐ Fixed
   ☐ Variable

10. Is this claim based on a lease?
    ☒ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.  $ _____

11. Is this claim subject to a right of setoff?
    ☒ No
    ☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A Claim may be partly priority and partly nonpriority. For example, law limits the amount entitled to priority.

☐ No

☒ Yes. Check one:

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  _____

☒ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4)   $ 15,150.00

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.  _____

*Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date & time  05/03/2024 at 02:10 pm PT
MM / DD / YYYY  HH : MM

/s/Erin Ersenkal
Signature

**Print the name of the person who is completing and signing this claim:**

Name  Erin           Ersenkal
First Name  Middle Name  Last Name

Title  _____

Company  _____
Identify the corporate servicer as the company if the authorized agent is a servicer

Address  33-60 21st Street, apt. 10b
Number  Street

Long Island City    NY    11106
City    State    ZIP Code

Contact phone  9177337979

Email  erin.ersenkal@gmail.com

Proof Of Claim                                   Page 3

# INVOICE

Erin Ersenkal  erin.ersenkal@gmail.com
3360 21st Street, 10b  +1 (917) 733-7979
Long Island City, NY 11106



## Bonobos

**Bill to**
John Hutchison
Express BNBS Fashion, LLC d/b/a Bonobos

**Ship to**
John Hutchison
Express BNBS Fashion, LLC d/b/a Bonobos

**Invoice details**

Invoice no.: 1004
Terms: Net 45
Invoice date: 03/25/2024
Due date: 05/09/2024

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | **Fractional Advisory Services** | March 25, 2024 - March 31, 2024 (partial month) | 0.226 | $30,000.00 | $6,780.00 |
| 2. | **Fractional Advisory Services** | April 1, 2024 - April 30, 2024 (full month) | 1 | $30,000.00 | $30,000.00 |
| | | | | **Total** | **$36,780.00** |

Contact Erin Ersenkal to pay.

### Note to customer

This invoice covers March 25-April 30 time period. Work started last week of March (7 days were 22.6% of monthly rate).

# INVOICE

Erin Ersenkal  
3360 21st Street, 10b  
Long Island City, NY 11106

erin.ersenkal@gmail.com  
+1 (917) 733-7979



EE  
Strategic Advisory

**Bill to**  
John Hutchison  
Express BNBS Fashion, LLC d/b/a Bonobos

**Ship to**  
John Hutchison  
Express BNBS Fashion, LLC d/b/a Bonobos

**Invoice details**  
Invoice no.: 1005  
Terms: Net 45  
Invoice date: 04/30/2024  
Due date: 06/14/2024

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | Bonobos Guideshops & Operations Fractional Advisory Support | May 1, 2024 - May 30, 2024 (full month) | 1 | $30,000.00 | $30,000.00 |

Contact Erin Ersenkal to pay.

| | |
|---|---|
| Total | $30,000.00 |
| Payment | -$30,000.00 |
| Balance due | $0.00 |

**Note to customer**  
This invoice covers month of May 2024

**Paid in Full**

# INVOICE

**Erin Ersenkal**  
3360 21st Street, 10b  
Long Island City, NY 11106

erin.ersenkal@gmail.com  
+1 (917) 733-7979



EE  
Strategic Advisory

**Bill to**  
John Hutchison  
Express BNBS Fashion, LLC d/b/a Bonobos

**Ship to**  
John Hutchison  
Express BNBS Fashion, LLC d/b/a Bonobos

**Invoice details**  
Invoice no.: 1006  
Terms: Net 45  
Invoice date: 05/31/2024  
Due date: 07/15/2024

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | Bonobos Guideshops & Operations Fractional Advisory Support | June 1, 2024 - June 30, 2024 (full month) | 1 | $30,000.00 | $30,000.00 |

Contact Erin Ersenkal to pay.

**Total** $30,000.00  
**Payment** -$30,000.00

**Note to customer**  
This invoice covers month of June 2024

**Balance due** $0.00

**Paid in Full**

## INVOICE

Erin Ersenkal  
3360 21st Street, 10b  
Long Island City, NY 11106  

erin.ersenkal@gmail.com  
+1 (917) 733-7979



**EE Strategic Advisory**

**Bill to**  
John Hutchison  
Express BNBS Fashion, LLC d/b/a Bonobos

**Ship to**  
John Hutchison  
Express BNBS Fashion, LLC d/b/a Bonobos

### Invoice details

Invoice no.: 1007  
Terms: Net 45  
Invoice date: 07/01/2024  
Due date: 08/15/2024

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | Bonobos Guideshops & Operations Fractional Advisory Support | July 1, 2024 - July 31, 2024 (full month) | 1 | $30,000.00 | $30,000.00 |

Contact Erin Ersenkal to pay.

**Total** $30,000.00  
**Payment** -$30,000.00  

### Note to customer
This invoice covers month of July 2024

**Balance due** $0.00

**Paid in Full**

## INVOICE

**Erin Ersenkal**     erin.ersenkal@gmail.com
3360 21st Street, 10b     +1 (917) 733-7979
Long Island City, NY 11106



EE
Strategic Advisory

**Bill to**
John Hutchison
Express BNBS Fashion, LLC d/b/a Bonobos

**Ship to**
John Hutchison
Express BNBS Fashion, LLC d/b/a Bonobos

### Invoice details
Invoice no.: 1008
Terms: Net 45
Invoice date: 08/01/2024
Due date: 09/15/2024

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | **Bonobos Guideshops & Operations Fractional Advisory Support** | Aug 1, 2024 - Aug 31, 2024 (full month) | 1 | $30,000.00 | $30,000.00 |
| 2. | **Bonobos Guideshops & Operations Fractional Advisory Support** | Sept 1, 2024 - Sept 6, 2024 (partial month) | 0.24 | $30,000.00 | $7,200.00 |

Contact Erin Ersenkal to pay.

**Total**     **$37,200.00**

Payment     -$37,200.00

### Note to customer
This invoice covers August 1 - Sept 6 time period. First week of Sept 2024 @ .24% of monthly rate)

**Balance due**     **$0.00**

**Paid in Full**

Chase7865_Activity_20251008

| Details | Posting Date | Description | | Amount | Type | Balance | Check or Slip # |
|---|---|---|---|---|---|---|---|
| CREDIT | 09/03/2024 | Express BNBS Fas EDI PYMNTS 00000791/25 | CCD ID: 1923453861 | 37200.00 | ACH_CREDIT | | |
| CREDIT | 07/30/2024 | Express BNBS Fas EDI PYMNTS 00000764/25 | CCD ID: 1923453861 | 30000.00 | ACH_CREDIT | | |
| CREDIT | 07/15/2024 | Express BNBS Fas EDI PYMNTS 00000754/29 | CCD ID: 1923453861 | 30000.00 | ACH_CREDIT | | |
| CREDIT | 05/10/2024 | Express BNBS Fas EDI PYMNTS 00000731/8 | CCD ID: 1923453861 | 30000.00 | ACH_CREDIT | | |

1



Erin Ersenkal <erin.ersenkal@gmail.com>

---

## Wrapping up our engagement - Sept 6

**John Hutchison** <jhutchison@bonobos.com>  
To: Erin Ersenkal <eersenkal@bonobos.com>, Erin Ersenkal <erin.ersenkal@gmail.com>

Wed, Jul 31, 2024 at 4:43 PM

Hey Erin,

I failed to give you this note in writing, so this is just doing that. I'm so thankful to you for your help with Bonobos and our Guideshops team over the past few months. You've jumped in during a hyper-critical moment for our brand, navigating the loss of multiple levels of Guideshop leadership *and* a crazy bankruptcy.

Thank you.

With David Degan starting this Monday, August 5th, we have an incoming leader to take over the role you've been playing for us, which is great for everyone.

Let's have you quickly move into the background as David ramps up, supporting David and his needs, and we'll have your engagement with Bonobos end officially on Friday, September 6th. That gives you a few weeks to support David, and a few weeks to provide your input on the "Guideshops expansion justification" project that we initially scoped but didn't have time to address just yet.

We can chat through the ramp-down plan in our TB tomorrow.

Thanks,  
-John

Confidentiality Notice: This message and any attachments are intended only for the use of the intended recipient(s), are confidential, and may be privileged. If you are not the intended recipient, you are hereby notified that any review, re-transmission, copying, printing, distribution, reliance on, or other use of this message and any attachments is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return email and delete this message and any attachments from your system.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re:
EXP OldCo Winddown, Inc.,
Debtor
Case No.: 24-10831 KBO
Chapter 11

**CERTIFICATE OF SERVICE**

I, Erin Ersenkal, hereby certify that on October 27, 2025, I caused a true and correct copy of the **Response to Plan Administrator's Eighth Omnibus Substantive Objection to Claims (Dated October 8, 2025; Doc No. 1501)** and all accompanying exhibits served <u>via electronic mail</u> on the following counsel for the Plan Administrator pursuant to the requirements of the Bankruptcy Court for the District of Delaware:

>Lucian B. Murley
>SAUL EWING LLP
>1201 N. Market Street, Suite 2300
>Wilmington, DE 19801
>Email: luke.murley@saul.com

>Brendan M. Scott
>Christopher Reilly
>Klestadt Winters Jureller Southard Stevens, LLP
>200 West 41st Street, 17th Floor
>New York, NY 10036
>Emails: bscott@klestadt.com, creilly@klestadt.com

Dated: October 27, 2025

*/s/ Erin Ersenkal*

Erin Ersenkal
3360 21st Street, 10b
Long Island City, NY 11106
erin.ersenkal@gmail.com
(917) 733-7979

Align top of FedEx® shipping label here.

ORIGIN ID:NYSM  (917) 733-7979    SHIP DATE: 27OCT25
ERIN ERSENKAL                      ACTWGT: 0.10 LB
                                   CAD: 260470056/INET4535
3360 21ST ST # 10B

ASTORIA, NY 11106                  BILL SENDER
UNITED STATES US

TO  **DELAWARE BANKRUPTCY COURT**

    **824 NORTH MARKET STREET 3RD FLOOR**

    **WILMINGTON DE 19801**
    (302) 533-3183            REF:
    INV:
    PO:                       DEPT:



TRK# 8855 2276 3036    TUE - 28 OCT 10:30A
     0201              PRIORITY OVERNIGHT

EE ZWIA                       19801
                       DE-US  PHL