IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXP OldCo Winddown, Inc., *et al.*,[1] | Case No. 24-10831 (KBO) |
| Debtor. | Hearing Date: November 18, 2025 at 9:30 a.m. (ET)<br>RE:  D.I. 1501 |

**RESPONSE TO PLAN ADMINISTRATOR'S EIGHTH OMNIBUS (SUSBSTANTIVE) OBJECTION TO CLAIMS BY UNIVERSAL MUSIC CORP., SONGS OF UNIVERSAL, INC., UNIVERSAL MUSIC-Z TUNES LLC, A DIVISION OF SONGS OF UNIVERSAL INC., UNIVERSAL MUSIC-MGB NA LLC, POLYGRAM PUBLISHING, INC., <u>CAPITOL RECORDS, LLC AND UMG RECORDINGS, INC.</u>**

Universal Music Corp., Songs of Universal, Inc., Universal Music-Z Tunes LLC, a division of Songs of Universal Inc., Universal Music-MGB NA LLC, PolyGram Publishing, Inc., Capitol Records, LLC and UMG Recordings, Inc. ("UMG Recordings," and collectively with the other entities listed herein as "Universal Music Group"), by and through its undersigned attorneys, hereby respectfully submit this response (the "Response") to the Eighth Omnibus (Substantive) Objection to Claims (Docket No. 1501) (the "Objection") filed by the Plan Administrator (the "Plan Administrator") with respect to the claim numbers listed below.  In support of this Response, Universal Music Group respectfully state as follows:

---

[1] The Debtor in in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is EXP OldCo Winddown, Inc. (8128). The chapter 11 cases of the Debtor's affiliates Project Pine TopCo Winddown, LLC (8079); Project Pine Holding OldCo, LLC (8454); Project Pine Finance OldCo Corp. (7713); Project Pine OldCo, LLC (0160); Project Pine Investments OldCo, LLC (7622); Project Pine Logistics OldCo, LLC (0481); Project Pine Operations OldCo, LLC (3400); Project Pine GC OldCo, LLC (6092); Project Pine Tropic OldCo, LLC (3861); Project Pine California OldCo, LLC (8688); and Express Fashion Digital Services Costa Rica, S.R.L. (7382) were closed as of September 29, 2025. All motions and contested matters that remained open as of the closing of such cases, or that are opened after the date thereof are administered in the remaining chapter 11 case of EXP OldCo Winddown, Inc.

**BACKGROUND**

**Universal Music Group Claims**

1. Universal Music Group filed the following claims on July 9, 2024, prior to the bar date in these Chapter 11 Cases (the "Universal Music Group Claims").

| Entity Name | Claim Number | Claim Amount |
|---|---|---|
| Capitol Records, LLC | 1236 | $150,000.00 |
| PolyGram Publishing, Inc. | 1219 | $300,000.00 |
| Songs of Universal, Inc. | 1190 | $1,500,000.00 |
| UMG Recordings, Inc. | 1192 | $3,000,000.00 |
| Universal Music Corp. | 1193 | $1,500,000.00 |
| Universal Music – MGB NA LLC | 1249 | $600,000.00 |
| Universal Music – Z Tunes LLC | 1239 | $300,000.00 |
|  | TOTAL | $7,350,000.00 |

2. By the Objection, the Plan Administrator objected to UMG Recordings' proof of claim on the grounds that it was overstated because the debtors had purportedly entered into a settlement agreement and objected to the other Universal Music Group claims on the grounds that the claims had been satisfied. *See* Objection, pp. 8-9. The Plan Administrator specifically lists a settlement amount from an unsigned settlement agreement in its objection. The Objection Schedules relating to Universal Music Group are attached hereto as **Exhibit A.**

3. Universal Music Group has been in discussions with the Plan Administrator to try to resolve the Universal Music Group Claims. Although no resolution was reached, the Plan Administrator provided Universal Music with an extension to file a response to the Objection until October 30, 2025 at 5:00 pm Eastern time.

**The Debtors' Relationship with Universal Music Group**

4. Universal Music Group owns or controls the exclusive rights, including copyrights, to certain master recordings and musical compositions. Universal Music Group is engaged in the

business of acquiring, administering, licensing, exploiting, and otherwise monetizing a catalog of copyrighted master recordings and musical compositions, including by issuing synchronization licenses authorizing third parties to use and embody Universal Music Group's copyrighted musical works in audiovisual content.

5. Without a license agreement from Universal Music Group, the debtors used multiple Universal Music Group-owned or controlled sound recordings and compositions in social media advertisements on multiple social media platforms, thereby infringing on Universal Music Group's exclusive rights under copyrights.

6. On October 30, 2023, Jessica Stiefler, Universal Music Group's Director of Business and Legal Affairs, sent certain debtors, including Express BNBS Fashion, LLC now named Project Pine Tropic OldCo, LLC ("Debtor") a cease and desist letter to demand that Debtor remove social media posts that used the Universal Music Group's owned or controlled compositions ("Universal Music Group's Repertoire") and to demand payment for unauthorized use and exploitation of the Universal Music Group Repertoire without a license (the "Cease and Desist Letter").  [Declaration of Jessica Stiefler ("Stiefler Dec.") at ¶¶ 1, 5-6].

7. Universal Music Group and Debtor entered into settlement discussions in 2024; however, the parties were not able to reach a final settlement agreement.  [Stiefler Dec., at ¶¶ 7, 8, 15].  Because the Plan Administrator is asserting that a final agreement was reached in connection with email communications between Universal Music Group and the debtors, Universal Music Group asserts that the settlement communication privilege has been waived by the Plan Administrator with respect to communications that occurred between the parties regarding settlement in 2024.

3

8. Several emails were exchanged regarding the settlement agreement. The final email communication regarding the settlement agreement between Ms. Stiefler and Debtor's attorney, Marc Avsec, concerned the scope of the release with respect to future infringement. Although the email indicates Mr. Avsec agrees with Ms. Stiefler's concept, he reserves the right to review the agreement and check with his client before circulating the agreement for signature. [Stiefler Dec., at ¶¶ 9-10]. In a separate email, seven minutes later, Debtor's counsel stated, "If my client is OK with your addition in 3.2 (I am fine with it), I will then circulate signature copies in PDF." [Stiefler Dec., at ¶ 11]. Ms. Stiefler did not hear from Mr. Avsec regarding the settlement agreement after receiving the email in which he stated that he was checking with his client. [Stiefler Dec., at ¶¶ 12-14].

9. On April 30, 2024, Ms. Stiefler received an additional email from Mr. Avsec attaching a Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings (the "Bankruptcy Notice") which was titled, "Dispute Between Universal Music Group and Bonobos, Inc., Now Doing Business as Express BNBS Fashion, LLC." The email enclosing the Bankruptcy Notice forwarded a note from Debtor's internal counsel requesting that Mr. Avsec serve the Bankruptcy Notice on Universal Music Group's counsel. [Stiefler Dec., at ¶ 16].

10. The debtors listed the Cease and Desist Letter as a pending matter on the Express BNBS debtor's schedules and statement of financial affairs. [Stiefler Dec., at ¶ 17]. [*Statement of Financial Affairs for Project Pine Tropic OldCo, LLC (formerly known as "Express BNBS Fashion, LLC") (Case No. 24-10840)* [Docket No. 6 of Case No. 24-10840].

11. Prior to the petition date and as of the date of the filing of this Response, Universal Music Group has not received any payment from the debtors for its illegal, unauthorized use and exploitation of the Universal Music Group Repertoire. [Stiefler Dec., at ¶ 18].

4

**ARGUMENT**

**There Was No Settlement Agreement Between Universal Music Group and Debtors**

12. In the Objection, the Plan Administrator requests the reduction of the entirety of the Universal Music Group Claims to $350,000 from $7,350,000, relying on his contention that there was a settlement agreement between Debtor and Universal Music Group. However, the basic principles of contract law do not support the Plan Administrator's position.

**General Principles of Contract Law Apply to the Issue of Contract Formation**

13. While the principles of contract law are similar in most jurisdictions, because the parties were discussing a settlement under the terms of California law, Universal Music Group relies on California law in its Response. "A settlement agreement is a contract, and the legal principles [that] apply to contracts generally apply to settlement contracts. Its validity is thus judged by the same legal principles applicable to contracts generally." *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585 (2005) (internal citations omitted). For a settlement agreement to be enforceable, each element of contract formation must be satisfied – the mutual consent of the parties, a lawful object, and sufficient consideration. *Id*. at 1586; *see also* Cal. Civ. Code § 1550. The purported settlement agreement is deficient in two of these elements: consideration and mutual consent. As noted above, sufficient consideration was not exchanged between the parties as Universal Music Group never received any payment for Debtor's illegal use of the Universal Music Group Repertoire. Further, as detailed below, there was no mutual consent between the Parties as there was no meeting of the minds between the parties regarding the material terms of the draft settlement agreement.

**There Was No Meeting of the Minds Between the Parties**

14. "If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 797 (1998); *see also Am. Emps. Grp., Inc. v. Emp. Dev. Dep't*, 154 Cal. App. 4th 836, 846 (2007) ("[T]here is no contract until there has been a meeting of the minds on *all* material points."). "If no contract formation has occurred, there is no settlement agreement to enforce[...]." *Weddington Prods.*, 60 Cal. App. 4th at 797; *see also Am. Emps. Grp.*, 154 Cal. App. 4th at 836 (finding that there was not a meeting of the minds as to the alleged settlement agreement). Here, there was no meeting of the minds between the parties regarding a material term, the scope of the release of claims in the purported settlement agreement. As discussed below, Universal Music Group's counsel requested a revision to the purported settlement agreement as to the scope of the claims to be released; however, Debtor never agreed to this revision, so there was no mutual agreement between the parties as to this term. Since a meeting of minds on *all* material terms is a necessary prerequisite to contract formation, no contract was formed between Universal Music Group and Debtor; and thus, no enforceable settlement agreement exists between the parties.

**The Parties Failed to Agree on a Material Term**

15. "A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1623 (2006) (internal citation omitted). Universal Music Group and Debtor failed to agree on a material term, the scope of the release of the claims, and thus, no enforceable settlement agreement was formed. In negotiating the settlement agreement, Universal Music Group's counsel, Jessica Stiefler, emailed Debtor's counsel, Mr. Avsec, adding a

revision to Section 3.2 of the draft settlement agreement regarding the scope of the release of the claims. [Stiefler Dec., at ¶ 9]. Debtor's counsel's email response stated, in part "I will review your clarification and share with our client today, and hopefully we can move towards signature." [Stiefler Dec., at ¶ 10]. In a separate email, sent seven minutes later, Debtor's counsel stated, "If my client is OK with your addition in 3.2 (I am fine with it), I will then circulate signature copies in PDF." [Stiefler Dec., at ¶ 11]. After these emails, Ms. Stiefler did not receive further correspondence from Debtor's counsel regarding the draft settlement agreement or the Debtor's position regarding the scope of the release of claims, let alone the execution copies Debtor's counsel committed to circulate for signature. [Stiefler Dec., at ¶¶ 12-13]. The draft settlement agreement was never finalized and signed by the parties. [Stiefler Dec., at ¶¶ 14-15, 18].

16.     "A settlement is enforceable under [California Civil Procedure] section 664.6 only if the parties agreed to all material settlement terms." *Hines v. Lukes*, 167 Cal. App. 4th 1174, 1182 (2008). In *350 Loraine Homeowner's Ass'n v. Hovsepian*, the court, relying in part on *Hines v. Lukes*, held that emails between the parties' counsel did not form a settlement agreement after determining that "the issue here, however, is that even if the emails could be considered signed writing by counsel for the parties, the emails do not set forth the terms of the settlement and do not accept the written settlement agreement without further consultation with defendant client." *350 Loraine Homeowner's Ass'n v. Hovsepian*, No. 21GDCV00909, 2022 Cal. Super. LEXIS 77924, at *6 (Super. Ct. Dec. 2, 2022) (emphasis added). Since the emails from Debtor's counsel do not accept the written settlement agreement without further consultation from Debtor, the parties failed to agree on a material term, and no settlement agreement was formed.

**Debtor's Actions After Negotiations Ended on the Draft Settlement Agreement Indicate that No Settlement Was Reached**

17. Debtor's outward actions indicate that it also did not perceive that the Universal Group Claims were resolved by a purported settlement agreement. As discussed above, on April 30, 2024, Mr. Avsec emailed Ms. Stiefler the Bankruptcy Notice, which was titled, "Dispute Between Universal Music Group and Bonobos, Inc., Now Doing Business as Express BNBS Fashion, LLC." [Stiefler Dec., at ¶ 16]. The email attaching the Bankruptcy notice included a note from counsel to Debtor requesting that Mr. Avsec serve the Bankruptcy Notice on Universal Music Group's counsel. *Id.* If a settlement agreement had been formed between Debtor and Universal Music Group, then there would have been no "dispute" between the Parties. Further evidence that no final agreement was reached can be found in the debtors own schedules. **Exhibit B** attached hereto contains the schedules applicable to Universal Music Group attached in Part 3, Legal Actions or Assignments, Section 7, on page 24 of the *Statement of Financial Affairs for Project Pine Tropic OldCo, LLC (formerly known as "Express BNBS Fashion, LLC") (Case No. 24-10840)* [Docket No. 6 of Case No. 24-10840]. As shown on Exhibit B, in Part 3, Legal Actions or Assignments, Debtor listed the Cease and Desist Letter from Universal Music Group as "pending." If Debtor reasonably believed that an enforceable settlement agreement was formed between Debtor and Universal Music Group, Debtor would have listed the demand letter as "concluded" on the schedules. Thus, Exhibit B further supports Universal Music Group's position that no settlement agreement exists between Universal Music Group and Debtor.

**Because an Enforceable Settlement Agreement Was Not Formed Between Debtor and Universal Music Group, the Universal Music Group Claims Are Not Overstated or Satisfied**

18. Contrary to the debtors' schedules, the Plan Administrator incorrectly categorized the UMG Recordings Claim on schedule 2 to the Objection as an "overstated claim" and the other

8

Universal Music Group Claims on schedule 4 as "no liability claims" (the "Objection Schedules"). The Plan Administrator categorized UMG Recordings' claim as an "overstated claim" by citing the amount that was discussed in connection with the settlement negotiations. The Plan Administrator relies on its unsupported position that Universal Music Group agreed to settle the claim with Debtor. However, no settlement was ever reached. Rather, UMG Recordings is entitled to infringement damages under the Copyright Act as set forth in its proof of claim. The Universal Music Group proofs of claim list in detail the infringement on the Universal Music Group Repertoire.

19. The remaining six Universal Music Group Claims that the Plan Administrator listed as "no liability" claims were also miscategorized. The Plan Administrator's basis for this disallowance states "resolved pursuant to a settlement agreement." As discussed above, this is not the case, no settlement agreement was formed between Debtor and Universal Music Group, and thus, none of the Universal Music Group Claims categorized as "no liability" claims have been resolved. Therefore, the six Universal Music Group Claims on schedule 4 of the Objection Schedules should be allowed, and Universal Music Group is entitled to the infringement damages set forth in each of these Universal Music Group Claims.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Universal Music Group respectfully requests that the Court deny the Plan Administrator's Objection with respect to the Universal Music Group Claims and allow the Universal Music Group Claims in the amounts set forth in each of the Universal Music Group's proofs of claim.

Dated:  October 30, 2025
       Wilmington, Delaware  **STEVENS & LEE, P.C.**

*/s/ Gregory T. Donilon*
Gregory T. Donilon (No. 4244)
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone: (302) 425-3311
Email: gregory.donilon@stevenslee.com

-and-

**FRIEDMAN & SPRINGWATER LLP**
Ellen A. Springwater (CA SB #127684)
*(Pro Hac Vice Motion to Be Filed)*
Ruth Stoner Muzzin (CA SB # 276394)
*(Pro Hac Vice Motion to Be Filed)*
Jorian Heal (CA SB #334817)
*(Pro Hac Vice Motion to Be Filed)*
350 Sansome Street, Suite 800
San Francisco, California 94104
Telephone: (415) 834-3800
Email: efriedman@friedmanspring.com,
rmuzzin@friedmanspring.com,
jheal@friedmanspring.com

*Counsel to Universal Music Group*